NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile:  415.398.2438

NOSSAMAN LLP
KASIA PENN (SBN 306056)
kpenn@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone:  949.833.7800
Facsimile:  949.833.7878

Attorneys for Defendant RTZ ASSOCIATES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

| | |
|---|---|
| INTUS CARE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RTZ ASSOCIATES, INC.; and DOES 1 through 10, <br><br> Defendants, | Case No.     4:24-cv-01132-JST <br><br> Assigned to: Hon. Jon S. Tigar <br><br> **DEFENDANT RTZ ASSOCIATES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS** <br><br> Date: May 16 <br> Time: 2:00 p.m. <br> Place: Courtroom 6 <br><br> Trial Date: None Set |

- 1 -
DEFENDANT'S MOTION TO DISMISS

Case No. 3:24-cv-1132-JST

62602066.v3

1

## <u>NOTICE OF MOTION</u>

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE THAT on May 16, 2024 at 2:00 p.m., in Courtroom 6 – 2nd

4  Floor of the above-captioned Court, located at 1301 Clay Street, Oakland, CA 94612.  Defendant

5  RTZ Associates Inc. ("RTZ") will and hereby does move this Court for an order dismissing with

6  prejudice certain claims asserted by Plaintiff Intus Care, Inc. ("Intus") in the above-captioned

7  action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

8  which relief can be granted.

9    This motion is based upon this Notice of Motion, the accompanying Memorandum in

10  support of the Motion, and the files and records in this action and any further evidence and

11  argument that the Court may consider.

12

13

14  Dated:  March 19, 2024                    NOSSAMAN LLP

15                                  By:  /s/ David C. Lee
                                     David C. Lee
16                                   Kasia Penn

17                                  Attorneys for Defendant RTZ ASSOCIATES, INC.

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS

Case No. 3:24-cv-1132-JST

62602066.v3

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...........................................................................................................7

II.   PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT ................................................8

    A.    The Parties. .........................................................................................................8

    B.    The Underlying Dispute.......................................................................................8

III.  STANDARD OF REVIEW ...........................................................................................9

IV.   ANALYSIS.................................................................................................................10

    A.    Intus's Third Claim for Negligence Per Se Warrants Dismissal. ..............................10

        1.    Intus Has No Private Right of Action Under the Cures Act. ................................10

        2.    The Cures Act Does Not Create an Express Private Right of Action....................11

        3.    The Cures Act Does Not Imply a Private Right of Action ....................................12

    B.    Without a Federal Source of Law to Support the Required Element of Duty, the Negligence Per Se Claim Must Fail ................................................................19

    C.    Plaintiff Has Failed to State a Claim Under the Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200. ...........................................................20

V.    CONCLUSION............................................................................................................21

DEFENDANT'S MOTION TO DISMISS
Case No. 3:24-cv-1132-JST

62602066.v3

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
*Alexander v. Sandoval,*
    532 U.S. 275 (2001)............................................................................................12, 13, 15

5

*In Re: Ambry Genetics Data Breach Litigation,*
6       567 F.Supp 3d 1130 (S.D. Cal. 2021)......................................................................20

7
*Ashcroft v. Iqbal,*
8       556 U.S. 662 (2009)......................................................................................................9

9
*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................................................9
10

*Cnty. Commc'ns Corp. v. California Catalog & Tech.,*
11      594 F.3d 1149 (9th Cir. 2010) ...................................................................................17

12
*Delta Sav. Bank v. United States,*
    265 F.3d 1017 (9th Cir. 2001) ...................................................................................19
13

14
*Dent v. Nat'l Football League,*
    902 F.3d 1109 (9th Cir. 2018) ...................................................................................19

15
*In re Digimarc Corp. Derivative Litig.,*
16      549 F.3d 1223 (9th Cir. 2008) .............................................................................11, 12

17
*Doe v. Meta Platforms, Inc.,*
    No. 22-CV-03580-WHO, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ...............8, 10, 19, 20
18

19
*Duplan v. City of New York,*
    888 F.3d 612 (2d. Cir. 2018)......................................................................................12
20

*In re Gilead Scis. Secs. Litig.,*
21      536 F.3d 1049 (9th Cir. 2008) ...................................................................................10

22
*Greene v. Sprint Commc'ns Co.,*
23      340 F.3d 1047 (9th Cir.2003) ...................................................................................17

24
*Gullatt v. Aurora Loan Servs., LLC,*
    No. 1:10-CV-01109, 2010 WL 4070379 (E.D. Cal. Oct. 18, 2010)...................11, 14
25

*Hartmann v. Cal. Dep't of Corr. & Rehab.,*
26      707 F.3d 1114 (9th Cir. 2013) ...................................................................................10

27
*Howard v. AOL,*
    208 F.3d 741 (9th Cir.2000) ......................................................................................17
28

