MANATT, PHELPS & PHILLIPS, LLP
Ileana M. Hernandez (Bar No. 198906)
IHernandez@manatt.com
Charles E. Weir (Bar No. 211091)
CWeir@manatt.com
Val Bianchi-Demicheli (Bar No. 347028)
VBianchi-demicheli@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

SAVAGE LAW PARTNERS, LLP
C. Alexander Chiulli (Admitted Pro Hac Vice)
achiulli@savagelawpartners.com
564 South Water Street
Providence, RI 02903
Telephone: (401) 238-8500
Facsimile: (401) 648-6748

*Attorneys for Plaintiff*
INTUS CARE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUS CARE, INC.<br><br>Plaintiff,<br><br>v.<br><br>RTZ ASSOCIATES, INC.; and DOES 1 through 10,<br><br>Defendants. | Case No. 4:24-cv-1132-JST<br><br>**AMENDED COMPLAINT FOR:**<br><br>(1) Intentional Interference with Contractual Relations<br>(2) Intentional Interference with Prospective Economic Advantage<br>(3) Unfair Competition, Cal. Bus. & Prof. Code § 17200 *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Intus Care, Inc. ("Intus") alleges the following in support of this complaint for compensatory damages, punitive damages, and injunctive relief against Defendant RTZ Associates, Inc. ("RTZ"):

# INTRODUCTION

1. Intus is a health analytics company that contracts with Program of All-Inclusive Care for the Elderly ("PACE") programs (the "Intus Clients"). Intus synthesizes data from each of the PACE programs' electronic health records that stores its patients' electronic health information, and uses that data to identify risks, visualize trends, and optimize patient care. Intus Clients, who are health care providers, expect their electronic health records to be seamlessly integrated into Intus's software without additional or manual effort on the part of the PACE programs themselves in order to reduce the burden on the Intus Clients' clinical staff and care workers in using Intus's services. Like many PACE programs, Intus Clients capture and store their patients' electronic health data in an electronic health record program operated by RTZ, called PACECare. Intus Clients need Intus to access the electronic health record data that the Intus Clients store on PACECare on a regular and consistent basis.

2. With RTZ's knowledge and consent, Intus obtained the electronic health records data stored on PACECare through a simple file extraction process or interface. However, starting in September of 2022, RTZ refused to provide Intus access to the data on PACECare, and later prohibited Intus Clients from providing access to Intus. RTZ is engaging in information blocking in violation of federal laws and regulations. Accordingly, Intus brings this action to guarantee its ability to access the electronic health record data stored on PACECare so that it can comply with its contractual obligations to Intus Clients, and to enjoin RTZ from further preventing Intus from accessing the electronic health record data.

## PARTIES

3. Intus Care, Inc. is a Delaware corporation with its principal place of business in Providence, Rhode Island.

4. RTZ Associates, Inc. is a California corporation with a principal place of business in Lafayette, California.

5. RTZ is a provider of PACE software, which is a cloud-based electronic health record software specifically developed to support the needs of PACE programs.

6. The true names and capacities of Defendants Does 1 through 10, inclusive, are currently unknown to Intus. Accordingly, Intus sues each and every Doe defendant by such fictitious names. Each Doe defendant, individually and collectively, is responsible in some manner for the unlawful acts alleged herein. Intus will seek leave of this Court to amend this Complaint to reflect the true names and capacities of the Doe defendants when their identities become known.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction based upon 28 U.S.C. § 1332(a) because there is a complete diversity of citizenship between Intus and RTZ and the amount in controversy exceeds $75,000.

8. Venue lies in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b) because a substantial part of the events that are the subject matter of this lawsuit occurred in this judicial district and, alternatively, because RTZ maintains its principal place of business in this district.

## FACTUAL ALLEGATIONS

**A. Intus Provides Vital Services to Intus Clients**

9. Intus Clients include numerous PACE programs. The PACE program is a critical federal program that helps people meet their health care needs in their own community instead of going to a nursing home or other care facility. Intus Clients provide Medicare and Medicaid benefits that cover care and services for those

enrolled, including emergency services, home care, hospital care, laboratory and x-ray services, medical specialty services, nutritional counseling, occupational and physical therapy, prescription drugs, preventative care, and social services. PACE programs directly provide services primarily in an adult day health center and are supplemented by in-home and referral services in accordance with the patient's needs.

