NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile:  415.398.2438

NOSSAMAN LLP
KASIA PENN (SBN 306056)
kpenn@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone:  949.833.7800
Facsimile:  949.833.7878

Attorneys for Defendant RTZ ASSOCIATES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

| | |
|---|---|
| INTUS CARE, INC.,<br><br>          Plaintiff,<br><br>     vs.<br><br>RTZ ASSOCIATES, INC.; and DOES 1 through 10,<br><br>         Defendants, | Case No.    4:24-cv-01132-JST<br><br>Assigned to: Hon. Jon S. Tigar<br><br>**DEFENDANT RTZ ASSOCIATES, INC.'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: June 20, 2024<br>Time: 2:00 p.m.<br>Place: Courtroom 6<br><br>Trial Date: None Set |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on June 20, 2024, at 2:00 p.m., in Courtroom 6 – 2nd Floor of the above-captioned Court, located at 1301 Clay Street, Oakland, CA 94612, Defendant RTZ Associates Inc. ("RTZ") will and hereby does move this Court for an order dismissing with prejudice a claim for intentional interference with prospective economic advantage asserted by Plaintiff Intus Care, Inc. ("Intus") in the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

This motion is based upon this Notice of Motion, the accompanying Memorandum in support of the Motion, and the files and records in this action and any further evidence and argument that the Court may consider.

Dated:  April 16, 2024

NOSSAMAN LLP

By: /s/ David C. Lee
    David C. Lee
    Kasia Penn

Attorneys for Defendant RTZ ASSOCIATES, INC.

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................................7

II.    PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT ...................................8

    A.    The Parties. ...................................................................................................8

    B.    The Underlying Dispute.................................................................................9

    C.    Relevant Procedural Posture .......................................................................10

III.    STANDARD OF REVIEW .................................................................................10

IV.    ANALYSIS............................................................................................................11

    A.    Intus's Second Claim for Intentional Interference with Prospective
        Economic Advantage Warrants Dismissal..................................................11

        1.    Intus's Second Claim Fails Because Intus Failed to Support the
            Required Element of *Independently Wrongful* Act.............................11

            a.    The Independently Wrongful Act Element Cannot be Predicated on
                the Cures Act........................................................................................13

                (1)    The Cures Act Does Not Create an Express Private Right of
                      Action ...................................................................................13

                (2)    The Cures Act Does Not Imply a Private Right of Action .......................14

                (3)    The Absence of the "Rights-Creating" Language in the Cures
                      Act Indicates No Congressional Intent to Create a Private Right
                      of Action ...............................................................................15

                  (4)    There is No Evidence in the Statutory Structure of the Cures
                      Act to Provide For a Private Right of Action ............................17

                (5)    The Legislative History of the Cures Act Does Not Support
                      Implied Private Right of Action...............................................19

        2.    Without a Law to Support the Required Element of Independent
            Wrong, Intus's Claim for Intentional Interference with Prospective
            Economic Advantage Must Fail...........................................................21

V.    CONCLUSION......................................................................................................22

DEFENDANT'S PARTIAL MOTION TO DISMISS

62684351.v4                                                                                Case No. 3:24-cv-1132-JST

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)..................................................................................14, 15, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................10

*Cnty. Commc'ns Corp. v. California Catalog & Tech.*,
    594 F.3d 1149 (9th Cir. 2010) ..........................................................................19

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
    11 Cal. 4th 376 (1995) .................................................................................8, 22

*In re Digimarc Corp. Derivative Litig.*,
    549 F.3d 1223 (9th Cir. 2008) ..........................................................................14

*Doe v. Meta Platforms, Inc.*,
    No. 22-CV-03580-WHO, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ...................................8

*Duplan v. City of New York*,
    888 F.3d 612 (2d. Cir. 2018)............................................................................15

*In re Gilead Scis. Secs. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ..........................................................................11

*Greene v. Sprint Commc'ns Co.*,
    340 F.3d 1047 (9th Cir.2003) ..........................................................................19

*Gullatt v. Aurora Loan Servs., LLC*,
    No. 1:10-CV-01109, 2010 WL 4070379 (E.D. Cal. Oct. 18, 2010)............................13, 14, 16

*Hartmann v. Cal. Dep't of Corr. & Rehab.*,
    707 F.3d 1114 (9th Cir. 2013) ..........................................................................11

*Howard v. AOL*,
    208 F.3d 741 (9th Cir.2000) ..........................................................................19

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020) ..................................................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134, 63 P.3d 937 (2003) ..............................................................12

DEFENDANT'S PARTIAL MOTION TO DISMISS

*Logan v. U.S. Bank Nat. Ass'n*,
No. CV09-08950 MMMPLAX, 2010 WL 1444878, at *7 (C.D. Cal. Apr. 12,
2010), *aff'd*, 722 F.3d 1163 (9th Cir. 2013) ................................................................... *passim*

