UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUS CARE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>RTZ ASSOCIATES, INC.,<br><br>    Defendant. | Case No. 24-cv-01132-JST<br><br>**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: ECF No. 28 |

Before the Court is Defendant RTZ Associates, Inc.'s motion to dismiss the first amended complaint. ECF No. 28. The Court finds this motion suitable for resolution without oral argument, *see* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b), and will deny the motion.

I.    **BACKGROUND**

In the operative amended complaint, Plaintiff Intus Care, Inc. alleges the following: Intus is "a health analytics company" that contracts with health care providers ("Intus Clients") who provide care through the federal Program of All-Inclusive Care for the Elderly ("PACE"). ECF No. 25 ¶¶ 1, 9. "Intus synthesizes data from each of the PACE programs' electronic health records that stores its patients' electronic health information, and uses that data to identify risks, visualize trends, and optimize patient care." *Id.* ¶ 1. "Many Intus Clients store their patients' electronic health data in an electronic health record program called PACECare, which is operated by [Defendant] RTZ." *Id.* ¶ 13.

Intus alleges that, with the consent of both its clients and RTZ, it was able to obtain data from PACECare from June 2021 to September 2022. *Id.* ¶ 14. However, "starting in September 2022, RTZ refused to provide Intus access to the data on PACECare and later prohibited Intus Clients from providing access to Intus." *Id.* ¶ 2. RTZ and Intus attempted to negotiate an

1  agreement for data sharing but were unsuccessful. *Id.* ¶¶ 15–19.  In December 2023, one "Intus
2  Client was told [by RTZ] that Intus could only be provided with standard files form a data export,
3  requiring Intus Clients to go through the administrative burden and time-consuming process of
4  manually downloading the data and then sending it to Intus." *Id.* ¶ 20.

5        Intus alleges that RTZ's conduct was "driven by [its] desire to create a product that
6  competes with Intus's analytics products," and that RTZ "announced a competing analytics
7  product in March 2024." *Id.* ¶ 22.  Intus further alleges that "RTZ is leveraging its position as [an
8  electronic medical records] provider to force Intus Clients to terminate their contractual
9  relationships with Intus, and to force prospective clients not to contract with Intus." *Id.* ¶ 32.

10        Intus's original complaint asserted four claims for relief: (1) intentional interference with
11  contractual relations; (2) intentional interference with prospective economic advantage;
12  (3) negligence per se; and (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof.
13  Code §§ 17200 *et seq*.  ECF No. 1 at 8–14.  RTZ filed a motion to dismiss the negligence per se
14  and unfair competition law claims.  ECF No. 19.  In lieu of opposing the motion, Intus filed an
15  amended complaint, which removed the negligence per se claim and included additional factual
16  allegations.  ECF No. 25.  RTZ now seeks dismissal only of Intus's claim for intentional
17  interference with prospective economic advantage.  ECF No. 28.

## II. JURISDICTION

19  The Court has jurisdiction under 28 U.S.C. § 1332(a).

## III. LEGAL STANDARD

21        A complaint must contain "a short and plain statement of the claim showing that the
22  pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Dismissal under Rule 12(b)(6) of the Federal
23  Rules of Civil Procedure "is appropriate only where the complaint lacks a cognizable legal theory
24  or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*,
25  521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint need not contain detailed factual allegations,
26  but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative
27  level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a
28  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

1    plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at
2    570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the
3    court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*
4    In determining whether a plaintiff has met this plausibility standard, the Court must "accept all
5    factual allegations in the complaint as true and construe the pleadings in the light most favorable"
6    to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Dismissal for failure to
7    state a claim should be with leave to amend, "even if no request to amend the pleading was made,
8    unless [the court] determines that the pleading could not possibly be cured by the allegation of
9    other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th
10   Cir. 1990).

