MANATT, PHELPS & PHILLIPS, LLP
Charles E. Weir (Bar No. 211091)
CWeir@manatt.com
Andrew Beshai (Bar No. 308030)
ABeshai@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

*Attorneys for Plaintiff*
INTUSCARE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUSCARE INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RTZ ASSOCIATES, INC.; and DOES 1 through 10,<br><br>　　　　　Defendants. | Case No. 4:24-cv-1132-JST<br><br>Assigned to: Hon. Jon S. Tigar<br><br>**PLAINTIFF INTUSCARE INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: June 19, 2025<br>Time: 2:00 p.m.<br>Courtroom: 6<br><br>Complaint Filed: February 23, 2024<br>Amended Complaint Filed: April 2, 2024<br>Counterclaims Filed: June 20, 2024 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1
II.  BACKGROUND ............................................................................................................ 2
III. STATEMENT OF UNDISPUTED MATERIAL FACTS.............................................. 3
IV.  LEGAL STANDARD .................................................................................................... 5
V.   INTUSCARE IS ENTITLED TO SUMMARY JUDGMENT ON ITS
     CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 CLAIM .................... 6
     A.   RTZ Violated the Cures Act ................................................................................ 7
          1.   There Is No Dispute That RTZ Is an Actor Under the Cures Act............... 8
          2.   RTZ Blocked Intus's Access to Health Data .............................................10
          3.   None of the Statutory Exceptions Apply ...................................................11
VI.  CONCLUSION .............................................................................................................11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................... 6

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ............................................................................................... 6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................... 5

*Clifford v. Quest Software Inc.*,
  38 Cal. App. 5th 745 (2019) ..................................................................................... 6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................................... 6

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) .................................................................................................... 7

*Pemberton v. Nationstar Mortg. LLC*,
  331 F. Supp. 3d 1018 (S.D. Cal. 2018) ............................................................... 6, 7

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
  No. 24-1773, 2025 WL 779691 (4th Cir. Mar. 12, 2025) ............................ 6, 8, 11

*Zhang v. Super. Ct.*,
  57 Cal. 4th 364 (2013) ............................................................................................... 6

**STATUTES**

21st Century Cures Act and the Public Health Services Act (the "Cures Act") .................... passim

California Business & Professions Code § 17200 *et seq.* ............................................. 1, 2, 3, 6, 7

**OTHER AUTHORITIES**

45 C.F.R. part 160 .................................................................................................................. 4, 8

45 C.F.R. part 164 .................................................................................................................. 4, 8

45 C.F.R. § 171 ............................................................................................................ 3, 8, 9, 10, 11

84 Fed. Reg. 7424 ....................................................................................................................... 4

85 Fed. Reg. 25642 (June 30, 2020) (codified at 45 C.F.R. §§ 170, 171) ........................... 7, 9, 11

**RULES**

Fed. R. Civ. P. 56(a) ................................................................................................................. 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

IntusCare Inc. ("Intus") provides critical healthcare analytics services to its clients. Intus' clients are healthcare providers that operate Medicare's Program of All-Inclusive Care for the Elderly, commonly referred to as "PACE" (the "Intus Clients"). PACE is a Medicare program that allows older adults with disabilities to live in their communities rather than in nursing homes or other institutional settings. To effectively provide these crucial healthcare services, PACE programs must coordinate patients' healthcare and social and community services among many providers. Recognizing PACE programs' need to better utilize data, Intus built a product that ingests data from its clients' clinical, administrative, and financial sources to provide analytics that help clients predict negative medical events, better coordinate care, and provide clinical, health quality, and compliance staffing support (through Intus' employed team of nurses, social workers, physicians, and medical analysts). To provide these services, Intus needs access to Intus Clients' data that resides on RTZ Associates, Inc.'s ("RTZ") electronic medical records ("EMR") platform, called PACECare, now operated under the name of Collabrios Health, Inc., which acquired RTZ in October 2024.

Intus Clients very much want to give Intus access to their information so that they can use the vital services Intus provides them and their patients. Yet, to gain an unfair competitive advantage—and in violation of the federal healthcare information sharing law and regulations—RTZ has used its medical records platform to block Intus from access to Intus Clients' own information. RTZ's illegal information blocking is harming Intus, Intus Clients, and the patients they both serve.

