NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile:  415.398.2438

NOSSAMAN LLP
KASIA PENN (SBN 306056)
kpenn@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone:  949.833.7800
Facsimile:  949.833.7878

Attorneys for Defendant RTZ ASSOCIATES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUS CARE, INC., | Case No:     4:24-cv-01132-JST |
| Plaintiff, | Assigned to: Hon. Jon S. Tigar |
| vs. | **DEFENDANT RTZ ASSOCIATES, INC.'S OPPOSITION TO PLAINTIFF INTUS CARE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| RTZ ASSOCIATES, INC.; and DOES 1 through 10, | |
| Defendants, | [Filed concurrently with Declaration of Michael Zawadski and Declaration of David C. Lee] |
| | Complaint Filed: February 23, 2024<br>Amended Complaint Filed: April 2, 2024<br>Counterclaims Filed: June 20, 2024 |

1

## TABLE OF CONTENTS

2

**Page**

3   I.      INTRODUCTION ...................................................................................2

4   II.     BACKGROUND FACTS .........................................................................3

5   III.    RTZ'S RESPONSE TO INTUS'S STATEMENT OF UNDISPUTED
          MATERIAL FACTS ...............................................................................4

6

7   IV.     LEGAL ARGUMENT.............................................................................6

8           a.    Legal Standard .............................................................................6

9           b.    Intus's Motion Fails Because There Are Genuine Issues of Material Fact. ...........7

10          c.    RTZ Has Not Violated The Cures Act's Information Blocking Rules...................9

11                i.    Intus Has Never Been "Blocked" From The Data It Seeks. ......................9

12                ii.   There Is A Triable Issue of Material Fact As To Whether RTZ's
                      Conduct Falls Within Enumerated Cures Act Exceptions to
13                    Information Blocking.................................................................14

14                      1.    The Manner Exception Applies. ...................................................15

15                      2.    The Infeasibility Exception Applies. ............................................16

16  V.      CONCLUSION.....................................................................................21

17

18

19

20

21

22

23

24

25

26

27

28

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS CARE, INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT

63465105.v3

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................7, 8, 9, 17

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*,
    213 F.3d 474 (9th Cir. 2000) .........................................................................9, 22

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).......................................10

*Karasek v. Regents of Univ. of Cal.*,
    956 F.3d 1093 (9th Cir. 2020) ............................................................................9

*Nissan Fire & Marine Ins. Cos., Ltd. v. Fritz Cos., Inc.*,
    210 F.3d 1099 (9th Cir. 2000) ........................................................................9, 18

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
    131 F.4th 205 (4th Cir. 2025) .......................................................................13, 14

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
    No. 24-1773, 2025 WL 779691 (4th Cir. Mar. 12, 2025.)............................7, 13, 14

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
    No. 8:24-CV-00313-PX, 2024 WL 3569493 (D. Md. July 29, 2024), aff'd, 131
    F.4th 205 (4th Cir. 2025) ..................................................................................14

*Teen-Ed, Inc. v. Kimball Int'l Inc.*,
    620 F2.d 399, 403 (3rd Cir. 1980) .....................................................................24

*Terraza v. Safeway Inc.*,
    2019 WL 12872959 (N.D. Cal., Mar. 27, 2019).......................................10, 12, 23

**Statutes**

Bus. & Prof., Code § 17200.....................................................................................5, 7, 22

**Court Rules**

Fed. R. Civ. P. 56(a) ...............................................................................................11

Fed. R. Evid. 201 ....................................................................................................23

Fed. R. Evid. 701 ....................................................................................................24

Fed. R. Evid. 801 ....................................................................................................23

Fed. R. Evid. 901 ...................................................................................................................23

**Other Authorities**

45 C.F.R. § 171.204 .........................................................................................................17, 19

45 C.F.R. § 171.204(a) ...........................................................................................................19

45 C.F.R. § 171.204(a)(4)(iv) ................................................................................................21

45 C.F.R. § 171.301 ................................................................................................................17

45 C.F.R. § 171.301(a) ......................................................................................................18, 20

45 C.F.R. § 171.301(b) ......................................................................................................18, 20

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS CARE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

63465105.v3

# I.    INTRODUCTION

This case concerns allegations that Defendant RTZ Associates, Inc.'s ("RTZ") has blocked Plaintiff IntusCare, Inc. ("Intus") from accessing certain electronic health information entered into RTZ's proprietary software system, PACECare.  Intus claims that RTZ's conduct amounts to "information blocking" in violation of the 21st Century Cures Act ("Cures Act") which prohibits blocking by a certified health information technology developer, exchange or network.

Intus's assertion of "information blocking" is pure fiction.  RTZ offered PACECare access to Intus in exchange for executing its standard PACECare access nondisclosure agreement ("NDA") which has been signed by many third-party companies seeking similar access.  Intus refused to do so.  Intus can also obtain the data it seeks directly from its own clients without ever needing to access PACECare.  Yet, Intus likewise refuses to do so because it claims the process is inconvenient.  Taking matters into its own hands, Intus thus secretly developed and deployed an automated script (or bot) to impermissibly use the log-in credentials of PACECare clients to scrape and extract data from the PACECare system without RTZ's knowledge, consent, or authorization.  Along the way, Intus has lied to at least one of its own clients about its corporate affiliations in an effort to illicitly gain access to PACECare via another company's NDA access rights.  Simply put, Intus has not been blocked from the data it seeks.  Indeed, its own discovery responses contradict the assertions in its Motion.  And other evidence demonstrates the falsity of multiple "undisputed material facts" asserted by Intus in its Motion.

Even if Intus could establish some "blocking" conduct by RTZ (which it cannot), multiple exceptions delineated within the Cures Act apply to remove such conduct from the definition of "information blocking."  Therefore, as demonstrated below, Intus's assertions of illegal "information blocking" are unsubstantiated, erroneous, and subject to genuine dispute.

