MANATT, PHELPS & PHILLIPS, LLP
Charles E. Weir (Bar No. 211091)
CWeir@manatt.com
Andrew Beshai (Bar No. 308030)
ABeshai@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

*Attorneys for Plaintiff*
INTUSCARE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUSCARE INC., <br><br>   Plaintiff, <br><br>   v. <br><br> RTZ ASSOCIATES, INC.; and DOES 1 through 10, <br><br>   Defendants. | **FILED UNDER SEAL** <br><br> Case No. 4:24-cv-1132-JST <br><br> Assigned to: Hon. Jon S. Tigar <br><br> **PLAINTIFF INTUSCARE INC.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date: June 26, 2025 <br> Time: 2:00 p.m. <br> Courtroom: 6 <br><br> Complaint Filed: February 23, 2024 <br> Amended Complaint Filed: April 2, 2024 <br> Counterclaims Filed: June 20, 2024 |

I. **INTRODUCTION**

RTZ Associates Inc.'s ("RTZ") Opposition is rife with irrelevant innuendo and accusations. As RTZ tells it, it is actually IntusCare Inc.'s ("Intus") fault that RTZ is blocking Intus from accessing electronic health information ("EHI") stored on RTZ's PACECare platform.

The facts here are clear and undisputed: RTZ is an "Actor" under the Cures Act; as an Actor it has to provide Intus access to health information on its PACECare platform, and RTZ failed to provide access. This violates the Cures Act. Intus' motion should be granted.

On the merits of Intus' information blocking claim, RTZ has no meaningful response. There are only two elements of an information blocking claim. First, a party much be a health IT developer subject to the Cures Act. This is referred to as an "Actor" in the regulations and guidance. Second, the "Actor" must be engaged in a practice that "is likely to interfere with access, exchange or use of EHI." RTZ does not dispute that it is an Actor. It is also undisputed that RTZ has blocked Intus from accessing PACECare, preventing Intus from gathering EHI to provide critical analytics work to PACE Programs. RTZ makes a few nonsensical arguments to avoid the obvious conclusion that precluding Intus access to PACECare is a practice that "is likely to interfere with access, exchange or use of EHI." As discussed herein, all those arguments fail.

RTZ's arguments are off base

and entirely miss the point of why the information blocking statute exists. There is no NDA or consent requirement in the Cures Act, nor is there an NDA exception. Indeed, the point of the information blocking rules is to prevent companies in RTZ's position from imposing limitations on access to health information. So, RTZ's argument that it is permitted to block access because Intus did not consent or Intus did not meet RTZ's conditions turns the Cures Act on its head. It is precisely because companies in RTZ's position were imposing requirements on information access for business or competitive reasons that the Cures Act exists. It is because RTZ is blocking access due to its self-imposed consent and NDA requirements that this motion should be granted and RTZ's barriers removed. To reach any other conclusion would undermine the entire purpose of the information blocking rules.

Unable to seriously dispute the legal merits of Intus' information blocking claim, RTZ attempts to invoke two exceptions under the Cures Act. As a preliminary matter, RTZ does not dispute that the burden to establish the exceptions rests with RTZ. RTZ does not come close to meeting its burden as to either exception. As to the Manner Exception, RTZ is wrong on the law. The Manner Exception does not apply anytime the parties cannot reach agreement on terms of access unilaterally dictated by the data provider. Far from it, the Manner Exception applies in a much narrower context than RTZ would have this Court believe. An Actor, like RTZ, is entitled to rely on the Manner Exception only where the requesting party, like Intus, seeks access to electronic health information in a novel, innovative, or non-standard manner that would cause the Actor considerable burden and expense. Thus, the exception relates to issues about actually transferring the data. And it is not a concern implicated here because Intus has not requested access in a non-standard manner. Indeed, it is undisputed that Intus was previously accessing PACECare to pull EHI. There is nothing in RTZ's Opposition that says that the way Intus was historically accessing data via an automated script caused any additional expense or burden for RTZ. Indeed, RTZ claims in its Opposition that it did not even know it was happening. RTZ cannot backdoor its impermissible consent and NDA requirements onto Intus via the manner exception. Moreover, RTZ does not even include its "standard" NDA in the record, let alone meet its burden to establish how its consent and NDA requirements have anything to do with the manner of access. The Infeasibility

Exception is also inapplicable. Again, Intus was previously accessing data stored on PACECare. There is plainly not a feasibility issue with how Intus was doing it.

