UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUSCARE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>RTZ ASSOCIATES, INC.,<br><br>    Defendant. | Case No. 24-cv-01132-JST<br><br>**REDACTED ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: ECF No. 56 |

Before the Court is a motion for partial summary judgment filed by Plaintiff IntusCare, Inc. ("Intus"). ECF No. 56. The Court will deny the motion.

## I.   BACKGROUND

Both Intus and Defendant RTZ Associates, Inc. work with Program of All-Inclusive Care for the Elderly ("PACE") facilities. Unless otherwise noted, the facts below are undisputed.

PACE facilities provide care to elderly patients who live in the community, rather than in institutional settings. RTZ developed the PACECare software system and licenses it to PACE facilities to help manage data, including patients' electronic health information ("EHI"). PACECare includes certified lab interfaces, such as Quest and Sunquest, and certified e-prescribe interfaces, such as CareKinesis and Surescripts. Some PACE facilities also contract with Intus, which designed a product to analyze data from patients' electronic health records to help identify risks and improve care.

From approximately June 2021 to September 2022, Intus used automated scripts to extract data from PACECare. Intus contends that this was done with RTZ's knowledge, but RTZ's CEO, Michael Zawadski, states that RTZ "never consented to or knew about Intus's use of automated scripts," and it "never authorized Intus – or any third-party – to develop, deploy or use bots or

automated scripts to scrape its system for data."[1]  ECF No. 62-2 ¶ 11.  RTZ also contends that Intus used PACECare login credentials that RTZ granted to RTZ's clients, and that RTZ's standard PACECare agreement prohibits sharing such credentials.  *See* ECF No. 55-5 at 49 (§ 7.1) ("CLIENT agrees that it will not . . . provide (and will expressly inform staff not to provide): (a) account credentials or other forms of access to PACECare, (b) screenshots or other forms of visual, written, or oral descriptions of PACECare, or (c) forms/documents/reports produced by PACECare to any internal software development team or third-party – specifically but not limited to other software vendors competing with or seeking to compete with RTZ, including . . . IntusCare, . . . as well as [its] affiliates and agents.").

In July 2022, RTZ informed Intus that Intus needed to sign a nondisclosure agreement ("NDA") before RTZ would allow Intus to access PACECare.  In September 2022, RTZ sent Intus what it contends is its standard NDA, which, to date, Intus has not signed.  On September 14, 2022, RTZ sent Intus a cease-and-desist letter demanding that Intus stop accessing PACECare data unless RTZ provided written consent, which, to date, it has not.

The parties have different characterizations of how negotiations proceeded over Intus's request to access PACECare.  Intus's CEO, Robbie Felton, states, "The parties have been litigating this case for nearly two years, and Intus has continually tried to compromise with RTZ to resolve RTZ's unsupported concerns about its intellectual property being compromised by Intus accessing Intus Clients' information [from] PACECare."  ECF No. 56-1 ¶ 9.  He states that, ultimately, "RTZ refused" Intus's attempts to reach agreement.  *Id.* ¶ 14.  By contrast, RTZ's CEO states:

> Rather than executing RTZ's standard NDA, Intus proposed an entirely different NDA with terms and conditions that were problematic for RTZ.  Plaintiff's proposed NDA contained terms that RTZ simply found to be unacceptable, including terms that: (i) allowed Plaintiff continuing access to PACECare even if the NDA was terminated; and (ii) required RTZ to make coding changes

---

[1] Zawadski was RTZ's CEO "from approximately 2013 until October of 2024, when Assured Healthcare Partners LLC combined the assets of RTZ and Tabula Rasa Healthcare, Inc. ('TRHC')."  ECF No. 62-2 ¶ 2.  He has since served as "the CEO of the combined entity, now known as Collabrios Health, Inc."  *Id.*

2

|   |   |
|---|---|
| 1 | to its PACECare software.  RTZ and Intus continued to try and negotiate an acceptable NDA without success. |
| 2 | |
| 3 | Ultimately, Intus refused to meaningfully negotiate the NDA, and instead pivoted and sought to negotiate an acquisition of RTZ.  When those negotiations failed, Intus abandoned any and all NDA discussions with RTZ. Intus was therefore never permitted to access PACECare.  Many months later, Intus filed this lawsuit. |
| 4 | |

ECF No. 62-2 ¶¶ 5–6 (paragraph numbers omitted).



