

**ATTORNEYS AT LAW**

50 California Street
34th Floor
San Francisco, CA  94111
T 415.398.3600

David C. Lee
D 415.438.7235
dlee@nossaman.com

*Admitted only in California*

Refer To File # - 503730-0002

March 9, 2026

The Honorable Judge Alex G. Tse
United States Magistrate Judge
San Francisco Courthouse, Courtroom A – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

   Re: Intus Care, Inc. v. RTZ Associates, Inc. (Case No. 4:24-cv-01132-JST) Discovery
      Dispute

Dear Judge Alex G. Tse:

   Defendant and Counterclaimant RTZ Associates, Inc. ("RTZ") and Plaintiff and
Counterdefendant IntusCare Inc. ("Intus") submit this Joint Letter Brief ("Brief") in accordance
with the Section VII(B) of Judge Tse's Civil Standing Order to detail their discovery dispute
concerning Intus': (1) objections-only responses to RTZ's Requests for Production Nos. 66 – 84
seeking documents concerning Intus' software product CareHub ("Requests") (*See* **Exhibit A**,
Intus' Objections and Responses to RTZ's Requests for Production, Set Three); and (2) counsel's
instructions not to answer questions related to CareHub during the deposition of Alex Rothberg,
Chief Technical Officer for Intus (*See* **Exhibit B**, Rough Draft of Deposition Transcript of Alex
Rothberg[1]), following a prior deposition of Evan Jackson (another Intus officer) who also refused
to answer CareHub customer-related questions based on personal discomfort. (See **Exhibit C**,
Deposition of Even Jackson).

   RTZ contends that Intus' objections to the Requests and its counsel's instructions
directing Mr. Rothberg not to answer deposition questions are improper, especially those
pertaining to Intus' customers who contracted to use CareHub. The Court has already recognized
the relevance of customer information in this case. Specifically, on February 19, 2026, the Court
ordered RTZ to produce its client list based on Intus' contention that RTZ's customers were
relevant to Intus' damages theory. (Dkt. 93). RTZ contends that same reasoning applies with
equal force here.

   Before submitting this Joint Letter Brief, the parties conferred via Teams on November
18, 2025, in an effort to resolve their dispute without court involvement. Despite this discussion,
the parties were unable to resolve or narrow the issues. Accordingly, judicial intervention is
necessary.

---

[1] The deposition of Mr. Rothberg occurred on February 27, 2026, and thus only a rough transcript of that proceeding
is available at this time.

Honorable Jon S. Tigar
March 9, 2026
Page 2

**A. Counterclaimant RTZ's Position:**

RTZ developed and exclusively owns the PACECare software system which is a cloud-based administrative software solution that is licensed to dozens of PACE facilities throughout the United States. PACECare is a proprietary and confidential system. As is common to every proprietary software, access to PACECare is restricted only to specific authorized users approved by RTZ who are issued unique login credentials.

In its counterclaim, RTZ specifically alleges that Intus gained unauthorized access to PACECare and exploited that access to accelerate the development of its competing product, CareHub. Intus therefore mined RTZ's PACECare system for research and development purposes and thereafter lured customers away from RTZ to its new CareHub product. Intus admits that its development of CareHub placed Intus and RTZ in direct competition. (**Exhibit C**, Deposition of Evan Jackson, 51:20-25). Accordingly, Intus' development of CareHub and the identity of its CareHub customers is directly relevant to RTZ's counterclaims and damage theories and ripe for discovery. Despite RTZ's allegations, Intus refuses to produce documents responsive to RTZ's requests seeking materials concerning CareHub and has taken the position during multiple depositions that CareHub related information is not discoverable. Intus' position lacks merit because CareHub related discovery goes directly to the central allegations in RTZ's Counterclaim.

As alleged in RTZ's Counterclaim, Intus improperly gained access to PACECare by using unauthorized login credentials without RTZ's knowledge or consent. (See Dkt 41, at Counterclaim ¶¶ 13-15, 30-44.) As is further alleged, RTZ's Counterclaim contends that Intus was in the process of developing a competing software program to PACECare – which turns out is CareHub (a product Intus started developing in early 2024). (Dkt. No 41, ¶¶ 10, 45, 46, 47, 53). Moreover, RTZ has alleged that Intus exploited its unauthorized access to PACECare as a means to accelerate its development of a competing program. (Dkt. No 41, ¶ 45). Intus has now confirmed the development and release of its competing CareHub product. (Rothberg Depo., at 196:24-197:1; 200:24-204:3).

The Requests at Issue were propounded by RTZ to obtain discovery concerning Intus' development of CareHub. Intus objected to every request. (See **Exhibit A**). Intus also instructed its witness, Mr. Rothberg, not to answer any deposition questions concerning CareHub, with the sole exception of questions regarding the number of Intus' clients who subscribed to CareHub:

Q. …What is the pricing model for Carehub?...
Mr. Beshai: This falls under the same category. I'm going to instruct him not to answer. So the specific details of how CareHub works, the pricing model, the clientele, the outreach strategy, we believe those things are outside the scope of this lawsuit.
[**Exhibit B**, 205:10-18]

Intus' obstruction was not limited to formal instructions not to answer. During Evan Jackson's prior deposition, Intus' counsel also said that RTZ can "move on" the questions pertaining to Intus' clients who contracted to use CareHub when Mr. Jackosn did not "feel comfortable providing that information." (**Exhibit C**, Jackson Depo., 154:18-155:12). Despite

Honorable Jon S. Tigar
March 9, 2026
Page 3

instructions to Mr. Jackson that he was obligated to provide full and complete answers unless instructed otherwise, he refused to do so. (Id.)

RTZ alleges that Intus accessed PACECare without authorization and used that access to accelerate the development of CareHub. Documents concerning the development, functionality, and design of CareHub are therefore directly relevant to RTZ's claims and damages theory. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The scope of discovery under the Federal Rules is extremely broad." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Federal Rule of Evidence 401 defines relevant evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms." *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992).

Intus' objections to any discovery concerning the identity of its CareHub customers are patently inconsistent with its own recent arguments seeking RTZ's customer list. (Dkt. 92). Intus has relied on RTZ's customer list to support its damages theory and successfully obtained a court order compelling the production on that basis. (Dkt. 93). RTZ seeks the same type of information (customer and development information) and for the same reasons (damage analysis). Intus' refusal to provide such documents and information therefore contradicts its own arguments to this Court in its last letter brief. (Dkt. 92.) In light of the Court's prior ruling and Intus' own reasoning regarding relevance of customer information, Intus' objections to Requests and instructions not to answer were improper.

During Mr. Rothberg's deposition, Intus' counsel acknowledged that the dispute needs Court resolution and stated on the record that, if the Court orders testimony regarding CareHub, Intus will make witnesses available for depositions:

> Mr. Beshai: …And, look, here's what I will also say so I'm not unreasonable. If this is something you pursue and a magistrate judge decides we have to answer, we can make Mr. Rothberg available again by Zoom. …
> …
> Mr. Beshai: And every objection as to CareHub I'll reiterate what I said before, which is if this gets litigated and there's an order requiring us to answer, we will make him or Even Jackson or someone available who can answer those questions.
> [**Exhibit B**, 205:3-206:7]

Both documents and testimony concerning CareHub are plainly relevant under Rule 26(b)(1), proportional to the needs of the case, and central to RTZ's counterclaims in this lawsuit, and Intus should be ordered to produce documents responsive to RFPs Nos. 66 – 84 within ten (10) days and reproduce Alex Rothberg and Evan Jackson for deposition to answer the CareHub-related questions at their first availability.

Honorable Jon S. Tigar
March 9, 2026
Page 4

**B.  Plaintiff and Counterdefendant Intus' Position:**

RTZ's requests rest upon a misstatement of its own claims and Intus' positions. RTZ asserts only five claims: Violation of California's Computer Data Access and Fraud Act, Violation of the Computer Fraud and Abuse Act, Trespass to Chattels, Violation of California's Unfair Competition Law, and Inducing Breach of Contract. (**Exhibit D**.) These claims are based on the allegation that Intus accessed PACECare without authorization, causing system strain and requiring RTZ to expend resources to investigate and monitor Intus' access. (*Id*. at ¶¶ 13-16.) RTZ also alleges that through its access, Intus "learn[ed]" about the layout and user interface of PACECare, and somehow that knowledge assisted Intus in developing CareHub. (*Id*. at ¶¶ 6, 45.) None of these claims have anything to do with the information that RTZ is seeking, such as how Intus is pricing its CareHub product. RTZ is simply fishing for competitive information that is irrelevant to this lawsuit.

RTZ asserted has not asserted a single IP-related claim or identified any protectable intellectual property ("IP"). Indeed, there are no allegations that Intus accessed or used any of RTZ's IP. Underscoring that this case is not about theft of RTZ's IP or clients, RTZ's witnesses have admitted that, despite having audit trails to show what Intus accessed and did not access, they have no evidence that Intus took or used any IP. Melanie Martinez, an RTZ implementation manager who has been with the company since 2012, stated that RTZ had audit trails showing which usernames accessed PACECare at what time for how long and the areas within PACECare to which those users navigated. (**Exhibit E** at 32:13-34:11.) Michael Zawadski, RTZ's former CEO until January 2026, likewise testified that RTZ could look at audit trails and trace exactly what action was taken by a user. (**Exhibit F** at 60:18-23; 96:2-11.) Mr. Zawadski said he never had a full report generated of Intus' activities in PACECare, but in hindsight he "probably should have." (*Id*. at 97:14-98:2.) Mr. Zawadski also could not identify any intellectual property that was taken from PACECare; instead, he vaguely stated that he "had been told" that Intus "wandered around the system and learned going through it," but he doesn't "know what [Intus] did with that" information. (*Id*. at 95:1-19.) Ms. Martinez, whose job entails daily interaction with upper management at RTZ and PACE entities, echoed this sentiment, conceding that she is not currently aware of and has never had a conversation with anyone at RTZ about Intus improperly taking IP from PACECare. (**Exhibit E** at 88:16-22.)

The crux of RTZ's discovery argument is a false equivalency between Intus' claims and RTZ's counterclaims. Intus has alleged that RTZ actively blocked PACE entities from providing Intus access to their own data on PACECare in violation of federal law. RTZ included in contracts language that barred the PACE entity from sharing its information and reports with Intus. RTZ also sought to enforce that improper language against PACE programs and Intus. This created a deterrent effect and is relevant to prospective damages, as this Court noted in its February 19, 2026 order. But RTZ has no such allegations against Intus or it CareHub product. There are no allegations that Intus actively deterred PACE entities from contracting with RTZ or improperly poached RTZ's clients by using RTZ's IP. Indeed, the first mention of Intus supposedly "lur[ing] customers away" is in this letter brief.  There is simply no basis for RTZ to claim it needs discovery on everything about CareHub.

RTZ also misstates Intus' position on CareHub discovery. RTZ's RFPs 66-84, the only RFPs at issue in this letter brief, are extraordinarily broad and, as above, seek vast amounts of

Honorable Jon S. Tigar
March 9, 2026
Page 5

information that have nothing to do with this case. From the first RFP to the last, each request seeks all documents and communications covering every conceivable facet of Intus' CareHub product. To address the purported issue about what CareHub's interface looks like (the only allegation in the complaint that even relates to CareHub), Intus agreed "to produce a limited subset of documents regarding the layout of CareHub." (**Exhibit G**, November 21, 2025 email.) RTZ rejected the proposal and provided no real rationale for why such broad requests for everything about CareHub had anything to do with their system access claims. RTZ is simply wrong to contend that Intus "has taken the position . . . that CareHub related information is not discoverable." Instead, Intus made a good-faith effort to confirm its understanding of RTZ's allegations and narrow the requests accordingly—context that RTZ omits entirely from its argument above. Intus engaged in a meet and confer call with RTZ in late November 2025 and asked that RTZ better explain its claims so Intus could understand how to narrow the production. Intus' counsel followed up by an email on November 21, 2025, offering to work with RTZ to narrow the CareHub requests. (**Exhibit D**.) Intus' counsel noted that "for example, if [RTZ] were to tell us that your theory is that Intus accessed PACECare and replicated the user interface in its own EMR, then we would be willing to produce a limited subset of documents regarding the layout of CareHub," and Intus explained that if RTZ were to "clarify how the CareHub material relates to [its] claims, [Intus] would be willing to consider [RTZ's] requests in that narrowed context. As it stands, [RTZ's] requests are far too broad, and [Intus] still [doesn't] understand how the requests relate to [RTZ's] claims." (*Id.*)

RTZ ignored Intus' request to engage in a good-faith discussion with the goal of narrowing the exceedingly broad CareHub RFPs. Instead, RTZ decided to ask the same questions in depositions, hoping to circumvent Intus' objections and elicit the same information from witnesses in the deposition setting. Just four days after Intus made its offer to meet and confer on the scope of the CareHub requests, RTZ asked Evan Jackson the very questions to which Intus had objected and on which Intus was hoping to reach a compromise. Accordingly, Intus' counsel objected at the deposition and instructed Mr. Jackson not to answer until the parties had resolved the CareHub issues.

RTZ did not raise the CareHub issue again or take Intus up on its offer to meet and confer at any point after the deposition of Mr. Jackson. Rather, three months later, at the February 27, 2026 deposition of Alex Rothberg, RTZ attempted to ask the same questions of Mr. Rothberg. In the spirit of compromise, Intus' counsel allowed Mr. Rothberg to answer a number of general questions about CareHub and told RTZ's counsel in the deposition, "you can keep asking the questions because maybe there will be a broad general question like the number of clients that I'm okay with Mr. Rothberg answering." (*Id.* 205:21-24.) RTZ's counsel stopped his line of questioning about CareHub and has now brought this letter brief. To date, RTZ has not taken Intus up on its offer to meet and confer about narrowing the scope of its requests to correspond with its actual claims related to CareHub.

The Court should, therefore, deny RTZ's requests for everything related to CareHub. Intus remains willing to meet and confer with Intus to narrow the scope of RFPs 66-84. This includes Intus's prior offer to produce screenshots of CareHub's layout to address the unfounded claim that CareHub's layout mimics PaceCare. As it stands, these requests are far too broad and completely untethered from RTZ's nebulous theory of liability—whatever that may be.

Honorable Jon S. Tigar
March 9, 2026
Page 6


Sincerely,

NOSSAMAN LLP

/s/ Kasia Penn
    Kasia Penn
Attorneys for Counterclaimant RTZ Associates, Inc.


MANATT, PHELPS & PHILLIPS, LLP

/s/ Charles Weir
    Charles Weir
Attorneys for Counterdefendant Intus Care, Inc.

