# manatt

**Andrew Beshai**
Manatt, Phelps & Phillips, LLP
Direct Dial: (714) 915-4945
ABeshai@manatt.com

March 9, 2026

The Honorable Judge Alex G. Tse
U.S. District Court, Northern District of California
San Francisco Courthouse, Courtroom A – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:     IntusCare Inc. v. RTZ Associates, Inc. (Case No. 4:24-cv-01132-JST) Discovery
            Dispute

Dear Judge Tse:

      Plaintiff and Counterdefendant IntusCare Inc. ("Intus") and Defendant and
Counterclaimant RTZ Associates, Inc. ("RTZ") submit this Joint Letter Brief ("Brief") in
accordance with the Section VII(B) of Judge Tse's Civil Standing Order to detail their discovery
dispute concerning RTZ's deficient production and responses to Intus's Requests for Production
Nos. 28-81, contained in Intus's Requests for Production, Set Two ("RFP Nos. 28-81") (*See*
**Exhibit A**) and RTZ's failure to respond to Intus's Requests for Production Nos. 100-101
contained in Intus's Requests for Production, Set Three (*See* **Exhibit B**). RTZ served responses
to Intus's RFPs, Set Two indicating that for each RFP it "will produce all responsive and non-
privileged documents within its possession, custody, and control." (*See* **Exhibit C**). RTZ failed
to respond or object to Intus's RFPs, Set Three. Before the submission of this Brief, the parties
conferred in good faith on March 3, 2026, by Teams videoconference in an attempt to avoid
judicial intervention. The parties could not resolve the disputes.

## I.     Intus's Position

      Intus is a health analytics company that contracts with Programs of All-Inclusive Care for
the Elderly ("PACE") (the "Intus Clients"). Intus synthesizes data from each PACE program's
electronic health records and uses that data to identify risks, visualize trends, and optimize
patient care. (FAC, Dkt. No. 25, ¶ 1.) With RTZ's knowledge and consent, Intus obtained
electronic health records data stored on PACECare through a simple file extraction process or
interface. (*Id.*, ¶¶ 2, 14.) However, starting in September 2022, RTZ refused to provide Intus
access to the data on PACECare, and later prohibited Intus Clients from providing access to
Intus. (*Id.*, ¶ 2, 15.) RTZ's information blocking included inserting language in its contracts with
PACE programs prohibiting Intus Clients from providing Intus direct access to PACECare. (*Id.*,
at ¶ 20.) RTZ's information blocking interferes with Intus's ability to meet contractual
obligations with existing clients and to attract and retain new clients.

Manatt, Phelps & Phillips, LLP  2049 Century Park East, Suite 1700, Los Angeles, California 90067  Tel: 310.312.4000 Fax: 310.312.4224

70159690.v3

# manatt

March 9, 2026
Page 2

In RFPs 28-81, Intus sought all communications, documents, and contracts or agreements between RTZ and a number of PACE programs.[1] (*See* **Exhibit A**). In RFPs 100-101, Intus sought all communications and documents exchanged, including contracts, between RTZ and any PACE program relating to Intus. (**Exhibit B**). This information is relevant to show RTZ's blocking conduct and Intus' resulting damages, including lost business opportunities. Indeed, RTZ responded that it would produce documents in response to RFP Nos. 28-81, and RTZ failed to respond entirely to RFP Nos. 100-101, waiving any objections.

The paucity of RTZ's production regarding PACE programs Intus knows RTZ works with and had discussions with about access raised significant concern. For many of the listed PACE entities, RTZ produced zero communications. For the majority of the listed PACE entities, RTZ produced less than ten communications. (*See* **Exhibit C**). Given its concern, Intus asked RTZ about its search methodology. RTZ responded: "Regarding the methodology, our client reached out to multiple team members across relevant departments, including sales, implementation, support, and management. Those individuals were asked to review their files for any communications that mentioned Intus." (**Exhibit D**). RTZ also confirmed it "did not do a central email collection." (**Exhibit E**). Intus learned from RTZ's former President, Michael Zawadski, that he could not provide the search terms he ran and "they're not documented in a specific way." (**Exhibit F** at 147:8-23.) He also doesn't know what methodology other RTZ employees used to search for responsive material or who those employees were. (*Id.*)

Even more concerning is that some of these emails may no longer exist. According to Mr. Zawadski, when RTZ was acquired by a new company, Collabrios, in October 2024, the company's email provider switched from Gmail to Outlook. (*Id.* at 146:19-21.) Mr. Zawadski served as Collabrios' CEO until January 2026. He explained that not all the Gmail inboxes of RTZ employees were transitioned to the new Outlook system at Collabrios and he was "not sure where ultimately they did that time cut-off." (*Id.* at 148:9-14.) He testified that he doesn't know if the Gmail inboxes have been preserved and conceded that he doesn't know if the audit trails, which showed Intus's access to RTZ's system, were ever preserved. (*Id.* 148:15-17; 96:14-98:9.) Melanie Martinez, an Implementation Manager who has been with RTZ since 2012, testified that when the company transitioned from RTZ to Collabrios, her inbox was a clean slate and she could "no longer access" her prior Gmail inbox she had with RTZ. (**Exhibit G** at 36:13-37:3.)

Since Collabrios is the successor to RTZ and continued RTZ's pre-transaction practice of blocking Intus from access to PaceCare, Intus propounded discovery on Collabrios, seeking "All COMMUNICATIONS between [Collabrios] and any PERSON RELATING TO INTUS," as

---

[1] The PACE programs were BoldAge PACE (Beacon of LIFE PACE), Neighborhood PACE, Community Pace at Home, Inc., LifeCircles PACE, Thome PACE, Huron Valley PACE, Senior Care Partners, Capital Health LIFE, Southeast PACE of Michigan, Sunrise PACE, Panorama PACE (Ezperanza), Ascension Health Alliance, Brandman Centers for Senior Care, Uphams Corner Health Committee, Inc., Central Valley PACE, Inspira Health Network LIFE, Orangeburg Senior Helping Center: A PACE, New Horizons PACE.

# manatt

March 9, 2026
Page 3

well as communications and documents exchanged with specific PACE entities (RFP Nos. 1, 3-22). RTZ objected to every single RFP "on the ground that it incorrectly assumes that [RTZ] can respond on behalf of Collabrios Health LLC. Collabrios Health LLC is not a party to this action and is a separate legal entity from [RTZ]." (**Exhibit F**.) But Mr. Zawadski confirmed that "RTZ Associates was bought" by Collabrios in October 2024. (**Exhibit F** at 21:21.) Ms. Martinez likewise testified that in January 2025, she signed new employment paperwork with Collabrios, her email account is a Collabrios domain name, and she no longer interacts with anyone who has an RTZ domain name. (**Exhibit G** at 5-7). RTZ has been purchased by, and its operations have been transitioned to, Collabrios. To argue, then, that RTZ cannot respond on behalf of Collabrios ignores Collabrios' role as a successor to RTZ.

In sum, RTZ's search methodology is woefully inadequate and that led to a woefully inadequate production. RTZ "did not do a central email collection," and it did not identify custodians, search terms, or date ranges. A party and their counsel are required "to conduct any reasonable inquiry into the factual basis of its discovery responses." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987); *see also Pino v. Cardone Cap.*, LLC, 2026 WL 84024, *6 (C.D. Cal. Jan. 7, 2026) ("Defendants' wholesale refusal to conduct searches for reasonably accessible electronically stored information will create unnecessary delay in this lawsuit (and possibly result in the inadvertent destruction or loss of relevant and proportionate information)"). An appropriately detailed accounting of the search conducted is especially critical in the context of electronically stored information. *See Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) (recipients of discovery requests, must be transparent in the manner in which they search for electronic information).

Compounding matters further, it is unclear whether any of the relevant information—such as audit trails and Gmail communications prior to RTZ's acquisition—have been preserved. It appears they have not been and defendant has not provided clear answers on this issue. This is especially troubling given that RTZ issued a cease and desist to Intus in September 2022, two years before RTZ was acquired, demanding "that Intus preserve all communications and documents (both internal and external) relating to each and every instance of Intus's access to RTZ's PACECare software." (**Exhibit H**). In the same letter, RTZ threatened that "Intus's destruction/loss/deletion/alteration of such communications and documents would constitute spoliation of evidence." (*Id.*) And when Intus sought documents pertaining to this lawsuit from RTZ's successor entity, Collabrios, RTZ objected and is now attempting a corporate form sleight of hand to avoid producing information to which Intus is entitled.

Intus requests that the Court order RTZ to provide a description of whether audit trails and Gmail inboxes were preserved, and if so, the date range of the preserved material. Intus further requests that RTZ be ordered to conduct a reasonable search for material responsive to RFP Nos. 28-81 and 100-101, and provide an appropriate accounting of the methodology used, including custodians, search terms, and date ranges. Finally, Intus requests that Collabrios, the successor entity to RTZ, be ordered to respond to the RFPs Intus propounded.

# manatt

March 9, 2026
Page 4

## II.    RTZ's Position

<u>Search Methodology to Respond to Intus' Requests for Production, Nos. 28-81</u>

Intus argues that RTZ's search methodology was inadequate because RTZ "did not identify custodians, search terms, or date ranges." That assertion is patently incorrect.

On March 6, 2026, Intus' counsel was unambiguously informed that RTZ's search for responsive documents had not been limited by custodian or date range and that RTZ conducted its search accordingly. RTZ further confirmed that, consistent with its written responses, the production was limited to the period from 2021 to the present. (**Exhibit 1**).

RTZ has produced 3,222 documents to date. On March 6, RTZ's counsel informed Intus' counsel that RTZ, as part of its rolling productions, had identified an additional batch of approximately 400 documents potentially responsive to RFPs Nos. 28-81, which RTZ's counsel would review and would produce all responsive documents. RTZ's counsel explained that those 400 documents are likely additional communications with PACE facilities that are identified in RFPs Nos. 28-81 as RTZ has already produced contracts that were responsive to those requests.

In short, RTZ has conducted a search for documents responsive to RFPs Nos. 28-81 and has produced all responsive documents located to date, aside from the approximately 400 documents currently being reviewed for production. Intus appears dissatisfied with the absence of a smoking gun in the documents already produced and is attempting to manufacture a discovery dispute. Intus' dissatisfaction with the content of the production does not render RTZ's search inadequate.

<u>Documents Responsive to RFPs 100 and 101</u>

On March 6, 2026, RTZ's counsel has informed Intus' counsel that "RTZ searched for all communications with all PACE entities related to Intus" and that, aside from a handful of recently located documents to be produced on March 9, RTZ has already produced all documents responsive to those requests. (**Exhibit 1**). There is nothing more to compel in connection with these Requests.

<u>Preservation of Gmail Accounts:</u>

On March 6, 2026, RTZ's counsel informed Intus counsel that RTZ kept active the accounts of the following individuals: Michael Zawadski, Melanie Martinez, Alex Lueth, Juliann Hamblin, Amanda Muniz, Cheyenne Bradley, Emma Oto-Pale, Laura Emery, Doug Kolen, Carinna Sias, and Dylan Clements. These are the material employees of RTZ that were involved in the PACE accounts involving Intus.  Notably, Intus fails to articulate any other RTZ employees it asserts are involved.  Indeed, the only RTZ employees Intus has deposed to date are Michael Zawadski and Melanie Martinez (which are among those custodians referenced above). Accordingly, all material Gmail accounts of material custodians are preserved and have been searched for responsive documents.

# manatt

March 9, 2026
Page 5

Audit Trails

Intus's complaints that RTZ failed to produce audit trails is equally without merit. Conspicuously, *none* of the Requests at issue seek audit trails – a fact that Intus conveniently omits from its argument. As such, audit trails are simply not responsive to the Requests at issue. The fact that Intus fails to cite to any Request for which they would be responsive is telling. There is nothing to compel with respect to audit trails.

Discovery Directed to Collabrios

Finally, Intus asserts that discovery directed to Collabrios Health, LLC ("Collabrios") is permissible, because that entity is the purported "successor" to RTZ Associates, Inc. ("RTZ"). That argument is simply wrong on multiple levels. First, as thoroughly explained to Intus' legal counsel, it is indisputable that RTZ – the named defendant in this lawsuit – is a separate and distinct legal entity from Collabrios, and equally important, remains a separate entity going concern.[2] Accordingly, Intus cannot appropriately deploy a discovery letter brief process to obtain a dispositive ruling that Collabrios, as a matter of law, is the legal successor in interest to RTZ. Such a determination would clearly require more formal briefing outside of a discovery context.

Second, in any event, Intus has never named Collabrios as a defendant in this lawsuit. Collabrios therefore is a non-party to this action. The Federal Rules of Civil Procedure are clear: interrogatories and request for production may only be served on parties. FRCP 33(a) and 34(a). Discovery from non-parties must proceed through a subpoena issued under Rule 45. In an effort to blur this line, Intus cites to deposition testimony from Melanie Martinez as evidence that Collabrios is the successor to RTZ. That testimony is not dispositive of anything. As Ms. Martinez repeatedly explained when confronted about Collabrios and RTZ, "I honestly don't know." (**Exhibit 2**, Rough Draft of Deposition Transcript of Melanie Martinez, at pp. 4-5[3]). Which makes sense given that Ms. Martinez is a customer account representative who has no knowledge about the complex business transaction involving Collabrios and RTZ.

