

**ATTORNEYS AT LAW**

50 California Street
34th Floor
San Francisco, CA 94111
T 415.398.3600

David C. Lee
D 415.438.7235
dlee@nossaman.com

April 17, 2026

The Honorable Judge Alex G. Tse
United States Magistrate Judge
San Francisco Courthouse, Courtroom A – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

> Re:     Intus Care, Inc. v. RTZ Associates, Inc. (Case No. 4:24-cv-01132-JST)

Dear Judge Alex G. Tse:

Defendant/Counterclaimant RTZ Associates, Inc. ("RTZ") submits this letter brief per the Court's April 14, 2026 Supplemental Briefing Order (Dkt. 111). RTZ's counterclaims and affirmative defenses provide for a misappropriation theory of damages—including disgorgement of profits—arising from Intus Care Inc.'s ("Intus") unauthorized access to RTZ's proprietary PACECare software to accelerate its development of CareHub. Thus, documents relating to the development of CareHub (RFP Nos. 66-73, 77, and 84), and financial projections, customer contracts and communications, and pricing models (RFP Nos. 76, 78, 81, and 82) are relevant to RTZ's counterclaims and defenses.

Misappropriation damages are appropriate in this case. On September 14, 2022, RTZ sent a cease-and-desist letter to Intus, demanding that Intus stop accessing PACECare and explicitly informing Intus that RTZ's customers were not permitted to share PACECare login credentials with Intus. *See* Dkt. 89. Intus nevertheless brazenly continued to access PACECare up through the end of 2024—*2 years after the cease-and-desist demand—*as indisputably admitted in its discovery responses. *See* Dkt. 62-1, Exs. 3 & 4 [9,896 rows of Intus access events through Dec. 2024]. As alleged, Intus exploited its excessive unauthorized access to PACECare by navigating system areas afield of any legitimate data extraction needs – all as a means to accelerate the development of its own competing CareHub product. Intus witnesses confirm that Intus commenced development of its competitive product, CareHub, in early 2024 and went live by May 2025—i.e., a rapid period from development to market. Intus immediately started generating a revenue stream by poaching RTZ's customers. Thus, under RTZ's counterclaims, which include violations of the CDAFA (Cal. Pen. Code § 502), CFAA (18 U.S.C. § 1030), trespass to chattels, and violations of California Business & Professions Code section 17200 (the "UCL"), RTZ is entitled to seek, at minimum, damages related to CareHub, including damages to RTZ's computer systems, value of the proprietary system data Intus extracted from PACECare, value of the customers RTZ lost to Intus and CareHub, and disgorgement of Intus' CareHub profits.

The authorities Intus cited in the Joint Letter Brief are misplaced. First, Intus incorrectly suggested that damages under the CDAFA are limited to damages to computers and stored data. "This narrow interpretation of 'damage or loss' is not supported by the text of CDAFA." *Lineberry v. AddShopper, Inc.*, No. 23-CV-01996-VC, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025). Under the CDAFA, a "claimant may allege damage or loss from the misappropriation of their data, so long as they articulate that theory of loss in a concrete way." *Id.* In addition, disgorgement is a remedy expressly contemplated by the CDAFA. *See Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) ("Plaintiffs seek disgorgement under CDAFA, which is a remedy contemplated by the statute."). To show "damage or loss" under the CDAFA, "a plaintiff need not have suffered a corresponding loss, as 'California law recognizes a right to disgorgement of profits

Honorable Alex G. Tse
April 17, 2026
Page 2

resulting from unjust enrichment.'" *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2024 WL 38302, at \*6 (N.D. Cal. Jan. 3, 2024) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599–600 (9th Cir. 2020)). A disgorgement theory "constitute[s] an injury sufficient to establish standing to bring claims for CDAFA violations." *In re Facebook*, 956 F.3d at 601.

Second, while Intus cited *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019), for the proposition that the CFAA's loss definition focuses on harms caused by computer intrusions, the CFAA permits recovery of compensatory damages and equitable relief for losses exceeding $5,000 in a one-year period. 18 U.S.C. § 1030(g). The statute defines "loss" broadly to include "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11); *see Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 774 (N.D. Cal. 2017). RTZ has a cognizable "stake in the profits garnered" from Intus' misappropriation of its proprietary data. *Facebook*, 956 F.3d at 600.

Third, Intus cites *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003), for the proposition that restitution is available as a remedy under the UCL. RTZ agrees and seeks the restitutionary disgorgement of the value of the customers RTZ lost to Intus and CareHub.

Thus, under RTZ's alleged counterclaims and the authorities cited above and based upon Intus' development of CareHub using PACECare system data that was wrongfully obtained, RTZ is entitled to seek, but is not limited to: (1) costs from the strain and load on RTZ's computer systems and resources expended to investigate, monitor, and address PACECare access activities; (2) the value of the proprietary data Intus extracted from PACECare; (3) the value of the customers that RTZ lost to Intus and CareHub; and (4) disgorgement of the profits Intus unjustly earned from CareHub.

Accordingly, the discovery RTZ seeks is relevant and proportional to the needs of this case, both to RTZ's counterclaims and also RTZ's fourth affirmative defense of unclean hands. RFP Nos. 66-73, 77, and 84 seek CareHub-related presentations and Board packages, competitive intelligence, planning documents, development timelines, internal communications, and release schedules and are essential to establishing the causal link between Intus' unauthorized access to PACECare and the accelerated development of CareHub. These documents will show when and how Intus developed CareHub, allowing RTZ to trace the timeline of Intus' CDAFA violations to CareHub's market entry and resulting revenues. Similarly, RFP Nos. 76, 78, 81, and 82 seek financial projections, CareHub contracts (identifying fees charged), customer communications, and pricing models that are directly relevant to RTZ's disgorgement theory. To disgorge Intus' unjust profits under the CDAFA, RTZ must quantify the revenues Intus generated from CareHub during the period in which it benefited from its unauthorized extraction of PACECare system data. Financial projections, contract pricing, pricing models, and revenue data are necessary to calculate the profits subject to disgorgement. Contrary to Intus' position, these requests fall squarely within this Court's prior ruling that CareHub's "development, functionality, and use are relevant to damages." Dkt. 96.

RTZ respectfully requests that the Court permit and order Intus to produce documents responsive to RTZ's CareHub-related discovery requests (RFPs 66-84) consistent with the Court's prior recognition that CareHub's development, functionality, and use are relevant to damages.

Sincerely,

/s/ David C. Lee
David C. Lee

70289229.v2