NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:  415.398.3600
Facsimile:  415.398.2438

NOSSAMAN LLP
KASIA PENN (SBN 306056)
kpenn@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone:  949.833.7800
Facsimile:  949.833.7878

Attorneys for Defendant and Counter-claimant
RTZ ASSOCIATES, INC.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUS CARE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RTZ ASSOCIATES, INC.; and DOES 1 through 10, <br><br> Defendants, | Case No:      4:24-cv-01132-JST <br><br> Assigned to: Hon. Jon S. Tigar <br><br> **DECLARATION OF DAVID C. LEE IN SUPPORT OF DEFENDANT AND COUNTER-CLAIMANT RTZ ASSOCIATES, INC.'S MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY** <br><br> *[Concurrently filed with Notice of Motion; Memorandum of Points and Authorities; and [Proposed] Order]* <br><br> Date:       July 2, 2026 <br> Time:       2:00 p.m. <br> Courtroom: 6 |
| RTZ ASSOCIATES, INC., <br><br> Counter-claimant, <br><br> vs. <br><br> INTUS CARE, INC., <br><br> Counter-defendant. | |

## DECLARATION OF DAVID C. LEE

I, David C. Lee, declare as follows:

1.      I am an attorney at law admitted to practice in this Court, and a partner of Nossaman LLP, counsel of record in this action for Defendant RTZ Associates, Inc. ("RTZ").  I make this declaration in support of RTZ's Motion to Exclude Expert Opinions of Shawn Fleury. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify to those facts.

2.      Attached as **Exhibit 1** is a true and correct copy of the May 12, 2026 Rebuttal Report of Shawn Fleury.

3.      Attached as **Exhibit 2** is a true and correct copy of relevant excerpts from the Deposition of Alexander Rothberg, taken on February 27, 2026.

4.      Attached as **Exhibit 3** is a true and correct copy of a May 13, 2021 email produced by IntusCare, Inc. with the starting Bates number of Intus 001464, which was also introduced as Exhibit 63 in the Deposition of Alexander Rothberg, taken on February 27, 2026.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Dated this 28th day of May 2026 in San Francisco, California.

_____

DAVID C. LEE

-1-

DECLARATION OF DAVID C. LEE ISO RTZ ASSOCIATES, INC'S MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY

70435444.v3

# EXHIBIT "1"

# FILED UNDER SEAL

# EXHIBIT "2"

                              Volume I  Pages 1-226

                                Exhibits 62-71

                    UNITED STATES DISTRICT COURT

              FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____

INTUS CARE, INC.

       Plaintiff                              Case No.

V.                                      4:24-cv-01132-JST

RTZ ASSOCIATES, INC.; and DOES 1

through 10                                 Assigned to:

       Defendants                       Hon. Jon S. Tigar

_____

RTZ ASSOCIATES, INC.

       Counter-claimant

V.

INTUS CARE, INC.

       Counter-defendant

_____

            DEPOSITION OF ALEXANDER ROTHBERG

         Friday, February 27, 2026, 9:55 a.m.

            MANATT, PHELPS & PHILLIPS LLP

                   One Beacon Street

            Boston, Massachusetts  02108

         -----REPORTER:  Sonya Lopes, RPR, CSR-----

correspondence, Exhibit 63, marked)

Q.   Mr. Rothberg, I've handed you what has been marked as Exhibit 63.  It's, for the record, an e-mail exchange dated on and around May 2001 -- April and May 2021.

It's a little bit lengthy.  So what I'm going to do, sir, is just direct you to certain pages.  And we're going to start at the back end so that way you can get a little bit of context.  If you turn to page --

A.   May I just scan it first?

Q.   Yeah.  Yeah.  I mean, I'm going to start at the beginning.  So if you could turn to just page 1470.

A.   I'm on 1470.

Q.   Excellent.  1470 is an e-mail from Alex Lueth at Senior Care Partners dated April 23rd to Laura Emery at RTZ, as well as Evan Jackson at Intus and others.  Do you see that?

A.   Yeah, I do see that.

Q.   She writes "Happy Friday.  I'm writing to introduce you to each other.  RTZ team, this is Evan from Intus who can help get you started on the integration within PCO.  I've requested that he send you an API specifications document to get things

started."  Do you see that?

A.  See that.

Q.  If you turn to page 1469 --

A.  Yes.

Q.  -- Mr. Jackson responds essentially "Nice to meet you.  I'm cc'ing our CTO Alex Rothberg who will be sending over our API specifications document."  Do you see that?

A.  I see that.

Q.  Okay.  Then if you go to page 1467 --

A.  So two pages previous?

Q.  Yeah.  1467.

A.  Yeah.

Q.  That's an e-mail from you to Laura Emery, Evan Jackson, and others.  Do you see that?

A.  I see that.

Q.  Okay.  And you write -- second or third sentence -- "Below is a full specification of information that Intus pulls out of the partners EHR system."  Do you see that?

A.  Yes.

Q.  Then below that paragraph, there appears to be what you call the full spectrum.  Do you see that?

A.  I see that.

Q.   Okay.  Before we get into this, is this document that we're looking at in Exhibit 63 one of the documents that you looked at in preparation for this deposition?

A.   With counsel?

Q.   Yes.  Is this just one of the documents you reviewed?

A.   Yes.

Q.   Okay.  Is the full spectrum --

A.   At least -- I'm sorry -- what I've seen so far of it.

Q.   Fair enough.  Is the full spectrum of information which you reference the API specifications that Evan Jackson had indicated would be sent to RTZ?

A.   It's my attempt to satisfy that.  I mean, API specifications can be more detailed than this. But, yes, this is my attempt to give that info.

Q.   Okay.  And what was the point of providing the full specification to RTZ?

A.   Yeah.  So at this point, it was still my hope that we would be -- well, so API specifications are specifications for an API.  And an API is a direct way of getting access to information that is provided by the information holder.

So in this case, an API spec of our desire would be an API generated by RTZ or PaceCare Online that we could use to get this information.  I think maybe -- I mean, you'll see later.  But their -- we were asking for their API spec.  They don't really need our API spec is my position.  Anyhow, it was to facilitate us getting certain information.  That was our desire.

Q.  In other words, to build a FHIR connection.

A.  Well, FHIR has its own spec that you can't change.  It was to -- it was in service of getting any kind of connection that could get us any of the information that I outlined.

Q.  Okay.  And you indicated that this is in service of RTZ building the connection; correct?

A.  Yes, essentially.

Q.  It has a build-in on its end.

A.  Well, so what we're -- this is, like, the early days factfinding.  And, again, that's why I'm saying, like, they don't need our spec.  I wanted their spec because if they had already some way to provide some information, then we'll just take whatever -- you know, "Just make it easy.  Whatever you've got, we'll take it.  We'll figure out the transformations," as we talked about earlier.

Q.  Right.  Well, and you get to the point that I ultimately was going to get to, which is if you needed RTZ to kind of build out a spec, why were you sending the full spectrum of information?

A.  Right.  So we were asked to send -- here's -- we were asked to.  I mean, that's, I guess, the short answer.

Q.  Separate and apart from this exhibit?  Because it seems as if Ms. Lueth is saying "Intus is going to send you an API specification."  We have Evan Jackson saying "Intus is going to provide an API specification."  So I'm not understanding your answer.

A.  Right.  That's -- so what I'm saying is Alex Lueth on Intus 1470 says "I have requested that he send you an API specification."  I think it was our interpretation that we were being asked for an API specification to send to -- because it's to Laura, who's a she.  Then Evan's the he.

So our interpretation was "I requested that he" -- meaning Evan -- "send you" -- meaning Laura at RTZ Associates -- "an API specification."  So I guess it was our perspective that we were supposed to send one, even though I didn't think it made a ton of sense.  You know, nothing if not helpful.

saying "We have reviewed the initial information provided by Alex.  But we did not see the detailed specification, API information, sample file, transmission information, et cetera."  I presume they didn't see that because you didn't send it.

A.  Well, so what I sent them was the contents of the e-mail we were just referring to.

Q.  Right.  It was just a high-level delineation of the types of information that you would like to receive?

A.  Right.  It's -- right.  It's information that we would like to receive.  I mean, not so high level.  Gets into the fields, like, "Medicare ID," "Medicaid ID," you know.  It is what it is, I guess.

Q.  Yeah.  The full spectrum of information that you send is essentially the type of data that you would need to populate your Population Health dashboard?

A.  Right.  Right.

Q.  You respond -- if you go to the first page of the exhibit --

A.  Yeah.

Q.  -- you respond to Laura.  You say "I'm not sure that we have effectively communicated the nature of the relationship.  As a starting-off

point, we would like read-only access to your system."  Do you see that?

A.  I do see that.

Q.  By "read-only," that's the same type of access that we talked about before when you --

A.  Right.  Just receiving information.

Q.  Right.

A.  Yes.

Q.  You write "The business relationship is one where we would consume your information via API or otherwise to populate our system.  For this reason, I'm not sure what that sample file from us would look like."

In other words, you're saying "We only need to catch the information.  We don't need to throw it."

A.  Yes.  Exactly.  Yes.  Exactly.

Q.  Okay.  You go on to write "For this reason, all we need to know is how to get access and, ideally, what the structures and promises of your data output are, again, depending on protocol."

When you said "All we need to know is how to get access," what you're referring to is how to get access to PaceCare's interface; correct?

A.  No.  Access to the data.

conversations were?

A.   Yeah.  I mean, not, you know, word for word or letter for letter.  But my impression leaving that conversation -- well, first of all, I remember feeling very positive about it.

My impression leaving the conversation is that we had sort of said, like, "Hey, you know, we can" -- I mean, it's sort of like we outlined, "We can" -- "We're really flexible."

I think my impression was like "Hey, if you have FHIR, if you have API, if you have SFTP, like, whatever you've got, we want it.  But if you" -- "if you've got nothing, then we can do what we had been doing, which is, you know, we just need access to a log-in account, and that's it.  Like, if you" -- "if you don't want to build anything, you don't have anything or what have you, if you just give us, like, this read-only log-in account, then we're good."

Q.   Okay.  And the read-only log-in account would allow you to implement the automated script that you had already developed.

A.   That's right.  Well, it would -- the automated script of the nature that we developed.  But it would have to be modified.

# EXHIBIT "3"

# FILED UNDER SEAL