Charles E. Weir (SBN 211091)
Andrew M. Beshai (SBN 308030)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, California 90067-2506
Telephone:    310.556.8861
Facsimile:    310.553.2165
cweir@ebglaw.com
abeshai@ebglaw.com

Attorneys for Plaintiff
INTUS CARE, INC.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUSCARE INC.,<br><br>Plaintiff,<br><br>v.<br><br>RTZ ASSOCIATES, INC.; and DOES 1 through 10,<br><br>Defendant. | Case No. 4:24-cv-01132-JST<br><br>*Assigned to Hon. Jon S. Tigar*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER**<br><br>*[Filed concurrently with: 1) Declaration of Andrew Beshai; 2) [Proposed] Order]*<br><br>Date:    July 2, 2026<br>Time:    2:00 p.m.<br>Crtrm:   6<br><br>Complaint Filed: February 23, 2024<br>Amended Complaint Filed: April 2, 2024<br>Counterclaims Filed: June 20, 2024 |

PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER

PLEASE TAKE NOTICE that Plaintiff IntusCare Inc. ("Plaintiff" or "Intus") will and hereby does move to exclude the Expert Report (the "Report") and testimony of Defendant RTZ Associates, Inc.'s ("RTZ") expert Peter Schwechheimer ("Schwechheimer") at trial, in the above captioned matter

This motion is made pursuant to *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993) and Federal Rules of Evidence 401, 403, and 702, and is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Andrew Beshai, the complete files and records in this action, and any other evidence or argument presented to the Court at or before the hearing.

Dated: May 28, 2026

EPSTEIN BECKER & GREEN, P.C.

By: _____
Charles E. Weir
Andrew Beshai

Attorneys for Plaintiff
IntusCare, Inc.

i

PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 3

III.    LEGAL STANDARD ......................................................................................... 6

IV.     SCHWECHHEIMER'S TESTIMONY FAILS THE *DAUBERT* STANDARD AND SHOULD BE EXCLUDED ........................................................ 7

        a.      Schwechheimer's Opinions as to RTZ's Damages Are Flawed and Should Be Excluded ..................................................... 7

        b.      Schwechheimer's Opinions About the PACECare Modules and Supposed Accelerated Development of CareHub Should Be Excluded ............................................................................ 9

        c.      Schwechheimer's Opinions About Intus' Capital Raises Should Be Excluded ............................................................................ 12

        d.      Schwechheimer's Opinions About RTZ's Legal Entitlement to Damages Should Be Excluded ............................................................ 13

V.      CONCLUSION ................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Int'l Longshoremen's Union Local No. 10*
  966 F.2d 443 (9th Cir. 1992).................................................................................... 13

*City of Pomona v. SQM N. Am. Corp.*
  750 F.3d 1036 (9th Cir. 2014)................................................................................. 10

*Daubert v. Merrell Dow Pharms., Inc.*
  509 U.S. 579 (1993) .............................................................................................. 6, 7

*Daubert v. Merrell Dow Pharms., Inc.*
  43 F.3d 1311 (9th Cir. 1995).................................................................................... 7

*Hangarter v. Provident Life & Acc. Ins. Co.*
  373 F.3d 998 (9th Cir. 2004).................................................................................. 13

*In re ConAgra Foods, Inc.*
  302 F.R.D. 537 (C.D. Cal. 2014) ........................................................................... 10

*In re Incretin-Based Therapies Prods. Liab. Litig.*
  No. 21-55342, 2022 WL 898595 (9th Cir. 2022) ................................................... 10

*Lust v. Merrell Dow Pharms., Inc.*
  89 F.3d 594 (9th Cir. 1996)...................................................................................... 7

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*
  523 F.3d 1051 (9th Cir. 2008)................................................................................ 13

*OCG Energy, LLC v. Shen*
  No. 822CV01568FWSDFM, 2024 WL 694912 (C.D. Cal. Feb. 12, 2024) ........... 12

*Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*
  927 F. Supp. 2d 1069 (D. Or. 2013) ...................................................................... 12

*Turner v. Burlington N. Santa Fe R. Co.*
  338 F.3d 1058 (9th Cir. 2003).................................................................................. 9

*United States v. Andrews*
  No. 2:18-CR-000256-JAM, 2022 WL 9466146 (E.D. Cal. Oct. 14, 2022), *aff'd
  sub nom. United States v. Long Andrews*, No. 23-2320, 2025 WL 1201431 (9th
  Cir. 2025) ............................................................................................................... 10

*United States v. W.R. Grace*
  504 F.3d 745 (9th Cir. 2007)................................................................................... 9

PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER

**Statutes**

California Comprehensive Computer Data Access and Fraud Act............................................ 3, 13

Twenty First Century Cures Act ........................................................................................ 3

**Court Rules**

Federal Rule of Evidence 403 ............................................................................................ 6, 7

Federal Rule of Evidence 701 ............................................................................................ 13

Federal Rule of Evidence 702 ............................................................................................ 6, 7, 13

Federal Rule of Evidence 703 ............................................................................................ 9

PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

IntusCare Inc. ("Intus") moves to exclude the Expert Report (the "Report") and testimony of Defendant RTZ Associates, Inc.'s ("RTZ") expert Peter Schwechheimer ("Schwechheimer") at trial. Purporting to provide a calculation of RTZ's alleged damages, Schwechheimer goes far beyond his expertise as an economist and improperly opines on a host of other topics, including offering legal opinions, making credibility judgments as to Intus' claimed damages, and parroting improper, self-serving hearsay that has no bearing whatsoever on his damage calculations. None of it is appropriate subject matter for expert testimony, and his testimony should be excluded. In addition, where he does purport to provide damage calculations related to RTZ's counterclaims, they fail under even the slightest of scrutiny as they either lack a proper methodology or lack any support. Indeed, the only damage numbers Schwechheimer includes in his opinions all relate to purported losses of Collabrios, an entity that RTZ has fought successfully to keep out of this case. Obviously, RTZ cannot recover damages on behalf of non-party Collabrios.

Schwechheimer sets forth four core opinions in the Report: (1) RTZ's lost profits damages resulting from clients migrating from PACECare to Intus' EMR, CareHub, amount to $1,161,959; (2) RTZ's damages stemming from Intus' access to PACECare range from $430,000 to $550,000; (3) some of RTZ's modules in PACECare that Intus was able to view have "High" or "Medium" value; (4) Intus was allegedly able to develop CareHub on an accelerated timeline; and (5) Intus was able to raise capital as a result of its EMR market entry with CareHub.

The Report and Schwechheimer's testimony should be excluded for several reasons. First, Schwechheimer's lost profits damages are based on contracts that were cancelled in 2025—well after Collabrios had already purchased all of RTZ's assets. And Schwechheimer was not able to identify a single dollar in revenue that RTZ lost as a result of clients switching to CareHub, which, again, happened after Collabrios acquired all of RTZ's assets, including PACECare. This flaw in Schwechheimer's opinion—one he attempts to salvage by claiming that in a hypothetical world RTZ would have lost this money had it continued to own PACECare—dooms RTZ's entitlement to lost profits damages. But, RTZ didn't continue to own PACECare and was paid all

1

money under the cancelled contracts it was owed while it owned PACECare. There is simply nothing in the record affording RTZ lost profits damages based on contracts Collabrios has serviced since October 2024 and for which Collabrios receives the revenue and profits.

Second, the purported access damages are again based upon time periods that RTZ did not even own PACECare, so any damages for those periods must be sought by Collabrios. Moreover, the analysis relies on a flawed comparison to another agreement pursuant to which Intus paid nothing for access, not the hundreds of thousands of dollars that Schwechheimer claims.

Third, Schwechheimer's opinion that certain modules in PACECare have "High" or "Medium" value is based on nothing more than a ranking created by an RTZ employee. He does not describe or understand the methodology used to create the ranking system. And he does not vet the rankings himself; nor could he, as to do so would be well outside his expertise, as he admits. He also does not attribute any economic value to the modules ranked "High" or "Medium," and he does not even incorporate the ranked modules into his ultimate damage calculation. The sole purpose of any opinion about the modules is to funnel self-serving hearsay from RTZ about some amorphous value embedded in the PACECare modules. It is improper and should not be allowed.

Fourth, Schwechheimer notes that one of the alleged benefits of Intus' access is that it was able to develop CareHub on an accelerated timeline by copying the "look and feel" and functionality of PACECare. Schwechheimer has never seen CareHub or PACECare, nor has he compared the two EMRs. He also does not have the expertise to gauge the normal development timeline for an EMR. Instead, he relies exclusively on the deposition testimony of Michael Zawadski who also has never seen CareHub. Any opinion, therefore, that Intus supposedly enjoyed an expedited development time frame is not based on any evidence or actual analysis.

Finally, Schwechheimer makes statements about Intus raising capital. There is no analysis performed on the capital raises or explanation of how it impacts any of the claimed damages in this case. This, yet again, is not the proper scope of expert testimony. The capital raises Schwechheimer mentions do not figure at all into his damages calculation.

///

PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER

## II.    <u>BACKGROUND</u>

In order for Intus to provide its services, which include data analytics to help its clients better coordinate care, Intus needs access to its clients' data, which resides on RTZ's electronic medical records ("EMR") platform, called PACECare. RTZ's illegal information blocking conduct has prevented Intus from obtaining the data it needs to provide services to its clients. RTZ disclaims liability under the Twenty First Century Cures Act and has asserted counterclaims alleging that Intus accessed PACECare in an unauthorized manner for the purpose of copying the "look and feel" of PACECare. RTZ has retained expert Peter Schwechheimer for the purpose of establishing RTZ's damages.

Schwechheimer is an "economic consultant and testifying expert" whose expertise involves "the calculation of economic damages in the form of lost profits, price erosion, unjust enrichment, lost enterprise value, and royalties." (Beshai Decl. ¶ 2, Ex. A, Expert Report of Peter Schwechheimer ("Report"), ¶ 1; *id.* ¶ 3, Ex. B, Deposition Transcript of Peter Schwechheimer ("Depo. Tr."), 9:7-9.) Schwechheimer was retained "to assess and calculate the amount of economic damages owed to RTZ in the event the trier-of-fact finds . . . Intus liable for one or more of the counterclaims alleged by RTZ." (Beshai Decl. ¶ 2, Ex. A, ¶ 3.) Schwechheimer reaches a few conclusions.

First, he concludes that "economic damages resulting from" Intus' access to PACECare total between $430,000 and $550,000, depending on the length of the access period. (Beshai Decl. ¶ 2, Ex. A, ¶ 5.) He also notes that disgorgement of profits is an available remedy under the California Comprehensive Computer Data Access and Fraud Act, citing to case law to support his proposition, (*Id.* ¶ 52). However, he does not calculate any profits of Intus to disgorge. As for profits of RTZ, he states that in 2025 three customers migrated from PACECare to CareHub, representing lost profits to RTZ in the amount of $1,161,959. (*Id.* ¶ 68.) To arrive at the revenue figures for the lost profits, Schwechheimer had a conversation with Collabrios CEO, Kevin Lathrop. (*Id.*) Lathrop provided the revenue figures to Schwechheimer orally, but Schwechheimer was not provided any spreadsheets substantiating annual revenue. (Beshai Decl. ¶ 2, Ex. B, 139:2-140:11.) Schwechheimer acknowledges that he has no evidence that access to PACECare

3

caused the loss of the three customers. (*Id.*, 53:8-12, 55:7-11, 56:14-17)

Second, Schwechheimer states that Intus' access to PACECare "suggests" that Intus was unjustly benefitted "likely" through "a shorter development cycle, accelerated market entry, and additional venture capital funding." (Beshai Decl. ¶ 2, Ex. A, ¶ 6.) Schwechheimer does not quantify this alleged unjust enrichment or reduce the amorphous claimed benefit to a damages number. Indeed, he did not review either system or even the screen shots of CareHub or presentations about CareHub produced by Intus to see if CareHub's "look and feel" actually did copy PACECare in any way. This was despite these materials being produced by Intus before he issued his report. He acknowledges that he does not have the data he needs "to undertake a complete and thorough [analysis] of Intus' unjust enrichment." (*Id.*)

Third, Schwechheimer parrots another expert's opinion that certain Intus employees "accessed PACECare modules unrelated to the scope of Intus' stated data needs" and that the modules "contained highly sensitive clinical, financial, and operational data." (Beshai Decl. ¶ 2, Ex. A, ¶ 37.) Schwechheimer did not do his own analysis of whether Intus had accessed modules beyond its business needs. Nor could he, as Schwechheimer, by his own admission, is "not an expert on software functionality." (Beshai Decl. ¶ 3, Ex. B, 30:4; *see also id.*, 62:11-14.) Schwechheimer explains that he provided these modules to an RTZ employee, Laura Emery, and "asked her to evaluate and provide a relative ranking of these modules as either High, Medium, or Low value based on two factors including their ability to provide insight into the PACECare system's organizational structure as well as features and functions that would not typically be included in an EHR." (Beshai Decl. ¶ 2, Ex. A, ¶ 38.) Schwechheimer has no idea what methodology Emery used to create these rankings. This is unsurprising, as Schwechheimer's total interaction with Emery consisted of a single, 45-minute conversation. (Beshai Decl. ¶ 3, Ex. B, 34:9-11.) Indeed, he testified that he did not know whether Emery had compared the modules she ranked against other PACE-specific EMRs on the market to see if they were typical, nor does Schwechheimer know if Emery has ever seen CareHub. (*Id*. 39:22-25.) And when asked if he had compared the modules to other PACE-specific EMRs on the market, Schwechheimer responded, "No I wouldn't. It's beyond my expertise." (*Id*. 39:18-21.) Schwechheimer did not even know

4

PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER

which of the modules ranked "High" were so ranked because they provided insight into PACECare's system or were not typical in EMRs. He explained, "I hope to if we extend this at some point get the chance to review some of this and at least understand from my client's perspective how valuable this is and if it was used and what the value of that use is but at this point in time I just don't have enough." (*Id.* 131:7-12.)

Despite having no understanding of Emery's methodology—and not having done any analysis of the modules himself—Schwechheimer nevertheless notes that of the 16 modules Intus allegedly accessed, "more than one-half (9 of 16) were assessed as having 'High' value while fully 38% (6 of 16) were evaluated as having 'Medium' value." (Beshai Decl. ¶ 2, Ex. A, ¶ 39.) He candidly stated, "If you quizzed me on most of these [modules] I wouldn't know what this is." (Beshai Decl. ¶ 3, Ex. B, 127:22-23.) He simply "trusted" Emery's rankings. (*Id.* 128:6.) Schwechheimer also does not attribute specific economic value to individual modules, nor does he assign a damages value to all the modules collectively. Indeed, he concedes that none of the modules "tie to a specific [damages] number." (*Id.* 128:15.) Instead, he opines that RTZ is allegedly damaged by "the overall access" and does not offer any opinion as to the economic value of any given module or the "overall access." (*Id.* 59:11-25.)

Fourth, Schwechheimer parrots the deposition testimony of RTZ's former CEO, Michael Zawadski, who stated that Intus' access to PACECare "revealed 'the entire organizational principle of the system' that 'took years to develop.'" (Beshai Decl. ¶ 2, Ex. A, ¶ 40.) Schwechheimer goes on to explain that "[a]ccording to Mr. Zawadski, the 'user interface and the selection of variables' is the 'most valuable work product you'll create.'" (*Id.* ¶ 75.) Based on this testimony, Schwechheimer opines that Intus was able to offer "a similar functional experience" by supposedly copying the "look and feel" of PACECare. Neither Schwechheimer nor Zawadski have ever seen CareHub. (Beshai Decl. ¶ 3, Ex. B, 22:14-16; 25:13-21; *see also* Beshai Decl. ¶ 4, Ex. C, Deposition of Michael Zawadski at 167:7-11.) According to Schwechheimer, Intus supposedly enjoyed "a 'massive' developmental short cut by using such knowledge to achieve the same or similar result at a much lower cost, in a shorter amount of time, and with much less risk." (Beshai Decl. ¶ 2, Ex. A, ¶ 41, *see also* ¶¶ 62, 67.) But he does not quantify the value of this

PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER

alleged "accelerated development" as damages, and given that he has not even seen CareHub cannot say whether it has anything to do with PACECare at all. (Beshai Decl. ¶ 3, Ex. B, 63:6-12.) When pressed on the issue, Schwechheimer disavowed any notion that he was giving an opinion as to whether the development of CareHub was "rapid," and he did not do his own analysis of an appropriate development timeline. (*Id.* 27:3-28:4.) Instead, Schwechheimer relied entirely on Zawadski's equally uninformed and speculative deposition testimony and did not even ask Zawadski about what an appropriate development timeline would be. (*Id.*)

Fifth and finally, Schwechheimer notes that "accelerated market entry" is "a signal to actual and potential investors of exceptional management, superior plan execution, high product-market traction, and lower investment risk." (Beshai Decl. ¶ 2, Ex. A, ¶ 77.) He then attributes Intus' ability to raise seed funding to its development of CareHub, but he does not quantify the role that CareHub played in securing funding, nor does he incorporate these capital raises into his ultimate damages number. (*Id.* ¶¶ 44-46.) When asked why he included reference to Intus' capital raises in his report, despite not quantifying how those capital raises factor into his damages number, Schwechheimer responded that he was opining on the "incentives of a small start up company at that time." (Beshai Decl. ¶ 3, Ex. B, 74:15-18.) In fact, Schwechheimer conceded that Intus' capital raises do not "specifically go into a damages calculation." (*Id.* 76:20-78:5.)

## III.   <u>LEGAL STANDARD</u>

Federal Rule of Evidence 702 provides that an expert witness's testimony will be admitted only if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. *See also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-95 (1993) (the trial court acts as a "gatekeeper" to ensure through a preliminary determination that proffered expert evidence is both relevant and reliable). Additionally, pursuant to Federal Rule of Evidence 403, the court may exclude even relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues or misleading the jury.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER

Applying FRE 702 and FRE 403, the Ninth Circuit explains "we must ensure that the proposed expert testimony is 'relevant to the task at hand' . . . i.e., that it logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*") (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-91 (1993)). The party offering the expert opinion bears the burden of proof. *Id*. at 1315-16, 18 n.10; *Lust v. Merrell Dow Pharms., Inc*., 89 F.3d 594, 598 (9th Cir. 1996) ("[I]t is the proponent of the expert who has the burden of proving admissibility."). Such admissibility must be proven by a preponderance of the evidence. *Daubert*, 509 U.S. at 592, n.10.

## IV.    SCHWECHHEIMER'S TESTIMONY FAILS THE *DAUBERT* STANDARD AND SHOULD BE EXCLUDED.

### a.    Schwechheimer's Opinions As to RTZ's Damages Figures Are Flawed and Should Be Excluded

Schwechheimer concludes that RTZ is entitled to lost profits damages in the amount of $1,161,959 from contracts that were acquired by Collabrios. (Beshai Decl. ¶ 2, Ex. A, ¶ 68.) This opinion is flawed because RTZ is not entitled to damages on contracts that RTZ sold to Collabrios. (Dkt. 103, 1:9-10; Beshai Decl. ¶4, Ex. C, 28:14-20) Schwechheimer concedes that Collabrios acquired RTZ in October 2024—well before the launch of CareHub in March or May 2025. (Beshai Decl. ¶ 3, Ex. B, 47:19-48:3.) And he also acknowledges that his lost profits calculation is based on cancellation of three contracts that occurred in 2025. (*Id.* 48:22-49:6.). The purported damages accrued after the cancellation, again all after RTZ sold its assets, including PACECare to Collabrios. According to RTZ, testified that Collabrios had purchased all of RTZ's assets, that RTZ no longer had any employees, and that Collabrios is the company that manages and services PACECare. (Dkt. 103, 1:9-10; Beshai Decl. ¶4, Ex. C, 28:14-20; 38:25-39:5.)[1] When asked what revenue RTZ lost when the contracts were cancelled in 2025, Schwechheimer responded, "I would say that in expectation they were going to lose, it was likely that they were going to lose revenue in the future if the actions taken by Intus in 2022 was eventually going to lead to a competitor product and lost sales." (Beshai Decl. ¶ 3, Ex. B, 50:11-

---

[1] In a hearing on May 11, 2026 before this Court, counsel for RTZ confirmed the same on the record.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER

15.) Put differently, Schwechheimer does not identify a single dollar in revenue that RTZ lost in 2025, nor could he because RTZ ceased functioning as a company in October 2024. Instead, Schwechheimer resorts to a speculative hypothetical untethered from reality—he opines that Intus' conduct in 2022 would have eventually lead to lost sales for RTZ. But this opinion is based on facts that do not exist because RTZ is no longer the company financially profiting from PACECare. Elsewhere, Schwechheimer opines that "what RTZ did lose was an expectation that they were going to lose contracts in the future and so you could have actually priced this at that point in time." (Beshai Decl. ¶ 3, Ex. B, 52:11-14.) Again, Schwechheimer does not quantify this "expectation interest" and cannot point to any revenue that RTZ actually lost in 2023 or 2024 before it was sold to Collabrios. (*Id.* 53:23-54:8; 54:24-55:11.) Indeed, the RTZ pro forma on which Schwechheimer relied does not show any RTZ revenue past 2024. (Beshai Decl., ¶ 6, Ex. D.) The Court need look no further than Schwechheimer's own report in which he states that he spoke with Kevin Lathrop—the President of Collabrios—to obtain revenue figures for the lost profits damages calculation.[2] (Beshai Decl. ¶ 2, Ex. A, ¶ 68.) In sum, Schwechheimer's conclusion that RTZ was harmed and is entitled to lost profits damages is flawed and rests on facts that do not exist in the record. As such, Schwechheimer's opinion about lost profits damages should be excluded in its entirety.

Schwechheimer also concludes that RTZ is entitled to "economic damages resulting from" Intus' access to PACECare, which total between $430,000 and $550,000, depending on the length of the access period. (Beshai Decl. ¶ 2, Ex. A, ¶ 5.) To reach this number, Schwechheimer assumes a $10,000 per month fee that would have been owed to RTZ across the access period (calculated as either 43 months or 55 months). This conclusion is improper for two reasons. First, the time period Schwechheimer uses includes months during which RTZ no longer owned PACECare and therefore was not entitled to its profits. Schwechheimer's "access period" is June 2021 to December 2024 (totaling $430,000) or, alternatively, June 2021 to December 2025 (totaling $550,000). As explained, Collabrios purchased RTZ and its assets, including PACECare,

---

[2] In a letter brief filed on May 28, 2026 (Dkt. 144), RTZ took the position that the three contracts on which its damages are based are Collabrios—not RTZ—customers.

in October 2024. The last month in which RTZ would have been entitled to an access fee would be September 2024, when it still owned PACECare. This means the maximum possible damages available to RTZ would be $400,000 (June 2021 to September 2024). Second, RTZ is not even entitled to that $400,000 because Schwechheimer's damage calculation is based on an access agreement between Intus and a different EMR provider, Tabula Rasa Health Care, which was never paid but which contemplated a $10,000 per month access fee. (Beshai Decl. ¶ 2, Ex. A, ¶ 58.) Schwechheimer acknowledged that he reviewed Zawadski's deposition testimony in which Zawadski stated that the Tabula Rasa agreement was never executed—meaning the $10,000 per month was never paid. (Beshai Decl. ¶ 3, Ex. B, 115:13-20.) He also testified that he does not know the reasons the Tabula Rasa agreement did not go forward but the fact that not a single dollar was paid did not change his opinion because "there was a meeting of the minds" and the parties "signed off on it," so "that's an agreement in my world." (*Id.* 115:21-117:16.) Put differently, Schwechheimer uses an agreement that was never executed and on which no money was paid as his only source of support for what Intus would have paid for access. He does not even analyze the reasons for the non-payment or how such non-payment would undermine his conclusion. The folly of this reasoning—and the opinion it produces—is self-evident. Schwechheimer's damages opinions are flawed and should be excluded.

### b. Schwechheimer's Opinions About the PACECare Modules and Supposed Accelerated Development of CareHub Should Be Excluded

Schwechheimer's "opinions" about the PACECare modules allegedly accessed by Intus are a mere conduit by which RTZ wishes to funnel its own view of the case to the jury. Under Federal Rule of Evidence 703, the Court must ask two questions to assess whether to allow an expert to offer an opinion premised on inadmissible hearsay. "The first question is 'whether the facts are of a type reasonably relied on by experts in the particular field.' The second question is whether the probative value of the underlying data substantially outweighs its prejudicial effect. *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1061 (9th Cir. 2003). "There is a presumption against disclosure to the jury of inadmissible information used as the basis for expert's opinion." *United States v. W.R. Grace*, 504 F.3d 745, 759 n.7 (9th Cir. 2007).

PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER

Schwechheimer's opinion fails both tests.

First, by his own admission, Schwechheimer is "not an expert on software functionality." (Beshai Decl. ¶ 3, Ex. B, 30:4; *see also* 62:11-14.) Rather, he provided a list of modules to an employee of defendant RTZ and asked her to rank each module either "High," "Medium," or "Low" based on whether the module provides insight into PACECare's structure or contains features that are not common in an EMR. (Beshai Decl. ¶ 2, Ex. A, ¶ 38.) Schwechheimer has no idea what methodology Emery used to rank the various modules. (Beshai Decl. ¶ 3, Ex. B, 39:22-25.) Nor did he vet the rankings himself because doing so would be "beyond [his] expertise." (*Id.* 39:18-21.) Indeed, he stated, "If you quizzed me on most of these [modules] I wouldn't know what this is." (*Id.* 127:22-23.) An expert can only "rely on the opinions of others if other evidence supports his opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014). And an expert must be able to explain his methodology such that "[s]omeone else using the same data and methods ... be able to replicate the result[s]." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047 (9th Cir. 2014); *see also In re Incretin-Based Therapies Prods. Liba. Litig.*, No. 21-55342, 2022 WL 898595, at *1 (9th Cir. 2022) (excluding expert testimony where the "expert's reports did not provide a meaningful methodological explanation" and "[i]n the absence of such an explanation, the district court had no means to ensure that Dr. Gale's 'conclusions were not mere subjective beliefs or unsupported speculation'").

Here, there is no other evidence beyond Emery's rankings supporting Schwechheimer's "opinion," and he conceded that he did not do his own independent evaluation of the ranking system. Nor could he, as the relative importance of software functionality is outside his expertise. (Beshai Decl. ¶ 3, Ex. B, 30:4; *see also id.* 62:11-14.) There can be no question, then, that these module rankings are not the type of facts reasonably relied on by economists providing damages calculations. *United States v. Andrews*, No. 2:18-CR-000256-JAM, 2022 WL 9466146, at *4 (E.D. Cal. Oct. 14, 2022), *aff'd sub nom. United States v. Long Andrews*, No. 23-2320, 2025 WL 1201431 (9th Cir. 2025) (affirming exclusion of expert testimony based on "videos [that] were neither peer reviewed nor based on any discernable methodology").

PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER

Second, the probative value of the underlying data does not substantially outweigh its prejudicial effect. Schwechheimer testified that he does not attribute specific economic value to individual modules, nor does he assign a damages value to all the modules collectively. He concedes, in fact, that none of the modules "tie to a specific [damages] number." (Beshai Decl. ¶ 3, Ex. B, 128:15.) There is, therefore, no relevance or probative value to these module rankings as they pertain to Schwechheimer's ultimate damages calculation. Any testimony on these module rankings would serve only to prejudice Intus by informing the jury that a number of modules ranked "High" (whatever that means) in value by RTZ were supposedly accessed by Intus.

The same reasoning applies to any testimony by Schwechheimer about the supposed accelerated timeline of CareHub's development. According to Schwechheimer, Intus supposedly enjoyed "a 'massive' developmental short cut by using such knowledge to achieve the same or similar result at a much lower cost, in a shorter amount of time, and with much less risk." (Beshai Decl. ¶ 2, Ex. A, ¶ 41, *see also id.* ¶¶ 62, 67.)  But he does not quantify this alleged unjust enrichment or reduce the claimed benefit to a damages number. (Beshai Decl. ¶ 3, Ex. B, 63:6-12.) He concedes, in fact, that he does not have the data he needs "to undertake a complete and thorough [analysis] of Intus' unjust enrichment." (*Id.*) When pressed on the issue, Schwechheimer disavowed any notion that he was giving an opinion as to whether the development of CareHub was "rapid," and he did not do his own analysis of an appropriate development timeline. (*Id.* 27:3-28:4.) Instead, Schwechheimer relied entirely on Zawadski's deposition testimony and did not even ask Zawadski about what an appropriate development timeline would be. (*Id.*) Relying on Zawadski's deposition testimony, Schwechheimer opines that Intus was able to offer "a similar functional experience" by supposedly copying the "look and feel" of PACECare. Neither Schwechheimer nor Zawadski have ever seen CareHub. (Beshai Decl. ¶ 3, Ex. B, 22:14-16; 25:13-21; *see also* Beshai Decl. ¶ 4, Ex. C, Deposition of Michael Zawadski at 167:7-11.) Much like his improper opinions about the module rankings, Schwechheimer's opinions about the accelerated timeline are premised entirely on unreliable hearsay and would only prejudice Intus by creating the misleading impression that CareHub's development was somehow "accelerated" by PACECare access—a proposition that is false and without any support.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER

**c.    Schwechheimer's Opinions About Intus' Capital Raises Should Be Excluded**

Schwechheimer's opinion as to the role CareHub played in Intus' capital raises is irrelevant to his damage calculation. He expressly conceded that Intus' capital raises do not "specifically go into a damages calculation" but are, instead, "background context" to undermine Intus' claims of harm. (Beshai Decl. ¶ 3, Ex. B, 76:20-78:5; Beshai Decl. ¶ 2, Ex. A, ¶¶ 44-46.) When asked to clarify why exactly the capital raises were referenced in his report despite not playing any role in his damage calculations, Schwechheimer stated that he was opining on the "incentives of a small start up company at that time." (Beshai Decl. ¶ 3, Ex. B, 74:15-18.) Put differently, Schwechheimer is opining that Intus' motive—or "incentive" as he calls it—was to access the PACECare system and develop CareHub for the purpose of raising additional capital. This sort of testimony about an entity's state of mind is not proper expert testimony. "Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind. . . . Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case. The jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013); *see also OCG Energy, LLC v. Shen*, No. 822CV01568FWSDFM, 2024 WL 694912, at *7 (C.D. Cal. Feb. 12, 2024) (excluding expert opinion about an entity's "intent, motive, or state of mind," as "improper expert testimony that invades the province of the jury").

According to Schwechheimer, the fact that Intus was able to raise capital does not, in his mind, "square" with the notion that Intus was also harmed by the lost contracts resulting from RTZ's information blocking. (Beshai Decl. ¶ 3, Ex. B, 77:20-25.) He does not conduct any analysis of the capital raises or whether they would have been at a different valuation or amount absent RTZ's conduct. His opinion is also not rooted in any reliable methodology. Instead, this is simply another instance in which Schwechheimer is used as a conduit for RTZ's argument that Intus' capital raises belie any claim of harm by Intus.

12

### d. Schwechheimer's Opinions About RTZ's Legal Entitlement to Damages Should Be Excluded

"[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law 'is the distinct and exclusive province of the court.'" *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quotations omitted). Schwechheimer's opinion that disgorgement of profits is an available remedy under the California Comprehensive Computer Data Access and Fraud Act is both wrong and improper legal opinion. (Beshai Decl. ¶ 2, Ex. A, ¶ 52). Likewise inappropriate is Schwechheimer's statement that "[i]n the event the trier-of-fact finds Intus liable under one or more applicable statutes, RTZ would be entitled to various pecuniary remedies including compensatory damages, exemplary damages, and restitution as well as injunctive, declaratory, and/or other equitable relief." (*Id.* ¶ 51.) These are legal opinions about RTZ's entitlement to damages, and it is not proper for Schwechheimer to opine on these issues. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008) (affirming district court's exclusion of testimony under both FRE 701 and 702 because it amounted to "legal conclusions that would have served 'to do nothing more than tell the jury what result it should reach'"); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (matters of law are for the court's determination and "were inappropriate for expert testimony").

### V. CONCLUSION

For the foregoing reasons, the Court should exclude Schwechheimer's testimony in its entirety.

Dated:  May 28, 2026

EPSTEIN BECKER & GREEN, P.C.

By:  /s/ Charles E. Weir
Charles E. Weir
Andrew M. Beshai

Attorneys for Plaintiff
INTUS CARE, INC.