Charles E. Weir (SBN 211091)
Andrew M. Beshai (SBN 308030)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, California 90067-2506
Telephone:    310.556.8861
Facsimile:    310.553.2165
cweir@ebglaw.com
abeshai@ebglaw.com

Attorneys for Plaintiff
INTUS CARE, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUSCARE INC., | Case No. 4:24-cv-01132-JST |
| Plaintiff, | *Assigned to Hon. Jon S. Tigar* |
| v. | **PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN** |
| RTZ ASSOCIATES, INC.; and DOES 1 through 10, | *[Filed concurrently with: 1) Declaration of Andrew Beshai; 2) [Proposed] Order]* |
| Defendant. | Date:   July 2, 2026<br>Time:   2:00 p.m.<br>Crtrm:  6 |
| | Complaint Filed: February 23, 2024<br>Amended Complaint Filed: April 2, 2024<br>Counterclaims Filed: June 20, 2024 |

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

PLEASE TAKE NOTICE that Plaintiff IntusCare Inc. ("Plaintiff" or "Intus") will and hereby does move to exclude the Expert Report (the "Report") and testimony of Defendant RTZ Associates, Inc.'s ("RTZ") expert Traci Creegan ("Creegan") at trial, in the above captioned matter

This motion is made pursuant to *Daubert v. Merrell Dow Pharmaceuticals., Inc*., 509 U.S. 579 (1993) and Federal Rules of Evidence 401, 403, and 702, and is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Andrew Beshai, the complete files and records in this action, and any other evidence or argument presented to the Court at or before the hearing.

Dated:  May 28, 2026

EPSTEIN BECKER & GREEN, P.C.

By:    /s/ Charles E. Weir
_____
Charles E. Weir
Andrew M. Beshai

Attorneys for Plaintiff
INTUS CARE, INC.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

## **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ............................................................................................................. 6

II.    BACKGROUND ............................................................................................................... 7

III.   LEGAL STANDARD ..................................................................................................... 11

IV.    CREEGAN'S TESTIMONY FAILS THE *DAUBERT* STANDARD AND SHOULD BE
       EXCLUDED. ................................................................................................................... 12

       A. Creegan's Opinions Regarding Issues Already Adjudicated Should be Excluded. ........... 12

       B. Creegan's Legal Conclusions are Not Helpful to the Trier of Fact. ................................. 13

       C. Creegan Merely Restates RTZ's Positions Regarding the Evidence without Employing
          Any Expertise or Methodology. ....................................................................................... 16

       D. Creegan's Testimony Regarding Intus's Alleged Failure to Meet Industry Standards
          Should Be Excluded as Irrelevant and Prejudicial. ......................................................... 18

V.     CONCLUSION ................................................................................................................ 21

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aguilar v. Int'l Longshoremen's Union Local No. 10*
966 F.2d 443 (9th Cir. 1992)...................................................................................... 13

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*
613 F. Supp. 3d 1308 (S.D. Cal. 2020), aff'd, 9 F.4th 1102 (9th Cir. 2021) .......................... 16

*Black v. Irving Materials, Inc.*
No. 17-CV-06734-LHK, 2019 WL 13199570 (N.D. Cal. May 29, 2019) ............................. 13

*Daubert v. Merrell Dow Phar, Inc.*
509 U.S. 579 (1993)............................................................................................... 11, 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
43 F.3d 1311 (9th Cir. 1995)........................................................................................ 11

*Elliott v. Versa CIC, L.P.*
349 F. Supp. 3d 1004 (S.D. Cal. 2018) ...................................................................... 16, 17, 18

*Hangarter v. Provident Life & Acc. Ins. Co.*
373 F.3d 998 (9th Cir. 2004)........................................................................................ 18

*Holley v. Gilead Scis., Inc.*
No. 18-CV-06972-JST, 2023 WL 2469632 (N.D. Cal. Feb. 27, 2023)................................. 14

*In re Incretin-Based Therapies Prods. Liab. Litig.*
524 F. Supp. 3d 1007 (S.D. Cal. 2021), *aff'd,* No. 21-55342, 2022 WL 898595
(9th Cir. Mar. 28, 2022*)* ........................................................................................... 17

*In re Live Concert Antitrust Litig.*
863 F. Supp. 2d 966 (C.D. Cal. 2012)............................................................................ 16

*Lust v. Merrell Dow Phar, Inc.*
89 F.3d 594 (9th Cir. 1996)......................................................................................... 11

*Milgard Tempering, Inc. v. Selas Corp. of Am.*
902 F.2d 703 (9th Cir. 1990)........................................................................................ 13

*Nat'l Prod., Inc. v. Arkon Res., Inc.*
No. C15-1553-JPD, 2017 WL 5499801 (W.D. Wash. Nov. 16, 2017) ................................. 14

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*
523 F.3d 1051 (9th Cir. 2008)................................................................................... 13, 15

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

*OCG Energy, LLC v. Shen*
  No. 822CV01568FWSDFM, 2024 WL 694912 (C.D. Cal. Feb. 12, 2024) ........................... 19

*Parenti v. Cnty. of Monterey*
  No. 14-CV-05481-BLF, 2017 WL 1709349 (N.D. Cal. May 3, 2017) .................................. 13

*Pinal Creek Group v. Newmont Mining Corp.*
  352 F. Supp. 2d 1037 (D. Ariz. 2005) .................................................................................. 13

*Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*
  927 F. Supp. 2d 1069 (D. Or. 2013) ..................................................................................... 19

*United States v. Holguin*
  51 F.4th 841 (9th Cir. 2022) ......................................................................................... 16, 17

*United States v. Lummi Indian Tribe*
  235 F.3d 443 (9th Cir. 2000) ................................................................................................ 13

*Wells Fargo Bank N.A. v. LaSalle Bank Nat. Ass'n*
  No. 2:08-CV-1488 JCM (RJJ), 2011 WL 743748 (D. Nev. Feb. 23, 2011) ..................... 16, 19

**Federal Statutes**

45 C.F.R. § 171.100 .................................................................................................................... 12

Anti-Cybersquatting Consumer Protection Act ........................................................................... 13

Federal Rule of Evidence
  401 .................................................................................................................................... 12, 21

  403 .............................................................................................................................. 11, 12, 21

  701 ......................................................................................................................................... 13.

  702 ................................................................................................................. 11, 12, 13, 21

Twenty First Century Cures Act ...................................................................................... *passim*

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

IntusCare Inc. ("Intus") moves to exclude the Expert Report (the "Report") and testimony of Defendant RTZ Associates, Inc.'s ("RTZ") expert Traci Creegan ("Creegan"). Contrary to RTZ's claims that Ms. Creegan is acting as an "industry expert," the Report is nothing more than Creegan's (incorrect) interpretation of the law regarding information blocking and her interpretation of specific testimony and communications in this case. It is the role of the Court to determine what the law on information blocking is, and it is the role of the jury to make determinations about the credibility and state of mind of the various witnesses in the case. Since Creegan offers no testimony that would help the jury with its evaluation of the facts of the case, her testimony should be excluded.

Creegan sets forth four core opinions in the Report: (1) RTZ did not meet her interpretation of the regulatory definition of "actor" and therefore was not subject to information blocking regulations; (2) RTZ's conduct did not meet her regulatory definition of information blocking; (3) if RTZ engaged in information blocking, the manner exception applies, again as Creegan interprets the regulations; and (4) Intus' state of mind, motivations and actions.

The Report and Creegan's testimony should be excluded for several reasons. First, her opinions regarding what the information blocking rules and regulations mean are not the proper subject of expert testimony. The Court, not an expert or the jury, will determine what the legal framework is and instruct the jury accordingly. Thus, not only are Creegan's views on how the regulations define an "Actor," the definition of information blocking, and the meaning of the manner exception wrong, they are not the proper subject of expert testimony and must all be excluded. Moreover, the Court has already adjudicated on summary judgment some of these legal issues. The Court held that RTZ is an "actor" for purposes of the Twenty First Century Cures Act ("Cures Act") and did engage in information blocking. RTZ cannot circumvent the Court's ruling by relitigating these issues under the guise of expert "opinion." Second, Creegan assesses facts in a manner that does not require expertise and instead clearly invades the province of the jury. For example, she interprets case specific emails and testimony to come to "opinions" about the state of

mind of witnesses or the scope of services Intus is providing.

Because her opinions will not help the trier of fact, Creegan's Report and testimony should be excluded at trial.

## II.    BACKGROUND

In order for Intus to provide its services, which include data analytics to help its clients better coordinate care, Intus needs access to its clients' data, which for certain clients resides on RTZ's electronic medical records ("EMR") platform, called PACECare. RTZ's illegal information blocking conduct has prevented Intus from obtaining the data it needs to provide services to its clients. RTZ disclaims liability under the blocking statutes and has retained Creegan apparently for the purpose of instructing the jury on what the law on information blocking is and to declaring the ultimate legal conclusion to the jury—that RTZ did not violate the statutes and applicable regulations.

Creegan is an Associate Director with the consulting firm BRG's Healthcare Practice and describes that ███████████████████████████████ (Declaration of Andrew Beshai ("Beshai Decl."), Ex. A, ¶ 4.) Her ██████████████████ ████████████████████████████████████ (*Id.* ¶¶ 6-7.)

According to the Report, ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████" (*Id.* ¶ 14.) Creegan reaches four opinions based on her review of RTZ's answer and counterclaims, a limited subset of email communications from the case, some deposition testimony and her interpretation of the Cures Act. First, Creegan provides her interpretation of how the regulations define an "actor." She concludes ████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████ (*Id.* ¶ 15.) Second, Creegan provides ████████████ ████████████████████████████████████████████ ████████████████ (*Id.*) Third, ████████████████████ ████████████████████████████████████████████

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

███████████████████████████████████ (*Id.*) Finally, ███████

████████████████████████████████████████████████████████

█████████████████████████████████ (*Id.*)

Two of the conclusions were previously adjudicated in this case. In its order on Intus's motion for summary judgment, the Court concluded RTZ is an actor and engaged in information blocking. (Dkt. 84 at 5:19-22; 6:1-3.)

To reach each of her opinions, ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ (Beshai Decl., Ex. A, pp. 4-8.) Specifically, she describes the purpose of the information blocking rules, the categories of "actors" to whom the information blocking rules apply, and exceptions to the rules. For most of her interpretations, she does not cite any support. For example:

- ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████ (*Id.* ¶ 34.) (no source cited for the proposition.)

- ████████████████████████████████████████████████████ █████████████████████ (*Id.* ¶ 45.) (no source cited for the proposition.)

- ████████████████████████████████████████████████████ ██████████████████ (*Id.* ¶ 53.) (no source cited for the proposition.)

- ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ (*Id.* ¶ 67.) (no source cited for the proposition.)

Creegan then proceeds to apply her interpretation of the rules and regulations in reaching conclusions as to the ultimate legal issues in the case:

- ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████ (*Id.* ¶ 35(a)).

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

- ████████████████████████████████████████████████████ (*Id.* ¶ 37.)

- ████████████████████████████████████████████████████ (*Id.* ¶ 53.)

- ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████ (*Id.* ¶ 92.)

During her deposition, Creegan confirmed she intends to "educate" the jury as to the law during her testimony: "I would educate the jury and the judge on what information blocking is, what the requirements of -- are of information blocking in regards to what does it mean to be an actor who qualifies as an actor who doesn't. What actually constitutes information blocking, and what are the potential exceptions that are identified within the information blocking regulations. So I would provide that educational information." (Beshai Decl., Ex. B, 33:23-34:14.)

In addition to statutory and regulatory interpretation, Creegan bakes contract interpretation into her opinions. For example, and putting aside that she is not qualified nor is it helpful to the trier of fact to interpret contracts, she concludes ████████████████
████████████████████████████████████████████████████
████████████████████████████████████ (Beshai Decl., Ex. A, ¶ 54.) For that proposition, she cites to RTZ's Answer underscoring that the analysis is not even her own but rather RTZ's. (Beshai Decl., Ex. B, 103:2-8) ("Q. What -- where are you getting that RTZ is not exercising control over the data that's entered into the PACECare system? A. Yeah. Based on the RTZ PACECare agreement, where they say that the client owns all information and that RTZ doesn't require any rights to that information.")

Creegan also intends to assess and interpret the specific facts as opposed to providing testimony that would help the jury make those assessments, including deposition transcripts and emails:

- ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

(Beshai Decl., Ex. A, ¶¶ 51-52.)



- ███████████████████████████████████████████████████████ (*Id.* ¶ 65.)

- ███████████████████████████████████████████████████████ (*Id.* ¶ 72.)

- ███████████████████████████████████████████████████████ (*Id.* ¶ 82.)

- ███████████████████████████████████████████████████████ (*Id.* ¶ 85.)

- Creegan describes the ████████████████████████████████ ████████████████████ (*Id.* ¶ 87.)

- ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████ (*Id.* ¶ 99.)

Creegan confirmed during her deposition that she intends to opine on whether Mr. Rothberg "misunderstood" the regulations based on her review and interpretation of his deposition: "[S]o my opinion is that Intus misunderstood some of the regulatory requirements at that time, and that's based on their own deposition and on emails, because if they had understood them, there would have been – there would have been different information in the email." (Beshai Decl., Ex. B, 153:7-12.)

While Creegan reviewed deposition transcripts and a handful of emails in reaching her conclusions, she did not actually review or analyze the systems themselves. (*See, e.g., id.* 148:24-149:2) (Q. Did you ask to access these various modules and were denied that access, or did you not make the request? A. No, I did not request to access the system.") In fact, she admitted that she did not even ask to access some of the relevant systems and that she has little to no knowledge of Intus's operations and product lines. (*See, e.g., id.* 141:9-13) (" [Creegan]: I am not aware of any coding services [provided by Intus]. […] Q. Is it possible that they were providing a broader range of services that would require them to access all of the various items that they accessed? A. It is possible.")

Finally, Creegan's report includes her opinions regarding Intus's understanding of

regulations and the meaning of its requests, and from that she claims that Intus fell short of unidentified "industry standards." For example, Creegan states, ██████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ (Beshai Decl., Ex. A, ¶ 97.) And further, ████████████

██████████████████████████████████████████████████

████████████████████████ (*Id.* ¶ 100.) RTZ does not allege in its Answer or Counterclaims that Intus fell short of industry standards or how any particular "industry standard" would be relevant to the issues in this case.

### III.    LEGAL STANDARD

Federal Rule of Evidence 702 provides that an expert witness's testimony will be admitted only if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. *See also Daubert v. Merrell Dow Phar, Inc.*, 509 U.S. 579, 589-95 (1993) (the trial court acts as a "gatekeeper" to ensure through a preliminary determination that proffered expert evidence is both relevant and reliable). Additionally, pursuant to Federal Rule of Evidence 403, the court may exclude even relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues or misleading the jury.

Applying FRE 702 and FRE 403, the Ninth Circuit explains "we must ensure that the proposed expert testimony is 'relevant to the task at hand' . . . i.e., that it logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*") (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-91 (1993)). The party offering the expert opinion bears the burden of proof. *Id.* at 1315-16, 18 n.10; *Lust v. Merrell Dow Phar, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("[I]t is the proponent of the expert who has the burden of proving admissibility."). Such admissibility must be proven by a preponderance of the evidence. *Daubert*, 509 U.S. at 592, n.10.

11

**IV.    CREEGAN'S TESTIMONY FAILS THE *DAUBERT* STANDARD AND SHOULD BE EXCLUDED.**

Creegan's opinions should be excluded for several reasons under FRE 702, FRE 403, and FRE 401. *First*, ███████████████████████████████████████████ ███████████████████████████████████████████████ (Beshai Decl., Ex. A, ¶¶ 32-65.) Not only have these issues already been adjudicated, but the trier of fact is not going to be tasked with evaluating the meaning of regulations. Thus, not only is Creegan's interpretation wrong, it does not help the trier of fact in this case. Creegan's testimony will only confuse the trier of fact and prejudice Intus. *Second*, Creegan serves as a mere mouthpiece for RTZ by interpreting and mischaracterizing emails and deposition testimony—she directly invades the role of the trier of fact in doing so. For example, the jury is not aided by Creegan's interpretation of ██████████ ████████████████████████████ (Beshai Decl., Ex. A, p. 28; Ex. B, 156:2-23.) She repeatedly fails to employ any discernable methodology for her interpretation of case specific emails and testimony. *Finally*, Creegan takes her interpretation of these case specific communications and opines that Intus acted inconsistently with unidentified industry standards. Not only is there no basis for the opinion, but that is not at issue in the case and will serve only to confuse the jury; thus, it should be excluded.

**A.    Creegan's Opinions Regarding Issues Already Adjudicated Should be Excluded.**

On September 11, 2025, the Court entered an order on Intus's Motion for Summary Judgment. While denying the motion based on disputed facts relating to the manner and feasibility exceptions, the Court found RTZ *was* an actor and *did* engage in information blocking. The Court first explained "RTZ does not contest that it must comply with the Cures Act—i.e., that it is an 'actor' as defined by 45 C.F.R. § 171.100." (Dkt. 84, p. 5:20-22.) And further, RTZ's conduct "falls within the umbrella of 'information blocking' addressed by the Cures Act. … the Court concludes that Intus has met its initial burden of demonstrating that RTZ 'engaged in facial information blocking.'" (*Id.*, p. 6:27-7:3.)

RTZ now improperly seeks to revisit these two issues through Creegan's opinion about her views of the meaning of relevant regulations. The Court should reject RTZ's effort to

circumvent the law of the case. Under the law-of-the-case doctrine, "a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). "The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). Creegan ███████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ (Beshai Decl., Ex. A, ¶¶ 32-43) and, ██████████████████████████████████████████████████████████████ (*Id.* ¶¶ 44-65.) These opinions are all improper legal opinions on previously decided issues.

### B.  Creegan's Legal Conclusions are Not Helpful to the Trier of Fact.

Creegan's views on the regulatory framework are merely legal argument. The jury is not going to be tasked with interpreting the information blocking regulations. Thus, such testimony is not actually helpful to the trier of fact and should be excluded. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008) (affirming district court's exclusion of testimony under both FRE 701 and 702 because it amounted to "legal conclusions that would have served 'to do nothing more than tell the jury what result it should reach'"); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (matters of law are for the court's determination and "were inappropriate for expert testimony") (citing *Marx v. Diner's Club, Inc.*, 550 F.2d 505, 509 (2d Cir. 1977) (expert testimony consisting of legal conclusions regarding the existence of a contract or the meaning of its terms is not admissible)); *Black v. Irving Materials, Inc.*, No. 17-CV-06734-LHK, 2019 WL 13199570, at *3 (N.D. Cal. May 29, 2019) (excluding testimony relating to expert's opinions on the Anti-Cybersquatting Consumer Protection Act because "[the expert's] discussion as to [plaintiff]'s prior use, [plaintiff]'s purported good faith use," for example, consisted of "pure legal conclusions"); *Parenti v. Cnty. of Monterey,* No. 14-CV-05481-BLF, 2017 WL 1709349, at *2 (N.D. Cal. May 3, 2017) (excluding testimony as to questions of law, specifically expert sought to opine as to whether jail's medical services met Constitutional requirements); *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042 (D. Ariz. 2005) ("Expert testimony is admissible when it will assist the trier of fact in

understanding the evidence or determining a disputed issue of fact. […] However, experts may not opine about how the law should apply to the facts of a particular case. […] Testimony which articulates and applies the relevant law ... circumvents the [fact finder's] decision-making function by telling it how to decide the case."); *Nat'l Prod., Inc. v. Arkon Res., Inc.*, No. C15-1553-JPD, 2017 WL 5499801, at *10 (W.D. Wash. Nov. 16, 2017) (excluding an expert who "oversimplified and misstated the relevant law [because] it would not be helpful to the jury").

Creegan dedicates much of her Report to interpreting the Cures Act and the ONC Rules. For example, she opines ██████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████ (Beshai Decl., Ex. A, ¶ 34.) She does not cite to any sources for these interpretations—they appear to be hers alone. (*See also e.g., id.* ¶¶ 45, 53, 57.) Moreover, throughout her Report, when she opines as to what is "important[]" in the rules, those opinions are also inadmissible as mere speculation regarding the state of mind of Congress and the ONC. *See Holley v. Gilead Scis., Inc.*, No. 18-CV-06972-JST, 2023 WL 2469632, at *5 (N.D. Cal. Feb. 27, 2023) (internal citations omitted) (expert could not "testify as to what type of label the FDA would or would not have ultimately accepted or rejected" because that would be "impermissible speculation as to the state of mind of the FDA"). She confirmed during her deposition that she sees it as her role to "educate" the jury and the judge as to what these regulations and rules mean. (Beshai Decl., Ex. B, 33:23-34:13.)

Not only are Creegan's opinions regarding regulatory definitions and the law improper, but they are also wrong. For example, the lynchpin of her interpretation of the definition of HIN/HIE ties to her interpretation of the word "affiliate." She claims that while third parties such as labs, physicians, nurses, etc. were exchanging health information using the PACECare system, since there were contracts among these third parties they are still "affiliated" and thus the exchange of information does not fit the HIN/HIE definition. This is directly contradicted by the federal register section cited in her report, which provides that "two parties are affiliated if one has the power to control the other, or if both parties are under the common control or ownership of a common

owner." *21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program*, 85 Fed. Reg. 25642, 25801 (May 1, 2020), available at https://www.govinfo.gov/content/pkg/FR-2020-05-01/pdf/2020-07419.pdf. Indeed, the federal report goes on to state that "any further limitation" on the definition of "affiliate"—like the unfounded limitation Creegan imposes—"would be artificial and would not capture the full range of entities that should be considered networks under the information blocking provision." *Id*. Thus, Creegan's unsupported claim regarding the meaning of "affiliate" is simply wrong. More importantly for this motion, however, these types of debates about the meaning of affiliate in a regulation are not going to be solved by the jury. The parties will brief and argue the matter to the Court, which will decide such issues and how they may impact the jury instructions.

Based on her interpretation of the law Creegan concludes that: ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Beshai Decl., Ex. A, ¶ 15); (2) ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ (*id.*); and, (3) ▮▮▮▮▮▮▮▮▮▮▮▮ (*id.*). Each of these opinions is a legal conclusion. It is up to the Court to make the legal determinations Creegan is attempting to make and instruct the jury accordingly. And, it will be up to the jury—not Creegan—to decide whether RTZ's conduct meets an exception based on those instructions. RTZ cannot simply put up Creegan to tell the jury what result they should reach. *See Nationwide Transp. Fin.*, 523 F.3d at 1060.

Additionally, some of her opinions are inadmissible not only because they are mere legal opinions, but also because they are *irrelevant* legal opinions. For example, she states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Beshai Decl., Ex. A, ¶ 20.) It is unclear why this is "[n]otable," other than for the purpose of rehashing another previously adjudicated issue.

Creegan incorporates other legal opinions and interprets case specific facts into her Report relating to the PACECare Agreement and the drafts of RTZ's proposed NDA. For example, ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

████████████████████████████████████████ (*Id.* ¶ 60.) She also describes ████████

█████████████████████████████████████████████████████████

(*Id.* ¶ 80.) Creegan is not qualified to give such opinions—none of her qualifications suggest she is an expert in characterizing or opining about contract negotiations. Moreover, like her testimony regarding her interpretation of the law, her testimony regarding contract interpretation and the parties' course of dealing in negotiation of the NDA is similarly inadmissible. "Unless a contract is deemed ambiguous or there is a term of the contract that requires an expert's explanation, it is improper for an expert to interpret or construe a contract in his opinion. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1320 (S.D. Cal. 2020), aff'd, 9 F.4th 1102 (9th Cir. 2021) (citing *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999)); *Wells Fargo Bank N.A. v. LaSalle Bank Nat. Ass'n*, No. 2:08-CV-1488 JCM (RJJ), 2011 WL 743748, at *4 (D. Nev. Feb. 23, 2011) (industry expert's interpretation of contract was excluded as an inappropriate subject for expert testimony.) Creegan's attempts to interpret the contracts and characterize the parties' course of conduct in negotiations is improper and should be excluded.

**C.      Creegan Merely Restates RTZ's Positions Regarding the Evidence without Employing Any Expertise or Methodology.**

Creegan plans to testify regarding her interpretation of emails and deposition testimony in this lawsuit. Such testimony does not help the trier of fact and instead usurps the jury's role. *See Elliott v. Versa CIC, L.P.*, 349 F. Supp. 3d 1004, 1006 (S.D. Cal. 2018) (excluding report when "[a] review of [the expert's] report reveals to the Court that his 'expert' opinions are merely his own assessment of the facts.); *see also* 6 Handbook of Fed. Evid. § 703:1 (10th ed.) ("Expert witness opinions must be distinguished from mere summaries or 'mere conduits' of case-specific facts or hearsay, as experts may not testify as to facts outside their personal knowledge […]). Notably, there is nothing in the emails and transcripts that require an expert's interpretation—the jury is capable of assessing that evidence on its own. *See e.g., United States v. Holguin*, 51 F.4th 841, 862 (9th Cir. 2022) (acknowledging that expert testimony is "unhelpful [when] it interpreted clear language[.]"). Relatedly, Creegan does not actually employ any methodology in reviewing the evidence and reaching her conclusions. *See In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 987 (C.D. Cal. 2012) (excluding expert testimony that did not apply a methodology but instead

16

his approach to the facts "impermissibly predetermined the results[.]").

For example, ███████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████ (*Id*. ¶ 82.) She also decides that ████ ██████████████████████████████████████████████████████ ████████████ (*Id*. ¶ 89); (*see also* Ex. B, 153:7-12.) Creegan did not apply her expertise nor otherwise employ any methodology to reach these conclusions. She just read some emails and deposition transcripts. The trier of fact is capable and should be the ones to assess that evidence. *Elliott*, 349 F. Supp. 3d at 1006; *Holguin*, 51 F.4th at 862. Creegan's testimony will not be helpful and is not proper. *Id*. By contrast, in opining about whether or not the request was technically feasible, Creegan could have asked to review the actual technical systems at play—that could be appropriate subject matter on which an expert can testify. But she did not do that. (*See, e.g.,* Beshai Decl., Ex. B, 148:24-149:2.) Instead, she tells the jury what to think about the testimony of others.

The evidence Creegan interprets is also cherry-picked to fit RTZ's theories. *See In re Incretin-Based Therapies Prods. Liab. Litig*., 524 F. Supp. 3d 1007, 1036 (S.D. Cal. 2021), *aff'd,* No. 21-55342, 2022 WL 898595 (9th Cir. Mar. 28, 2022*)* (criticizing and excluding expert's "selective approach" which "undermined the reliability of his analysis" and further excluding analysis that "was limited to a small universe of data provided to him") (citing *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig. (No. II) MDL 2502*, 892 F.3d 624, 634 (4th Cir. 2018) ("Result-driven analysis, or cherry-picking, undermines principles of the scientific method and is a quintessential example of applying methodologies (valid or otherwise) in an unreliable fashion.")). When an expert selectively uses data or ignores countervailing evidence, this constitutes a fundamental methodological flaw that undermines reliability. *See id.*

For example, Creegan contends that Intus's request for "read-only access to [RTZ's] system" was somehow an alarming request that "would immediately raise security concerns." To reach this conclusion, Creegan relied on a single line taken completely out of context. In the communication from which Creegan plucked this quote, Intus tells RTZ, "As a starting off point, we would like read-only access to your system. We provide additional analytics to [the PACE

client], and in order to do this we need to extract patient information from your system. You will not be consuming any service or API that we use. The business relationship is one where we would consume your information, via API or otherwise to populate our system." (Beshai Decl., Ex. C.) The context of the email chain from which Creegan selectively quotes is a discussion of API access (which does not require any exposure to user interface or front-end system access and, therefore, undermines Creegan's feigned security concerns); *see also* (Ex. B, 127:16-23) ("Q. […] but what about all the other testimony and evidence that is in the record that says – shows that RTZ was well aware that there was an automated script there. Did you look at any of that? A. I did not see any of that evidence that says, prior to this lawsuit, that RTZ had any knowledge that a script was being run.") The testimony is misleading and unhelpful. More importantly, like the argument about the interpretation of the meaning of regulations, this is not a debate for an expert. The parties will present to the jury their views on the meaning and import of these communications. Having an expert provide testimony that is untethered to any method or scientific analysis simply repeat how RTZ wants the jury to interpret the evidence is unhelpful and should be excluded. *See Elliott* 349 F. Supp. 3d at 1006.

In sum, Creegan's assessment of the facts, and opinions relating to cherry-picked facts, will not help the trier of fact and should be excluded.

### D. Creegan's Testimony Regarding Intus's Alleged Failure to Meet Industry Standards Should Be Excluded as Irrelevant and Prejudicial.

Creegan takes her improper selective review of specific evidence in the case and then seeks to assert that her view of Intus's conduct does not comport with unidentified "industry standards." Intus acknowledges that industry standards can, in certain circumstances, be a proper subject of expert testimony. In those situations, the expert would set out the industry standard and the basis for asserting it as a standard relevant to the issues in the case. The jury can then determine whether the standard was violated. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (explaining that in some instances an expert can opine on industry standards so long as those industry standards are clearly articulated and within the expert's purview and so long as the expert "never testified that he had reached a legal conclusion . . . [on] the ultimate issue of law"). None of that occurs here. Not only are all of the purported "industry standard" opinions

18

improperly based on her interpretation of case specific evidence, but the testimony is entirely irrelevant and prejudicial. The Court should exclude the testimony. *Wells Fargo Bank N.A.*, 2011 WL 743748, at *4 (excluding expert's opinion regarding "customary industry practice" as irrelevant).

Creegan does not actually set out any industry standards or practices. Nor does she explain how such practices would be relevant to this case. For instance, as explained, ███████████ ██████████████████████████████████████████████████ (Beshai Decl., Ex. A ¶¶ 32-43) and then concludes that ███████████████████████████████ ████████████████████████████ (*Id*. ¶ 35(b).) Whether or not RTZ satisfies the regulatory definition of an "actor" under the Cures Act is a quintessential legal conclusion outside of Creegan's prerogative. ███████████████████ ██████████████████████████████████ (*Id*. ¶ 36), but ██████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████

Throughout the Report, Creegan merely cherry picks conduct and communications, interprets those case-specific facts for herself, and then opines that such conduct or communications by Intus are wrong or evince a lack of sophistication. That is not industry standard testimony. For instance, ████████████████████████████████████████ ███████████████████ (*Id*. ¶¶ 45-47), before reaching the legal conclusion that ████ ████████████████████████████████████████ (*Id*. ¶ 53.) The mere characterization of ██████████████████████ is already outside the proper role of an expert because experts may not opine on intent, motive, or state of mind. "Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind. . . . Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case." *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013); *see also OCG Energy, LLC v. Shen*, No. 822CV01568FWSDFM, 2024 WL 694912, at *7 (C.D. Cal. Feb. 12, 2024) (excluding expert

opinion about an entity's "intent, motive, or state of mind," as "improper expert testimony that invades the province of the jury").

Even putting aside the improper testimony as to RTZ's intent and motive, Creegan's "analysis" consists entirely of her own characterization of the communications between RTZ and Intus—there is not a single industry standard articulated or relied on in reaching her opinion. Consider, for instance, the following quotes from Creegan's report:

-

  (Beshai Decl., Ex. A, ¶ 48).

- (*Id.* ¶ 51.)

- (*Id.* ¶ 52.)

- (*Id.* ¶ 73.)

- (*Id.* ¶ 82.)

The Report is marked by Creegan's own take on the parties' communications rather than any industry standards that would help the jury. As the sampling of quotes above shows, Creegan basically parses the communications for selective quotes to opine that RTZ was acting in good faith and that Intus was not clear enough in its request for access. But none of this is industry standard testimony—it is nothing more than Creegan's spin on the communications between the parties. And the parties can testify for themselves about the substance of these communications. After all, Intus and RTZ—not Creegan—were the percipient witnesses to these negotiations.

Creegan also opines that Intus's  (Beshai Decl., Ex. A, ¶ 97.) And further, (*Id.* ¶ 100.)

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

None of these opinions are relevant to the case. As to Intus's claims against RTZ, the focus is entirely on RTZ's information-blocking practices—not Intus's conduct. And none of RTZ's counterclaims (alleging violations of two anti-hacking statutes, California's UCL, trespass to chattels, and inducing breach of contract) have as an element departure from industry standard practice. Nor does Creegan even attempt to link her opinion about Intus's supposed departure from industry practices to any of RTZ's counterclaims. The only purpose of such testimony will be to prejudice the jury into believing that Intus was unsophisticated in a way that was detrimental in the course of business when there is no basis for such an opinion. The Court should prohibit this testimony under FRE 702, FRE 403, and FRE 401.

## V.    CONCLUSION

For the foregoing reasons, the Court should exclude the following opinions from Traci Creegan: 1) that RTZ is not an actor under the Cures Act, 2) that RTZ did not violate the Cures Act, 3) that the manner exception applies to RTZ's conduct, and 4) that Intus departed from industry standards.

Dated:  June 5, 2026                                    EPSTEIN BECKER & GREEN, P.C.

By:    /s/ Charles E. Weir
       Charles E. Weir
       Andrew M. Beshai

       Attorneys for Plaintiff
       INTUS CARE, INC.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN