NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile: 415.398.2438

NOSSAMAN LLP
KASIA PENN (SBN 306056)
kpenn@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone: 949.833.7800
Facsimile: 949.833.7878

Attorneys for Defendant and Counter-claimant
RTZ ASSOCIATES, INC.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUS CARE, INC.,<br><br>              Plaintiff,<br><br>       vs.<br><br>RTZ ASSOCIATES, INC.; and DOES 1 through 10,<br><br>              Defendants, | Case No:     4:24-cv-01132-JST<br><br>Assigned to: Hon. Jon S. Tigar<br><br>**DEFENDANT AND COUNTER-CLAIMANT RTZ ASSOCIATES, INC.'S OPPOSITION TO PLAINTIFF INTUSCARE, INC.'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER**<br><br>*[Concurrently filed with Declaration of David C. Lee]*<br><br>Date:      July 2, 2026<br>Time:      2:00 p.m.<br>Courtroom: 6 |
| RTZ ASSOCIATES, INC.,<br><br>              Counter-claimant,<br><br>       vs.<br><br>INTUS CARE, INC.,<br><br>              Counter-defendant. | |

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE PETER SCHWECHHEIMER

70489976.v2

# TABLE OF CONTENTS

I.      INTRODUCTION                                                                                    1

II.     LEGAL STANDARD                                                                                 2

III.    ARGUMENT                                                                                        3

        A.      Schwechheimer's Damages Opinions Are Reliable and Admissible.            3

                1.      Schwechheimer's Lost Profits Analysis Is Methodologically
                        Sound.                                                                          3

                2.      Schwechheimer's Analysis To Calculate the Value of Intus'
                        Unauthorized Access to PACECare Is Methodologically
                        Sound.                                                                          5

        B.      Schwechheimer's Opinions About the PACECare Modules and
                CareHub's Accelerated Development Are Properly Founded.               7

                1.      The Module Rankings Are Proper Under Rule 703.                    8

                2.      The Accelerated Development Opinions Are Admissible.          10

        C.      Schwechheimer's Opinions About Intus's Capital Raises Provide
                Relevant Context.                                                                  11

        D.      Schwechheimer Does Not Improperly Opine on Legal Issues.           12

IV.     CONCLUSION                                                                                  13

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE PETER
SCHWECHHEIMER

70489976.v2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,*
    738 F.3d 960 (9th Cir. 2013) ...................................................................................................7

*Carson Harbor Vill., Ltd. v. Unocal Corp.,*
    270 F.3d 863 (9th Cir. 2001) .................................................................................................10

*Claar v. Burlington N.R.R.,*
    29 F.3d 499 (9th Cir. 1994) .....................................................................................................2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993)......................................................................................................... *passim*

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999)..................................................................................................................2

*Lucent Techs., Inc. v. Gateway, Inc.,*
    580 F.3d 1301 (Fed. Cir. 2009)................................................................................................7

*Mehle v. Bodum USA, Inc.,*
    No. 24-CV-2740 (MKV), 2025 WL 2732887 (S.D.N.Y. Sept. 25, 2025) .............................12

*Primiano v. Cook,*
    598 F.3d 558 (9th Cir. 2010) ...................................................................................................2

*Triple B Farms v. Haney Seed Co.,*
    34 F.3d 1074 (9th Cir. 1994) ...................................................................................................8

*United States v. Hankey,*
    203 F.3d 1160 (9th Cir. 2000) .................................................................................................2

*United States v. Scavo,*
    593 F.2d 837 (8th Cir. 1979) .................................................................................................12

*United States v. Sims,*
    514 F.2d 147 (9th Cir. 1975) ...................................................................................................8

*V5 Techs., LLC v. Switch, Ltd.,*
    501 F. Supp. 3d 960 (D. Nev. 2020)........................................................................................8

**Statutes**

Cal. Bus. & Prof. Code § 17200 et seq. .......................................................................................1

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE PETER SCHWECHHEIMER

70489976.v2

**Other Authorities**

Fed. R. Evid. 702 ...............................................................................................................1, 2, 12

Fed. R. Evid. 702(a)....................................................................................................................9

Red. R. Evid. 703 .........................................................................................................................8

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE PETER SCHWECHHEIMER

70489976.v2

## I.    INTRODUCTION

Defendant RTZ Associates, Inc. ("RTZ") respectfully opposes Plaintiff IntusCare Inc.'s ("Intus") Motion to Exclude Expert Peter Schwechheimer (the "Motion"). Initially, Intus's challenges to Schwechheimer's opinions are based on its misleading assertion of alleged "facts" that are outrightly false, which violates Intus's duty of candor to this Court. Even putting aside the misleading nature of Intus's Motion, it ultimately amounts to nothing more than a challenge to the weight, rather than the admissibility, of expert testimony that is properly left for cross-examination and the jury.[1]

There is no dispute that Schwechheimer is a well-qualified economics expert whose expertise involves "████████████████████████████████████████████████████████████████" (Beshai Decl., Ex. A [Schwechheimer Report] ¶ 1.) He was retained "████████████████████████████████████████████████████████████████████████████████" (Id. ¶ 3.) RTZ's counterclaims allege that Intus violated two anti-hacking statutes (the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") and the Computer Fraud and Abuse Act ("CFAA")), committed trespass to chattels, engaged in unfair competition under California Business & Professions Code section 17200 et seq., and induced breach of contract by accessing PACECare without authorization. (See Dkt. 41 [RTZ Counterclaim].) These claims are supported by the evidence, and Schwechheimer's damages testimony is critical to RTZ's ability to present its case to the jury.

Under the liberal standard of admissibility that governs expert testimony, Schwechheimer's opinions more than satisfy the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). His testimony is based on sufficient facts and data, employs reliable principles and methods, and reliably applies those

---

[1] Importantly, Intus' Motion only addresses Mr. Schwechheimer's expert opinions and report regarding RTZ's monetary damages.  Intus' Motion does not at all address Mr. Schwechheimer's rebuttal report to Intus' damages expert Dr. Kristopher Hult. As such, any ruling on Intus' Motion should have no impact on Mr. Schwechheimer's rebuttal opinions.

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE PETER SCHWECHHEIMER

70489976.v2

methods to the facts of this case. Intus's disagreements with his damages conclusions go to weight, not admissibility, and should be addressed at trial through cross-examination.

## II.     LEGAL STANDARD

Federal Rule of Evidence 702 provides that expert testimony is admissible if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; see also *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–95 (1993).

The Ninth Circuit has "consistently held that the rejection of expert testimony is the exception rather than the rule." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). Rule 702 embodies a "liberal standard of admissibility," and the trial court's role as gatekeeper does not require the court to ensure that the expert is indisputably correct. *Daubert*, 509 U.S. at 588. Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596. The inquiry is not whether the expert's conclusion is correct, but whether the "methodology underlying that conclusion is sound." *Claar v. Burlington N.R.R.*, 29 F.3d 499, 502 (9th Cir. 1994).

Importantly, the *Daubert* inquiry is "a flexible one," and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). "Shaky but admissible evidence" is to be challenged through cross-examination, not excluded wholesale. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

-2-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE PETER SCHWECHHEIMER

70489976.v2

## III.    ARGUMENT

### A.  Schwechheimer's Damages Opinions Are Reliable and Admissible.

#### 1.  Schwechheimer's Lost Profits Analysis Is Methodologically Sound.

Intus's primary attack on Schwechheimer's lost profits opinion rests on the false premise that RTZ assigned the relevant contracts to Collabrios in October 2024 and therefore cannot claim lost profits from their subsequent cancellation. <u>That premise is factually wrong and is born from nothing more than attorney argument (not fact).</u> The PACECare contracts at issue in Schwechheimer's analysis are between RTZ and PACECare customers; Collabrios merely services those contracts on RTZ's behalf, as RTZ's counsel has represented repeatedly throughout this litigation. (*See, e.g.,* Dkt. 144 at p. 3.) Intus had every opportunity during discovery to investigate the relationship between RTZ and Collabrios and the ownership structure of the PACECare contracts, but it failed to do so. Indeed, this Court has already found that Intus lacked diligence with respect to the RTZ-Collabrios relationship, denying Intus's motion for leave to add Collabrios as a party based on its failure to act for fourteen months after learning of Collabrios's existence. (Dkt. 123 at 2:17-25 (finding that Intus "was not diligent" and took "no action until January 2026—14 months later").) Intus's lack of diligence in pursuing this issue during discovery does not entitle it to make unfounded (and incorrect) presumptions about RTZ's contracts or its financial relationships and/or dealings with Collabrios and then use that unfounded conjecture as a basis for the exclusion of Schweichheimer's opinions. As this Court has already acknowledged, Intus (or its counsel) has not "cite[d] any evidence that the [Schwechheimer] report characterizes the contracts as belonging to or having been assigned to Collabrios." (Dkt. 143 at 2:4-5.) This remains true. Therefore, Intus's instant argument self-evidently is disconnected from the analysis and opinions set forth in the report.

In any event, even if there were a genuine dispute about contract ownership, that would be a merits argument—not an admissibility argument. *Daubert*, 509 U.S. at 588. Whether RTZ is legally entitled to recover lost profits damages on these contracts is a question of law and fact for

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE PETER SCHWECHHEIMER

70489976.v2

the Court and jury to decide. It does not render Schwechheimer's calculation methodology unreliable.

Indeed, Intus does not appear to challenge the strength of Schweichheimer's actual methodology calculating damages from the three RTZ contracts that were cancelled, and Intus cannot do so because Schwechheimer's methodology is sound. Schwechheimer calculated that

███████████████████████████████████████████████████████████

███████████████ (Beshai Decl. Ex. A ¶ 68.) ████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████ (*id.* ¶¶ 68-69, n.86-90)—████████████████████

████████████████ That Intus disputes "Schwechheimer's conclusion that RTZ was harmed and is entitled to lost profits damages" (Mot. at 8:14-16.) does not render his economic methodology unreliable under *Daubert*. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.")

Moreover, RTZ's counterclaims allege conduct dating back to 2022, when Intus first began its unauthorized access to PACECare. (*See* Dkt. 41 ¶¶ 12–13; *see also* Dkt. 145-1 ¶ 3 [9,896 rows of Intus access events from 2022 to 2024].) RTZ alleges that Intus "used such unauthorized access to expedite and refine its own development of a competing EMR system" and "learn about the functionality, operability, layout, interfaces, data presentation and report-generating capabilities of the PACECare system." (Dkt. 41 at Counterclaim ¶ 45.) The damages from that conduct (including customer migration to CareHub) are properly attributable to the period in which Intus's wrongful conduct bore fruit, regardless of the subsequent corporate transaction. (*See* Beshai Decl. Ex. A ¶¶ 5-7.) Intus's own CEO conceded that its "inability to access PACECare represented an existential threat" to Intus's growth capacity and that the "business case for the EMR came about due to the existential threat of us not having access to EMR data" through PACECare. (Declaration of David C. Lee ("Lee Decl.") Ex. A [Deposition

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE PETER
SCHWECHHEIMER

70489976.v2

of John Robert Felton] at 168:1–25.) Intus confirmed that it commenced development of CareHub in early 2024 with a 2025 deliverable goal. (Lee Decl., Ex. B [February 27, 2026 Deposition of Alexander Rothberg] at 200:9-11; 205:19-23.) Schwechheimer's testimony that RTZ was "going to lose revenue in the future if the actions taken by Intus in 2022 was eventually going to lead to a competitor product and lost sales" (Beshai Decl. ¶ 3, Ex. B at 50:11–15) is a standard but-for causation opinion. The fact that Schwechheimer obtained revenue data from Kevin Lathrop at Collabrios reflects the practical reality that Collabrios now possesses the records as a servicer of the contracts; it does not undermine the reliability of the calculation. Schwechheimer properly identified the revenue stream, applied a standard methodology, and quantified the harm. Intus's objections to the source of the data go to weight and credibility, which are quintessential jury questions. *Daubert*, 509 U.S. at 596.

### 2. Schwechheimer's Analysis To Calculate the Value of Intus' Unauthorized Access to PACECare Is Methodologically Sound.

Next, Schwechheimer's access damages opinion is equally sound. He calculated that ███████████████████████████████████████████████████████████ ███████████████████████████████████████████ (Beshai Decl. Ex. A ¶ 5.) This calculation is grounded in a real-world comparable: ███████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ (Beshai Decl. Ex. A ¶ 58.) ████████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████ (Beshai Decl. Ex. A ¶¶ 58-66.) In other words, Schwechheimer, from an economics perspective, analyzed the value of data access delineated in the TRHC agreement to determine a market value for that same data access Intus realized through its unauthorized access to PACECare.

Intus argues this benchmark is unreliable because the TRHC agreement was "never executed" and no money was paid. (Mot. at 9:13.) Specifically, Intus's counsel argues:

-5-

70489976.v2

> Put differently, Schwechheimer **uses an agreement that was never executed** and on which no money was paid as his only source of support for what Intus would have paid for access. (Mot. at 9:13-14, emphasis supplied.)

Intus therefore concludes that, "[t]he folly of this reasoning – and the opinion it produces – is self-evident." (Mot. at 9:16.)

Intus's above assertion is brazenly fallacious. First, as reflected in the signature block excerpt below, it is indisputable that the TRHC agreement was fully executed by TRHC and Intus – indeed, Intus's CEO, Robbie Felton, executed the agreement on September 8, 2022. (*See* Lee Decl., Ex. C [Deposition Ex. 57].) Intus's counsel knows this to be true because they produced the TRHC agreement in discovery and marked it as an exhibit in Michael Zawadski's deposition. (*See* Lee Decl., Ex. D [Deposition of Michael Zawadski] at 152:17-153:8; Ex. C [Deposition Ex. 57].)

Accordingly, Intus's assertion that the TRHC agreement "was never executed" is outrightly false. More to the point, Schwechheimer's reliance on that evidence is reasonable for purposes of establishing a market rate – indeed, a rate agreed to and set by Intus – for accessing EHI data. As Schwechheimer explained, "there was a meeting of the minds" and the parties "signed off on it," so "that's an agreement in my world." (Beshai Decl. ¶ 3, Ex. B at 115:21–117:16.) Whether Intus did or did not pay any monies to TRHC for such access is immaterial.

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE PETER SCHWECHHEIMER

70489976.v2

What is material is that, as expressed in Schwechheimer's Report, Intus defined the value of EHI data access by executing an agreement specifically quantifying the value of such access: i.e., $10,000 per month. (Beshai Decl. Ex. A ¶¶ 58-65.) Use of comparable transactions is a well-accepted methodology in damages analysis. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (discussing use of comparable licenses as benchmarks for reasonable royalty calculations); *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013) (denying challenges to expert testimony based upon disputes about factual comparators and baseline data, and holding that such disputes go to the weight of the testimony rather than its admissibility). The weight of this comparison is a question for the jury.

Intus further argues the access period extends beyond RTZ's ownership of PACECare. As explained above, Intus's counsel's incorrect speculation about the financial interactions between RTZ and Collabrios is not an indictment of Schwechheimer's analysis, but instead, a rehashing of the arguments already presented to and rejected by this Court in connection with Intus's repeated attempts to amend its complaint to name Collabrios as a new defendant. (Dkt. 100, 123, 133, 143.) Regardless, ████████████████████████ ████████████████████████████████ ████████████████████████████ ████████ (Beshai Decl. Ex. A ¶ 5.) That Intus would prefer and argues for a shorter period is a challenge that goes to the weight of the evidence. The Court need not resolve that factual dispute at the *Daubert* stage.

### B. Schwechheimer's Opinions About the PACECare Modules and CareHub's Accelerated Development Are Properly Founded.

Intus next argues that Schwechheimer's module-ranking opinions and his accelerated-development opinions should be excluded. Notably, Intus's motion combines its challenges to those opinions into a single argument. That argument fails, because Schwechheimer reasonably relied upon information that is of a type customarily relied upon by damages experts.

-7-

70489976.v2

**1.  The Module Rankings Are Proper Under Rule 703.**

In his Report, Schwechheimer addresses ███████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████ ████████████████████████████████ ████████████████████ (Beshai Decl. Ex. A ¶¶ 38.) Intus seeks to exclude any Schwechheimer opinions or testimony about such modules. Those opinions should not be excluded.

Schwechheimer's discussion of the PACECare modules is not offered as an independent damages calculation; rather, it provides context for the jury's understanding of what Intus accessed and why that access was harmful to RTZ. ████████████████ ███████████████████████████████████ █████████████████████████ (Beshai Decl. Ex. A ¶ 39.) ██████████ ███████████████████████████████ ████████████████████████████████████ ████████████████████████████ ████████████ (*Id.* ¶ 38.)

Under Federal Rule of Evidence 703, an expert may rely on facts or data that are "of a type reasonably relied upon by experts in the particular field." An economist calculating damages routinely relies on factual inputs from company personnel who have knowledge of the underlying business. *See United States v. Sims*, 514 F.2d 147, 149 (9th Cir. 1975) (experts may rely on information provided by others if of a type customarily relied upon); *Triple B Farms v. Haney Seed Co.*, 34 F.3d 1074 (9th Cir. 1994) (expert could rely on representations made by his client in an interview; challenge to the credibility of client's representations went to weight, not admissibility); *V5 Techs., LLC v. Switch, Ltd.*, 501 F. Supp. 3d 960, 964 (D. Nev. 2020) (expert could rely on conversations with sales representative as basis of opinion that equipment was

"faulty and substandard"). Schwechheimer's reliance on Emery's assessment of relative module value is no different than a damages expert relying on a manager's identification of relevant cost categories.

Intus's objection that Schwechheimer does not assign a specific dollar value to the modules misapprehends the purpose of the testimony. Schwechheimer does not claim these rankings independently quantify damages. Rather, he opines that RTZ is damaged by "the overall access" to PACECare (specifically in areas beyond the stated data needs of Intus) and the module rankings help the jury understand the nature of the proprietary information Intus accessed and why that access conferred competitive value. (Beshai Decl. Ex. B at 59:11–25) As Schwechheimer explained in deposition, the "High" module ranking designates those areas of PACECare that are not found in other PACECare competitor products which therefore carry competitive value if incorporated into Intus's competing CareHub product. (Lee Decl., Ex. E [Schwechheimer Depo. Tr.] at 41:5-16.) As explained by Schwechheimer, Intus's incorporation of module information they accessed in PACECare and incorporated into CareHub is "relevant to my damages calculation." (Lee Decl, Ex. E [Schwechheimer Depo. Tr.] at 41:13-16.) This is particularly significant given the undisputed evidence that ███████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ (*See* Lee Decl., Ex. F [RTZ0000814–18 at 18].) An expert may offer testimony that provides helpful context beyond a raw damages number. *See* Fed. R. Evid. 702(a) (expert testimony is admissible if it "will help the trier of fact to understand the evidence or to determine a fact in issue"). Consequently, Schwechheimer's reliance on and use of the module rankings (which indicate those elements of PACECare that have higher value through their uniqueness) constitutes sound analysis and methodology in assessing the harm occasioned by Intus's unauthorized access into PACECare and its mining of PACECare elements to expedite its own competing CareHub EMR software.

-9-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE PETER SCHWECHHEIMER

70489976.v2

## 2.  The Accelerated Development Opinions Are Admissible.

Schwechheimer's opinion that Intus's access to PACECare may have accelerated the development of CareHub is directly relevant to RTZ's counterclaims. RTZ has alleged that Intus "used its unauthorized access to PACECare to improperly accelerate its own research and development of a competing EMR system." (Dkt. 41 at ¶ 78.) The record supports this allegation: Intus commenced development of CareHub in early 2024 and went live by May 2025—a remarkably rapid development cycle for an EMR product. (*See* Lee Decl., Ex. B [Rothberg Depo. Tr.] at 200:9-11; 205:19-23; *see also* Lee Decl., Ex. G [Jackson Depo. Tr.] at 51:20–25 (confirming Intus and RTZ are in "direct competition").)

Schwechheimer's reliance on the testimony of Michael Zawadski is proper. *See Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 873 (9th Cir. 2001) ("experts are entitled to rely on hearsay in forming their opinions"). Zawadski served as RTZ's CEO "from approximately 2013 until October of 2024," and then as CEO of Collabrios. (Lee Decl., Ex. D [Zawadski Depo. Tr.] at 15:14–16:20.) Schwechheimer's opinion that ███████████████████████████████████████████████████████████████████████████████████ ███ (Beshai Decl. Ex. A ¶ 41) is grounded in Zawadski's testimony that Intus's access to PACECare "revealed 'the entire organizational principle of the system' that 'took years to develop'" and that the "user interface and the selection of variables" is the "most valuable work product you'll create." (Lee Decl., Ex. D [Zawadski Depo. Tr.] at 167:7–11.) That Schwechheimer has not personally examined CareHub does not disqualify him or diminish his opinion. He is an economist opining on the economic implications of accelerated development, not a software engineer offering a code-comparison analysis.

Furthermore, Intus directly blocked Schwechheimer from having any relevant CareHub documents that would have provided additional insight into the CareHub development timeline. The Court has issued multiple orders instructing Intus to produce CareHub-related documents including development timelines. (*See* Dkt. 117 [ordering production by May 7, 2026]; Dkt. 139

-10-

70489976.v2

[ordering production by May 15, 2026].) Indeed, RTZ even raised the urgency of such documents for its expert reports, requesting the Court to expedite Intus's production. (*See* Dkt. 118.) Despite being ordered to produce records concerning CareHub's development timeline and developer files, Intus has largely failed to do so – which is the subject of ongoing discovery disputes. Intus cannot now attack Schwechheimer's opinions for lack of additional supporting data and evidence when Intus itself is the sole cause of the issue.

Moreover, Intus concedes that it is "a competitor to RTZ" and that "Intus's development of CareHub placed Intus and RTZ in direct competition." (Lee Decl., Ex. G [Jackson Depo. Tr.] at 51:20–25.) Intus's own CEO, Robbie Felton, testified that the "business case for the EMR came about due to the existential threat of us not having access to EMR data" through PACECare. (Lee Decl., Ex. A [Felton Depo. Tr.] at 169:1–17.) This testimony provides critical context for the jury's understanding of the economic consequences of Intus's unauthorized access.

### C. Schwechheimer's Opinions About Intus's Capital Raises Provide Relevant Context.

Schwechheimer notes that ███████████████████████████████████████████████████████████████████████████████████████████████████ (Beshai Decl. Ex. A ¶ 77), and he observes that ██████████████████████████████████████████████ (*id.* ¶¶ 44–46). While he concedes these capital raises do not "specifically go into a damages calculation" (Beshai Decl. Ex. B at 76:20–78:5), they are relevant background for the jury to understand the economic context and consequences of Intus's wrongful conduct.

Intus incorrectly characterizes this testimony as improper opinion on "state of mind." (*See* Mot. at 12:11-21.) Schwechheimer is not opining that Intus intended to access PACECare in order to raise capital. Rather, when asked why he included reference to capital raises, Schwechheimer explained that he was opining on the "incentives of a small start-up company at that time" (Beshai Decl. Ex. B at 74:15–18), which is a standard observation about how

-11-

70489976.v2

accelerated market entry attracts capital investment, not a credibility or intent determination. *See Mehle v. Bodum USA, Inc.*, No. 24-CV-2740 (MKV), 2025 WL 2732887, at *5 (S.D.N.Y. Sept. 25, 2025) ("[U]nder Rule 702, [an expert] is permitted to offer her opinions about her observations.")

Even if the Court were inclined to limit this portion of the testimony, the appropriate remedy would be to exclude only the capital-raise discussion, not strike Schwechheimer's testimony in its entirety. *See Daubert*, 509 U.S. at 595 (noting the court's discretion to limit, rather than wholly exclude, expert testimony).

### D.  Schwechheimer Does Not Improperly Opine on Legal Issues.

Finally, Intus challenges two statements in Schwechheimer's report as purportedly offering legal conclusions: (1) ███████████████ (Beshai Decl. Ex. A ¶ 52); and (2) that ███████████████ ███████████████ ███████████████ ███████████████ (*id.* ¶ 51).

These statements are mere prefatory framing that identify the legal theories on which Schwechheimer's expert damages analysis is premised. Damages experts routinely identify the causes of action for which they are calculating damages. This Court can easily address this concern, if any, through a limiting instruction directing the jury that questions of law are for the Court to decide. *See United States v. Scavo*, 593 F.2d 837, 843 (8th Cir. 1979) (minor references to legal standards in expert report do not require wholesale exclusion).

To the extent the Court finds that any individual sentence constitutes an improper legal conclusion, the appropriate remedy is to exclude that specific sentence, not discard an entire expert report on damages. *See* Fed. R. Evid. 702 advisory committee's note (the rule "is not intended to provide an excuse for an automatic challenge to the testimony of every expert").

-12-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE PETER SCHWECHHEIMER

70489976.v2

## IV.    CONCLUSION

Intus's Motion is an impermissible attempt to try its case at the *Daubert* stage. Schwechheimer is a qualified economist who employed standard damages methodologies and properly applied them to the facts of this case. For the foregoing reasons, the Court should deny Intus's Motion.

Dated:  June 11, 2026

NOSSAMAN LLP
DAVID C. LEE
KASIA PENN

By: _____
                David C. Lee

Attorneys for Defendant and Counterclaimant
RTZ ASSOCIATES, INC.

-13-

70489976.v2