NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile:  415.398.2438

NOSSAMAN LLP
KASIA PENN (SBN 306056)
kpenn@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone:  949.833.7800
Facsimile:  949.833.7878

Attorneys for Defendant and Counter-claimant
RTZ ASSOCIATES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUS CARE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RTZ ASSOCIATES, INC.; and DOES 1 through 10, <br><br> Defendants, <br><br>———————————————— <br><br> RTZ ASSOCIATES, INC., <br><br> Counter-claimant, <br><br> vs. <br><br> INTUS CARE, INC., <br><br> Counter-defendant. | Case No:    4:24-cv-01132-JST <br><br> Assigned to: Hon. Jon S. Tigar <br><br> **DEFENDANT AND COUNTER-CLAIMANT RTZ ASSOCIATES, INC.'S OPPOSITION TO PLAINTIFF INTUSCARE, INC.'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN** <br><br> *[Concurrently filed with Declaration of David C. Lee, and Declaration of Traci Creegan]* <br><br> Date:        July 2, 2026 <br> Time:        2:00 p.m. <br> Courtroom: 6 |

**TABLE OF CONTENTS**

I.    INTRODUCTION                                                                          1

II.   LEGAL STANDARD                                                                        1

III.  ARGUMENT                                                                              2

      A.    Creegan's Opinions on the "Actor" and "Information Blocking"
            Definitions Are Not Precluded by the Court's Summary Judgment
            Ruling.                                                                         2

      B.    Intus Grossly Mischaracterizes Creegan's Explanations and
            Observations as "Unsupported" "Legal Interpretations."                          5

            1.    Creegan's Regulatory Framework Testimony Is Industry
                  Context That Assists the Jury—Not Merely a Legal
                  Conclusion.                                                               6

                  a.    Creegan's Opinions Concerning RTZ's Status as an
                        Actor are Permissible.                                              9

                  b.    Creegan's Opinions the Nature of Intus's Access
                        Requests are Also Permissible.                                      13

                  c.    Creegan's Industry Standards Testimony Is Relevant to
                        the Manner Exception.                                               14

      C.    Creegan Does Not "Merely Restate RTZ's Positions" and Her
            Opinions Employ Rigorous Methodology, Including Unchallenged
            Audit Log Analysis.                                                             18

IV.   CONCLUSION                                                                            21

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI
CREEGAN

70498775.v3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Thermal Scis. Corp v. Applied Materials Inc.*,
No. SACV0701384JVSJWJX, 2009 WL 10673194 (C.D. Cal. Oct. 28, 2009) ........................ 6

*Antrim Pharms. LLC v. Bio-Pharm, Inc.*,
950 F.3d 423 (7th Cir. 2020) .................................................................................. 6, 9, 11, 15

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
No. 16-CV-00923-BLF, 2018 WL 11230167 (N.D. Cal. May 21, 2018).................................. 4

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) ................................................................................................................. 9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ........................................................................................................... 2, 14

*Dessar v. Bank of Am. Nat. Tr. & Sav. Ass'n*,
353 F.2d 468 (9th Cir. 1965) ................................................................................................... 4

*Giovanetti v. Trs. of California State Univ. (Humboldt State Univ.)*,
No. C 04 5514 NJV, 2007 WL 9735004 (N.D. Cal. Sept. 5, 2007) ......................................... 3

*Hangarter v. Provident Life & Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ..........................................................................................Passim

*Huddleston v. Herman & MacLean*,
640 F.2d 534 (5th Cir. 1981) ................................................................................................... 8

*In re Bard IVC Filters Prods. Liab. Litig.*,
No. MDL 15-02641-PHX DGC, 2017 WL 6523833 (D. Ariz. Dec. 21, 2017) ........................ 7

*In re Pac. Fertility Ctr. Litig.*,
No. 18-CV-01586-JSC, 2021 WL 842739 (N.D. Cal. Mar. 5, 2021) ..................................... 21

*Kruszka v. Novartis Pharms. Corp.*,
28 F. Supp. 3d 920 (D. Minn. 2014).......................................................................................... 8

*Madrigal v. Allstate Indem. Co.*,
CV-14-4242-SS, 2015 WL 12746232 (C.D. Cal. Oct. 29, 2015) ........................................... 18

*Navarro v. Hamilton*,
No. 516CV1856CASSPX, 2019 WL 351873 (C.D. Cal. Jan. 28, 2019) ....................... 7, 13, 15

-i-

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   No. 16-CV-01393-JST, 2021 WL 3504669 (N.D. Cal. June 14, 2021) ...................................... 4

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ........................................................................................................ 2

*San Francisco Baykeeper v. City of Sunnyvale*,
   No. 5:20-CV-00824-EJD, 2025 WL 1616643 (N.D. Cal. June 6, 2025) .................................. 17

*Scantlin v. Gen. Elec. Co.*,
   510 F. App'x 543 (9th Cir. 2013) ................................................................................................. 2

*Snead v. Wright*,
   625 F. Supp. 3d 936 (D. Alaska 2022) ...............................................................................Passim

*Thu Mong Tanaka v. Dep't of Acct. & Gen. Servs. Hawaii*,
   No. CV 09-00579 RLP-NONE, 2011 WL 13233179 (D. Haw. Aug. 9, 2011) .......................... 4

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*,
   No. 15-CV-02383-RS, 2018 WL 5013580 (N.D. Cal. Oct. 16, 2018) ............................. 7, 9, 15

*United States v. Clardy*,
   612 F.2d 1139 (9th Cir. 1980) ..................................................................................................... 8

*United States v. Diaz*,
   876 F.3d 1194 (9th Cir. 2017) ..................................................................................................... 6

*United States v. Lucero*,
   849 F. App'x 631 (9th Cir. 2021) ....................................................................... 8, 10, 11, 12

*United States v. Van Dyke*,
   14 F.3d 415 (8th Cir. 1994) ......................................................................................................... 8

*Zabriskie v. Fed. Nat'l Mortg. Ass'n*,
   No. CV-13-02260-PHX-SRB, 2016 WL 3653512 (D. Ariz. Apr. 22, 2016)........................ 2, 13

**Statutes**

42 U.S.C. 300jj................................................................................................................................. 5

**Rules**

Federal Rule of Evidence 702........................................................................................... 1, 2, 19

Federal Rule of Evidence 704............................................................................................. 2, 6, 13

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

**Regulations**

45 C.F.R. § 171.102 ........................................................................................................... 11

45 C.F.R. § 171.202 ........................................................................................................... 15

**Other Authorities**

N.D. Cal. L.R. 56-3 ............................................................................................................... 3

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

## I.    INTRODUCTION

Defendant RTZ Associates, Inc. ("RTZ") respectfully opposes Plaintiff IntusCare Inc.'s ("Intus") Motion to Exclude Expert Traci Creegan (the "Motion"). Intus concedes that Creegan is well-qualified as an expert in the Health IT industry, but challenges certain of her opinions—however, Intus's arguments grossly distort and mischaracterize both Creegan's opinions and the bases for those opinions. Intus also argues that the Court has already predetermined certain issues for purposes of trial and that no evidence can now be introduced on those issues, which is simply incorrect.

The Motion fails for four independent reasons: (1) the Court's summary judgment ruling does not preclude Creegan's testimony; (2) her regulatory framework testimony assists the jury to understand the complex facts of this matter and does not offer legal opinions; (3) her opinions employ rigorous methodology, including an *unchallenged* audit log analysis; and (4) her industry standards testimony is relevant to whether Intus's actions fall outside Health IT norms, including as relevant to the manner exception.

Notably, Intus's motion does not mention audit logs once **even though Creegan's audit log analysis constitutes a core potion of her Report**. ████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████ (*See generally*, Dkt. 148-1 [Declaration of Andrew Beshai ("Beshai Decl.")], Ex. A [Expert Report of Traci Creegan]; *see also* Declaration of David C. Lee ("Lee Decl."), Ex. A [Deposition of Traci Creegan ("Creegan Dep.")] at 142:15–22, 148:20–23.) Intus's silence on these opinions is an implicit concession that Creegan's audit log methodology is proper expert testimony. Rather than confronting the Report's substance, Intus cherry-picks peripheral issues and makes misleading arguments in an effort to seek exclusion of the entire Report. The Motion should be denied.

## II.    LEGAL STANDARD

Under Federal Rule of Evidence 702, as amended effective December 1, 2023, expert testimony is admissible where: "(a) the expert's scientific, technical, or other specialized

-1-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Ninth Circuit recognizes that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Scantlin v. Gen. Elec. Co.*, 510 F. App'x 543, 545 (9th Cir. 2013) (citing Fed. R. Evid. 702 advisory committee's note). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).

Importantly, Rule 704 "provides that expert testimony that is 'otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'" *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citation omitted). For example, while an expert may not merely state bare legal conclusions, an expert may explain relevant industry standards and the reasonableness of a party's conduct measured against those standards. *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, No. CV-13-02260-PHX-SRB, 2016 WL 3653512, at *2 (D. Ariz. Apr. 22, 2016) (citing Fed. R. Evid. 704(a) & 1972 Advisory Committee Note; *Hangarter*, 373 F.3d at 1016).

## III.    ARGUMENT

### A. Creegan's Opinions on the "Actor" and "Information Blocking" Definitions Are Not Precluded by the Court's Summary Judgment Ruling.

As explained in Creegan's Report, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Beshai Decl., Ex. A [Creegan Rep.] ¶32.) Creegan concludes that in her opinion, ███████████████████████████████ (Beshai Decl., Ex. A [Creegan Rep.] ¶43.)

-2-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

Intus argues that Creegan's opinions regarding the regulatory definitions of "actor" and "information blocking" must be excluded because the Court has already adjudicated these issues. (Mot. at 12:19–13:9.) Specifically, Intus argues that:

> RTZ now improperly seeks to revisit these two issues through Creegan's opinion about her views of the meaning of relevant regulations. The Court should reject RTZ's effort to circumvent the law of the case. (Mot. at 12:27–13:1.)

This argument misstates the scope of the Court's ruling and conflates legal conclusions with the industry context the jury needs to evaluate the issues to be tried.

**Initially, the Court's prior order denying Intus's motion for partial summary judgment (the "Order," Dkt. No. 84) did not make any determinations for purposes of trial.** The Court denied summary judgment because there were material disputes of fact as to whether RTZ's conduct was *not* "information blocking" pursuant to regulatory exceptions (*id.* at 7:4-9:13).

Although the Court found that *for purposes of the motion* Intus met its initial burden of proof to show RTZ was an "actor" and engaged in "information blocking," this was not a finding for purposes of trial. As this Court is well aware, its Local Rule 56-3 explicitly provides:

> Statements contained in an order of the Court denying a motion for summary judgment or summary adjudication **shall not** constitute issues deemed established for purposes of the trial of the case, unless the Court so specifies.

Civil L.R. 56-3 (emphasis supplied).

**The Order specified no such trial effect.** Indeed, the Order did not even *mention* Local Rule 56-3, let alone specify that it established any issue for purposes of trial. (*See generally* Dkt. 84.) Thus, as this Court has held, "[t]he language by which a court denies summary judgment … does not set out 'the law of the case'" and, as mandated by Local Rule 56-3, such an order's discussion of the merits of a claim are nonbinding when the order "did not specify that any elements of that claim were deemed established for the purposes of trial." *Giovanetti v. Trs. of*

-3-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

*California State Univ. (Humboldt State Univ.)*, No. C 04 5514 NJV, 2007 WL 9735004, at *2 (N.D. Cal. Sept. 5, 2007).[1]

Moreover, Intus's effort to invoke the "law of the case" doctrine is misplaced. As the Ninth Circuit has explained:

> There is no merit in appellant's claims that the denial of appellee's first motion for summary judgment was a ruling that the trust is invalid, or that such a ruling is the law of the case. The order does not purport to decide the question. It merely denies the motion because, in the court's then view, there were 'issuable facts.' Such a denial merely postpones decision of any question; it decides none. To give it any other effect would be entirely contrary to the purpose of the summary judgment procedure. The court did nothing more than it purported to do, that is, refuse to grant the motion.

*Dessar v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 353 F.2d 468, 470 (9th Cir. 1965). *See also Thu Mong Tanaka v. Dep't of Acct. & Gen. Servs. Hawaii*, No. CV 09-00579 RLP-NONE, 2011 WL 13233179, at *5 (D. Haw. Aug. 9, 2011) ("[I]t is well-established that a judge's rulings or opinions made in the course of granting or denying motions for summary judgment are not binding as law of the case.").

Accordingly, Intus's argument that this Court's order denying Intus's summary judgment motion precludes Creegan's opinions on whether (i) RTZ is an "actor" as defined within the regulatory framework of information blocking provisions; or (ii) RTZ's conduct, based on her factual analysis and understanding of the regulatory framework of the Cures Act and Office of

---

[1] It makes sense that the Order did not specify a binding finding under Local Rule 56-3. Initially, Intus's summary judgment motion *did not ask* the Court to issue findings for trial under Local Rule 56-3. Moreover, the facts underlying RTZ's alleged "information blocking" must be tried in any event. Those same facts also underlie Intus's claims for intentional interference with contractual relations and prospective economic advantage (Dkt. No. 25 [Amended Complaint], ¶¶ 33-49), as well as RTZ's counterclaims under the California Computer Data Access and Fraud Act, the Computer Fraud and Abuse Act, trespass to chattels, and the UCL (Dkt. No. 41 [RTZ's Counterclaims] ¶¶ 48-80). As this Court has recognized, when related facts "must be tried in any event," the better course is to decline to enter a Local Rule 56-3 order. *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2021 WL 3504669, at *12 (N.D. Cal. June 14, 2021); *see also Arista Networks, Inc. v. Cisco Sys. Inc.*, No. 16-CV-00923-BLF, 2018 WL 11230167, at *8 (N.D. Cal. May 21, 2018) (same).

-4-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

the National Coordinator for Health Information Technology ("ONC") "falls within the umbrella of 'information blocking'" (Mot. at 12:21-26) is incorrect and should be summarily rejected.

**B. Intus Grossly Mischaracterizes Creegan's Explanations and Observations as "Unsupported" "Legal Interpretations."**

Next, Intus's Motion takes liberties by asserting that Creegan's explanations of the regulatory framework of the Cures Act and its information blocking provisions constitute "personal legal interpretations of what the rules require" and consist of "interpretations" for which "she does not cite any support." (Mot. at 8:7-12.) These assertions are utterly without merit.

For instance, Intus sets out "examples" of excerpts from Creegan's Report that it asserts are unsupported "legal interpretations." (Mot. at 8:13-22.) For the first example, Intus quotes Creegan's Report, cites the paragraph, and notes the purported lack of supporting authority:

- ███████████████████████████████████ ███████████████████████████████████ █████████████████████████████████████ (Id. ¶ 34.) (no source cited for ██████████████████████████████ the proposition.)

(Mot. at 8:13-15.)

Intus's assertion that the above statement in Creegan's Report is unsupported is grossly misleading. Intus conveniently omits that Paragraphs 35 through 39 of her Report thoroughly expand upon her Paragraph 34 statement and cite to numerous supporting materials identified in twelve different footnotes, including references to the ONC Cures Act Final Rule, statutory references (i.e., 42 U.S.C. 300jj), case pleadings, and publicly available materials. (Beshai Decl., Ex. A [Creegan Rep.] ¶¶ 34-39, fn. 66-77.) Within those subsequent Paragraphs, Creegan's statement and explanations about HINs/HIEs are grounded in her knowledge of the regulatory framework concerning the exchange of electronic health information ("EHI") and the factual evidence existing in this case. Accordingly, Intus's assertions that Creegan's Report expresses unsupported legal interpretations is utterly and facially without merit. The same is true with respect to every other "example" dubiously showcased by Intus – which even a casual review of

-5-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

Creegan's Report would reveal.  As detailed below, each of Creegan's opinions is grounded in her expert analysis of the complex facts of this case within the context of her 25 years of experience in the Health IT industry regarding the exchange of and access to EHI within the regulatory framework of the Cures Act and its information blocking provisions.

### 1. **Creegan's Regulatory Framework Testimony Is Industry Context That Assists the Jury—Not Merely a Legal Conclusion.**

Intus argues that Creegan's "views on the regulatory framework are merely legal argument" that is "not actually helpful to the trier of fact." (Mot. at 13:11-13.) Intus is wrong. Creegan's Report and testimony do not constitute legal argument, but rather deploy the application of specialized industry expertise to help the jury understand a complex regulatory and technical environment.

As the Ninth Circuit has recognized, Federal Rule of Evidence 704 specifically allows testimony on an ultimate issue, and indeed "it is sometimes impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard." *United States v. Diaz*, 876 F.3d 1194, 1198–99 (9th Cir. 2017) (upholding expert's testimony that a doctor's prescriptions were "outside the usual course of professional practice"). *See also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms.") (citation omitted). Put simply, "[t]he analysis of complex facts, albeit within a legal framework, is a proper role for an expert." *Advanced Thermal Scis. Corp v. Applied Materials Inc.*, No. SACV0701384JVSJWJX, 2009 WL 10673194, at *1 (C.D. Cal. Oct. 28, 2009). The Ninth Circuit has permitted experts to provide testimony to help the jury understand the facts in evidence even where the testimony "relie[s] in part on [the expert's] understanding of the requirements of … law." *Hangarter*, 373 F.3d at 1017.

Thus, Courts routinely permit expert testimony regarding complex regulations and whether certain facts, if found, would conform to such regulations. *See Antrim Pharms. LLC v.*

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

*Bio-Pharm, Inc.*, 950 F.3d 423, 430–31 (7th Cir. 2020) ("[C]ourts have permitted regulatory experts to testify on complex statutory or regulatory frameworks when that testimony assists the jury in understanding a party's actions within that broader framework."). For example, in *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, No. 15-CV-02383-RS, 2018 WL 5013580, at *3 (N.D. Cal. Oct. 16, 2018), defendant offered expert testimony that "PG&E was following the payment allocation procedure mandated by state law and the CPUC as set forth in PG&E's [California Public Utilities Commission]-approved Gas Rules." *Id.* at *3. Plaintiff argued such testimony would "tell the jury that PG&E complied with the applicable laws and regulations" and was an impermissible legal opinion. This Court rejected that argument, explaining the testimony would be helpful to the jury and that these were factual opinions "grounded on a review of PG&E's billing practices, customer accounts, the tariffs, and the CPUC decision." *Id.* "[The expert] did not substitute his judgment for the jury's, but instead provides his professional opinion about whether PG&E's conduct acted in conformance with its understanding of the Gas Rules." *Id.*

Similarly, in *Snead v. Wright*, 625 F. Supp. 3d 936 (D. Alaska 2022), the court held that while the expert could not opine that Merrill Lynch breached its fiduciary duties, the expert "may offer opinions that touch on various financial regulations, as long as he can articulate his understanding of what each regulation requires based on his experience and why actions taken by Merrill Lynch fall short of these requirements and expectations." *Id.* at 940. *See also, e.g., Navarro v. Hamilton*, No. 516CV1856CASSPX, 2019 WL 351873, at *3 (C.D. Cal. Jan. 28, 2019) (expert may testify "regarding the standards that ordinarily apply to commercial trucks" and "[t]o the extent that federal and state laws and regulations guide and/or shape that standard, [expert] may discuss the relevant statutes and regulations in his testimony. He may also provide his professional opinion as to whether [defendant]'s conduct complied with the applicable standard.") (citation omitted); *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2017 WL 6523833, at *6 (D. Ariz. Dec. 21, 2017) ("Because FDA procedures are beyond the ken of average jurors, it will be helpful" to have testimony from regulatory experts,

-7-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

including "a discussion of relevant FDA regulations and the legal requirements they may impose on manufacturers."); *United States v. Clardy*, 612 F.2d 1139, 1153 (9th Cir. 1980) (upholding IRS agent's expert testimony about the validity of a tax deduction); *United States v. Lucero*, 849 F. App'x 631, 633 (9th Cir. 2021) (district court properly allowed expert testimony "that the fill sites were, in their opinion, 'waters of the United States'" even where jury would decide whether the fill sites fell within that regulatory definition); *Huddleston v. Herman & MacLean*, 640 F.2d 534, 552 (5th Cir. 1981), *modified on other grounds*, 459 U.S. 375 (1983) (attorney expert in securities law permitted "to testify concerning the interpretation given some of the prospectus boilerplate language in the securities industry" because this helped the jury weigh the evidence of defendants' scienter); *Kruszka v. Novartis Pharms. Corp.*, 28 F. Supp. 3d 920, 931 (D. Minn. 2014) (expert could "opine on the reasonableness of [defendant]'s interaction with the FDA and compliance with FDA regulations, including with respect to labeling and warnings, and such testimony would be helpful to the trier of fact from a regulatory perspective."). *C.f. United States v. Van Dyke*, 14 F.3d 415, 422 (8th Cir. 1994) (in bank fraud case, district court erred by precluding defense expert from testifying as to meaning of lengthy and detailed banking regulation; such testimony "would clearly have assisted the jury in understanding the regulation and defendant's reasons for asserting that he had not violated its provisions").

Here, the record demonstrates why Creegan's specialized testimony regarding industry standards and practices (as framed by the pertinent regulations) is indispensable. Intus's own Chief Technology Officer, Alex Rothberg, conceded he "[doesn't] feel qualified to make an opinion on what's required" regarding EHR regulatory obligations and responded "I don't know. I'm not a lawyer" when asked whether EHRs are required to have FHIR connections. (Lee Decl., Ex. B [February 27, 2026 Deposition of Alexander Rothberg ("Rothberg Dep.") at 43:8-9.) Even Evan Walters, the Intus engineer who built the automated scripts Intus covertly used to scrape data from PACECare, admitted he had never read the 21st Century Cures Act. (Lee Decl., Ex. C [Deposition of Evan Walters ("Walters Dep.") at 193:21-25.)

-8-

70498775.v3

Given that Intus's own CTO and lead engineer could not navigate the regulatory framework, the jury plainly needs expert assistance to evaluate whether Intus's access requests (whether access to EHI "data" or access to PACECare's user interface) and RTZ's responses comported with health IT industry standards.[2] Creegan provides exactly that assistance, which is an appropriate matter for expert testimony. *Hangarter*, 373 F.3d at 1017; *United Energy Trading, LLC,* 2018 WL 5013580, at *3; *Snead*, 625 F. Supp. 3d at 940.

Creegan is an Associate Director with BRG's Healthcare Practice specializing in health IT and regulatory compliance. (Beshai Decl., Ex. A, ¶ 4.) Her methodology involves: (1) identifying applicable regulatory and industry standards governing EHI exchange; (2) reviewing documentary and testimonial evidence; and (3) applying her 25 years of health IT experience in evaluating whether the conduct at issue comports with established health IT practices.

### a.    Creegan's Opinions Concerning RTZ's Status as an Actor are Permissible.

Creegan's opinion that RTZ is not an "actor" within the meaning of the Cures Act and its information blocking provisions is permissible testimony by an expert who is allowed to analyze complex regulations (here, the Cures Act) and assess whether certain facts, if found, would conform to such regulations. *See, e.g., Antrim Pharms. LLC*, 950 F.3d at 430–31. As reflected in her Report, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] To the extent that Intus is suggesting that the jury will not determine whether RTZ is an "actor" or if it engaged in information blocking in violation of the Cures Act's implementing regulations (see Mot. at 13:11-13, 15:7-10), that is incorrect. RTZ has a Seventh Amendment right to a jury on all legal claims (e.g., Intus's claims for intentional interference with contractual relations and prospective economic advantage (Dkt. No. 25 [Amended Complaint], ¶¶ 33-49)), and the jury must decide all underlying factual issues, including whether RTZ is an "actor" as defined by the regulations and, if so, whether RTZ violated those regulations. *See, e.g., Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959).

-9-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

████████████████████████████████████████████ (Beshai Decl., Ex. A, ¶¶ 33-42.) *See, e.g., Lucero*, 849 F. App'x at 633 (district court properly allowed expert opinion that certain sites fell within regulatory definition of "waters of the United States" despite a jury ultimately deciding whether such sites would fall within that definition).

For example, ████████████████████████████████████████ (Beshai Decl., Ex. A, ¶ 33.) ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ (*Id.*) ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████ (*Id.*) This determination is a factual determination, not a legal conclusion. (Lee Decl., Ex. A [Creegan Dep.] at 36:16–20.) And it is precisely what Rule 702 contemplates: an expert applying specialized knowledge to help the jury understand how the facts of a case relate to a complex regulatory framework. *See, e.g., Hangarter*, 373 F.3d at 1017 (expert testimony is permissible "to help the jury understand the facts in evidence even where the testimony "relie[s] in part on [the expert's] understanding of the requirements of … law"); *Lucero*, 849 F. App'x, at 633 (permitting expert opinion that certain sites fell within regulatory definition of "waters of the United States" despite a jury ultimately deciding whether such sites would fall within that definition).

Creegan likewise opined that ████████████████████████████████ (Beshai Decl., Ex. A, ¶¶ 40-42.) Again, ████████████████████████████████

████████████████████████████ (*Id.*, at ¶ 40.) ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

(*Id.* at 41-42.) Therefore, based on her factual analysis and investigation, Creegan testified that in her opinion, ████████████████████████████████████████████████

-10-

████████████████████████████████████████████████████

████████████████████████████████████████████████████

(*Id.*) Again, such expert testimony is permissible. *See Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 430–31 (7th Cir. 2020) ("[C]ourts have permitted regulatory experts to testify on complex statutory or regulatory frameworks when that testimony assists the jury in understanding a party's actions within that broader framework."); *Lucero*, 849 F. App'x, at 633.

Creegan likewise has evaluated █████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ (Beshai Decl., Ex. A, ¶¶ 34-39.) As explained in her Report, the regulatory definition requires that an HIN/HIE enable exchange "among more than two unaffiliated individuals or entities." 45 C.F.R. § 171.102. Creegan testified that █████████ ████████████████████████████████████████ (Lee Decl., Ex. A [Creegan Dep.] at 66:21-24.) She explained that █████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ (Lee Decl., Ex. A [Creegan Dep.] at 68:18-70:9; see also, Declaration of Traci Creegan ("Creegan Decl."), at ¶¶ 2-12).[3])

Intus appears to argue, without any expert or authority support, that any transmission of data from RTZ to third-party vendors (i.e. labs and pharmacies) automatically render RTZ an HIN/HIE. Creegan explained why this is incorrect: █████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████

[3] Ms. Creegan's declaration in support of this Opposition addresses Intus's inaccurate and erroneous characterizations of her opinions. Her declaration clarifies the bases of her opinions, her analytical methodologies, and how her opinions interact with the regulatory framework of the information blocking provisions of the 21st Century Cures Act and the regulatory framework of that Act and the ONC Cures Act Final Rule. (Creegan Decl., ¶¶2-18.)

-11-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

████████████████████ (Lee Decl., Ex. A [Creegan Dep.] at 68:18-70:9; Beshai Decl., Ex. A, ¶ 35.) (See also, Creegan Decl., at ¶¶ 2-12.) ████████████████████

████████████████████████████████

████████████ (*Id.*) Intus' Motion criticizes Creegan's opinion asserting that she incorrectly predicates an "affiliated" entity on a contractual relationship. In semantical fashion, Intus' criticism blatantly disregards the actual analysis of Creegan and the nature of the "point-to-point" exchange underlying her conclusions. (See Creegan Decl., at ¶¶4-5.)

Moreover, as Creegan explained, a HIN/HIE does not store electronic health information. Instead, it merely brokers the exchange of it, whereas PACECare is an EHR that stores patient data. (Lee Decl., Ex. A [Creegan Dep.] at 79:11-15.) This factual distinction is squarely within Creegan's industry expertise. Based on the nature of how RTZ and its PACECare software exchange data on a "point-to-point" basis in a "bilateral" fashion as opposed a network exchange, Creegan's opinions on whether RTZ is a HIN/HIE is within the scope of permissible expert testimony.

Indeed, Creegan was careful throughout her deposition to distinguish her role from that of an attorney. She testified: "I am not a lawyer. So I do not have any legal training. So I cannot opine on the legality of those regulations." (Lee Decl., Ex. A [Creegan Dep.] at 35:14–16.) She explained that she provides ████████████████████

████████████████████████████████

████████████████████ (Lee Decl., Ex. A [Creegan Dep.] at 34:20–35:3, 36:13–15; see also, Creegan Decl., at ¶¶6 & 10-12.) The Ninth Circuit has held that an expert's opinion on whether conduct or circumstances meet a regulatory definition is permissible. *Lucero*, 849 F. App'x at 633 (district court properly allowed expert testimony that certain sites fell within regulatory definition of "waters of the United States" despite a jury ultimately deciding whether such sites would fall within that definition).

Creegan's opinions about RTZ's actor status are therefore permissible and appropriate, particularly given the complex factual and regulatory frameworks at issue in this case. Her

-12-

70498775.v3

testimony is designed to aid the jury in understanding the facts as they intersect with complex regulatory concepts of information blocking and the exchange of EHI data. *Hangarter*, 373 F.3d at 1017 ("[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms.")

**b.    Creegan's Opinions the Nature of Intus's Access Requests are Also Permissible.**

Creegan has opined on ███████████████████████████████████████████ ████████████████████████████████████████ (Beshai Decl., Ex. A, ¶¶ 45-53.) Based on her review of the factual record in this case and her experience in the Health IT industry, Creegan opined that ███████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████ (*Id.*, at ¶¶ 48-53.) Such testimony is permissible because it addresses relevant industry standards and the reasonableness of a party's conduct measured against those standards. *See, e.g., Zabriskie*, 2016 WL 3653512, at *2 (citing Fed. R. Evid. 704(a) & 1972 Advisory Committee Note; *Hangarter*, 373 F.3d at 1016); *Snead*, 625 F. Supp. 3d at 940 (expert permitted to "articulate his understanding of what each regulation requires based on his experience and why actions taken by Merrill Lynch fall short of these requirements and expectations"); *Navarro*, 2019 WL 351873, at *3 (expert permitted to testify regarding industry standards including "federal and state laws and regulations [that] guide and/or shape that standard" and "provide his professional opinion as to whether [defendant]'s conduct complied with the applicable standard.").

Moreover, Creegan's opinions are grounded in her specialized knowledge of how health IT companies typically handle data access requests in practice. For example, her opinion that ████████████████████████████████████████████████████████ ████████████████████████ (Beshai Decl., Ex. A [Creegan Rep.] ¶ 75) is not merely "restating RTZ's

-13-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

position." Instead, it reflects her professional assessment of how such a request would be received in the health IT industry. (See Creegan Decl., at ¶¶ 13-16.) Rothberg confirmed at deposition that what Intus actually sought was a "read-only log-in account" that "would allow [Intus] to implement the automated script that [it] had already developed." (Lee Decl., Ex. B [Rothberg Dep.] at 92:2–25. In other words, Intus's request for "read-only access" was not a request for _data_ but a request for direct _system user access_ to the PACECare user interface to deploy browser automation tools. Creegan's review of the factual record combined with her extensive experience in the Health IT industry, including assessing EHI data requests, constitute a sound methodology of analyzing the technical nature of Intus's access requests to RTZ. That Intus disputes Creegan's conclusions about the nature of Intus's access requests (Mot. at 10:28-11:9) does not render her methodology unreliable under _Daubert_. _See Daubert v. Merrell Dow Pharms., Inc._, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.")

Creegan's opinion that Intus's request for direct system access was unusual is grounded in 25 years of industry experience. She testified unequivocally: "In my experience, I have not had an analytics vendor who has requested or received access to the electronic health record [(i.e., system user access to the software interface)] for the purpose of data analytics." (Lee Decl., Ex. A [Creegan Dep.] at 29:10–13.) She explained that the standard industry practice for analytics vendors is to receive "an export or an extract of electronic health information" rather than direct front-end access to the EHR software system. (Lee Decl., Ex. A [Creegan Dep.] at 29:6–9.) This testimony establishes the industry baseline against which the jury must measure both Intus's access requests and RTZ's responses within the Cures Act regulatory framework, all of which is context that no lay juror could supply independently.

### c.    Creegan's Industry Standards Testimony Is Relevant to the Manner Exception.

Intus next contends that Creegan's "industry standard" opinions should be excluded as irrelevant and prejudicial because such testimony is "based on her interpretation of case specific

-14-

70498775.v3

evidence." (Mot. at 18:19-19:4.) This argument misses the point entirely. Creegan's industry-standards testimony is relevant and instructive for a jury to explain how the party's conduct operates within a regulatory framework. *Hangarter*, at 1017 ("[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."); *Antrim Pharms. LLC*, 950 at 430–31 (experts may testify about how party's actions operate within a broader regulatory framework).

Here, Creegan offers multiple opinions on Intus's conduct within the broader Health IT industry and whether such conduct is within industry standard norms.  For instance, Creegan offers industry standard opinions as they relate to RTZ's defense against Intus's information blocking claims, specifically, the manner exception.[4] The manner exception at 45 C.F.R. § 171.202 requires evaluation of whether RTZ's conduct in responding to Intus's requests was reasonable under the circumstances. Understanding how a reasonable health IT actor would respond to Intus's type of request, including whether Intus's demands were consistent with industry norms, is directly relevant to whether RTZ acted within the manner exception. If Intus's requests departed significantly from industry practice, that context helps the jury evaluate whether RTZ's response was reasonable. Experts are allowed to "testify on complex statutory or regulatory frameworks when that testimony assists the jury in understanding a party's actions within that broader framework." *Antrim Pharms. LLC*, 950 F.3d at 430–31; *United Energy Trading, LLC*, 2018 WL 5013580, at *3 (ruling as permissible expert testimony "about whether PG&E's conduct acted in conformance with its understanding of the Gas Rules"); *Snead*, 625 F. Supp. 3d at 940 (expert permitted to "articulate his understanding of what each regulation requires based on his experience and why actions taken by Merrill Lynch fall short of these requirements and expectations"); *Navarro*, 2019 WL 351873, at *3 (expert permitted to testify regarding industry standards including "federal and state laws and regulations [that] guide and/or

---

[4] Indeed, contrary to Intus's argument in its Motion, Ms. Creegan reiterates how her opinions are shaped by her experience with and knowledge of the health IT industry over her 25 years in the profession. (See Creegan Decl., at ¶18.)

-15-

70498775.v3

shape that standard" and "provide his professional opinion as to whether [defendant]'s conduct complied with the applicable standard."). Moreover, the Court acknowledged at summary judgment that "material disputes remain" as to whether RTZ's conduct satisfies the manner and infeasibility exceptions. Industry context is essential to resolving those disputes.

Moreover, Creegan's manner exception testimony is informed by direct conversations with ONC representatives, the agency responsible for enforcing the information blocking rules. She testified that ONC evaluates these claims on a "fact-pattern-based assessment," examining whether "the parties did attempt to negotiate" and whether "the EHR vendor just said flat out no." (Lee Decl., Ex A [Creegan Dep.] at 165:4–166:13.) This specialized knowledge, derived from engagement with the regulator itself, cannot be obtained through lay examination of the regulatory text.

Finally, Creegan testified that RTZ's response to learning of the automated script (requesting additional information and declining to immediately grant system access) was consistent with standard industry practice: "Based on my experience over the last 25 years, that would be [the] exact response an EHR would give." (Lee Decl., Ex A [Creegan Dep.] at 137:11–13.) She explained that a reasonable EHR vendor would want to assess the script's security implications and conduct a technical evaluation before permitting such access. (Lee Decl., Ex A [Creegan Dep.] at 138:7–19.)

Intus's relevance objection is further undermined by the record evidence. Creegan's "industry standards" opinions are tied to the specific conduct at issue: Intus's approach to requesting and obtaining data access, which the jury must evaluate in determining whether RTZ's response was reasonable. Without Creegan's testimony, the jury would be left to speculate about what constitutes normal data access practices in the health IT industry, which is the void that expert testimony is designed to fill.

As to prejudice under Rule 403, Intus offers no analysis of how the probative value of Creegan's testimony is purportedly "substantially outweighed" by any danger of unfair prejudice. "Because Rule 403 applies only when the probative value of evidence is '*substantially*

-16-

70498775.v3

outweighed' by countervailing considerations, it 'sets a high bar for exclusion.'" *San Francisco Baykeeper v. City of Sunnyvale*, No. 5:20-CV-00824-EJD, 2025 WL 1616643, at *1 (N.D. Cal. June 6, 2025) (citation omitted). Here, the probative value of testimony explaining industry standards for EHI exchange, which is directly relevant to the manner exception, far outweighs any potential prejudice. Any risk that the jury might misuse the testimony is easily addressed through a limiting instruction.

The record further demonstrates why Creegan's industry expertise is indispensable. Creegan explained that it "makes absolute sense" that RTZ was unaware that Intus was running automated scripts, because in her 25 years of experience she does not "know of an EHR vendor who is going in and regularly monitoring and auditing who is accessing their system. That is not their responsibility, nor do they do that." (Lee Decl., Ex. A [Creegan Dep.] at 132:6–10.) Without this industry context, the jury might draw an adverse inference from RTZ's failure to detect a script it had no knowledge was deployed in its system at an earlier time. Creegan's testimony explains why non-detection, from an industry perspective, is understandable and within the industry norm. Intus is free to attack this view on cross-examination at trial.

The record confirms that Intus's approach to data access was, at minimum, unusual by industry standards. Intus developed browser automation scripts (i.e., "bots") that mimicked human keystrokes to navigate the PACECare user interface and extract reports, which its own VP of Data described as directing a "web driver to click in certain places in the browser, the same . . . actions a human would take in order to use the website and extract the report." (Lee Decl., Ex. C [Walters Dep.] at 48:10–17.) Accordingly, Creegan's industry-standards opinions, including her assessment that Intus's data access practices departed from Health IT norms, are grounded in actual record evidence and her 25 years of industry experience, not conjecture. Her expertise will help the jury evaluate whether automated extraction practices deployed without the EMR vendor's knowledge or consent deviate from accepted industry standards.

Further, as in *Snead*, to the extent this Court believes any statements in the Creegan report edge too close to a legal conclusion, it should decline Intus's request that it "parse

-17-

70498775.v3

through" Creegan's report and "specifically identify which statements would and would not be admissible." 625 F. Supp. 3d at 940. As noted in *Snead*, an expert's report "is not evidence and, because the objectionable character of some of [the expert's] statements may simply be due to injudicious phrasing, a pre-trial ruling on the admissibility of [the expert's] testimony is premature." *Id.* (quoting *Madrigal v. Allstate Indem. Co.*, CV-14-4242-SS, 2015 WL 12746232 (C.D. Cal. Oct. 29, 2015)).

The fact that Creegan's report references the pertinent regulations should not result in a blanket exclusion of her testimony. RTZ does not intend to offer Creegan's testimony as to legal conclusions, and will provide explicit instructions to her in that regard. However, Creegan is plainly permitted to *refer* to the law to explain her conclusions as to what factual standards those regulations require, and whether the parties' actions were consistent with industry standards as to how those regulations are understood and applied in practice.

**C. Creegan Does Not "Merely Restate RTZ's Positions" and Her Opinions Employ Rigorous Methodology, Including Unchallenged Audit Log Analysis.**

Intus also argues that Creegan "just read some emails and deposition transcripts." (Mot. at 17:7–8.) This fundamentally mischaracterizes what Creegan does: she applies her specialized knowledge of health IT practices to the record evidence and provides expert context that the jury cannot derive on its own from reading the same documents. (See Creegan Decl., at ¶¶ 13-16.)

Critically, Intus's motion does not address, or even acknowledge, the most methodologically rigorous component of Creegan's Report: her audit log analysis. ████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ (Beshai Decl., Ex. A [Creegan Rep.] ¶ 108-114.) In other words, she analyzed whether ████████████████████████████ ████████████████████████████████████████ ████████████████████████ Her in-depth and technical

-18-

analysis of audit logs and Intus's own-generated data maps and native scripts (which defined Intus's data extraction needs) revealed that Intus was "accessing portions of PACECare that did not align with their stated intent and were also…accessing individual patient records, which does not align with a data analytics request." (Lee Decl., Ex. A [Creegan Dep.] at 143:10–14.) Intus's complete silence on this core body of opinions constitutes an implicit concession that Creegan's audit log conclusions are proper expert testimony.

This methodology is not novel. Creegan testified that analyzing audit logs and user activity within EHR systems "to identify where potential fraud may have occurred or where potential activities were taking place within the record" is a core component of her professional practice. (Lee Decl., Ex. A [Creegan Dep.] at 13:2–8.) Thus, Creegan's opinions concerning industry practices and whether there is a deviation from such practices (here, by Intus) are the type of expert opinions permitted under Rule 702. (*See* Fed. R. Evid. 702 advisory committee note ("[A]n expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts.").) On the other hand, Walters (Intus's senior engineer tasked with creating Intus's automated scripts to extract data from PACECare) testified that Intus had "no other reason to enter PACECare but for the development of the automated script." (Lee Decl., Ex. C [Walters Dep.] at 50:14–19.) Therefore, whether Intus's request for system user access to a proprietary EMR system to deploy automated extraction scripts constitutes a request for "EHI" *data* under the Cures Act is precisely the type of industry-contextualized question Creegan is qualified to address.

Walters further testified that when RTZ revoked credentials, Intus "[was] blocked from accessing [its] customers' data." (Lee Decl., Ex. C [Walters Dep.] at 180:23-181-2. But he immediately conceded that it is true that "the customer could download a CSV file and transmit that CSV file to Intus." (Lee Decl., Ex. C [Walters Dep.] at 181:3–15.) Walters further admitted the PACE organizations could still "undertake the human steps of extracting the data and transmitting that to Intus." (Lee Decl., Ex. C [Walters Dep.] at 60:11–15.)

-19-

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

Creegan's role is to assist the jury in evaluating these competing characterizations. When Intus's witnesses describe being "blocked" from data while simultaneously acknowledging that alternative access methods to that same data remained available to Intus, the jury benefits from an expert who can explain what "access" to data means in the Health IT industry and whether RTZ's provision of alternative means of access to data satisfies regulatory expectations.

This same rationale also applies to Creegan's expert opinions regarding the factual content of the PACECare Agreement and RTZ's proposed NDA, which the Motion mischaracterizes as offering "contract interpretation." (Mot. at 15:25-16:14.) It does not. As Creegan explained in her Report, she opines that █████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████████ (Beshai Decl., Ex. A, at ¶¶54-59.) The Motion claims that she "cites to RTZ's Answer" as the source of her knowledge about the PACECare Agreement (Mot. at 9:18)—but that is false. Creegan's Report clearly cited and directly quoted █████████████████████████████████████ (Beshai Decl., Ex. A, at ¶¶55-56.) Based on Creegan's review of the factual record, together with her experience and understanding of industry standards and the regulatory framework, she explains that ██████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████ (Id. at ¶¶60-61.)

Likewise, ███████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████ (Beshai Decl., Ex. A at ¶¶80-87.) Based on her review of the factual record, including the communications between the parties regarding a potential NDA, as viewed under the regulatory framework and her industry experience, she opines that

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3

████████████████████████████████████████████████████████████████ (*Id.* at ¶87.) This is the proper domain of expert testimony, not contract interpretation.

Finally, Intus's assertion that Creegan "cherry-picked" evidence (which Creegan disputes, see Creegan Decl., at ¶17) goes to the weight of her testimony, not its admissibility, and Intus can explore these perceived issues in cross-examination at trial. *See In re Pac. Fertility Ctr. Litig.*, No. 18-CV-01586-JSC, 2021 WL 842739, at *4 (N.D. Cal. Mar. 5, 2021) ("The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (quoting *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 n. 14 (9th Cir. 2004)).

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Intus's Motion.

Dated:  June 11, 2026

NOSSAMAN LLP
DAVID C. LEE
KASIA PENN

By: _____
            David C. Lee

Attorneys for Defendant and Counterclaimant
RTZ ASSOCIATES, INC.

RTZ ASSOCIATES, INC'S OPPOSITION TO INTUSCARE, INC.'S MOTION TO EXCLUDE TRACI CREEGAN

70498775.v3