NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile: 415.398.2438

NOSSAMAN LLP
KASIA PENN (SBN 306056)
kpenn@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone: 949.833.7800
Facsimile: 949.833.7878

Attorneys for Defendant and Counter-claimant
RTZ ASSOCIATES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUS CARE, INC.,<br><br>    Plaintiff,<br><br>  vs.<br><br>RTZ ASSOCIATES, INC.; and DOES 1 through 10,<br><br>    Defendants, | Case No: 4:24-cv-01132-JST<br><br>Assigned to: Hon. Jon S. Tigar<br><br>**DEFENDANT AND COUNTER-CLAIMANT RTZ ASSOCIATES, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY**<br><br>Date:  July 2, 2026<br>Time:  2:00 p.m.<br>Courtroom: 6 |
| RTZ ASSOCIATES, INC.,<br><br>    Counter-claimant,<br><br>  vs.<br><br>INTUS CARE, INC.,<br><br>    Counter-defendant. | |

Case No. 4:24-cv-01132-JST

RTZ ASSOCIATES, INC'S REPLY ISO MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY
70527889.v6

# **TABLE OF CONTENTS**

**Page**

I.　　INTRODUCTION ..................................................................................................................1

II.　　ARGUMENT ........................................................................................................................1

　　A.　　Fleury's Opinions on System Access Are Tethered to an Unsupported and Subjective Interpretation of Rothberg's Email. ................................................1

　　B.　　Fleury's Opinions on Audit Logs Rely on Rothberg's Characterization of Intus's Data Needs ........................................................................................5

　　C.　　Fleury's Opinion on SaaS Industry Practices Incorporates Rothberg's Testimony as Foundational Fact ................................................................................8

III.　　CONCLUSION......................................................................................................................9

RTZ ASSOCIATES, INC'S REPLY ISO MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY
70527889.v6

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Clausen v. M/V New Carissa*,
339 F.3d 1049 (9th Cir. 2003) .........................................................................................6, 9

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ...........................................................................................4, 6

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ......................................................................................4, 6, 8

*Siring v. Oregon State Bd. Of Higher Educ. Ex rel E. Oregon Univ,.*
927 F.Supp. 2d 1069 (D. Or. 2013) ....................................................................................4

**Other Authorities**

Fed. R. Evid. 702 ..........................................................................................................1, 2

Case No. 4:24-cv-01132-JST

RTZ ASSOCIATES, INC'S REPLY ISO MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY

70527889.v6

## I.    INTRODUCTION

Defendant RTZ Associates, Inc. ("RTZ") moves pursuant to Federal Rule of Evidence 702 to exclude the report and opinions reflected in the May 12, 2026 Rebuttal Report of Shawn Fleury (See Declaration of David C. Lee submitted in support of Motion to Exclude Expert Opinions of Shawn Fleury (Doc. 146) ("Lee Decl."), Ex. 1 [Fleury Report]). Oddly, Intus's Opposition mostly rehashes the content of its motion to exclude the opinions of RTZ's electronic heath information ("EHI") expert Traci Creegan – as opposed to focusing on the problems with Fleury's opinions. In so doing, Intus provides no meaningful opposition to the points raised in RTZ's moving papers. Rather, Intus incorrectly argues that because Creegan's opinions allegedly consist of interpretation of emails and deposition testimony, Fleury's rampant interpretations of emails are somehow excusable. Not so. There is a vast distinction between Creegan's analytical opinions and Fleury's rank speculation masquerading as "opinions."

Simply put, Fleury's opinions are not based on any analytical or technical work – in extreme contrast to the analytical and forensic investigation undertaken by Creegan, the expert whose opinions Fleury purports to rebut. Instead, Fleury's opinions consist of nothing more than misplaced interpretations of emails and outright guesswork and speculation. Intus's Opposition does not and cannot justify Fleury's failure to employ any scientific methodology to support his subjective opinions. For the reasons discussed below (and in RTZ's moving papers), the Court should exclude Fleury's opinions.

## II.    ARGUMENT

### A. Fleury's Opinions on System Access Are Tethered to an Unsupported and Subjective Interpretation of Rothberg's Email.

Based upon her extensive Healthcare IT industry experience, RTZ's expert, Creegan, has opined that                                                                                      (See Declaration of Andrew Beshai submitted in support of Intus' Motion to Exclude Expert Option of Traci Creegan, Dkt. No. 148 ("Beshai Decl."), Ex. A (Creegan Report, at ¶¶ 72-82).) This distinction is critical because the information blocking provisions of the 21st Century Cures Act ("Cures Act") address blockages to *data* – and not access to a proprietary

*software system.* Creegan's opinions are also premised on the actual words expressed in email communications authored by Alex Rothberg (Intus's Chief Technical Officer) wherein he states, ██████████████████████████████████." (Lee Decl., Ex. 3. ("Rothberg Deposition Exhibit 63).) Based on her industry experience and the clear and unambiguous language *written by Rothberg*, Creegan concludes that ████████████████████████████████ ████████████████████████████████████████████████. (See Beshai Decl., Ex. A (Creegan Rep., at ¶¶ 72-82).)

Contrary to Intus's Opposition, Creegan's reliance on the words of Rothberg does not constitute a subjective opinion about the "state of mind of the parties or the intended meaning of various emails." (Oppo. at 3:12-14.) Rather, she relies on the plain language of Rothberg's own words and takes that factual data point (Rothberg's email) along with the regulatory framework of the Cures Act to arrive at related opinions, i.e., the nature of Intus's access request and the security concerns arising from that type of request. Creegan therefore integrates this fact into her broader analysis of how such requests are typically communicated and responded to within the Healthcare IT industry. Intus's suggestion that Creegan's analysis starts and stops at interpreting Rothberg's email language ████████████████████████████████████ is thus patently incorrect.

Intus also incorrectly asserts that Fleury's opinions are no different from Creegan's.[1] In other words, Intus argues that because Creegan improperly relied on written statements by Rothberg, Fleury can do the same without regard for the requirements of Federal Rule of

---

[1] Intus' Opposition revels in the observation that RTZ's Motion asserts that Fleury parrots Rothberg's deposition testimony despite the fact that Fleury "did not cite to Rothberg's deposition testimony a single time in his report." (Oppo. at 7:22-26.) That assertion is telling in multiple respects. First, Fleury's rebuttal to Creegan's opinion that ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████. (Lee Decl., Ex. 1 [Fleury Rep.] ¶ at ¶ 25.) Creegan's opinion at Paragraph 75, and elsewhere, specifically references and relies ██ ████████████████████████ (Beshai Decl., Ex. A (Creegan Rep. at ¶ 75).) As such, Fleury's citations and references to Creegan's Report addressing and citing to Rothberg's deposition testimony is essentially a citation to Rothberg's deposition by extension. Second, Fleury's own Report represents that he ████████████████████████████████████ ████████ (Lee Decl., Ex. 1 [Fleury Rep.] at "Appendix B: Documents Reviewed".)

Evidence 702. (Oppo., at 4:24-5:9.) However, one glance at the competing reports of Creegan and Fleury reveals the qualitative and analytical differences between the two sets of opinions.

Creegan does not offer a subjective "interpretation" of Mr. Rothberg's email communication: She quotes the plain and unambiguous request he makes to RTZ for ██████ ██████████████████████████████" Based on her extensive Healthcare IT experience and the plain reading of that Rothberg request, she concludes that ████████████████████████ ████████████ And based on that conclusion and her experience in how such requests are made, received, and responded to in the Healthcare IT industry, she opines that ██████████████ ███████████████████████████████ Creegan is an expert in the Health IT industry – and Fleury is not. Therefore, Creegan leans on her industry expertise to analyze the nature of Rothberg's read-only access request and opine on the ██████████████████████████ ████████████████████████████████████████████ ██████

In notable contrast, Fleury takes that same language and extrapolates from it a dizzying display of constructed subjective "meaning" built from cherrypicked blurbs sprinkled throughout the longer email thread: ████████████████████████████████████ ███████████████ and ████████████████████████████████████ (Lee Decl., Ex. 1 [Fleury Rep.] ¶ 28.) There is no scientific analytical work associated with those conclusions – this is Fleury's mere subjective interpretation of what he thinks Rothberg intended or what he thinks Intus's goals are. Fleury, in deposition, even admitted that he has never talked with Rothberg – or with anyone at Intus. (See Supplemental Declaration of David C. Lee ("Supp. Lee Decl."), at Ex. 1 (Fleury Tr. at 68:24-69:12.) He further conceded that he is engaging in nothing more than "parsing" the subjective meaning of Rothberg's email:

> So when you ask for access to a system, typically the way I would parse that, just based on how I've seen it work, is not asking for access to the backend components, not asking for the entire structure, and read-only access to everything. […] the way I parse this specific statement is, "we need access to the system to be able to get the data we need." That's very different from an interpretation that says, "we need access to all of the components that make up the system in order for us to get the data that we need."

- 3 -                                    Case No. 4:24-cv-01132-JST

(Supp. Lee Decl., at Ex. 1 (Fleury Tr. at 68:8-18).) Such "parsing" is devoid of analytical assessment or support or even confirmation from the author of the email (i.e., his client). Rather, Fleury is simply rebutting Creegan's opinion based on unsubstantiated guesswork and then fortifying that guesswork with contrived assumptions that Rothberg's statement, █████████ █████████████" actually means ███████████████████████ ██████ Put another way, Fleury is padding Rothberg's statement and filling in a term that simply does not exist in the verbatim quote relied on by Creegan.

As Intus itself acknowledges, "[c]ourts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind…" *Siring v. Oregon State Bd. Of Higher Educ. Ex rel E. Oregon Univ,*. 927 F.Supp. 2d 1069, 1077 (D. Or. 2013). Here, Fleury is doing nothing more than parsing Rothberg's words and building in subjective meaning that simply does not exist in the actual words Rothberg wrote. And that is a key distinction between his approach and Creegan's. Creegan is taking the language verbatim and viewing it within the regulatory framework of the information blocking provisions to arrive at an opinion. Fleury, in contrast, is recasting Rothberg's statement and even adding terms to it to proffer a tortured interpretation that delves into what he supposedly *meant* rather than what he actually *said* – conspicuously without ever having actually talked with Rothberg about what he meant. And with good reason – as noted in RTZ's moving papers, Rothberg admitted in deposition that he meant just what he wrote: i.e., Intus sought user access *to the system*: "Like, if you…give us, like, this *read-only log-in account*, then we're good." (Lee Decl., Ex. 2 [Rothberg Dep.] at 92:10-19.) "Log-in account" obviously signals user access to the system.

Fleury's opinions on Intus's access request therefore consist of nothing more than his subjective and untested/unanalyzed belief. Expert testimony must rest on "more than subjective belief or unsupported speculation." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059–60 (9th Cir. 2008). An expert who simply assumed critical inputs rather than independently analyzing them is not applying a reliable method. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004). Fleury's opinions on this issue should be barred.

**B. Fleury's Opinions on Audit Logs Rely on Rothberg's Characterization of Intus's Data Needs**

Intus next argues that Fleury properly rebuts Creegan's opinion that Intus accessed certain areas of the PACECare system that were beyond Intus's stated data needs. As Creegan opined, ███████████████████████████████████████ (See, Beshai Decl., Ex. A (Creegan Rep., at ¶¶ 108-114).) Intus defined that data set through its creation of "automated scripts" and data maps which specifically delineated the data types needed for its data analytics services. (Id.) Creegan analyzed ████████████████████████ ███████████████████████████████████████ ███████████████. (Id.) Creegan thereafter evaluated whether ███████████ ███████████████████████████████████████ ███████████████████████ (Id.) She concluded that ███████████████ ███████████████████████████ (Id.) For instance, ███████████ ███████████████████████████████████████ ███████████████ (Id.) Based on her forensic analysis, Creegan concluded that ██████ ███████████████████████████████████████ ███████████████████████████████████ ███████████████. (Id.)

As argued by Intus in its Opposition (Oppo. at 8:8-13):

> One of Fleury's opinions is that Creegan did not consider key facts before concluding that Intus' PACECare access exceeded its stated data needs. According to Fleury, Creegan's limited analysis failed to consider communications between Intus and RTZ that expanded the scope of access. For instance, Fleury points to two emails in which Intus communicates a broader set of data needs than what Creegan considers. (Fleury Report ¶¶ 33-34.) The scope of requested data is critical to any analysis about whether Intus exceeded its stated data needs.

Ironically, Paragraph 34 in Fleury's report (cited above) illustrates the lack of any scientific methodology to support Fleury's "opinions." In referencing one of the "two emails" cited above (specifically, INTUS001467-68 – which conspicuously isn't even listed in his Appendix B: "Documents Reviewed"), Fleury muses that ███████████████████

- 5 -                                                        Case No. 4:24-cv-01132-JST

███████████████████████████████████████████████████████████████████

████████████████████████████████ – one of the modules that Creegan cites as an example

of ████████████████████████████████. (Lee Decl., Ex. 1 [Fleury

Report], ¶ 34, emphasis supplied.) Fleury's analysis is predicated on pure conjecture (i.e., ██████

████████") with nothing more. Fleury never analyzed or investigated whether his conjectured

conclusion had merit or could be validated by any source facts or data. In fact, Fleury admits that

he has never even spoken to Alex Rothberg. (Supp. Lee Decl., at Ex. 1 (Fleury Tr. at 68:24-

69:12).) Fleury further admits that he has never actually talked with anyone at Intus. (*Id.*, [Fleury

Tr.] at 5:23-25.) Accordingly, his conjecture is the anthesis of analysis. *See Clausen v. M/V New

Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003) ("An expert who supplies nothing but a bottom line

supplies nothing of value to the judicial process."). Expert testimony must rest on "more than

subjective belief or unsupported speculation." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,

523 F.3d 1051, 1059–60 (9th Cir. 2008). And an expert who simply assumed critical inputs

rather than independently analyzing them is not applying a reliable method. *Hangarter v.

Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004).

Here, Fleury's ████████████" conclusion is nothing more than bottom line

speculation bereft of any actual analysis. In contrast, Creegan's opinion is predicated on forensic

comparisons of Intus's data needs as established by its own data maps and automated scripts –

data maps that Fleury does not even recall reviewing or analyzing. (Supp. Lee Decl., at Ex. 1

[Fleury Tr.] at 49:4-15.) Therefore, Intus's attempts to suggest that Fleury's conjectural process

is an apples-to-apples comparison to Creegan's level of technical analysis is borderline silly.

Fleury's deficient "process" is not even in the same food group.

In his report, Fleury asserts that:

████████████████████████████████████████

████████████████████████████████████████. (Lee Decl., Ex. 1 [Fleury Report], at ¶ 34.)

Yet, in deposition, Fleury concedes that he never talked with *anyone* at Intus to evaluate and/or

confirm his conclusion. (Supp. Lee Decl., at Ex. 1 [Fleury Tr.] at 90:9-17.) As such, Fleury's

RTZ ASSOCIATES, INC'S REPLY ISO MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY
70527889.v6

analysis consists of nothing more than pure speculation bereft of any technical investigation or factual support. His conclusion starts and ends with a superficial review of module names – and nothing more. Indeed, there is no indication that Fleury ever compared the identified modules to Intus's data maps and native scripts – as Creegan did as part of her forensic analysis.

More damning, Intus's Opposition does not even attempt to explain Fleury's odd attempt to ███████████████████████████████████████" in Rothberg Depo Exhibit 63 (pages INTUS001467-68). As stated in RTZ's moving papers, Paragraph 34 of Fleury's Report states:

███████████████████████████████████

(Lee Decl., Ex. 1 [Fleury Report], at ¶ 34, emphasis supplied.)

Fleury's "opinion" that the inclusion of ████████████ somehow indicates the ███████████████████ in a manner that allows him to competently rebut Creegan's analytically-informed opinion is simply more unsupported conjecture. Fleury even admitted in deposition that he has zero basis to interpret "etc." beyond what he "think[s]." (Supp. Lee Decl., at Ex. 1 (Fleury Tr. at 91:8-12 ("**I think** 'etc' provides a lot of room for things such as notes to be included within the data that is necessary for Intus to perform services for…patient care facilities.").) Indeed, Fleury eventually concedes he is in no position to interpret the meaning of "etc.":

Q: As you sit here today, you don't know what Mr. Rothberg's use of "etc." actually references, correct?

A: Other than it references that there could be other items necessary – let me make that a statement instead of a question. To the extent that "etc" would indicate that additional data may be necessary to meet the need, I think "etc" does stand on its own. **Now, as to what that "etc" could have meant, then no, I'm not trying to interpret what other data elements Mr. Rothberg could have meant by having et cetera in there.**

RTZ ASSOCIATES, INC'S REPLY ISO MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY
70527889.v6

(Supp. Lee Decl., at Ex. 1 [Fleury Tr.] at 103:3-17.) His opinion concerning modules is therefore based on nothing more than a pure guess wrapped in an unsupported "feeling" – devoid of factual analysis, investigation or reliable methodology. It consists of unsupported interpretation – which is clearly excludable. *Nationwide Transp. Fin.*, 523 F.3d at 1059–60 (expert testimony must rest on "more than subjective belief or unsupported speculation.").

### C. Fleury's Opinion on SaaS Industry Practices Incorporates Rothberg's Testimony as Foundational Fact

Finally, Intus defends Fleury's efforts to rebut Creegan's opinion that ███████████ ████████████████████████████████. Rather than actually "rebutting" Creegan's opinion, Fleury offers a new opinion that it is ████████████ ██████████████ This is not a rebuttal opinion, it is an attempt to change the subject. Rather than meaningfully rebutting Creegan's opinion that ████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████ (Lee Decl., Ex. 1 [Fleury Rep.] ¶ 31.) For this reason alone, this opinion by Fleury warrants exclusion because it is not "rebuttal" – which is the only permissible scope of Fleury's expert engagement.

To the extent Fleury does "rebut" Creegan's opinion, it is superficial and conclusory – consisting of a mere quarter of a paragraph. (Lee Decl., Ex. 1 [Fleury Rep.] ¶ 31.) For instance, Fleury's report quotes Creegan's opinion that ████████████████████████ ██████████████████████████████ ██████████████████████████████████████ ███████████" (Lee Decl., Ex. 1 [Fleury Rep.] ¶ 31.) In response, Fleury claims that ████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████ (Lee Decl., Ex. 1 [Fleury Rep.] ¶ 31.) However, Fleury's ability to opine on what is standard in the HealthIT industry is unfounded, because he lacks the experience and credentials to do so. Fleury admitted to the following in deposition:

- He has no healthcare-related certifications (Supp. Lee Decl., at Ex. 1 [Fleury Tr. at 25:19-21].)
  - And never has. (*Id.* at 36:18-37:1.)
- He has never testified in a matter involving health IT regulatory compliance issues. (*Id.* at 27:18-21.)
- He has never testified in a matter involving health IT industry standards or electronic health record data exchanges. (*Id.* at 27:22-28:1.)
- He has prepared no presentations concerning health IT regulatory compliance. (*Id.* at 28:19-21).)
- He has never advised a client on the 21sts Century Cures Act. (*Id.* at 32:21-23.)
- He has never advised a client on information blocking provisions. (*Id.* at 33:6-9.)
- He has no familiarity with the Office of the National Coordinator ("ONC") Health IT Certification program (which implicates the information blocking provisions of the Cures Act) and does not even know what "ONC" stands for. (*Id.* at 33:10-14.)
- He has no familiarity with materials published by the ONC. (*Id.* at 43:1-3.)

Therefore, Fleury has insufficient expertise and insufficient facts or data on which to even offer an opinion about Health IT industry standards (see *Clausen*, 339 F.3d at 1056 ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.")) – in titanic contrast to Creegan, who is an expert in Health IT and has worked in the industry for over 25 years.

Therefore, Fleury's rebuttal opinion concerning industry standards should be excluded, as it consists of nothing more than unsubstantiated and uninformed guesswork.

III.    **CONCLUSION**

For the foregoing reasons, RTZ respectfully requests that this Court exclude the report and expert testimony of Shawn Fleury. Specifically, RTZ requests exclusion of Mr. Fleury's opinions in paragraphs 25 through 31 of the Fleury Report (concerning ███████████ ███████████████████, paragraphs 32 through 38 (concerning ███████████

- 9 -                                    Case No. 4:24-cv-01132-JST
RTZ ASSOCIATES, INC'S REPLY ISO MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY
70527889.v6

█████████████████ and paragraph 31 (concerning █████████████████ ███████.

Dated:  June 18, 2026

NOSSAMAN LLP
DAVID C. LEE
KASIA PENN

By:  _____
                       David C. Lee

Attorneys for Defendant and Counterclaimant
RTZ ASSOCIATES, INC.

RTZ ASSOCIATES, INC'S REPLY ISO MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY
70527889.v6