Charles E. Weir (SBN 211091)
Andrew M. Beshai (SBN 308030)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, California 90067-2506
Telephone:    310.556.8861
Facsimile:     310.553.2165
cweir@ebglaw.com
abeshai@ebglaw.com

Attorneys for Plaintiff
INTUSCARE INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUSCARE INC., | Case No. 4:24-cv-01132-JST |
| Plaintiff, | *Assigned to Hon. Jon S. Tigar* |
| v. | **PLAINTIFF INTUSCARE INC'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT RTZ ASSOCIATES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT PETER SCHWECHHEIMER** |
| RTZ ASSOCIATES, INC. and DOES 1 through 10, | |
| Defendants. | |

Date:           July 2, 2026
Time:          2:00 p.m,
Courtroom:   6

Complaint Filed: February 23, 2024
Amended Complaint Filed: April 2, 2024
Counterclaims Filed: June 20, 2024

1
PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO EXCLUDE PETER SCHWECHHEIMER

FIRM:70562922v2

## **TABLE OF CONTENTS**

Page

I.       INTRODUCTION ................................................................................................. 4

II.      ARGUMENT ....................................................................................................... 6

        A.    Schwechheimer's Lost Profits Analysis Should Be Excluded. .................................... 6

        B.    Schwechheimer's Hypothetical Access Fee Damages Should Be Excluded................ 9

        C.    Schwechheimer's Module-Rankings Testimony is Improper..................................... 11

        D.    Schwechheimer's Opinions About Supposed Accelerated Development Are

              Unfounded and Outside His Area of Expertise............................................................ 12

        E.    Schwechheimer's Opinion About Intus' Capital Raises Offers Nothing to Help the

              Jury and Should Be Excluded. ..................................................................................... 14

        F.    Schwechheimer Should Not Be Permitted To Opine On the Law............................... 14

III.     CONCLUSION.................................................................................................. 15

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO EXCLUDE PETER SCHWECHHEIMER

FIRM:70562922v2

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Avila v. Willits Env't Remediation Tr.*
    633 F.3d 828 (9th Cir. 2011) ...............................................................................................11

*In re ConAgra Foods, Inc.*
    302 F.R.D. 537 (C.D. Cal. 2014) ........................................................................................13

*Daubert v. Merrell Dow Pharms., Inc.*
    509 U.S. 579 (1993) ...................................................................................................4, 9, 11

*Engilis v. Monsanto Co.*
    151 F.4th 1040 (9th Cir. 2025) ...........................................................................................10

*Gen. Elec. Co. v. Joiner*
    522 U.S. 136 (1997) ............................................................................................................10

*Guidroz-Brault v. Missouri Pac. R. Co.*
    254 F.3d 825 (9th Cir. 2001) ................................................................................................8

*Hangarter v. Provident Life & Acc. Ins. Co.*
    373 F.3d 998 (9th Cir. 2004) ..............................................................................................15

*Kumho Tire Co. v. Carmichael*
    526 U.S. 137 (1999) ..............................................................................................................9

*Winn v. Amerititle, Inc.*
    731 F. Supp. 2d 1093 (D. Idaho 2010) .................................................................................8

**California Statutes**

California Comprehensive Computer Data Access and Fraud Act ..............................................14

**Other Authorities**

Fed. R. Evid. 702(b) .....................................................................................................................9

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO EXCLUDE PETER SCHWECHHEIMER

FIRM:70562922v2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The proposed expert testimony of Peter Schwechheimer suffers from multiple flaws. His opinions fall far short of the *Daubert* standard and must be excluded.

First, Schwechheimer's lost profits damages ███████████████████████████████ ███████████████████████████████████████████████ This necessarily means that any profits ███████████████████ must have actually gone to RTZ in order for the damages to be owed to RTZ. Collabrios acquired RTZ, including PACECare, in October 2024, and as Schwechheimer acknowledges, ████████████████████████████ ████████████████████████ The fact that the purported damages started running after RTZ sold its business to Collabrios undercuts the entire claim that ██████████████████ ██████ RTZ has no answer for this and cannot explain how revenue from an asset that has since been acquired by Collabrios, regarding contracts that Collabrios services, would ever inure to the benefit of RTZ. Instead, RTZ's position is based on an alternative reality in which ███████████ ████████████████████████████████████████████████████████ ████████████████████ But that did not happen because PACECare was acquired by Collabrios well before any cancelled contracts or lost revenue. If RTZ really remained the beneficiary ██████ ████████████████████████████████████████████████████████ ████████ after the Collabrios acquisition, RTZ would have said so in its Opposition. It did not because it cannot make that representation.

Second, Schwechheimer's calculation of a hypothetical access payment o████████████ ████████████████████ That figure is not supported by evidence and Schwechheimer fails to employ any methodology or analytical framework one would expect from an expert. Schwechheimer opines that ████████████████████████████████████████ ████████████████████████████████████████████████████████████ Schwechheimer acknowledges (as he must) that ███████████████████████████████ ████████████████████████████████████████ Even more fatal for Schwechheimer's opinion, he ignores the terms of the agreement upon which his opinions are

FIRM:70562922v2

based. Again, as he must, he acknowledges that the agreement contained numerous obligations that RTZ did not perform. Schwechheimer's opinions regarding a reasonable access fee are not supported by the evidence or any methodology. Indeed, Schwechheimer ███████████

███████████████████████████████████████████████

███████████████████████████

Third, Schwechheimer's module-ranking analysis is nothing more than an attempt to funnel self-serving hearsay from RTZ. RTZ's response is meritless. It argues that, as an economist calculating damages, Schwechheimer is allowed to rely on factual inputs from company personnel. That may be an accurate recitation of the law, but it is certainly not an accurate application of the facts here. Schwechheimer ████████████████

███████████████████████████████████████████████

██████████████████████████ Worse yet, Schwechheimer confessed that ██████████████

███████████████████████████████████████████████

█ This offers nothing of help to the jury and should be excluded.

Fourth, Schwechheimer's opinions about accelerated timeline and capital raises have nothing to do with his ultimate damages numbers. RTZ's response is that these two areas provide "context" for the jury to understand the economic impacts of Intus' conduct. This argument is meritless. How could these opinions possibly offer context for Schwechheimer's conclusion as to damages allegedly incurred if he did not factor either point into his damages calculation? RTZ cannot say. Indeed, as to the accelerated timeline opinion, Schwechheimer ████████████

█████████████████████████████████████████ Having an expert make statements that he acknowledges he does not have the data to support and has not performed any analysis to verify the accuracy of the statement is not the proper subject of expert testimony. It is exactly the type of testimony that courts routinely exclude.

Finally, RTZ's efforts to recast Schwechheimer's legal opinions as "mere prefatory" prove Intus' point. "Prefatory" or not, it is not proper to have an expert provide legal opinions to the jury. If, as set forth in his report, Schwechheimer intends to ████████████████████

████████████████████████████████; these are improper legal opinions, not expert

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO EXCLUDE PETER SCHWECHHEIMER

FIRM:70562922v2

testimony and must be excluded.

The Court should grant Intus' motion to exclude the testimony of Schwechheimer in its entirety.

## II.    ARGUMENT

### A.    Schwechheimer's Lost Profits Analysis Should Be Excluded.

Schwechheimer's lost profits analysis hinges on ██████████████████████ ████████████████—well after Collabrios acquired RTZ's assets, including PACECare.

As a preliminary matter, it must be noted that over the last few months RTZ has taken conflicting positions—depending on its desired outcome—as to which entity owns ████████ ████████████████████████████.[1] When Intus sought to depose Collabrios' President, Kevin Lathrop, about these PACECare contracts, RTZ objected and moved to preclude any questions about "Collabrios' conduct with *its customers*." (*See* Dkt. 144 at 4) (emphasis added). This position conflicts with positions it took to keep Collabrios out of this case and positions RTZ takes in its briefing. Put differently, to suit its needs in the moment, RTZ characterized the PACECare contracts at issue as "Collabrios' [] customers"—not RTZ's customers. Now, because RTZ's needs have changed, RTZ has retreated from its position and argues that the contracts are still RTZ contracts, but they are serviced by Collabrios. (Opp. at 3:8-9.) Setting aside the flipflopping regarding who is identified as the contracting party, whether the client is a Collabrios client or RTZ client, the question is who received the money from the contracts after the Collabrios acquisition of RTZ and PACECare in October 2024? Intus's motion put this question front and center, and in response RTZ does not even try to claim that it was

---

[1] RTZ's shifting positions throughout this litigation can only be described as disingenuous. As another example, in an effort to convince this Court that Collabrios was not RTZ's successor, RTZ represented that it "has not merged with Collabrios and continues to run its own operations." (Dkt. 103 at 10:17-18.) Once it obtained the result it wanted from this Court and kept Collabrios out as a party, RTZ made an about face and confessed that it has no employees and that Collabrios "services [the PACECare] contracts on RTZ's behalf." (Opp. at 3:8-9.) It would be difficult, indeed, for RTZ to "run its own operations" without any employees—a fact RTZ concealed until prompted by this Court's questioning at the May 11, 2026 case management conference.

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO EXCLUDE PETER SCHWECHHEIMER

FIRM:70562922v2

receiving any of the revenue or profits associated with those three contracts after RTZ was sold to Collabrios.

RTZ's silence is not an accident. The truth, of course, is that RTZ transferred its assets to Collabrios in October 2024. RTZ has admitted as much, conceding that Collabrios "acquired RTZ's assets." (Dkt. 171 at 3:22-23.) As the owner of PACECare and the party admittedly servicing all PACECare contracts, Collabrios also must be the party that receives the revenue and profits from the asset and contracts. The very documents that Scwechheimer relies upon show that RTZ stopped receiving revenue and profits on these contracts in October 2024, when RTZ was sold. (*See* Ex. D filed under seal at Dkt. 149.)

Without any evidence to support the statement, RTZ claims that Intus' argument "rests on the false premise that RTZ assigned the relevant contracts to Collabrios." (Opp. at 3:4-5.) It is difficult to understand how RTZ is using the word "assign" and, as above, the position appears to be directly contrary to positions taken in other briefs in this case. However, whatever distinction RTZ is attempting to make, it is irrelevant. The only relevant question is which entity was receiving revenue and profits from these contracts after October 2024. The evidence shows that RTZ was not receiving anything. And, despite having this question put directly to it by Intus' motion, RTZ offers no evidence to the contrary—which is not surprising given that after October 2024 Collabrios was the owner of the product that was being sold in the contracts at issue. RTZ has no explanation for how it can continue receiving revenue or damages from an asset that has been acquired by another entity.

Equally unavailing is RTZ's argument that "Intus had every opportunity during discovery to investigate . . . the ownership structure of the PACECare contracts, but it failed to do so." (Opp. at 3:10-12.) It was not until April 23, 2026 that RTZ asserted ███████████████ ██████████████████████████████████████████ Not only has RTZ taken conflicting positions on this issue throughout this case, but it is RTZ's obligation to prove its damages, including that ████████████████████████████████ █████████████████████████████████████████. RTZ does not, because

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO EXCLUDE PETER SCHWECHHEIMER
FIRM:70562922v2

it cannot, try to meet that burden.[2]

The fundamental flaw with Schwechheimer's damages methodology, then, is that he ███████████████████████████████████████████████████████████ ████████████████████████████ RTZ is wrong to argue that any "dispute about contract ownership [is] a merits argument—not an admissibility argument." (Opp. at 3:24-25.) What is the dispute? After October 2024, the profits on these contracts went to Collabrios not RTZ. That fact is not disputed. As above, RTZ conspicuously avoids saying anything about that or addressing the fact that the evidence shows RTZ received no profits on these contracts after October 2024. Schwechheimer cannot base his damages opinion on an unfounded assumption that the three cancelled contracts benefitted RTZ beyond October 2024. *See Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 830 (9th Cir. 2001) (affirming the district court's exclusion of three experts because their "assumption finds no support in the . . . evidence in the record").

Indeed, in his deposition Schwechheimer did not defend his opinions based on a claim that RTZ "owned" the contracts. Rather, as RTZ states in its Opposition, he contended that the lost profits damages "are properly attributable to the period in which Intus' wrongful conduct bore fruit, regardless of the subsequent corporate transaction." (Opp. at 4:21-24.) Put differently, RTZ would have this Court hold that a party could recover damages it did not sustain from an asset it had transferred away. Nonsense. RTZ's position would lead to absurd results in which non-harmed parties could recover on assets that they had transferred to other entities long before any damages arose. *See Winn v. Amerititle, Inc.*, 731 F. Supp. 2d 1093, 1100 (D. Idaho 2010) (holding that an assignment transferring rights to an assignee "would preclude [the assigning party] from joining in the action or bringing a future action for the same claim"). And there is also no economic methodology to support this position. RTZ points to Schwechheimer's statement that

---

[2] The discovery argument is also disingenuous as RTZ has repeatedly blocked Intus' efforts to understand these very issues. Intus intends to depose Mr. Lathrop about these PACECare contracts, and RTZ has asked this Court that Intus not be allowed to ask such questions. (Dkt. 172.) Again, the basis of the motion is that they are "Collabrios" customers. Intus has been diligent since before the discovery cutoff in attempting to depose Mr. Lathrop, and it is RTZ that has improperly sought to block relevant questions—the same questions it now faults Intus for not asking sooner.

FIRM:70562922v2

Intus' alleged conduct in 2022 "was eventually going to lead to . . . lost sales" and RTZ was "going to lose revenue in the future." (Opp. at 5:3-5.) According to RTZ, this statement "is a standard but-for causation opinion." (Opp. at 5:6.) But, those alleged "future losses" were not incurred by RTZ, that is the point. Moreover, Schwechheimer did not characterize his own opinion as a causation opinion. ██████████████████████████████████████████████████ ████████████ ████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████ RTZ cannot recover alleged lost profits that would have been collected by Collabrios.

## B. Schwechheimer's Hypothetical Access Fee Damages Should Be Excluded.

Schwechheimer's access damages are based on a contract between Tabula Rasa (another PACE EMR provider) and Intus. That contract contains a term whereby Intus would pay Tabula Rasa ████████████ in return for certain services by Tabula Rasa. From that, Schwechheimer opines that ████████████████████████████████████████████ ███████████████████████████████ The problem for Schwechheimer is that he ignores the other facts and circumstances about the Tabula Rasa contract and engages in no analysis to even try to adjust the payment term to account for the differences. Most problematic, is that Intus never paid Tabula Rasa any money for access to the Tabula Rasa EMR system. Thus, the ████████████ figure on which Schwechheimer's entire opinion is based was never paid.

Undeterred, RTZ maintains that the unpaid amount "is reasonable for purposes of establishing a market rate." (Opp. at 6:23-24.) This is wrong. Rule 702 assigns the trial court a gatekeeping obligation to ensure that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Among other requirements, the testimony must be "based on sufficient facts or data." Fed. R. Evid. 702(b). The 2023 amendments to Rule 702 confirm that this is a threshold question of admissibility for the court: there is no presumption in favor of admission, and the proponent of the testimony must establish each requirement of the Rule, including its factual

9

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO EXCLUDE PETER SCHWECHHEIMER

foundation, by a preponderance of the evidence. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1052 (9th Cir. 2025) ("[T]he district court properly concluded that [plaintiff] failed to establish by a preponderance of the evidence that [his expert's] conclusion was based on sufficient facts or data.") A court may exclude an opinion, like Schwechheimer's opinion here, where there is "simply too great an analytical gap between the data and the opinion offered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). At bottom, Schwechheimer's access damages seek to calculate ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ This Court is not required to accept an expert's conclusion that is connected to the underlying facts only by the expert's own say-so, or as is the case here, directly contrary to the facts. *Joiner*, 522 U.S. at 146.

Equally flawed is RTZ's argument that "use of comparable transactions is a well-accepted methodology in damages analysis." (Opp. at 7:3-4.) That is simply not what happened here. Schwechheimer did not analyze comparable transactions. And he made no effort to determine whether the Tabula Rasa contract was comparable to the access Intus sought from RTZ in this case. For instance, the Tabula Rasa contract provided that Tabula Rasa would undertake ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ RTZ did not provide any of these services. Schwechheimer did not even try to adjust the service fee in the contract to what RTZ actually did. Those key terms matter because they affect the economic value of the deal and make the ██████ minimum a price for a bundled commercial arrangement, not a standalone benchmark for alleged PACECare access. Schwechheimer's reliance on the ██████ is irredeemably flawed and his opinion as to access damages must be excluded.

Finally, RTZ's argument that it is entitled to access damages post-dating October 2024—when PACECare was acquired by Collabrios—is meritless. As explained above, RTZ does not contest that Collabrios acquired PACECare in the October 2024 transaction. (Dkt. 171 at 3:22-23.) How, then, can RTZ continue to assert damages post-dating October 2024 based on an asset

it sold in October 2024? RTZ does not explain. The Court should exclude Schwechheimer's entire opinion on access damages, and at a minimum it should exclude any opinion as to damages post-dating October 2024.

### C.    Schwechheimer's Module-Rankings Testimony is Improper.

RTZ argues that the Court should allow Schwechheimer to testify that 9 of the PACECare modules Intus allegedly accessed have "High" value while 6 of the modules have "Medium" value. The values were assigned by a Collabrios employee. Schwechheimer admits he does not know how that employee assigned the values and that he has no expertise in EMR systems. All testimony about the module ranking done by a Collabrios employee should be excluded.

Schwechheimer admits he doesn't even know what the modules are or what they do. He testified, "If you quizzed me on most of these [modules] I wouldn't know what this is." (Schwechheimer Deposition at 127:22-23.) Schwechheimer also conceded that none of the modules "tie to a specific [damages] number." (*Id*. at 128:15.) Indeed, Schwechheimer has no idea what methodology Collabrios' employee used to rank the various modules. (*Id*. at 39:22- 25.) Nor did he vet the rankings himself because doing so would be "beyond [his] expertise." (*Id*. at 39:18-21.) In sum, RTZ seeks to admit testimony from an expert about a module ranking he did not perform, premised on a methodology he does not understand and cannot vet, involving an area outside his expertise, and untethered entirely from his ultimate damages calculation. This plainly does not meet the *Daubert* standard.

RTZ wrongly argues that the module rankings "provides context for the jury's understanding of what Intus accessed and why that access was harmful to RTZ." (Opp. at 8:11-12.) Not only is that incorrect, it is not a basis to permit Schwechheimer to testify about it. As above, he admits he does not understand what these modules are or what methodology was used to rank them. Schwechheimer brings nothing to these issues that would help a jury evaluate any aspect of this case. *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011) (affirming a district court's exclusion of an expert where "his opinions were properly excluded for lack of qualification").

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO EXCLUDE PETER SCHWECHHEIMER

FIRM:70562922v2

Equally unavailing is RTZ's argument that "the module rankings help the jury understand the nature of the proprietary information Intus accessed and why that access conferred competitive value." (Opp. at 9:7-9.) Again, not only is RTZ wrong, but that is not a basis to permit Schwechheimer to testify about values of "high," "medium," or "low" assigned by someone else on a subject he admittingly knows nothing about. (Schwechheimer Deposition at 39:18-21.) Similarly, Schwechheimer does not explain how the module access conferred competitive value. Again, because he admits he doesn't know anything about the modules, and it is beyond his expertise. (*Id*. at 39:18-21.)

Finally, RTZ's argument that "[a]n economist calculating damages routinely relies on factual inputs from company personnel" is meritless. (Opp. at 8:20-22.) That is not what happened here. Schwechheimer did not rely on the module rankings as factual inputs to calculate his damages. Quite the opposite, Schwechheimer admitted that none of the modules "tie to a specific [damages] number." (Schwechheimer Deposition at 128:15.) RTZ cites to no case, because none exists, where a court permitted an expert's opinion that was merely reciting conclusions reached by an employee of the party. Exclusion is even more appropriate as Schwechheimer admits that he doesn't even know how those conclusions were arrived at and it is a subject matter he knows nothing about. (*Id*. at 39:18-21.)[3]

**D.      Schwechheimer's Opinions About Supposed Accelerated Development Are Unfounded and Outside His Area of Expertise.**

Schwechheimer's opinion about CareHub's supposedly accelerated development should be excluded for the same reason as his opinion about the module rankings—he is merely echoing

---

[3] RTZ's cases are inapposite. In *U.S. v. Sims*, the court held that a psychaitrsit could rely on interviews of agents who arrested the defendant about whom he was offering an opinion because those interviews were the "kinds of information which are of a type reasonably relied upon by similar experts." 514 F.2d 147, 149 (9th Cir. 1975). Likewise, in *Triple B Farms v. Haney Seed Co.*, the expert relied on the representations of his client . . . that the beans acquired at Curry Grain were, indeed, Triple B beans" to reach his conclusion. 34 F.3d 1074 (9th Cir. 1994). And in *V5 Techs., LLC v. Switch, Ltd.*, the expert had conversations with sales representatives and "used that information to determine that the equipment installed at the site was insufficient for [a party's] needs." 501 F. Supp. 3d 960, 964 (D. Nev. 2020). Here, as explained, Schwechheimer did not rely on the module rankings to reach any of his conclusions. He is simply serving as a conduit for RTZ's arguments and self-serving hearsay.

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO EXCLUDE PETER SCHWECHHEIMER

FIRM:70562922v2

RTZ's unsubstantiated argument and he admits he does not have the technical expertise to opine on development timelines. RTZ wrongly contends that Schwechheimer is entitled to rely on the deposition testimony of Michael Zawadski, RTZ's CEO, to opine "on the economic implications of accelerated development." (Opp. at 10:22-23.) This argument fails. An expert can only "rely on the opinions of others if other evidence supports his opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014). Schwechheimer conducted no independent evaluation of EMR  development timelines in general or CareHub in particular. (Schwechheimer Deposition at 27:3-28:4.) He has done no independent work to create any opinion about development timelines. The lack of any analysis by Schwechheimer is not surprising given he admits he has no expertise in the development of EMR systems. Moreover, Schwechheimer does not offer an opinion on the "economic implications of accelerated development." He does not reduce the claimed benefit of accelerated development to a damages number. (*Id*. at 63:6-12.) He concedes, in fact, that he does not have the data he needs "to undertake a complete and thorough [analysis] of Intus' unjust enrichment." (*Id*.)

RTZ's complaints about lack of relevant CareHub information are unfounded. To date, Intus has produced nearly 5,000 documents responsive to CareHub discovery requests. The first batch was produced on April 3, 2026, almost a month before Schwechheimer produced his expert report. In that initial batch, Intus produced documents containing detailed descriptions of the functionality, operability, capabilities, interface, use, and development of CareHub—including screenshots showing the exact "look and feel" of CareHub. Schwechheimer does not cite to a single one of the documents Intus produced, nor does he explain any efforts he took to ascertain whether the "look and feel" of PACECare and CareHub are similar. Despite this initial production and later productions totaling nearly 5,000 documents, RTZ claims that "Intus directly blocked Schwechheimer from having any relevant CareHub documents." (Opp. at 10:24-25.) RTZ's problem is not a dearth of CareHub documents; rather, RTZ's problem is that CareHub is not a copy of PACECare and RTZ never had a basis for asserting the claim in the first place. Finally, RTZ has the burden to provide a basis for its claims and for its expert's testimony. It cannot blame

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO EXCLUDE PETER SCHWECHHEIMER

FIRM:70562922v2

Intus that it doesn't have any evidence to support its theories or its expert's statements.

**E.** **Schwechheimer's Opinion About Intus' Capital Raises Offers Nothing to Help the Jury and Should Be Excluded.**

Schwechheimer's musings about whether CareHub assisted with Intus' capital raises have nothing to do with his ultimate damages opinion. RTZ contends that Schwechheimer's observation about Inuts' ability to raise funding after developing CareHub is "relevant background for the jury to understand the economic context and consequences of Intus's wrongful conduct." (Opp. at 11:21-22.) But Schwechheimer expressly conceded that Intus' capital raises do not "specifically go into a damages calculation." (Schwechheimer Deposition at 76:20-78:5.) As above, Schwechheimer admittingly does not have any expertise to testify about CareHub or EMR systems. Thus, any testimony by Schwechheimer about CareHub, its value to investors or its development is necessarily going to lie outside of his expertise. Further extending that to statements about how things he knows nothing about impacted capital raises is even more inappropriate. Schwechheimer did not engage in any analysis about what drove Intus' value. Schwechheimer speculating about investors and EMR systems he knows nothing about, offers nothing to help the jury and it is not tied to his damages calculation.

**F.** **Schwechheimer Should Not Be Permitted To Opine On the Law**

Schwechheimer opined ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████ RTZ attempts to recast these legal conclusions as "mere prefatory framing that identify the legal theories on which Schwechheimer's expert damages analysis is premised." (Opp. at 12:16-17.) But, that is not a basis for permitting Schwechheimer to testify about legal issues. The Court will instruct the jury on available damages, the jury does not need Schwechheimer's incorrect description of the scope of damages. "[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly,

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO MOTION TO EXCLUDE PETER SCHWECHHEIMER

FIRM:70562922v2

instructing the jury as to the applicable law 'is the distinct and exclusive province of the court.'" *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quotations omitted).

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should exclude Schwechheimer's testimony in its entirety.

Dated: June 18, 2026                         EPSTEIN BECKER & GREEN, P.C.

By:   */s/ Charles E. Weir*
Charles E. Weir
Andrew M. Beshai

Attorneys for Plaintiff
INTUSCARE INC.

FIRM:70562922v2