Charles E. Weir (SBN 211091)
Andrew M. Beshai (SBN 308030)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, California 90067-2506
Telephone:     310.556.8861
Facsimile:      310.553.2165
cweir@ebglaw.com
abeshai@ebglaw.com

Attorneys for Plaintiff
INTUSCARE INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUSCARE INC., | Case No. 4:24-cv-01132-JST |
| Plaintiff, | *Assigned to Hon. Jon S. Tigar* |
| v. | **PLAINTIFF INTUSCARE INC'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT RTZ ASSOCIATES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN** |
| RTZ ASSOCIATES, INC. and DOES 1 through 10, | |
| Defendants. | |

Date:          July 2, 2026
Time:          2:00 p.m.
Courtroom:  6

Complaint Filed: February 23, 2024
Amended Complaint Filed: April 2, 2024
Counterclaims Filed: June 20, 2024

PLAINTIFF'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE EXPERT TRACI CREEGAN

**TABLE OF CONTENTS**

Page

I.        INTRODUCTION ................................................................................................ 5

II.       ARGUMENT ..................................................................................................... 6

        A.    The Law of the Case Doctrine Applies, and Creegan's Opinions As to Whether RTZ Is an Actor that Engaged in Information Blocking Should Be Excluded. .................... 6

        B.    RTZ Concedes That the Report is Rife with Legal Conclusions............................... 10

        C.    Creegan Does Not Use Any Technical Expertise to Reach Her Legal Opinions, Which Also Ignore the Statutory Language Entirely................................................. 15

        D.    Creegan Merely Provides Gloss on the Facts Rather than Admissible Expert Testimony. ......................................................................................... 16

        E.    Creegan's Legal Conclusion As To the Manner Exception Is Improper.................... 17

        F.    Creegan's Opinions About the Audit Log Are Nothing More Than Her Attempts to Interpret Party Correspondence And Are Inadmissible ……………………………18

III.      CONCLUSION.................................................................................................. 19

PLAINTIFF'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE EXPERT TRACI CREEGAN

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanced Thermal Scis. Corp v. Applied Materials Inc.*
No. SACV0701384JVSJWJX, 2009 WL 10673194 (C.D. Cal. Oct. 28, 2009)..........13, 14, 15

*Antrim Pharms. LLC v. Bio-Pharm, Inc.*
950 F.3d 423 (7th Cir. 2020) ...................................................................................................14

*Battig v. Simon*
No. Civ. 00–972–JO., 2001 WL 34110367 (D. Or. Dec. 14, 2001) .........................................8

*Black v. Irving Materials, Inc.*
No. 17-CV-06734-LHK, 2019 WL 13199570 (N.D. Cal. May 29, 2019) ..............................11

*Christianson v. Colt Indus. Op. Corp.*
486 U.S. 800 (1988)..................................................................................................................7

*Dessar v. Bank of Am. Nat. Tr. & Sav. Ass'n*
353 F.2d 468 (9th Cir. 1965) ..................................................................................................10

*Energy Trading, LLC v. Pac. Gas & Elec. Co.*
No. 15-CV-02383-RS, 2018 WL 5013580 (N.D. Cal. Oct. 16, 2018) ..............................12, 13

*Giovanetti v. Trs. of California State Univ. (Humboldt State Univ.)*
No. C 04 5514 NJV, 2007 WL 9735004 (N.D. Cal. Sept. 5, 2007) ..........................................9

*Hangarter v. Provident Life & Acc. Ins. Co.*
373 F.3d 998 (9th Cir. 2004) ..................................................................................................13

*Kruzska v. Novartis Pharms. Corp.*
28 F. Supp. 3d 920 (D. Minn. 2014)........................................................................................15

*Magic Link Garment Ltd. v. ThirdLove, Inc.*
445 F. Supp. 3d 346 (N.D. Cal. 2020) ......................................................................................9

*Navarro v. Hamilton*
No. 516CV1856CASSPX, 2019 WL 351873 (C.D. Cal. Jan. 28, 2019)..................................13

*Pinal Creek Grp. v. Newmont Mining Corp.*
352 F. Supp. 2d 1037,1042 (D. Ariz. 2005) ...........................................................................11

*Pit River Home & Agri. Co-op. Ass'n v. U.S.*
30 F. 3d 1088 (9th Cir. 1994) ...................................................................................................8

PLAINTIFF'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE EXPERT TRACI CREEGAN

*Ridgeway v. Mont. High Sch. Ass'n*
   858 F.2d 579 (9th Cir. 1988) ...................................................................................7, 8

*Snead v. Wright*
   625 F. Supp. 3d 936 (D. Alaska 2022) ...............................................................12, 15

*Thu Mong Tanaka v. Dep't of Acct. & Gen. Servs. Hawaii*
   No. CV 09-00579.................................................................................................9, 10

*U.S. v. Real Prop. Located at Incline Village*
   976 F. Supp. 1327 (D. Nev. 1997).............................................................................8

*U.S. v. W.R. Grace & Co.-Conn.*
   280 F. Supp. 2d 1149 (D. Mont. 2003).....................................................................8

*United States v. Lucero*
   849 F. App'x 631 (9th Cir. 2021) ............................................................................13

**Federal Statutes**

Anti-Cybersquatting Consumer Protection Act ..........................................................11

**California Statutes**

Cures Act ............................................................................................... *passim*

**Other Authorities**

45 C.F.R. § 171.301 ....................................................................................................18

FRE 401 ........................................................................................................................5

FRE 403 ........................................................................................................................5

FRE 702 ........................................................................................................................5

PLAINTIFF'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE EXPERT TRACI CREEGAN

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

As set forth in IntusCare Inc.'s ("Intus") Motion to exclude Traci Creegan's ("Creegan") testimony (the "Motion"), Creegan's opinions should be excluded for several reasons including that (1) certain legal issues she purports to opine on have already been decided on summary judgment; (2) Creegan is merely providing her and RTZ's incorrect interpretation of law regarding information blocking, thereby directly invading on the province of the Court; and, (3) Creegan's opinions that Intus acted inconsistently with unidentified industry standards are irrelevant, unsupported and will not aid the jury regarding any issue in the case. Nothing in RTZ Associates, Inc.'s ("RTZ") Opposition or Creegan's supplemental declaration saves her testimony. Indeed, much of the Opposition confirms the positions set forth by Intus in its Motion. Creegan's proposed expert testimony should be excluded.

First, the law of the case doctrine clearly applies as to the Court's findings in its summary judgment order. Specifically, the Court found RTZ was an "Actor" that must comply with the Cures Act and "that Intus met its initial burden of demonstrating that RTZ 'engaged in facial information blocking.'" (Dkt. 84, p. 5:20-22; 7:2-3.) RTZ insists, contrary to Ninth Circuit law, that it is allowed to relitigate these issues via RTZ's expert because the doctrine is inapplicable to a partial summary judgment order. Not so. As explained below, the doctrine is applicable and necessary to maintain consistency and efficiency regarding the litigation of the case.

RTZ also attempts to defend Creegan's legal conclusions. In doing so, RTZ concedes Intus' point. RTZ admits Creegan will be presented to educate the jury as to the regulations and will reach the ultimate legal issues in that analysis. (*Id.* at 6:5-6.)  RTZ argues these opinions are nevertheless admissible because Creegan's opinions "provide industry context." Having an expert tell the jury what she thinks regulations mean is not providing "industry context." Rather, it is simply invading the purview of the Court to instruct the jury about the law. And the cases RTZ relies on are inapposite—in those cases the expert offered some actual technical expertise beyond mere statutory interpretation. None of the cases permitted what RTZ intends to do here, put up an expert that will "educate" the jury as to her interpretation of the statute and regulations.

PLAINTIFF'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

In connection with its Opposition, RTZ also filed a new declaration on behalf of Creegan. In the Declaration, Creegan mainly regurgitates her report but emphasizes her opinions are supported because she cites to the Federal Regulations. She thereby concedes that the purpose of her testimony is to analyze and explain the regulations to the jury. Notwithstanding, she claims ███ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████ she is doing exactly that. RTZ also does not save its expert in pointing out that she is not an attorney and said as much during her deposition. (Opposition at 12:15-25.) Saying she is not a lawyer does not give her license to incorrectly explain and apply the law to the jury.

Despite filing a new declaration, RTZ also has done nothing to fix Creegan's lack of discernable methodology in interpreting case specific emails and testimony. To the extent that RTZ attempts to divert the focus of Intus' Motion to Creegan's work on the audit logs it does nothing to save any of her testimony. Creegan has no basis for opining ██████████████ ██████████████████████████████████; again, all she is doing is doing is providing her interpretation of case specific emails and correspondence. Intus moved to exclude all testimony of that ilk. While Intus acknowledges that industry standard experts may be appropriate, testimony about ████████████████████████████████████████████ ███████████. Moreover, comparing Intus' conduct to industry standards is not an element of any claim or defense in the case. So, even if the audit log analysis was considered testimony about "industry standards" (which it isn't) it still should be excluded.

RTZ's Opposition fails to save Creegan's report and testimony. Her testimony should be excluded as being irrelevant, containing improper (and incorrect) legal opinions and nothing more than her interpretation of case specific correspondence.

## II. ARGUMENT

### A. The Law of the Case Doctrine Applies, and Creegan's Opinions As to Whether RTZ Is an Actor that Engaged in Information Blocking Should Be Excluded.

On September 11, 2025, the Court entered an order on Intus' Motion for Summary Judgment and found RTZ *was* an actor and "that Intus met its initial burden of demonstrating that

6

RTZ 'engaged in facial information blocking.'" (Dkt. 84, p. 5:20-22; 7:2-3) RTZ does not dispute this procedural history but instead argues that, in its summary judgment ruling, the Court did not establish any issues for purposes of trial and that the summary judgment order cannot set the "law of the case." (Opp. at 3:8-4:15). Apparently, RTZ is of the view that it should be permitted to relitigate the Court's prior orders via proposed testimony of its expert. RTZ is incorrect and law of the case should be applied to these previously decided issues. While Creegan's testimony about her interpretation of the information blocking regulations is inappropriate for the reasons discussed below, applying the law of the case doctrine also makes them completely irrelevant.

"[T]he law of the case turns on whether a court previously decided upon a rule of law . . . not on whether, or how well, it explained the decision." *Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800, 817 (1988). The law of the case doctrine applies both to a court's own prior decisions and to decisions in the same case from another tribunal. *Ridgeway v. Mont. High Sch. Ass'n*, 858 F.2d 579, 587 (9th Cir. 1988). "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance but should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson*, 486 U.S. at 817 (quoting *Ariz. v. Calif.*, 460 U.S. 605, 618 n.8 (1983). In fact:

> The law of the case doctrine becomes meaningless, at least in the context of a single action, in a single court, before a single judge, if the court accords its own prior rulings no deference. Were it otherwise, a party dissatisfied with a prior ruling could reargue the point, without end, and without new evidence or new controlling law. The well-established exceptions to the law of the case doctrine—new evidence, new controlling law, clear error and manifest injustice—provide ample room for adjustment to prior rulings during the course of litigation. Where none of these exceptions applies, the law of the case doctrine 'protects the ability of the court to build its final judgment by cumulative rulings, with reconsideration or review postponed until after the judgment is entered.'

*U.S. v. Real Prop. Located at Incline Village*, 976 F. Supp. 1327, 1354 (D. Nev. 1997) (quoting 1B James W. Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶ 0.404[4.–1] (1995)). The Court's conclusive findings set forth in the summary judgment order fit neatly into the doctrine.

RTZ argues that the law of the case doctrine does not apply to the Court's summary judgment order. (Opp. at 3:8-5:2.) But Ninth Circuit precedent is clear that the law of the case

doctrine applies to interlocutory orders. *Pit River Home & Agri. Co-op. Ass'n v. U.S.*, 30 F. 3d 1088, 1097 (9th Cir. 1994) ("The law of the case doctrine is a discretionary one created to maintain consistency and avoid reconsideration, during the course of a single continuing lawsuit, of those decisions that are intended to put a matter to rest."); *see also Ridgeway*, 858 F.2d at 587 (making clear that "[t]he doctrine of 'law of the case' is rooted in the concept that courts should generally follow earlier orders in the same case and should be reluctant to change decisions already made, because encouragement of change would create intolerable instability for the parties. . . [t]he principle applies to interlocutory decisions of the same or higher tribunals"). Relatedly, courts in the Ninth Circuit have ruled that a court's findings on summary judgment, even if only on a partial summary judgment motion, constitute law of the case. *See, e.g.*, *U.S. v. W.R. Grace & Co.-Conn.*, 280 F. Supp. 2d 1149, 1174-75 (D. Mont. 2003) (in bench trial rulings, where district court had previously made findings applying facts of the case to applicable statute on partial summary judgment as to certain affirmative defenses, the court's summary judgment stage conclusions were law of the case); *see also, e.g.*, *Battig v. Simon*, No. Civ. 00–972–JO., 2001 WL 34110367, at *1 (D. Or. Dec. 14, 2001) (court's findings on summary judgment as to the following constitute "law of the case": what law applies and whether person in case met definition of "control person" under applicable state law, among other factual findings).

Applying the law of the case doctrine here to the Court's findings on summary judgment serves the purposes of the doctrine: maintaining consistency and stability in a single lawsuit and creating efficiencies in the judicial system. And it does not matter, as RTZ suggests, that the Court did not state in its partial summary judgement ruling "that it established any issue for purposes of trial." (Opp. at 3:21.) Indeed, Ninth Circuit precedent is clear that certain elements of a claim can be decided on summary judgment where—as here—there is no genuine dispute as to the facts establishing those elements. *See Magic Link Garment Ltd. v. ThirdLove, Inc.*, 445 F. Supp. 3d 346, 355 (N.D. Cal. 2020) ("[W]ithout granting summary judgment of an entire claim, courts may rely upon Rule 56 to determine certain facts or elements of a claim as established and thereby dispose of the need to adjudicate them at trial") (citing *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 n.9 (9th Cir. 2009) (citing Fed. R. Civ. P. 56(d) Advisory Committee note to 1946

amendment) ("The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This . . . serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact.")).

The two district court cases that RTZ cites are both distinguishable. In *Giovanetti*, plaintiff brought four claims; a partial summary judgment order disposed of two claims, plaintiff then voluntarily withdrew his third claim, and the only remaining claim for trial was a retaliation claim. *Giovanetti v. Trs. of California State Univ. (Humboldt State Univ.)*, No. C 04 5514 NJV, 2007 WL 9735004, at *1 (N.D. Cal. Sept. 5, 2007). The court simply denied the summary judgment motion without making any findings as to any elements of the claims. Next, in *Thu Mong* like in *Giovanetti¸* the court simply found there were triable issues of fact and did not reach any findings. Specifically, in denying summary judgment, the court left open the possibility that the jury *may* find discrimination occurred; the plaintiff later tried to use the law of the case doctrine to support admitting evidence of alleged discrimination at trial. *Thu Mong Tanaka v. Dep't of Acct. & Gen. Servs. Hawaii*, No. CV 09-00579 RLP-NONE, 2011 WL 13233179, at *4-*5 (D. Haw. Aug. 9, 2011) (citing Dkt. 66, MSJ Order at 27). The court rejected this argument on grounds that it was not opining in its summary judgment order on the admissibility of any category of evidence at trial. Here, unlike in *Giovanetti* and *Thu Mong*, the Court did make findings about specific issues. And, Creegan seeks to introduce testimony contrary to those findings. The Court did not state in its summary judgment order that a reasonable jury could find that RTZ either was or was not an "Actor" as defined under the Cures Act or that there was a dispute as to whether RTZ committed information blocking. The Court stated that the elements have been satisfied. As such, the only issue remaining for trial is whether the manner exception applies as a defense. Thus, neither *Giovanetti* nor *Thu Mong* supports RTZ's position that the doctrine should not apply here.

RTZ also cites to *Dessar*, in which plaintiff-appellee had moved for summary judgment asserting, among other issues, that the trust at issue was valid. *Dessar v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 353 F.2d 468, 469 (9th Cir. 1965). The appellate court denied the motion on grounds that there were "issuable facts." *Id.* at 470. Defendant-appellant then moved for summary judgment, arguing that the ruling on appellee's motion was the law of the case, so was "necessarily

9

a ruling that the trust was invalid," and then moved to dismiss, which the Court granted. *Id.* at 469. The Ninth Circuit rejected defendant-appellant's arguments because the order had not "purport[ed] to decide the question" of whether the trust was valid but instead merely denied the motion based on factual disputes: "Such a denial merely postpones decision of any question; it decides none." *Id.* at 470. Here, there was no postponement of the decision as to whether RTZ was an "Actor," whether RTZ committed facial information blocking or whether there was a factual issue on those elements.

In footnote 1 of its Opposition, RTZ argues that because the same Cures Act facts also underlie Intus' intentional interference claims and RTZ's counterclaims, these facts "must be tried in any event." (Opp. at 4 n.1.) RTZ fails to explain how any of Creegan's opinions are relevant because of RTZ's counterclaims. Neither the Cures Act nor the elements at issue (definition of "Actor" and information blocking) are implicated in RTZ's counterclaims. As for the intentional interference claims, the Cures Act is the predicate wrongful act, so there is no new issue as to whether RTZ is an "Actor" or committed facial information blocking. RTZ's vague assertion that there are facts to be decided underlying the Cures Act, the interference claims, and the counterclaims does not support its argument that Creegan is permitted to opine ███████████ ██████████████████████████████████

**B.     RTZ Concedes That the Report is Rife with Legal Conclusions.**

RTZ does not deny that Creegan's report is rife with legal conclusions. Instead, RTZ argues that the opinions are supported by citations to the federal register and that they are admissible as "regulatory framework testimony" providing "industry context." (Opp. at 5:17-6:11.) According to RTZ, Creegan should be allowed to opine on ███████████████ ████████████████████████████████ For example, RTZ asserts that Creegan has "analyze[d] complex regulations and assess[ed] whether certain facts, if found, would conform to such regulations." (*Id.* at 9:12-17.) This is nothing more than providing a legal opinion. RTZ thus concedes it intends to use Creegan to articulate and apply the relevant law of the case and therefore circumvent the Court's and fact-finder's roles. The opinions should be excluded for that reason alone. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008)

PLAINTIFF'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

(affirming district court's exclusion of testimony under both FRE 701 and 702 because it amounted to "legal conclusions that would have served 'to do nothing more than tell the jury what result it should reach'"); *Black v. Irving Materials, Inc.*, No. 17-CV-06734-LHK, 2019 WL 13199570, at \*3 (N.D. Cal. May 29, 2019) (excluding testimony relating to expert's opinions on the Anti-Cybersquatting Consumer Protection Act because "[the expert's] discussion as to [plaintiff]'s prior use, [plaintiff]'s purported good faith use," for example, consisted of "pure legal conclusions"); *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037,1042 (D. Ariz. 2005) ("[…] Testimony which articulates and applies the relevant law ... circumvents the [fact finder's] decision-making function by telling it how to decide the case.").

In its Opposition, RTZ cites to cases in which a court permitted an expert to use language that, for example, appears in a legal standard or that touched on regulations and law—that is not what Creegan does here. As Intus acknowledged in its Motion, industry standards can, in certain circumstances, be a proper subject of expert testimony. But Creegan's interpretations of the Cures Act and the ONC Rules are not a description of industry standards. Instead, she employs her own interpretations of regulations (see above regarding Paragraphs 36-39 of her report). That is not true with respect to the experts in RTZ's cited cases.

First, RTZ cites *United States v. Diaz*, in which the Ninth Circuit affirmed the district court's decision to permit an expert to testify as to whether prescriptions were made outside the course of professional practice because "a lay jury would not have the requisite knowledge to evaluate whether the dosage, mix, and course of narcotics prescribed by Diaz were medically appropriate[.]" 876 F.3d 1194, 1198 (9th Cir. 2017). Unlike the expert in *Diaz*, Creegan is not providing any specialized knowledge to the jury beyond her own improper legal analysis. All Creegan offers is her own interpretation of the law using the key, legal terminology in this case. Indeed, important to the *Diaz* analysis was that the terms used by the expert did not "have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Id.* The Ninth Circuit explained "that if the terms used by an expert witness do not have a specialized meaning in law and do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion."

11

*Id*. at 1198-99. Creegan opines, for example, that RTZ ███████████████████ ████████████████████████ These terms are undoubtedly legal definitions that have a separate meaning in law different from the vernacular, so opining on these terms constitutes an inadmissible legal opinion under *Diaz*.

A theme that runs through *Diaz* and the other cases cited by RTZ is that the experts' analyses touched on regulations or laws but were not the centerpiece of the expert's testimony. For example, an expert testifies as to industry standards or norms that are formed in part from regulations, and those discussions touch on the regulations themselves. Here, Creegan's legal conclusions are indeed the centerpiece. Of Creegan's four core opinions in her report, three consist of her describing her view of the regulatory framework and making bald legal conclusions: ███ ████████████████████████████████████████ ████████████ These opinions do not amount to explanations of industry standards, nor do the opinions simply "touch" on the regulations. Permitting Creegan to testify as to these three core opinions is no different than having an expert testify to the fact that a party breached a fiduciary duty, which the case law cited by RTZ expressly acknowledges is inadmissible under *Daubert*. *See Snead v. Wright*, 625 F. Supp. 3d 936 (D. Alaska 2022).

RTZ also cites to *Energy Trading*, in which the district court applied *Diaz* and similarly admitted testimony on the basis that the expert did not use "any specialized legal terms" to describe PG&E's compliance with proper billing practices. *Energy Trading, LLC v. Pac. Gas & Elec. Co.*, No. 15-CV-02383-RS, 2018 WL 5013580, at *3 (N.D. Cal. Oct. 16, 2018). Rather than interpreting the laws, as Creegan does, the expert in *Energy Trading* testified as to "accounting principles" that "are not a matter of common knowledge for the majority of the public," and therefore, the court concluded, the opinions would "enlighten the jury on how to analyze accounts for fraud." *Id*. The same cannot be said about Creegan's testimony regarding her interpretation of regulations. In another case applying *Diaz*, the court excluded opinions, including "conclusions concerning the proper construction of laws and regulations governing a commercial vehicle's right to park and obligation to employ warning lights on the highway." *Navarro v. Hamilton*, No. 516CV1856CASSPX, 2019 WL 351873, at *3 (C.D. Cal. Jan. 28, 2019). The expert was *only*

12

permitted to testify regarding the standards that were shaped by the regulations and was not permitted to interpret the regulations and reach ultimate legal conclusions based on the interpretations. *Id*.

A review of *Diaz* and its progeny, as well as RTZ's other cited cases, underscores why Creegan's regulatory interpretation opinions must be excluded. In *Hangarter*, for instance, the expert testified regarding whether defendants' conduct comported with industry standards. While the testimony "supported a finding that [defendants] acted in bad faith, [the expert] never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law)." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). And to the extent the court did permit the expert to use legal terms in the testimony and reference statutory provisions, those provisions were not "directly at issue in the case" and ultimately "ancillary" to the bad faith question. *Id.* at 1017. None of that is true here. Creegan does not merely couch her opinions in legal terms or references to law. Her interpretation of the laws is the opinion. Moreover, the laws she interprets throughout her report are "directly at issue in the case" *e.g.*, interpretation of the Cures Act.[1]

Next, in *Advanced Thermal*, the district court did not exclude the opinion because the expert in that case was analyzing "complex facts, albeit within a legal framework[.]" *Advanced Thermal Scis. Corp v. Applied Materials Inc.*, No. SACV0701384JVSJWJX, 2009 WL 10673194, at *1 (C.D. Cal. Oct. 28, 2009). Again, Creegan's opinion is her interpretation of the legal framework itself. And even in *Advanced Thermal* the court concluded its analysis stating "[o]bviously, however, he may not instruct the jury on the law." *Id.*

Some of the cases cited by RTZ also involved, specifically, an FDA expert opining as to how the agency would apply and analyze certain facts. For example, the expert challenged in *Antrim* was a regulatory expert (a former FDA lawyer) testifying on how his former agency would interpret certain facts of the case. *Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 430–31

---

[1] RTZ also cites to *United States v. Lucero*, which does not actually engage in any meaningful analysis but merely cites to *Diaz* for the proposition that testimony may be allowed on ultimate issues, in some instances. Again, Creegan goes beyond "couch[ing]" her opinion in legal terms. *United States v. Lucero*, 849 F. App'x 631, 633 (9th Cir. 2021).

(7th Cir. 2020). The Seventh Circuit in *Antrim* acknowledged that "[e]xperts generally may not testify on pure issues of law, such as the meaning of statutes or regulations." *Id.* at 430 (collecting cases). Creegan does not have legal or regulatory background. How a regulator may respond to an issue is not part of this case. Creegan is merely doing what *Antrim* and all of the above cases prohibit – testifying about "pure issues of law, such as the meaning of statutes or regulations." *Id.* RTZ also cites *In re Bard IVC Filters Products Liability Litigation* for the proposition that "'Because FDA procedures are beyond the ken of average jurors, it will be helpful'" to have testimony from regulatory experts. (Opp. at 7:25-8:2.) The purpose of the expert's testimony in *Bard* was to explain "how a manufacturer navigates" complicated FDA procedures. It was not, however, to interpret the regulations themselves. No. MDL 15-02641-PHX DGC, 2017 WL 6523833, at *6 (D. Ariz. Dec. 21, 2017).[2]

In *Snead v. Wright*, the district court explained that testimony "becomes excludable when it includes an opinion on what legal conclusion should be reached by the trier of fact." 625 F. Supp. 3d at 940. For that reason, the expert was not permitted to offer an opinion as to whether Merrill Lynch breached a fiduciary duty. But that is precisely what Creegan does with her conclusions, for example, that ███████████████████████████████████████. There is virtually no difference between Creegan's conclusion that ██████████████████ ███████████████ and the expert in *Snead* concluding there was a breach of fiduciary duty— both opinions are inadmissible under *Daubert*.[3]

---

[2] And even then, the court in *Bard* took issue with several opinions from the expert, including that the expert "frequently states opinions on Bard's intentions and motivations, as though she were an expert on corporate psychology or strategy," just as Creegan improperly does here as discussed below. *Id.* at *3. To the extent the *Bard* expert's opinions were admitted, this was based on an identifiable methodology—looking at procedures through the lens of an FDA regulator. Noting that the expert tended to "provide lengthy factual narratives, argumentative testimony, and opinions beyond her area of expertise," the Court admonished, : "Upon appropriate objections or to avoid clear error, the Court will limit her testimony to opinions within the area of her FDA expertise, terminate extended narratives, strike argumentative answers, and not permit unfounded opinions or ultimate legal conclusions." *Id.* at *7. Creegan similarly presents factual narratives and unsupported legal conclusions outside her expertise. And based on RTZ's own citations, courts do not consistently permit this type of testimony. For example, in *Kruszka*, the expert was *not* permitted to testify as to the FDA's state of mind. *Kruszka* v. *Novartis Pharms. Corp.*, 28 F. Supp. 3d 920, 931 (D. Minn. 2014).

[3] The remainder of the cases cited by RTZ are also easily distinguishable. In *United States v. Clardy*, the defendant in a criminal case put at issue interpretation of the tax laws as a defense,

PLAINTIFF'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

RTZ also argues that Creegan should be able to testify as to her regulatory interpretations based on Intus personnel's supposed difficulty in navigating the regulatory framework. (Opp. 8:18-26.) For example, RTZ points out that Alex Rothberg, Intus' Chief Technology Officer and co-founder, was not comfortable providing legal opinions during his deposition. That does not mean that Creegan should be able to give those legal opinions through expert testimony. Moreover, the example as it relates to Rothberg underscores that much of Creegan's opinions are irrelevant as well as improper. Regardless, RTZ does not cite any case law suggesting that just because the regulations are complex, a legal expert (as opposed to the Court) is appropriate under *Daubert* to interpret those regulations and instruct the jury about them.

### C.     Creegan Does Not Use Any Technical Expertise to Reach Her Legal Opinions, Which Also Ignore the Statutory Language Entirely.

Creegan's opinions should further be excluded because she does not rely on any technical expertise or discernable methodology. Despite the fact that Creegan specializes in health IT and compliance, as RTZ points out in its Opposition, she does not apply this expertise in reaching her opinions. Simply stating that her opinions are informed by her technical expertise does not actually make her opinions admissible under *Daubert*.

For example, as to Creegan's opinion that ███████████████████████ ███████████████████████████████████████████, the opinion involves a simple reading exercise. All Creegan does to reach the conclusion ████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ Reading the list does not involve any technical expertise that would help the trier of fact. It is not even in dispute.

and an IRS Agent was permitted to testify as to the interpretation. 612 F.2d 1139, 1153 (9th Cir. 1980). In *Huddleston v. Herman & MacLean*, an expert was permitted to testify concerning whether boilerplate language was standard language for a prospectus in the issuance of a new security, an issue that went to scienter. 640 F.2d 534, 552 (5th Cir. 1981). Again, Creegan's opinions are nothing more than legal opinions. In *United States v. Van Dyke*, the Eighth Circuit found the district court had erred by permitting one party's expert to examine regulations while preventing the other party's expert from examining those same regulations. 14 F.3d 415, 422 (8th Cir. 1994). There are no similar circumstances here.

15

PLAINTIFF'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

Even worse than the fact that she offers no technical expertise, Creegan's legal conclusions apply her own definition of the law—ignoring the regulatory language. The best example of this is Creegan's testimony as to whether ███████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ █████████████████████████████████. According to the federal register report Creegan relies on for most of her opinions, "two parties are affiliated if one has the power to control the other, or if both parties are under the common control or ownership of a common owner." *21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program*, 85 Fed. Reg. 25642, 25801 (May 1, 2020). Creegan does not even mention this definition in her report or her supplemental declaration. Instead, she opines that "'unaffiliated,' as a word, means that there is no relationship between the parties." (Creegan Deposition at 66:21-22.) When asked point blank whether there is "anything in the regulations that . . . defines how the parties need to be affiliated or not affiliated?" Creegan responds that the regulations "do not specify any more regarding affiliation." (*Id.* at 67:14-15.) Astoundingly, Creegan purports to offer a legal interpretation of regulations that she has not even read. It is bad enough that Creegan seeks to offer straight legal interpretation, which is not proper for an expert, but she does not even apply the correct legal standard.

**D.** **Creegan Merely Provides Gloss on the Facts Rather than Admissible Expert Testimony.**

In the Opposition, RTZ asserts that Creegan's opinions as to the nature of Intus' access requests are also permissible. (Opp. at 13:5-8.) But Creegan's opinion is merely her gloss on what the parties understood and meant when they were negotiating access. She interprets a handful of

PLAINTIFF'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE EXPERT TRACI CREEGAN

the parties' communications and then makes guesses as to their state of minds. RTZ suggests Creegan uses her ███████████████████████████████████████████ ██████████████████████████████████████ Creegan does not merely seek to testify as to standard industry practice for analytics vendors to receive an export or extract of EHI. Her report and testimony goes to RTZ's state of mind and how it understood Intus' request for access. There is no need for an expert to get there—RTZ is capable of testifying as to its security concerns (if there were any) when Intus made the request. And contrary to RTZ's argument, Creegan is not "analyzing the technical nature of Intus' access requests." (Opp. at 14:7:9.) She does not, for instance, explain what API access is or how an automated script functions. Instead, she simply reviews the request and opines that such a request would cause security concerns.

### E.    Creegan's Legal Conclusion As To the Manner Exception Is Improper

RTZ oversimplifies the Manner Exception requirements by arguing that the exception "requires evaluation of whether RTZ's conduct in responding to Intus' requests was reasonable under the circumstances." (Opp. at 15:10-12.) It is only by misrepresenting the contours of the Manner Exception that RTZ can create artificial space for Creegan's irrelevant and improper opinion. RTZ does not even cite the correct provision for the Manner Exception. (Opp. at 5:10-11 [citing 45 C.F.R. § 171.202, which is the Privacy Exception, not the Manner Exception].) The Manner Exception is found at 45 C.F.R. § 171.301 and provides, "An actor must fulfill a request for electronic health information in any manner requested, unless the actor is technically unable to fulfill the request or cannot reach agreeable terms with the requestor to fulfill the request in the manner requested." In other words, what matters is whether: 1) RTZ was not technically able to fulfill the request, or 2) the parties could not reach agreeable terms. These are the only two bases on which Creegan could conceivably opine, and her expertise is only relevant to the first basis involving technical infeasibility. But RTZ has disclaimed the first basis entirely. It has argued, instead, that "it satisfies this exception because it 'cannot reach agreeable terms' with Intus. It does not argue that it is 'technically unable' to fulfill Intus's request and, in fact, takes the position that it would be able to fulfill the request but for Intus's refusal to sign an NDA." (Dkt. 89 at 7:15-17.)

17

The question under the Manner Exception, as this Court has accurately observed, is whether one party engaged in bad faith or exhibited an "unexplained unwillingness to agree" or whether both parties put in "some reasonable efforts" and were simply unable to reach agreeable terms. (*Id*. at 8:12-14.) This is a question that will be answered through party testimony and exhibits, not through Creegan providing incorrect interpretations of regulations and musing about the state of mind of witnesses via a review of case specific e-mails. There is no technical expertise or industry standards that she can offer on the question of whether the parties negotiated in good faith.

RTZ also points out that Creegan's opinions are informed by conversations with ONC representatives. (Opp. 16:5-11.) This is even more problematic. Creegan plans to testify as to legally incorrect opinions and then rubber stamp those opinions by alleged ONC representatives via hearsay. But the law is clear: An "unexplained unwillingness to agree" is not sufficient to establish that this prong of the manner exception is satisfied; instead, there must be "at least some reasonable efforts and articulable reasons why the parties cannot come to an agreement." (Dkt. 84, MSJ Order 8:12-14.) Not only is it not for Creegan to state the legal standard, but what "specialized knowledge" could Creegan add to this case specific inquiry?

Finally, RTZ argues that "[w]ithout Creegan's testimony, the jury would be left to speculate about what constitutes normal data access practices in the health IT industry." (Opp. 16:22.) Not only is that not what Creegan's testimony is about, but the technical infeasibility element is not at issue here under the manner exception, just the "agreement" element (where the parties "cannot reach agreeable terms with the requestor to fulfill the request in the manner requested"). Whether or not Intus' data access request departed from Health IT norms is not at issue.

### F.      Creegan's Opinions About the Audit Log Are Nothing More Than Her Attempts to Interpret Party Correspondence And Are Inadmissible.

RTZ is incorrect to argue that Intus "does not address or even acknowledge . . . [Creegan's] audit log analysis." (Opp. at 18:19-20.) The audit log analysis is simply another instance of Creegan's improper efforts to interpret party correspondence and provide her own spin on the

18

facts. Intus moved to exclude all such testimony, which would include audit log analysis, in its motion. (Mot. at 16:15-21:9.) According to RTZ, ███████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████ (Opp. at 18:20-24.) But this is just another example of Creegan interpreting case-specific documents to come to a conclusion that does not require her technical expertise. Creegan is not a PACE program expert, nor has she ever worked on a matter specific to PACE programs prior to this case. (Creegan Deposition at 16:1-3.) Moreover, Creegan did nothing to analyze Intus' services or assess Intus' actual data needs. She did not even review the modules in PACECare that were supposedly accessed.

Equally flawed is RTZ's argument that the audit log analysis is part of "Creegan's opinions concerning industry practices and whether there is a deviation from such practices." (Opp. at 19:10-11.) Again, in some instances industry standard testimony from an expert may be appropriate, but an opinion about ████████████████████████████████ ██████████████████████████████. Even more fatal for RTZ, such an opinion has no bearing on the issues in this case—comparing Intus' conduct to industry standards is not an element of any claim or defense in the case. RTZ is simply wrong to contend that Intus has "conceded" the propriety of the audit log analysis. As Intus argued in its Motion, Creegan's entire opinion should be excluded because, as with the audit log analysis, she simply interprets case-specific evidence without offering any actual expertise that would assist the jury.

## III.     CONCLUSION

For the foregoing reasons and those stated in the Motion, the Court should exclude Traci Creegan's report and testimony.

Dated:  June 18, 2026                              EPSTEIN BECKER & GREEN, P.C.

                                        By: _____
                                            Charles E. Weir
                                            Andrew M. Beshai

PLAINTIFF'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TRACI CREEGAN

Attorneys for Plaintiff
INTUS CARE, INC.

PLAINTIFF'S REPLY TO DEFENDANT AND COUNTER-CLAIMANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE EXPERT TRACI CREEGAN