DEFENDANT'S MOTION TO DISMISS

Case No. 3:24-cv-1132-JST

62602066.v3

*Leong v. Square Enix of Am. Holdings, Inc.*,
   No. CV09-4484 PSGVBKX, 2010 WL 1641364, at *7 (C.D. Cal. Apr. 20,
   2010), aff'd, 462 F. App'x 688 (9th Cir. 2011) .......................................................................21

*Logan v. U.S. Bank Nat. Ass'n*,
   No. CV09-08950 MMMPLAX, 2010 WL 1444878, at *7 (C.D. Cal. Apr. 12,
   2010), *aff'd*, 722 F.3d 1163 (9th Cir. 2013).................................................................. *passim*

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ............................................................................................9

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ............................................................................................9

*Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*,
   376 F.3d 831 (9th Cir.2004) .............................................................................................15

*Quiroz v. Seventh Ave. Ctr.*,
   140 Cal. App. 4th 1256 (2006) .........................................................................................19

*Roling v. E*Trade Sec., LLC*,
   756 F. Supp. 2d 1179 (N.D. Cal. 2010) ............................................................................21

*Segalman v. Sw. Airlines Co.*,
   895 F.3d 1219 (9th Cir. 2018) ..........................................................................................13

*In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*,
   613 F.Supp.3d 1284 (S.D. Cal. 2020)...............................................................................10

*Touche Ross & Co. v. Redington*,
   442 U.S. 560 (1979)....................................................................................................11, 12

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
   444 U.S. 11 (1979)............................................................................................................16

*Wilson v. Hewlett–Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ..........................................................................................21

*Yoshikawa v. Seguirant*,
   74 F.4th 1042 (9th Cir. 2023) .....................................................................................12, 13

**Statutes**

45 CFR § 170.............................................................................................................................7

45 CFR § 171.............................................................................................................................7

45 CFR §171.102.................................................................................................................11, 13

45 CFR §171.103.................................................................................................................11, 14

DEFENDANT'S MOTION TO DISMISS
Case No. 3:24-cv-1132-JST

62602066.v3

42 USC § 300jj-52 ....................................................................................15, 16

21st Century Cures Act, Pub. L. No. 114-255 ........................................... *passim*

California Business and Professions Code § 17200 ......................8, 9, 20, 21

Civ.Code, § 52 ........................................................................................18

Communications Act ..............................................................................17

Federal Court Claims Act ........................................................................19

Federal Rules of Civil Procedure, Rule 12(b)(6) ....................................2, 9

Gov. Code § 91004 .................................................................................18

Health & Saf. Code, § 1430, subds. (a) and (b) .....................................18

Helping Families Save Their Homes Act of 2009 § 702 ......................12, 14

HIPAA .........................................................................................16, 19, 20

Sarbanes–Oxley Act.................................................................................12

**Other Authorities**

Report on Health Information Blocking, Report to Congress, April 2015 ..................................16

William H. Manz, Editor. 21st Century Cures Act: A Legislative History of
    Public Law No. 114-255 (2018) ..............................................................18

DEFENDANT'S MOTION TO DISMISS
Case No. 3:24-cv-1132-JST

62602066.v3

1    Defendant RTZ Associates Inc. ("RTZ") respectfully submits this Memorandum in

2  Support of his Partial Motion to Dismiss Plaintiff Intus Care, Inc's ("Intus") Third and Fourth

3  Claims in Intus's Complaint. (ECF No. 1) ("Compl.").

4  **I.    INTRODUCTION**

5    Defendant RTZ develops and licenses administrative software ("PACECare") specifically

6  targeted to a narrow slice of the healthcare industry:  Program of All-Inclusive Care for the

7  Elderly ("PACE") facilities who care for elderly patients.  Plaintiff Intus is a health analytics

8  company that purports to "synthesize" data.  Pertinent to this action, Intus contracts with various

9  PACE facilities who have licensed PACECare from RTZ.  Therefore, Intus's business model, in

10  part, depends on gaining access to RTZ's licensed PACECare software to extract the data it

11  seeks to synthesize for its common customers.  As alleged in the Complaint, Intus and RTZ were

12  unable to reach agreement on a nondisclosure agreement, and thus Intus was not authorized to

13  access the PACECare software licensed to various facilities.  As a result, Intus has now sued

14  RTZ alleging that it is an "information blocker" in violation of the federal 21st Century Cures

15  Act ("Cures Act")[1].

16    However, the Cures Act does not provide for a private right of action to Intus, either

17  expressly or impliedly.  Thus, to circumvent the Cures Act's restrictions on private rights of

18  action, Intus has manufactured a claim for negligence per se predicated on duties imposed by that

19  Act, specifically, the purported duty not to engage in "information blocking."  In other words,

20  Intus alleges that the Cures Act imposes a duty on RTZ to grant Intus access to PACECare,

21  ironically despite Intus's admission that it can obtain the same data directly from the PACE

22  facilities themselves without accessing RTZ's software.

23    As detailed below, Intus's negligence per se claim is improper as a matter of law.  First,

24  negligence per se claims are not standalone claims.  To succeed on its negligence per se claim,

25

26

27  [1] 21st Century Cures Act, Pub. L. No. 114-255, § 1000, 130 Stat. 1033, 1039 (2016) (stating that
    Division A of the act "may be cited as the 21st Century Cures Act), (45 CFR pts 170 and
28    171).

1  Intus must identify a cognizable source of common law duty, and it utterly has failed to do so

2  here.  Instead, Intus seeks to borrow a duty from the Cures Act.  However, the law in this District

3  is clear: Intus cannot rely on a federal statute as the source of duty to establish its negligence per

4  se claim. *Doe v. Meta Platforms, Inc*., No. 22-CV-03580-WHO, 2023 WL 5837443, at *13-14

5  (N.D. Cal. Sept. 7, 2023).  Rather the source of duty must arise from state statutory or decisional

6  law. *Id.*  Intus's complaint is bereft of any source of duty other than the Cures Act, and in the

7  absence of such, the negligence per se claim fails.

8     Intus's Fourth Claim (violation of California Business and Professions Code section

9  17200) likewise fails because it is a borrowing statute that is dependent on RTZ's alleged

10  violation of the Cures Act.  Accordingly, to the extent the Court finds that Intus's negligence per

11  se claim is legally insufficient, Intus's Section 17200 claim must necessarily share the same fate.

12  RTZ therefore submits that this Court should dismiss the Third and Fourth Claims without leave

13  to amend.

14  **II.    PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT**

15     **A.    The Parties.**

16     Intus, a Delaware corporation, is an analytics platform that synthesizes healthcare data.

17  Compl. ¶¶ 1, 3, 10.  RTZ Associates, Inc., is a California Corporation that develops and licenses

18  electronic health records software ("PACECare") to PACE facilities.  Compl. ¶¶ 1, 4, 5, 12.  Intus

19  and RTZ share common customers.  Compl. ¶ 12.  Between about June 2021 and September

20  2022, Intus sought access to the electronic health records stored on PACECare licensed to certain

21  common customers. Compl. ¶¶ 2, 12, 13.

22     **B.    The Underlying Dispute.**

23     In September 2022, RTZ expressed concerns that its intellectual property would be

24  compromised by Intus's access to PACECare and demanded that Intus sign a Non-Disclosure

25  Agreement ("NDA") as a condition for accessing the software to extract to the desired data.

26  Compl. ¶¶ 14, 17, and Exh. 1.  RTZ considers Intus to be its competitor despite Intus's allegations

27  to the contrary. Compl. ¶¶ 14, 20, and Exh. 1.  The parties attempted to negotiate an NDA, which

28

- 8 -
DEFENDANT'S MOTION TO DISMISS
62602066.v3                    Case No. 3:24-cv-1132-JST

1  eventually failed.  Compl. ¶¶ 16-18.  In September of 2022, RTZ sent Intus two cease and desist

2  letters informing Intus that in the absence of an executed NDA, Intus had no permission to access

3  RTZ's PACECare software. Compl. ¶ 16, Exh. 1.

4        Intus claims that in order to perform the analytics, it "must have direct access

5  to…electronic health care records that store…patients' electronic health information". Compl. ¶

6  11.  Intus concedes, however, that it can access the same data without accessing RTZ's software

7  solution, but that doing so is administratively burdensome. Compl. ¶ 19. ["The Intus Client was

8  told that Intus could only be provided with standard files from a data export, **requiring Intus**

9  **Clients to go through the administrative burden and time-consuming process of manually**

10  **downloading the data and then sending it to Intus.**" (Emphasis supplied.)]  Plaintiff does not

11  allege that the information contained in standard files would be any different than what Plaintiff

12  would obtain through RTZ's software.

13        Based on these allegations, Plaintiff asserts claims for negligence per se based on the

14  violation of the Cures Act (Compl. ¶¶ 43-49) and unfair business practices under California

15  Business and Professions Code section 17200 (the "UCL") (Compl. ¶¶ 50-60).

16  **III.     STANDARD OF REVIEW**

17        Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a

18  cause of action if it fails to state a claim upon which relief can be granted.  "Dismissal under

19  Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or

20  sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*,

21  521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a Plaintiff must plead

22  "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

23  550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content

24  that allows the court to draw the reasonable inference that the defendant is liable for the

25  misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing the plausibility

26  of a complaint, courts "accept factual allegations in the complaint as true and construe the

27  pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire &*

28

1   *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, Courts do not "accept as

2   true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

3   inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

4          When a motion to dismiss demonstrates that a claim fails as a matter of law, and that

5   amendment would be futile, the motion to dismiss should be granted without leave to amend.

6   *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013).

7   **IV.    ANALYSIS**

8          **A.    Intus's Third Claim for Negligence Per Se Warrants Dismissal.**

9                  **1.    Intus Has No Private Right of Action Under the Cures Act.**

10         Like a wolf in sheep's clothing, Intus's Third Claim for "negligence per se" is, in reality,

11  a direct claim for violation of the Cures Act.  Intus is forced to pursue this disguised claim

12  because (as discussed below), there is no express or implied private right of action to litigate an

13  alleged Cures Act violation.  Therefore, Intus attempts to use its negligence per se claim to

14  circumvent that restriction by alleging that a violation of that statute equates to a violation of *a*

15  *duty* imposed by that statute.  However, under the controlling law in this District, Intus cannot

16  rely on a federal statute as the source of duty to establish its negligence per se claim.  *Doe*, 2023

17  WL 5837443, at *13-14 ("The duty must arise from state statutory or decisional law, and must

18  impose on the defendants a duty to refrain from committing the sort of wrong alleged here.").  In

19  the absence of some analogous *state* common law duty, Intus's negligence per se claim fails as a

20  matter of law.  This is because a "negligence per se is not a separate cause of action but an

21  evidentiary doctrine" that requires a plaintiff to "plead facts to support application of the

22  negligence per se doctrine" elsewhere in the complaint within a cognizable cause of action.  *In re*

23  *Solara Medical Supplies, LLC Customer Data Security Breach Litigation*, 613 F.Supp.3d 1284,

24  1296 (S.D. Cal. 2020) (Dismissing plaintiff's negligence per se cause of action without prejudice

25  to allege alternative sufficient facts).  In other words, a proper source of duty must exist to

26  support the evidentiary doctrine.

27

28

DEFENDANT'S MOTION TO DISMISS

62602066.v3

1    In the context of this case, the Cures Act and its implementing regulations, prohibit

2   certain entities (called "actors") from engaging in "information blocking," which is defined as a

3   practice that is likely to interfere with access, exchange, or use of electronic health information.

4   45 CFR §171.103. "Interfere with" means "to prevent, materially discourage, or otherwise

5   inhibit." 45 CFR §171.102. Under the Cures Act, actors found to have committed information

6   blocking are subject to penalties issued by the Office of Inspector General ("OIG").

7    Here, Intus alleges that RTZ's refusal to grant it access to the PACECare software

8   somehow constitutes information blocking in violation of the Cures Act. In turn, Intus utilizes

9   the negligence per se doctrine to establish that RTZ's alleged violation of the Cures Act

10   constitutes a breach of a duty not to "block" information.

11    However, Intus cannot rely on the Cures Act as the source of duty for its negligence per

12   se claim because the Act does not allow for a private right of action. *See Gullatt v. Aurora Loan*

13   *Servs., LLC*, No. 1:10-CV-01109, 2010 WL 4070379, at *2 (E.D. Cal. Oct. 18, 2010) ["A private

14   right of action is the right of an individual to bring suit to prevent or remedy an injury that results

15   from another party's actual or threatened violation of a legal requirement."] "[T]he fact that a

16   federal statute has been violated and some person harmed does not automatically give rise to a

17   private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560,

18   568 (1979) quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979).

19    **2.    The Cures Act Does Not Create an Express Private Right of Action**

20    "Determining whether Congress intended to create a private right of action requires an

21   examination of the statute." *Gullatt*, 2010 WL 4070379, at *2. "And as with any case involving

22   the interpretation of a statute, [courts'] analysis must begin with the language of the statute

23   itself." *Touche Ross*, 442 U.S. at 568. "[T]he statute must either <u>explicitly</u> create a right of action

24   or <u>implicitly</u> contain one." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230 (9th Cir.

25   2008), emphasis supplied. "An express or explicit private right of action exists when the statute

26   contains language that defines the cause of action." *Gullatt*, 2010 WL 4070379, at *2; *see also*

27

28

DEFENDANT'S MOTION TO DISMISS
62602066.v3

1    *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001) (instructing that the starting point for

2    determining congressional intent is an examination of the text and structure of the statute.)

3            Here, the Cures Act is devoid of any explicit provision allowing for a private right of

4    action, and Intus' Complaint fails to point to any. As such, the appropriate conclusion is that

5    there is no such express right. *See In re Digimarc Corp. Derivative Litig.*, 549 F.3d at 1230

6    (holding that "Section 304 [of the Sarbanes–Oxley Act] does not explicitly create a private right

7    of action because nothing in the text of the section makes any mention of a cause of action.") On

8    its face, the Cures Act also lacks any mention of a cause of action, and thus evidences

9    Congress's intent not to provide such an express right. *See Touche Ross.,* 442 U.S. at 572 ("when

10   Congress wished to provide a private damage remedy, it knew how to do so and did so

11   expressly.")

12                    **3.        The Cures Act Does Not Imply a Private Right of Action**

13           In the absence of an expressly provided right of action in a statute, "it is necessary to

14   determine if an implied private right of action exists by examining Congress's intent in enacting

15   the statute." *Logan v. U.S. Bank Nat. Ass'n*, No. CV09-08950 MMMPLAX, 2010 WL 1444878,

16   at *7 (C.D. Cal. Apr. 12, 2010), *aff'd*, 722 F.3d 1163 (9th Cir. 2013) (holding that no private

17   right of action existed under Section 702 of the Helping Families Save Their Homes Act of 2009

18   because Congress neither expressly nor impliedly created a private right of action to bring suit

19   under Section 702 and dismissing the case for lack of subject matter jurisdiction). See also, *In re

20   Digimarc Corp. Derivative Litig.*, 549 F.3d at 1230 ("If not express, a right of action must be

21   implied because 'private rights of action to enforce federal law must be created by Congress.'")

22   As the Ninth Circuit has recently acknowledged, "[t]he Supreme Court has 'increasingly

23   discouraged the recognition of implied rights of actions without a clear indication of

24   congressional intent.'"  *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023), citing to

25   *Duplan v. City of New York*, 888 F.3d 612, 621 (2d. Cir. 2018).

26           The Supreme Court, in *Alexander v. Sandoval*, 532 U.S. 275 (2001), narrowed the

27   framework for evaluating whether a statute implies a private cause of action. The *Sandoval* Court

28

- 12 -

DEFENDANT'S MOTION TO DISMISS

observed that "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Sandoval*, 532 U.S. at 286. Unless the statute in question reveals an intent to create a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 287 (also cited to and quoted by *Yoshikawa*, 74 F.4th at 1045 . Thus, pursuant to *Sandoval* (and *Yoshikawa*), courts are tasked with determining only whether Congress intended to create a private cause of action.  *Segalman v. Sw. Airlines Co*., 895 F.3d 1219, 1223 (9th Cir. 2018).

When analyzing Congressional intent to create an implied private right of action, courts limit their inquiry to three relevant sources: (1) 'rights-creating' language in the statutory text; (2) the statutory structure within which the provision in question is embedded; and, <u>only if the statutory text and structure yield no conclusive answer</u>, (3) the legislative history. *Logan*, 2010 WL 1444878, at *7.

### a. The Absence of the "Rights-Creating" Language in the Cures Act Indicates No Congressional Intent to Create a Private Right of Action

"Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Sandoval*, 532 U.S. at 289 *quoting California v. Sierra Club,* 451 U.S. 287, 294 (1981).

Here, the Cures Act clearly focuses on the person and entity *regulated* (i.e., the alleged information blocker) rather than the individuals protected.  The Cures Act specifies three categories of entities or "actors" that must comply with information blocking requirements and prohibits only those individuals/entities from engaging in information blocking. Specifically, "actor means a health care provider, health IT developer or certified health IT, health information network or health information exchange."[2] 45 CFR § 171.102. Furthermore, the Cures Act

---

[2] Health Information Networks (HINs) and Health Information Exchanges (HIE) are combined into one defined type in the Final Rule.

DEFENDANT'S MOTION TO DISMISS

1  defines information blocking in terms of a practice committed by an actor and provides several

2  exceptions to ensure an actor's actions do not constitute information blocking.[3] In fact, the Cures

3  Act fails to even define who or what is protected by the information blocking prohibition.

4        In *Logan*, the Court found that the federal statute at issue (Section 702 of the Helping

5  Families Save Their Homes Act) did not focus on the individuals intended to be protected by the

6  statute but rather on immediate successors in interests of federally regulated mortgages or

7  residential properties that are foreclosed, which were the entities regulated by the statute. *Logan*,

8  2010 WL 1444878, at *8. The *Logan* court further observed that the statute at issue did not grant

9  new rights or provide new remedies for the tenants in the event the successor in interest violated

10  the provisions of the statute. *Id*. The court therefore concluded that "[w]ithout clearer language,

11  the court cannot find that [the statute at issue] gives rise to an implied private right of action." *Id*.

12  The court in *Gullatt* reached the same conclusion and held that the focus on the regulated party

13  rather than on the individuals protected by the statute "does not tend to imply a private right of

14  action for individuals potentially harmed." *Gullatt*, 2010 WL 4070379, at *4.

15        Here, Cures Act also does not identify the individuals protected, but rather focuses on the

16  persons regulated (i.e., information blockers). Accordingly, it is clear there is an absence of

17  "rights-creating" language in the statutory text and that Congress did not intend to create an

18  implied private right of action.

19              **b.    There is No Evidence in the Statutory Structure of the Cures**

20                   **Act to Provide For a Private Right of Action**

21        The second prong of the *Logan* analysis (statutory structure) also establishes that the

22  Cures Act does not imply any private right of action. To discern congressional intent, the courts

23  ————————————————

24  3 Information blocking.
25      (a) Information blocking means a practice…
        (b) If conduced by:
26          (1) A health IT developer of certified IT, health information network or health
                information exchange…
27          (2) A health care provider…
28  45 CFR § 171.103 Information blocking

1   must also "examine the entire statutory scheme provided by Congress" to determine legislative

2   intent. *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 836 (9th

3   Cir.2004). Importantly, the Supreme Court has specifically acknowledged that, "[t]he express

4   provision of one method of enforcing a substantive rule suggests that Congress intended to

5   preclude others." *Sandoval*, 532 U.S. at 290. In other words, statutes that specifically articulate a

6   non-court enforcement mechanism evidence statutory structure strongly indicating no private

7   right of action.

8        Here, the statutory structure of the Cures Act clearly provides for a formal and structured

9   complaint and enforcement process to be handled by <u>the OIG and Office of the National</u>

10  <u>Coordinator for Health Information Technology ("ONC")</u>. Specifically, Section 300jj-52(b)

11  titled "Inspector General authority" defines who may investigate, determine violations of, and

12  impose penalties for, information blocking actions:  "[T]he inspector general of the Department

13  of Health and Human Services may investigate any claim" and that, following an investigation, if

14  an actor is found to be information blocking, the actor "shall be subject to a civil monetary

15  penalty determined by the Secretary for all such violations identified through such investigation,

16  which may not exceed $1,000,000 per violation." 42 USC § 300jj-52(b). Further, the Cures Act

17  instructs the ONC to "implement a standardized process for the public to submit reports on

18  claims of [information blocking.]" 42 USC § 300jj-52(d)(3). Instead of allowing the courts to

19  determine potential information blocking violations, the statute instructs the ONC to create a

20  standardized process for complaints. That standardized process must "provide for the collection

21  of such information as the originating institution, location, type of transaction, system and

22  version, timestamp, terminating institution, locations, system and version, failure notice, and

23  other related information." 42 USC § 300jj-52(d)(3). The statute also instructs the ONC as to

24  what kind of information must be collected as part of its investigation. *Id*.

25       Accordingly, the statute defines and directs the investigation of alleged Cures Act

26  violations and the determination of penalties to the HHS (via the OIG and ONC), and not the

27  courts. This is instructive because "where a statute expressly provides a particular remedy or

28

- 15 -
DEFENDANT'S MOTION TO DISMISS

remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc.*
*(TAMA) v. Lewis*, 444 U.S. 11, 19 (1979). "The context of the statute guides the court because
where a 'statute limits a thing to be done in a particular mode, it includes the negative of any
other mode.'" *Logan*, 2010 WL 1444878, at *8 quoting *Transamerica Mortg. Advisors*, 444 U.S.
at 19.

It is also worth noting that before enacting the Cures Act, Congress was instructed about
forthcoming difficulties with the investigation of information blocking cases, which suggests that
Congress intentionally conferred the tasks to ONC instead of to the courts:

> Given the difficult evidentiary challenges and complex questions of fact and
> interpretation presented, the task of investigating and confirming cases of
> information blocking may be better suited to an agency or agencies with
> enforcement expertise and compulsory processes for obtaining evidence.[4]

Information blocking violations live within two highly regulated worlds: (i) health
information; and (ii) technology access and interfaces. As suggested by Congress above, the
courts are less equipped to understand the actors at play and the technologies involved that are
implicated by the Cures Act. Furthermore, even if a court could correctly determine the presence
of a violation, how would the court determine damages? As acknowledged by Congress,
agencies (i.e., OIG and ONC) are far better equipped to handle such complaints and to assess the
appropriate monetary sanctions for such violations.

For example, although OIG is tasked with the investigation of a violation and has
authority to issue penalties, ONC has the authority to review claims of possible information
blocking against health IT developers that may constitute a non-conformity under the ONC
Health IT Certification Program. 42 USC § 300jj-52(d). If such a violation is found, ONC can
issue disincentives under the Certification Program. OIG may also refer a case to the HHS Office
for Civil Rights if it determines that there is a potential for a violation of HIPAA privacy and
security rules.  42 USC § 300jj-52(b)(3). Notably, Congress placing investigative and

---

[4] Office of the National Coordinator for Health Information Technology, Report on Health
Information Blocking, Report to Congress, April 2015, https://www.healthit.gov/data/data-
briefs/report-health-information-blocking-pdf.

1  enforcement power upon an agency in charge of interpreting an Act is not uncommon, and courts

2  are reticent to provide a private right of action where none is expressly provided.[5]

3      At bottom, the statutory scheme of the Cures Act clearly provides for a structured process

4  in which information blocking complaints must be investigated and enforced by the OIG and

5  ONC. The Cures Act omits any express private right of action. As gleaned through its statutory

6  text and structure, Congress also clearly indicated the absence of any implied private right of

7  action as well.

8          **c.**    **The Legislative History of the Cures Act Does Not Support**

9              **Implied Private Right of Action**

10      "[I]f – and only if – statutory text and structure have not conclusively resolved whether a

11  private right of action should be implied, we turn to the legislative history and context within

12  which a statute was passed". *Logan*, 2010 WL 1444878, at *10.

13      As amply demonstrated above, because the statutory text and structure conclusively

14  resolve that the Cures Act does not provide for an implied private right of action, legislative

15  history and context need not be analyzed. Nonetheless, a deep dive of the legislative history and

16  context shows that no private right of action was ever addressed or considered by the drafters.

17

18

19

20  [5] See *Cnty. Commc'ns Corp. v. California Catalog & Tech*., 594 F.3d 1149, 1155 (9th Cir. 2010)
["A broad assertion of a private right of action is not easily maintained under the Federal

21  Communications Act, as our statutory analysis is intertwined with the requisite deference to the
Commission's interpretation of the Federal Communications Act. This is so because 'the FCC is

22  the agency that is primarily responsible for the interpretation and implementation of the
Telecommunications Act and of its own regulations.' *Greene v. Sprint Commc'ns Co*., 340 F.3d

23  1047, 1052 (9th Cir.2003) (citation omitted); see also *Howard v. AOL*, 208 F.3d 741, 752 (9th
Cir.2000) ('Congress created the FCC to enforce the Communications Act. The Supreme Court's

24  opinions have repeatedly emphasized that the FCC's judgment regarding how the public interest
is best served is entitled to substantial judicial deference.') (quoting *FCC v. WNCN Listeners*

25  *Guild*, 450 U.S. 582, 596, 101 S.Ct. 1266, 67 L.Ed.2d 521 (1981)) (alteration and internal

26  quotation marks omitted). Absent a supporting Commission determination, and with no showing
of Congressional intent to create a private right of action, North County cannot assert a viable

27  claim for relief."]

28

DEFENDANT'S MOTION TO DISMISS
62602066.v3

1    Instead, the same emphasis on agency enforcement is littered throughout. For example, when

2    describing the new bill, Congress noted that:

3    …the provision would give the HHS Inspector General new enforcement
     authority to investigate claims of EHR vendors being in violation of the
4    attestation requirements, or EHR vendors and users engaging in information
     blocking.  ONC would be required to establish a standardized process for the
5    public to submit reports of EHR technology that was not interoperable, EHR
     technology that resulted in information blocking, or actions taken by vendors or
6    users of EHR technology that impeded interoperability or resulted in information
     blocking.[6]

7    Again, it is clear that the investigation and enforcement of information blocking actions

8    were to be entrusted to various federal agencies rather than the courts.  Moreso, Congress had

9    specific penalties in mind for an actor who committed a violation, and how to use recovered

10   penalties:

11
     Any individual or entity engaged in [information blocking], would be subject to
12   **civil monetary penalties (CMPs) <u>that the Secretary by rulemaking
     determined appropriate</u>**. The provision would authorize the appropriation of $10
13   million for FY2017, to remain available until expended, for enforcement
     activities. And it would allow the Inspector General to retain and use any CMP
14   amounts it collected for such activities. It also would extend the privilege and
     confidentiality protections under Title IX, Part C, of the PHSA to claims of
15   information blocking and reports related to the vendor attestation requirements.[7]

16   Congress did everything to demonstrate that there is no private right of action for the

17   Cures Act.  Had Congress or an agency intended to provide a private right of action, it would

18   have been raised in the legislative history, in the statute, or in the Federal Register[8]. (Compare,

19   e.g., Gov. Code § 91004; Civ.Code, § 52; Health & Saf. Code, § 1430, subds. (a) and (b) [each

20   expressly creating a private right to sue].)

21

22

23   _____

24   [6] William H. Manz, Editor. 21st Century Cures Act: A Legislative History of Public Law No.
         114-255 (2018).
25   [7] William H. Manz, Editor. 21st Century Cures Act: A Legislative History of Public Law No.
26       114-255 (2018) (emphasis supplied).
27   [8] Although the Federal Register is not discussed, it too had an absence of language providing a
         private right of action and instead discussed how the ONC and OIG would coordinate to
28       investigate and enforce potential information blocking violations.

DEFENDANT'S MOTION TO DISMISS
62602066.v3

**B.**      **Without a Federal Source of Law to Support the Required Element of Duty, the Negligence Per Se Claim Must Fail**

All of the above leads to this important point:  the absence of a private right of action has devastating effect on Intus's negligence per se claim. Under California law, negligence per se is not a separate cause of action, but a negligence claim analyzed under the per se doctrine.  See *Dent v. Nat'l Football League*, 902 F.3d 1109, 1118 (9th Cir. 2018).

> Under that doctrine, the standard of care can be established by a statute, and a defendant's violation of that statute can "give rise to a presumption that it failed to exercise due care" where that violation "proximately caused an injury," the injury resulted from something the statute was designed to prevent, and the person who was injured was "one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

*Doe*, 2023 WL 5837443, at \*13 (quotation omitted). Therefore, the basic elements of a negligence claim, including duty of care and causation, must still be alleged.  See *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (2006).

In *Doe*, plaintiffs argued that a state law negligence per se action can be premised on the duty arising from a federal statute, specifically, HIPAA. *Doe*, 2023 WL 5837443. The court had to grapple with whether a plaintiff could allege a negligence per se claim based on a federal statute (there, HIPAA) that did not provide for a private right of action, i.e., to use that federal statute as the source of defendant's duty. *Id.*

To aid in its analysis, the *Doe* Court looked to *Delta Sav. Bank v. United States*: "'[t]o bring suit under the FTCA based on negligence per se, a duty must be identified, **and this duty cannot spring from a federal law**. <u>The duty must arise from state statutory or decisional law, and must impose on the defendants a duty to refrain from committing the sort of wrong alleged here,</u>' and citing authority explaining '[t]he pertinent inquiry is whether the duties set forth in the federal law are analogous to those imposed under local tort law.'" *Doe*, 2023 WL 5837443, at \*13 quoting *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2001), emphasis supplied.

After determining that HIPAA did not provide for a private right of action, and that plaintiff had failed to identify any other state common law duty, the *Doe* Court granted the

- 19 -

1  defendant's motion to dismiss the negligence per se claim. In so doing, the Court thoroughly

2  analyzed the landscape of case law addressing whether a negligence per se claim predicated on a

3  federal statute with no private right of action is viable. *Doe* concluded it was not: "**[f]ollowing**

4  **the majority of the cases that have considered the issue**, the negligence per se claim based on

5  a duty created by HIPAA is DISMISSED with leave to amend so that plaintiffs may attempt to

6  identify a state law source of the duty of care." *Doe*, 2023 WL 5837443, at *14, emphasis

7  supplied.[9]

8        Like the plaintiff in the *Doe* case, here Intus has based its negligence per se claim on an

9  alleged violation of a federal law, i.e., the Cures Act. In so doing, Intus untenably looks to the

10  Cures Act as the source of "duty" to support its negligence per se claim, despite that such a duty

11  "cannot spring from a federal law." *Doe*, 2023 WL 5837443, at *13 quoting *Delta Sav. Bank*,

12  265 F.3d at 1026. Tellingly, Intus's complaint is bereft of any other source of duty to prop up its

13  negligence per se claim. And in the absence of any other state statutory or decisional law

14  creating the duty at issue, Intus's negligence per se claim fails as a matter of law. For this reason,

15  Intus's Third Claim for negligence per se should be dismissed.

16        **C.    Plaintiff Has Failed to State a Claim Under the Unfair Competition Law,**

17             **Cal. Bus. & Prof. Code Section 17200.**

18        Intus's Fourth Claim for violation of California Business and Professions Code section

19  17200 should share the same fate. *Compl.*, ¶¶ 50-60. Section 17200 prohibits "unfair

20  competition" which is "any unlawful, unfair or fraudulent business act or practice . . . ." Cal.

21  Bus. Prof. Code § 17200. "The UCL 'borrows violations of other laws and treats them as

---

23 [9] It is expected that Intus, in opposition to this motion, will attempt to seize on the minority
24  decisions disregarded by the *Doe* court, including *In Re: Ambry Genetics Data Breach
    Litigation*, 567 F.Supp 3d 1130 (S.D. Cal. 2021). Respectfully, such case law has been
25  considered and rejected in this District. *Doe* was decided by this Court in 2023, and thus
    represents the most current and controlling law on the issue. In expressly considering – and
26  rejecting – that holding in *Ambry* (and other similar authorities), the Northern District of
    California is aligned with the majority of cases that strike a negligence per se claim that is
27  reliant on a federal statute that has no private right of action, expressed or implied. *Ambry*
28  and its cohorts are therefore neither compelling nor controlling law in this District.

1   unlawful practices that the unfair competition law makes independently actionable.'" *Wilson v.*

2   *Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quotation omitted).

3        Here, Plaintiff's rests its 17200 claim on RTZ's alleged violation of the Cures Act.

4   Compl. ¶ 57. Because Plaintiff cannot pursue a private action for violations of the Act, Plaintiff

5   has not (and cannot) properly plead an underlying violation of the Cures Act to fulfill the unfair

6   or illegal conduct component of its UCL claim. Thus, Plaintiff's UCL claim fails and it should be

7   dismissed along with Intus's Third Claim. *Leong v. Square Enix of Am. Holdings, Inc*., No.

8   CV09-4484 PSGVBKX, 2010 WL 1641364, at *7 (C.D. Cal. Apr. 20, 2010), aff'd, 462 F. App'x

9   688 (9th Cir. 2011); *Roling v. E\*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1192 (N.D. Cal. 2010).

10  **V.    CONCLUSION**

11       For the foregoing reasons, Defendant RTZ respectfully requests that the Court dismiss

12  Plaintiff's Third Claim for negligence per se and Fourth Claim for unfair competition law

13  violation (Cal. Bus. & Prof. Code Section 17200) without leave to amend.

14

15  Dated:  March 19, 2024                      NOSSAMAN LLP

16

17                                              By:  /s/ David C. Lee
                                                     David C. Lee
18                                                   Kasia Penn

19                                              Attorneys for Defendant RTZ ASSOCIATES, INC.

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS

62602066.v3