10. Intus is a healthcare analytics company that closely works with Intus Clients to synthesize financial, clinical and administrative data to identify trends in the PACE members served by the PACE program by integrating the data with electronic health records, claims and accounting software to highlight clinical risks in Intus Clients' elderly patients.

11. By synthesizing data from its Intus Clients, Intus predicts patients at high risk for hospitalizations, readmissions, and the onset of chronic diseases, seeks to reduce overall expenditures through early patient risk detention, and improves organizational performance through trend analysis and best practice identification. This enables Intus Clients to perform better care coordination and targeted care and services to its patients. In order to perform these and other tasks, Intus must have direct access to Intus Clients' electronic health records that store their patients' electronic health information.

12. Health care providers all use an electronic health records system that stores heath records and data. Such systems are often referred to as EHR or EMR systems. These systems are required for each health provider to operate and treat patients, and it can be difficult and expensive for a health care provider to change their EHR system.

13. Many Intus Clients store their patients' electronic health data in an electronic health record program called PACECare, which is operated by RTZ. As detailed herein, RTZ is the only EHR system that is engaged in conduct to block Intus

Clients from accessing their own data so that they can work with Intus to improve care for their patients.

### B. RTZ denies Intus access to Intus Clients' electronic health data stored on PACECare

14. In approximately June 2021, Intus contacted RTZ requesting access to the electronic health records data documented by the Intus Clients and stored on PACECare. All Intus Clients wanted and consented to Intus having access to the Intus Clients' data stored on PACECare. Intus sought this data via a "Secure File Transfer Protocol," which would enable Intus to extract the electronic health records data via data files without actually accessing PACECare's software. With RTZ's knowledge and consent, Intus obtained the electronic health records data by extracting the necessary data from approximately June 2021 to September 2022.

15. In September of 2022, over a year after Intus's initial request for such access, and based upon the view that Intus is a competitor, RTZ suddenly demanded that Intus sign a Non-Disclosure Agreement ("NDA") as a condition of access to the data. While there was no basis for RTZ to demand an NDA as a condition of Intus receiving access to the data of the Intus Clients, Intus attempted to work with RTZ to assuage their concerns.

16. Unfortunately, the draft NDA prepared by RTZ was incomplete, and inaccurately reflected the relationship of the parties. Among other missing elements, the NDA did not grant access to PACECare, which was the primary point of the NDA. In response, Intus suggested changes to the NDA to properly reflect the nature of the agreement, and proposed an access agreement that would have granted access to PACECare.

17. RTZ responded to the proposal by sending Intus cease and desist letters, stating that, in the absence of an executed NDA, Intus had "no rights or permission to access RTZ's software product." Attached as **Exhibit 1** are the September 14, 2022 and September 28, 2022 cease and desist letters from RTZ. RTZ did not

provide an alternative method of access to its data. Shortly thereafter, an RTZ executive sent Intus an email stating that RTZ did not intend to engage in any further discussions.

18. RTZ expressed concerns that its intellectual property would be compromised if Intus were to obtain access to PACECare without executing the NDA first. Intus initially believed that RTZ was operating in good faith, and simply did not understand that Intus was not seeking access to RTZ's intellectual property. As such, Intus repeatedly stated to RTZ in numerous phone calls and email exchanges that what Intus wanted, and is entitled to, is a single file of Intus Clients' data. Intus reiterated its willingness to sign an NDA that accurately reflected the arrangement between the parties, and shared a further revised NDA that contained additional (yet unnecessary and redundant) safeguards for RTZ's intellectual property. RTZ repeatedly denied Intus's request.

19. From September 2022 to March 2023, Intus continued to initiate discussions with RTZ in an attempt to reach a mutually beneficial agreement that would allow Intus to extract the Intus Clients' data from PACECare without manual effort by Intus Clients. In each instance, RTZ refused to cooperate with Intus.

20. Finally, in December 2023, an Intus Client made Intus aware of a provision in the Intus Client's contract with RTZ, which prohibited Intus Clients from providing Intus with direct access to the PACECare system for any data extractions. The Intus Client was told that Intus could only be provided with standard files from a data export, requiring Intus Clients to go through the administrative burden and time-consuming process of manually downloading the data and then sending it to Intus.

21. After the commencement of the present lawsuit, RTZ's counsel sent additional correspondence to Intus, reiterating RTZ's position that it will not allow Intus to access the data on behalf of the Intus Clients. Attached as **Exhibit 2** are

1  these additional letters from RTZ's counsel, dated March 12, 2024 and March 26,
2  2024.

3      22.    Intus has long suspected that RTZ's illegal and anti-competitive conduct
4  was driven by RTZ's desire to create a product that competes with Intus's analytics
5  products. Since the initiation of this lawsuit, RTZ's intent has been confirmed. It
6  announced a competing analytics product in March 2024.

7      23.    It is now clear that RTZ's anti-competitive and illegal conduct was and
8  is designed to destroy Intus's business.

### C. **RTZ's conduct constitutes information blocking in violation of the 21st Century Cures Act and the federal information blocking regulations**

11     24.    The 21st Century Cures Act was designed to accelerate medical product development, promote interoperability, and support patients. The Act created rules to promote interoperability, prevent information blocking, and ensure various actors in the healthcare IT industry and patients can access electronic health information. Under these rules, health IT developers of certified health IT (e.g. electronic health record vendors), health information exchanges, and health care providers are prohibited from interfering with or discouraging access to, exchange of, or use of electronic health information. Further, the United States Department of Health and Human Services, Office of the National Coordinator for Health Information Technology ("ONC") implemented information blocking regulations to avert the use of "practices that increase the cost, complexity, or other burden associated with accessing, exchanging, or using electronic health information." 84 F.3d Reg. 7424, 7516. Violating the information blocking rules under the 21st Century Cures Act can result in fines of up to $1 million per violation.

25     25.    RTZ is considered a "health information network or health information exchange"[1] pursuant to 45 CFR §171.102, and thus an "actor" subject to the federal

---
[1] An entity is a health information network or health information exchange if it "determines, controls, or requires the use of any technology or services for access, exchange, or use of electronic health information: (1) Among more than two

information blocking regulations. RTZ externally markets that PACECare provides "[c]ertified lab interfaces (e.g. Quest, Sunquest)" and "[c]ertified e-prescribe interfaces (e.g. CareKinesis, Surescripts)." *See* https://paccare.com/. RTZ is facilitating access to and exchange of data between and among, at minimum, these entities (i.e. Quest, Sunquest, CareKinesis, and Surescripts) and PACE programs.

26. RTZ's unjustified and erroneous refusal to grant Intus access to the data it seeks from PACECare constitutes an action that interferes with access, exchange, or use of electronic health information, and such action does not fall into any exceptions to the information blocking rules. *See* 45 CFR §171.103.

27. Intus Clients seek Intus's assistance to analyze data and use it to help them effectively coordinate, manage, and improve patient care for PACE program beneficiaries. RTZ's refusal to allow Intus direct access to the data significantly delays and impedes Intus's access and increases the costs, complexity, and burden associated with Intus's use of this data on behalf of Intus Clients.

28. In light of RTZ's violation of the 21st Century Cures Act and the federal information blocking regulations, Intus submitted a complaint to the ONC on February 7, 2024. Intus provided RTZ a courtesy copy of the complaint it submitted to the ONC and another opportunity to remediate the situation, but RTZ continues to violate the law.

---

unaffiliated individuals or entities (other than the individual or entity to which this definition might apply) that are enabled to exchange with each other; and (2) That is for a treatment, payment, or health care operations purpose, as such terms are defined in 45 CFR § 164.501 regardless of whether such individuals or entities are subject to the requirements of 45 CFR parts 160 and 164." The ONC has stated that the definition of a health information network or health information exchange may include a broad range of organizations, such as, without limitation, a range of "organizations, entities, or arrangements that enable EHI to be accessed, exchanged, or used between or among particular types of parties or for particular purposes." 84 Fed. Re. 7424, 7513. And the ONC has further explained that an organization or entity may qualify as an health information network or health information exchange even if it "facilitate[s] or enable[s] the access, exchange, or use of EHI' only "for a limited scope of participants and purposes." *Id*.

### D. **RTZ's Contract Provisions Blocking Intus and Letters to Intus Clients Falsely Claiming Contractual Breaches and Intellectual Property Violations**

29. Since at least early 2024, RTZ has begun inserting provisions in its agreements with Intus Clients, prohibiting Intus Clients from providing Intus with access to their data stored on the PACECare system.

30. In at least one instance, RTZ has sent a cease-and-desist letter to an Intus Client, threatening the Intus Client with consequences related to a "breach of contract," and requesting that the Intus Client stop granting access to any employee of Intus to its data stored on the PACECare system. The letter also stated that RTZ has deactivated any accounts of Intus employees who had previously been granted access. Consequently, that Intus Client has reluctantly terminated its contractual relationship with Intus because RTZ was its only EMR option, and RTZ's threat made it clear that the Intus Client could be left without an EMR if it refused to comply with RTZ's demands.

31. Upon information and belief, RTZ has been sending and/or is about to send similar letters to other Intus Clients, falsely claiming contractual breaches by the Intus Clients, falsely claiming intellectual property violations by Intus, and misrepresenting what the Intus Clients are allowed to do with their own data.

32. Intus Clients cannot operate without an EMR system, and RTZ is leveraging its position as EMR provider to force Intus Clients to terminate their contractual relationships with Intus, and to force prospective clients not to contract with Intus.

### FIRST CLAIM FOR RELIEF
### (Intentional Interference with Contractual Relations)

33. Intus repeats and realleges all prior allegations of this complaint.

34. On or around November 2020 through June 2022, Intus entered into contracts with Intus Clients to synthesize data from each of the Intus Clients'

electronic health records that stores its patients electronic health information, and analyze that data to help Intus Clients effectively coordinate, manage, and improve care for PACE program patients.

35. RTZ is not a party to the contracts between Intus and the Intus Clients.

36. RTZ knew that Intus and Intus Clients had entered into these contracts because Intus communicated to RTZ the existence of these contracts. Intus also communicated to RTZ its need to access Intus Clients' health data stored on PACECare in order to perform its contractual obligations under the contracts. RTZ was and remains aware of the damaging nature of its actions. Thus, RTZ's misconduct is wanton, willful, or at least engaged in with reckless disregard for its damaging nature.

37. Since about September of 2022 to the present day, RTZ has intentionally been interfering with the contractual relationships between Intus and the Intus Clients by unlawfully refusing to allow Intus direct access to the data. RTZ's refusal to provide access significantly delays and increases the costs, complexity, and burden associated with Intus's use of this data on behalf of Intus Clients.

38. RTZ's actions were designed to interfere with the contracts between Intus and the Intus Clients or to otherwise disrupt the contractual relationships between Intus and the Intus Clients

39. RTZ's actions have actually interfered with the contracts between Intus and the Intus clients, and disrupted the contractual relationships between them. RTZ's actions have resulted and continue to result in delays and inefficiencies in Intus's performance of its contractual obligations, and have forced Intus to engage in costly and time-consuming solutions. This situation caused and continues to cause problems with many of the Intus Clients. Among other manifestations of these problems are:

- because Intus was unable to access the data stored by RTZ, an Intus Client terminated its contractual relationship with Intus;

- at least one Intus Client, who had no other EMR option than RTZ, has terminated its contractual relationship with Intus after receiving a threatening letter from RTZ, which stated that the Intus Client was in breach of its contract with RTZ for allowing Intus to access its data;
- at least one Intus Client ceased all payments to Intus and requested that Intus pause its performance indefinitely until it could secure access to data stored with RTZ;
- multiple Intus Clients, including one of Intus's biggest clients, stopped paying Intus's services for multiple months because of the issues caused by RTZ;
- multiple Intus Clients may not move forward with further contracting with Intus.

40. But for RTZ's interference, Intus would have performed its obligations under its contracts with the Intus Clients, without delays, inefficiencies, and costly workaround solutions. But for RTZ's interference, the contractual relationships between Intus and the Intus clients would not have been damaged.

41. As a direct and proximate result of RTZ's tortious conduct, Intus has suffered and will continue to suffer economic losses resulting from the interference with the contractual relationships between Intus and the Intus Clients as well as other damages, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
**(Intentional Interference with Prospective Economic Advantage)**

42. Intus repeats and realleges all prior allegations of this complaint.

43. A prospective economic relationship existed between Intus and the Intus Clients with the probability of future economic benefit to Intus, including but not limited to opportunities to renew and expand existing contracts, enter into new contract with existing Intus Clients, and attract new Intus Clients

44. RTZ had knowledge and was aware of the prospective economic relationships between Intus and the Intus Clients because Intus communicated to RTZ the existence of its contractual and other economic relationships with the Intus Clients and its need to access health data stored on PACECare to further these relationships. RTZ was and remains aware of the damaging nature of its actions. Thus, RTZ's conduct is wanton, willful, or at least engaged in with reckless disregard for its damaging nature.

45. RTZ intentionally prohibited Intus access to the data documented by the Intus Clients and stored on PACECare to disrupt the prospective relationships between Intus and the Intus Clients and hamper the prospects of future renewal and expansion of the contractual relationships between Intus and the Intus Clients.

46. Through the conduct described above, RTZ actually disrupted the prospective relationships between Intus and the Intus Clients, and damaged the prospects for the expansion of such relationships. Among other things, RTZ's actions have resulted and continue to result in delays and inefficiencies in Intus's performance of its contractual obligations, and have forced Intus to engage in costly and time-consuming solutions. This situation caused and continues to cause problems with many of the Intus Clients, and has tarnished Intus's reputation in the marketplace. Among other manifestations of these problems are:

- because Intus have been unable to access the data stored by RTZ, multiple Intus Clients may not move forward with further contracting with Intus;
- at least one Intus Client ceased all payments to Intus and requested that Intus pause its performance indefinitely until it could secure access of data stored with RTZ;
- multiple prospective clients have expressed concern about Intus being unable to access the data stored by RTZ, and have then refused to contract with Intus on that basis.

47. As a direct and proximate result of RTZ's actions, Intus was forced to discount or not charge for its services for several months.

48. As a direct and proximate result of RTZ's tortious conduct, Intus has suffered and will to continue to suffer economic and reputational damages, including but not limited to decreased opportunities to renew and expand existing contracts, enter into new contract with existing Intus Clients, and attract new Intus Clients.

49. As a direct and proximate result of RTZ's actions, Intus is entitled to recover compensatory and punitive damages, in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

**(Unfair Competition in Violation of California Business & Professions Code § 17200 *et seq.*)**

50. Intus repeats and realleges all prior allegations of this complaint.

51. Intus synthesizes data from each of the Intus Clients' electronic health records that stores its patients' electronic health information, and uses that data to identify risks, visualize trends, and optimize the care of patients that Intus Clients serve. The Intus Clients rely on Intus's assistance to help them effectively coordinate, manage, and improve the care of their elderly patients.

52. RTZ's business is to provide PACE software, which is a cloud-based electronic health record software specifically developed to support the needs of PACE programs.

53. RTZ refused and continues to refuse Intus to access Intus Clients' health data on PACECare. RTZ has now even begun inserting provisions in its agreements that Intus Clients are precluded from providing Intus with direct access to the PACECare system for any data extractions.

54. RTZ's refusal to allow Intus to access Intus Clients' health data on PACECare is ongoing, and has been continuous since at least September of 2022.

55. RTZ's continued refusal to allow Intus to access the Intus Clients' health data on PACECare is occurring in the course and as part of RTZ's business and

business practices.

56. RTZ's continued refusal to allow Intus to access Intus Clients' health data on PACECare violates the spirit and letter of the 21st Century Cures Act and the Public Health Services Act, including but not limited to 42 U.S.C. 300jj-52, and its implementing regulations, which prohibit information blocking by, *inter alia*, a health information technology developer, exchange, or network.

57. Indeed, the information blocking regulations were specifically intended to protect app developers, technology companies, registries, information exchanges, and other private entities active in the healthcare IT industry that require access to electronic health data in the course of their business. Intus falls squarely into this category.

58. RTZ's continued refusal to allow Intus to access Intus Clients' health data on PACECare also violates California common law as alleged above with respect to intentional interference with contractual relations and prospective economic advantage.

59. RTZ's refusal to provide Intus access to the Intus Clients' data from PACECare constitutes unlawful business acts or practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.

60. RTZ is now a competitor of Intus.

61. Upon information and belief, RTZ engaged and continues to engage in actions meant to preclude Intus Clients from doing business with Intus. This behavior includes but is not limited to falsely claiming that Intus Clients and prospective consumers are not allowed to access their own data stored by RTZ because of underlying contractual and intellectual property issues.

62. RTZ's actions constitute a continuing pattern of unscrupulous business practices, including but not limited to RTZ leveraging its EHR position in the marketplace to damage Intus's analytics business, and misrepresenting intellectual property and contractual issues to Intus Clients to discourage them from contracting

with Intus

63. RTZ's actions harm Intus Clients, prospective consumers, and the PACEelectronic health record data market in general because they diminish consumers' choices with respect to providers of and services related to health data storage and analytics.

64. Intus Clients and prospective consumers who wish to utilize RTZ's and Intus's services cannot reasonably avoid the harm caused by RTZ because the services and/or products offered by Intus are unique.

65. RTZ's actions are in no manner beneficial to Intus Clients, prospective consumers, or competition in general. Rather, RTZ's actions are only beneficial to RTZ.

66. RTZ's actions are also directly injurious to Intus, who is losing clients as a result of RTZ's illegal and anti-competitive conduct.

67. As such, RTZ's actions and injuries to Intus, Intus Clients, and consumers of electronic health data stored on PACECare significantly threaten competition in the electronic health care data storage and analytics market.

68. Thus, in addition to violating the letter and spirit of the Century Cures Act, the Public Health Services Act, and California common law, RTZ's actions also violate the policy and spirit of state and federal antitrust law, including the California Unfair Competition Law, which is meant to protect consumers, competitors, and competition in general.

69. Consequently, RTZ's actions described above constitute unfair business acts or practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.

70. RTZ's refusal to allow Intus direct access to the data hampered Intus's ability to assist Intus Clients and increased the costs, complexity, and burden associated with Intus's use of the data on behalf of Intus Clients. As a direct and proximate result of RTZ's conduct, Intus has suffered irreparable harm to its

business. Unless RTZ is restrained from its actions, Intus will continue to be irreparably harmed. Among other harms directly and proximately caused by RTZ, Intus has lost existing Intus Clients and has had difficulties securing new opportunities as a result of RTZ's misrepresentations and conduct described herein.

71. Intus communicated with RTZ about the improper and unlawful nature of RTZ's refusal to let Intus access PACECare data and the harms that RTZ's conduct caused and continues to cause to Intus. RTZ was and remains aware of the unlawful and harmful nature of its actions. Thus, RTZ's misconduct is wanton, willful, or at least engaged in with reckless disregard for its harmful and unlawful nature.

72. Intus has no adequate remedy at law to compensate it for the continued and irreparable harm it will suffer if RTZ's alleged acts are allowed to continue. As a direct and proximate result of RTZ's conduct, Intus is entitled to restitution and injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Intus demands judgment against RTZ as follows:

A. An Order enjoining RTZ from denying access to the electronic health record data documented by the Intus Clients and stored on PACECare.

B. An award of compensatory and consequential damages;

C. An award of punitive damages;

D. An award of its reasonable attorneys' fees and costs;

E. An award of prejudgment and post judgment interest at the rate provided by 28 U.S.C. § 1961; and

F. Such additional relief as may be just and proper.

| | | | |
|---|---|---|---|
| 1 | Dated: | April 2, 2024 | MANATT, PHELPS & PHILLIPS, LLP |

By: */s/ Ileana M. Hernandez*
Ileana M. Hernandez
Charles E. Weir
Val Bianchi-Demicheli

*Attorneys for Plaintiff*
INTUS CARE, INC.

| | | | |
|---|---|---|---|
| 8 | Dated: | April 2, 2024 | SAVAGE LAW PARTNERS, LLP |

By: */s/ Alexander Chiulli*
Alexander Chiulli

*Attorneys for Plaintiff*
INTUS CARE, INC.

# JURY DEMAND

Plaintiff Intus Care, Inc. requests a trial by jury in this matter.

Dated: April 2, 2024	MANATT, PHELPS & PHILLIPS, LLP

By: */s/ Ileana M. Hernandez*
Ileana M. Hernandez
Charles E. Weir
Val Bianchi-Demicheli

*Attorneys for Plaintiff*
INTUS CARE, INC.

Dated: April 2, 2024	SAVAGE LAW PARTNERS, LLP

By: */s/ Alexander Chiulli*
Alexander Chiulli

*Attorneys for Plaintiff*
INTUS CARE, INC.