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .........................................................................................11

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .........................................................................................10

*Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*,
376 F.3d 831 (9th Cir.2004) .............................................................................................17

*San Francisco Design Ctr. Assocs. v. Portman Companies*,
41 Cal. App. 4th 29, 42-43 (1995) ...................................................................................21

*San Jose Const., Inc. v. S.B.C.C., Inc.*,
155 Cal. App. 4th 1528 (2007) ........................................................................11, 12, 21, 22

*Segalman v. Sw. Airlines Co.*,
895 F.3d 1219 (9th Cir. 2018) .........................................................................................15

*Touche Ross & Co. v. Redington*,
442 U.S. 560 (1979)....................................................................................................13, 14

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
444 U.S. 11 (1979)............................................................................................................18

*Tri-Growth Ctr. City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg*,
216 Cal. App. 3d 1139, 265 Cal. Rptr. 330 (Ct. App. 1989) ..........................................12

*Yoshikawa v. Seguirant*,
74 F.4th 1042 (9th Cir. 2023) ..........................................................................................15

*Youst v. Longo*,
43 Cal. 3d 64 (1987) .........................................................................................................11

**Statutes**

45 CFR § 170 ..............................................................................................................................7

45 CFR § 171 ........................................................................................................7, 10, 13, 16

42 USC § 300jj-52 ........................................................................................................17, 18, 19

21st Century Cures Act ......................................................................................... *passim*

California Civil Code, § 52 ......................................................................................................20

Communications Act ...............................................................................................................19

- 5 -

DEFENDANT'S PARTIAL MOTION TO DISMISS

62684351.v4                                                                    Case No. 3:24-cv-1132-JST

F.R.C.P., Rule 12(b)(6) ..................................................................................................2, 10

Foreign Corrupt Practices Act .................................................................................................12

Gov. Code § 91004 ...................................................................................................................20

Health & Saf. Code, § 1430 .....................................................................................................20

Helping Families Save Their Homes Act of 2009 § 702 .......................................................14, 16

HIPAA ......................................................................................................................................19

Sarbanes–Oxley Act..................................................................................................................14

Unfair Competition, California Business and Professions Code § 17200 ....................................10

**Other Authorities**

Report on Health Information Blocking, Report to Congress, April 2015 ....................................18

William H. Manz, Editor. 21st Century Cures Act: A Legislative History of
    Public Law No. 114-255 (2018) ..........................................................................................20

Defendant RTZ Associates Inc. ("RTZ") respectfully submits this Memorandum in Support of his Partial Motion to Dismiss Plaintiff Intus Care, Inc's ("Intus") Claim for Intentional Interference with Prospective Economic Advantage in Intus's Amended Complaint. (Dkt. No. 25) ("Compl.").

## I. INTRODUCTION

Defendant RTZ develops and licenses a proprietary administrative software ("PACECare") specifically targeted to a narrow slice of the healthcare industry:  Program of All-Inclusive Care for the Elderly ("PACE") facilities who care for elderly patients.  Plaintiff Intus – a conceded competitor to RTZ – is a health analytics company that purports to "synthesize" data. Pertinent to this action, Intus contracts with various PACE facilities who have licensed PACECare from RTZ.  Therefore, Intus's business model, in part, apparently depends on gaining access to RTZ's licensed PACECare software to extract the data it seeks to synthesize for its common customers.  As alleged in the Amended Complaint, Intus and RTZ were unable to reach agreement on a nondisclosure agreement, and thus Intus was not and is not authorized to access the PACECare software licensed to various PACE facilities (whether Intus' common customers or not).  As a result, Intus has now sued RTZ for refusing to grant it access to PACECare despite that Intus has no contractual (or any other) right or arrangement to access that software.

Notwithstanding the absence of any contractual provision or business agreement, Intus stretches the limits to conjure its supposed "right" to access RTZ's software.  Specifically, it feebly points to the federal 21st Century Cures Act ("Cures Act")[1] as the supposed source of duty obligating RTZ to grant Intus access to PACECare.  However, the Cures Act does not provide for a private right of action to Intus, and Intus asserts no claim for a violation of that statute.  Notably, Intus attempted to borrow a duty from the Cures Act to support its now-dismissed claim for negligence per se.  (Dkt. 1).  However, the law in this District is clear: Intus could not rely on a federal statute as the source of duty to establish its negligence per se

---

[1] 21st Century Cures Act, Pub. L. No. 114-255, § 1000, 130 Stat. 1033, 1039 (2016) (stating that Division A of the act "may be cited as the 21st Century Cures Act), (45 CFR pts 170 and 171).

claim. *Doe v. Meta Platforms, Inc*., No. 22-CV-03580-WHO, 2023 WL 5837443, at *13-14 (N.D. Cal. Sept. 7, 2023). In response to RTZ's prior motion to dismiss (Dkt. 19), Intus dropped that claim in its Amended Complaint. (Dkt. 25). Still intent on somehow litigating a Cures Act violation – because it has no other apparent basis to claim a right to access PACECare – Intus equates RTZ's lack of PACECare access to a violation of the Cures Act, and hence, the independent wrongful conduct that supports its claim for intentional interference with prospective economic advantage. But this is nothing more than another meritless attempt to circumvent the Cures Act's restriction on a private cause of action.

California law recognizes that, "a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading…that the defendant's interference was wrongful by some measure beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal. 4th 376, 392–93 (1995). Intus therefore attempts to invoke the Cures Act's prohibition on "information blocking" to satisfy the required independently wrongful act element. That fails for at least two reasons: (i) there is no Cures Act private right of action; and (ii) Intus cannot appropriately pluck a duty from the Cures Act to define RTZ's obligations – particularly when Intus cannot litigate a violation of that Act in the first instance. Without the Cures Act, Intus's Amended Complaint is bereft of any other source of requirement obligating RTZ to grant Intus access to PACECare. Thus, once again Intus's Amended Complaint fails to state the basis for which RTZ is required to open its software to Intus, a competitor. Its claim for intentional interference with prospective economic advantage therefore fails.

RTZ therefore submits that this Court should dismiss the Second Claim without leave to amend.

## II.    PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT

### A.    The Parties.

Plaintiff Intus Care, Inc., a Delaware corporation, is an analytics platform that synthesizes healthcare data. (Compl. ¶¶ 1, 3, 10.) Defendant RTZ Associates, Inc., is a California Corporation that developed and licenses electronic health records software ("PACECare") to

PACE facilities.  (Compl. ¶¶ 1, 4, 5, 13.)  Intus and RTZ share common customers.  (Compl. ¶ 13.)  Between about June 2021 and September 2022, Intus sought access to the electronic health records stored on the PACECare system RTZ had licensed to certain common customers.  (Compl. ¶¶ 2, 12, 13.)

### B.    The Underlying Dispute.

RTZ and Intus are competitors.  (Compl. ¶¶ 15, 22, 23, 60, and Exh. 1.)  In September 2022, RTZ expressed concerns that its intellectual property would be compromised by Intus's access to PACECare and demanded that Intus sign a Non-Disclosure Agreement ("NDA") as a condition for accessing the software to extract to the desired data.  (Compl. ¶¶ 15, 18, and Exh. 1.)  The parties attempted to negotiate an NDA, which eventually failed.  (Compl. ¶¶ 16-19.)  In September of 2022, RTZ sent Intus two cease and desist letters informing it that in the absence of an executed NDA, Intus had no permission to access RTZ's PACECare software.  (Compl. ¶ 17, Exh. 1.)

Intus claims that in order to perform the analytics, it "must have direct access to…electronic health care records that store…patients' electronic health information."  (Compl. ¶ 11.)  Intus concedes, however, that it can access the same data without accessing RTZ's software solution, but that doing so is administratively burdensome.  (Compl. ¶ 20 ["The Intus Client was told that Intus could only be provided with standard files from a data export, **requiring Intus Clients to go through the administrative burden and time-consuming process of manually downloading the data and then sending it to Intus**." (Emphasis supplied.)].)  Plaintiff does not allege that the information contained in standard files would be any different than what Plaintiff would obtain through RTZ's software.  Further, Intus apparently has created an automated script and offers it to PACE programs to "consistently access data stored on the System" through which the data it seeks can be extracted without Intus needing to access PACECare.  (Compl. ¶ 21, Exh. 2.)

Intus further alleges that RTZ's conduct of not allowing Intus to access PACECare software absent an executed NDA, was "designed to destroy Intus's business."  (Compl. ¶ 23.)

## C.    Relevant Procedural Posture

Intus filed its original complaint on February 23, 2024, alleging four causes of action: (1) intentional interference with contractual relations, (2) intentional interference with prospective economic advantage, (3) negligence per se, and (4) unfair competition in violation of California Business and Professions Code section 17200.  (Dkt. 1).  RTZ filed a motion to dismiss Intus's claims for negligence per se and unfair competition based on Intus's failure to identify a source of duty requiring RTZ to grant Intus access to its software.  (Dkt. 19).  Intus did not oppose the motion, but instead filed its Amended Complaint dropping its negligence per se claim.  (Dkt. 25). Intus continues to allege that RTZ has engaged in information blocking in violation of the Cures Act.  (Compl. ¶¶ 24-28.)  Specifically, Intus alleges that "RTZ's unjustified and erroneous refusal to grant Intus access to the data it seeks from PACECare constitutes an action that interferes with access, exchange, or use of electronic health information, and such action does not fall into any exceptions to the information blocking rules. *See* CFR § 171.103."  (Compl. ¶ 26.)  Based on the unfounded and conclusory allegation that RTZ has violated the Cures Act (despite that Act not being litigated), Plaintiff asserts a claim for intentional interference with prospective economic advantage.  In other words, because RTZ has supposedly violated the Cures Act by refusing Intus access to PACECare, that violation is independently "wrongful" and thus constitutes tortious interference.  (Compl. ¶¶ 42-49.)

For the reasons stated below, Intus's claim for intentional interference with prospective economic advantage is legally deficient and warrants dismissal.

## III.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a cause of action if it fails to state a claim upon which relief can be granted.  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

When a motion to dismiss demonstrates that a claim fails as a matter of law, and that amendment would be futile, the motion to dismiss should be granted without leave to amend. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013).

## IV.    ANALYSIS

### A.    Intus's Second Claim for Intentional Interference with Prospective Economic Advantage Warrants Dismissal.

#### 1.    Intus's Second Claim Fails Because Intus Failed to Support the Required Element of *Independently Wrongful* Act

Plaintiff's Amended Complaint asserts a claim for purported "intentional interference with prospective economic advantage" but fails to allege all the requisite elements of the tort. The five elements required to prove an intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Youst v. Longo*, 43 Cal. 3d 64, 71, fn. 6 (1987). Here, Plaintiff's Amended Complaint fails to allege the third element of a cause of action.

In order to prove the third element, "a plaintiff must show that the defendant engaged in an independently wrongful act." *San Jose Const., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1544 (2007). A defendant's act is "independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable

legal standard ... an act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive." *Id*. at 1545 (internal quotes and citations omitted). See *Tri-Growth Ctr. City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg*, 216 Cal. App. 3d 1139, 1154, 265 Cal. Rptr. 330, 337 (Ct. App. 1989) (independently wrongful conduct found where defendant's conduct breached a fiduciary duty); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159, 63 P.3d 937, 954 (2003) (independent wrongfulness element satisfied where the complaint alleged that defendant engaged in bribery and offered sexual favors to key Korean officials in order to obtain the contract from the Republic of Korea in violation of the Foreign Corrupt Practices Act).  The law imposes "an independent wrongfulness requirement at the pleading stage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1142 (2020).

All of Intus's allegations pertaining to RTZ's acts of interference are based on RTZ's refusal to grant Intus access to its proprietary PACECare software.  (See Compl. ¶¶ 2, 20, 26, 27.)  Intus further alleges that RTZ is obligated by the Cures Act to grant the access.  At the same time, Intus admits that it has access to the same data (even without needing to directly access PACECare), but that the process in doing so is more inconvenient for Intus: "RTZ's refusal to allow Intus direct access to the data **significantly delays and impedes Intus's access and increases the costs, complexity, and burden associated with Intus's use of this data** on behalf of Intus Clients."  (Compl.  ¶ 27, emphasis added.)  Intus further alleges that this inconvenience amounts to "information blocking" in violation of the Cures Act.  However, Intus cannot rely on the Cures Act as the source of the independent wrongfulness requirement because the Act does not allow for a private right of action.  Fecklessly undaunted, Intus apparently concludes that: (i) RTZ has an obligation not to "information block" pursuant to the Cures Act; (ii) RTZ's refusal to grant Intus access to PACECare without an NDA constitutes "information blocking" (despite that never having been adjudicated or decreed); and (iii) that "information blocking" is the requisite "wrongful act" sufficient to support the Second Claim.  Simply stated, like its original negligence per se claim, Intus attempts to litigate a Cures Act violation through a surrogate claim (here, intentional interference) despite the fact that it cannot properly do so.

DEFENDANT'S PARTIAL MOTION TO DISMISS

### a.    The Independently Wrongful Act Element Cannot be Predicated on the Cures Act.

In the context of this case, the Cures Act and its implementing regulations, prohibit certain entities (called "actors") from engaging in "information blocking," which is defined as a practice that is likely to interfere with access, exchange, or use of electronic health information. 45 CFR §171.103.  "Interfere with" means "to prevent, materially discourage, or otherwise inhibit." 45 CFR §171.102.  Under the Cures Act, actors found to have committed information blocking are subject to penalties issued by the Office of Inspector General ("OIG").

Intus's Second Claim for intentional interference with prospective economic advantage is nothing more than a masked claim for violation of the Cures Act.  Intus is forced to employ this tactic because the Cures Act does not allow a private right of action.  In a distorted application, Intus attempts to use the Act as a source of independent wrong to support its tort claim, i.e., RTZ's refusal to grant access to PACECare constitutes "information blocking" which equals the wrongful conduct needed to prop up its interference claim.

Such Mobius-strip reasoning is without merit.  Intus cannot rely on the Cures Act as the required element of the independent wrong because the Act does not allow for a private right of action.  *See Gullatt v. Aurora Loan Servs., LLC*, No. 1:10-CV-01109, 2010 WL 4070379, at *2 (E.D. Cal. Oct. 18, 2010) ["A private right of action is the right of an individual to bring suit to prevent or remedy an injury that results from another party's actual or threatened violation of a legal requirement."]  "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979).

### (1)    The Cures Act Does Not Create an Express Private Right of Action

"Determining whether Congress intended to create a private right of action requires an examination of the statute." *Gullatt*, 2010 WL 4070379, at *2. "And as with any case involving the interpretation of a statute, [courts'] analysis must begin with the language of the statute

itself." *Touche Ross*, 442 U.S. at 568. "[T]he statute must either <u>explicitly</u> create a right of action or <u>implicitly</u> contain one." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230 (9th Cir. 2008), emphasis supplied. "An express or explicit private right of action exists when the statute contains language that defines the cause of action." *Gullatt*, 2010 WL 4070379, at *2; *see also Alexander v. Sandoval*, 532 U.S. 275, 288 (2001) (instructing that the starting point for determining congressional intent is an examination of the text and structure of the statute.)

Here, the Cures Act is devoid of any explicit provision allowing for a private right of action, and Intus's Amended Complaint fails to point to any. As such, the appropriate conclusion is that there is no such express right. *See In re Digimarc Corp. Derivative Litig.*, 549 F.3d at 1230 (holding that "Section 304 [of the Sarbanes–Oxley Act] does not explicitly create a private right of action because nothing in the text of the section makes any mention of a cause of action.") On its face, the Cures Act also lacks any mention of a cause of action, and thus evidences Congress's intent not to provide such an express right. *See Touche Ross.,* 442 U.S. at 572 ("when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly.")

### (2)   The Cures Act Does Not Imply a Private Right of Action

In the absence of an expressly provided right of action in a statute, "it is necessary to determine if an implied private right of action exists by examining Congress's intent in enacting the statute." *Logan v. U.S. Bank Nat. Ass'n*, No. CV09-08950 MMMPLAX, 2010 WL 1444878, at *7 (C.D. Cal. Apr. 12, 2010), *aff'd*, 722 F.3d 1163 (9th Cir. 2013) (holding that no private right of action existed under Section 702 of the Helping Families Save Their Homes Act of 2009 because Congress neither expressly nor impliedly created a private right of action to bring suit under Section 702 and dismissing the case for lack of subject matter jurisdiction). See also, *In re Digimarc Corp. Derivative Litig.*, 549 F.3d at 1230 ("If not express, a right of action must be implied because 'private rights of action to enforce federal law must be created by Congress.'") As the Ninth Circuit has recently acknowledged, "[t]he Supreme Court has 'increasingly discouraged the recognition of implied rights of actions without a clear indication of

1    congressional intent.'" *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023), citing to

2    *Duplan v. City of New York*, 888 F.3d 612, 621 (2d. Cir. 2018).

3         The Supreme Court, in *Alexander v. Sandoval*, 532 U.S. 275 (2001), narrowed the

4    framework for evaluating whether a statute implies a private cause of action. The *Sandoval* Court

5    observed that "[l]ike substantive federal law itself, private rights of action to enforce federal law

6    must be created by Congress." *Sandoval*, 532 U.S. at 286. Unless the statute in question reveals

7    an intent to create a private remedy, "a cause of action does not exist and courts may not create

8    one, no matter how desirable that might be as a policy matter, or how compatible with the

9    statute." *Id.* at 287 (also cited to and quoted by *Yoshikawa*, 74 F.4th at 1045. Thus, pursuant to

10   *Sandoval* (and *Yoshikawa*), courts are tasked with determining only whether Congress intended

11   to create a private cause of action. *Segalman v. Sw. Airlines Co*., 895 F.3d 1219, 1223 (9th Cir.

12   2018).

13        When analyzing Congressional intent to create an implied private right of action, courts

14   limit their inquiry to three relevant sources: (1) 'rights-creating' language in the statutory text;

15   (2) the statutory structure within which the provision in question is embedded; and, <u>only if the</u>

16   <u>statutory text and structure yield no conclusive answer,</u> (3) the legislative history. *Logan*, 2010

17   WL 1444878, at *7.

18                    **(3)      The Absence of the "Rights-Creating" Language in the**

19                    **Cures Act Indicates No Congressional Intent to Create**

20                    **a Private Right of Action**

21        "Statutes that focus on the person regulated rather than the individuals protected create

22   'no implication of an intent to confer rights on a particular class of persons.'" *Sandoval*, 532 U.S.

23   at 289 *quoting California v. Sierra Club,* 451 U.S. 287, 294 (1981).

24        Here, the Cures Act clearly focuses on the person and entity *regulated* (i.e., the alleged

25   information blocker) rather than the individuals protected.  The Cures Act specifies three

26   categories of entities or "actors" that must comply with information blocking requirements and

27   prohibits only those individuals/entities from engaging in information blocking. Specifically,

28   "actor means a health care provider, health IT developer or certified health IT, health information

1   network or health information exchange."[2] 45 CFR § 171.102. Furthermore, the Cures Act

2   defines information blocking in terms of a practice committed by an actor and provides several

3   exceptions to ensure an actor's actions do not constitute information blocking.[3] In fact, the Cures

4   Act fails to even define who or what is protected by the information blocking prohibition.

5       In *Logan*, the Court found that the federal statute at issue (Section 702 of the Helping

6   Families Save Their Homes Act) did not focus on the individuals intended to be protected by the

7   statute but rather on immediate successors in interests of federally regulated mortgages or

8   residential properties that are foreclosed, which were the entities regulated by the statute. *Logan*,

9   2010 WL 1444878, at *8.  The *Logan* court further observed that the statute at issue did not grant

10  new rights or provide new remedies for the tenants in the event the successor in interest violated

11  the provisions of the statute. *Id*.  The court therefore concluded that "[w]ithout clearer language,

12  the court cannot find that [the statute at issue] gives rise to an implied private right of action." *Id*.

13  The court in *Gullatt* reached the same conclusion and held that the focus on the regulated party

14  rather than on the individuals protected by the statute "does not tend to imply a private right of

15  action for individuals potentially harmed." *Gullatt*, 2010 WL 4070379, at *4.

16      Here, Cures Act also does not identify the individuals protected, but rather focuses on the

17  persons regulated (i.e., information blockers). Accordingly, it is clear there is an absence of

18  "rights-creating" language in the statutory text and that Congress did not intend to create an

19  implied private right of action.

20

21

22

23
_____

24  [2] Health Information Networks (HINs) and Health Information Exchanges (HIE) are combined
    into one defined type in the Final Rule.

25  [3] Information blocking.
        (a)  Information blocking means a practice…

26      (b)  If conduced by:
            (1)  A health IT developer of certified IT, health information network or health

27              information exchange…
            (2)  A health care provider…

28  45 CFR § 171.103 Information blocking

1           **(4)     There is No Evidence in the Statutory Structure of the**

2                    **Cures Act to Provide For a Private Right of Action**

3       The second prong of the *Logan* analysis (statutory structure) also establishes that the

4 Cures Act does not imply any private right of action. To discern congressional intent, the courts

5 must also "examine the entire statutory scheme provided by Congress" to determine legislative

6 intent. *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 836 (9th

7 Cir.2004). Importantly, the Supreme Court has specifically acknowledged that, "[t]he express

8 provision of one method of enforcing a substantive rule suggests that Congress intended to

9 preclude others." *Sandoval*, 532 U.S. at 290. In other words, statutes that specifically articulate a

10 non-court enforcement mechanism evidence statutory structure strongly indicating no private

11 right of action.

12       Here, the statutory structure of the Cures Act clearly provides for a formal and structured

13 complaint and enforcement process to be handled by the OIG and Office of the National

14 Coordinator for Health Information Technology ("ONC"). Specifically, Section 300jj-52(b)

15 titled "Inspector General authority" defines who may investigate, determine violations of, and

16 impose penalties for, information blocking actions:  "[T]he inspector general of the Department

17 of Health and Human Services may investigate any claim" and that, following an investigation, if

18 an actor is found to be information blocking, the actor "shall be subject to a civil monetary

19 penalty determined by the Secretary for all such violations identified through such investigation,

20 which may not exceed $1,000,000 per violation." 42 USC § 300jj-52(b). Further, the Cures Act

21 instructs the ONC to "implement a standardized process for the public to submit reports on

22 claims of [information blocking.]" 42 USC § 300jj-52(d)(3). Instead of allowing the courts to

23 determine potential information blocking violations, the statute instructs the ONC to create a

24 standardized process for complaints. That standardized process must "provide for the collection

25 of such information as the originating institution, location, type of transaction, system and

26 version, timestamp, terminating institution, locations, system and version, failure notice, and

27 other related information." 42 USC § 300jj-52(d)(3). The statute also instructs the ONC as to

28 what kind of information must be collected as part of its investigation. *Id*.

Accordingly, the statute defines and directs the investigation of alleged Cures Act violations and the determination of penalties to the HHS (via the OIG and ONC), and not the courts. This is instructive because "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979). "The context of the statute guides the court because where a 'statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'" *Logan*, 2010 WL 1444878, at *8 quoting *Transamerica Mortg. Advisors*, 444 U.S. at 19.

It is also worth noting that before enacting the Cures Act, Congress was instructed about forthcoming difficulties with the investigation of information blocking cases, which suggests that Congress intentionally conferred the tasks to ONC instead of to the courts:

> Given the difficult evidentiary challenges and complex questions of fact and interpretation presented, the task of investigating and confirming cases of information blocking may be better suited to an agency or agencies with enforcement expertise and compulsory processes for obtaining evidence.[4]

Information blocking violations live within two highly regulated worlds: (i) health information; and (ii) technology access and interfaces. As suggested by Congress above, the courts are less equipped to understand the actors at play and the technologies involved that are implicated by the Cures Act. Furthermore, even if a court could correctly determine the presence of a violation, how would the court determine damages? As acknowledged by Congress, agencies (i.e., OIG and ONC) are far better equipped to handle such complaints and to assess the appropriate monetary sanctions for such violations.

For example, although OIG is tasked with the investigation of a violation and has authority to issue penalties, ONC has the authority to review claims of possible information blocking against health IT developers that may constitute a non-conformity under the ONC Health IT Certification Program. 42 USC § 300jj-52(d). If such a violation is found, ONC can

---

[4] Office of the National Coordinator for Health Information Technology, Report on Health Information Blocking, Report to Congress, April 2015, https://www.healthit.gov/data/data-briefs/report-health-information-blocking-pdf.

DEFENDANT'S PARTIAL MOTION TO DISMISS

issue disincentives under the Certification Program. OIG may also refer a case to the HHS Office for Civil Rights if it determines that there is a potential for a violation of HIPAA privacy and security rules.  42 USC § 300jj-52(b)(3). Notably, Congress placing investigative and enforcement power upon an agency in charge of interpreting an Act is not uncommon, and courts are reticent to provide a private right of action where none is expressly provided.[5]

At bottom, the statutory scheme of the Cures Act clearly provides for a structured process in which information blocking complaints must be investigated and enforced by the OIG and ONC. The Cures Act omits any express private right of action. As gleaned through its statutory text and structure, Congress also clearly indicated the absence of any implied private right of action as well.

### (5) The Legislative History of the Cures Act Does Not Support Implied Private Right of Action

"[I]f – and only if – statutory text and structure have not conclusively resolved whether a private right of action should be implied, we turn to the legislative history and context within which a statute was passed". *Logan*, 2010 WL 1444878, at *10.

As amply demonstrated above, because the statutory text and structure conclusively resolve that the Cures Act does not provide for an implied private right of action, legislative history and context need not be analyzed.  Nonetheless, a deep dive of the legislative history and

---

[5] See *Cnty. Commc'ns Corp. v. California Catalog & Tech*., 594 F.3d 1149, 1155 (9th Cir. 2010) ["A broad assertion of a private right of action is not easily maintained under the Federal Communications Act, as our statutory analysis is intertwined with the requisite deference to the Commission's interpretation of the Federal Communications Act. This is so because 'the FCC is the agency that is primarily responsible for the interpretation and implementation of the Telecommunications Act and of its own regulations.' *Greene v. Sprint Commc'ns Co*., 340 F.3d 1047, 1052 (9th Cir.2003) (citation omitted); see also *Howard v. AOL*, 208 F.3d 741, 752 (9th Cir.2000) ('Congress created the FCC to enforce the Communications Act. The Supreme Court's opinions have repeatedly emphasized that the FCC's judgment regarding how the public interest is best served is entitled to substantial judicial deference.') (quoting *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596, 101 S.Ct. 1266, 67 L.Ed.2d 521 (1981)) (alteration and internal quotation marks omitted). Absent a supporting Commission determination, and with no showing of Congressional intent to create a private right of action, North County cannot assert a viable claim for relief."]

context shows that no private right of action was ever addressed or considered by the drafters. Instead, the same emphasis on agency enforcement is littered throughout. For example, when describing the new bill, Congress noted that:

> …the provision would give the HHS Inspector General new enforcement authority to investigate claims of EHR vendors being in violation of the attestation requirements, or EHR vendors and users engaging in information blocking.  ONC would be required to establish a standardized process for the public to submit reports of EHR technology that was not interoperable, EHR technology that resulted in information blocking, or actions taken by vendors or users of EHR technology that impeded interoperability or resulted in information blocking.[6]

Again, it is clear that the investigation and enforcement of information blocking actions were to be entrusted to various federal agencies rather than the courts.  Moreso, Congress had specific penalties in mind for an actor who committed a violation, and how to use recovered penalties:

> Any individual or entity engaged in [information blocking], would be subject to **civil monetary penalties (CMPs) <u>that the Secretary by rulemaking determined appropriate</u>**. The provision would authorize the appropriation of $10 million for FY2017, to remain available until expended, for enforcement activities. And it would allow the Inspector General to retain and use any CMP amounts it collected for such activities. It also would extend the privilege and confidentiality protections under Title IX, Part C, of the PHSA to claims of information blocking and reports related to the vendor attestation requirements.[7]

Congress did everything to demonstrate that there is no private right of action for the Cures Act.  Had Congress or an agency intended to provide a private right of action, it would have been raised in the legislative history, in the statute, or in the Federal Register[8]. (Compare, e.g., Gov. Code § 91004; Civ.Code, § 52; Health & Saf. Code, § 1430, subds. (a) and (b) [each expressly creating a private right to sue].)

---

[6] William H. Manz, Editor. 21st Century Cures Act: A Legislative History of Public Law No. 114-255 (2018).

[7] William H. Manz, Editor. 21st Century Cures Act: A Legislative History of Public Law No. 114-255 (2018) (emphasis supplied).

[8] Although the Federal Register is not discussed, it too had an absence of language providing a private right of action and instead discussed how the ONC and OIG would coordinate to investigate and enforce potential information blocking violations.

DEFENDANT'S PARTIAL MOTION TO DISMISS

2.    **Without a Law to Support the Required Element of Independent Wrong, Intus's Claim for Intentional Interference with Prospective Economic Advantage Must Fail**

Here, Intus has based its interference claim on an alleged violation of a federal law, i.e., the Cures Act.  In so doing, Intus untenably looks to the Cures Act as the source of "duty" that RTZ has supposedly violated, i.e., apparently the duty not to information block, and in turn, the duty to grant Intus unrestricted access to RTZ's PACECare software.  However, as amply detailed above, Intus not only has not, but cannot litigate a violation of the Cures Act, and indeed, is therefore unable to establish within the context of its Amended Complaint the existence of the "independently wrongful" conduct necessary to support its interference claim.  *San Jose Const., Inc.*, 155 Cal. App. 4th at 1544.

In *San Francisco Design Ctr. Assocs. v. Portman Companies*, 41 Cal. App. 4th 29, 42–43 (1995), the court evaluated a claim for intentional interference with prospective economic advantage in the context of competitors.  There, the court held that in order for plaintiff to succeed on the claim, defendant's conduct has to be independently actionable:

> In order to defeat the privilege the defendant's conduct must be unlawful or illegitimate. That is, when a claimant charges its competitor with interference with prospective economic advantage and the competitor raises the competition privilege as a defense, **the claimant must show the competitor's conduct violated a statute or constituted a tort such as fraud or unfair competition. The defendant's conduct must be independently actionable.**

(*Id.* emphasis supplied).

As addressed above, and conceded by Plaintiff, RTZ and Intus are competitors.  Therefore, legitimate reasons exist why RTZ would deny Intus access to PACECare without a valid NDA, as spelled out in RTZ's correspondence incorporated by reference into Intus's Amended Complaint.  (Compl., ¶¶ 17 and 21, Exhs. 1 and 2.).  More pointedly, as held by *San Francisco Design Ctr. Assocs.*, in the context of competitors, Intus bears the burdens of establishing an "independently *actionable*" wrongdoing.  And for the reasons set out above, it cannot rely on the Cures Act to do that, i.e., there is no private right of action to allege a violation of that Act.  Accordingly, in the absence of any other "constitutional, statutory, regulatory,

common law, or other determinable legal standard" (*San Jose Const., Inc.*, 155 Cal. App. 4th at 1545) – and Intus provides none – Intus has not and cannot allege wrongful conduct "other than the fact of interference itself." *Della Penna*, 11 Cal. 4th at 393. That failure to do so establishes that Intus's allegations are clearly insufficient.

To the contrary, the allegations establish that RTZ's refusal to grant Intus access to PACECare without an NDA is reasonable and pragmatic. RTZ simply has no obligation or duty to involuntarily grant Intus unfettered and indiscriminate access to its proprietary software. Rather, RTZ's conduct is anything but wrongful, and instead is "merely a product of…[a] lawful, purpose or motive." *San Jose Const., Inc.*, 155 Cal. App. 4th at 1545. Because Intus has not identified any legitimate "wrongful" conduct, its Second Claim for intentional interference with prospective economic advantage should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendant RTZ respectfully requests that the Court dismiss Plaintiff's Second Claim for intentional interference with prospective economic advantage without leave to amend.

Dated:  April 16, 2024                           NOSSAMAN LLP


                                                 By:  /s/ *David C. Lee*
                                                     David C. Lee
                                                     Kasia Penn

                                                 Attorneys for Defendant RTZ ASSOCIATES, INC.