11   **IV.  DISCUSSION**

12   RTZ has moved to dismiss Intus's second claim, for intentional interference with
13   prospective economic advantage, from the amended complaint. RTZ could have moved to dismiss
14   this claim from the original complaint, but it did not do so. Intus argues that the Court should
15   therefore deny the motion under Rule 12(g)(2) of the Federal Rules of Civil Procedure, which
16   provides that, with exceptions not applicable here, a party "must not make another motion under
17   [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier
18   motion." Fed. R. Civ. P. 12(g)(2). However, Rule 12(g)(2) must be read "in light of the general
19   policy of the Federal Rules of Civil Procedure, expressed in Rule 1," which "directs that the
20   Federal Rules 'be construed, administered, and employed by the court and the parties to secure the
21   just, speedy, and inexpensive determination of every action and proceeding.'" *In re Apple iPhone
22   Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) (quoting Fed. R. Civ. P. 1), *aff'd sub nom.
23   Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019). "Denying late-filed Rule 12(b)(6) motions . . . can
24   produce unnecessary and costly delays, contrary to the direction of Rule 1," *id.*, and "courts faced
25   with a successive motion [to dismiss that raises arguments that could have been raised in a prior
26   motion] often exercise their discretion to consider the new arguments in the interests of judicial
27   economy," *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696 CRB, 2011 WL
28   2690437, at *2 (N.D. Cal. July 8, 2011). The Court will do so here.

A claim for intentional interference with prospective economic advantage has five elements:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (quotation marks and citations omitted)). RTZ challenges only whether Intus has sufficiently alleged the third element, which requires that "the defendant's acts [be] wrongful apart from the interference itself"—i.e., that one or more acts be "independently wrongful." *Korea Supply Co.*, 29 Cal., 4th at 1154, 1158. "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159.

According to RTZ, Intus's claim is based solely on allegations that RTZ engaged in "information blocking," which is subject to civil monetary penalties under the 21st Century Cures Act, 42 U.S.C. § 300jj-52. RTZ further argues that a violation of the Cures Act cannot form the basis for an intentional interference with prospective economic advantage claim because there is no private right of action under that act.

However, RTZ does not and cannot dispute that the Cures Act is a "statutory . . . legal standard" that proscribes information blocking. *Korea Supply Co.*, 29 Cal. 4th at 1159. This makes the alleged conduct "independently wrongful" under California law. *Id.* Indeed, *Korea Supply Co.* forecloses RTZ's argument that the alleged wrongful conduct must be privately actionable by the plaintiff. In that case, the California Supreme Court concluded that "the independent wrongfulness requirement" was "clearly satisfied" by alleged actions that violated the Foreign Corrupt Practices Act ("FCPA") without considering whether the FCPA provided a private right of action. *Korea Supply Co.*, 29 Cal. 4th at 1159. Other courts have explained that the FCPA is enforced by "[t]he Justice Department and the SEC," *Clayco Petroleum Corp. v. Occidental Petroleum Corp.*, 712 F.2d 404, 409 (9th Cir. 1983), and does not provide for a private

right of action, *e.g.*, *Republic of Iraq v. ABB AG*, 768 F.3d 145, 171 (2d Cir. 2014); *Lamb v. Phillip Morris, Inc.*, 915 F.2d 1024, 1024 (6th Cir. 1990). Similarly, a plaintiff may recover under an intentional interference with prospective economic advantage claim where the intentional act is independently tortious only as to a third party, and not to the plaintiff themselves—i.e., where only a third party could have brought a claim based on the underlying act. *Korea Supply Co.*, 29 Cal. 4th at 1162–64. Thus, it is of no moment that Intus could not have brought a claim against RTZ under the Cures Act.

In its reply, RTZ argues that the independent act must be "litigated . . . in civil courts." ECF No. 35 at 16. However, although the tort of intentional interference with prospective economic advantage is intended to punish only interference that "amounts to independently actionable conduct," *Korea Supply Co.*, 29 Cal. 4th at 1159, it does not require that the alleged conduct be actionable in a court of law. To the contrary, a claim may lie, for example, where the defendant allegedly violates the "rules or standards of associations, trades and professions," as long as "internal remedies [are] available within the association, such as a right of arbitration between the aggrieved members." *Stevenson Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc.*, 138 Cal. App. 4th 1215, 1223–24 (2006). Here, RTZ acknowledges that the Cures Act provides for such an internal remedy: "a formal and structured complaint and enforcement process." ECF No. 28 at 17.

Because alleged violations of the Cures Act are sufficient to allege the wrongful conduct required to state an intentional interference of prospective economic advantage claim, the Court need not decide whether the complaint sufficiently alleges other bases for that claim. The parties can resolve the scope of the claim during discovery.

## CONCLUSION

For the above reasons, RTZ's motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: June 5, 2024

_____
JON S. TIGAR
United States District Judge