The crux of this lawsuit, and the primary relief Intus seeks, is to remedy RTZ's illegal blocking conduct, which violates California's Unfair Competition Law ("UCL"). Accordingly, Intus seeks summary judgment on the UCL claim. As to that claim, the material facts are not in dispute: RTZ has been blocking—and is continuing to block—Intus' access to the Intus Clients' information stored on RTZ's platform. RTZ's information blocking conduct violates the 21st

Century Cures Act and the Public Health Services Act (the "Cures Act"), including but not limited to 42 U.S.C. 300jj-52, and its implementing regulations, which prohibit information blocking by a health information technology developer, exchange, or network. RTZ's violation of the federal information blocking statute is unlawful conduct under California Business & Professions Code § 17200 et seq.

The Court should grant Intus' motion for partial summary judgment finding RTZ violated the Cures Act and is liable under California Business & Professions Code § 17200 *et seq.*

## II.  BACKGROUND

Both parties' businesses relate to PACE programs. (Declaration of Robbie Felton, "Felton Decl.," ¶ 2.) PACE is a Medicare program that provides services to disabled older adults that allow them to continue to live in their communities, rather than having to move to more restrictive institutional settings. (Felton Decl., ¶ 3.) Intus synthesizes data from each of the PACE programs' electronic health records that stores its patients' electronic health information, and uses that data to identify risks, visualize trends, and optimize patient care. (Felton Decl., ¶ 4.) Intus helps PACE programs to improve participants' safety and provide better care by, for example, helping to track fall risk or changes in acuity. (Felton Decl., ¶ 5.) The Intus software predicts patients at high risk for hospitalizations, readmissions, and the onset of chronic diseases; seeks to reduce overall expenditures through early patient risk detection; and improves organizational performance through trend analysis and best practice identification. (Felton Decl., ¶ 6.)

By helping PACE programs harness their existing data to provide better care, Intus reduces administrative burden on providers and allows PACE programs to better focus on interacting with participants. (Felton Decl., ¶ 7.) Intus Clients, who are health care providers, expect their electronic health records to be seamlessly integrated into Intus' software without additional or manual effort on the part of the PACE programs themselves in order to reduce the burden on the Intus Clients' clinical staff and care workers in using Intus' services. (Felton Decl., ¶ 8.) Intus Clients cannot function without an EMR system. (*Id.*)

The parties have been litigating this case for nearly two years, and Intus has continually

tried to compromise with RTZ to resolve RTZ's manufactured concerns about its intellectual property being compromised by Intus accessing Intus Clients' information on PACECare. (Felton Decl., ¶ 9.)[1] The longer RTZ's unwarranted and illegal information blocking persists, the greater the harm to Intus, Intus Clients, and the patients Intus and its clients serve.

### III.     STATEMENT OF UNDISPUTED MATERIAL FACTS

RTZ is a software development company that specializes in creating and licensing care coordination software solutions for agencies serving elderly people and those with disabilities. RTZ "owns, develops and license[es] PACECare software to PACE facilities." (Dkt. 41, Ans. to FAC at ¶ 1.) (UMF # 1).[2] PACECare is "a cloud-based electronic health record software specifically developed to support the needs of PACE programs." (Dkt. 41, RTZ's Counterclaims at ¶ 1.) (UMF # 2). As stated on its website and set forth on the Office of the National Coordinator for Health Information Technology Certified Health IT Product List website, RTZ was a "ONC-ATBC certified Electronic Health Record," which would make it an "actor" subject to the federal information blocking regulations under 45 CFR § 171.102. (*See* Weir Decl., ¶ 2, Ex. 1; Weir Decl. ¶ 3, Ex. 2) (showing that RTZ was ONC-certified)). As stated on its website, PACECare includes "[c]ertified lab interfaces (*e.g.*, Quest, Sunquest)" and "[c]ertified e-prescribe interfaces (*e.g.*, CareKinesis, Surescripts)." (Weir Decl., ¶ 4, Ex. 3.) (UMF # 3). Accordingly, as discussed below, RTZ is also an "actor" because it facilitates access to and exchange of healthcare information between unaffiliated entities for treatment, payment or health care operations through the PACECare EMR system, making it a "health information network or health information

---

[1] Not only does RTZ's intellectual property excuse not justify its violation of the Cures Act, it is not even true. Intus is not accessing RTZ's intellectual property and has provided RTZ with all the information it needs to confirm that, including the automated scripts Intus ran to secure the necessary information from the Intus Clients, and dates of Intus' logins to PACECare for the Intus Clients. (Weir Decl., ¶ 11.) Indeed, if RTZ had evidence that Intus was stealing its intellectual property, it would have brought those claims in this litigation.

[2] Intus provides additional factual background to provide the Court with context. Intus does not believe that RTZ can legitimately dispute any of the facts asserted in this Motion. However, only the facts identified as Undisputed Material Facts ("UMF") are required for Intus to prevail on summary judgment on its UCL claim.

exchange"[3] as defined in the implementing regulations of the Cures Act.

Intus Clients capture and store their patients' electronic health data in electronic health record programs, including on PACECare. (Felton Decl., ¶ 10.) (UMF # 4). Intus Clients need Intus to be able to access the electronic health record data that the Intus Clients store on PACECare on a regular and consistent basis. (Felton Decl., ¶ 11.)

Around April 2021, Intus contacted RTZ to request access to Intus Clients' health records data stored on RTZ's PACECare system—data that RTZ provides to other vendors and programs, but which it now refuses to provide to Intus. (Felton Decl., ¶ 12.) From approximately June 2021 to September 2022, Intus obtained the electronic health records data using automated scripts to extract the necessary data, with RTZ's knowledge. (Felton Decl., ¶ 13.) (UMF # 5). In September 2022, RTZ demanded that Intus sign a Non-Disclosure Agreement ("NDA") as a condition of access to the data of the Intus Clients. (Weir Decl., ¶ 5, Ex. 4.) Intus communicated with RTZ for years in an attempt to reach a solution that would assuage RTZ's concerns about its intellectual property while allowing Intus to continue accessing the data stored on PACECare belonging to the Intus Clients. (Felton Decl., ¶ 14.) However, RTZ refused. (*Id.*)

While Intus tried to negotiate a solution with RTZ, RTZ ramped up its efforts to block Intus from accessing the PACECare system and to directly interfere with Intus and its relationships with the Intus Clients. (Felton Decl., ¶ 15.) ███████████████████████

---

[3] An entity is a health information network or health information exchange if it "determines, controls, or requires the use of any technology or services for access, exchange, or use of electronic health information: (1) Among more than two unaffiliated individuals or entities (other than the individual or entity to which this definition might apply) that are enabled to exchange with each other; and (2) That is for a treatment, payment, or health care operations purpose, as such terms are defined in 45 C.F.R. § 164.501 regardless of whether such individuals or entities are subject to the requirements of 45 C.F.R. parts 160 and 164." The Office of the National Coordinator for Health Information Technology ("ONC") has stated that the definition of a health information network or health information exchange may include a broad range of organizations, such as, without limitation, a range of "organizations, entities, or arrangements that enable EHI to be accessed, exchanged, or used between or among particular types of parties or for particular purposes." 84 Fed. Reg. 7424, 751. And the ONC has further explained that an organization or entity may qualify as an health information network or health information exchange even if it "facilitate[s] or enable[s] the access, exchange, or use of EHI' only "for a limited scope of participants and purposes." *Id.*

1  ██████████████████████████████████████
2  ██████████████████████████████████. (*See, e.g.*, Weir Decl., ¶ 6, Ex. 5 § 7.1
3  ██████████████████████████████████████████████████████
4  ██████████████████████████████████████████████████████
5  ██████████████████████████████████████████████████████
6  ██████████████████████████████████████████████████████
7  ██████████████████████████████████████████████████████
8  ██████████████████████████████████████████████████████
9  ███████████████████████████████████"]) (emphasis added).)
10 (*See also*, Weir Decl., ¶ 7, Ex. 6 § 7.1; Weir Decl., ¶ 8, Ex. 7 § 7.1; Weir Decl., ¶ 9, Ex. 8.) (UMF
11 # 6). ██████████████████████████████████████████████████
12 ██████████████████████████████████████████████████████
13 ████████████████████████████████████████████████ (Weir
14 Decl., ¶ 10, Ex. 9.) (UMF # 7). ██████████████████████
15 ██████████████████████████████████████████████████████
16 ██████████████████████████████████████████████████████
17 ████████████████████████ (*Id.*) Since March 15, 2024, due to RTZ's information blocking
18 practices, Intus has been completely locked out of access to PACECare and has had
19 contracts terminated by certain clients to whose information Intus previously had authorized
20 access. (Felton Decl., ¶ 16.) (UMF # 8). This threatens Intus' business by leaving Intus unable to
21 fulfill its contractual obligations to these Intus Clients. In fact, Intus has already lost clients and
22 risks losing more if RTZ's illegal information blocking continues; RTZ's obstruction has
23 additionally stifled numerous growth opportunities and potential client acquisitions. (Felton

## III. LEGAL STANDARD

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden to inform the court of the basis for its motion and to demonstrate the absence of a genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). On summary judgment, the court views the facts and draws reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 599 (1986). The court will not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## V. INTUSCARE IS ENTITLED TO SUMMARY JUDGMENT ON ITS CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 CLAIM

All elements of a California's Unfair Competition Law ("UCL") claim under section 17200 are met here. To bring a claim under Section 17200, a plaintiff must show that it has suffered an injury in fact, that is, an economic injury caused by unfair competition. *Zhang v. Super. Ct.*, 57 Cal. 4th 364, 372 (2013) (citing Cal. Bus. & Prof. Code § 17204). Unfair competition includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The Act provides for equitable remedies including restitution and injunctive relief. *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 749 (2019) ("Only two remedies are available under the UCL: injunctive relief and restitution (*i.e.*, disgorgement of money or property unlawfully obtained.")).

As to the injury prong, Intus has already lost clients and risks losing more if RTZ's illegal information blocking continues; RTZ's obstruction has additionally stifled numerous growth opportunities and potential client acquisitions. (Felton Decl., ¶ 17.) (UMF # 9). Intus seeks to enjoin RTZ from continuing to block Intus' access to the Intus Clients' data, so Intus can fulfill its contractual duties and serve its mission of helping PACE programs better serve their participants.

As to the unlawful prong, RTZ's violation of the 21st Century Cures Act ("Cures Act") is an actionable violation of UCL. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("By proscribing any unlawful business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (internal quotation marks omitted); *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1049 (S.D. Cal. 2018) ("Violations of other laws are treated as

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

'unlawful' business practices that are independently actionable under the UCL."). At least one federal appellate court has ruled that the Cures Act can serve as the predicate for an unfair competition claim. *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, No. 24-1773, 2025 WL 779691, at *13 (4th Cir. Mar. 12, 2025) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 487 (1996) (explaining the lack of a federal statutory private right of action does not bar a plaintiff from relying on violations of that statute as evidence supporting a state law claim).[4] In its order denying RTZ's motion to dismiss the First Amended Complaint, this Court reached a similar conclusion that Cures Act violations could support state law claims. (Dkt. 37 at 19-20.)

### A. RTZ Violated the Cures Act

Passed in 2016, the Cures Act was designed to foster safe and open "access, exchange, and use of electronic health information (EHI)." 21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program, 85 Fed. Reg. 25642, 25643 (June 30, 2020) (codified at 45 C.F.R. §§ 170, 171). The Cures Act created rules to promote interoperability, prevent information blocking, and ensure various actors in the healthcare industry and patients can access electronic health information. Under these rules, health IT developers of certified health IT (*e.g.* electronic health record vendors), health information exchanges and health information networks, and health care providers are prohibited from interfering with or discouraging access to, exchange of, or use of electronic health information. Further, the United States Department of Health and Human Services, Office of the National Coordinator for Health Information Technology ("ONC") implemented information blocking regulations to avert the use of "practices that increase the cost, complexity, or other burden associated with accessing, exchanging, or using electronic health information." *Id.* at 25809.

In sum, the Cures Act aims to protect individuals and entities from "information blocking,"

---

[4] The mere fact that the Cures Act does not include a private right of action does not preclude a California UCL claim premised on a violation of the Cures Act. *Pemberton*, 331 F. Supp. 3d at 1049 (holding that a UCL claim premised on a statute without a private right of action is barred "only if that statute has an express bar to private enforcement, as reflected in the statute's text or legislative history.") Nothing about the information blocking statute's text or history suggests that the legislature sought to bar private enforcement.

or unnecessary obstacles to records access from the companies that electronically store medical records. *Id.* "Information blocking" constitutes any acts which likely "interfere with access, exchange, or use of electronic health information," to include "practices that restrict authorized access" to records necessary "for treatment and other permitted purposes." 42 U.S.C. § 300jj-52(a)(2)(A).

In a recent Fourth Circuit opinion, the court reiterated that the CURES Act "seeks to prevent companies from engaging in 'information blocking' of electronic health information." *Real Time*, 2025 WL 779691 at *16. The facts and legal analysis in the *Real Time* case are closely analogous to this case. There, the court affirmed a district court's grant of preliminary injunction in favor of the plaintiff, a health care analytics company called Real Time Medical Systems, on an unfair competition claim predicated on the CURE Act's information-blocking provision. *Id.* Much like RTZ's efforts to block Intus' access to medical information, the defendant in *Real Time*, PointClickCare Technologies, a company that hosts health records, used indecipherable CAPTCHA walls to prevent Real Time's automated users, or "bots," from accessing relevant health care information. *Id.* at *3. In an effort to resolve PointClickCare's concerns, Real Time executed an NDA and began "executing a premerger information exchange, under which it 'pretty much shared everything with [PointClickCare]' related to its data-analytics methodology, customers, and finances." *Id.* at *5. Despite the NDA, within six months of the NDA, PointClickCare reinstituted its CAPTCHA walls and blocked Real Time's users at 700 of its facilities. *Id.*

### 1. There Is No Dispute That RTZ Is an Actor Under the Cures Act

RTZ is a "health information network or health information exchange," under 45 C.F.R. § 171.102, and thus an "Actor" subject to the federal information blocking regulations. An entity is a health information network or health information exchange if it "determines, controls, or requires the use of any technology or services for access, exchange, or use of electronic health information: (1) Among more than two unaffiliated individuals or entities (other than the individual or entity to which this definition might apply) that are enabled to exchange with each other; and (2) That is for a treatment, payment, or health care operations purpose, as such terms are defined in 45 C.F.R. §

164.501 regardless of whether such individuals or entities are subject to the requirements of 45 C.F.R. parts 160 and 164." The ONC has stated that the definition of a health information network or health information exchange ("HIN/HIE") may include a broad range of organizations, such as, without limitation, a range of "organizations, entities, or arrangements that enable [electronic health information] to be accessed, exchanged, or used between or among particular types of parties or for particular purposes." 21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program, 85 Fed. Reg. 25642, 25801 (June 30, 2020) (codified at 45 C.F.R. §§ 170, 171). In explaining its decision to define HIN/HIE broadly, ONC clarified that "the Cures Act goals of supporting greater interoperability, access, exchange, and use of [Electronic Health Information ("EHI")] are best advanced by a functional definition [of HIN/HIE] without specific exclusions." *Id*. at 25803. By way of an example, ONC explained that an organization or entity may qualify as an HIN/HIE even if it facilitate[s] or enable[s] the access, exchange, or use of EHI' only "for a limited scope of participants and purposes." *Id*. at 25801.

RTZ is an "Actor" for two reasons. First, as explained, RTZ is a software development company that specializes in creating and licensing care coordination software solutions for agencies serving elderly people and those with disabilities. (Dkt. 41, Ans. to FAC at ¶ 1.) (UMF # 1). RTZ stated that it is a "ONC-ATBC certified Electronic Health Record," which would make It an "Actor" subject to the federal information blocking regulations under 45 CFR §171.102. (Weir Decl., ¶¶ 2-3, Ex. 1-2; Weir Decl., ¶¶ 3-4, Ex. 2-3) (showing that RTZ was ONC-certified). (UMF # 3). 45 C.F.R. § 171.102 defines "Actor" as, among other things, "a developer of certified health IT."

Second, RTZ also stated that PACECare provides "[c]ertified lab interfaces (*e.g.*, Quest, Sunquest)" and "[c]ertified e-prescribe interfaces (*e.g.*, CareKinesis, Surescripts)." (Weir Decl., ¶ 4, Ex. 3.) (UMF # 3). Thus, RTZ clearly is facilitating access to and exchange of data between and among, at minimum, these entities (*i.e.*, Quest, Sunquest, CareKinesis, and Surescripts) and PACE programs. This facilitation of data exchange between and among various organizations for purposes of coordinating care for PACE program beneficiaries would bring RTZ squarely within the definition of an "health information network" or "health information exchange" as defined by the

1  ONC and in the statute. Thus, RTZ meets the definition of an "Actor" set forth in 45 CFR § 171.102
2  and must comply with the information blocking rules.

### 2. RTZ Blocked Intus's Access to Health Data

RTZ's unjustified refusal to grant Intus access to the data it seeks from PACECare constitutes an action that interferes "with access, exchange, or use of electronic health information," 45 C.F.R. § 171.103(a). Moreover, RTZ knew or at the very least should have known that its conduct was "likely to interfere with access, exchange, or use of electronic health information." 45 C.F.R. § 171.103(b)(1).

RTZ has taken several active steps to block Intus' access to vital health information, violating the Cures Act. As early as September 2022, RTZ held patient medical information hostage unless Intus was willing to meet RTZ's demands. (Weir Decl., ¶ 5, Ex. 4.)

Since at least early 2024, RTZ increased its efforts to illegally block Intus from healthcare data. ▮

▮

▮ (*See, e.g.*, Weir Decl., ¶ 6, Ex. 5 § 7.1 ▮

▮

▮

▮

▮

▮

▮

▮ (*See also*, Weir Decl., ¶ 7, Ex. 6 § 7.1; Weir Decl., ¶ 8, Ex. 7 § 7.1; Weir Decl., ¶ 9, Ex. 8.) (UMF # 6). ▮

▮

▮

▮ (Weir Decl., ¶ 10, Ex. 9.) (UMF # 7). Since March 15, 2024, due to RTZ's information blocking practices, Intus

has been completely locked out of access to PACECare and has had contracts terminated by certain clients to whose information Intus previously had authorized access. (Felton Decl., ¶ 16.) (UMF # 8).

### 3. None of the Statutory Exceptions Apply

The information sharing statute contains limited, narrow statutory exceptions—not a single one applies here: Preventing Harm Exception; Privacy Exception; Security Exception; Infeasibility Exception; Health IT Performance Exception; and Protecting Care Access Exception (implemented to reduce potential exposure to legal action). 45 C.F.R. §§ 171.201-171.206. *See* 21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program, 85 Fed. Reg. 25642, 25794 (June 30, 2020) (codified at 45 C.F.R. §§ 170, 171) ("[E]ach exception is intended to be tailored, through appropriate conditions, so that it is limited to the reasonable and necessary activities that it is designed to exempt."); *see also*, *id.*, at 25820 ("We emphasized that the exceptions would be subject to strict conditions to ensure that they do not extend protection to practices that raise information blocking concerns. The last exception recognized that it may be reasonable and necessary for actors to make health IT temporarily unavailable for the benefit of the overall performance of health IT. This exception would permit an actor to make the operation of health IT . . . .").

"[T]he exceptions set forth in the regulations are defenses to the applicability of the information-blocking statute." *Real Time*, 2025 WL 779691 at *17. RTZ has not pled as a defense that any of the statutory exceptions apply. That ends the inquiry. And even if it did, RTZ could not carry its burden to "show that its actions were not information blocking because a regulatory exception applies." *Id.* (analyzing and rejecting various exemptions). Indeed, Intus previously had access to its client's data on PACECare until RTZ improperly blocked Intus. (Felton Decl., ¶ 13.) (UMF # 5). None of the exceptions apply even if they had been pled by RTZ.

## VI. CONCLUSION

For the foregoing reasons, this Court should grant Intus' motion for partial summary judgment.

Dated: April 18, 2025                             MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Charles E. Weir
Charles E. Weir
Andrew Beshai
Attorneys for Plaintiff
INTUSCARE INC.