Consequently, in the absence of proving the impermissible "information blocking," Intus cannot establish a violation of the Cures Act, and thus, cannot establish a violation of Business & Professions Code section 17200.  As such, Intus's Motion should be summarily denied.

///

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS CARE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

63465105.v3

## II.    BACKGROUND FACTS

RTZ has developed and exclusively owns the PACECare software system.  (Declaration of Michael Zawadski in support of Opposition to Intus's Motion for Partial Summary Judgment ("Zawadski Decl."), at ¶ 3.)  PACECare is a cloud-based administrative software solution that is licensed to Program of All-inclusive Care for the Elderly ("PACE") facilities throughout the United States.  (*Id.*)  PACE facilities provide focused care to elderly patients, and use PACECare as an administrative tool to maintain and organize operations, manage finances, and track key PACE participant data that is input into and managed by the software solution ("PACE data"). (*Id.*)  The PACE facilities use PACECare pursuant to the terms of a PACECare Agreement.  (*Id.*) PACECare is a proprietary and confidential system.  Access to PACECare is restricted only to specific authorized users approved by RTZ.  (*Id.*)  Each authorized user is issued unique login credentials.  (*Id.*)  Only users with such authorized credentials are permitted access to the system. RTZ's clients are prohibited from granting any third parties (such as Intus) access to PACECare without RTZ's consent pursuant to RTZ's PACECare Agreements.  (*Id.*)

Intus provides data visualization software to PACE programs, and extracts PACE data to create informational dashboards for its PACE facility customers—some of which are also RTZ customers ("Intus Clients").  (See generally Intus's Motion, at 2:12-19.)  It uses the PACE data of its clients to provide its services.  (*Id.*)

Intus has never obtained an NDA from RTZ.  (Zawadski Decl., at ¶¶ 5-6.)  It is therefore not permitted to access PACECare without RTZ's consent—which it has never received.  (*Id.*, at ¶ 6.)  Despite not having any access rights, RTZ has discovered that Intus nevertheless knowingly accessed PACECare without permission.  As alleged in RTZ's Counterclaim in this action, Intus achieved such access in multiple unauthorized fashions including by: (i) improperly using PACE facilities' login credentials (thereby trying to mask Intus' intrusion); and (ii) surreptitiously and without RTZ's knowledge or consent, developing an "automated script" (or bot) to automatically extract PACE Data from its customers' PACECare system, again using its customers' login credentials.  (See Document 41, at Counterclaim ¶¶ 13-15, 30-44.)  In so doing, ///

1   Intus wrongfully accessed PACECare in covert fashion without an NDA or RTZ's express

2   consent.

3   **III.    RTZ'S RESPONSE TO INTUS'S STATEMENT OF UNDISPUTED MATERIAL**

4   **FACTS**

5        Intus sets forth what it claims are eight (8) Undisputed Material Facts ("UMF") sprinkled

6   amongst other "contextual" facts.  To streamline the issues, RTZ concedes that the following

7   UMFs are, indeed, undisputed: UMFs ## 1, 2, 3, 4, 6, and 7.  However, as discussed below, RTZ

8   disputes UMF #5 and #8.

9        However, before addressing UMF #5 and #8, it is important to highlight Intus's

10  intellectual dishonesty vis-à-vis its "material facts."  Intus's Motion seeks an order "finding RTZ

11  violated the Cures Act and is liable under B&P Code section 17200 *et seq*."  (Motion, at 2:6-7.)

12  As argued by Intus, "RTZ's violation of the [Cures Act] is an actionable violation of the UCL."

13  (Motion, at 6:23-24.)  Intus's Motion is thus dependent on proving (in its Motion) that RTZ

14  violated the Cures Act, and specifically the information blocking rules of the Act.  However, as

15  Intus concedes, there are express exceptions to information blocking:  "[T]he exceptions set forth

16  in the regulations are defenses to the applicability of the information-blocking statute."  (Motion,

17  at 11:18-19, citing to, *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, No. 24-1773,

18  2025 WL 779691, at *13 (4th Cir. Mar. 12, 2025.)

19       Is it well established that, "a fact is material only if it might affect the outcome of the

20  case."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Therefore, facts pertaining to

21  whether defenses apply to the "information-blocking statute"—i.e., the delineated exceptions set

22  forth in the Cures Act—are self-evidently "material."  Indeed, the application of such exceptions

23  are outcome determinative not only to this Motion, but to Intus's alleged UCL claim.  Yet, Intus

24  conspicuously avoids including any facts pertaining to the inapplicability of such exceptions

25  within its Statement of Undisputed Facts (Motion, at 3:6-5:23), despite dedicating an entire

26  section of its Motion to the argument that, "None of the Statutory Exceptions Apply."  (Motion,

27  at 11:4-24.)  That section of the Motion, however, engages in no actual analysis of the exceptions

28  and presents no facts or evidence.  Instead, Intus offers nothing more than the skimpy conclusion

that "[n]one of the exceptions apply…."  As addressed below, RTZ, in fact, presents argument

and evidence that one or more exceptions actually do apply.  As such, RTZ cannot be deemed to

have blocked information in violation of the Cures Act and consequently has not engaged in

unfair business practices alleged by Intus's UCL claim.  At the very least, RTZ raises triable

issues of fact on the applicability of the exceptions—despite Intus's dubious attempt to avoid

acknowledging the materiality of these facts to its argument.  The application of the exceptions is

material because it unquestionably "affect[s] the outcome of the case" (*Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986)) regardless of whether or not it is included in Intus's

Statement of Undisputed Facts.

Moving on, Intus's UMF #5 asserts that, "From approximately June 2021 to September

2022, Intus obtained electronic health records data using automated scripts to extract the

necessary data, <u>with RTZ's knowledge</u>."  (Emphasis supplied.)  That fact is clearly disputed.

RTZ never knew about Intus's use of automated scripts (i.e., bots) to access PACECare and

extract data from June 2021 to September 2022.  (Zawadski Decl., at ¶¶ 10-11.)  Moreover, RTZ

never authorized Intus to develop, deploy or use bots to scrape its system for data or provided it

with log-in credentials to do so.  (Id.)

Next, Intus's UMF #8 asserts that, "**<u>Since March 15, 2024</u>**, due to RTZ's information

blocking practices, Intus has been **<u>completely locked out of access to PACECare</u>**…."  (Motion,

at 5:17-20, emphasis supplied.)  Again, this fact is clearly disputed.  RTZ propounded

Interrogatories on Intus specifically asking it to:

> IDENTIFY all log-in credentials Intus **<u>used to access PACECare
> between January 1, 2022 and the present</u>**.  [For the purpose of
> this request, IDENTIFY shall mean to: (i) identify each PACE
> facility using PACECare that Intus accessed using a log-in
> credential; (ii) the specific log-in credential/s used by Intus to
> access each PACE facility's PACECare system; and (iii) the dates
> each log-in credential was used by Intus to access PACECare at
> each PACE facility.]

(See Declaration of David C. Lee in Support of Opposition to Motion for Partial Summary

Judgment ("Lee Decl."), at ¶ 2, Ex. 1.)

///

1    In response, Intus produced an "Appendix A" (an Excel spreadsheet). (Lee Decl., at ¶¶

2    3-4, Exhs. 2, 3 and 4.) As explained in its accompanying Interrogatory responses, Intus's

3    Appendix A details the:

> Dates the log-in credential [of its Intus Clients] **was used to access PACECare**: Please see column B of the spreadsheet labeled Appendix A, served concurrently with these responses, for the dates that the log-in credential was **used to access PACECare**."

7    (Lee Decl., at ¶2, Exh. 2, bold supplied.) As reflected in column B to Appendix A, Intus used

8    log-in credentials "to access PACECare" on many dates after March 15, 2024. (Lee Decl., at ¶ 4,

9    Exh. 3-4.) Accordingly, Intus's own discovery responses and Appendix A prove that Intus's

10   UMF #8 is factually incorrect, and therefore subject to obvious dispute. More troubling, and as

11   discussed in detail below, Intus's use of its client's log-in credentials to access PACECare (as

12   conceded by its Interrogatory responses and Appendix A) was without RTZ's permission or

13   authorization. (Zawadski Decl., at ¶ 11.)

14   **IV.    LEGAL ARGUMENT**

15       **a.    Legal Standard**

16   A party is entitled to summary judgment (or partial summary judgment) "only if, taking

17   the evidence and all reasonable inferences in the light most favorable to the non-moving party,

18   there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of

19   law." *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (quoting

20   *Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019)). A dispute is genuine

21   only if there is sufficient evidence "such that a reasonable jury could return a verdict for the

22   nonmoving party," and a fact is material only if it might affect the outcome of the case.

23   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

24   A party moving for summary judgment "has the initial burden of establishing the absence

25   of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v.

26   Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). If the moving party satisfies its initial

27   burden of production, the nonmoving party must produce admissible evidence to show that a

28   genuine issue of material fact exists. *Nissan Fire & Marine Ins. Cos., Ltd. v. Fritz Cos., Inc.*,

6

1   210 F.3d 1099, 1102-1103 (9th Cir. 2000).  If the nonmoving party fails to make this showing,

2   the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-

3   23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

4         However, as this specific Court has acknowledged:

5           Courts should grant summary judgment cautiously, with due
           respect for a party's right to have its factually-grounded claims and
6           defenses tried to a factfinder.  *DelGiacco v. Cox Commc'ns, Inc.*,
           No. SACV 14-0200 DOC, 2015 WL 1535260, at *4 (C.D. Cal.
7           Apr. 6, 2015).  "Summary judgment practice is already markedly
           overused, unwieldy, and a source of unwarranted delay." *United*
8           *States v. Massachusetts*, 781 F. Supp. 2d 1, 20 (D. Mass. 2011).
           **"[W]hen facts or inferences are conflicting, judges are duty-**
9           **bound at summary judgment *not* to decide them."**  D. Brock
           Hornby, *Summary Judgment Without Illusions*, 13 Green Bag 2d
10          273, 287 (Spring 2010) (emphasis in original).  The absence of any
           prior case granting summary judgment on similar facts should have
11          been a sign to Plaintiff that such relief was not available here.

12   (*Terraza v. Safeway Inc.*, 2019 WL 12872959, at *4 (N.D. Cal., Mar. 27, 2019), emphasis

13   supplied.)

14       **b.**   **<u>Intus's Motion Fails Because There Are Genuine Issues of Material Fact.</u>**

15         As set forth above in Section III, Intus has asserted eight (8) UMFs.  Two of those UMFs

16   (i.e., UMFs #5 and #8) are subject to genuine dispute.

17         Intus's UMF #5 states that, "[f]rom approximately June 2021 to September 2022, Intus

18   obtained electronic health records data using automated scripts to extract the necessary data, with

19   RTZ's knowledge."  (Motion, at 4:8-10.)  The only evidence supporting this fact is a mirroring

20   statement within the Declaration of Robbie Felton in Support of Intus's Motion ("Felton Decl."):

21   "From approximately June 2021 to September 2022, Intus obtained the electronic health records

22   data using automated scripts to extract the necessary data, with RTZ's knowledge."  (Felton

23   Decl., at ¶13.)  Notably, Intus provides no other evidence to support this UMF #5.

24         RTZ disputes UMF #5.  Specifically, contrary to UMF #5 and Mr. Felton's supporting

25   declaration statement, RTZ had no knowledge of (or gave any consent to) Intus's use of bots

26   (i.e., its automated scripts) to access PACECare between June 2021 to September 2022.

27   (Zawadski Decl., at ¶¶ 10-11.) ████████████████████████████

28   ████████████████████████████████████████████████████

1   █████████████████████████████ (See Weir Decl., at ¶8, Ex.7 at

2   §7.1.)  In fact, RTZ does not permit <u>any third-parties</u> to run automated scripts in PACECare.

3   (Zawadski Decl., at ¶ 11.) ███████████████████████

4   ████████████████████████████████████████

5   ████████████████████████████████████████

6   ███████████████████████████████████████

7   █████████████████████████ (Zawadski Decl., at ¶ 8, Exh. 7.)

8   Therefore, RTZ did not and would knowingly consent to any use of automated scripts in

9   PACECare by Intus or others.  (Zawadski Decl., at ¶ 11.)  RTZ's evidence therefore directly

10  disputes Intus's UMF #5 and creates a genuine issue of fact as to whether Intus deployed and

11  used automated scripts in PACECare with RTZ's knowledge between June 2021 and September

12  2022.

13       RTZ likewise disputes Intus's UMF #8, i.e., stating that, "**<u>[s]ince March 15, 2024</u>**, due to

14  RTZ's information blocking practices, **<u>Intus has been completely locked out of access to</u>**

15  **<u>PACECare</u>** and has had contracts terminated by five specific clients to whose information Intus

16  previously had authorized access."  (Motion, at 5:17-20, emphasis supplied.)  Again, the only

17  evidence supporting Intus's UMF #8 is a verbatim statement in Robbie Felton's declaration.

18  (See, Felton Decl., at ¶16.)  Conspicuously, no other evidence is presented.  Contrary to UMF

19  #8, Intus has not been "completely locked out" of PACECare.  As amply demonstrated in

20  Section III above (i.e., Response to Intus's Statement of Undisputed Facts)  Intus's UMF #8 is

21  <u>directly contradicted</u> by Intus's own Interrogatory responses and Appendix A that indisputably

22  prove that Intus accessed PACECare on numerous instances after March 15, 2024 (despite

23  RTZ's demands to the contrary).  (Lee Decl, at ¶¶ 3-4, Exhs. 2, 3 and, and 3 and 4.)  It is

24  therefore inescapable that Intus's UMF #8 is clearly and genuinely disputed.

25       Pursuant to Fed. R. Civ. P. 56(a) (as cited by Intus), summary judgment should be

26  granted only where 'the movant shows that there is no genuine dispute as to any material fact

27  and the movant is entitled to judgment as a matter of law."  It is therefore axiomatic that where

28  the respondent (here, RTZ) demonstrates a genuine dispute as to "any material fact," summary

1    judgment should not be granted.  As UMFs #5 and #8 are clearly subject to genuine dispute,

2    Intus's Motion fails for this reason alone.  (*Terraza v. Safeway Inc.*, 2019 WL 12872959, at *3

3    (N.D. Cal., Mar. 27, 2019).

4              c.       **RTZ Has Not Violated The Cures Act's Information Blocking Rules.**

5                       i.       **Intus Has Never Been "Blocked" From The Data It Seeks.**

6              In addition to disputing Intus's UMFs #5 and #8, RTZ takes larger issue with the more

7    seismic "fact" permeating this case:  That Intus has been  "blocked" from the data it seeks.  No

8    such blocking has occurred.  In truth, this lawsuit is less about Intus's access to <u>data</u> – which it

9    has always had – and more about its intense focus to access RTZ's PACECare system.  As

10   demonstrated below, Intus can access the data it seeks <u>without needing to access the PACECare</u>

11   <u>system</u>.  Yet it chooses not to avail itself of that means of access because doing so

12   is…inconvenient.  Importantly, the Cures Act does not require RTZ to grant Intus unfettered

13   access to RTZ's PACECare <u>software</u>.  It merely ensures that there is access to <u>data</u>.

14             Initially, Intus has argued that RTZ's PACECare Agreement "prohibit[s] Intus Clients

15   from providing Intus direct access to Intus Clients' *own data* stored on the PACECare system."

16   (Motion, at 10:13-15.)  That is incorrect.  First, nothing in the PACECare Agreement prevents

17   Intus Clients from providing "Intus with access to the Intus Clients' *own data* stored on the

18   PACECare system."  Intus Clients are absolutely free to provide their data to others, including

19   Intus, as they deem necessary.

20

21

22

23   (See Weir Decl., at ¶5, Ex.7 at §7.2.)

24             Consequently, RTZ never has and never would stand in the way of an Intus Client

25   accessing the data on its PACECare system (which it owns) or providing that data to Intus (or

26   any other third-party). (Zawadski Decl., at ¶ 15.)  The PACECare Agreement merely restricts an

27   Intus Client from granting a third-party <u>access to the PACECare system</u> – not the data entered

28   into it.  This distinction is critical.

1

2

3

4     (See Weir Decl., at ¶8, Ex.7 at §7.1.)  Therefore, Intus's overstated

5     assertion that RTZ prohibits any and all access to PACECare by third-parties is flatly incorrect.

6     Intus admits it received RTZ's <u>standard NDA</u> as a requirement to accessing its PACECare

7     system.  (Zawadski Decl., at ¶ 4; Weir Decl., at ¶5, Ex.4.)  However, Intus's Motion is bereft of

8     any facts or evidence establishing why RTZ's offered NDA was unacceptable or unreasonable.

9     It offers no explanation whatsoever, demonstrating how RTZ's NDA is offensive.  In fact, RTZ's

10    standard NDA has been executed by numerous other third-parties without issue.  (Zawadski

11    Decl., at ¶ 4.)  As such, for reasons known only to itself, Intus opted not to execute RTZ's NDA,

12    and more tellingly, ultimately abandoned any and all discussions about an NDA.[1]  (Zawadski

13    Decl., at ¶¶ 4-5.)  More to the point, Intus's Motion (and this lawsuit in general) represents a

14    perilous slippery slope – that a party such as Intus can merely reject an NDA to trigger

15    "information blocking" claim.  In other words, Intus can approach every EHR company in the

16    PACE industry, demand access to their proprietary systems, refuse to execute their NDAs (even

17    unreasonably), and then claim that the resulting non-access constitutes illegal blocking.  This

18    proposition creates a dangerous precedent.

19            Regardless, Intus has never been blocked from the data it seeks.  And the law it relies on

20    to support its position is uncompelling.  Specifically, Intus cites to *Real Time Med. Sys., Inc. v.*

21    *PointClickCare Techs., Inc.*, 131 F.4th 205 (4th Cir. 2025) claiming that it is "closely analogous

22    to this case."  That case is not analogous at all and is readily distinguishable.  First, unlike here,

23    in *PointClickCare*, the parties executed an NDA.  (*Id.* at p. 217.)  Second, by virtue of that NDA,

24    Real Time (the plaintiff) was allowed to access and obtain data by running automated scripts,

25

26    [1] As detailed within this Opposition, Intus's need for an NDA likely diminished once it had
          deployed its automated script to PACECare using the unauthorized log-in credentials of its
27        Intus Clients without the knowledge or consent of RTZ.  Use of that automated script not
          only masked Intus's intrusion into PACECare, but allowed it unfettered access to the data it
28        needed without ever needing to contact RTZ.

1  and "for roughly eight years, Real Time accessed PointClickCare's systems using bots without

2  PointClickCare raising any concerns about the practice" and "PointClickCare never complained

3  to Real Time about its bot usage." (*Id.* at p. 215.)  This is not the case here as RTZ has never

4  consented to the use of automated script by Intus. (Zawadski Decl., at ¶ 11.)

5         Third, despite having granted Real Time access to the system via the NDA and

6  permitting bot use, PointClickCare deliberately and spontaneously blocked Real Time from

7  accessing the system through the use of indecipherable CAPTCHA images that intentionally

8  disrupted the operation of Real Time's automated scripts – despite its contractual right to use

9  such bots.  (*Id.* at p. 216.)  In fact, the court in that case observed that "[t]he parties [did] not

10  dispute that the unsolvable CAPTCHAs amount[ed] to 'information blocking' under the Cures

11  Act."  *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, No. 8:24-CV-00313-PX, 2024

12  WL 3569493, at *8 (D. Md. July 29, 2024), aff'd, 131 F.4th 205 (4th Cir. 2025).

13         In contrast to the egregious blocking conduct addressed in *PointClickCare*, here, RTZ has

14  merely insisted on the execution of an NDA to access PACECare – the same mechanism through

15  which Real Time gained its right to access PointClickCare's system.  RTZ requested an NDA,

16  and Intus simply refused to sign it.  (Zawadski Decl., at ¶ 6.)[2]  Importantly, however, the court in

17  *PointClickCare* observed that, "[w]henever [defendant] deploys CAPTCHAs that cannot be

18  solved, Real Time loses **all access** to the healthcare records it needs to perform its analytics."

19  *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 2024 WL 3569493, at *8, emphasis

20  supplied.)  That loss of "all access" is what drove the determination that information blocking

21  had occurred.

22         Here, Intus had access (or the easy promise of it) to the data.  First, as Intus concedes, it

23  was merely an NDA away from obtaining the access it sought.  As explained above, RTZ agreed

24  to provide Intus access to PACECare if it executed RTZ *standard* NDA – the same NDA

25  executed by other third-parties seeking access to PACECare.  (Zawadski Decl., at ¶ 4.)  Intus

26

27  ───────────────

   [2] Importantly, the posture of *PointClickCare* is decidedly different than this case in that it
       concerns a determination at a preliminary injunction stage, and not a motion for summary
28     judgment.

1   rejected that standard NDA.  (*Id.*, at ¶¶ 5-6.) Given these facts, a jury could reasonably find that

2   Intus's refusal to execute RTZ's standard NDA self-destructed any meaningful access to data –

3   as opposed to RTZ engaging in alleged "information blocking" activities, i.e., by requiring Intus

4   to execute an NDA before accessing PACECare.

5          Second, Intus has always had – and continues to have – access to the data it seeks without

6   any need to access the PACECare system itself:  It can obtain the data directly from its own Intus

7   Clients.  ███████████████████████████████████████████████████████████████

8   ███████████████████████████████████████████  (See Weir Decl., at ¶5, Ex. 7, at §7.2.)

9   Therefore, Intus can obtain the data it seeks directly from its own clients – a fact conceded in its

10  Amended Complaint:

11                  …Intus could be provided with standard files from a data export,
                    requiring Intus Clients to go through the administrative burden and
12                  time-consuming process of manually downloading the data and
                    then sending it to Intus.
13

14  (Intus's Amended Complaint, at ¶20 (Doc. 25).)  It is indisputable that each PACE facility can

15  extract and provide whatever PACECare-stored data Intus requests through a feature known as

16  the Custom Export Report.  (Zawadski Decl., at ¶ 14.) ████████████████████████████

17  ████████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████

21  RTZ specifically provides training guides for PACECare users on this feature, as well as

22  technical support for questions that arise.  (*Id.*)   Intus therefore can obtain the data it seeks

23  without ever needing to access PACECare and is clearly not "blocked" in any way. (*Id.*)   It

24  simply chooses not to avail itself of this process.  Intus's assertions that this process is an

25  "administrative burden" is incorrect as the process is readily available and automated.  (*Id.*)  And

26  tellingly, Intus's Motion is devoid of <u>any</u> evidence substantiating this so-called "burden" (i.e., no

27  declarations from Intus or its Intus Clients, etc.).  Intus's allegation therefore lacks any credence

28  and/or evidentiary value.  The Cures Act disallows legitimate instances of "information

1  blocking" – not instances of data access that are merely *inconvenient* to Intus.

2         Third, and more damning, the evidence establishes that despite the opportunity to

3  legitimately access PACECare via RTZ's standard NDA (which Intus refused to execute) or to

4  obtain the data directly from its Intus Clients via a permitted data export (which it also refused to

5  do because it is apparently inconvenient), Intus opted for a more sinister and underhanded

6  approach: It developed and deployed automated scripts (i.e., bots) to scrape RTZ's PACECare

7  software for the data it desired (and perhaps more) without RTZ's knowledge or consent.

8  (Zawadski Decl., at ¶ 10, Exh. 7.)

9

10

11                        (Zawadski Decl., at ¶ 7, 8, and 10 Exh. 7.)[3]

12

13                                                                (See Weir Decl.,

14  at ¶8, Ex.7 at §7.1.)  Moreover, it is indisputable that Intus utilized its bots to gain access to

15  numerous Intus Clients' PACECare systems using those clients' RTZ-issued log-in credentials.

16  As addressed above, Intus's Interrogatory responses and "Appendix A" detail the numerous

17  instances in which Intus gained access to PACECare using its client's log-in credentials.  (Lee

18  Decl, at ¶¶ 3-4, Exhs. 2, 3, and 4.)  Such evidence clearly establishes that Intus has not been

19  "blocked" from the data it seeks.[4]

20         Finally, evidence establishes that Intus has apparently resorted to fraudulent

21  misrepresentations – made to at least ***one of its own clients*** – to try and access PACECare.

22

23

24

25

---

26  [3] Intus's unauthorized use of its client's log-in credentials to access PACECare not only induced
those clients to violate their PACECare Agreements with RTZ, but also arguably constitutes
27     a violation of HIPAA.

28  [4] It is important to note that Intus's unauthorized development, deployment and use of its bots is
the subject of multiple counterclaims alleged by RTZ in this action.

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS CARE, INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT
63465105.v3

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████

In truth, Intus is not and has never been within the "corporate

umbrella" of TRHC.  (Zawadski Decl., at ¶ 7.) ██████████████

████████████████████████████████████████████████

██████████████████████████████  (Motion, at 5:11-14; Weir Decl., at ¶5, Ex.9; Felton

Decl., at ¶16.) ████████████████████████████████████████

████████████████  Accordingly, a genuine dispute exists as to the reasons that

client left Intus.  Nevertheless, Intus's conduct in misleading one client about its corporate

affiliations is suggestive of the fact that that it has misled others to gain unauthorized access to

PACECare.

Given the above, Intus's assertions that it has been blocked from the data it seeks is

feckless and belied by the evidence – including its own discovery responses and submissions.

Therefore, it is readily apparent that a "reasonable jury could return a verdict for the nonmoving

party…"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986).  At the very least, there is a genuine dispute as to whether Intus's access to data has been

"blocked."

  **ii.**   **There Is A Triable Issue of Material Fact As To Whether RTZ's**
      **Conduct Falls Within Enumerated Cures Act Exceptions to**
      **Information Blocking.**

If, in spite of the above, this Court somehow determines that Intus was blocked from

certain data, Intus's Motion still fails.  As Intus concedes but largely fails to address, the Cures

Act expressly enumerates specific exceptions to conduct that might otherwise constitute

information blocking.  (Motion, at 11:4-24.)[5]  Those exceptions include, among others, the

Manner and Infeasibility exceptions (45 C.F.R. §§ 171.204 and 171.301).

---

[5] Intus weakly asserts that RTZ has not asserted Cures Act exceptions as an affirmative defense,
which in its view "ends the inquiry."  (Motion, at 11:18-20.)  Not true.  On a summary

14

1          1.      **<u>The Manner Exception Applies.</u>**

2          The Manner exception provides that, "[a]n actor's practice of limiting the manner in

3    which it fulfills a request to access, exchange, or use electronic health information will not be

4    considered information blocking when the practice follows the conditions of this section." (45

5    C.F.R. § 171.301(a).)  The conditions of the section are:

6                    (1)     An actor must fulfill a request for electronic health
                             information in any manner requested, unless the actor is
7                            technically unable to fulfill the request <u>or cannot reach
                             agreeable terms with the requestor to fulfill the request in</u>
8                            <u>the manner requested.</u>

9          This first/preliminary condition is met.  It is indisputable that RTZ and Intus were unable

10   to reach agreement about the terms of Intus's access rights to PACECare in the manner requested

11   by Intus.  (Motion, at 4:10-15; Felton Decl., at ¶14; (Zawadski Decl., at ¶¶ 4-6.)

12         The next conditions are:

13                  (b)     ***Alternative manner.*** If an actor does not fulfill a request for electronic
                            health information in any manner requested because it is technically
14                          unable to fulfill the request or cannot reach agreeable terms with the
                            requestor to fulfill the request in the manner requested, the actor must
15                          fulfill the request in an alternative manner, as follows:

16                          (1)     The actor must fulfill the request without unnecessary delay in the
                                    following order of priority, starting with <u>paragraph (b)(1)(i)</u> of this section
17                                  and only proceeding to the next consecutive paragraph if the actor is
                                    technically unable to fulfill the request in the manner identified in a
18                                  paragraph.

19                                  (iii)    Using <u>an alternative machine-readable format</u>, including
                                    the means to interpret the electronic health information, agreed upon with
20                                  the requestor.

21   (45 C.F.R. § 171.301(b).)

22         Again, RTZ satisfied these conditions.  RTZ and Intus did not reach agreement about the

23   terms of Intus's access rights to obtain data.  (Motion, at 4:10-15; Felton Decl., at ¶14;

24   ───────────────────

25   judgment motion, "the nonmoving party must produce admissible evidence to show that a
     genuine issue of material fact exists."  *Nissan Fire & Marine Ins. Cos., Ltd. v. Fritz Cos.,*
26   *Inc.,* 210 F.3d 1099, 1102-1103 (9th Cir. 2000).  Accordingly, RTZ is entitled, indeed bears
     the burden, to produce admissible evidence to demonstrate a triable issue of fact.  The fact
27   that RTZ did not expressly assert Cures Act exception does not prevent it from presenting
     such evidence in opposition.  And Intus's Motion is devoid of case law holding for such a
28   proposition.

1    (Zawadski Decl., at ¶¶ 4-6.)  As an alternative means of fulfilling Intus's request for direct access

2    to PACECare to extract the data, RTZ's system features a Custom Export Report function that

3    generates a data file, typically in a comma-separated value (".CSV") format, which can be

4    opened in Google Sheets, Excel, or many other programs, and therefore is clearly machine-

5    readable.  (Zawadski Decl., at ¶ 14.)  The Custom Reports Routine allows users to download all

6    electronic health information to the .CSV file. (*Id.*)

7    (*Id.*)

8    

9    (*Id.*)

10    

11    

12    (Zawadski Decl., at ¶ 16.)

13    Indeed, Intus's Amended Complaint concedes, this data export option exists as an alternate

14    manner of obtaining the data it seeks.  (Intus's Amended Complaint, at ¶20 (Doc. 25.)

15    Because the format of the files generated by the automatic script and the data downloads

16    generated by the Custom Reports Routine are the same, the alternative manner condition is

17    satisfied. As such, all conditions of the Manner exception are therefore met, and RTZ's conduct

18    is not and cannot be considered information blocking.  Again, at the very least, there is a genuine

19    dispute as to its applicability.

20        **2.    The Infeasibility Exception Applies.**

21    The Infeasibility Exception also applies.  The exception is codified in 45 C.F.R. §

22    171.204, which states that "[a]n actor's practice of not fulfilling a request to access…electronic

23    health information due to infeasibility of the request will not be considered information blocking

24    when the practice meets one of the conditions in paragraph (a) of this section and meets the

25    requirements in paragraph (b) of this section."  Section 171.204(a) sets out the various

26    "Conditions" including Condition #4 (Manner exception exhausted), which provides:

27        (4)  The actor is unable to fulfill a request for access, exchange, or use of
     electronic health information because paragraphs (a)(4)(i), (ii), and (iii) of

28    

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS CARE, INC.'S MOTION FOR PARTIAL SUMMARY
JUDGMENT

63465105.v3

this section are all true; and the actor complied with paragraph (a)(4)(iv) of this section.

    (i)    The actor could not reach agreement with a requestor in accordance with § 171.301(a) or was technically unable to fulfill a request for electronic health information in the manner requested.

    (ii)    The actor offered at least two alternative manners in accordance with § 171.301(b), one of which must use either technology certified to standard(s) adopted in part 170 (§ 171.301(b)(1)(i)) or published content and transport standards consistent with § 171.301(b)(1)(ii).

    (iii)    The actor does not provide the same access, exchange, or use of the requested electronic health information to a substantial number of individuals or entities that are similarly situated to the requester.

    (iv)    In determining whether a requestor is similarly situated under paragraph (a)(4)(iii), an actor shall not discriminate based on:

        (A) Whether the requestor is an individual as defined in § 171.202(a)(2)
        (B) The health care provider type and size; and
        (C) Whether the requestor is a competitor of the actor or whether providing such access, exchange, or use, would facilitate competition with the actor.

Here, RTZ meets all of these conditions.  With respect to Condition (4)(i), as with the Manner exception, RTZ and Intus were unable to reach agreement about the terms of Intus's access rights to PACECare.  (Motion, at 4:10-15; Felton Decl., at ¶14; (Zawadski Decl., at ¶¶ 4-6.)  As such, this condition is met.  Similarly, RTZ provided Intus with two alternative manners to access PACECare data: (1) the execution of RTZ's standard NDA to access PACECare and its data; and (2) obtaining a data export file directly from Intus's own clients via the Custom Export Report– an option that Intus concedes was available in its Amended Complaint (Intus's Amended Complaint, at ¶20 (Doc. 25).)  (Zawadski Decl., at ¶ 14.)  Intus's Motion concedes that at least one of these alternatives (access to the PACECare system via the NDA) includes use of "technology certified to standard(s) adopted in part 170 (§ 171.301(b)(1)(i))" given its repeated assertion that RTZ was an "ONC-ATBC certified Electronic Health Record."  (Motion, at 3:11-17.)  As such, Condition 4(ii) is met.

Conditions 4(iii) and (iv) – addressing whether RTZ's conduct toward Intus is consistent with its conduct toward other third-parties and is non-discriminatory – are also met.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

1  ████████████  (See Weir Decl., at ¶8, Ex.7 at §7.1.)  Therefore, RTZ's requirement that

2  Intus execute its NDA to access PACECare is no different from how RTZ treats any other third-

3  party seeking access to the software.  (Zawadski Decl., at ¶ 4.)  Therefore, RTZ has not

4  discriminated against Intus in requiring such an NDA.

5       Notwithstanding this uniform practice by RTZ, Intus complains that, "RTZ increased its

6  effort to illegally block Intus from healthcare data [by]…inserting provisions in its contracts with

7  Intus Clients that prohibited Intus Clients from providing Intus with access to the Intus Clients'

8  *own data* stored on the PACECare system" (Motion, at 10:12-22, italics by Plaintiff).  Intus

9  appears to fixate on the following bolded language in RTZ's PACECare Agreement to support

10  its point:

11
12
13  
14
15
16

17  (Weir Decl., at ¶8, Ex.7 at §7.1, bolded by Plaintiff.)

18       Contrary to Intus's suggestion, the above language is not exclusionary in any manner

19  despite directly referencing Intus.  █████████████████████████

20  ███████████████████████  (See Weir Decl., at ¶8, Ex.7

21  at §7.1.)  Therefore, the reference to "Intus" in the Agreement is incidental and

22  nonconsequential.  Ironically, while Intus fusses about being referenced in the Agreement, RTZ

23  has granted other similarly referenced entities access to PACECare after they executed the same

24  standard NDA that Intus rejected.  (Zawadski Decl., at ¶ 4.)  Simply put, Intus has not been

25  discriminated against.

26       Finally, the Infeasibility exception requires RTZ to demonstrate that it timely provided to

27  Intus in writing the reason(s) why the request is infeasible.  45 C.F.R. § 171.204 (a)(4)(iv).  In

28  the context of this case, RTZ clearly has met this requirement.  Intus claims that it had access to

1   PACECare from June 2021 to September 2022.  (Felton Decl., at ¶13.)  Therefore, by its own

2   admission, there was no blocking of information during that period of time even though RTZ

3   was unaware that Intus was accessing PACECare using an unauthorized automated script.

4   (Zawadski Decl., at ¶ 11.)  As of September 1, 2022, RTZ provided a copy of its NDA to Intus to

5   execute – a requirement to access PACECare that Intus was well aware of.  (See Weir Decl., at

6   ¶5, Exh. 4 at §7.1.)  Therefore, Intus was timely made aware that it could not access PACECare

7   without an NDA, and was provided the NDA on September 1, 2022.  (See Weir Decl., at ¶5,

8   Exh. 4.)  The parties attempted to negotiate an NDA and ultimately failed to reach agreement.

9   (Zawadski Decl., at ¶ 4-6.)  Accordingly, the Infeasibility exception to the information blocking

10  rules applies.  As with the Manner exception, at the very least, there is a genuine dispute whether

11  this exception applies.

12          Notably, Intus's Motion gives short shrift to its Cures Acts exceptions argument.  Other

13  than noting the existence of the exceptions and self-servingly concluding that, "[n]one of the

14  exceptions apply…" (Motion, at 11:4-24.), Intus offers no analysis or evidence to support its

15  position.  As addressed above, the application (or non-application) of the exceptions is *outcome*

16  *determinative* on the question of whether RTZ has violated the Cures Act (and thus, Business &

17  Professions Code section 17200).  In other words, if an exception applies, RTZ cannot be

18  deemed to have engaged in information blocking.  While Intus gratuitously asserts that no

19  exceptions apply, RTZ disputes that fact.

20          In light of the above, and in the context of these exceptions (as well as whether any actual

21  "blocking" has occurred), Intus has failed in its "initial burden of establishing the absence of a

22  genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v.*

23  *Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  Intus therefore cannot – via this Motion

24  – obtain partial summary judgment on its UCL claim.  As this Court has specifically observed:

25              It is not necessary to parse each of Plaintiff's remaining arguments,
            because the foregoing discussion suffices to show that there are
26          numerous disputes of fact that prevent the Court from granting her
            summary judgment motion.  Plaintiff, as the moving party who
27          bears the burden of proof at trial, "must affirmatively demonstrate
            that no reasonable trier of fact could find other than for [her],"
28          such that every element of her claims must be resolved in her favor

19

as a matter of law based on **<u>undisputed evidence</u>**.  *Evanston Ins. Co. v. Atain Specialty Ins. Co.*, 254 F. Supp. 3d 1150, 1155 (N.D. Cal. 2017) (citing *Celotex*, 477 U.S. at 325); *see also, e.g., Marlo v. United Parcel Serv.*, 2009 WL 10669255, at *2-3 (C.D. Cal. Mar. 19, 2009).  **<u>At this stage, Defendants need not prove they would win every dispute on issues of material fact.  All they need prove is that such a dispute exists.</u>**

(*Terraza v. Safeway Inc.*, 2019 WL 12872959, at *3 (N.D. Cal., Mar. 27, 2019), emphasis supplied.)

Here, Intus's Motion makes clear that its UCL claim is <u>dependent</u> on a finding that RTZ engaged in illegal information blocking in violation of the Cures Act: "RTZ's violation of the [Cures Act] is an actionable violation of the UCL."  (Motion, at 6:23-24.)  Intus further identifies RTZ's alleged "information blocking" as the "unlawful prong" underpinning its UCL claim.  (*Id.*)  Accordingly, given RTZ's evidence supporting the fact that Intus was never actually "blocked" from data, or that one or more Cures Act exceptions apply, Intus cannot prove a "violation" of the Cures Act as a matter of law.  And in the absence of establishing that Cures Act violation, Intus cannot prove a violation of the UCL.  As Intus acknowledges, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  (Motion, at 6:24-27, citing, *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).)  Therefore, in the context of this case, if there is no violation of the Cures Act, there is no violation of the UCL.  And here, Intus's allegations of a Cures Act violation is, at best, disputed.  Its Motion therefore must be denied.

## <u>OBJECTIONS TO EVIDENCE (CIVIL L.R. 7-3(C))</u>

**1.  Weir Decl., Exs. 1, 2, and 3**.  Lacks authentication (FRE 901).  Such records should have been the subject of a request for judicial notice (FRE 201).

**2.  Weir Decl., Ex. 9.**  Lacks authentication (FRE 901): The declarant lacks the ability to properly authenticate Exhibit 9 which consists of communications the declarant is not a party to.  Inadmissible hearsay (FRE 801):  Exhibit 9 constitutes inadmissible hearsay as it is offered to prove the truth of the matters asserted and is not properly authenticated by the declarant.

///

**3. Weir Decl., Paragraph 11**.  Impermissible opinion testimony by lay witness (FRE 701): The declarant is expressing impermissible opinions that are not rationally based on the declarant's perception given his role as legal counsel as opposed to a party.  (*Teen-Ed, Inc. v. Kimball Int'l Inc.*, 620 F2.d 399, 403 (3rd Cir. 1980) ("Indeed, "[t]he modern trend favors the admission of [lay] opinion testimony, *provided that it is well founded on personal knowledge* and susceptible to specific cross-examination.") (emphasis supplied.)  The declarant has not demonstrated any personal knowledge of the facts set forth in Paragraph 11.

## V.   CONCLUSION

For the foregoing reasons, RTZ respectfully requests that the Court deny Intus's Motion for partial summary judgment.


Dated:  May 2, 2025                    NOSSAMAN LLP
                                       DAVID C. LEE
                                       KASIA PENN


                                  By:  /s/ *David C. Lee*
                                       David C. Lee

                                  Attorneys for Defendant RTZ ASSOCIATES, INC.

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS CARE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
63465105.v3