RTZ has not demonstrated that there are triable issues of fact as to either the merits of Intus' information blocking claim or any exceptions. Summary judgement is, therefore, proper on the Unfair Competition Law claim premised on RTZ's violation of the information blocking statute.

## I.    RTZ ENGAGED IN INFORMATION BLOCKING

### A.    RTZ's Attempts To Manufacture Factual Disputes Fail

There are only eight material facts supporting Intus' Motion. RTZ only claims to dispute two of those eight facts. (Opp. p. 7). Not just any factual dispute will defeat summary judgment; rather, the factual dispute must pertain to *a material fact*. *See* Fed. R. Civ. P. 56(a). "A 'material' fact is one that could affect the outcome of the case under the governing substantive law." *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1109 (C.D. Cal. 2010). The purported disputes are immaterial and/or based on a misreading of the fact at issue. There are no disputed issues of material fact.

RTZ takes issue with undisputed fact number 5. Fact 5 states "[f]rom approximately June 2021 to September 2022, Intus obtained electronic health records data using automated scripts to extract the necessary data, with RTZ's knowledge." (Mot. 4:8-10.) RTZ does not dispute that it knew Intus was extracting data Intus needed for its work from PACECare. Rather, RTZ disputes only that it knew that Intus was using automated scripts. (Opp. 5:13-14; 7:24-26.) But, whether or not RTZ knew of the automated scripts is immaterial to this Motion. The key fact is that Intus was extracting data from PACECare and RTZ knew that was occurring, before RTZ pulled the plug and blocked Intus from access. Indeed, as discussed below, the fact that the use of an automated script was something that RTZ did not know about actually further supports summary judgment as it precludes RTZ from relying on the statutory exceptions. Thus, for purposes of this Motion, there is no dispute about whether RTZ knew that Intus was pulling data from PACECare using an automated script.

RTZ also takes issue with undisputed fact number 8. Fact 8 states that "since March 15,

2024, due to RTZ's information blocking practices, Intus has been completely locked out of access to PACECare and has had contracts terminated by five specific clients to whose information Intus previously had authorized access." (Mot. 5:17-20.) RTZ claims that Intus did have some access to PACECare based on interrogatory responses. (Opp. 7:17-19.) RTZ appears to be misreading the fact being put forth and/or raising an immaterial issue. PACECare is client specific. The health care data for patients in one PACE Program stored in PACECare is not accessible by all PACE Programs that use PACECare. Fact 8 refers specifically to five Intus clients where Intus has been completely blocked from access and, as a result, Intus could not do its work and the Intus clients were forced to terminate the contracts. The fact that there are a few other Intus clients where Intus had some access to those clients' EHI on those clients' PACECare platform is irrelevant. RTZ is guilty of information blocking if it blocked Intus' access to even one client's data. There is no dispute that RTZ has completely blocked Intus' access to at least some Intus clients since March 15, 2024. In addition, as discussed herein, RTZ violates the information blocking rules by engaging in a practice that "is likely to interfere with access, exchange or use of EHI." Thus, while it is true that RTZ did completely block Intus from accessing PACECare for certain clients, that is not the standard.

Therefore, RTZ has not raised a genuine issue of material fact with respect to Fact 5 or 8.

**B.     The Undisputed Facts Establish RTZ Violated the Information Blocking Provisions of the Cures Act**

RTZ does not dispute—or even address—that it is a "health information network or health information exchange," under 45 C.F.R. § 171.102, and thus an "Actor" subject to the federal information blocking regulations. "[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011); *Kroeger v. Vertex Aerospace LLC*, No. CV 20-3030-JFW(AGRX), 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (holding that a party conceded argument by failing to address it in the opposition brief and collecting cases holding the same). RTZ has, therefore, conceded that it is an "Actor" governed by the provisions of the Cures Act.

RTZ also does not dispute that it is not permitting Intus to access PACECare for Intus'

1  clients. (Opp. 3:19-20 ["Intus has never obtained an NDA from RTZ. It is therefore not permitted
2  to access PACECare without RTZ's consent."].) Nor has RTZ disputed that it engages in practices
3  such as including provisions in contracts that preclude Intus' clients from granting access to Intus
4  (UMF 6) and that it has taken steps to enforce those provisions (UMF 7). Thus, is cannot be disputed
5  that RTZ is engaging in at least a practice that "is likely to interfere with access, exchange or use
6  of EHI." (cite statute). RTZ has violated the Cures Act.

7        RTZ attempts to justify its illegal behavior with a handful of misguided arguments. First,
8  RTZ claims that the Cures Act does not require access to "software," only data. (Opp. 9:12-13.)
9  The argument makes little sense. There is no claim that Intus' automated script pulls aspects of
10 PACECare's software. It pulls data stored on PACECare.

11       Second, RTZ argues that it was entitled to block Intus from accessing its clients' EHI
12 because the parties could not agree on an NDA. (*See, e.g.,* Opp. 11:13-14 ["RTZ has merely insisted
13 on the execution of an NDA to access PACECare."].) ███████████████
14 ████████████████████████████████████████
15 ████████████████████████████████ But this
16 argument finds no support in the Cures Act or in any other law—indeed, RTZ has not cited any
17 authority for this position. Indeed, the fact that RTZ is putting up such roadblocks and requiring
18 that it "consent" or demand an unidentified "NDA" is why RTZ is violating the Cures Act. It does
19 not excuse RTZ's conduct. There is no "NDA Exception" in the information blocking provision of
20 the Cures Act. Nor is there anything in the plain language of the statute allowing an Actor to impose
21 unilateral conditions to access. The Cures Act is clear: "Information blocking means a practice that
22 . . . is likely to interfere with access, exchange, or use of electronic health information." 45 C.F.R.
23 § 171.103(a). To contend, as RTZ does, that Intus "was merely an NDA away from obtaining the
24 access it sought," defeats the purpose of the Cures Act. (Opp. 11:23.) By arguing that it can
25 withhold access until another party agrees to conditions and the Actor's consent, RTZ is reading a
26 provision into the Cures Act that does not exist. The Court should decline this invitation and reject
27 the argument that RTZ was authorized to block Intus' access to EHI because of the lack of an
28

NDA.[1] "Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." *Badaracco v. Comm'r*, 464 U.S. 386, 398 (1984).

Third, RTZ argues that it is really not interfering with Intus's access to data because Intus could have simply asked its clients to provide their data from PACECare through a feature known as the Custom Export Report. (Opp. 12:14-16.) According to RTZ, "the Cures Act does not require . . . access to [] PACECare software. It merely ensures that there is access to data." (Opp. 9:12-13) (emphasis in original). Not so. The Cures Act defines interference as a practice that "prevent[s], *materially discourage[s]*, or *otherwise inhibit[s]*" access. 45 C.F.R. § 171.102 (emphasis added). Further, the United States Department of Health and Human Services, Office of the National Coordinator for Health Information Technology ("ONC") implemented information blocking regulations to avert the use of "practices that *increase the cost, complexity, or other burden* associated with accessing, exchanging, or using electronic health information." 21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program, 85 Fed. Reg. 25642, 25809 (June 30, 2020) (codified at 45 C.F.R. §§ 170, 171) (emphasis added). The statute was enacted to remove the type of burden that RTZ is creating by cutting Intus off from PACECare. Moreover, RTZ cannot circumvent its statutory obligations to not interfere with Intus accessing data by claiming that Intus can ask someone else for a different set of data. This position is also inconsistent with what RTZ put in its contracts.

RTZ also argues that Intus has not offered any evidence to substantiate its argument that the process of going individually through each of its clients to access their EHR, as opposed to accessing PACECare, imposes a burden. (Opp. 12:26 ["Intus's Motion is devoid of any evidence substantiating this so-called 'burden'".].) Under the statute, it is not Intus' burden to establish that

---

[1] Equally unavailing is the argument that Intus failed to "establish[] why RTZ's offered NDA was unacceptable or unreasonable" or explain "how RTZ's NDA is offensive." (Opp. 10:7-9.) RTZ is essentially litigating the merits of the NDA here, which is irrelevant. RTZ was never entitled to hold Intus clients' data hostage pending an NDA, so it does not matter what the reasons were that the parties never agreed to an NDA.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

RTZ's proposed alternative would be burdensome. RTZ has to provide the access in the manner requested, unless RTZ can show that the request is a non-standard or novel such that complying with the manner requested would sap RTZ's resources. As discussed below, RTZ cannot establish the exception. Moreover, RTZ is not even correct. Intus attached the declaration of its CEO Robbie Felton who stated that "due to RTZ's information blocking practices, Intus has been completely locked out of access to PACECare and has had contracts terminated by five specific clients to whose information Intus previously had authorized access." (Declaration of Robbie Felton in Support of Motion for Partial Summary Judgment, "Felton Decl.," ¶ 16.) This is competent evidence from the founder and highest ranking executive at Intus. Not only has RTZ failed to attack this evidence as reliable (it cannot), but it has also failed to include a shred of evidence contradicting this fact.[2]

Fourth, RTZ also contends that it did not violate the Cures Act because it did not block *all of* Intus' access to PACECare. According to RTZ, the loss of "'all access' is what drove the [*Real Time Medical Systems* court's] determination that information blocking had occurred." (Opp. 11:20-21.) RTZ is wrong. First, as noted above, RTZ has blocked "all access" to certain Intus Clients' PACECare platform. Moreover, it cannot be the case that RTZ is not guilty of information blocking because Intus might be able to access some clients' PACECare, but not others. RTZ would have this Court believe that only when an Actor blocks *all access* to EHI can it be held liable for information blocking. That is not the law. There is nothing in the Cures Act that defines information blocking as a barrier to *all access*. Indeed, the language of the regulations states the opposite. As above, they speak to any practice that "is likely to interfere with access, exchange or use of EHI." Nothing in the regulation speaks to a loss of all access. If this Court were to adopt RTZ's

---

[2] RTZ makes a half-hearted attempt to argue that one of the clients that cut ties with Intus did so because of some alleged misrepresentation Intus made. This argument fails for two reasons. First, the notion that this client left because Intus allegedly lied to the client about its affiliation with TRHC is pure speculation. There is not an iota of competent testimony that this client left Intus because of some alleged misrepresentation. "[C]onclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 568 (N.D. Cal. 2020) (citing *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).) Second, even assuming this client left for reasons other than the information blocking (it did not), that does not undermine Intus' Motion for Partial Summary Judgment on the UCL claim because there are at least four other clients who did leave once RTZ denied Intus access to their data.

unsupported position, it would be giving all Actors an end-run around the protections of the Cures Act. Any Actor could give minimal access and claim that because it had not blocked *all access*, it was not in violation of the Cures Act.

Fifth, RTZ presents the court with what it terms "a perilous slippery slope," arguing that any "party such as Intus can merely reject an NDA to trigger [an] 'information blocking' claim." (Opp. 10:14-15.) But this argument flips the Cures Act on its head. The presumption under the Cures Act is that Actors allow access to EHI without imposing unnecessary hurdles. By imposing an NDA and consent obstacle—and trying to pass it off as a legitimate basis to violate the statute—RTZ is perverting the aims of the Cures Act. To borrow a phrase from RTZ, "This proposition creates a dangerous precedent."

## C. RTZ's Reliance On The Cures Act Exceptions Is Unavailing

RTZ's reliance on the Cures Act exceptions fares no better than its argument on the merits of the information blocking claim. "[E]ach exception is intended to be tailored, through appropriate conditions, so that it is limited to the reasonable and necessary activities that it is designed to exempt." 21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program, 85 Fed. Reg. 25642, 25794 (June 30, 2020) (codified at 45 C.F.R. §§ 170, 171); *see also*, *id.*, at 25820 ("We emphasized that the exceptions would be subject to strict conditions to ensure that they do not extend protection to practices that raise information blocking concerns."). RTZ does not dispute that it is RTZ's burden to establish that any of the exceptions apply. *See Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 231 (4th Cir. 2025) (holding that it is the defendant's burden to establish that an exception applies).

The first exception RTZ invokes is the Manner Exception, which provides that "An actor must fulfill a request for electronic health information in any manner requested, unless the actor is technically unable to fulfill the request or cannot reach agreeable terms with the requestor to fulfill the request in the manner requested." 45 C.F.R. § 171.301(a)(1). RTZ does not contend that it was "technically unable to fulfill" Intus' request for access in the manner Intus requested; instead, it argues that it "did not reach agreement about the terms of Intus' access rights to obtain data." (Opp.

15:22-23.) But the Manner Exception does not categorically apply any time the parties fail to reach agreement about the terms of access unilaterally dictated by the Actor. If that were the case, any Actor could impose whatever draconian terms it deemed fit and then invoke the Manner Exception to block access when the requesting party refused to kowtow to the terms.

Contrary to RTZ's untenable interpretation, the Manner Exception applies in a far narrower set of circumstances: Where the requesting party requests access in a novel or innovative manner, and the parties cannot reach an agreement "to fulfill the request *in the manner requested*." 45 C.F.R. § 171.301(a)(1). Indeed, in the final rule to amend the information blocking regulations, the Office of the National Coordinator for Health Information Technology (ONC) explained that the Manner Exception was added to address a concern from Actors that they would be "engaging in information blocking if they decline demands from requestors for *non-standard, non-scalable, solutions that they do not currently support*." Health Data, Technology, and Interoperability: Certification Program Updates, Algorithm Transparency, and Information Sharing, 88 Fed. Reg. 23746, 23868 (April 18, 2023) (emphasis added). Put differently, the Manner Exception was addressed to situations where the manner requested would put a significant burden on the Actor. Specifically, the exception was "necessary to ensure actors reasonably allocate resources toward interoperable, standards-based manners *rather than allowing requestors who, for whatever reason, do not build their products for compatibility with open consensus standards or other industry standards to attempt to force use of non-standard, non-scalable solutions* by simply refusing to accept access, exchange, or use of EHI in any other manner." *Id*. (emphasis added). In short, the manner exception relates to technical issues for access and relieves an Actor from having to bear expenses or a heavy burden related to access.

Understood in its proper context, the Manner Exception is not implicated here. Intus has not requested access in a novel, non-standard, or non-scalable manner. Indeed, far from imposing any burden on RTZ, RTZ admits that it was not even aware that Intus was running automated scripts to secure needed data. (Opp. 19:1-3.) Moreover, RTZ does not even attach the "standard NDA," let alone explain how it has anything to do with the manner in which Intus is accessing its clients' data on PACECare. Therefore, RTZ cannot avail itself of this exception as a matter of law, and there is

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

no triable issue of fact as to the Manner Exception.[3]

The second exception RTZ relies on, the Infeasibility Exception, is also inapplicable here. The Infeasibility Exception provides that "[a]n actor's practice of not fulfilling a request to access, exchange, or use electronic health information due to the infeasibility of the request will not be considered information blocking when the practice meets one of the conditions in paragraph (a) of this section and meets the requirements in paragraph (b) of this section." 45 C.F.R. § 171.204. First, it is not disputed that Intus previously had access to data stored on PACECare. (UMF 5). Thus, it is plainly not "infeasible" for Intus to be given access. Second, the only "condition" that RTZ invokes is that the "Manner Exception [was] exhausted," referring back to Section 171.301. *Id*. § 171.204(a)(4). As explained, the Manner Exception is not applicable here, so the Infeasibility Exception that RTZ has invoked—which necessarily rises and falls with the Manner Exception—is also unavailable. (Opp. 17:12-14 [conceding that the Infeasibility Exception is contingent on the Manner Exception: "With respect to Condition (4)(i), *as with the Manner exception*, RTZ and Intus were unable to reach agreement about the terms of Intus's access rights to PACECare."]) (emphasis added).

RTZ has not demonstrated a triable issue of fact as to any Cures Act exceptions.

///
///
///
///
///

---

[3] Because RTZ is not entitled to rely on the Manner Exception, it does not matter that RTZ purportedly arranged for "alternative means of fulfilling Intus's request for direct access" through PACECare's "Custom Export Report function." (Opp. 16:1-2.) The "alternative means" provision is only triggered once the Actor proves eligibility under the Manner Exception, which RTZ has not shown here. *See Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 232 (4th Cir. 2025) ("If an actor does not fulfill a request for electronic health information in any manner requested because it" successfully invokes § 171.301(a)(1), "the actor must fulfill the request in an alternative manner," as defined in § 171.301(b)(1). *Id*. § 171.301(b).") (internal quotation marks omitted). Moreover, as described above, RTZ cannot shift its obligations to provide access to Intus on to another party. Thus, they have not provided an alternative means for Intus to access the data on PACECAre.

## II. CONCLUSION

For the foregoing reasons, this Court should grant Intus' motion for partial summary judgment.

Dated: May 9, 2025               MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Charles E. Weir
Charles E. Weir
Andrew Beshai
Attorneys for Plaintiff
INTUSCARE INC.