ECF No. 55-3 at 7–8 (Intus's Undisputed Material Facts #6 and #7) (emphasis in original); ECF No. 62 at 7 (conceding that these facts are undisputed).

The parties disagree over whether RTZ has completely blocked Intus's access to PACECare data since March 15, 2024.  Intus's CEO states that since that date, "due to RTZ's information blocking practices, Intus has been completely locked out of access to PACECare and has had contracts terminated by five specific clients to whose information Intus previously had authorized access."  ECF No. 56-1 ¶ 16.  RTZ presents evidence, in the form of Intus's responses to interrogatories, that Intus accessed PACECare for six clients between March 15 and December 11, 2024.  ECF No. 62-1 at 15–17, 24–79.  The record is silent as to whether the six clients referenced in Intus's interrogatory responses include any of the five clients referenced in Felton's declaration.

RTZ does not dispute that the data in PACECare belongs to the PACE facilities.  Although RTZ has not agreed that Intus may directly access PACECare data, RTZ's CEO states, "PACE clients can extract whatever data they entered into PACECare and provide it to a third-party, including Intus, through a PACECare feature known as the Custom Expert Report. . . .  [T]his process is not an administrative burden and in fact is easily achieved," and "RTZ provides training guides for PACECare users on this feature, as well as technical support for questions that arise."

1   ECF No. 62-2 ¶ 14.  He also asserts, in some tension with Section 7.1 of the standard PACECare
2   agreement cited above, that "RTZ never has and never would stand in the way of an Intus Client
3   accessing its own data on PACECare (which it owns) or providing that data to Intus (or any other
4   third-party) as a data export."  *Id.* ¶ 15.

5   Intus's operative complaint asserts three claims for relief: intentional interference with
6   contractual relations; intentional interference with prospective economic advantage; and violation
7   of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*  ECF
8   No. 25 at 9–16.  The Court denied RTZ's motion to dismiss the second claim.  ECF No. 37.  RTZ
9   then filed an answer and asserted four counterclaims: violation of the California Computer Data
10  Access and Fraud Act, Cal. Penal Code § 502; violation of the Computer Fraud and Abuse Act, 18
11  U.S.C. § 1030; trespass to chattels; and violation of the UCL.  ECF No. 41.

12  Intus now moves for summary judgment only on its UCL claim.  ECF No. 56.

## II.     LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When deciding a motion for summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not weigh evidence or make credibility determinations.  *Id.* at 255.

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party satisfies

4

its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. *Id.* at 1102–03. It is not the court's duty "to scour the record in search of a genuine issue of triable fact"; instead, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the nonmoving party fails to make the required showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## III.     DISCUSSION

Intus bases its UCL claim on its contention that RTZ unlawfully engaged in "information blocking," in violation of the 21st Century Cures Act and its implementing regulations. As relevant to this case, the statute defines "information blocking" as a practice that, "except as required by law or specified by the Secretary [of Health and Human Services] pursuant to rulemaking . . . is likely to interfere with, prevent, or materially discourage access, exchange, or use of electronic health information," and that "a health information technology developer, exchange, or network . . . knows, or should know, that such practice is likely to interfere with, prevent, or materially discourage the access, exchange, or use of electronic health information." 42 U.S.C. § 300jj-52(a)(1)(A)–(B)(i). The regulations define "interfere" as "to prevent, materially discourage, or otherwise inhibit." 45 C.F.R. § 171.102.

RTZ opposes summary judgment on grounds that disputed facts exist over whether it engaged in information blocking and, even if it did, whether an exception applies. RTZ does not contest that it must comply with the Cures Act—i.e., that it is an "actor" as defined by 45 C.F.R. § 171.100. Nor does RTZ contest that Intus would prevail on its UCL claim if it proves that RTZ's conduct violated the Cures Act.

Intus bears the burden of showing that RTZ "engaged in facial information blocking," and "then the burden shifts to [RTZ] to show that its actions were *not* information blocking because a regulatory exception applies." *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 231 (4th Cir. 2025) (emphasis in original).

### A. Information blocking

RTZ's CEO acknowledges that "Intus was . . . never permitted to access PACECare." ECF No. 62-2 ¶ 6. Nonetheless, RTZ argues that it did not engage in information blocking because Intus "was merely an NDA away from obtaining the access it sought." ECF No. 62 at 14. RTZ cites no authority, however, for the proposition that the keeper of EHI does not engage in information blocking as long as its reason for doing so is because the party seeking the information has not signed an NDA. To the contrary, the legislative history makes clear that "one of the forms of information blocking the Cures Act and our final rule seek to address" is "formal restrictions, such as contract or license terms, EHI sharing policies, organizational policies or procedures, or other instruments or documents that set forth requirements related to EHI or health IT." 21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program, 85 Fed. Reg. 25642, 25868 (May 1, 2020). An NDA is one such formal restriction, and RTZ's conditioning access on signing an NDA is therefore a form of information blocking the Cures Act seeks to address.

RTZ also argues that Intus was always free to obtain the data it seeks from PACECare by requesting that its clients prepare and share reports. But, as with its first argument, RTZ cites no authority for the proposition that requiring requests for individual clients to produce and share reports instead of allowing direct electronic access does not fall within the broad definition of "information blocking." Rather, the legislative history points to a contrary conclusion: "[T]he broad definition of information blocking in the Cures Act means that *any practice* that is likely to interfere with the access, exchange, or use of EHI implicates the information blocking provision." 85 Fed. Reg. at 25875 (emphasis added) (citation omitted). "[I]nterference could take many forms. In addition to the prevention or material discouragement of access, exchange, or use, . . . interference could include practices that increase the cost, complexity, or other burdens associated with accessing, exchanging, or using EHI." *Id.* at 25809. Even if—notwithstanding Section 7.1 of the standard PACECare agreement—RTZ would allow clients to share exported reports with Intus, that practice unquestionably creates additional "burdens associated with accessing . . . EHI." It therefore falls within the umbrella of "information blocking" addressed by the Cures Act.

6

In the absence of any contrary authority,[2] and given the broad definition of "information blocking," the Court concludes that Intus has met its initial burden of demonstrating that RTZ "engaged in facial information blocking." *Id.*

**B.     Exceptions**

RTZ's conduct might still comply with the Cures Act if it satisfies one of the regulatory exceptions. RTZ invokes both the manner exception and the infeasibility exception.

**1.     Manner exception**

Under the manner exception:

> An actor's practice of limiting the manner in which it fulfills a request to access, exchange, or use electronic health information will not be considered information blocking when . . . the actor is technically unable to fulfill the request or cannot reach agreeable terms with the requestor to fulfill the request in the manner requested.

45 C.F.R. § 171.301(a)(1). If this exception applies, "the actor must fulfill the request in an alternative manner" as described in 45 C.F.R. § 171.301(b).

RTZ argues that it satisfies this exception because it "cannot reach agreeable terms" with Intus. It does not argue that it is "technically unable" to fulfill Intus's request and, in fact, takes the position that it would be able to fulfill the request but for Intus's refusal to sign an NDA.

The Court disagrees with Intus that the manner exception applies only when the requesting party has "requested access in a novel, non-standard, or non-scalable manner." ECF No. 71 at 10. Intus cites to portions of the legislative history, *id.*, but the cited portions concern adding a "new manner exception exhausted condition" to the infeasibility exception, not the manner exception itself. *See* Health Data, Technology, and Interoperability: Certification Program Updates, Algorithm Transparency, and Information Sharing, 88 Fed. Reg. 23746, 23868 (Apr. 18, 2023). In addition, the legislative history elsewhere states that the manner exception was designed to

---

[2] The Court is aware of only one case, including both a district court order and an appellate court opinion, that has interpreted the "information blocking" provisions of the Cures Act. That case is unhelpful on this point because the defendant conceded that its behavior—"using indecipherable CAPTCHAs and locking users out"—"facially constitutes information blocking under the Cures Act, absent an applicable exception." *Real Time*, 131 F.4th at 231.

7

"allow actors to first attempt to negotiate agreements in any manner requested with whatever terms the actor chooses and at the 'market' rate—which supports innovation and competition." 85 Fed. Reg. at 25877.  Nothing in this language, or in the regulation itself, limits the manner exception in the way Intus suggests, and the only courts to have considered the manner exception have also not so limited it, although the precise argument appears not to have been raised. *Real Time*, 131 F.4th at 231–35; *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, No. 8:24-cv-00313-PX, 2024 WL 3569493, at *10 (D. Md. July 29, 2024), *aff'd*, 131 F.4th 205 (4th Cir. 2025).

On the question of whether an actor under the Cures Act "cannot reach agreeable terms" with an information requestor, it is not the court's "role to flyspeck negotiations between two sophisticated parties to determine whether they have exhausted every possible avenue of agreement and force them to return to the negotiating table again and again." *Real Time*, 131 F.4th at 235.  However, an "unexplained unwillingness to agree" is not sufficient to establish that this prong of the manner exception is satisfied; instead, there must be "at least some reasonable efforts and articulable reasons why the parties *cannot* come to an agreement." *Id.* at 233 (emphasis in original).

In this case, RTZ presented Intus with what it contends were its standard terms for access—namely, signing an NDA.  Although Intus's CEO declares that "RTZ refused" to continue negotiations over access terms, ECF No. 56-1 ¶ 14, RTZ's CEO states that after "Intus proposed an entirely different NDA with terms and conditions that were problematic for RTZ," the parties "continued to try to negotiate an acceptable NDA without success," and it was Intus that "[u]ltimately . . . refused to meaningfully negotiate the NDA," ECF No. 62-2 ¶¶ 5–6.  This testimony brings the circumstances of this case beyond those found lacking by the Fourth Circuit, where the defendant "presented its standard terms, [the plaintiff] countered, and [the defendant] simply went silent, at which point the negotiations ceased without further explanation." *Real Time*, 131 F.4th at 235 (citation modified).  Whether RTZ was unable to reach agreement with Intus—because of Intus's withdrawal from negotiations or otherwise—or whether RTZ was "more unwilling than unable to reach a mutually agreeable solution with Intus," is a disputed question of material fact that prevents Intus from prevailing at summary judgment.  *Id.* at 234 (quoting *Real*

8

*Time*, 2024 WL 3569493, at *10).

### 2. Infeasibility exception

The infeasibility exception contains several conditions for finding infeasibility, but RTZ relies only on the "Manner exception exhausted" condition, which requires that "[t]he actor could not reach agreement with a requestor in accordance with § 171.301(a) or was technically unable to fulfill a request for electronic health information in the manner requested," as well as several additional requirements. 45 C.F.R. § 171.204(a)(4). If the infeasibility exception applies, "the actor must, within ten business days of receipt of the request, provide the requestor in writing the reason(s) why the request is infeasible." 45 C.F.R. § 171.204(b). Because material disputes remain over whether RTZ "could not reach agreement with" Intus, the Court cannot grant summary judgment on the applicability of the infeasibility exception.

### CONCLUSION

For the above reasons, Intus's motion for partial summary judgment is denied.[3]

**IT IS SO ORDERED.**

Dated: September 11, 2025

JON S. TIGAR
United States District Judge

---

[3] RTZ's evidentiary objections to portions of the Weir declaration and attached exhibits are denied as moot. As Intus correctly argues, considering the challenged evidence is unnecessary to the resolution of Intus's motion, in part because some of the disputed evidence concerns issues that RTZ concedes.