70153993.v3

# EXHIBIT "A"

MANATT, PHELPS & PHILLIPS, LLP
CHARLES E. WEIR (Bar No. 211091)
E-mail: CWeir@manatt.com
ANDREW BESHAI (Bar No. 308030)
E-mail: ABeshai@manatt.com
2049 Century Park East
Suite 1700
Los Angeles, California  90067
Telephone:     310.312.4000
Facsimile:     310.312.4224

Attorneys for Plaintiff
INTUSCARE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUSCARE INC., | Case No. 4:24-cv-01132-JST |
| Plaintiff, | Assigned to: Hon. Jon S. Tigar |
| v. | **INTUSCARE INC.'S RESPONSES AND OBJECTIONS TO RTZ ASSOCIATES, INC.'S REQUESTS FOR PRODUCTION, SET THREE** |
| RTZ ASSOCIATES, INC.; and DOES 1 through 10, | |
| Defendants. | Complaint Filed:   February 23, 2024<br>Amended Complaint Filed: April 2, 2024<br>Counterclaims Filed: June 20, 2024 |

1  **PROPOUNDING PARTY:**              **RTZ ASSOCIATES, INC.**

2  **RESPONDING PARTY:**               **INTUSCARE INC.**

3  **SET NO.:**                        **THREE**

4     Plaintiff IntusCare Inc. ("Intus") hereby responds to Defendant RTZ Associates, Inc.'s

5  ("RTZ") third set of requests for production of documents (the "Requests") as follows:

6                        <u>**PRELIMINARY STATEMENT**</u>

7     Intus has not completed its investigation of the facts related to this case, has not fully

8  completed its discovery in this action, and has not completed its preparation for trial. All of the

9  responses contained herein are based only on such information and documents that are presently

10 available and specifically known to Intus, and Intus discloses only those facts of which it is

11 presently aware. These responses are based upon the current state of Intus' pre-trial preparation

12 and the documents that it has reviewed to date. Intus anticipates that its continuing discovery and

13 investigation will reveal facts and/or documents not presently known to it, or facts and/or

14 documents whose significance is not presently known to it, upon which Intus may rely at trial.

15 Thus, the responses contained herein are given without prejudice to Intus' right to augment these

16 responses at a later date.

17    Each response is given subject to all appropriate objections (including, but not limited to,

18 objections concerning competency, materiality, propriety, authenticity, and admissibility), which

19 would require the exclusion of any statement contained or referenced herein, if it were made or

20 presented by a witness present and testifying in Court. All such objections and grounds are

21 therefore reserved and may be interposed at the time of trial.

22    Except for facts explicitly admitted herein, no admission of any nature whatsoever is to be

23 implied or inferred. All responses must be construed as given on the basis of present recollection.

24 Nothing herein should be construed as an admission by Intus regarding the admissibility or

25 relevance of any fact, or the relevance, truth, or accuracy of any characterization or statement of

26 any kind contained in RTZ's Requests.

27 / / /

28

INTUSCARE INC.'S RESPONSES AND OBJECTIONS
TO RTZ ASSOCIATES, INC.'S REQUESTS FOR PRODUCTION, SET THREE

## GENERAL OBJECTIONS

1.      Intus objects to the Requests to the extent that they seek documents that are not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence.

2.      Intus objects to each and every Request to the extent it seeks documents protected by the attorney-client privilege, attorney work-product doctrine, and/or any other applicable privilege, immunity, or other limitation on discovery, including information protected by the right to privacy (including, but not limited to, under HIPAA and similar state law). Intus will not undertake to produce such privileged or protected documents, and nothing herein is intended as, or shall be deemed to be, a waiver of any such privileges and protections. The production of any such documents is inadvertent and shall not constitute a waiver of any privilege or protection.

3.      Intus submits these responses subject to all objections ordinarily available if such statements are offered in court. All such objections are hereby expressly reserved and may be interposed at the time of trial or at any other time. No response or objection to any of the Requests herein should be taken as an admission by Intus of the existence of any fact set forth or assumed by the Requests, or that such response or objection constitutes admissible evidence. No response to any of the requests is intended to be, nor shall any response be construed as, a waiver by Intus of all or any part of any objection to any Request.

4.      Intus has made an effort to respond to each of the Requests as Intus understands and interprets it. Discovery in this action is continuing, and Intus has not yet completed its factual investigation. Accordingly, without assuming any obligation to do so, and without waiving any objection, Intus reserves the right to amend or supplement any response as additional facts are discovered or ascertained. The following responses are based upon facts which Intus has ascertained as of the date of the response, and does not preclude Intus from later relying upon facts discovered pursuant to further investigation or discovery which may be conducted after the date of this response.

5.      Intus objects to the Requests on the grounds and to the extent that they call for private (including, but not limited to, under HIPAA and similar state law) and/or confidential,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

proprietary, business, trade-secret, financial and/or commercially sensitive information. Moreover, to the extent any confidential, personal, business, financial, proprietary, private, commercially sensitive, or trade-secret information were to be produced, information would only be made available following the entry of the protective order in this matter, including an "attorneys' eyes only" protective order.

6.      Intus objects to the Requests on the grounds and to the extent that they seek the premature discovery of expert witnesses and/or opinions.

7.      Intus objects to the requests on the grounds and to the extent that they call for legal reasoning, theories and/or conclusions.

8.      Intus objects to the Requests on the grounds and to the extent that they are vague, ambiguous, unintelligible, uncertain, overly broad, duplicative, unreasonably burdensome, harassing and/or not properly limited as to time or scope.

9.      Intus objects to the Requests on the grounds and to the extent that they do not specify the sought documents with reasonable particularity.

10.      Intus objects to the Requests on the grounds and to the extent that they purport to impose obligations on Intus beyond those permitted by the Federal Rules of Civil Procedure or Local Rules.

11.      Intus objects to the Requests on the grounds and to the extent that they seek the disclosure of documents already in RTZ's possession or equally available to RTZ.

12.      Intus objects to the Requests on the grounds and to the extent that they seek the disclosure of documents in the possession, custody or control of third parties or other parties to this action.

13.      Intus objects to the Requests on the grounds and to the extent that they are based on false premises and assume facts that do not exist.

14.      Intus objects to the definition of "YOU" and/or "YOUR" on the grounds that it: (a) is vague, ambiguous, and overbroad to the extent it includes Intus' "attorneys, accountants,

1    employees, representatives, agents or servants"; and (b) seeks information that is protected from

2    disclosure by the attorney-client privilege to the extent it includes Intus' attorneys.

3        15.    Intus objects to RTZ's instructions on producing responsive documents, including

4    but not limited to page 5 lines 17-27 of the Instructions, as vague, ambiguous and unduly

5    burdensome.

6        Intus specifically incorporates each of the foregoing General Objections into each and

7    every response to the Requests. Subject to and without waiving these general objections, and the

8    specific objections set forth below, Intus responds as follows:

9        **RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION**

10    **REQUEST FOR PRODUCTION NO. 66:**

11        All DOCUMENTS (including but limited to, slide decks, PowerPoint presentations,

12    memoranda, summaries, or other written materials) YOU prepared or presented to actual or

13    potential investors RELATING TO YOUR products and services, including CAREHUB, between

14    June 1, 2021 and the present.

15    **RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

16        In addition to its General Objections, Intus specifically objects to this Request on the

17    grounds that it exceeds the scope of permissible discovery insofar as it seeks information not

18    relevant to any party's claim or defense and information not proportional to the needs of the case;

19    however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims

20    and defenses. Intus further objects to this Request to the extent it seeks the production of private

21    and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

22    objects to this Request on the grounds that it is overly broad and unduly burdensome and

23    harassing, including as to scope and time, and fails to identify the documents sought with

24    reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

25    ambiguous, including, but not limited, as to the terms and phrases "slide decks," "memoranda,"

26    "summaries," "other written materials," "prepared," "presented," "actual or potential investors,"

27    and "products and services." Intus further objects to this Request on the grounds that it is

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1  duplicative of other Requests. Intus further objects to this Request to the extent it seeks

2  documents protected by the attorney-client privilege or the work-product doctrine.

3  **REQUEST FOR PRODUCTION NO. 67:**

4       All presentations, demonstrations, slide decks, or other materials prepared by YOU that

5  describe, illustrate, or highlight the features and functionality of CAREHUB.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

7       In addition to its General Objections, Intus specifically objects to this Request on the

8  grounds that it exceeds the scope of permissible discovery insofar as it seeks information not

9  relevant to any party's claim or defense and information not proportional to the needs of the case;

10  however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims

11  and defenses. Intus further objects to this Request to the extent it seeks the production of private

12  and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

13  objects to this Request on the grounds that it is overly broad and unduly burdensome and

14  harassing, including as to scope and time, and fails to identify the documents sought with

15  reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

16  ambiguous, including, but not limited, as to the terms and phrases "presentations,"

17  "demonstrations," "slide decks," "other materials," "illustrate," "highlight," "features," and

18  "functionality." Intus further objects to this Request on the grounds that it is duplicative of other

19  Requests. Intus further objects to this Request to the extent it seeks documents protected by the

20  attorney-client privilege or the work-product doctrine.

21  **REQUEST FOR PRODUCTION NO. 68:**

22       All DOCUMENTS sufficient to establish the date on which development of CAREHUB

23  began.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

25       In addition to its General Objections, Intus specifically objects to this Request on the

26  grounds that it exceeds the scope of permissible discovery insofar as it seeks information not

27  relevant to any party's claim or defense and information not proportional to the needs of the case;

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

INTUSCARE INC.'S RESPONSES AND OBJECTIONS
TO RTZ ASSOCIATES, INC.'S REQUESTS FOR PRODUCTION, SET THREE

1  however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims

2  and defenses. In addition to its General Objections, Intus specifically objects to this Request on

3  the grounds that it is overly broad and unduly burdensome and harassing, including as to scope

4  and time, and fails to identify the documents sought with reasonable particularity. Intus further

5  objects to this Request on the grounds that it is vague and ambiguous, including, but not limited,

6  as to the term "development." Intus further objects to this Request on the grounds that it is

7  duplicative of Request No. 43.

8  **REQUEST FOR PRODUCTION NO. 69:**

9       All DOCUMENTS RELATING TO YOUR planning, design and/or timeline for

10  development of CAREHUB, including but not limited to, project timelines, Gantt charts,

11  development schedules, engineering and development logs, and project files.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

13       In addition to its General Objections, Intus specifically objects to this Request on the

14  grounds that it exceeds the scope of permissible discovery insofar as it seeks information not

15  relevant to any party's claim or defense and information not proportional to the needs of the case;

16  however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims

17  and defenses. Intus further objects to this Request to the extent it seeks the production of private

18  and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

19  objects to this Request on the grounds that it is overly broad and unduly burdensome and

20  harassing, including as to scope and time, and fails to identify the documents sought with

21  reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

22  ambiguous, including, but not limited, as to the terms and phrases "planning," "design,"

23  "timeline," "development," "project timelines," "Gantt charts," "development schedules,"

24  "engineering and development logs," and "project files." Intus further objects to this Request on

25  the grounds that it is duplicative of other Requests. Intus further objects to this Request to the

26  extent it seeks documents protected by the attorney-client privilege or the work-product doctrine.

27

28

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**REQUEST FOR PRODUCTION NO. 70:**

All DOCUMENTS delineating anticipated and/or actual specifications, functional requirements or intended capabilities of CAREHUB.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

In addition to its General Objections, Intus specifically objects to this Request on the grounds that it exceeds the scope of permissible discovery insofar as it seeks information not relevant to any party's claim or defense and information not proportional to the needs of the case; however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private and/or confidential business, financial, non-public, and/or proprietary documents. Intus further objects to this Request on the grounds that it is overly broad and unduly burdensome and harassing, including as to scope and time, and fails to identify the documents sought with reasonable particularity. Intus further objects to this Request on the grounds that it is vague and ambiguous, including, but not limited, as to the terms and phrases "delineating," "anticipated," "actual," "specifications," "functional requirements," and "intended capabilities." Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus further objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine.

**REQUEST FOR PRODUCTION NO. 71:**

All internal COMMUNICATIONS among YOUR officers, directors, employees and/or contractors RELATING TO the development of CAREHUB.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

In addition to its General Objections, Intus specifically objects to this Request on the grounds that it exceeds the scope of permissible discovery insofar as it seeks information not relevant to any party's claim or defense and information not proportional to the needs of the case; however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private

1   and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

2   objects to this Request on the grounds that it is overly broad and unduly burdensome and

3   harassing, including as to scope and time, and fails to identify the documents sought with

4   reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

5   ambiguous, including, but not limited, as to the terms and phrases "internal," "officers,"

6   "directors," "employees," "contractors," and "development." Intus further objects to this Request

7   on the grounds that it is duplicative of other Requests. Intus further objects to this Request to the

8   extent it seeks documents protected by the attorney-client privilege or the work-product doctrine.

9   **REQUEST FOR PRODUCTION NO. 72:**

10          All internal COMMUNICATIONS among YOUR officers, directors, employees and/or

11   contractors RELATING TO the decision to develop CAREHUB.

12   **RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

13          In addition to its General Objections, Intus specifically objects to this Request on the

14   grounds that it exceeds the scope of permissible discovery insofar as it seeks information not

15   relevant to any party's claim or defense and information not proportional to the needs of the case;

16   however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims

17   and defenses. Intus further objects to this Request to the extent it seeks the production of private

18   and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

19   objects to this Request on the grounds that it is overly broad and unduly burdensome and

20   harassing, including as to scope and time, and fails to identify the documents sought with

21   reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

22   ambiguous, including, but not limited, as to the terms and phrases "internal," "contractors,"

23   "decision," and "develop." Intus further objects to this Request on the grounds that it is

24   duplicative of other Requests. Intus further objects to this Request to the extent it seeks

25   documents protected by the attorney-client privilege or the work-product doctrine.

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

INTUSCARE INC.'S RESPONSES AND OBJECTIONS
TO RTZ ASSOCIATES, INC.'S REQUESTS FOR PRODUCTION, SET THREE

1    **REQUEST FOR PRODUCTION NO. 73:**

2        All internal COMMUNICATIONS among YOUR officers, directors, employees and/or

3    contractors addressing competitors (including among others, RTZ, Collabrios, Tabula Rasa, and

4    Epic) in the PACE market, including but not limited to, analyses and/or assessments of PACE

5    EMR/EHR systems such as PACECare, PACElogic and TrueChart.

6    **RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

7        In addition to its General Objections, Intus specifically objects to this Request on the

8    grounds that it exceeds the scope of permissible discovery insofar as it seeks information not

9    relevant to any party's claim or defense and information not proportional to the needs of the case;

10   however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims

11   and defenses. Intus further objects to this Request to the extent it seeks the production of private

12   and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

13   objects to this Request on the grounds that it is overly broad and unduly burdensome and

14   harassing, including as to scope and time, and fails to identify the documents sought with

15   reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

16   ambiguous, including, but not limited, as to the terms and phrases "internal," "contractors,"

17   "addressing," "competitors," "among others," "the PACE market," "analyses," "assessments,"

18   "PACE EMR/EHR systems." Intus further objects to this Request on the grounds that it is

19   duplicative of other Requests. Intus further objects to this Request to the extent it seeks

20   documents protected by the attorney-client privilege or the work-product doctrine.

21   **REQUEST FOR PRODUCTION NO. 74:**

22       All DOCUMENTS sufficient to establish the identity of the individuals involved in the

23   development of CAREHUB.

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

25       In addition to its General Objections, Intus specifically objects to this Request on the

26   grounds that it exceeds the scope of permissible discovery insofar as it seeks information not

27   relevant to any party's claim or defense and information not proportional to the needs of the case;

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private and/or confidential business, financial, non-public, and/or proprietary documents. Intus further objects to this Request on the grounds that it is overly broad and unduly burdensome and harassing, including as to scope and time, and fails to identify the documents sought with reasonable particularity. Intus further objects to this Request on the grounds that it is vague and ambiguous, including, but not limited, as to the terms and phrases "establish," "identity," "involved," and "development." Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus further objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine.

**REQUEST FOR PRODUCTION NO. 75:**

All DOCUMENTS sufficient to establish the costs YOU incurred in connection with the development of CAREHUB.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

In addition to its General Objections, Intus specifically objects to this Request on the grounds that it exceeds the scope of permissible discovery insofar as it seeks information not relevant to any party's claim or defense and information not proportional to the needs of the case; however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private and/or confidential business, financial, non-public, and/or proprietary documents. Intus further objects to this Request on the grounds that it is overly broad and unduly burdensome and harassing, including as to scope and time, and fails to identify the documents sought with reasonable particularity. Intus further objects to this Request on the grounds that it is vague and ambiguous, including, but not limited, as to the terms and phrases "establish," "costs," "incurred," "in connection with," and "development." Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus further objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

INTUSCARE INC.'S RESPONSES AND OBJECTIONS
TO RTZ ASSOCIATES, INC.'S REQUESTS FOR PRODUCTION, SET THREE

**REQUEST FOR PRODUCTION NO. 76:**

All DOCUMENTS RELATING TO financial projections YOU developed RELATING TO CAREHUB between June 1, 2021 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

In addition to its General Objections, Intus specifically objects to this Request on the grounds that it exceeds the scope of permissible discovery insofar as it seeks information not relevant to any party's claim or defense and information not proportional to the needs of the case; however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private and/or confidential business, financial, non-public, and/or proprietary documents. Intus further objects to this Request on the grounds that it is overly broad and unduly burdensome and harassing, including as to scope and time, and fails to identify the documents sought with reasonable particularity. Intus further objects to this Request on the grounds that it is vague and ambiguous, including, but not limited, as to the terms and phrases "financial projections" and "developed." Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus further objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine.

**REQUEST FOR PRODUCTION NO. 77:**

All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR expected or actual release dates of CAREHUB, including but not limited to, product release schedules and/or milestone dates.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

In addition to its General Objections, Intus specifically objects to this Request on the grounds that it exceeds the scope of permissible discovery insofar as it seeks information not relevant to any party's claim or defense and information not proportional to the needs of the case; however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1   and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

2   objects to this Request on the grounds that it is overly broad and unduly burdensome and

3   harassing, including as to scope and time, and fails to identify the documents sought with

4   reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

5   ambiguous, including, but not limited, as to the terms and phrases "expected," "actual," "product

6   release schedules," and "milestone dates." Intus further objects to this Request on the grounds

7   that it is duplicative of other Requests. Intus further objects to this Request to the extent it seeks

8   documents protected by the attorney-client privilege or the work-product doctrine.

9   **REQUEST FOR PRODUCTION NO. 78:**

10      All COMMUNICATIONS between YOU and any customer of Defendant RTZ

11   RELATING TO CAREHUB between June 1, 2021 and the present.

12   **RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

13      In addition to its General Objections, Intus specifically objects to this Request on the

14   grounds that it exceeds the scope of permissible discovery insofar as it seeks information not

15   relevant to any party's claim or defense and information not proportional to the needs of the case;

16   however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims

17   and defenses. Intus further objects to this Request to the extent it seeks the production of private

18   and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

19   objects to this Request on the grounds that it is overly broad and unduly burdensome and

20   harassing, including as to scope and time, and fails to identify the documents sought with

21   reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

22   ambiguous, including, but not limited, as to the terms and phrases "customer." Intus further

23   objects to this Request on the grounds that it is duplicative of other Requests. Intus further objects

24   to this Request to the extent it seeks documents protected by the attorney-client privilege or the

25   work-product doctrine.

26

27

28

**REQUEST FOR PRODUCTION NO. 79:**

All COMMUNICATIONS between YOU and any customer of Tabula Rasa RELATING TO CAREHUB between June 1, 2021 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

In addition to its General Objections, Intus specifically objects to this Request on the grounds that it exceeds the scope of permissible discovery insofar as it seeks information not relevant to any party's claim or defense and information not proportional to the needs of the case; however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private and/or confidential business, financial, non-public, and/or proprietary documents. Intus further objects to this Request on the grounds that it is overly broad and unduly burdensome and harassing, including as to scope and time, and fails to identify the documents sought with reasonable particularity. Intus further objects to this Request on the grounds that it is vague and ambiguous, including, but not limited, as to the terms and phrases "customer." Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus further objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine.

**REQUEST FOR PRODUCTION NO. 80:**

All DOCUMENTS sufficient to establish the identity of all customers YOU have contracted with to license and/or use CAREHUB.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

In addition to its General Objections, Intus specifically objects to this Request on the grounds that it exceeds the scope of permissible discovery insofar as it seeks information not relevant to any party's claim or defense and information not proportional to the needs of the case; however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

1   objects to this Request on the grounds that it is overly broad and unduly burdensome and

2   harassing, including as to scope and time, and fails to identify the documents sought with

3   reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

4   ambiguous, including, but not limited, as to the terms and phrases "establish," "identity,"

5   "customers," "contracted with," "license," and "use." Intus further objects to this Request on the

6   grounds that it is duplicative of other Requests. Intus further objects to this Request to the extent

7   it seeks documents protected by the attorney-client privilege or the work-product doctrine.

8   **REQUEST FOR PRODUCTION NO. 81:**

9          All contracts and other written agreements between YOU and any customer relating to

10  CAREHUB.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

12         In addition to its General Objections, Intus specifically objects to this Request on the

13  grounds that it exceeds the scope of permissible discovery insofar as it seeks information not

14  relevant to any party's claim or defense and information not proportional to the needs of the case;

15  however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims

16  and defenses. Intus further objects to this Request to the extent it seeks the production of private

17  and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

18  objects to this Request on the grounds that it is overly broad and unduly burdensome and

19  harassing, including as to scope and time, and fails to identify the documents sought with

20  reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

21  ambiguous, including, but not limited, as to the terms and phrases "contracts," "written

22  agreements." "any," "customer," and "relating to." Intus further objects to this Request on the

23  grounds that it is duplicative of other Requests. Intus further objects to this Request to the extent

24  it seeks documents protected by the attorney-client privilege or the work-product doctrine.

25  **REQUEST FOR PRODUCTION NO. 82:**

26         All DOCUMENTS sufficient to establish YOUR pricing models for the license and/or use

27  of CAREHUB between October 1, 2024 to the present.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

In addition to its General Objections, Intus specifically objects to this Request on the grounds that it exceeds the scope of permissible discovery insofar as it seeks information not relevant to any party's claim or defense and information not proportional to the needs of the case; however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private and/or confidential business, financial, non-public, and/or proprietary documents. Intus further objects to this Request on the grounds that it is overly broad and unduly burdensome and harassing, including as to scope and time, and fails to identify the documents sought with reasonable particularity. Intus further objects to this Request on the grounds that it is vague and ambiguous, including, but not limited, as to the terms and phrases "establish," "pricing models," "license," and "use." Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus further objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine.

**REQUEST FOR PRODUCTION NO. 83:**

All DOCUMENTS reflecting customer feedback or marker reception of CAREHUB, including but not limited to customer reviews, complaints, suggestions, and any internal or external analyses or reports RELATING TO how CAREHUB was received in the marketplace.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

In addition to its General Objections, Intus specifically objects to this Request on the grounds that it exceeds the scope of permissible discovery insofar as it seeks information not relevant to any party's claim or defense and information not proportional to the needs of the case; however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private and/or confidential business, financial, non-public, and/or proprietary documents. Intus further objects to this Request on the grounds that it is overly broad and unduly burdensome and harassing, including as to scope and time, and fails to identify the documents sought with

reasonable particularity. Intus further objects to this Request on the grounds that it is vague and ambiguous, including, but not limited, as to the terms and phrases "reflecting," "customer feedback," "marker reception," "customer reviews," "complaints," "suggestions," "any," "internal or external analyses or reports," "received," and "in the marketplace." Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus further objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine.

**REQUEST FOR PRODUCTION NO. 84:**

All of YOUR board packages, resolutions and meeting minutes that reference: (i) CAREHUB; (ii) "RTZ"; or (iii) "Collabrios".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

In addition to its General Objections, Intus specifically objects to this Request on the grounds that it exceeds the scope of permissible discovery insofar as it seeks information not relevant to any party's claim or defense and information not proportional to the needs of the case; however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private and/or confidential business, financial, non-public, and/or proprietary documents. Intus further objects to this Request on the grounds that it is overly broad and unduly burdensome and harassing, including as to scope and time, and fails to identify the documents sought with reasonable particularity. Intus further objects to this Request on the grounds that it is vague and ambiguous, including, but not limited, as to the terms and phrases "board packages," "resolutions," and "meetings minutes." Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus further objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine.

**REQUEST FOR PRODUCTION NO. 85:**

All screenshots, screen captures, screen recordings, images, or other visual depictions of PACECare taken or generated by YOU and/or for YOU.

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

2       In addition to its General Objections, Intus specifically objects to this Request on the

3  grounds that it exceeds the scope of permissible discovery insofar as it seeks information not

4  relevant to any party's claim or defense and information not proportional to the needs of the case;

5  however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims

6  and defenses. Intus further objects to this Request to the extent it seeks the production of private

7  and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

8  objects to this Request on the grounds that it is overly broad and unduly burdensome and

9  harassing, including as to scope and time, and fails to identify the documents sought with

10  reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

11  ambiguous, including, but not limited, as to the terms and phrases "screenshots," "screen

12  captures," "screen recordings," "images," "other visual depictions," "taken," "generated by."

13  Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus

14  further objects to this Request to the extent it seeks documents protected by the attorney-client

15  privilege or the work-product doctrine.

16  **REQUEST FOR PRODUCTION NO. 86:**

17       All screenshots, screen captures, screen recordings, images, or other visual depictions of

18  PACElogic taken or generated by YOU and/or for YOU.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

20       In addition to its General Objections, Intus specifically objects to this Request on the

21  grounds that it exceeds the scope of permissible discovery insofar as it seeks information not

22  relevant to any party's claim or defense and information not proportional to the needs of the case;

23  however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims

24  and defenses. Intus further objects to this Request to the extent it seeks the production of private

25  and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

26  objects to this Request on the grounds that it is overly broad and unduly burdensome and

27  harassing, including as to scope and time, and fails to identify the documents sought with

28

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

1  reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

2  ambiguous, including, but not limited, as to the terms and phrases "screenshots," "screen

3  captures," "screen recordings," "images," "other visual depictions," "taken," "generated by."

4  Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus

5  further objects to this Request to the extent it seeks documents protected by the attorney-client

6  privilege or the work-product doctrine.

7  **REQUEST FOR PRODUCTION NO. 87:**

8      All screenshots, screen captures, screen recordings, images, or other visual depictions of

9  TrueChart taken or generated by YOU and/or for YOU.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

11      In addition to its General Objections, Intus specifically objects to this Request on the

12  grounds that it exceeds the scope of permissible discovery insofar as it seeks information not

13  relevant to any party's claim or defense and information not proportional to the needs of the case;

14  however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims

15  and defenses. Intus further objects to this Request to the extent it seeks the production of private

16  and/or confidential business, financial, non-public, and/or proprietary documents. Intus further

17  objects to this Request on the grounds that it is overly broad and unduly burdensome and

18  harassing, including as to scope and time, and fails to identify the documents sought with

19  reasonable particularity. Intus further objects to this Request on the grounds that it is vague and

20  ambiguous, including, but not limited, as to the terms and phrases "screenshots," "screen

21  captures," "screen recordings," "images," "other visual depictions," "taken," "generated by."

22  Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus

23  further objects to this Request to the extent it seeks documents protected by the attorney-client

24  privilege or the work-product doctrine.

25  **REQUEST FOR PRODUCTION NO. 88:**

26      All COMMUNICATIONS between YOU and Sonja Love Felton RELATING TO

27  PACECare and/or Defendant RTZ from June 1, 2021 to the present.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88:**

In addition to its General Objections, Intus specifically objects to this Request on the grounds that it exceeds the scope of permissible discovery insofar as it seeks information not relevant to any party's claim or defense and information not proportional to the needs of the case; however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private and/or confidential business, financial, non-public, and/or proprietary documents. Intus further objects to this Request on the grounds that it is overly broad and unduly burdensome and harassing, including as to scope and time, and fails to identify the documents sought with reasonable particularity. Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus further objects to this Request to the extent it seeks documents protected by the attorney-client privilege or the work-product doctrine.

**REQUEST FOR PRODUCTION NO. 89:**

All DOCUMENTS sufficient to establish YOUR investors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89:**

In addition to its General Objections, Intus specifically objects to this Request on the grounds that it exceeds the scope of permissible discovery insofar as it seeks information not relevant to any party's claim or defense and information not proportional to the needs of the case; however, Intus is willing to meet and confer should RTZ wish to clarify the scope of its claims and defenses. Intus further objects to this Request to the extent it seeks the production of private and/or confidential business, financial, non-public, and/or proprietary documents. Intus further objects to this Request on the grounds that it is overly broad and unduly burdensome and harassing, including as to scope and time, and fails to identify the documents sought with reasonable particularity. Intus further objects to this Request on the grounds that it is vague and ambiguous, including, but not limited, as to the phrase "investors." Intus further objects to this Request on the grounds that it is duplicative of other Requests. Intus further objects to this

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Request to the extent it seeks documents protected by the attorney-client privilege or the work-

2  product doctrine.

3

4  Dated:  November 10, 2025                    MANATT, PHELPS & PHILLIPS, LLP

5

6                                              By: /s/ Charles E. Weir
                                                   Charles E. Weir
7                                                  Andrew Beshai
                                                   Attorneys for Plaintiff
8                                                  INTUSCARE INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

INTUSCARE INC.'S RESPONSES AND OBJECTIONS
TO RTZ ASSOCIATES, INC.'S REQUESTS FOR PRODUCTION, SET THREE

## **PROOF OF SERVICE**

*Intus Care, Inc. v. RTZ Associates, Inc.*
U.S.D.C. – Northern District of California Case No. 4:24-cv-1132-JST

I, Andrew Beshai, declare as follows:

I am employed in Los Angeles County, Los Angeles, California.  I am over the age of eighteen years and not a party to this action.  My business address is MANATT, PHELPS & PHILLIPS, LLP, 2049 Century Park East, Suite 1700, Los Angeles, California  90067.  On **November 10, 2025**, I served the within:

**INTUSCARE INC.'S RESPONSES AND OBJECTIONS TO RTZ ASSOCIATES, INC.'s REQUESTs FOR PRODUCTION, SET THREE**

on the interested parties in this action addressed as follows:

| | |
|---|---|
| David C. Lee, Esq.<br>NOSSAMAN LLP<br>50 California Street, 34th Floor<br>San Francisco, California 94111<br><br>Phone: 415.398.3600<br>Fax:     415.398.2438<br>Email: dlee@nossaman.com | *Attorneys for Defendant*<br>RTZ ASSOCIATES, INC |
| Kasia Penn, Esq.<br>NOSSAMAN LLP<br>18101 Von Karman Avenue, Suite 1800<br>Irvine, California 92612<br><br>Phone: 949.833.7800<br>Fax:     949.833.7878<br>Email: kpenn@nossaman.com | *Attorneys for Defendant*<br>RTZ ASSOCIATES, INC. |

        **(BY ELECTRONIC MAIL)** By transmitting such document(s) electronically from my e-mail address, abeshai@manatt.com at Manatt, Phelps & Phillips, LLP, Los Angeles, California, to the person(s) at the electronic mail addresses listed above.  The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on **November 10, 2025**, at Los Angeles, California.

*/s/ Andrew Beshai*
Andrew Beshai

404331107.1

INTUSCARE INC.'S RESPONSES AND OBJECTIONS
TO RTZ ASSOCIATES, INC.'S REQUESTS FOR PRODUCTION, SET THREE

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT "B"

1

1   Deposition of Alexander Rothberg

2   Friday, February 27, 2026

3   IntusCare V. RTZ

4   Manatt, Phelps & Phillips LLP

5   in Boston, MA

6

7            THIS IS AN UNCERTIFIED DRAFT TRANSCRIPT!

8            PLEASE DO NOT QUOTE FROM THIS DRAFT IN

9            PLEADINGS OR ELSEWHERE.  THE CERTIFIED

10           TRANSCRIPT IS THE ONLY OFFICIAL RECORD

11           WHICH MAY BE RELIED UPON FOR VERBATIM

12           CITATIONS OF TESTIMONY.

13

14

15   This realtime transcription has not been proofread.
     It is the court reporter's uncorrected translation,
16   a draft, not the certified transcript.  It contains
     errors and/or mistranslations which may result in
17   nonsensical word combinations.  Page numbers and
     line numbers in this draft will not correspond to
18   those in the final, certified transcript.

19
     This interactive realtime service is provided to you
20   solely as a litigation aid and is in no way an
     official transcript.
21

22   The court reporting agency and the court reporter,

23    philosophical.  But I guess you could say we really

24    went for it once we hired the developers and that,

25    you know -- but when did we first contemplate it?


                                    202

1    When did we decide we were going to do it?  Earlier.

2        Q.  Do you know how much earlier?

3        A.  I think the -- I mean, when did we first

4    contemplate it?  You know, probably in the classroom

5    before we even built Pop Health is "Hey, what are we

6    going to build?"  But the EMR is always expensive to

7    build, as I'm sure you know.  So it's been, you

8    know.

9        Q.  CareHub was announced, I guess, to the

10   world at least as a 2025 deliverable, I believe, in

11   October of 2024.  Is that about right?

12       A.  I don't know about the October, but it was

13   certainly announced as a 2025 deliverable.

14       Q.  How many clients has Intus signed to

15   CareHub to date?

16           THE WITNESS:  Can I answer that?

17           MR. BESHAI:  You can answer -- like, if

18   you know, you can answer.  But if the questions

19   start getting into details about who the clients

20    are, et cetera, that's a different conversation.  If

21    you have a rough sense of how many, you can share

22    that.

23        A.  Do you mean, like, active or signed to go

24    active?

25        Q.  Both.


                                                    203

1        A.  Active, certainly under 60, well under 60.

2    Signed to go active?  I don't know.  It's -- I mean,

3    it's more Evan Jackson's side of the house than mine

4    but -- well, certainly, under a hundred.  That's an

5    easy sort of estimate.  Somewhere between 30 and a

6    hundred I guess would be a safe thing for me to say.

7    I'm not the business person.

8        Q.  I'm sorry.  I just want to make sure I have

9    the numbers right.

10        So it's under 60 for those who have signed

11    to be contracted for CareHub; is that correct?

12        A.  I was saying under 60 who are active.

13        Q.  Who are active.

14        A.  And, you know -- just because it's not my

15    area of expertise but to, you know, try to be

16    helpful, somewhere between 30 and a hundred are

17    signed to be active.

18        Q.  How many systems -- maybe I'm not hearing

19    you correctly.  When you say "under 60 who are

20    active," those are systems that have achieved go

21    live?

22        A.  Right.  That's what I'm saying.

23        Q.  Okay.  Under 60 is a big number.

24        A.  Yeah.

25        Q.  So do you have any better ballpark?  Are we


                                              204

1     talking zero to ten?  Are we talking ten to 20, 20

2     to 30?  I mean, "under 60" is a lot.

3         A.  Say 20 to 60.

4         Q.  Okay.  Who was the first account that Intus

5     signed?

6             MR. BESHAI:  So this came up in Evan

7     Jackson's deposition, if you recall.  And at the

8     time -- which was November -- this was still an open

9     subject between us about the extent to which we were

10    going to give any discovery about CareHub, the

11    specific technical details, the clientele.

12            Then in December, we had a conversation

13    about it.  You haven't pursued it.  And so we stand

14　on our objection that we put into the RFPs.  We're

15　reiterating them again.  Happen to take it up with a

16　judge or to have another further conversation.  But

17　I think so far, we've shared everything we're

18　willing to about the clientele of CareHub.

19　　　　　　　　MR. LEE:  Okay.  So are you --

20　　　　　　　　MR. BESHAI:  I'm going to instruct --

21　　　　　　　　MR. LEE:  Are you instructing him not to

22　answer?

23　　　　　　　　MR. BESHAI:  Yes.

24　　　　　　　　MR. LEE:  On what basis?

25　　　　　　　　MR. BESHAI:  On the basis that we've

205

1　objected to this as confidential, and we think it's

2　completely outside the scope of the lawsuit.

3　　　　　　　　And, look, here's what I will also say

4　so I'm not unreasonable.  If this is something you

5　pursue and a magistrate judge decides we have to

6　answer, we can make Mr. Rothberg available again by

7　Zoom.  So I'm not, you know, being obstinate or

8　being obstructionist.  But at this time, I'm going

9　to instruct him not to answer.

10　　　Q.  Okay.  What is the pricing model for

11    CareHub?  Is it based upon a per-member, per-month

12    basis or something else?

13            MR. BESHAI:  This falls under the same

14    category.  I'm going to instruct him not to answer.

15    So the specific details of how CareHub works, the

16    pricing model, the clientele, the outreach strategy,

17    we believe those things are outside the scope of

18    this lawsuit.  And we've voiced those objections

19    before.

20            And so we're just reiterating those

21    objections again.  And so, I mean, you can keep

22    asking the questions because maybe there will be a

23    broad general question like the number of clients

24    that I'm okay with Mr. Rothberg answering.  But not

25    that one.


                                                    206


1            MR. LEE:  Okay.

2            MR. BESHAI:  And every objection as to

3    CareHub I'll reiterate what I said before, which is

4    if this gets litigated and there's an order

5    requiring us to answer, we will make him or Evan

6    Jackson or someone available who can answer those

7    questions.

8          MR. LEE:  Okay.  Are you going to follow

9     your counsel's instruction.

10          THE WITNESS:  Yes.

11          MR. LEE:  Okay.

12          (January 18, 2024 e-mail, Exhibit 70,

13     marked)

14     Q.  Mr. Rothberg, you've been handed what has

15     been marked as Exhibit 70.

16     A.  Yeah.

17     Q.  For the record, Exhibit 70 is an e-mail

18     from Robbie Felton to you dated January 18, 2024.

19     Presumably, this is an e-mail you've seen before.

20     A.  Yeah.

21     Q.  Okay.  It says "Can you send me any logs

22     you have regarding Tabula Rasa information blocking,

23     i.e., loss of data access, et cetera, since we

24     signed the contract with them?"  Do you have an

25     understanding as to why you were being asked for

207

1     these logs?

2     A.  I mean, I'm a trusted technical, I mean,

3     coworker and colleague and advisor of Robbie's.  So

4     that's probably why he asked me.

# EXHIBIT "C"

# Deposition Transcript

Case Number: 4:24-cv-01132-JST
Date: November 25, 2025

In the matter of:

# INTUS CARE, INC. v RTZ ASSOCIATES, INC., et al.

# Evan Jackson

**CERTIFIED COPY**

Reported by:
LORI STOKES



Steno
Agency, Inc.

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(888) 707-8366
NV: Firm #108F

```
 1              UNITED STATES DISTRICT COURT

 2         FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3   -------------------------------x

 4   INTUS CARE, INC.,                 :

 5                 Plaintiff,          :   Case No.

 6        vs.                          :   4:24-cv-01132-JST

 7   RTZ ASSOCIATES, INC., and DOES 1 :

 8   through 10,                       :

 9                 Defendants.         :

10   -------------------------------x

11   AND RELATED CROSS-ACTION          :

12   -------------------------------x

13

14          VIDEOTAPED DEPOSITION OF EVAN JACKSON

15               San Francisco, California

16              Tuesday, November 25, 2025

17

18

19

20

21

22   Stenographically Reported by:
     LORI STOKES
23   RPR, CSR No. 12732

24   Job No. 2173676

25   Pages 1-296
```

 1

 2

 3

 4        The Videotaped Deposition of EVAN JACKSON, was

 5   taken on behalf of Defendant/Counter-Claimant RTZ

 6   Associates, Inc., at 50 California Street,

 7   34th Floor, San Francisco, California, beginning at

 8   9:35 a.m., Pacific Time, on November 25, 2025,

 9   before LORI STOKES, RPR, Certified Shorthand

10   Reporter No. 12732.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EVAN JACKSON
NOVEMBER 25, 2025

JOB NO. 2173676

```
              1              San Francisco, California
              2          November 25, 2025 | 9:35 a.m.
              3
09:35:52      4          THE VIDEOGRAPHER:  Good morning, ladies
09:35:53      5  and gentlemen.  We're on video record.  The time is
09:35:57      6  9:36 a.m. on the Pacific Coast.  Today's date is
09:36:02      7  November 25, 2025.
09:36:06      8          This is the beginning of video one,
09:36:08      9  Volume I, in the deposition of Evan Jackson, in the
09:36:13     10  case IntusCare, Incorporated versus RTZ Associates,
09:36:21     11  et al., appearing before the United States District
09:36:23     12  Court, Northern District California, Case Number
09:36:29     13  4:24-cv-01132.
09:36:39     14          We are located today at 50 California
09:36:44     15  Street, San Francisco, California.
09:36:47     16          Would counsel please identify themselves
09:36:50     17  for the record.
09:36:51     18          ATTORNEY LEE:  Good morning.  David Lee on
09:36:51     19  behalf of RTZ.
09:36:54     20          ATTORNEY PENN:  Good morning.  Kasia Penn,
09:36:55     21  also on behalf of RTZ.
09:36:58     22          ATTORNEY BESHAI:  Good morning.  Andrew
09:36:58     23  Beshai on behalf of IntusCare.
09:37:01     24          THE VIDEOGRAPHER:  You may swear in the
09:37:03     25  witness.
```

EVAN JACKSON
NOVEMBER 25, 2025

JOB NO. 2173676

```
09:37:03   1              THE STENOGRAPHER:  My name is Lori Stokes.
09:37:03   2   I am California Certified Shorthand Reporter number
09:37:03   3   12732.
09:37:03   4              Mr. Jackson, would you please raise your
09:37:03   5   right hand.
09:37:03   6
09:37:03   7                      EVAN JACKSON,
09:37:03   8   having been administered an oath, was examined and
09:37:03   9   testified as follows:
09:37:03  10
09:37:03  11                      EXAMINATION
09:37:35  12   BY ATTORNEY LEE:
09:37:35  13       Q    Good morning, Mr. Jackson.
09:37:37  14              I introduced myself off the record, but
09:37:39  15   for the record, my name is David Lee.  I'm one of
09:37:42  16   the lawyers working for RTZ.  Thank you very much
09:37:45  17   for your time today.
09:37:47  18              Can you please state and spell your name
09:37:49  19   for the record.
09:37:50  20       A    Evan Jackson, E-V-A-N, J-A-C-K-S-O-N.
09:37:57  21       Q    Okay.  And Mr. Jackson, have you ever been
09:37:59  22   deposed before?
09:38:00  23       A    No.
09:38:01  24       Q    Well, glad to welcome you to a bigger,
09:38:04  25   better world.
```

```
10:22:27   1   that relationship as partners changed drastically.
10:22:31   2           So I think that's really, you know, what
10:22:33   3   shifted.
10:22:34   4       Q    So a drastic change in behavior --
10:22:36   5       A    Yes.
10:22:36   6       Q    -- in a relationship is what drives, in
10:22:39   7   your mind, the difference between a competitor and a
10:22:42   8   noncompetitor?
10:22:43   9       A    Well, no.  Again, you asked me to narrow
10:22:45  10   it down to a specific instance, and that's what
10:22:49  11   changed the relationship.
10:22:50  12       Q    Okay.
10:23:10  13           Okay.
10:23:10  14           Intus has deployed CareHub, correct?
10:23:15  15       A    Yes.
10:23:16  16       Q    And that's a rollout that started
10:23:17  17   happening in 2025?
10:23:19  18       A    Yes.
10:23:19  19       Q    Okay.
10:23:20  20           Do you view CareHub as being a competitive
10:23:26  21   product to PACEcare?
10:23:28  22       A    Yes.
10:23:31  23       Q    And so would the deployment of CareHub, in
10:23:35  24   your view, alone make RTZ a competitor?
10:23:43  25       A    Yes.
```

01:32:12  1        Q    Okay.  So if Mike Zawadski were to ask you
01:32:19  2   for access to CareHub, would you provide it to him?
01:32:22  3        A    Again, if our clients come to us and say,
01:32:26  4   hey, we have a business associate, and this is how
01:32:29  5   we need support, we would either work to get them
01:32:32  6   that support through another way.  But I mean, it's
01:32:35  7   not our data; it's the client's data.  It's the PACE
01:32:39  8   organization's data.
01:32:40  9        Q    Which I don't think anybody disputes.
01:32:42 10             But the PACE organization doesn't own the
01:32:44 11   software, right?
01:32:47 12        A    Sure.
01:32:48 13        Q    Okay.
01:32:48 14             Have you sold any -- have you licensed
01:32:53 15   CareHub to any outside entities, any PACE
01:32:59 16   facilities?
01:33:02 17        A    Could you --
01:33:03 18        Q    Yeah.  Have you signed up any clients for
01:33:05 19   CareHub?
01:33:06 20        A    Yes.
01:33:07 21        Q    Okay.  Which -- which customers?
01:33:28 22        A    I don't necessarily feel comfortable
01:33:30 23   providing that information.
01:33:32 24        Q    Well, whether you feel comfortable or not,
01:33:34 25   I'm entitled to a response.

01:33:36   1            ATTORNEY BESHAI:  That's his answer.

01:33:37   2            So, I mean, you can move on that.  We can

01:33:40   3   take it before -- there's also an argument that this

01:33:42   4   is outside the scope of -- like who they're

01:33:45   5   contracting with now is outside the scope of the

01:33:48   6   lawsuit, so...

01:33:50   7            ATTORNEY LEE:  Well, I disagree with that.

01:33:52   8   BY ATTORNEY LEE:

01:33:52   9        Q    But are you refusing to answer the

01:33:54  10   question?

01:33:55  11        A    I don't feel comfortable answering the

01:33:56  12   question.

01:33:56  13        Q    Okay.

01:33:56  14            Are you involved in sales of that product?

01:34:00  15        A    Yes.

01:34:01  16        Q    As the Chief Revenue Officer, I assume

01:34:03  17   that you're on the leading edge of that effort,

01:34:06  18   correct?

01:34:06  19        A    I work on it, yes.

01:34:08  20        Q    Yeah.  And does Intus have a license

01:34:12  21   agreement with those PACE partners that sign up for

01:34:16  22   CareHub?

01:34:17  23        A    Yes.

01:34:17  24        Q    And does that license agreement contain

01:34:20  25   confidentiality provisions?

```
 1                        )
       STATE OF CALIFORNIA    )
 2                        )
```

 3                    CERTIFICATE OF REPORTER

 4        I, LORI STOKES, do hereby certify that the

 5   witness in the foregoing deposition was by me duly

 6   affirmed to tell the truth, the whole truth and

 7   nothing but the truth in the within-entitled cause;

 8   that said deposition was taken at the time and place

 9   therein stated; that the testimony of said witness

10   was reported by me and was thereafter transcribed

11   under my direction and supervision; that the

12   foregoing is a full, complete and true record of

13   said testimony; that the witness was given an

14   opportunity to read and, if necessary, correct said

15   deposition and to subscribe the same.

16        I further certify that I am not of counsel or

17   attorney for either or any of the parties in the

18   foregoing deposition and caption named, or in any

19   way interested in the outcome of the cause named in

20   said caption.

21        IN WITNESS WHEREOF, I have hereunto set my hand

22   this 10th day of December, 2025.

23                    *Lori Stokes*

24   _____

25        LORI STOKES, CSR No. 12732

# Exhibit D

NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile:  415.398.2438

NOSSAMAN LLP
KASIA PENN (SBN 306056)
kpenn@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone:  949.833.7800
Facsimile:  949.833.7878

Attorneys for Defendant RTZ ASSOCIATES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA - OAKLAND

| | |
|---|---|
| INTUS CARE, INC.,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>RTZ ASSOCIATES, INC.; and DOES 1 through 10,<br><br>　　　　Defendants, | Case No:　　4:24-cv-01132-JST<br><br>Assigned to: Hon. Jon S. Tigar<br><br>**DEFENDANT RTZ ASSOCIATES, INC.'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
Case No. 3:24-cv-1132-JST
62814660.v2

## ANSWER

Defendant RTZ Associates, Inc. ("Defendant" or "RTZ") hereby answers the First Amended Complaint filed by Plaintiff Intus Care, Inc. ("Plaintiff" or "Intus") in this action on April 2, 2024 (Dkt. No. 25).  The First Amended Complaint is referred to hereafter as the "FAC."  Except as expressly admitted below, Defendant denies each and every allegation and claim for relief set forth in the FAC.

## INTRODUCTION

1.      Defendant admits that it owns, develops and license PACECare software to PACE facilities.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the same.

2.      Defendant denies the allegations in this paragraph.

## PARTIES

3.      Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

4.      Defendant admits the allegations in this paragraph.

5.      Defendant admits the allegations in this paragraph.

6.      This paragraph states a conclusion of law to which no response is required.

## JURISDICTION AND VENUE

7.      This paragraph states a conclusion of law to which no response is required.

8.      This paragraph states a conclusion of law to which no response is required.

## FACTUAL ALLEGATIONS

**A.  Intus Provides Vital Services to Intus Clients**

9.      Defendant admits that the PACE program is a critical and valuable federal program for adult patients.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the same.

10.      Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

- 2 -
ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
Case No. 3:24-cv-1132-JST

62814660.v2

11.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

12.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

13.     Defendant admits that various PACE facilities license PACECare.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the same.

**B.  RTZ denies Intus access to Intus Clients' electronic health data stored on PACECare**

14.     Defendant denies that it consented to Intus "extracting the necessary data" from PACECare between June 2021 and September 2022.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the same.

15.     Defendant admits that it sought an NDA from Intus and that no NDA was executed between the parties.  Except as otherwise admitted, Defendant denies the remaining allegations in this paragraph.

16.     Defendant denies the allegations in this paragraph.

17.     Defendant admits that it transmitted the correspondence attached as Exhibit 1 to the FAC.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the same.

18.     Defendant admits that it is protective of its intellectual property.  Except as otherwise admitted, Defendant denies the remaining allegations in this paragraph.

19.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

20.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
Case No. 3:24-cv-1132-JST

21.     Defendant admits that it transmitted the correspondence attached as Exhibit 2 to the FAC.  Except as otherwise admitted, Defendant denies the remaining allegations in this paragraph.

22.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

23.     Defendant denies the allegations in this paragraph.

**C.  <u>RTZ's conduct constitutes information blocking in violation of the 21st Century Cures Act and the federal information blocking regulations</u>**

24.     This paragraph states a conclusion of law to which no response is required.

25.     This paragraph states a conclusion of law to which no response is required.

26.     Defendant denies the allegations in this paragraph.

27.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

28.     Defendant admits that Intus filed a complaint with the ONC and was provided a copy of said complaint.  Except as otherwise admitted, Defendant denies the remaining allegations in this paragraph.

**D.  <u>RTZ's Contract Provisions Blocking Intus and Letters to Intus Clients Falsely Claiming Contractual Breaches and Intellectual Property Violations</u>**

29.     Defendant admits that its license agreements prohibit PACE facilities from providing third-party access to PACECare, including Intus.  Except as otherwise admitted, Defendant denies the remaining allegations in this paragraph.

30.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

31.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

32.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

62814660.v2

## FIRST CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations)

33.     Defendant realleges and incorporates by reference as though fully set forth herein its responses to each and every allegation set forth in the preceding paragraphs.

34.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

35.     Defendant admits the allegations in this paragraph.

36.     Defendant admits that Intus has entered into contracts with various PACE facilities and that it has communicated with Intus.  Except as otherwise admitted, Defendant denies the remaining allegations in this paragraph.

37.     Defendant denies the allegations in this paragraph.

38.     Defendant denies the allegations in this paragraph.

39.     Defendant denies the allegations in this paragraph.

40.     Defendant denies the allegations in this paragraph.

41.     Defendant denies the allegations in this paragraph.

## SECOND CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage)

42.     Defendant realleges and incorporates by reference as though fully set forth herein its responses to each and every allegation set forth in the preceding paragraphs.

43.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

44.     Defendant denies the allegations in this paragraph.

45.     Defendant denies the allegations in this paragraph.

46.     Defendant denies the allegations in this paragraph.

47.     Defendant denies the allegations in this paragraph.

48.     Defendant denies the allegations in this paragraph.

49.     Defendant denies the allegations in this paragraph.

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
Case No. 3:24-cv-1132-JST

62814660.v2

**THIRD CLAIM FOR RELIEF**

**(Unfair Competition in Violation of California Business & Professions Code § 17200 *et seq.*)**

50.    Defendant realleges and incorporates by reference as though fully set forth herein its responses to each and every allegation set forth in the preceding paragraphs.

51.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

52.    Defendant admits that it owns, develops and license PACECare software to PACE facilities.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the same.

53.    Defendant admits that its license agreements prohibit PACE facilities from providing third-party access to PACECare, including Intus, and that Intus does not have Defendant's consent to access PACECare.  Except as otherwise admitted, Defendant denies the remaining allegations in this paragraph.

54.    Defendant admits that Intus has not had Defendant's consent to access PACECare since "at least September of 2022."  Except as otherwise admitted, Defendant denies the remaining allegations in this paragraph.

55.    Defendant admits that Intus has not had Defendant's consent to access PACECare.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore denies the same.

56.    Defendant denies the allegations in this paragraph.

57.    This paragraph states a conclusion of law to which no response is required.

58.    Defendant denies the allegations in this paragraph.

59.    Defendant denies the allegations in this paragraph.

60.    Defendant admits the allegations in this paragraph.

61.    Defendant denies the allegations in this paragraph.

62.    Defendant denies the allegations in this paragraph.

63.    Defendant denies the allegations in this paragraph.

62814660.v2

64.    Defendant denies the allegations in this paragraph.

65.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore denies the same.

66.    Defendant denies the allegations in this paragraph.

67.    Defendant denies the allegations in this paragraph.

68.    Defendant denies the allegations in this paragraph.

69.    Defendant denies the allegations in this paragraph.

70.    Defendant denies the allegations in this paragraph.

71.    Defendant admits that it and Intus have communicated.  Except as otherwise admitted, Defendant denies the remaining allegations in this paragraph.

72.    Defendant denies the allegations in this paragraph.

## AFFIRMATIVE DEFENSES

Defendant sets forth its defenses and affirmative defenses.  Each defense and affirmative defense is asserted as to all causes of action against it.  By setting forth these defenses and affirmative defenses, Defendant does not assume the burden of proving any fact, issue, or element of a claim where such burden properly belongs to Intus.  Defendant also reserves the right to allege additional defenses and affirmative defenses as they become known or as they evolve during litigation, and to bring additional counterclaims if so appropriate.

## FIRST AFFIRMATIVE DEFENSE

Intus fails to state a claim and/or sufficient facts upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Intus's claims are barred, in whole or in part, by the doctrines of waiver, acquiescence, estoppel and/or consent.

## THIRD AFFIRMATIVE DEFENSE

Intus's claims are frivolous and brought for an improper purpose.

## FOURTH AFFIRMATIVE DEFENSE

Intus's claims are barred by the doctrine of unclean hands.

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
Case No. 3:24-cv-1132-JST

62814660.v2

1

**FIFTH AFFIRMATIVE DEFENSE**

2      Intus's purported counts are barred or otherwise limited to the extent that it has failed to

3   mitigate or avoid the purported damages alleged.

4

**SIXTH AFFIRMATIVE DEFENSE**

5      Intus's claims are barred, in whole or in part, by the doctrine of competition privilege.

6

**SEVENTH AFFIRMATIVE DEFENSE**

7      One or more of Intus's claims are barred by the applicable statutes of limitations and/or

8   the equitable doctrine of laches.

9

**EIGHTH AFFIRMATIVE DEFENSE**

10     Defendant has insufficient knowledge or information upon which to form a belief about

11  whether there may be as yet unstated affirmative defenses available, and therefore expressly (i)

12  reserve the right to supplement its Answer, defenses and all other pleadings; and (ii) reserves the

13  right to (a) assert any and all defenses under any applicable law if discovery shows that such

14  defenses would be appropriate, and (b) assert any further counterclaims, cross-claims, and third-

15  party claims when and if they become appropriate in this action.

16

17

**PRAYER FOR RELIEF**

18     WHEREFORE, Defendant RTZ prays for judgment as follows:

19     1.  Dismissal of the entire FAC with prejudice;

20     2.  Granting Defendant RTZ its reasonable costs, expenses, and attorney's fees; and

21     3.  Awarding Defendant RTZ such other and further relief as this Court deems equitable

22         and proper.

23

24

**COUNTERCLAIMS**

25     Defendant and Counterclaimant RTZ ("RTZ") hereby asserts counterclaims against

26  Plaintiff and Counterdefendant Intus Care, Inc. ("Intus"), as alleged below.

27

28

- 8 -
ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
Case No. 3:24-cv-1132-JST

62814660.v2

1.      RTZ developed and exclusively owns the PACECare software system. PACECare is a cloud-based administrative software solution that is licensed to PACE facilities throughout the United States.

2.      Licensees of PACECare (i.e., PACE facilities) use the system as an administrative tool to maintain and organize operations, manage finances, and track key PACE participant data ("PACE Data") that is input into and managed by the software solution.

3.      PACECare is a proprietary and confidential system. Access to PACECare is restricted only to specific authorized users approved by RTZ. Each such authorized user is issued unique log-in credentials. Only users with such authorized credentials are permitted access to the system.

4.      Data input into and stored within the PACECare system is organized and maintained by RTZ through its cloud-based storage consisting of numerous servers. The PACE facility licensees (via their authorized users) access the PACECare system using an internet connection in combination with a web browser. PACECare users, once connected to the cloud-based system, have access to the software's operations, functionality, and stored data.

5.      RTZ licenses its software system to PACE facilities via a PACECare Agreement which permits the contracting PACE facility to access and use the PACECare product. That Agreement specifically provides that RTZ is the exclusive owner of all aspects of the PACECare system, including but not limited to the source code, system logic and functionality, screen layout and design, and associated reports, forms and documents.

6.      The PACECare Agreement acknowledges that the licensed PACE facilities own the data and information which they enter into the PACECare system. However, the PACECare Agreement expressly prohibits PACE facilities from providing system access to PACECare to any third-party without RTZ's consent, particularly as to competitors. This is due to the proprietary nature of the PACECare system, including its industry-leading logic, functionality, interfaces, and data presentation features. Therefore, while a PACE facility is free to use and

provide its inter-data to others as needed, it cannot grant a third-party (i.e., such as Intus) access to PACECare to retrieve such data without RTZ's express consent.

7.     To the extent a third-party seeks access to PACECare, RTZ has historically required the execution of its standard nondisclosure agreement ("NDA") to do so.

8.     Intus introduced itself to RTZ on March 15, 2022 when its CEO, Robbie Felton, sent an introductory email to RTZ's CEO, Michael Zawadski.

9.     On information and belief, Intus is a company that provides data visualization software to PACE programs, and specifically ingests data aggregated in electronic medical record ("EMR") software programs, such as PACECare, to create informational dashboards for PACE facilities.  Intus is not a medical provider.  Nor is it licensed to dispense medical advice.

10.     Intus is a competitor to RTZ.  On information and belief, Intus is in the process of developing and/or has commenced development of an EMR software product that will compete with RTZ's PACECare product.

11.     Intus has never been an authorized user of RTZ's PACECare product, and Intus has never been issued log-in credentials to access the PACECare system.

12.     In or around August 2022, RTZ learned that Intus had wrongfully accessed RTZ's PACECare system without RTZ's consent.

13.     On information and belief, Intus engaged in surreptitious means to access PACECare, including but not limited to, utilizing without RTZ's authorization the log-in credentials of its PACE facility customers.  By wrongfully using such log-in credentials, Intus was able to mask its access to the PACECare system by posing as an authorized user of the system.

14.     As a result of Intus's unauthorized access to PACECare, RTZ was forced to incur costs and resources to investigate, monitor and address PACECare access activities.  It further dedicated time and labor to conducting such investigations and taking measures to prevent unauthorized access by Intus.

15. By wrongfully using the log-in credentials of authorized users to access PACECare, Intus's access resulted in more users of the system than were authorized and licensed. Such extraneous use therefore increased usage of the entire system invariably resulting in system strain and impacting system efficiency.

16. In the process of investigating Intus's unauthorized access to PACECare, RTZ discovered that Intus had created or caused to be created unique log-in credentials through its PACE facility customer's PACECare accounts. RTZ was forced to dedicate time and resources to addressing and invalidating such improper log-in credentials.

17. Upon discovering Intus's unauthorized access to PACECare, RTZ communicated with Intus directly and informed it that an NDA was required to access PACECare. RTZ presented its standard NDA to Intus in August 2022.

18. Intus never executed RTZ's proposed NDA. In fact, Intus never executed any NDA with respect to any access to PACECare.

19. Instead, on September 13, 2022, Intus presented an entirely different "Access Agreement" to RTZ for its consideration.

20. Intus's Access Agreement proposed a 3-year initial term, with automatic renewing 1-year terms. It further would have permitted termination only based on incurable "material[] breaches." It further would have provided that even if the Access Agreement was terminated, Intus would "have and retain the right and license to use and access PACECare for as long as required to meet and pre-existing contractual obligations of Intus Care that are dependent upon Intus Care access to PACECare." Such terms were unacceptable to RTZ. The proposed Access Agreement contained other terms and conditions that RTZ likewise found unacceptable under the circumstances.

21. RTZ rejected Intus's proposed Access Agreement.

22. On September 14, 2022, and with no NDA in place, RTZ transmitted a letter to Intus demanding that it cease and desist from any unauthorized access to PACECare. (See Exhibit 1 to Intus's Amended Complaint, Doc. #25.)

23.     On September 28, 2022, RTZ sent a follow-up letter to Intus further demanding that Intus cease and desist from disparaging RTZ in communications with the parties' mutual customers.  (See Exhibit 1 to Intus's Amended Complaint, Doc. #25.)  Discussions between the parties ensued.

24.     On October 13, 2022, Intus presented a proposed Data License Agreement to RTZ.  Among other problematic provisions, the proposed agreement would have required RTZ to develop and to integrate a "Launch Intus Care" button directly into its PACECare system – a system upgrade and requirement that RTZ was simply unwilling to accept.  Again, discussions between the parties ensued.  From October through March 2023, the parties continued to negotiate for an agreeable form of NDA that would have permitted Intus to access PACECare.  No NDA was executed, because the parties failed to reach an agreement.

25.     Beginning in or around June 2023, the nature of the discussions changed.  Rather than seeking an NDA (or access to PACECare), Intus instead focused its attention on a potential acquisition of RTZ.  Although the parties explored such a transaction, no agreement was ever reached.  Communications between the parties ceased in or around August 2023.

26.     Since August 2023, RTZ has discovered significant wrongdoing by Intus.  In addition to wrongfully using the log-in credentials of its PACE facility customers to secretly access PACECare without authorization, RTZ also discovered that Intus made false and misleading statements to PACE facilities in an effort to gain access to PACECare without RTZ's knowledge or consent.

27.     Specifically, on or around February 14, 2024, Intus falsely represented to at least one PACE facility (Community PACE) that Intus was within the "corporate umbrella" of Tabula Rasa Health Care ("TRHC"), a competitor to RTZ.  Notwithstanding its status as a competitor, RTZ had previously entered into various NDAs with TRHC given that both companies provided select services to common PACE facility customers.  By virtue of its NDAs with RTZ, TRHC had rights to access the PACECare systems licensed to certain PACE facilities.

62814660.v2

28.     On information and belief, in or around February 2024, Intus falsely represented to Community PACE that because Intus was within TRHC's corporate umbrella, it therefore enjoyed the same PACECare access rights as TRHC as permitted by the NDA between TRHC and RTZ.

29.     In fact, Intus is not and never has been within the corporate umbrella of TRHC. Its statements to the contrary were false.  Nonetheless, Intus made such misrepresentations to at least one PACE facility in an effort to circumvent RTZ's NDA requirements to access PACECare.

30.     RTZ has also learned that in further efforts to access PACECare without RTZ's consent or knowledge, Intus amended at least some of its contracts with its PACE facility customers that are licensed PACECare users to include a Data Integration Addendum ("Addendum").  That Addendum purported to authorize the downloading of electronic health records from the PACE facility's PACECare system through use of an "automated data integration process."  The Addendum – apparently drafted by Intus – included a purported representation and warranty by the PACE facility that it had the "authority, ability, and right to use an automated script by and through its log-in credentials solely to download the EHR Data from [its PACECare system] and that its use of the automated script and/or such use and/or access of the [PACECare system] and/or EHR Data is by its election and does not violate and/or breach any state law, statute, regulation, rule, contract and/or agreement to which the Client is subject and/or a party."  (See Exhibit 1 (Data Integration Addendum) attached hereto.)

31.     On information and belief, Intus required those PACE facility customers using PACECare to execute the Addendum.  This requirement was imposed despite the fact that those PACE facilities licensing PACECare were contractually prohibited from providing account credentials or other forms of access to PACECare to any third-party, including Intus.

32.     Intus never informed RTZ about its Addendum.

33.     Moreover, Intus had actual knowledge that common PACE facility customers of RTZ and Intus in fact had no "authority, ability, and right to use an automated script by and

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
62814660.v2

1  through its log-in credentials solely to download the EHR Data from [its PACECare system] and

2  that its use of the automated script and/or such use and/or access of the [PACECare system]

3  and/or EHR Data is by its election and does not violate and/or breach any state law, statute,

4  regulation, rule, contract and/or agreement to which the Client is subject and/or a party" as set

5  forth in the Addendum.

6        34.    On information and belief, Intus first developed the Addendum and started

7  requiring its execution after RTZ had specifically withheld its consent to granting Intus access to

8  PACECare absent an executed NDA.  Accordingly, Intus's development of its automated script

9  referenced in the Addendum (the "Script")– which preceded the use of the Addendum – occurred

10  after Intus had been specifically told by RTZ that it was not authorized to access PACECare.

11        35.    Intus never sought RTZ's consent to access PACECare for purposes of

12  developing the Script.

13        36.    Intus never received RTZ's consent to access PACECare for purposes of

14  developing the Script.

15        37.    Intus developed the Script without the knowledge of RTZ.

16        38.    Intus developed the Script without the consent of RTZ.

17        39.    Intus's development of the Script was dependent on Intus's access to PACECare.

18        40.    Intus's Script has been installed and/or implemented for at least one PACE

19  facility that licenses PACECare, without RTZ's consent or authorization.

20        41.    Upon information and belief, Intus's Script has been installed and/or implemented

21  for more than one PACE facility that licenses PACECare, all without RTZ's consent or

22  authorization.

23        42.    On information and belief, the Script improperly utilizes the PACECare log-in

24  credentials of one or more authorized users of the PACE facility licensed to use PACECare.

25  Such log-in credentials are required for the Script to access and extract the PACE Data stored in

26  PACECare.  Intus is not and has never been a licensed user of PACECare.  It further has never

27  obtained its own authorized log-in credentials to access PACECare.

28

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
Case No. 3:24-cv-1132-JST
62814660.v2

43.     Intus developed the Script to access PACECare without RTZ's knowledge and consent.

44.     Using the Script, Intus has repeatedly and wrongfully accessed PACECare to download PACE Data from PACECare from multiple PACE facility customers who were licensed to use PACECare.

45.     On information and belief, because Intus is in the process of developing and/or has commenced development of its own EMR system, it has engaged in the unauthorized access of competing EMR systems, including PACECare, to unfairly and improperly obtain competitive intelligence.  Specifically, through its unauthorized access of PACECare, Intus achieved two goals: (i) it can extract PACE Data to fulfill its data synthesis/dashboard services to common PACE facility customers; and (ii) it exploits such access to view and assess the PACECare system to accelerate its own EMR system research and development efforts.  By accessing PACECare without authorization, Intus exploited the wrongful access to investigate and learn about the functionality, operability, layout, interfaces, data presentation and report-generating capabilities of the PACECare system.  In so doing, Intus used such unauthorized access to expedite and refine its own development of a competing EMR system.

46.     Intus's exploitive and improper access to competing EMR systems is an apparent pattern.  On information and belief, Intus has developed automated scripts to run on multiple EMR systems resulting in system strain which inhibits practitioners' use of the PACE tools and/or increases costs, including but not limited to, hosting fees.

47.     Intus has therefore used unfair and improper practices in its efforts to develop a competing EMR system, including but not limited to, falsely representing its corporate affiliation to customers in an effort to surreptitiously access PACECare, repeatedly accessing PACECare without RTZ's authorization or consent through the use of unauthorized log-in credentials, and covertly developing an automated script and installing it to access data on the PACECare system without the knowledge or consent of RTZ.

/ / /

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
Case No. 3:24-cv-1132-JST
62814660.v2

# FIRST CLAIM FOR RELIEF

## (Violation of the California Computer Data Access and Fraud Act (Cal. Pen. Code § 502))

48.     RTZ realleges and incorporates by reference as though fully set forth herein each and every allegation set forth in the preceding paragraphs.

49.     California Penal Code section 502 (the California Computer Data Access and Fraud Act or "CDAFA") provides, "[f]or purposes of bringing a civil or criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction."

50.     Section 502(e) permits a civil claim for compensatory damages, injunctive relief, or other equitable relief to the "owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation" of the CDAFA.

51.     RTZ's PACECare system is a "Computer System" as defined within section 502 (a)(5) of the CDAFA.

52.     RTZ is the owner and/or lessee of the PACECare cloud-based storage computer system consisting of numerous servers.

53.     Intus knowingly accessed RTZ's PACECare system without authorization to obtain and use valuable data stored within PACECare.  Intus did so by intentionally and fraudulently utilizing the log-in credentials of authorized users to access PACECare, extract data by virtue of that illicit access, and then use such data for purposes of providing charged services to its PACE facility customers.  Moreover, through its unauthorized accesses to PACECare, Intus used such unauthorized accesses to mine other valuable data from the PACECare system (specifically, the functionality, operability, layout, interfaces, data presentation and report-generating capabilities), to expedite and refine its own development of a competing EMR system.

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

Case No. 3:24-cv-1132-JST

62814660.v2

54.     Intus further covertly developed an automated script to access PACECare and the data stored on RTZ's protected computers without RTZ's knowledge or consent.  Intus never informed RTZ that it was developing and installing the automated script.  On information and belief, Intus developed its automated script despite having knowledge of RTZ's refusal to permit Intus access to PACECare without an executed NDA.  On information and belief, Intus's automated script fraudulently utilizes the log-in credentials of Intus's PACE facility customers thereby masking Intus's access to PACECare to avoid detection by RTZ.

55.     Intus's conduct violates Section 502, including but not limited to sections (c)(1), (c)(2), (c)(3) and (c)(7) which makes it unlawful to knowingly and without permission: (i) use a computer system to wrongfully obtain data; (ii) make use of data from a computer system; (iii) use computer services (as defined in Section 502(a)(4)); and (iv) access a computer system.

56.     As a direct and proximate result of the violations of Section 502, Intus has unjustly profited from the data extracted from PACECare.  In addition, RTZ has suffered damage or loss in an amount to be proven at trial, including but not limited to, strain and load on RTZ's computer system and costs and resources to investigate, monitor and address PACECare access activities.  With regard to such violations, RTZ is also entitled to injunctive and other equitable relief pursuant to Section 502(e)(1).

57.     Intus's conduct was willful and manifests oppression, fraud and malice.  As a result, RTZ is entitled to exemplary damages pursuant to section 502(e)(4) of the California Penal Code and section 3294 of the California Civil Code.

## SECOND CLAIM FOR RELIEF
### (Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030))

58.     RTZ realleges and incorporates by reference as though fully set forth herein each and every allegation set forth in the preceding paragraphs.

59.     The federal Computer Fraud and Abuse Act ("CFAA") authorizes a private cause of action against defendants who "knowingly and with intent to defraud accesse[d] a protected computer without authorization, or exceed[ed] authorized access, and by means of such conduct further[ed] the intended fraud and obtain[ed] anything of value…"  (18 U.S.C. § 1030(a)(4).)

60.     The CFAA further establishes liability where a defendant "intentionally access[ed] a protected computer without authorization, and as a result of such conduct, cause[d] damage and loss."  (18 U.S.C. § 1030(a)(5)(C).)

61.     The PACECare cloud-based system, including the servers owned and/or leased by RTZ to store and organize the inputted confidential PACE Data, are "protected computer[s]" within the scope of 18 U.S.C. § 1030(e)(2) in that RTZ uses them in interstate commerce and communications, including the Internet.

62.     Intus knowingly and with intent to defraud accessed RTZ's PACECare system without authorization to obtain and use valuable data stored within PACECare.  Intus did so by intentionally and fraudulently utilizing the log-in credentials of authorized users to access PACECare, extract data by virtue of that illicit access, and then use such data for purposes of providing charged services to its PACE facility customers.  Moreover, Intus used such unauthorized accesses to PACECare to mine other valuable data from the PACECare system (specifically, the functionality, operability, layout, interfaces, data presentation and report-generating capabilities), to expedite and refine its own development of a competing EMR system.

63.     Intus further covertly developed an automated script to access PACECare and the data stored on RTZ's protected computers without RTZ's knowledge or consent.  Intus never informed RTZ that it was developing and installing the automated script.  On information and belief, Intus developed its automated script despite having knowledge of RTZ's refusal to permit Intus access to PACECare without an executed NDA.  On information and belief, Intus's automated script fraudulently utilizes the log-in credentials of Intus's PACE facility customers thereby masking Intus's access to PACECare to avoid detection by RTZ.

64.     On information and belief, Intus further made material misrepresentations to its PACE facility customers to improperly gain access to PACECare.  Specifically, on or around February 14, 2024, RTZ was informed that Intus falsely represented to Community PACE (a common PACE facility customer of RTZ and Intus) that it was part of the "corporate umbrella"

1    of TRHC, and thus was entitled to the same PACECare access granted to TRHC by RTZ (via an

2    executed NDA). On information and belief, Intus is not and never has been within TRHC's

3    corporate umbrella. Accordingly, its statements to Community PACE were false and intended to

4    fraudulently gain access to PACECare.

5         65.    By virtue of its conduct as alleged herein, Intus also intentionally accessed

6    RTZ's protected computer without authorization in violation of 18 U.S.C. §

7    1030(a)(5)(C).

8         66.    By this unauthorized and intentional conduct in violation of 18 U.S.C. § 1030,

9    Intus has obtained something of value (i.e., PACE Data and PACECare logic, layout and

10   functionality information) and/or proximately caused damages and loss to RTZ in

11   excess of $5,000 in a one-year period.

12        67.    Pursuant to 18 U.S.C. § 1030(g), RTZ is entitled to compensatory damages

13   and injunctive, declaratory and/or other equitable relief.

### THIRD CLAIM FOR RELIEF
#### (Trespass to Chattels)

16        68.    RTZ realleges and incorporates by reference as though fully set forth herein each

17   and every allegation set forth in the preceding paragraphs.

18        69.    It is a violation of California's common law cause of action for trespass to chattels

19   when a "(1) defendant intentionally and without authorization interfered with plaintiff's

20   possessory interest in the computer system; and (2) defendant's unauthorized use proximately

21   resulted in damage to plaintiff." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069-

22   70 (N.D. Cal. 2000). "Damage" includes when the trespass has impaired the condition, quality,

23   usefulness, or value of the personal property.

24        70.    Intus impaired the condition, quality, usefulness, and value of RTZ's personal

25   property by wrongfully accessing and extracting data from PACECare, as set forth above.

26        71.    Intus acted intentionally by deliberately accessing and extracting data from

27   PACECare, despite having prior knowledge that it was not authorized to do so. At no point did

28   RTZ ever authorize Intus to access PACECare and/or extract the data therein, and Intus resorted

to deception in order to bypass RTZ's password protections and wrongfully gain access to PACECare and perform data extractions.

72.     RTZ has suffered actual damages as a result of Intus's trespass to chattels in an amount to be determined at trial.  RTZ seeks compensatory damages, as well as injunctive, declaratory and/or other equitable relief.

73.     Intus's conduct was willful and manifests oppressions, fraud and malice.  As a result, RTZ is entitled to exemplary damages pursuant to section 3294 of the California Civil Code.

## FOURTH CLAIM FOR RELIEF
### (Unfair Competition in Violation of California Business & Professions Code § 17200 *et seq.*)

74.     RTZ realleges and incorporates by reference as though fully set forth herein each and every allegation set forth in the preceding paragraphs.

75.     California Business & Professions Code section 17200, *et seq.*, prohibits acts of unfair competition, including unlawful, unfair and fraudulent business acts and practices.

76.     As alleged herein, Intus's conduct violates the CFAA, the CDAFA, and also constitutes trespass to chattels.  Moreover, as alleged herein, Intus made false representations of fact concerning its corporate affiliations as a means to wrongfully obtain access to PACECare.

77.     Intus further improperly and unfairly developed and used an automated script to access PACECare and the data stored on RTZ's protected computers without RTZ's knowledge or consent.

78.     On information and belief, Intus further used its unauthorized access to PACECare to improperly accelerate its own research and development of a competing EMR system.

79.     Intus's conduct, as alleged herein, therefore violates the rights of RTZ and constitutes unlawful, unfair and/or fraudulent business practices within the meaning of Cal. Bus. & Prof. Code sections 17200, *et seq.*

80.     As a direct and proximate result of its conduct, Intus has caused damages to RTZ for which restitution is required, and RTZ is also entitled to declaratory, injunctive and/or other equitable relief.

### FOURTH CLAIM FOR RELIEF
### (Inducing Breach of Contract)

81.     RTZ realleges and incorporates by reference as though fully set forth herein each and every allegation set forth in the preceding paragraphs.

82.     RTZ entered into valid PACECare Agreements with PACE facilities that contained access limitation provisions that expressly prohibit PACE facilities from providing account credentials or other forms of system access to PACECare to any third-party without RTZ's consent.

83.     On information and belief, Intus had knowledge of those PACECare Agreements.

84.     On information and belief, Intus has intentionally induced PACE facility customers to breach their PACECare Agreements by sharing their log-in credentials to PACECare with Intus.

85.     PACE facility customers breached their PACECare Agreements with RTZ by providing Intus with their log-in credentials to access PACECare.

86.     RTZ has never consented to Intus accessing PACECare by using log-in credentials of PACE facility customers.

87.     On information and belief, Intus used PACE facility customers' log-in credentials to secretly gain access to PACECare.

88.     As a direct and proximate result, RTZ has suffered and will continue to suffer damages and harm.

89.     RTZ is entitled to compensatory damages, injunctive relief, declaratory relief, and/or other equitable relief.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaimant RTZ prays for judgment as follows:

4.   Judgment in RTZ's favor;

- 21 -

5. Actual and consequential damages to be proven at trial;

6. Punitive damages;

7. Restitution and unjust enrichment against RTZ;

8. For declaratory, injunctive and equitable relief as appropriate, including an injunction barring Intus's continued unauthorized access to RTZ's PACECare system, including through its use of the automated script;

9. Dismissal of Intus's claims with prejudice;

10. Costs of suit herein, including reasonable attorney's fees;

11. Pre- and post-judgment interest;

12. An award of any such other and further relief as this Court deems equitable and proper.

Dated: June 20, 2024            NOSSAMAN LLP

By: /s/ David C. Lee
                              David C. Lee
                              Kasia Penn

Attorneys for Defendant RTZ ASSOCIATES, INC.

62814660.v2

1

## JURY DEMAND

2      Counterclaimant RTZ demands a trial by jury on all issues presented in its Counterclaims

3    that are properly triable by jury.

4

5    Dated:  June 20, 2024                    NOSSAMAN LLP

6

7                                            By:  /s/ David C. Lee
                                                 David C. Lee
8                                                Kasia Penn
                                             Attorneys for Defendant RTZ ASSOCIATES, INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
Case No. 3:24-cv-1132-JST

62814660.v2

# Exhibit E

```
 1

 2

 3

 4          *** UNCERTIFIED DRAFT COPY - DO NOT CITE ***

 5

 6

 7                  ROUGH DRAFT TESTIMONY OF

 8                     MELANIE MARTINEZ

 9                  TAKEN ON MARCH 6, 2026

10

11      ••••••••••••••••••••••••••••••••••••••••

12

13      NOTICE: THESE DRAFT PAGE/LINE NUMBERS WILL

14             NOT MATCH THE FINAL TRANSCRIPT.

15

16      DO NOT PREPARE VIDEO CUTS OR TRIAL CITES

17                FROM THIS DRAFT VERSION.

18

19  IF YOU NEED AN EXPEDITED FINAL CERTIFIED TRANSCRIPT,

20             PLEASE CONTACT THE COURT REPORTER.

21

22
```

23

24

25

1

 1                    MELANIE MARTINEZ,

 2              having been sworn, was examined

 3                 and testified as follows:

 4

 5                      EXAMINATION

 6  BY MR. BESHAI:

 7       Q.   Good morning, Ms. Martinez.

 8       A.   Hello.

 9       Q.   Where are you based today?

10       A.   California.

11       Q.   And are you at home, in an office?

12       A.   I'm at home, and my office.

13       Q.   Is there anyone else with you in the room?

14       A.   No.

15       Q.   Have you ever had your deposition taken

16  before?

17       A.   No.

18       Q.   Well, let me go through some initial advisory

19  points and then we'll jump in.

18      Q.   Which one are you thinking of?

19      A.   There was a Peak script that would run and

20  send authorization files once a week to Peak. Xx

21      Q.   What are authorization files?

22      A.   It would have been authorized services that

23  the client had put in the system that needed to go to

24  their TPA.

25      Q.   Okay.  And the what is a TPA?

31

1       A.   A third party administrator for processing

2   claims.

3       Q.   Who was their TPA?

4       A.   Peak is the TPA.

5       Q.   So Peak is not the P.A.C.E. entity?

6       A.   No.  Many P.A.C.E. entities used Peak at the

7   time

8       Q.   And was there a way to tell when the automated

9   script was the user as opposed to a human user?

10          MR. LEE:  Objection.  Vague and ambiguous.

11  You can answer if you understand.

12          THE WITNESS:  I don't understand.

13  BY MR. BESHAI:

14      Q.   Do you know what an audit trail is?

15    A.   Yes.

16    Q.   Can you, in your own words, explain what it

17 is?

18    A.   It's a history of what happened in whatever

19 situation you're talking about.

20    Q.   Was there an audit trail for access to

21 PACECare?

22         MR. LEE:  Objection.  Vague and ambiguous.

23         Are you referring to -- in connection with the

24 Peak apt mated script?

25         MR. BESHAI:  No, in general.  In general.

32

1    Q.   Did RTZ maintain or have audit trails showing

2 access to PACECare, regardless of entity?

3    A.   Yes, there was an audit log that would have

4 shown who logged in.

5    Q.   Have you ever seen that log before?

6    A.   Yes.

7    Q.   I'm going to ask you some questions about what

8 the log might have shown.

9         You said it showed who logged in?

10    A.   Yes.

11      Q.   And when you say who, would it show you a

12   username, would it show you an email address?   What

13   would it show for the who?

14      A.   I believe username.   Actually, no, not

15   username.   I apologize.   Like actual name, first and

16   last name.

17      Q.   Okay.   Was that different, like, if I were to

18   create a username it wouldn't be Andrew Beshai, would I

19   just come up my own name?   How did username differ from

20   the human names?

21      A.   User names were created manually when the

22   accounts were created.

23      Q.   So the audit log would show who accessed.

24   Would it show the time of access?

25      A.   I believe so, yes.

33

1      Q.   Would it show the duration of how long that

2   user spent in the system?

3      A.   YOFRJTS if it showed log out time, so I don't

4   know.

5      Q.   Would it show where within PACECare the user

6   navigated and clicked?

7      A.   Some of the areas, yes.

8      Q.   Can you explain what you mean by some of the

9   areas?

10      A.   It wasn't like a fully built out audit trail.

11   It didn't show you every click in every area.

12      Q.   Okay.  Which areas would it not show you?

13      A.   I can't remember.  That's too long ago.

14      Q.   Do you recall if there was some methodology

15   of, like, here are the areas that we're going to have it

16   show and here are the areas we're not going of to it

17   show?

18      A.   No, I don't think any of that was purposes

19   full.  I think it was just a lack of full coding in that

20   area because nobody really used it.

21      Q.   Nobody really used the audit log?

22      A.   Not on a regular basis, like the rest of the

23   system, where we're focused on what users are going to

24   see the most.

25      Q.   Can users see the audit log or is that just

34

1   what RTZ would see?

2      A.   It was permission based, so if they had

3   permission, yes, users could access it.

22   across Intus access, and I think you mentioned this

23   could have happened in a few way:  One, you spot an

24   Intus domain name, or, two, on a call you learn from

25   staff at a P.A.C.E. entity that Intus users are in the

87

1   system, right?  Those are kind of the two ways you

2   described?

3       A.   Yes.

4       Q.   When you do learn of Intus access and you are

5   then required to deactivate Intus access, what does that

6   process look like?

7       A.   I would have just told whoever my supervisor

8   was, and that's really the extent of how I was involved.

9       Q.   Who does the actual deactiviation?

10       A.   I'm not sure.

11       Q.   Okay.  I'm just going through my notes here.

12   Give me a moment.

13            Are you aware of whether there's ever been

14   increased hosting fees attributed to Intus?

15       A.   I'm not aware of anything related to that.

16       Q.   Okay.  Are you aware of any intellectual

17   property that Intus improperly took from PACECare?

18       A.   I am not aware of anything.

19      Q.   Have you ever had a conversation with anybody

20   about Intus improperly taking intellectual property from

21   PACECare?

22        A.   No.

23      Q.   At some point when Intus had its access

24   blocked and while the NDA negotiations were ongoing, is

25   it your understanding that P.A.C.E. entities would just

88

1   manually create these exports and send them to Intus?

2        A.   Yes.

3        Q.   Okay.  And are you aware of how much longer it

4   would take for someone from Intus -- sorry, from

5   somebody from the P.A.C.E. entities to do this manual

6   process versus having Intus access the system and do it

7   themselves?

8        A.   It shouldn't take any difference in time.  It

9   would be the same reports, I would think.

10        Q.   Are you aware of how much longer it would

11   would take to have a human being do it versus having an

12   automated script do it?

13        A.   I'm not aware, but I can imagine there would

14   be a significant time difference.

# Exhibit F

1               **UNCERTIFIED ROUGH DRAFT**

2               THIS DRAFT IS UNEDITED AND UNCERTIFIED AND

3    MAY CONTAIN UNTRANSLATED STENOGRAPHIC SYMBOLS, AN

4    OCCASIONAL REPORTER'S NOTE, A MISSPELLED PROPER NAME

5    AND/OR NONSENSICAL WORD COMBINATIONS.

6               THIS IS AN UNEDITED VERSION OF THE

7    DEPOSITION TRANSCRIPT AND SHOULD NOT BE USED IN

8    PLACE OF A CERTIFIED COPY.  THIS DOCUMENT SHOULD NOT

9    BE DUPLICATED OR SOLD TO OTHER PERSONS OR

10   BUSINESSES.  THIS DOCUMENT IS NOT TO BE RELIED UPON

11   IN WHOLE OR IN PART AS THE OFFICIAL TRANSCRIPT.

12   THIS UNCERTIFIED ROUGH DRAFT VERSION HAS NOT BEEN

13   REVIEWED OR EDITED BY THE CERTIFIED SHORTHAND

14   REPORTER FOR ACCURACY.  THIS UNEDITED TRANSCRIPT IS

15   COMPUTER GENERATED AND RANDOM TRANSLATIONS BY THE

16   COMPUTER MAY BE ERRONEOUS OR DIFFERENT THAN THAT

17   WHICH WILL APPEAR ON THE FINAL CERTIFIED TRANSCRIPT.

18               DUE TO THE NEED TO CORRECT ENTRIES PRIOR

19   TO CERTIFICATION, THE USE OF THIS DRAFT IS ONLY FOR

20   THE PURPOSE OF AUGMENTING COUNSEL'S NOTES AND CANNOT

21   BE USED TO CITE IN ANY COURT PROCEEDING OR BE

22   DISTRIBUTED TO ANY OTHER PARTIES.

23               ACCEPTANCE OF THIS DRAFT IS AN AUTOMATIC

24   FINAL COPY ORDER.

09:19:11 25               THE VIDEOGRAPHER:  GOOD MORNING.  WE ARE

Rough Draft -

1

⬆ 09:47:36  1   GOING ON THE RECORD AT 9:47 A.M. ON FEBRUARY 23RD,

2   2026.

3            PLEASE NOTE THAT MICROPHONES ARE SENSITIVE

4   AND MAY PICK UP WHISPERING AND PRIVATE

09:47:49  5   CONVERSATIONS.  PLEASE MUTE YOUR PHONES AT THIS

6   TIME.  AUDIO AND VIDEO RECORDING WILL CONTINUE TO

7   TAKE PLACE, UNLESS ALL PARTIES AGREE TO GO OFF THE

8   RECORD.

9            THIS IS MEDIA NO. ONE OF THE

09:48:00 10   VIDEO-RECORDED DEPOSITION OF MICHAEL ZAWADSKI, TAKEN

11   BY COUNSEL FOR PLAINTIFF IN THE MATTER INTUSCARE

12   INCORPORATED VERSUS RTZ ASSOCIATES, INCORPORATED,

13   FILED IN THE UNITED STATES DISTRICT COURT, NORTHERN

14   DISTRICT OF CALIFORNIA, CASE NO. 424CV1132JST.

09:48:27 15            MY NAME IS PETER YAROSCHUK, REPRESENTING

16   VERITEXT.  I AM THE VIDEOGRAPHER.  I AM NOT RELATED

17   TO ANY PARTY IN THIS ACTION, NOR AM I FINANCIALLY

18   INTERESTED IN THE OUTCOME.

19            IF THERE ARE ANY OBJECTIONS TO PROCEEDING,

09:48:38 20   PLEASE STATE THEM AT THE TIME OF YOUR APPEARANCE.

21            COUNSEL AND ALL PRESENT, PLEASE NOW STATE

22   YOUR APPEARANCES AND AFFILIATIONS FOR THE RECORD,

23   BEGINNING WITH THE NOTICING ATTORNEY.

                24              MR. WEIR:  CHARLES WEIR OF MANATT PHELPS &

09:48:52 25    PHILIPS ON BEHALF OF PLAINTIFF INTUSCARE.


                                                          Rough Draft -
2
↟ 09:48:54  1              MR. LEE:  GOOD MORNING.  DAVID LEON BEHALF

        2      OF DEFENDANT, RTZ ASSOCIATES, INC.

        3              THE VIDEOGRAPHER:  THANK YOU.

        4              WILL THE COURT REPORTER PLEASE INTRODUCE

09:49:00  5    YOURSELF, ADMINISTER THE OATH TO THE WITNESS, AND

        6      THEN COUNSEL MAY PROCEED.

        7              THE REPORTER:  GOOD MORNING.  MY NAME IS

        8      CATHERINE NOLASCO, AND MY CSR NUMBER IS 8239.

        9              WOULD YOU PLEASE RAISE YOUR RIGHT HAND.

09:49:09 10

        11                     MICHAEL ZAWDKSI,

        12     HAVING BEEN ADMINISTERED AN OATH, WAS EXAMINED AND

        13     TESTIFIED AS FOLLOWS:

        14

09:49:24 15                     EXAMINATION

        16     BY MR. WEIR:

        17         Q   GOOD MORNING, MR. ZAWADSKI.

        18             HAVE YOU BEEN DEPOSED BEFORE?

        19         A   I HAVE NOT.

09:49:34 20         Q   I SUSPECT THAT YOU WENT OVER SOME OF THE

        21     GROUND RULES WITH YOUR COUNSEL, AND I JUST TO MOVE

8   CREDENTIALS WITH INTUS ATTACHED TO IT.

9       Q    AND THEN WITH RESPECT TO THE AUTOMATED

11:14:31 10  SCRIPT, ONCE YOU BECAME AWARE THAT THEY WERE

11  ACCESSING DATA THROUGH THE AUTOMATED SCRIPT, YOU

12  COULD GO TO THE AUTO LOGS AND FIGURE OUT WHAT THEY

13  WERE ACCESSING, RIGHT?

14      A    IT'S MORE COMPLICATED BECAUSE IF THE

11:14:41 15  AUTOMATED SCRIPT USED CREDENTIALS OF A REAL USER, IT

16  WOULD SHOW THAT THE REAL USER DID IT WHEN REALLY THE

17  AUTOMATED SCRIPT DID IT.

18      Q    OKAY.  WHAT ABOUT -- YOU WOULD STILL BE

19  ABLE TO TRACK THE OUTPUT IN THE AUDIT TRAILS,

11:15:12 20  CORRECT?

21      A    MANY AND MOST TRANSACTIONS ARE TRACKED.

22  SO IF SOMEBODY DID AN ACTION IN THE SYSTEM, WE WOULD

23  HAVE SOME VISIBILITY INTO THE ACTION THEY TOOK.

24      Q    ALL RIGHT.  SO IF -- I GUESS WHAT I'M

11:15:29 25  HAVING TROUBLE WITH IS IF THE -- IF RTZ IS FINE WITH

Rough Draft -

60

↑ 11:15:36  1   THE CLIENT GIVING INTUS DATA -- THE CLIENT'S DATA

2   THAT SITS ON THE SYSTEM, WHY DOES RTZ CARE WHETHER

3   THE CLIENT COLLECTED THAT MANUALLY OR THROUGH AN

4   AUTOMATED SCRIPT?

11:15:54  5       A    IF WE KNEW HOW THE AUTOMATED SCRIPT WAS

13:06:57 15    Q    AS YOU SIT HERE TODAY, ARE YOU AWARE OF

16    ANY EVIDENCE THAT THE PROPRIETARY INTERFACE OR

17    ANYTHING ABOUT THE PROPRIETARY INTERFACE WAS BEING

18    CAPTURED BY THE AUTOMATED SCRIPT THAT WAS BEING RUN

19    ON INTUS'S BEHALF?

13:07:09 20    A    I'M NOT AWARE OF A SPECIFIC TRANSGRESSION

21    BASED ON THE AUTOMATED SCRIPT.

22    Q    ARE YOU --

23    A    IN TERMS OF CAPTURING WHAT'S GOING ON

24    OTHER THAN THE DATA I'M NOT SURE THERE WAS OR THERE

13:07:22 25    WASN'T.


Rough Draft -

94

⬆ 13:07:23 1    Q    ARE YOU AWARE -- ASIDE FROM THE AUTOMATED

2    SCRIPT, ARE YOU AWARE OF ANY EVIDENCE THAT ANY

3    MANNER OF ACCESS THAT INTUS ENGAGED IN LED TO THE

4    CAPTURE OF RTZ'S INTELLECTUAL PROPERTY AND WAS USED

13:07:42 5    IN A WAY THAT WAS WRONG OR UNTOWARD?

6    A    I DON'T MEAN THIS TO BE FLIPPANT SO I'LL

7    SAY LIKE HAVE I BEEN TOLD THEY WANDERED AROUND THE

8    SYSTEM AND LEARNED THROUGH IT GOING THROUGH, PEOPLE

9    HAVE SUGGESTED THAT TO ME.  I THINK THAT -- I DON'T

13:08:04 10    KNOW WHAT THEY DID WITH THAT.  I'VE NEVER SEEN -- I

11    MEAN, I'VE NEVER SEEN THEIR ANALYTICS PRODUCT, AND

12    I'VE NEVER SEEN THEIR EMR PRODUCT.  SO I DON'T KNOW

13  WHAT THEY SPECIFICALLY PRODUCED, BUT I AM, HAVE BEEN

14  TOLD THAT THEY HAVE ACCESSED THE SYSTEM FOR MORE

13:08:19 15  THAN THE PURPOSES OF LOOKING AT THIS, AND I KNOW MY

16  LIFE DEVELOPING A SYSTEM WOULD HAVE BEEN A WHOLE

17  HELL OF A LOT EASIER HAD I GOT TO GO THROUGH

18  SOMEONE'S SYSTEM AND SEE HOW THEY SPENT THE LAST 20

19  YEARS ORGANIZING SOMETHING.

13:08:33 20      Q    SO WHO -- WHO TOLD YOU THAT, THAT THEY HAD

21  GONE THROUGH THE SYSTEM AND ROOTED AROUND AND LOOKED

22  AT THINGS BEYOND JUST THE DATA PULL?

23      A    WELL, I BELIEVE AS WE GO BACK IN TIME WHEN

24  WE LOOKED AT SOME OF THE USER ACCOUNT ACCESS STUFF,

13:08:49 25  THAT THERE WAS SOME ACCESS BY THEM IN THE SYSTEM AT

Rough Draft -

95

⬆ 13:08:54  1   SENIOR CARE PARTNERS AND AT BEACON.

2      Q    AND BECAUSE OF THE AUDIT TRAILS, CAN YOU

3  TELL WHAT THEY DID AND DIDN'T ACCESS?

4      A    I DON'T KNOW WHAT THOSE WERE, BUT YOU

13:09:07  5  COULD LOOK THAT UP IN THE AUDIT TRAIL IF THE RECORDS

6  ARE -- I MEAN, IT'S NOW BEEN MANY YEARS, SO WE'D

7  HAVE TO SEE WHERE THE RECORDS ARE, BUT THAT WOULD BE

8  IN THE AUDIT TRAIL, WHERE THEY WENT, TO THE EXTENT

9  THEY ACCESS A MODULE.   IT DOESN'T SHOW WHAT SAVES

13:09:20 10  ARE IN SOME OF THE REPORTS, BUT IT DOES SHOW

11    NAVIGATION GENERALLY.

12        Q    AND DID YOU AT ANY POINT IN TIME ACTUALLY

13    DO THAT LOOK AND SEE WHAT --

14        A    I ASKED MEMBERS OF OUR TEAM TO ASK IF THEY

13:09:32 15    HAD GONE PLACES IN THE SYSTEM, BUT I DON'T -- DIDN'T

16    ASK FOR A REPORT TO BE SPECIFICALLY COMPILED ON IT.

17        Q    SO THE -- SO -- WELL, WHAT WOULD THAT LOOK

18    LIKE?  SO IF I WANTED TO GO BACK AND LOOK AT THE

19    AUDIT TRAILS, WHAT --

13:09:49 20        A    SO.

21        Q    WHAT DO I LOOK AT?

22        A    THE AUDIT TRAILS IN TERMS OF GOING THROUGH

23    THE SYSTEM, YOU GO TO A SECTION OF THE SYSTEM, YOU

24    LOOK AT A USER, YOU LOOK AT A TIME PERIOD AND IT

13:09:58 25    WILL SHOW YOU SAVES, IT WILL SHOW YOU MANY


Rough Draft -

96

↑ 13:10:01  1    NAVIGATIONAL STEPS.  IT LOOKS LIKE A LONG SERIES OF

2    TRANSACTIONS.

3        Q    SO THE -- IF YOU KNOW, IT'S THE USER'S

4    TITLED INTUS ACCESS?

13:10:15  5        A    RIGHT.

6        Q    IS THE NAME OF THE USER.  YOU COULD GO AND

7    YOU COULD PULL THE AUDIT TRAILS IN THE SYSTEM FOR

8    EVERYTHING THAT INTUS ACCESS?

```
          9      A   THAT USER.

13:10:26 10      Q   WENT IN IDENTIFIED, TOUCHED?

         11      A   YEAH.

         12      Q   SAW?

         13      A   I CAN'T.

         14      Q   WITH OKAY.  AND DID YOU HAVE YOUR FOLKS

13:10:35 15   PULL THOSE AUDIT TRAILS FOR THE INTUS USERS YOU

         16   IDENTIFIED TO SEE WHAT INTUS HAD ACTUALLY DONE ON

         17   THE SYSTEM?

         18      A   I ASKED SOMEBODY WHEN WE WERE GOING

         19   THROUGH THIS PROCESS HAVE THEY BEEN IN A COPY AND

13:10:47 20   SOMEONE SAID YES, YOU KNOW, IN TERMS OF GOING

         21   THROUGH.  I THINK THEY DID SET UP AN ACCOUNT FOR

         22   THEM AT I THINK -- I THINK IT WAS FOR ROBBIE AND

         23   BEACON, ALTHOUGH I'M NOT A HUNDRED PERCENT SURE, AND

         24   THEY DID WANDER AROUND THE WHOLE SYSTEM.  I DIDN'T

13:11:00 25   GO THROUGH THE AND ASK THEM TO RUN AND PREPARE A
```

Rough Draft -
97

```
↟ 13:11:03  1   WHOLE REPORT FOR ME.  I PROBABLY SHOULD HAVE, BUT I

          2   DIDN'T.

          3      Q   WITH AND IS IT -- DO YOU STILL HAVE --

          4   COULD WE DO THAT NOW?

13:11:10  5      A   DEPENDING ON HOW LONG THEY HAD BACKED UP

          6   THE AUDIT TRAILS BECAUSE THE AUDIT TRAILS GET LARGE.
```

# Exhibit G

| | |
|---|---|
| **From:** | Beshai, Andrew |
| **To:** | Kasia Penn; David C. Lee |
| **Cc:** | Weir, Charles |
| **Subject:** | FW: RTZ - Recap of our meet and confer |
| **Date:** | Wednesday, December 3, 2025 5:27:33 PM |
| **Attachments:** | image001.png |
| | Intus - Meet and Confer Letter re _ Set One ROGs and Set Two RFPs.pdf |

Hi Kasia and David,

I'm following up about the attached meet & confer letter. I know David and Charles discussed not going heavy on written discovery in the near term, but if we are going to schedule a January deposition with Zawadski, we don't have all the material we need to prepare for that. We're willing to work with you on a timeline for the document production. Please let me know when you have time to discuss this week.

Thanks,

Andrew

---

**From:** Beshai, Andrew
**Sent:** Friday, November 21, 2025 2:00 PM
**To:** Kasia Penn <kpenn@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>; David C. Lee <dlee@nossaman.com>; Martinez, Robert <RMartinez@manatt.com>
**Subject:** RE: RTZ - Recap of our meet and confer

Thanks Kasia. Please see my responses to your M&C Recap below. We also have a few discovery issues to raise.

**Our Discovery Issues**
-
1. We are making a supplemental production responsive to your Set Two RFPs. My colleague, Robert Martinez, will be sending you a link this afternoon.

2. We've attached a meet-and-confer letter outlining deficiencies with RTZ's responses to Intus' Set One ROGs and Set Two RFPs.

3. Attached please also find Intus' Set Three RFPs. These latest RFPs are intended to capture the full range of communications and documents RTZ exchanged with PACE programs. Despite prior requests seeking subsets of communications and documents between RTZ and PACE programs (e.g., RFP 1 and RFPs 28-81), RTZ has still produced only a handful of documents and communications (and sometimes zero documents and communications) between RTZ and the following PACE entities: BoldAge, Neighborhood PACE, Capital Health LIFE, PACE

Southeast Michigan, Panorama PACE, Ascension, Brandman, Uphams, Central Valley PACE, Inspira, Orangeburg, New Horizons. We are also in the dark about your full client list of PACE programs, as you have objected to producing it in response to ROG 1. We'd like to meet and confer about this, as set forth in our attached M&C letter.

**Responses to Your M&C Recap**

1. We will provide Set One RFP supplemental responses the first week of December.

2. We used a date range of January 1, 2021 to April 2025, and we used the following custodians: Robbie Felton, Evan Jackson, Evan Walters Alex Rothberg, Laura Ferrara, Jeanette Freed, Sneha Banerjee. A significant number of the communications relating to your areas of interest involved prior counsel Alex Chiulli and are, therefore, privileged. As to the remaining communications, we will revisit our search terms and get back to you.

3. On the call, I asked that you better describe your claims so we understand what the point of the discovery is. I noted that, for example, if you were to tell us that your theory is that Intus accessed PACECare and replicated the user interface in its own EMR, then we would be willing to produce a limited subset of documents regarding the layout of CareHub. My point was that if you clarify how the CareHub material relates to your claims, we would be willing to consider your requests in that narrowed context. As it stands, your requests are far too broad, and we still don't understand how the requests relate to your claims. Accordingly, this will need to be presented to Judge Tse.

---

**From:** Kasia Penn <kpenn@nossaman.com>
**Sent:** Tuesday, November 18, 2025 5:23 PM
**To:** Beshai, Andrew <ABeshai@manatt.com>
**Cc:** Weir, Charles <CWeir@manatt.com>; David C. Lee <dlee@nossaman.com>
**Subject:** RTZ - Recap of our meet and confer

[EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.

---

Hi Andrew,

Thank you for your time today. To recap our conversation:

1. **Audit Logs.** You confirmed and represented that Intus does not have any audit log beyond the single spreadsheet reflecting access to PACECare produced as Appendix A

to Intus' responses to RTZ's Interrogatories, Set One. You agreed to amend your discovery responses to state that. Please provide the amended responses within one week.

2. **Internal Communications**. I noted that Intus to date has only produced 25 internal emails in total, including duplicates. We find it untenable that there are a mere 20 or so internal emails on the subject matters at issue in this case, including (i) the development of Intus's automated script; (ii) discussions about Intus' integration approaches with PACE customers; (iii) the development and use of the Data Integration Addendum; (iv) strategies about accessing EHR data from PACECare, among other obvious topics. You stated that you would confirm the parameters used to search for responsive emails and determine whether additional documents exist. Please either supplement the production or confirm in writing that no further internal communications are available. Regardless, we request a list of the custodians identified in the search and collection of responsive documents. We seek your position within one week.

3. **Discovery related to CareHub**. You offered to produce documents reflecting the "layout" of CareHub. Please provide a date by which those documents will be produced. Notwithstanding your pledge to produce the layout documents, our position remains that all requested CareHub documents are discoverable. Although you have invited us to revisit our CareHub-related RFPs for purposes of "narrowing" them, we decline to do so at this time. Rather, if Intus believes that requests are too broad, please propose a more limited scope of production for our consideration. Absent such a proposal, it appears the issue will need to be presented to Judge Tse.

**Kasia Penn**
Attorney at Law
NOSSAMAN LLP
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
kpenn@nossaman.com
*Admitted only in California, Texas*
T 949.833.7800  F 949.833.7878
D 949.477.7623

 SUBSCRIBE TO E-ALERTS
nossaman.com

PLEASE NOTE: The information in this e-mail message is confidential. It may also be attorney-client privileged and/or protected from disclosure as attorney work product. If you have received this e-mail message in error or are not the intended recipient, you may not use, copy, nor disclose to anyone this message or any information contained in it. Please notify the sender by reply e-mail and delete the

message. Thank you.