Simply put, RTZ and Collabrios are separate legal entities and RTZ is a wholly-owned subsidiary of Collabrios that uses the "Collabrios" tradename. RTZ has not merged with Collabrios and continues to run its own operations. Collabrios acquired 100 percent of the equity of RTZ, but it did not take on any of RTZ's liabilities. For this reason, Intus's service of discovery requests on Collabrios is improper because that legal entity is not a named party to this lawsuit. Intus could have but opted not to name Collabrios as a party. It is therefore unable to serve discovery on a non-party entity.

---

[2] On October 10, 2024 (after the filing of this lawsuit), Defendant RTZ Associates, Inc. (a California corporation) converted into a new Delaware limited liability corporation, RTZ, LLC, which is and remains a separate legal entity from Collabrios Health, LLC. See **Exhibit 3** (RTZ conversion records) and **Exhibit 4** (Collabrios business detail).
[3] The deposition of Ms. Martinez occurred on March 6, 2026, and thus only a rough transcript of that proceeding is available at this time.

manatt

March 9, 2026
Page 6

By: */s/ Charles E. Weir*
    Charles E. Weir
    Andrew Beshai
    Manatt, Phelps & Phillips, LLP

    *Attorneys for Plaintiff*
    INTUS CARE, INC.

By: */s/ Kasia Penn*
    David C. Lee
    Kasia Penn
    Nossaman LLP

    *Attorneys for Defendant*
    RTZ ASSOCIATES, INC.

70159690.v3

# EXHIBIT A

MANATT, PHELPS & PHILLIPS, LLP
CHARLES E. WEIR (Bar No. 211091)
E-mail: CWeir@manatt.com
ANDREW BESHAI (Bar No. 308030)
E-mail: ABeshai@manatt.com
2049 Century Park East
Suite 1700
Los Angeles, California 90067
Telephone:    310.312.4000
Facsimile:    310.312.4224

Attorneys for Plaintiff
INTUSCARE INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUSCARE INC., | Case No. 4:24-cv-01132-JST |
| Plaintiff, | Assigned to: Hon. Jon S. Tigar |
| v. | **PLAINTIFF INTUSCARE INC.'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT RTZ ASSOCIATES, INC., SET TWO** |
| RTZ ASSOCIATES, INC.; and DOES 1 through 10, | |
| Defendants. | Complaint Filed:   February 23, 2024 |
| | Amended Complaint Filed: April 2, 2024 |
| | Counterclaims Filed: June 20, 2024 |

**PROPOUNDING PARTY:**          **INTUSCARE INC.**

**RESPONDING PARTY:**          **RTZ ASSOCIATES, INC.**

**SET NO.:**          **TWO**

INTUSCARE INC.'S REQUESTS FOR PRODUCTION TO DEFENDANT RTZ ASSOCIATES, INC., SET TWO

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff IntusCare Inc. ("Intus") demands that Defendant RTZ Associates, Inc. ("RTZ") serve on Intus, by and through its attorneys of record, Manatt, Phelps, & Phillips, LLP, 2049 Century Park East, Suite 1700, Los Angeles, CA 90067, RTZ's written responses to the following requests for production of documents, electronically stored information, and tangible things, and also produce the requested documents, electronically stored information, and tangible things, within 30 days after the date of service of these requests:

## DEFINITIONS

1.      The term "COMMUNICATION(S)" as used herein, shall mean and refer to the exchange of information by or through any mode or medium, including but not limited to, the spoken word, recordings, written correspondence, electronic mail, text messages, direct messages, social media direct messages, enterprise messaging (e.g., Slack or Microsoft Teams), web conference, video-conference, face-to-face meetings, and/or conveying information through third person(s) to some other intended recipient.

2.      The term "DOCUMENT(S)" as used herein, shall include all writings as that term is defined in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence. By way of example, but not limitation, "DOCUMENT" means any written, recorded, or graphic material, whether prepared by YOU or any other person, that is in YOUR possession, custody, or control, including memoranda, reports, letters, telegrams, electronic mail, other electronic correspondence or media, and any other COMMUNICATIONS or information recorded in any form or medium, electronic or otherwise; notes, minutes, and transcripts of conferences, meetings, and telephone or other COMMUNICATIONS; short-message service (SMS) text messages, iMessages, direct messages, social media messages and posts; transparencies, slides, handouts, and multimedia presentations; contracts and other agreements; statements, ledgers, and other records of financial matters or commercial transactions; notebooks and diaries; plans and specifications; publications; photographs; diagrams, graphs, charts, and other drawings; photocopies, microfilm, and other copies or reproductions; audio and video recordings; tape, disk (including all forms of magnetic, magneto-

optical, and optical disks), and other electronic recordings; financial models; statistical models and other data compilations; other models and analyses; and computer printouts. The term includes all drafts of a DOCUMENT; the original DOCUMENT (or a copy thereof if the original is not available); and all copies that differ in any way from the original (including as to any notations, underlining, or other markings). All drafts of such DOCUMENTS should be produced.

3. The terms "CONCERNING" "RELATES TO" or "RELATING TO," as used herein, mean directly or indirectly reflecting, concerning, evidencing, constituting, supporting, refuting, referring to, pertaining to, consisting of, containing information about, or in any way legally, logically, or factually connected with the stated subject matter.

4. The terms "RTZ," "YOU" and "YOUR," as used herein, shall refer to Defendant RTZ Associates, Inc., and its representatives, owners, employees, attorneys, investigators, accountants, managers, agents, parent companies, subsidiaries or other persons or entities acting or purporting to act on its behalf.

5. "INTUS" means Plaintiff IntusCare Inc., and its representatives, owners, employees, attorneys, investigators, accountants, managers, agents, or other persons or entities acting or purporting to act on its behalf.

6. "PERSON(S)" means and includes any natural individual, partnership, proprietorship, firm, association, joint venture, corporation, subsidiary or other government, legal or business entity, as well as individuals, and their agents, representatives, and any other person acting on their behalf.

**INSTRUCTIONS**

1. In responding to these requests, YOU must comply with all relevant terms of the applicable federal and local rules, the practices and preferences of the assigned judges, and any relevant orders previously or subsequently entered by the Court in this case.

2. YOU are required to produce all responsive documents that are within YOUR possession, custody, or control.

3. YOU are required to produce the documents in the same form and in the same order in which they were kept in the ordinary course of business prior to production. The

1  documents are to be produced in the boxes, file folders, binders, or other containers in which the

2  documents are found. The titles, labels, or other descriptions on the boxes, file folders, bindings,

3  or other containers are to be left intact. Alternatively, the documents may be organized and

4  labeled to correspond with these requests.

5       4.     Any DOCUMENT produced must be produced in form otherwise mutually agreed

6  between the parties. If YOU maintain that any responsive DOCUMENT is protected from

7  disclosure by the attorney-client privilege, the work-product doctrine, or other legally recognized

8  discovery privilege, YOU must produce an accompanying log. The log should specify the nature

9  of the protection claimed, describe the precise ground for the protection, and identify the

10  document with particularity, including its author, dates, all recipients thereof, including carbon

11  copy recipients and "blind" carbon copy recipients, the subject matter, and the number of pages

12  therein.

13       5.     If a DOCUMENT once existed, but has been lost, destroyed, no longer exists, or is

14  no longer in YOUR possession or control, identify each such DOCUMENT and separately state

15  the details concerning the loss or destruction of the DOCUMENT, and the name and address of

16  the current or last known custodian of any such DOCUMENT, if known to YOU.

17       6.     Unless otherwise stated, these requests seek the production of DOCUMENTS

18  from June 1, 2021 through present.

19       7.     The words "and" and "or" shall be construed in the conjunctive or disjunctive,

20  whichever is most inclusive. The singular form shall include the plural form and vice versa. The

21  present tense shall include the past tense and vice versa. "Including" shall mean "including

22  without limitation."

23       8.     Because these requests are ongoing in nature, YOU are required to supplement

24  YOUR productions responding to these requests to the extent YOU come to take possession,

25  custody, or control over additional responsive materials in the future.

26                          **REQUESTS FOR PRODUCTION**

27  **REQUEST FOR PRODUCTION NO. 28:**

28       All COMMUNICATIONS between YOU and BoldAge PACE (Beacon of LIFE PACE).

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

- 4 -

**REQUEST FOR PRODUCTION NO. 29:**

All COMMUNICATIONS between YOU and Neighborhood PACE.

**REQUEST FOR PRODUCTION NO. 30:**

All COMMUNICATIONS between YOU and Community Pace at Home, Inc.

**REQUEST FOR PRODUCTION NO. 31:**

All COMMUNICATIONS between YOU and LifeCircles PACE.

**REQUEST FOR PRODUCTION NO. 32:**

All COMMUNICATIONS between YOU and Thome PACE.

**REQUEST FOR PRODUCTION NO. 33:**

All COMMUNICATIONS between YOU and Huron Valley PACE.

**REQUEST FOR PRODUCTION NO. 34:**

All COMMUNICATIONS between YOU and Senior Care Partners.

**REQUEST FOR PRODUCTION NO. 35:**

All COMMUNICATIONS between YOU and Capital Health LIFE.

**REQUEST FOR PRODUCTION NO. 36:**

All COMMUNICATIONS between YOU and Southeast PACE of Michigan.

**REQUEST FOR PRODUCTION NO. 37:**

All COMMUNICATIONS between YOU and Sunrise PACE.

**REQUEST FOR PRODUCTION NO. 38:**

All COMMUNICATIONS between YOU and Panorama PACE (Ezperanza).

**REQUEST FOR PRODUCTION NO. 39:**

All COMMUNICATIONS between YOU and Ascension Health Alliance.

**REQUEST FOR PRODUCTION NO. 40:**

All COMMUNICATIONS between YOU and Brandman Centers for Senior Care.

**REQUEST FOR PRODUCTION NO. 41:**

All COMMUNICATIONS between YOU and Uphams Corner Health Committee, Inc.

**REQUEST FOR PRODUCTION NO. 42:**

All COMMUNICATIONS between YOU and Central Valley PACE.

1  **REQUEST FOR PRODUCTION NO. 43:**

2      All COMMUNICATIONS between YOU and Inspira Health Network LIFE.

3  **REQUEST FOR PRODUCTION NO. 44:**

4      All COMMUNICATIONS between YOU and Orangeburg Senior Helping Center: A

5  PACE.

6  **REQUEST FOR PRODUCTION NO. 45:**

7      All COMMUNICATIONS between YOU and New Horizons PACE.

8  **REQUEST FOR PRODUCTION NO. 46:**

9      All DOCUMENTS exchanged between YOU and BoldAge PACE (Beacon of LIFE

10  PACE).

11  **REQUEST FOR PRODUCTION NO. 47:**

12      All DOCUMENTS exchanged between YOU and Neighborhood PACE.

13  **REQUEST FOR PRODUCTION NO. 48:**

14      All DOCUMENTS exchanged between YOU and Community Pace at Home, Inc.

15  **REQUEST FOR PRODUCTION NO. 49:**

16      All DOCUMENTS exchanged between YOU and LifeCircles PACE.

17  **REQUEST FOR PRODUCTION NO. 50:**

18      All DOCUMENTS exchanged between YOU and Thome PACE.

19  **REQUEST FOR PRODUCTION NO. 51:**

20      All DOCUMENTS exchanged between YOU and Huron Valley PACE.

21  **REQUEST FOR PRODUCTION NO. 52:**

22      All DOCUMENTS exchanged between YOU and Senior Care Partners.

23  **REQUEST FOR PRODUCTION NO. 53:**

24      All DOCUMENTS exchanged between YOU and Capital Health LIFE.

25  **REQUEST FOR PRODUCTION NO. 54:**

26      All DOCUMENTS exchanged between YOU and Southeast PACE of Michigan.

27  **REQUEST FOR PRODUCTION NO. 55:**

28      All DOCUMENTS exchanged between YOU and Sunrise PACE.

1    **REQUEST FOR PRODUCTION NO. 56:**

2    All DOCUMENTS exchanged between YOU and Panorama PACE (Ezperanza).

3    **REQUEST FOR PRODUCTION NO. 57:**

4    All DOCUMENTS exchanged between YOU and Ascension Health Alliance.

5    **REQUEST FOR PRODUCTION NO. 58:**

6    All DOCUMENTS exchanged between YOU and Brandman Centers for Senior Care.

7    **REQUEST FOR PRODUCTION NO. 59:**

8    All DOCUMENTS exchanged between YOU and Uphams Corner Health Committee, Inc.

9    **REQUEST FOR PRODUCTION NO. 60:**

10    All DOCUMENTS exchanged between YOU and Central Valley PACE.

11    **REQUEST FOR PRODUCTION NO. 61:**

12    All DOCUMENTS exchanged between YOU and Inspira Health Network LIFE.

13    **REQUEST FOR PRODUCTION NO. 62:**

14    All DOCUMENTS exchanged between YOU and Orangeburg Senior Helping Center: A

15    PACE.

16    **REQUEST FOR PRODUCTION NO. 63:**

17    All DOCUMENTS exchanged between YOU and New Horizons PACE.

18    **REQUEST FOR PRODUCTION NO. 64:**

19    All contracts or agreements YOU entered into with BoldAge PACE (Beacon of LIFE

20    PACE).

21    **REQUEST FOR PRODUCTION NO. 65:**

22    All contracts or agreements YOU entered into with Neighborhood PACE.

23    **REQUEST FOR PRODUCTION NO. 66:**

24    All contracts or agreements YOU entered into with Community Pace at Home, Inc.

25    **REQUEST FOR PRODUCTION NO. 67:**

26    All contracts or agreements YOU entered into with LifeCircles PACE.

27    **REQUEST FOR PRODUCTION NO. 68:**

28    All contracts or agreements YOU entered into with Thome PACE.

**REQUEST FOR PRODUCTION NO. 69:**

All contracts or agreements YOU entered into with Huron Valley PACE.

**REQUEST FOR PRODUCTION NO. 70:**

All contracts or agreements YOU entered into with Senior Care Partners.

**REQUEST FOR PRODUCTION NO. 71:**

All contracts or agreements YOU entered into with Capital Health LIFE.

**REQUEST FOR PRODUCTION NO. 72:**

All contracts or agreements YOU entered into with Southeast PACE of Michigan.

**REQUEST FOR PRODUCTION NO. 73:**

All contracts or agreements YOU entered into with Sunrise PACE.

**REQUEST FOR PRODUCTION NO. 74:**

All contracts or agreements YOU entered into with Panorama PACE (Ezperanza).

**REQUEST FOR PRODUCTION NO. 75:**

All contracts or agreements YOU entered into with Ascension Health Alliance.

**REQUEST FOR PRODUCTION NO. 76:**

All contracts or agreements YOU entered into with Brandman Centers for Senior Care.

**REQUEST FOR PRODUCTION NO. 77:**

All contracts or agreements YOU entered into with Uphams Corner Health Committee, Inc.

**REQUEST FOR PRODUCTION NO. 78:**

All contracts or agreements YOU entered into with Central Valley PACE.

**REQUEST FOR PRODUCTION NO. 79:**

All contracts or agreements YOU entered into with Inspira Health Network LIFE.

**REQUEST FOR PRODUCTION NO. 80:**

All contracts or agreements YOU entered into with Orangeburg Senior Helping Center: A PACE.

**REQUEST FOR PRODUCTION NO. 81:**

All contracts or agreements YOU entered into with New Horizons PACE.

1  **REQUEST FOR PRODUCTION NO. 82:**

2      All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that

3  "[a]s a result of Intus's unauthorized access to PACECare, RTZ was forced to incur costs and

4  resources to investigate, monitor and address PACECare access activities. It further dedicated

5  time and labor to conducting such investigations and taking measures to prevent unauthorized

6  access by Intus," as alleged in Paragraph 14 of YOUR counterclaims (Dkt. 41).

7  **REQUEST FOR PRODUCTION NO. 83:**

8      All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that

9  "[b]y wrongfully using the log-in credentials of authorized users to access PACECare, Intus's

10  access resulted in more users of the system than were authorized and licensed. Such extraneous

11  use therefore increased usage of the entire system invariably resulting in system strain and

12  impacting system efficiency," as alleged in Paragraph 15 of YOUR counterclaims (Dkt. 41).

13  **REQUEST FOR PRODUCTION NO. 84:**

14      All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that

15  "[i]n the process of investigating Intus's unauthorized access to PACECare, RTZ discovered that

16  Intus had created or caused to be created unique log-in credentials through its PACE facility

17  customer's PACECare accounts. RTZ was forced to dedicate time and resources to addressing

18  and invalidating such improper log-in credentials," as alleged in Paragraph 16 of YOUR

19  counterclaims (Dkt. 41).

20  **REQUEST FOR PRODUCTION NO. 85:**

21      All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that

22  Intus "has engaged in the unauthorized access of competing EMR systems, including PACECare,

23  to unfairly and improperly obtain competitive intelligence. Specifically, through its unauthorized

24  access of PACECare, Intus achieved two goals: (i) it can extract PACE Data to fulfill its data

25  synthesis/dashboard services to common PACE facility customers; and (ii) it exploits such access

26  to view and assess the PACECare system to accelerate its own EMR system research and

27  development efforts," as alleged in Paragraph 45 of YOUR counterclaims (Dkt. 41).

28

1    **REQUEST FOR PRODUCTION NO. 86:**

2        All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that

3    "Intus has developed automated scripts to run on multiple EMR systems resulting in system strain

4    which inhibits practitioners' use of the PACE tools and/or increases costs, including but not

5    limited to, hosting fees," as alleged in Paragraph 46 of YOUR counterclaims (Dkt. 41).

6    **REQUEST FOR PRODUCTION NO. 87:**

7        All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that

8    "through its unauthorized accesses to PACECare, Intus used such unauthorized accesses to mine

9    other valuable data from the PACECare system (specifically, the functionality, operability,

10   laYOUt, interfaces, data presentation and report generating capabilities), to expedite and refine its

11   own development of a competing EMR system," as alleged in Paragraph 53 of YOUR

12   counterclaims (Dkt. 41).

13   **REQUEST FOR PRODUCTION NO. 88:**

14       All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that

15   "Intus impaired the condition, quality, usefulness, and value of RTZ's personal property by

16   wrongfully accessing and extracting data from PACECare, as set forth above," as alleged in

17   Paragraph 70 of YOUR counterclaims (Dkt. 41).

18   **REQUEST FOR PRODUCTION NO. 89:**

19       All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that

20   "Intus further used its unauthorized access to PACECare to improperly accelerate its own

21   research and development of a competing EMR system," as alleged in Paragraph 78 of YOUR

22   counterclaims (Dkt. 41).

23   **REQUEST FOR PRODUCTION NO. 90:**

24       All DOCUMENTS and COMMUNICATIONS RELATING TO the "costs and resources

25   to investigate, monitor and address PACECare access activities" that "RTZ was forced to incur"

26   "[a]s a result of Intus's unauthorized access to PACECare," as alleged in Paragraph 14 of YOUR

27   counterclaims (Dkt. 41).

28

**REQUEST FOR PRODUCTION NO. 91:**

All DOCUMENTS and COMMUNICATIONS RELATING TO the "time and labor .. . . conducting such investigations and taking measures to prevent unauthorized access by Intus," that RTZ "dedicated," as alleged in Paragraph 14 of YOUR counterclaims (Dkt. 41).

**REQUEST FOR PRODUCTION NO. 92:**

All DOCUMENTS and COMMUNICATIONS RELATING TO the "system strain which inhibits practitioners' use of the PACE tools and/or increases costs, including but not limited to, hosting fees" as a result of Intus developing "automated scripts to run on multiple EMR systems," as alleged in Paragraph 46 of YOUR counterclaims (Dkt. 41).

**REQUEST FOR PRODUCTION NO. 93:**

All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that "Intus has unjustly profited from the data extracted from PACECare," as alleged in Paragraph 56 of YOUR counterclaims (Dkt. 41).

**REQUEST FOR PRODUCTION NO. 94:**

All DOCUMENTS and COMMUNICATIONS RELATING TO the "damages or loss" that RTZ has "suffered" "including but not limited to, strain and load on RTZ's computer system and costs and resources to investigate, monitor and address PACECare access activities," as alleged in Paragraph 56 of YOUR counterclaims (Dkt. 41).

**REQUEST FOR PRODUCTION NO. 95:**

All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that "RTZ is entitled to exemplary damages," as alleged in Paragraph 57 of YOUR counterclaims (Dkt. 41).

**REQUEST FOR PRODUCTION NO. 96:**

All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that "Intus has obtained something of value (i.e., PACE Data and PACECare logic, laYOUt and functionality information) and/or proximately caused damages and loss to RTZ in excess of $5,000 in a one-year period," as alleged in Paragraph 66 of YOUR counterclaims (Dkt. 41).

1  **REQUEST FOR PRODUCTION NO. 97:**

2      All DOCUMENTS and COMMUNICATIONS RELATING TO the "actual damages as a

3  result of Intus's trespass to chattels," as alleged in Paragraph 72 of YOUR counterclaims (Dkt.

4  41).

5  **REQUEST FOR PRODUCTION NO. 98:**

6      All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that

7  RTZ is entitled to "compensatory damages, as well as injunctive, declaratory and/or other

8  equitable relief," as alleged in Paragraph 72 of YOUR counterclaims (Dkt. 41).

9  **REQUEST FOR PRODUCTION NO. 99:**

10      All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that

11  "RTZ is entitled to exemplary damages," as alleged in Paragraph 73 of YOUR counterclaims

12  (Dkt. 41).

13

14

15

16  Dated: August 22, 2025                MANATT, PHELPS & PHILLIPS, LLP

17

18                              By:     /s/ Charles E. Weir
                                        Charles E. Weir
19                                      Andrew Beshai
                                        Attorneys for Plaintiff
20                                      INTUSCARE INC.

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

*Intus Care, Inc. v. RTZ Associates, Inc.*
U.S.D.C. – Northern District of California Case No. 4:24-cv-1132-JST

I, Ethan Tu, declare as follows:

I am employed in Orange County, Costa Mesa, California.  I am over the age of eighteen years and not a party to this action.  My business address is MANATT, PHELPS  & PHILLIPS, LLP, 695 Town Center Drive, 14th Floor, Costa Mesa, CA 92626.   On **August 22, 2025**, I served the within:

**PLAINTIFF INTUSCARE INC.'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT RTZ ASSOCIATES, INC., SET TWO**

on the interested parties in this action addressed as follows:

| | |
|---|---|
| David C. Lee, Esq.<br>NOSSAMAN LLP<br>50 California Street, 34th Floor<br>San Francisco, California 94111<br>Phone: 415.398.3600<br>Fax:    415.398.2438<br>Email: dlee@nossaman.com<br><br>Assistant: Marlene Wiman<br>Email: mwiman@nossaman.com | *Attorneys for Defendant*<br>RTZ ASSOCIATES, INC |
| Kasia Penn, Esq.<br>NOSSAMAN LLP<br>18101 Von Karman Avenue, Suite 1800<br>Irvine, California 92612<br>Phone: 949.833.7800<br>Fax:    949.833.7878<br>Email: kpenn@nossaman.com | *Attorneys for Defendant*<br>RTZ ASSOCIATES, INC. |

☒      **(BY ELECTRONIC MAIL)** By transmitting such document(s) electronically from my e-mail address, etu@manatt.com at Manatt, Phelps & Phillips, LLP, Los Angeles, California, to the person(s) at the electronic mail addresses listed above.  The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on **August 22, 2025**, at Costa Mesa, California.

/s/ Ethan Tu
Ethan Tu

PLAINTIFF INTUSCARE INC.'S INTERROGATORIES TO DEFENDANT RTZ ASSOCIATES, SET ONE

# EXHIBIT B

MANATT, PHELPS & PHILLIPS, LLP
CHARLES E. WEIR (Bar No. 211091)
E-mail: CWeir@manatt.com
ANDREW BESHAI (Bar No. 308030)
E-mail: ABeshai@manatt.com
2049 Century Park East
Suite 1700
Los Angeles, California 90067
Telephone:    310.312.4000
Facsimile:    310.312.4224

Attorneys for Plaintiff
INTUSCARE INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUSCARE INC., | Case No. 4:24-cv-01132-JST |
| Plaintiff, | Assigned to: Hon. Jon S. Tigar |
| v. | **PLAINTIFF INTUSCARE INC.'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT RTZ ASSOCIATES, INC., SET THREE** |
| RTZ ASSOCIATES, INC.; and DOES 1 through 10, | |
| Defendants. | Complaint Filed:   February 23, 2024<br>Amended Complaint Filed: April 2, 2024<br>Counterclaims Filed: June 20, 2024 |

**PROPOUNDING PARTY:**       **INTUSCARE INC.**

**RESPONDING PARTY:**       **RTZ ASSOCIATES, INC.**

**SET NO.:**       **THREE**

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

INTUSCARE INC.'S REQUESTS FOR PRODUCTION TO
DEFENDANT RTZ ASSOCIATES, INC., SET THREE

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff IntusCare Inc. ("Intus") demands that Defendant RTZ Associates, Inc. ("RTZ") serve on Intus, by and through its attorneys of record, Manatt, Phelps, & Phillips, LLP, 2049 Century Park East, Suite 1700, Los Angeles, CA 90067, RTZ's written responses to the following requests for production of documents, electronically stored information, and tangible things, and also produce the requested documents, electronically stored information, and tangible things, within 30 days after the date of service of these requests:

## DEFINITIONS

1.      The term "COMMUNICATION(S)" as used herein, shall mean and refer to the exchange of information by or through any mode or medium, including but not limited to, the spoken word, recordings, written correspondence, electronic mail, text messages, direct messages, social media direct messages, enterprise messaging (e.g., Slack or Microsoft Teams), web conference, video-conference, face-to-face meetings, and/or conveying information through third person(s) to some other intended recipient.

2.      The term "DOCUMENT(S)" as used herein, shall include all writings as that term is defined in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence. By way of example, but not limitation, "DOCUMENT" means any written, recorded, or graphic material, whether prepared by YOU or any other person, that is in YOUR possession, custody, or control, including memoranda, reports, letters, telegrams, electronic mail, other electronic correspondence or media, and any other COMMUNICATIONS or information recorded in any form or medium, electronic or otherwise; notes, minutes, and transcripts of conferences, meetings, and telephone or other COMMUNICATIONS; short-message service (SMS) text messages, iMessages, direct messages, social media messages and posts; transparencies, slides, handouts, and multimedia presentations; contracts and other agreements; statements, ledgers, and other records of financial matters or commercial transactions; notebooks and diaries; plans and specifications; publications; photographs; diagrams, graphs, charts, and other drawings; photocopies, microfilm, and other copies or

reproductions; audio and video recordings; tape, disk (including all forms of magnetic, magneto-optical, and optical disks), and other electronic recordings; financial models; statistical models and other data compilations; other models and analyses; and computer printouts. The term includes all drafts of a DOCUMENT; the original DOCUMENT (or a copy thereof if the original is not available); and all copies that differ in any way from the original (including as to any notations, underlining, or other markings). All drafts of such DOCUMENTS should be produced.

3.      The terms "CONCERNING" "RELATES TO" or "RELATING TO," as used herein, mean directly or indirectly reflecting, concerning, evidencing, constituting, supporting, refuting, referring to, pertaining to, consisting of, containing information about, or in any way legally, logically, or factually connected with the stated subject matter.

4.      The terms "RTZ," "YOU" and "YOUR," as used herein, shall refer to Defendant RTZ Associates, Inc., and its representatives, owners, employees, attorneys, investigators, accountants, managers, agents, parent companies, subsidiaries or other persons or entities acting or purporting to act on its behalf.

5.      "INTUS" means Plaintiff IntusCare Inc., and its representatives, owners, employees, attorneys, investigators, accountants, managers, agents, or other persons or entities acting or purporting to act on its behalf.

6.      "PACE PROGRAM" means and includes any entity or business providing healthcare services under the Program of All-Inclusive Care for the Elderly ("PACE").

**INSTRUCTIONS**

1.      In responding to these requests, YOU must comply with all relevant terms of the applicable federal and local rules, the practices and preferences of the assigned judges, and any relevant orders previously or subsequently entered by the Court in this case.

2.      YOU are required to produce all responsive documents that are within YOUR possession, custody, or control.

3.      YOU are required to produce the documents in the same form and in the same order in which they were kept in the ordinary course of business prior to production. The

- 3 -

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

INTUSCARE INC.'S REQUESTS FOR PRODUCTION TO
DEFENDANT RTZ ASSOCIATES, INC., SET THREE

1  documents are to be produced in the boxes, file folders, binders, or other containers in which the

2  documents are found. The titles, labels, or other descriptions on the boxes, file folders, bindings,

3  or other containers are to be left intact. Alternatively, the documents may be organized and

4  labeled to correspond with these requests.

5         4.     Any DOCUMENT produced must be produced in form otherwise mutually agreed

6  between the parties. If YOU maintain that any responsive DOCUMENT is protected from

7  disclosure by the attorney-client privilege, the work-product doctrine, or other legally recognized

8  discovery privilege, YOU must produce an accompanying log. The log should specify the nature

9  of the protection claimed, describe the precise ground for the protection, and identify the

10  document with particularity, including its author, dates, all recipients thereof, including carbon

11  copy recipients and "blind" carbon copy recipients, the subject matter, and the number of pages

12  therein.

13         5.     If a DOCUMENT once existed, but has been lost, destroyed, no longer exists, or is

14  no longer in YOUR possession or control, identify each such DOCUMENT and separately state

15  the details concerning the loss or destruction of the DOCUMENT, and the name and address of

16  the current or last known custodian of any such DOCUMENT, if known to YOU.

17         6.     Unless otherwise stated, these requests seek the production of DOCUMENTS

18  from June 1, 2021 through present.

19         7.     The words "and" and "or" shall be construed in the conjunctive or disjunctive,

20  whichever is most inclusive. The singular form shall include the plural form and vice versa. The

21  present tense shall include the past tense and vice versa. "Including" shall mean "including

22  without limitation."

23         8.     Because these requests are ongoing in nature, YOU are required to supplement

24  YOUR productions responding to these requests to the extent YOU come to take possession,

25  custody, or control over additional responsive materials in the future.

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

INTUSCARE INC.'S REQUESTS FOR PRODUCTION TO
DEFENDANT RTZ ASSOCIATES, INC., SET THREE

1

<b><u>REQUESTS FOR PRODUCTION</u></b>

2

**REQUEST FOR PRODUCTION NO. 100:**

3

    All COMMUNICATIONS between YOU and any PACE PROGRAM RELATING TO

4

INTUS.

5

**REQUEST FOR PRODUCTION NO. 101:**

6

    All DOCUMENTS, including contracts, exchanged between YOU and any PACE

7

PROGRAM RELATING TO INTUS.

8

9

10

11

12

Dated: November 21, 2025             MANATT, PHELPS & PHILLIPS, LLP

13

14

By:     */s/ Charles E. Weir*

           Charles E. Weir

15

           Andrew Beshai
           Attorneys for Plaintiff

16

           INTUSCARE INC.

17

18

19

20

21

22

23

24

25

26

27

28

INTUSCARE INC.'S REQUESTS FOR PRODUCTION TO
DEFENDANT RTZ ASSOCIATES, INC., SET THREE

1

## PROOF OF SERVICE

2

*Intus Care, Inc. v. RTZ Associates, Inc.*
U.S.D.C. – Northern District of California Case No. 4:24-cv-1132-JST

3

4

    I, Andrew Beshai, declare as follows:

5

    I am employed in Los Angeles County, Los Angeles, California.  I am over the age of eighteen years and not a party to this action.  My business address is MANATT, PHELPS & PHILLIPS, LLP, 2049 Century Park East, Suite 1700, Los Angeles, California  90067. On **November 21, 2025**, I served the within:

6

7

    **PLAINTIFF INTUSCARE INC.'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT RTZ ASSOCIATES, INC., SET THREE**

8

9

on the interested parties in this action addressed as follows:

| | |
|---|---|
| David C. Lee, Esq.<br>NOSSAMAN LLP<br>50 California Street, 34th Floor<br>San Francisco, California 94111<br>Phone: 415.398.3600<br>Fax:    415.398.2438<br>Email: dlee@nossaman.com<br><br>Assistant: Marlene Wiman<br>Email: mwiman@nossaman.com | *Attorneys for Defendant*<br>RTZ ASSOCIATES, INC |
| Kasia Penn, Esq.<br>NOSSAMAN LLP<br>18101 Von Karman Avenue, Suite 1800<br>Irvine, California 92612<br>Phone: 949.833.7800<br>Fax:    949.833.7878<br>Email: kpenn@nossaman.com | *Attorneys for Defendant*<br>RTZ ASSOCIATES, INC. |

10

11

12

13

14

15

16

17

18

19

20

21

    ☒    **(BY ELECTRONIC MAIL)** By transmitting such document(s) electronically from my e-mail address, abeshai@manatt.com at Manatt, Phelps & Phillips, LLP, Los Angeles, California, to the person(s) at the electronic mail addresses listed above.  The transmission was reported as complete and without error.

22

23

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on **November 21, 2025**, at Los Angeles, California.

24

25

                               */s/* Andrew Beshai

26

                                    Andrew Beshai

27

28

INTUSCARE INC.'S REQUESTS FOR PRODUCTION TO
DEFENDANT RTZ ASSOCIATES, INC., SET THREE

# EXHIBIT C

| PACE Program | Number of Internal Communications Produced by RTZ |
|---|---|
| BoldAge PACE (Beacon of LIFE PACE) | 16 |
| Neighborhood PACE | 13 |
| Community Pace at Home, Inc. | 7 |
| LifeCircles PACE | 17 |
| Thome PACE | 1 |
| Huron Valley PACE | 2 |
| Capital Health LIFE | 5 |
| Southeast PACE of Michigan | 4 |
| Sunrise PACE, Panorama PACE (Ezperanza) | 13 |
| Ascension Health Alliance | 0 |
| Brandman Centers for Senior Care | 1 |
| Uphams Corner Health Committee, Inc. | 1 |
| Central Valley PACE | 0 |
| Inspira Health Network LIFE | 1 |
| Orangeburg Senior Helping Center: A PACE | 3 |
| New Horizons PACE | 3 |
| Reliance CCP | 5 |
| Brio Living Services | 35 |
| Trinity Health | 1 |
| LSS Living | 1 |
| Humboldt Senior Resource Center | 1 |
| Catholic Charities | 1 |

# EXHIBIT D

| | |
|---|---|
| **From:** | Kasia Penn |
| **To:** | Beshai, Andrew; David C. Lee |
| **Cc:** | Weir, Charles |
| **Subject:** | RE: Intus v. RTZ |
| **Date:** | Tuesday, February 17, 2026 4:01:09 PM |
| **Attachments:** | image001.png |

**[EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.**

Hi Andrew,

Regarding the methodology, our client reached out to multiple team members across relevant departments, including sales, implementation, support, and management. Those individuals were asked to review their files for any communications that mentioned Intus.

**From:** Beshai, Andrew <ABeshai@manatt.com>
**Sent:** Tuesday, February 17, 2026 10:40 AM
**To:** Kasia Penn <kpenn@nossaman.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** [External] RE: Intus v. RTZ

Kasia,

Following up to see if you have an update on your responses to Intus RFPs 28-81 and 100-101?

Thanks,

Andrew

**From:** Kasia Penn <kpenn@nossaman.com>
**Sent:** Tuesday, February 3, 2026 3:20 PM
**To:** Beshai, Andrew <ABeshai@manatt.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** RE: Intus v. RTZ

**[EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.**

Hi Andrew,

We are working on our portion of the letter brief and will send it to you by Thursday, if not tomorrow.
As to discovery, we are following up with our client regarding the additional documents and confirmation of the search methodology. We will provide an update as soon as we have it.
David will respond to the portion of your email re Mike's deposition.

**From:** Beshai, Andrew <ABeshai@manatt.com>
**Sent:** Monday, February 2, 2026 2:59 PM
**To:** David C. Lee <dlee@nossaman.com>; Kasia Penn <kpenn@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** [External] Intus v. RTZ

David and Kasia,

Please see attached letter brief to Judge Tse regarding the ROG 1 issue we cannot resolve. We request that you add Defendant's position and send back to us by Thursday (2/5).

We have locked in Alex Rothberg's deposition for 2/27 in Boston (if you need to use Manatt's offices, please let me know a few days in advance, and I will arrange for that). Please let us know at your earliest convenience whether Mike Zawadski's deposition will be on 2/23 or 2/24.

As to discovery, please expect a privilege log from us for the internal communications later this week. When can we expect an update on Intus RFPs 28-81 and 100-101? As a reminder, those RFPs pertain to communications, documents exchanged, and contracts between RTZ and certain PACE entities we listed. On our last meet and confer, you committed to going back to your client and checking if there are any additional responsive materials. You also committed to providing the search methodology employed—custodians, search terms, and dates used to search for responsive materials.

Thanks,

Andrew

**Andrew Beshai**
*(He/Him/His)*
Associate

**Manatt, Phelps & Phillips,** LLP
2049 Century Park East
Suite 1700
Los Angeles, CA 90067
**D** (310) 231-5304 **F**
ABeshai@manatt.com

manatt.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**EXHIBIT E**

| | |
|---|---|
| **From:** | Kasia Penn |
| **To:** | Beshai, Andrew |
| **Cc:** | David C. Lee; Weir, Charles |
| **Subject:** | Re: [External] RE: Intus v. RTZ |
| **Date:** | Friday, February 20, 2026 5:01:22 PM |
| **Attachments:** | image001.png |

[EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.

Hi Andrew,

I forwarded your questions to the client.
We did not do a central email collection.
I am overseas until the end of next week. I am available to meet and confer on Monday (March 2) or Tuesday (March 3). Let me know what time works for you. Thank you.
Sent from my iPhone

> On Feb 21, 2026, at 6:46 AM, Beshai, Andrew <ABeshai@manatt.com> wrote:
>
> Kasia, could you please send some times you're available next week to meet and confer on the discovery issue below?
>
> **From:** Beshai, Andrew
> **Sent:** Tuesday, February 17, 2026 2:39 PM
> **To:** 'Kasia Penn' <kpenn@nossaman.com>; David C. Lee <dlee@nossaman.com>
> **Cc:** Weir, Charles <CWeir@manatt.com>
> **Subject:** RE: Intus v. RTZ
>
> Thanks Kasia. Could you please explain who you reached out to? Also did counsel personally reach out to them, or was there a point person from the organization that you designated? And what, specifically, were these folks asked to search for? Was it simply any communication that contained the word "Intus"? Was there any review protocol to confirm these folks' responses?
>
> And please also confirm that you did not do a central email collection, supervised by attorneys, with specific custodians, search terms, and dates. If you did do that, please provide the specific custodians, search terms, and dates.
>
> **From:** Kasia Penn <kpenn@nossaman.com>
> **Sent:** Tuesday, February 17, 2026 1:01 PM
> **To:** Beshai, Andrew <ABeshai@manatt.com>; David C. Lee <dlee@nossaman.com>
> **Cc:** Weir, Charles <CWeir@manatt.com>
> **Subject:** RE: Intus v. RTZ
>
> [EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.
>
> Hi Andrew,
>
> Regarding the methodology, our client reached out to multiple team members across relevant departments, including sales, implementation, support, and management. Those individuals were asked

to review their files for any communications that mentioned Intus.

---

**From:** Beshai, Andrew <ABeshai@manatt.com>
**Sent:** Tuesday, February 17, 2026 10:40 AM
**To:** Kasia Penn <kpenn@nossaman.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** [External] RE: Intus v. RTZ

Kasia,

Following up to see if you have an update on your responses to Intus RFPs 28-81 and 100-101?

Thanks,

Andrew

---

**From:** Kasia Penn <kpenn@nossaman.com>
**Sent:** Tuesday, February 3, 2026 3:20 PM
**To:** Beshai, Andrew <ABeshai@manatt.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** RE: Intus v. RTZ

**[EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.**

---

Hi Andrew,

We are working on our portion of the letter brief and will send it to you by Thursday, if not tomorrow.
As to discovery, we are following up with our client regarding the additional documents and confirmation of the search methodology. We will provide an update as soon as we have it.
David will respond to the portion of your email re Mike's deposition.

---

**From:** Beshai, Andrew <ABeshai@manatt.com>
**Sent:** Monday, February 2, 2026 2:59 PM
**To:** David C. Lee <dlee@nossaman.com>; Kasia Penn <kpenn@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** [External] Intus v. RTZ

David and Kasia,

Please see attached letter brief to Judge Tse regarding the ROG 1 issue we cannot resolve. We request that you add Defendant's position and send back to us by Thursday (2/5).

We have locked in Alex Rothberg's deposition for 2/27 in Boston (if you need to use Manatt's offices, please let me know a few days in advance, and I will arrange for that). Please let us know at your earliest convenience whether Mike Zawadski's deposition will be on 2/23 or 2/24.

As to discovery, please expect a privilege log from us for the internal communications later this week. When can we expect an update on Intus RFPs 28-81 and 100-101? As a reminder, those RFPs pertain to communications,

documents exchanged, and contracts between RTZ and certain PACE entities we listed. On our last meet and confer, you committed to going back to your client and checking if there are any additional responsive materials. You also committed to providing the search methodology employed—custodians, search terms, and dates used to search for responsive materials.

Thanks,

Andrew

**Andrew Beshai**
*(He/Him/His)*
Associate


**Manatt, Phelps & Phillips,** LLP
2049 Century Park East
Suite 1700
Los Angeles, CA 90067
**D** (310) 231-5304 **F**
ABeshai@manatt.com

manatt.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

# EXHIBIT F

1              **UNCERTIFIED ROUGH DRAFT**

2              THIS DRAFT IS UNEDITED AND UNCERTIFIED AND

3    MAY CONTAIN UNTRANSLATED STENOGRAPHIC SYMBOLS, AN

4    OCCASIONAL REPORTER'S NOTE, A MISSPELLED PROPER NAME

5    AND/OR NONSENSICAL WORD COMBINATIONS.

6              THIS IS AN UNEDITED VERSION OF THE

7    DEPOSITION TRANSCRIPT AND SHOULD NOT BE USED IN

8    PLACE OF A CERTIFIED COPY.  THIS DOCUMENT SHOULD NOT

9    BE DUPLICATED OR SOLD TO OTHER PERSONS OR

10   BUSINESSES.  THIS DOCUMENT IS NOT TO BE RELIED UPON

11   IN WHOLE OR IN PART AS THE OFFICIAL TRANSCRIPT.

12   THIS UNCERTIFIED ROUGH DRAFT VERSION HAS NOT BEEN

13   REVIEWED OR EDITED BY THE CERTIFIED SHORTHAND

14   REPORTER FOR ACCURACY.  THIS UNEDITED TRANSCRIPT IS

15   COMPUTER GENERATED AND RANDOM TRANSLATIONS BY THE

16   COMPUTER MAY BE ERRONEOUS OR DIFFERENT THAN THAT

17   WHICH WILL APPEAR ON THE FINAL CERTIFIED TRANSCRIPT.

18             DUE TO THE NEED TO CORRECT ENTRIES PRIOR

19   TO CERTIFICATION, THE USE OF THIS DRAFT IS ONLY FOR

20   THE PURPOSE OF AUGMENTING COUNSEL'S NOTES AND CANNOT

21   BE USED TO CITE IN ANY COURT PROCEEDING OR BE

22   DISTRIBUTED TO ANY OTHER PARTIES.

23             ACCEPTANCE OF THIS DRAFT IS AN AUTOMATIC

24   FINAL COPY ORDER.

09:19:11 25             THE VIDEOGRAPHER:  GOOD MORNING.  WE ARE

Rough Draft -
1

♠ 09:47:36  1   GOING ON THE RECORD AT 9:47 A.M. ON FEBRUARY 23RD,

           2   2026.

           3         PLEASE NOTE THAT MICROPHONES ARE SENSITIVE

           4   AND MAY PICK UP WHISPERING AND PRIVATE

09:47:49   5   CONVERSATIONS.  PLEASE MUTE YOUR PHONES AT THIS

           6   TIME.  AUDIO AND VIDEO RECORDING WILL CONTINUE TO

           7   TAKE PLACE, UNLESS ALL PARTIES AGREE TO GO OFF THE

           8   RECORD.

           9         THIS IS MEDIA NO. ONE OF THE

09:48:00  10   VIDEO-RECORDED DEPOSITION OF MICHAEL ZAWADSKI, TAKEN

          11   BY COUNSEL FOR PLAINTIFF IN THE MATTER INTUSCARE

          12   INCORPORATED VERSUS RTZ ASSOCIATES, INCORPORATED,

          13   FILED IN THE UNITED STATES DISTRICT COURT, NORTHERN

          14   DISTRICT OF CALIFORNIA, CASE NO. 424CV1132JST.

09:48:27  15         MY NAME IS PETER YAROSCHUK, REPRESENTING

          16   VERITEXT.  I AM THE VIDEOGRAPHER.  I AM NOT RELATED

          17   TO ANY PARTY IN THIS ACTION, NOR AM I FINANCIALLY

          18   INTERESTED IN THE OUTCOME.

          19         IF THERE ARE ANY OBJECTIONS TO PROCEEDING,

09:48:38  20   PLEASE STATE THEM AT THE TIME OF YOUR APPEARANCE.

          21         COUNSEL AND ALL PRESENT, PLEASE NOW STATE

          22   YOUR APPEARANCES AND AFFILIATIONS FOR THE RECORD,

          23   BEGINNING WITH THE NOTICING ATTORNEY.

            24              MR. WEIR:  CHARLES WEIR OF MANATT PHELPS &

09:48:52 25  PHILIPS ON BEHALF OF PLAINTIFF INTUSCARE.


                                                    Rough Draft -
2
⬆ 09:48:54  1              MR. LEE:  GOOD MORNING.  DAVID LEON BEHALF

            2  OF DEFENDANT, RTZ ASSOCIATES, INC.

            3              THE VIDEOGRAPHER:  THANK YOU.

            4              WILL THE COURT REPORTER PLEASE INTRODUCE

09:49:00  5  YOURSELF, ADMINISTER THE OATH TO THE WITNESS, AND

            6  THEN COUNSEL MAY PROCEED.

            7              THE REPORTER:  GOOD MORNING.  MY NAME IS

            8  CATHERINE NOLASCO, AND MY CSR NUMBER IS 8239.

            9              WOULD YOU PLEASE RAISE YOUR RIGHT HAND.

09:49:09 10

           11                    MICHAEL ZAWDKSI,

           12  HAVING BEEN ADMINISTERED AN OATH, WAS EXAMINED AND

           13  TESTIFIED AS FOLLOWS:

           14

09:49:24 15                       EXAMINATION

           16  BY MR. WEIR:

           17      Q    GOOD MORNING, MR. ZAWADSKI.

           18           HAVE YOU BEEN DEPOSED BEFORE?

           19      A    I HAVE NOT.

09:49:34 20      Q    I SUSPECT THAT YOU WENT OVER SOME OF THE

           21  GROUND RULES WITH YOUR COUNSEL, AND I JUST TO MOVE

         11    OF, PROBABLY HAS A BETTER UNDERSTANDING OF.

         12        Q    SO, FOR EXAMPLE, THERE'S SOME PART OF

         13    COLLABRIOS THAT THERE WAS ANOTHER PROJECT OR ANOTHER

         14    PRODUCT REFERRED TO AS PACE LOGIC.

10:12:01 15            ARE YOU FAMILIAR WITH THAT PRODUCT?

         16        A    I'M FAMILIAR WITH THAT PRODUCT, AND I

         17    THINK YOU'RE REFERENCING THE TRANSACTION THAT HAD TO

         18    DO WITH BUYING THE ASSETS FROM TABULA RASA, WHICH

         19    TOOK PLACE ^ NOT AS PART OF THE SAME TRANSACTION.

10:12:16 20        Q    OH, OKAY?

         21        A    RTZ ASSOCIATES WAS BOUGHT.   IT TOOK PLACE

         22    APPROXIMATELY 30 TO 45 DAYS LATER.

         23        Q    GOT IT.  I WAS ASSUMING ALL OF THOSE CAME

         24    TOGETHER.  SO THAT IS?

10:12:27 25        A    NO.


                                              Rough Draft -
21
 ↑ 10:12:27 1        Q    NOT THE CASE.

          2        A    AND I WAS INFORMED RATHER THAN LED WHEN

          3    THAT ACTUALLY TOOK PLACE.

          4        Q    OKAY.  OKAY.  SO THE -- SO LET'S SET THE

10:12:58  5    TABULA RASA ASSET ACQUISITION TO THE SIDE?

          6        A    SURE.

          7        Q    WHAT DO YOU KNOW ABOUT THE CORPORATE

          8    CREATION OF COLLABRIOS THAT YOU CAN TELL ME?

```
            9     A    THAT USER.

13:10:26   10     Q    WENT IN IDENTIFIED, TOUCHED?

           11     A    YEAH.

           12     Q    SAW?

           13     A    I CAN'T.

           14     Q    WITH OKAY.  AND DID YOU HAVE YOUR FOLKS

13:10:35   15   PULL THOSE AUDIT TRAILS FOR THE INTUS USERS YOU

           16   IDENTIFIED TO SEE WHAT INTUS HAD ACTUALLY DONE ON

           17   THE SYSTEM?

           18     A    I ASKED SOMEBODY WHEN WE WERE GOING

           19   THROUGH THIS PROCESS HAVE THEY BEEN IN A COPY AND

13:10:47   20   SOMEONE SAID YES, YOU KNOW, IN TERMS OF GOING

           21   THROUGH.  I THINK THEY DID SET UP AN ACCOUNT FOR

           22   THEM AT I THINK -- I THINK IT WAS FOR ROBBIE AND

           23   BEACON, ALTHOUGH I'M NOT A HUNDRED PERCENT SURE, AND

           24   THEY DID WANDER AROUND THE WHOLE SYSTEM.  I DIDN'T

13:11:00   25   GO THROUGH THE AND ASK THEM TO RUN AND PREPARE A
```

Rough Draft -
97
```
↑ 13:11:03   1   WHOLE REPORT FOR ME.  I PROBABLY SHOULD HAVE, BUT I

            2   DIDN'T.

            3     Q    WITH AND IS IT -- DO YOU STILL HAVE --

            4   COULD WE DO THAT NOW?

13:11:10    5     A    DEPENDING ON HOW LONG THEY HAD BACKED UP

            6   THE AUDIT TRAILS BECAUSE THE AUDIT TRAILS GET LARGE.
```

7     IT'S POSSIBLE THAT YOU COULD STILL DO IT NOW.  IT'S

8     ALSO -- THE AUDIT TRAILS HAVE A SLIGHTLY DIFFERENT

9     TIMING THAN SYSTEM DATA, AND NOT BEING DAY TO DAY AT

13:11:25 10   COLLABRIOS ANYMORE I DON'T KNOW HOW THEY ADJUSTED

11    THOSE TIMES.

12         Q    WHAT ABOUT BACK AT RTZ?

13         A    IN THE RTZ DAYS, I THINK WE KEPT IT FOR,

14    LIKE, THREE YEARS OR SOMETHING LIKE THAT.  THE AUDIT

13:11:36 15   TRAILS END UP BEING LARGER THAN THE SYSTEM DATA

16    BECAUSE IT'S EVERYWHERE YOU GO.  SO YOU HAVE TO MAKE

17    THESE CHOICES.

18         Q    BUT IT WOULD HE HAVE BEEN -- YOU WOULD

19    HAVE HAD -- SO, LIKE, SEPTEMBER OF 2022?

13:11:49 20        A    WHEN WE LOOKED AT IT IN THIS CONTEXT, IT

21    WAS AVAILABLE FOR THEM TO LOOK AT.

22         Q    WITH OKAY?

23         A    YEAH.

24         Q    ALL RIGHT.  SO THAT WOULD HAVE BEEN POST

13:11:56 25   SEPTEMBER OF '22?

Rough Draft -
98
↟ 13:12:02 1        A    YEAH.

2          Q    AND DO YOU KNOW IF ANYTHING WAS DONE TO

3     PRESERVE THE AUDIT TRAILS TO FIGURE OUT WHETHER --

4     WHERE THEY HAD GONE AND WHAT THEY DID --

13:12:11  5      A    I DON'T KNOW --

          6      Q    -- AND WHAT WAS --

          7      A    -- SPECIFICALLY WHAT WAS SAVED.

          8      Q    BACK TO OUR -- BACK TO OUR DOCUMENT.

          9      A    THAT'S GOOD.

13:12:28 10      Q    SO THE NEXT ONE I THINK WE'RE IN SECTION

         11    THREE HERE, PARAGRAPH THREE.  IT LOOKS LIKE WE'RE

         12    JUST REFINING THE DEFINITION OF CONFIDENTIAL

         13    INFORMATION.

         14      A    SURE.

13:12:45 15      Q    ANY -- ANY ISSUES WITH -- WITH THIS

         16    ADDITION OR THESE CHANGES IN PARAGRAPH THREE?

         17      A    I THINK -- I MEAN, I RECALL HAVING SOME

         18    CONCERNS AND STILL WOULD.  I MEAN, PROTECTING SOME

         19    OF THE THINGS THAT DON'T FALL UNDER CLASSIC

13:13:11 20    INTELLECTUAL PROPERTY PROTECTIONS AND THEN TALKING

         21    ABOUT PUBLIC DOMAIN AND WHAT WOULD COUNT AS PUBLIC

         22    DOMAIN, I THINK THIS IS CONFUSING TO ME HOW WE

         23    EFFECTUATE THE END WE WANT TO, AND I THINK THE LAW

         24    DOES A VERY BAD JOB OF PROTECTING LOOK-FEEL WORKFLOW

13:13:27 25    FUNCTIONS.  AND I THINK THIS IS PROBABLY ONE OF THE

                                                    Rough Draft -
99
⬆ 13:13:31  1   MOST COMPLICATED SECTIONS OF THIS TO GET RIGHT.

          2      Q    SO WERE YOU TRYING TO EXTEND WHAT WOULD BE

           9      Q     WHAT DID YOU DO PERSONALLY TO LOOK FOR

14:46:24 10   DOCUMENTS RELATED TO COMMUNICATIONS WITH PACE

          11   PROGRAMS ABOUT INTUS?

          12      A     I WENT INTO THE EMAIL AND PUT IN SEARCH

          13   PARAMETERS USING INTUS USING NDA, USING OTHER THINGS

          14   THAT CAME UP LIKE THAT.

14:46:46 15      Q     WHEN YOU SAY YOU WENT INTO THE EMAIL LIKE

          16   JUST WENT INTO OUTLOOK AND PUT IN?

          17      A     GMAIL, BUT YEAH.

          18      Q     GMAIL, OKAY.

          19      A     YEAH.  COLLABRIOS SWITCHED TO OUTLOOK FROM

14:46:57 20   GMAIL, BUT GMAIL WAS WHAT WE USED UP UNTIL A MORE

          21   RECENT PERIOD.

          22      Q     OKAY.  SO LIKE THIS NEIGHBORHOOD PACE

          23   EXHIBIT --

          24      A     I'M PRETTY SURE THAT'S A GMAIL.

14:47:06 25      Q     OKAY.


                                                    Rough Draft -

147
↑ 14:47:07  1      A     THAT'S '22.

           2      Q     YEAH SO '22 IT'S BACK IT'S EXHIBIT 56.  SO

           3   MIKE AT RTC ASSOCIATES DOT-COM WOULD HAVE BEEN A

           4   GMAIL?

14:47:14  5      A     YEAH.

           6      Q     INTERFACE?

```
       7      A    YEP.

       8      Q    OKAY.  DO YOU KNOW WHAT SOME OF THESE

       9   OTHER EMPLOYEES THAT YOU MENTIONED MELANIE, LAWYER

14:47:27 10  REMARKS DYLAN, AMANDA, EMMA -- DO YOU KNOW WHAT THEY

      11   DID TO SEARCH FOR COMMUNICATIONS WITH PACE PROGRAMS?

      12      A    I WOULD IMAGINE THEY DID THE SAME THING.

      13   I MEAN GMAIL SEARCH CAPABILITIES ARE PRETTY GOOD,

      14   PRETTY WELL UNDERSTOOD.

14:47:43 15     Q    DO YOU KNOW -- YOU MENTIONED A COUPLE OF

      16   SEARCH TERMS.  NDA BEING ONE OF THEM AND INTUS BEING

      17   ONE OF THEM.

      18           ANY OTHER SEARCH TERMS YOU RAN?

      19      A    I DID RUN OTHER SEARCH TERMS, BUT I DON'T

14:47:55 20  KNOW WHAT THEY WERE OFF THE TOP OF MY HEAD.

      21      Q    DID YOU WRITE THOSE DOWN?  ARE THEY

      22   DOCUMENTED IN ANY WAY?

      23      A    THEY'RE NOT DOCUMENTED IN A SPECIFIC WAY.

      24      Q    DID YOU LIMIT THE TIME PERIOD OF THE

14:48:08 25  SEARCH?
```

Rough Draft -

**148**

```
 14:48:09  1      A    I DID.  I THINK I RAN IT FROM 2021

        2   FORWARD.

        3      Q    DID YOU DO ANY SEARCHES FOR SPECIFIC

        4   PEOPLE, LIKE ALL OF MY COMMUNICATIONS WITH ROB PEE?
```

14:48:23 5        A    I DID DO THAT.

         6        Q    YOU SAID THAT COLLABRIOS HAS MOVED TO A

         7   OUTLOOK-BASED SYSTEM?

         8        A    YES.

         9        Q    WAS -- WERE THE COMMUNICATIONS THAT

14:48:48 10  EXISTED ON THE GMAIL BASE SYSTEM POURED OVER INTO

        11   THE OUTLOOK SYSTEM?

        12        A    NOT ALL OF THEM.  THERE'S A TIME CUT-OFF.

        13   I'M NOT SURE WHERE ULTIMATELY THEY DID THAT TIME

        14   CUT-OFF.

14:49:02 15       Q    DO YOU KNOW IF THE GMAIL SYSTEM IS STILL

        16   AVAILABLE FOR SEARCHING?

        17        A    I DO NOT KNOW IF IT'S STILL AVAILABLE.

        18        Q    WHO WOULD KNOW THAT?

        19        A    KEVIN LATHROP WOULD KNOW THAT 'CAUSE HE

14:49:18 20  SUPERVISES THE CTO.

        21        Q    WHEN DID KEN COME ABOARD?

        22        A    CALL IT JANUARY OF '25, MAYBE.

        23        Q    SO SHORTLY AFTER THE COLLABRIOS

        24   ACQUISITION?

14:49:32 25       A    YEAH.


                                              Rough Draft -

149
↑ 14:49:32 1        Q    OR DEAL?

         2        A    YEAH.

# EXHIBIT G

1

2

3

4        *** UNCERTIFIED DRAFT COPY - DO NOT CITE ***

5

6

7              ROUGH DRAFT TESTIMONY OF

8                 MELANIE MARTINEZ

9              TAKEN ON MARCH 6, 2026

10

11   ••••••••••••••••••••••••••••••••••••••••

12

13   NOTICE: THESE DRAFT PAGE/LINE NUMBERS WILL

14         NOT MATCH THE FINAL TRANSCRIPT.

15

16    DO NOT PREPARE VIDEO CUTS OR TRIAL CITES

17             FROM THIS DRAFT VERSION.

18

19  IF YOU NEED AN EXPEDITED FINAL CERTIFIED TRANSCRIPT,

20         PLEASE CONTACT THE COURT REPORTER.

21

22

23

24

25

1

                                    MELANIE MARTINEZ,

1

2                     having been sworn, was examined

3                        and testified as follows:

4

5                                    EXAMINATION

6    BY MR. BESHAI:

7         Q.   Good morning, Ms. Martinez.

8         A.   Hello.

9         Q.   Where are you based today?

10        A.   California.

11        Q.   And are you at home, in an office?

12        A.   I'm at home, and my office.

13        Q.   Is there anyone else with you in the room?

14        A.   No.

15        Q.   Have you ever had your deposition taken

16   before?

17        A.   No.

18        Q.   Well, let me go through some initial advisory

19   points and then we'll jump in.

9      A.   Yes.

10     Q.   So something changed, right?

11     A.   Yes.

12     Q.   Okay.  And in your own words and to the best

13  of your knowledge, what changed?

14     A.   We combined some companies and created a new

15  company.  I honestly don't know.  That's all I know.

16     Q.   Okay.  That's fine.  And this is not a test

17  and I know you're not a mergers and acquisitions lawyer.

18  But because you're on employee, you're on the ground, so

19  to your knowledge RTZ combined with some other companies

20  and created Collabrios, is that right?

21     A.   I don't know.  We are called Collabrios now.

22  I signed new paperwork under Collabrios, so I don't know

23  what that means.  I have no idea.

24     Q.   You signed new employment paperwork under

25  Collabrios?

5

1      A.   Yes.

2      Q.   Okay.  Is your email account

3  @Colabrios.whatever?

4      A.   Yes.

5      Q.   In your day to day, do you interact with

6    anybody who had an RTZ account?

7         A.    No.

8         Q.    You've been there at Collabrios for over a

9    year, correct?

10        A.    Yes.

11        Q.    So you received a W2 for 2025, at least?

12        A.    Theoretically, although I haven't seen it yet.

13        Q.    Thank you receive one for 2024?

14        A.    Yes.

15        Q.    Did it say Collabrios?

16        A.    I don't remember.

17        Q.    Sorry, Melanie.  Let me just finish the

18    question and then I will get your answer.

19               It sound like you don't remember, but let me

20    just ask it.  Do you recall if it said Collabrios in the

21    W-2 form for 2024?

22        A.    I do not remember.

23        Q.    Okay.  Before the transition from RTZ to

24    Collabrios, what was your role at RTZ?

25        A.    I don't really know how to answer that because

6

1    I didn't really have one specific role.  We all just

2    assisted where needed.  So implementation but also

3    account management, QA.  I mean, yeah.  I don't know

4    what my role was, my title was.  I don't remember.

5         Q.   When did you start at RTZ?

6         A.   2012.

7         Q.   So you were there from 2012 until this merger

8    you described?

9         A.   Yes.

10        Q.   Do you recall when the merger was?

11        A.   I believe it was January of 2025.

12        Q.   Between 2012 and January 2025, would you say

13   that what you just described for me about having

14   multiple roles, that remained consistent throughout the

15   entire 13 years?

16        A.   Yes.

17        Q.   You mentioned three different roles.  You said

18   implementation manager, account manager and QA.

19        A.   Those were the tasks I was doing that would

20   fall under those roles, yes.

21        Q.   Could we walk through those?  I don't need the

22   nitty-gritty granular every day, but generally what

23   those entailed?

24             And let's start with implementation manager. .

25   If we had a new client that was going to use the system,

7

1  I would help them set it up, configure things, train

2  them on different areas.   That's really it.

3       Q.   What about QA?

4       A.   Testing new features or testing potential bugs

5  in the system and writing up tickets.

6       Q.   And what was the third one you said?

7       A.   Account management.

8       Q.   Yeah, what is that?

9       A.   Just basically doing weekly calls with clients

10  and answering questions.

11       Q.   Was part of your job facilitating access for

12  clients?

13       A.   Yes.

14       Q.   When we say "clients," I'm using that phrase

15  to mean P.A.C.E. facilities or P.A.C.E. entities.   Is

16  that who you understand it?

17       A.   Yes.

18       Q.   Like Senior Care Partners would be an example?

19       A.   Yes.

20       Q.   As part of your job, did clients sometimes ask

21  for access for their vendors?

22       A.   Yes.

23       Q.   Were you the one who helped them obtain that

24    access?

25         A.    Sometimes.

8

1         Q.    How many other implementation managers were

2    there, let's say, in 2024?

3         A.    I don't really know everyone's title depend.

4    I know there were others that helped with

5    implementation.  Maybe me and one other person.

6         Q.    Would that be Laura Emery?

7         A.    Yes.

8         Q.    So other than you and Laura Emery, you don't

9    recall anyone else really having this in their bucket of

10   tots can?

11        A.    I don't, I don't recall anyone else.

12        Q.    When did Laura Emery start at RTZ?

13        A.    I don't know.  It was before me.

14        Q.    She was there when you got there?

15        A.    Uh-huh.

16        Q.    This is a perfect example of one of the

17   examples we talked about.  You've got to say yes.

18        A.    Yes.

19        Q.    Okay, cool, thanks.

1    synonymous with like document or record retention

2    policy.  We have a policy that says after X number of

3    months or years, you can delete these emails or you can

4    delete these documents does that make sense, that

5    principle?

6         A.   Yes.

7         Q.   So now that we've clarified the term, are you

8    aware of whether there was a preservation or document

9    retention policy with regard to audit logs?

10        A.   I was not aware of any policy, month.

11        Q.   What about emails?

12        A.   Also not aware of of a policy there.

13        Q.   Is it the case that when you strains SAPXed

14   from RTZ it Collabrios, your email provider transitioned

15   from Gmail to outlook?

16        A.   Yes.

17        Q.   As you currently sit here today, are you able

18   to access your old emails from back in the Gmail-RTZ

19   days or was everything wiped clean and you started over?

20        A.   I can't access my Gmail anymore.

21        Q.   So when you started, I think you said January

22    2025, it was a clean slate for your emails?

23        A.    Yes.   Well, to access the Gmail, yes, I can't

24    access it.

25        Q.    That's my question.   So you started like a new

37

1    company, new user -- well, new domain name, new email

2    provider, right?

3        A.    Yes.

4        Q.    And I think you already answered this, but you

5    don't know if there was a document retention policy or

6    preservation policy with regard to emails at RTZ?

7        A.    I was not aware of one.

8        Q.    Okay.   You said that you remember hearing

9    about the lawsuit, correct?

10       A.    Yes.

11       Q.    The lawsuit between Intus and RTZ,right ?

12       A.    Yes.

13       Q.    Do you remember when you first learned about

14    it?

15       A.    I do not remember.

16       Q.    At any point did anyone from the legal team or

17    from RTZ alert you about or tell you about something

18    called a litigation hold?

# EXHIBIT H



**ATTORNEYS AT LAW**

50 California Street
34th Floor
San Francisco, CA 94111
T 415.398.3600
F 415.398.2438

David C. Lee
D 415.438.7235
dlee@nossaman.com

Refer To File # 503730-0001

**VIA EMAIL**
robbie@intus.care

September 14, 2022

Robbie Felton
Intus Care, Inc.
225 Dyer Street
Providence, RI 02903

      Re:    RTZ Associates, Inc.

Dear Mr. Felton:

      We are legal counsel to RTZ Associates, Inc. ("RTZ"). As you are aware, RTZ provides electronic health record software to numerous PACE programs nationwide through software-as-a-service ("SaaS") agreements with end-user customers. RTZ's agreements with those PACECare customers contain confidentiality and access limitation provisions that bar those customers from granting third-party access to RTZ's software without RTZ's written consent.

      Notwithstanding, we have learned that Intus Care, Inc. ("Intus") has gained access to RTZ's PACECare product on multiple occasions without RTZ's written approval or consent. Indeed, RTZ specifically communicated to you (directly) that a Nondisclosure Agreement ("NDA") was required prior to any Intus access to PACECare. To date, no NDA has been executed, and in the absence of one, Intus has no rights or permission to access RTZ's software product.

      Accordingly, we therefore demand that Intus cease and desist from accessing or attempting to access RTZ's PACECare solution through RTZ's customer base unless and until RTZ provides its written consent to such access. In the absence of such consent, any access by Intus could expose it to liability under multiple legal theories, including but not limited to, violation of California's Business & Professions Code section 17200, et seq. (unfair business practices), misappropriation of trade secrets (both state and federal claims), and inducing breach of contract.

      We further demand that Intus preserve all communications and documents (both internal and external) relating to each and every instance of Intus's access to RTZ's PACECare software, including but not limited to, all emails, texts, notes, IMs, chat logs, work files, project files, and shared materials. Specifically, we insist that Intus discontinue any retention/destruction policies

Robbie Felton
September 14, 2022
Page 2

or systems that would or could result in the destruction of such evidence.  Obviously, Intus's
destruction/loss/deletion/alteration of such communications and documents would constitute
spoliation of evidence.

As you can appreciate, RTZ aggressively protects its technology and products.  As such,
our expectation is that Intus will respect the proprietary nature of RTZ's PACECare product.  To
the extent it does not, we will respond accordingly without further notice to you.

Sincerely,

David C. Lee
Nossaman LLP

DCL:dl

60980873.v1

# EXHIBIT "1"

| | |
|---|---|
| **From:** | Kasia Penn |
| **Sent:** | Sunday, March 8, 2026 1:23 PM |
| **To:** | Andrew Beshai |
| **Cc:** | David C. Lee; Charles Weir |
| **Subject:** | Re: [External] RE: Intus v. RTZ M&C Recap |

Hi Andrew,

I have already provided you with the relevant information, including the fact that I have several hundred documents that are likely communications with PACE facilities.
Please let me know if you still intend to include the search methodology in your letter brief. Please send the final version of your letter brief. As I mentioned on Friday, please ensure that we receive two pages in the brief for our position.
Sent from my iPhone


On Mar 7, 2026, at 2:56 PM, Beshai, Andrew <ABeshai@manatt.com> wrote:


Thanks Kasia.

Here's what I'm struggling with. You've made two productions since our Set Two RFPs. One production was made on 10/27/2025, comprising 138 documents, and another was made on 12/24/2025, comprising 1,029 documents. From these documents, the total number of communications with PACE entities are below.

You stated in your most recent email that back in August/September 2025, you asked your client to pull all communications between RTZ and PACE entities without search filters and without custodians, dating back to 2021. The numbers below just don't square with that request. And even if you limited the search to the eight entities in our supplemental initial disclosures (Community, Neighborhood, LifeCircles, Thome, Huron, Bold Age, Senior Care Partners, and Sunrise), which we would oppose as a methodology, I would expect to see far more communications. As just one example, the disparity between SCP and the remaining PACE entities is so stark that it means something must be missing.

<image003.png>


---

**From:** Kasia Penn <kpenn@nossaman.com>
**Sent:** Saturday, March 7, 2026 10:17 AM
**To:** Beshai, Andrew <ABeshai@manatt.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** RE: Intus v. RTZ M&C Recap

[EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.

1. We have received documents responsive to your Second Request in several batches, most of which have already been reviewed and produced. To clarify, the approximately 400 documents we received yesterday are not the first batch of documents representing communications with the PACE facilities from Intus' Set Two. Rather, they represent the most recent batch provided by RTZ. As I mentioned, several days ago we were also provided with a batch which I already reviewed and which results in a handful of new communications that we will produce on Monday. The Second Set of Requests was not limited by custodian, and RTZ has been conducting its searches accordingly. As stated in our written responses to the Second Set, we have limited the date range to 2021 to the present, and that limitation has been applied to our production.

2. Yes, RTZ searched for all communications with all PACE entities related to Intus.

---

**From:** Beshai, Andrew <<u>ABeshai@manatt.com</u>>
**Sent:** Friday, March 6, 2026 6:48 PM
**To:** Kasia Penn <<u>kpenn@nossaman.com</u>>; David C. Lee <<u>dlee@nossaman.com</u>>
**Cc:** Weir, Charles <<u>CWeir@manatt.com</u>>
**Subject:** [External] RE: Intus v. RTZ M&C Recap

Thanks Kasia. A few clarifying questions (sorry to belabor the point, but we need to be clear on the search parameters before we agree to drop the issue):

1. In the Fall of 2025, you asked RTZ to search for all communications with the PACE facilities listed in Intus' Set Two, and you've now received 400 documents representing those communications that you plan to review? And this request was not limited by custodian or by date range, correct?

2. Did you at any point ask RTZ to search for all communications with all PACE entities relating to Intus, as requested in RFPs 100 and 101?

---

**From:** Kasia Penn <<u>kpenn@nossaman.com</u>>
**Sent:** Friday, March 6, 2026 6:25 PM
**To:** Beshai, Andrew <<u>ABeshai@manatt.com</u>>; David C. Lee <<u>dlee@nossaman.com</u>>
**Cc:** Weir, Charles <<u>CWeir@manatt.com</u>>
**Subject:** RE: Intus v. RTZ M&C Recap

[EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.

---

Hi Andrew,

In the fall of 2025, RTZ conducted a search for documents responsive to your Second Set of Requests for Production. Among other things, RTZ searched for all communications with the PACE facilities identified in the Second Set. Consistent with the scope of the Requests in the Second Set, RTZ provided us with documents, including agreements identified below (with Uphams [RTZ0008130] and with Brandman Centers for Senior Care [RTZ0007432]). Today, RTZ has provided us with approximately 400 additional documents which we will review for responsiveness.

---

**From:** Beshai, Andrew <ABeshai@manatt.com>
**Sent:** Friday, March 6, 2026 6:05 PM
**To:** Kasia Penn <kpenn@nossaman.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** [External] RE: Intus v. RTZ M&C Recap

Thanks Kasia. As a recap, as of now we will be moving on all three grounds in our letter: methodology, preservation, and successor liability.

We cannot agree on the successor issue; that will have to be briefed. So there are no surprises, we intend to add the following language, verbatim, to the section on successor liability. We learned this information this morning: "According to Melanie Martinez, who has been with RTZ since 2012, in January 2025, she signed new employment paperwork with Collabrios, her email account is a Collabrios domain name, she no longer interacts with anyone who has an RTZ domain name. (Rough Tr. 5-7). Ms. Martinez confirmed that she is now working for Collabrios and that RTZ was combined with other companies to 'create a new company,' referring to Collabrios. (*Id*.)"

As to preservation, if you can provide use with the date ranges of the emails for the custodians below that were preserved as well as the date ranges of the audit logs/audit trails that were preserved, we will consider removing the preservation issue from the letter brief. If we have to move on the preservation issue, we intend to add the following: "Ms. Martinez also confirmed in her deposition that as of January 1, 2025, when the company transitioned from RTZ to Collabrios, her inbox was a 'clean slate' and she could 'no longer access' her prior Gmail inbox she had with RTZ. (Rough Tr. 36:13-37:3.)"

As to methodology, you mentioned on the call that you asked your client representative back in August/September 2025 to pull all communications between RTZ and any PACE entity, and that you followed up again with the same request. You also indicated that you have roughly 400 documents to review and produce. If you could articulate for us exactly what was requested from the client and when, we will consider removing the methodology issue from the letter brief.

---

**From:** Kasia Penn <kpenn@nossaman.com>
**Sent:** Friday, March 6, 2026 5:48 PM
**To:** Beshai, Andrew <ABeshai@manatt.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** RE: Intus v. RTZ M&C Recap

**[EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.**

Hi Andrew,

Thank you for the call. Here is a list of custodians whose accounts RTZ keep active:

Michael Zawadski
Melanie Martinez
Alex Lueth
Juliann Hamblin
Amanda Muniz
Cheyenne Bradley
Emma Oto-Pale
Laura Emery
Doug Kolen
Carinna Sias
Dylan Clements

---

**From:** Beshai, Andrew <ABeshai@manatt.com>
**Sent:** Friday, March 6, 2026 5:16 PM
**To:** Kasia Penn <kpenn@nossaman.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** [External] RE: Intus v. RTZ M&C Recap

Sure, please try me at 714-915-4945.

---

**From:** Kasia Penn <kpenn@nossaman.com>
**Sent:** Friday, March 6, 2026 5:13 PM
**To:** Beshai, Andrew <ABeshai@manatt.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** RE: Intus v. RTZ M&C Recap

**[EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.**

---

Anderw,

Are you available for a short call now?

---

**From:** Beshai, Andrew <ABeshai@manatt.com>
**Sent:** Friday, March 6, 2026 5:11 PM
**To:** Kasia Penn <kpenn@nossaman.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** [External] RE: Intus v. RTZ M&C Recap

Thanks Kasia.

1. The exchange with Ileana from October 2, 2024 appears to be an agreement that "as a starting point" the parties would limit production to RFP Nos. 4, 5, 9, and 10 to clients listed in Intus' disclosures. <u>This was never meant to be an agreement to bind the parties throughout litigation. In fact, we served our Set Two RFPs, which are the subject of the letter brief, almost a year later on August 22, 2025. Our position is that the preliminary agreement you had with Ileana—which by its terms was never intended to be permanent—does not apply to new discovery propounded a year later.</u> In the interest of efficiency and transparency, we reserve the right to add a footnote to our letter brief reciting the underlined language verbatim if you raise this issue in your response.

2. Turning to your substantive response below, my question was not whether RTZ produced communications with PACE entities outside the eight identified in Intus' disclosures. My question was whether RTZ *searched for* communications with PACE entities outside the eight identified in Intus' disclosures. These are two very different things. If you did not search for such communications, then we have no idea what methodology yielded the communications with PACE entities outside the eight identified in Intus' disclosures. It could be that these communications with PACE entities outside the eight identified in Intus' disclosures happened to hit on some other search term you used and were, therefore, captured in the production. But we are entitled to a reasonable search for communications between RTZ and PACE entities—not documents that may have incidentally produced through some unknown methodology. By way of example, we don't have a single email between RTZ and Brandman, and we have five emails between RTZ and Uphams—four of which are mass emails to numerous PACE entities. These numbers do not suggest that RTZ searched for communications between RTZ and Brandman or Uphams.

---

**From:** Kasia Penn <kpenn@nossaman.com>
**Sent:** Friday, March 6, 2026 4:26 PM
**To:** Beshai, Andrew <ABeshai@manatt.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** RE: Intus v. RTZ M&C Recap

**[EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.**

---

Hi Andrew,

Please see the attached email exchange with Ileana.
You are not correct regarding your second question. RTZ produced PACECare Agreement with Uphams RTZ0008130 and with Brandman Centers for Senior Care RTZ0007432. Uphams and Brandman were not among the eight entities identified in Intus' supplemental initial disclosures.

---

**From:** Beshai, Andrew <ABeshai@manatt.com>
**Sent:** Thursday, March 5, 2026 7:11 PM
**To:** Kasia Penn <kpenn@nossaman.com>; David C. Lee <dlee@nossaman.com>

**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** [External] RE: Intus v. RTZ M&C Recap

Thanks Kasia. I have two questions:

1. Do you have this agreement with Ileana in writing?
2. Am I correct to understand that RTZ's search for contracts, agreements and communications with PACE entities was limited to only the eight PACE entities identified in Intus' supplemental initial disclosures?

---

**From:** Kasia Penn <kpenn@nossaman.com>
**Sent:** Thursday, March 5, 2026 5:28 PM
**To:** Beshai, Andrew <ABeshai@manatt.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** RE: Intus v. RTZ M&C Recap

---

**[EXTERNAL] Please do not reply, click links, or open attachments unless you recognize the source of this message and know the content is safe.**

---

Hi Andrew,

I am responding to the portion of your Recap pertaining to the search methodology. I will send another email regarding the remaining points.

To date, RTZ has produced 3,222 documents. Of those, only 210 contain the word "Intus." The remaining documents do not contain the word "Intus," which confirms that RTZ's search for responsive documents was not limited to the word "Intus."

During the March 3 meet and confer, I stated that the search for responsive documents was centered on the word "Intus." To clarify, that search was not limited to that term.

The second set of Intus' RFPs sought contracts, agreements and communications with 18 facilities, eight of which were identified in Intus' supplemental initial disclosures. During the meet and confer process with Ileana Hernandez, RTZ agreed to respond to RFPs Nos. 4, 5, 9, 10 and 15 with respect to those eight entities, and RTZ has subsequently produced all responsive non-privileged documents. The search for responsive documents and the resulting production were not limited to documents containing the word "Intus." For instance, RTZ produced 393 documents related to LifeCircles Pace, and only 15 of those documents contained the word "Intus." Similarly, RTZ produced 179 documents related to Thome PACE, six of which had the word "Intus."

Moreover, with respect to RFP No. 1, RTZ has agreed to produce and has produced all communications with third parties that mention Intus and PACECare. RFP Nos. 100 and 101, which seek all communications and documents between RTZ and any PACE Program is duplicative of RFP No. 1. Nevertheless, RTZ has confirmed that it searched for agreements and communications between RTZ and all RTZ clients relating to Intus, and that all such documents have been provided to us. Since our last production, RTZ has sent

us additional documents which we are currently reviewing for responsiveness. We anticipate making a supplemental production on Monday.

RTZ's position is that RTZ has diligently and thoroughly conducted multiple rounds of searches for responsive documents and has therefore satisfied its discovery obligations and in agreement with prior agreements amongst counsel. Accordingly, RTZ will not conduct further searches using the proposed broad search terms you have demanded, which would undoubtedly return hundreds of documents that have already been produced, as well as numerous documents that have nothing to do with this case. The burden in doing so is oppressive and disproportionate to the needs of this case, particularly as discovery closes on March 9th.

---

**From:** Beshai, Andrew <ABeshai@manatt.com>
**Sent:** Tuesday, March 3, 2026 3:37 PM
**To:** Kasia Penn <kpenn@nossaman.com>; David C. Lee <dlee@nossaman.com>
**Cc:** Weir, Charles <CWeir@manatt.com>
**Subject:** [External] Intus v. RTZ M&C Recap

Kasia,

Thanks for making time to discuss outstanding discovery issues this afternoon. Below is a recap. As we discussed, we intend to file a letter brief on Monday (3/9). If we cannot resolve the issues below, we would like your portion of the letter brief no later than Monday (3/9) at noon.

**Preservation of Documents**
1. You indicated there were 11 custodians who had Gmail accounts with RTZ prior to the Collabrios acquisition and that are still active. Can you please provide the following information:
1. Are those 11 custodians' accounts preserved such that emails going back to 2021 are still on the system?
2. Who are the 11 custodians?
3. Were there other custodians whose accounts were not preserved? If so, please list them with their job titles.

2. You also committed to looking into whether RTZ preserved audit trails showing access to its system dating back to 2021.

**Search Methodology**
3. You indicated you'd check with your client if it would be willing to run a centralized email search across all former RTZ employees' email accounts for emails between 2021 and present containing the following search terms:
    1. NDA
    2. Intus
    3. Access
    4. PACECare
    5. Cease and Desist (or just Cease or just Desist)
    6. Automated Script
    7. Lawsuit
    8. Litigation

**Successor Liability**

4. You indicated that Collabrios has no obligation to search its emails in response to the RFPs directed at it because RTZ is a wholly owned subsidiary of Collabrios. We would urge you to reconsider the successor liability issue because, from what we've learned Collabrios has taken over the day-to-day operations of RTZ such that there is no functional difference between the two. We also understand from Mr. Zawadski that RTZ and Collabrios share the same Board of Directors and officers. If there is additional information we're missing, please advise. Otherwise, if you maintain your position that Collabrios has not succeeded RTZ, we will have to take this to Judge Tse.

Thanks,

**Andrew Beshai**
*(He/Him/His)*
Associate
<image001.png>

**Manatt, Phelps & Phillips,** LLP
2049 Century Park East
Suite 1700
Los Angeles, CA 90067
**D** (310) 231-5304 **F**
ABeshai@manatt.com

**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

# EXHIBIT "2"

1

2

3

4        *** UNCERTIFIED DRAFT COPY - DO NOT CITE ***

5

6

7                ROUGH DRAFT TESTIMONY OF

8                    MELANIE MARTINEZ

9                 TAKEN ON MARCH 6, 2026

10

11   ••••••••••••••••••••••••••••••••••••••••••

12

13       NOTICE: THESE DRAFT PAGE/LINE NUMBERS WILL

14            NOT MATCH THE FINAL TRANSCRIPT.

15

16       DO NOT PREPARE VIDEO CUTS OR TRIAL CITES

17               FROM THIS DRAFT VERSION.

18

19   IF YOU NEED AN EXPEDITED FINAL CERTIFIED TRANSCRIPT,

20            PLEASE CONTACT THE COURT REPORTER.

21

22

23

24

25

1

1                    MELANIE MARTINEZ,

2              having been sworn, was examined

3                and testified as follows:

4

5                      EXAMINATION

6  BY MR. BESHAI:

7       Q.   Good morning, Ms. Martinez.

8       A.   Hello.

9       Q.   Where are you based today?

10      A.   California.

11      Q.   And are you at home, in an office?

12      A.   I'm at home, and my office.

13      Q.   Is there anyone else with you in the room?

14      A.   No.

15      Q.   Have you ever had your deposition taken

16  before?

17      A.   No.

18      Q.   Well, let me go through some initial advisory

19  points and then we'll jump in.

20          I don't anticipate we'll go past 3:00 o'clock

21   today, maybe even sooner, but just a heads-up.  That's

22   my estimate.

23      A.   Okay.

24      Q.   So you're under oath, as Mark just mentioned,

25   which means that you will be testifying today just as if

                                                              2

1   you were in court before a judge or a jury.  It has --

2   your testimony has the same force and effect as if it

3   were curt room testimony.

4          Please answer everything verbally, with

5   audible answers, like "yes" or "no," rather than nodding

6   or saying "uh-huh," because Mark won't be able to take

7   that down, our court reporter.

8          Wait until the question is finished.  I know

9   sometimes you might anticipate what I'm going to ask, or

10   I might speak too slowly, but give me a chance to get my

11   question out and then you can begin your answer.  This

12   helps ensure that the transcript isn't just a hodgepodge

13   of interruption.

14          If you don't understand a question, please let

15   me know and I'll rephrase it.  I won't know if you

16    understood or misunderstood unless you tell me.  At the

17    end much this, you'll have an opportunity to review your

18    testimony and correct things that you think you maybe

19    misunderstood or if you misspoke.  So you'll get to do

20    that but I want to caution you that I get to use any of

21    those corrections against you if you have to testify.

22    So it's better to clarify things here on the record and

23    avoid any adverse inferences later on.

24            Also, take your time.  If you need to think

25    about a question, it's not a race.  And then as for

3

1    breaks, we can take as many breaks as you'd like at any

2    time you'd like.  The only rule is if there's a question

3    pending, I would ask that we not take a break until you

4    have given your answer.

5            David, your attorney, might make objections

6    for the record.  I'm still entitled to an answer.  So if

7    I ask a question, unless David instructs you not to

8    answer, we'll note his objection for the record, but I

9    still expect an answer.

10            And let's see, the last thing is if I show you

11    a document during the deposition, which I expect to show

12    you a few today, please take the time you need to review

13   it before answering any questions about it.  Okay?

14        A.   Okay.

15        Q.   All right.  So now, hopefully you'll never

16   have to do this again, but next time they ask you you

17   can say yes, I have and avoid that last five minutes of

18   nonsense.

19             Can you tell me your current role?  You're at

20   Collabrios, correct?

21        A.   Correct.

22        Q.   What's your current role?

23        A.   Implementation manager.

24        Q.   In Collabrios?

25             Well, RTZ became Collabrios in October 2024.

                                                          4

1             MR. LEE:  Objection.  Lacks foundation.  Calls

2   for speculation.  You can answer if you know.

3             THE WITNESS:  I don't know.

4   BY MR. BESHAI:

5        Q.   Well, at one point were you working for a

6   company called RTZ?

7        A.   Yes.

8        Q.   But now you're working for Collabrios?

9        A.   Yes.

10       Q.   So something changed, right?

11       A.   Yes.

12       Q.   Okay.  And in your own words and to the best

13  of your knowledge, what changed?

14       A.   We combined some companies and created a new

15  company.  I honestly don't know.  That's all I know.

16       Q.   Okay.  That's fine.  And this is not a test

17  and I know you're not a mergers and acquisitions lawyer.

18  But because you're on employee, you're on the ground, so

19  to your knowledge RTZ combined with some other companies

20  and created Collabrios, is that right?

21       A.   I don't know.  We are called Collabrios now.

22  I signed new paperwork under Collabrios, so I don't know

23  what that means.  I have no idea.

24       Q.   You signed new employment paperwork under

25  Collabrios?

5

1        A.   Yes.

2        Q.   Okay.  Is your email account

3  @Colabrios.whatever?

4        A.   Yes.

5        Q.   In your day to day, do you interact with

6    anybody who had an RTZ account?

7        A.    No.

8        Q.    You've been there at Collabrios for over a

9    year, correct?

10       A.    Yes.

11       Q.    So you received a W2 for 2025, at least?

12       A.    Theoretically, although I haven't seen it yet.

13       Q.    Thank you receive one for 2024?

14       A.    Yes.

15       Q.    Did it say Collabrios?

16       A.    I don't remember.

17       Q.    Sorry, Melanie.  Let me just finish the

18   question and then I will get your answer.

19             It sound like you don't remember, but let me

20   just ask it.  Do you recall if it said Collabrios in the

21   W-2 form for 2024?

22       A.    I do not remember.

23       Q.    Okay.  Before the transition from RTZ to

24   Collabrios, what was your role at RTZ?

25       A.    I don't really know how to answer that because

                                                              6

1    I didn't really have one specific role.  We all just

# EXHIBIT "3"

B3013-5834 10/10/2024 9:14 PM Received by California Secretary of State



| CONV-1A | File # _____ |

**State of California**
**Secretary of State** 
**Certificate of Conversion**

| For Office Use Only |
| **-FILED-** |
| File No.: BA20241803981 |
| Date Filed: 10/10/2024 |

Fee: $150.00 if a California corporation is the converting entity. $30.00 for all other conversions.

This Space For Filing Use Only

## Converted Entity Information

**1. Name of Converted Entity**
RTZ, LLC

**2. Form of Entity**
Limited Liability Company

**3. Jurisdiction**
Delaware

**4.** Mailing Address of Principal Office of Converted Entity (Complete only if converting a California limited partnership.)    City    State    Zip Code

**5.** Street Address of Principal Office of Converted Entity – *Do not list a P.O. Box* (Complete only if converting a California limited liability company or a registered California general partnership.)    City    State    Zip Code

**6.** Street Address of the California Principal Office of Converted Entity, if any – *Do not list a P.O. Box* (Complete only if converting a registered California general partnership.)    City    State  CA    Zip Code

**7.** If the converting entity is a California corporation, limited liability company, limited partnership or general partnership, you must designate an agent for service of process: Item 7a: List the name of an individual or a corporation registered in CA under California Corporations Code section 1505 that agrees to be your agent for service of process. You may not list the converted entity as the agent. Item 7b: If the agent is an individual, list the agent's business or residential street address. Item 7c: If the agent is an individual, list the mailing address of the converted entity's agent. Do not list an address if the agent is a California registered corporate agent as the address for service of process is already on file.

**a.** Name of Agent For Service of Process
Michael Zawadski

**b.** If an individual, Street Address of Agent for Service of Process – *Do not list a P.O. Box*    City    State    Zip Code
3736 Mt. Diablo Blvd., Suite 200    Lafayette    CA    94549

**c.** If an individual, Mailing Address of Agent for Service of Process    City    State    Zip Code
3736 Mt. Diablo Blvd., Suite 200    Lafayette    CA    94549

## Converting Entity Information

**8.** Name of Converting Entity
RTZ Associates, Inc.

**9.** Entity Type
Corporation

**10.** Jurisdiction
California

**11.** CA Secretary of State Entity Number, if any
2490140

**12.** The principal terms of the plan of conversion were approved by a vote of the number of interests or shares of each class that equaled or exceeded the vote required. If a vote was required, the following was required for each class:

The class and number of outstanding interests entitled to vote,    **AND**    The percentage vote required of each class.

1,000 shares of common stock    51%

## Additional Information

**13.** Additional information set forth on the attached pages, if any, is incorporated herein by this reference and made part of this certificate.

**14.** I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge. I declare I am the person who executed this instrument, which execution is my act and deed.

10/9/2024
Date

_____
Signature of Authorized Person

Michael Zawadski, Chief Executive Officer
Type or Print Name and Title of Authorized Person

_____
Signature of Authorized Person

Rick Zawadski, Secretary
Type or Print Name and Title of Authorized Person

CONV-1A (REV 12/2022)    2022 California Secretary of State

1047 - 1/4/2023 Wolters Kluwer Online

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies



**Department of State: Division of Corporations**

Allowable Characters

**HOME**

Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | **5157664** | Incorporation Date / Formation Date: | **10/10/2024** (mm/dd/yyyy) |
| Entity Name: | **RTZ, LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **THE CORPORATION TRUST COMPANY** | | |
| Address: | **CORPORATION TRUST CENTER 1209 ORANGE ST** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **302-658-7581** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

[ Submit ]

[ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

# EXHIBIT "4"

Division of Corporations - Filing



Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

Allowable Characters

| HOME |
|---|

Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | 3959688 | Incorporation Date / Formation Date: | 6/17/2024 (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | COLLABRIOS HEALTH LLC | | |
| Entity Kind: | Limited Liability Company | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| Name: | CORPORATION SERVICE COMPANY | | |
|---|---|---|---|
| Address: | 251 LITTLE FALLS DRIVE | | |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19808 |
| Phone: | 302-636-5401 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ⚪ Status ⚪ Status,Tax & History Information

[ Submit ]

[ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov