NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:  415.398.3600
Facsimile:   415.398.2438

NOSSAMAN LLP
KASIA PENN (SBN 306056)
kpenn@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone:  949.833.7800
Facsimile:   949.833.7878

Attorneys for Defendant and Counter-claimant
RTZ ASSOCIATES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUS CARE, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>RTZ ASSOCIATES, INC.; and DOES 1 through 10,<br><br>Defendants,<br><br>RTZ ASSOCIATES, INC.,<br><br>Counter-claimant,<br><br>vs.<br><br>INTUS CARE, INC.,<br><br>Counter-defendant. | Case No:     4:24-cv-01132-JST<br><br>Assigned to: Hon. Jon S. Tigar<br><br>**DEFENDANT AND COUNTER-CLAIMANT RTZ ASSOCIATES, INC.'S NOTICE OF MOTION AND MOTION TO BIFURCATE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Concurrently filed with (1) Declaration of David C. Lee, and (2) [Proposed] Order*]<br><br>Date:       July 31, 2026<br>Time:       2:00 p.m.<br>Courtroom: 6 |

Case No. 4:24-cv-01132-JST

RTZ ASSOCIATES, INC'S MOTION TO BIFURCATE

70549391.v1

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION    2

II.    ARGUMENT    3

    A.    If the Jury Determines That RTZ Is Not an "Actor," That Issue Is Dispositive of Intus's Claims Without Need for Further Trial    3

        1.    Intus's Claims All Depend on Its Allegation That RTZ Violated the Cures Act, and the "Actor" Issue Is Dispositive for This Reason Alone    3

        2.    Intus Also Has No Damages Absent a Cures Act Violation, Which Is Another Reason the "Actor" Issue Is Dispositive    4

    B.    There Is Strong Evidence That RTZ Is Not an "Actor"    5

    C.    The Court's Prior Order Denying Summary Judgment Did Not Resolve the "Actor" Issue for Purposes of Trial    7

    D.    The Liability Phase Should Proceed Before the Damages Phase (If Any)    9

    E.    The Court May Bifurcate and Try the "Actor" Issue First, and May Also Bifurcate Liability From Damages    10

III.    CONCLUSION    11

RTZ ASSOCIATES, INC'S MOTION TO BIFURCATE

70549391.v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguirre v. California*,
No. 16-CV-05564-HSG, 2018 WL 1948702 (N.D. Cal. Apr. 25, 2018)...................................7

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
No. 16-CV-00923-BLF, 2018 WL 11230167 (N.D. Cal. May 21, 2018) ...............................8

*Bautista-Perez v. Holder*,
No. C 07-4192 TEH, 2009 WL 2031759 (N.D. Cal. July 9, 2009) ..........................................9

*De Anda v. City of Long Beach*,
7 F.3d 1418 (9th Cir. 1993) ....................................................................................................8

*Giovanetti v. Trs. of California State Univ. (Humboldt State Univ.)*,
No. C-04-5514-NJV, 2007 WL 9735004 (N.D. Cal. Sept. 5, 2007) ........................................7

*Key v. Qualcomm Inc.*,
129 F.4th 1129 (9th Cir. 2025) ................................................................................................5

*M2 Software, Inc. v. Madacy Entm't*,
421 F.3d 1073 (9th Cir. 2005) ................................................................................................10

*Munoz v. PHH Mortg. Corp.*,
No. 108CV00759MMBBAM, 2022 WL 96586 (E.D. Cal. Jan. 10, 2022) ..............................9

*MySpace, Inc. v. Graphon Corp.*,
732 F.Supp.2d 915 (N.D. Cal. 2010) .....................................................................................10

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
No. 16-CV-01393-JST, 2021 WL 3504669 (N.D. Cal. June 14, 2021) ..................................8

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990) ............................................................................................................4

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
2 Cal. 5th 505 (2017) ...............................................................................................................4

*Zhang v. Super. Ct.*,
57 Cal. 4th 364 (2013) ..............................................................................................................5

**Statutes**

21st Century Cures Act ................................................................................................ *passim*

Cal. Bus. & Prof. Code § 17200 .........................................................................................3, 5

**Other Authorities**

45 C.F.R. § 171.100 ................................................................................................................6

45 C.F.R. § 171.101 & 171.200 ..............................................................................................3

45 C.F.R. § 171.102 ............................................................................................................3, 5

Fed. R. Civ. Proc. 42(b) ...........................................................................................2, 8, 9, 10

Fed. R. Civ. Proc. 56(g) ...................................................................................................6, 7, 8

Civ. L.R. 56-3 ...................................................................................................................6, 7

RTZ ASSOCIATES, INC'S MOTION TO BIFURCATE

70549391.v1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 31, 2026, at 2:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Jon S. Tigar in Courtroom 6, located at 1301 Clay Street, Oakland, California 94612, Defendant RTZ Associates, Inc. ("RTZ") will and hereby does move for an Order bifurcating the trial of this matter into the following phases:

Phase One: Plaintiff IntusCare, Inc.'s ("Intus") claim that RTZ is an "actor" subject to the 21st Century Cures Act ("Cures Act");

- Phase (1)(a): If RTZ *is* found to be an "actor," then Intus's case in chief will go forward on liability as to its claims, to be followed by RTZ's case in chief on liability as to its counterclaims;

- Phase (1)(b): If RTZ *is not* found to be an "actor," then RTZ's case in chief will go forward on liability as to its counterclaims.

Phase Two: If liability is found as to any of Intus's claims and/or RTZ's counterclaims, trial will go forward as to damages on any claims/counterclaims for which liability has been found.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of David C. Lee filed and served herewith, upon the court pleadings and files in this action, and upon such oral argument and further evidence as may be presented at the hearing on this Motion.

Dated:  June 26, 2026

NOSSAMAN LLP
DAVID C. LEE
KASIA PENN

By: David C. Lee

Attorneys for Defendant and Counterclaimant
RTZ ASSOCIATES, INC.

-1-

## I.    INTRODUCTION

Defendant RTZ Associates, Inc. ("RTZ") respectfully seeks an order bifurcating the trial of this matter to allow the issue of whether RTZ is an "actor" for purposes of the 21st Century Cures Act ("Cures Act") to be tried first, and to segregate liability from damages.

There are significant benefits to trying the "actor" issue first.  Whether RTZ is an "actor" subject to the Cures Act's information-blocking regulations is a discrete issue that would require only a few hours of evidence to be presented—and if the jury determines that RTZ is not an actor, the issue is dispositive of all three of Plaintiff IntusCare, Inc.'s ("Intus") claims, saving substantial trial time.

Likewise, separating liability and damages into two phases makes good sense.  If the jury determines there is no liability as to the claims and/or counterclaims, there is no need for the presentation of damages evidence regarding the eliminated claims/counterclaims.

Pursuant to Federal Rule of Civil Procedure 42(b), the Court has broad discretion to bifurcate issues for trial, in order to foster efficiency and avoid unnecessary expense.  RTZ respectfully requests that the Court exercise this discretion and order that the trial in this matter proceed in the following phases:

Phase One: Intus' claim that RTZ is an "actor" subject to the 21st Century Cures Act;

- Phase (1)(a): If RTZ *is* found to be an "actor," then Intus's case in chief will go forward on liability as to its claims, to be followed by RTZ's case in chief on liability as to its counterclaims;

- Phase (1)(b): If RTZ *is not* found to be an "actor," then RTZ's case in chief will go forward on liability as to its counterclaims.

Phase Two: If liability is found as to any of Intus's claims and/or RTZ's counterclaims, trial will go forward as to damages on any claims/counterclaims for which liability has been found.

The early resolution of Intus's claim that RTZ is an "actor" governed by the Cures Act will best serve the interests of judicial economy by limiting the time and costs associated with a protracted and complex jury trial, and may also promote a settlement resolution.

**II.    ARGUMENT**

**A.  If the Jury Determines That RTZ Is Not an "Actor," That Issue Is Dispositive of Intus's Claims Without Need for Further Trial**

1.  Intus's Claims All Depend on Its Allegation That RTZ Violated the Cures Act, and the "Actor" Issue Is Dispositive for This Reason Alone

On April 2, 2024, Intus filed its operative Amended Complaint alleging claims against RTZ for (1) intentional interference with contractual relations; (2) intentional interference with prospective economic advantage; and (3) violation of California's unfair competition law ("UCL"), California Business & Professions Code section 17000 *et seq.* (Dkt. No. 25.)

All three of Intus's claims depend upon its allegation that RTZ has engaged in "information blocking" in violation of the Cures Act. With respect to its two interference claims, Intus alleges that RTZ's alleged information blocking in violation of the Cures Act has interfered with its existing contracts and with its prospective economic advantage. (Dkt. No. 25 at ¶37 ("RTZ has intentionally been interfering with the contractual relationships between Intus and the Intus Clients by unlawfully refusing to allow Intus direct access to the data") and ¶45 ("RTZ intentionally prohibited Intus access to the data….").) Likewise, Intus's UCL claim is predicated on the alleged Cures Act violation. (*Id.* at ¶56 ("RTZ's continued refusal to allow Intus to access Clients' health data on PACECare violates the spirit and letter of the 21st Century Cures Act….").)

However, RTZ is required to comply with the Cures Act only if RTZ is in fact an "actor" as defined by 45 C.F.R. § 171.102 ("Actor means [(i)] a health care provider, [(ii)] health IT developer of certified health IT, [or (iii)] health information network or health information exchange."). If RTZ is not an actor, it is not subject to the information-blocking regulations at issue and therefore could not have engaged in "information blocking." *See* 45 C.F.R. § 171.101 & 171.200. Thus, if the jury determines that RTZ is not an actor, the issue is dispositive of Intus's claims for this reason alone.

RTZ ASSOCIATES, INC'S MOTION TO BIFURCATE
70549391.v1

### 2. Intus Also Has No Damages Absent a Cures Act Violation, Which Is Another Reason the "Actor" Issue Is Dispositive

Additionally, Intus's damages expert has confirmed that in the absence of a determination that RTZ has engaged in information blocking in violation of the Cures Act, Intus has no damages. Yet damages are an essential element of Intus's claims, so the issue is again dispositive. *See, e.g., Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (element of claim for intentional interference with contractual relations is "resulting damage"); *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017) (element of claim for intentional interference with prospective economic advantage is "economic harm proximately caused by the defendant's action").

Intus's damages expert Hult was asked only to opine on

(Lee Decl., Ex. 1 [Hult Rep.][1], ¶4.) Thus,

(*Id.*, ¶¶8-9, emphasis supplied.) Hult was never asked to—and did not—

Hult explicitly confirmed this in his deposition testimony:

---

[1] Exhibit 1 is filed under seal and attached as Exhibit A to the concurrently filed Motion to Consider Whether Another Party's Material Should Be Sealed.

RTZ ASSOCIATES, INC'S MOTION TO BIFURCATE
70549391.v1

(Lee Decl., Ex. 2 [Hult Tr.][2] at 37:18-25.)

Accordingly, absent a finding that RTZ is an "actor" and has violated the Cures Act, Intus's two interference claims must be resolved in RTZ's favor because Intus lacks the damages necessary to prove this element of its claims.

The same is true for Intus's UCL claim.  Even though Intus's UCL claim seeks injunctive relief rather than damages,[3] it is a "borrowing" claim that requires Intus to prove an economic injury caused by unfair competition (i.e., an underlying "unlawful, unfair or fraudulent business act or practice").  *Zhang v. Super. Ct.*, 57 Cal. 4th 364, 370 & 372 (2013); Cal. Bus. & Prof. Code § 17200.  As explained above, because the UCL claim is based on RTZ's alleged violation of the Cures Act, if RTZ is not an "actor" the UCL claim fails for that reason alone.  Nor can Intus's allegations of interference with contract or prospective economic advantage supply the necessary predicate for the UCL claim if the jury determines RTZ is not an "actor," because those two claims would likewise fail as described above—leaving the UCL claim without any claim from which to "borrow."

Accordingly, the viability of all three of Intus's claims depends on whether the jury finds that RTZ is (or is not) an "actor" governed by the Cures Act.

### B.  There Is Strong Evidence That RTZ Is Not an "Actor"

Although establishing that RTZ is not an "actor" is not a requirement for the granting of this motion, it is important to explain that RTZ is asking the Court to proceed with trying this

---

[2] Exhibit 2 is filed under seal and attached as Exhibit B to the concurrently filed Motion to Consider Whether Another Party's Material Should Be Sealed.

[3] Intus cannot seek or obtain restitution under its UCL claim for at least two reasons.  <u>First, there is no evidence of any amount subject to "restitution" and Intus's damages expert Hult</u> Second, Intus cannot recover restitution as a matter of law, because "where an adequate legal remedy exists, federal courts are precluded from awarding equitable relief, at least in the form of equitable restitution."  *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025).  Intus has sought monetary damages for the same alleged information-blocking conduct under its two tortious interference claims, and thus it cannot prove that it has no adequate remedy at law.  *See id.*

RTZ ASSOCIATES, INC'S MOTION TO BIFURCATE

70549391.v1

issue first because the evidence indicates this one discrete issue is likely to be dispositive of Intus's claims.

As explained by RTZ's expert Creegan, there are three categories of "actors" under the information-blocking regulations:  (1) Health Care Providers, (2) Health Information Networks or Health Information Exchanges (HIN/HIEs), and (3) Health IT Developers of Certified Health IT.  (Lee Decl., Ex. 3 [Creegan Rep.][4], ¶18.)  *Accord* 45 C.F.R. § 171.102.   RTZ does not qualify as a Health Care Provider because it is neither a place of service where healthcare services are provided, nor a clinician of any type.  (Lee Decl., Ex. 3 [Creegan Rep.][5], ¶33.)  RTZ also does not qualify as an HIN/HIE because (a) RTZ does not enable exchange among more than two unaffiliated individuals or entities given that RTZ's interfaces are "bilateral" in nature (i.e., direct point-to-point connections) which the Office of the National Coordinator for Health Information Technology (the "ONC") specifically has excluded from the definition of HINs/HIEs in its Final Rule guidance, and (b) RTZ does not administer any policies or exercise any control over an exchange framework.  (*Id.*, ¶¶35-39.)  Finally, RTZ is not a Health IT Developer of Certified Health IT, because RTZ's certification was fully retired by June 30, 2020—more than two years before any of the RTZ conduct at issue allegedly occurred.  (*Id.*, ¶¶40-42.)

The evidence needed to establish these facts is very limited.  RTZ currently anticipates presenting brief testimony from no more than one or two fact witnesses who will describe how RTZ operates to provide the necessary factual background, followed by brief testimony from RTZ's expert Creegan regarding her opinion as to why the facts of RTZ's business operations do not align with the regulatory definition of an "actor."  While Intus will no doubt cross-examine RTZ's witnesses, it does not appear that Intus has any fact witness with the necessary personal knowledge to testify about RTZ's business practices, nor has Intus designated any expert to offer

---

[4] Exhibit 3 is filed under seal and attached as Exhibit D to the Declaration of David C. Lee in support of the concurrently filed Motion to Seal.

RTZ ASSOCIATES, INC'S MOTION TO BIFURCATE
70549391.v1

an opinion as to whether RTZ's actual business practices match up with the definition of an "actor." Accordingly, this issue could likely be tried in less than a day.

### C. The Court's Prior Order Denying Summary Judgment Did Not Resolve the "Actor" Issue for Purposes of Trial

RTZ anticipates that Intus will argue that the Court decided the "actor" issue for purposes of trial when it denied Intus's prior summary judgment motion. Not so. This Court's September 11, 2025 Order Denying Plaintiff's Motion for Partial Summary Judgment (the "Order," Dkt. No. 84) noted that in the briefing of that motion, RTZ did not contest "that it is an 'actor' as defined by 45 C.F.R. § 171.100." (Dkt. No. 84 at 5:21-22.)

However, the Order made no such determinations for purposes of trial. As this Court is well aware, although the Federal Rule of Civil Procedure 56(g) gives courts discretion to issue a summary judgment order treating a material fact as established for trial, the Court's Local Rule 56-3 explicitly provides that statements made in an order denying a motion for summary judgment are *not* "issues deemed established for purposes of the trial" unless the Order itself actually specifies such an effect:

> 56-3.    Issues Deemed Established
> Statements contained in an order of the Court denying a motion for summary judgment or summary adjudication shall not constitute issues deemed established for purposes of the trial of the case, unless the Court so specifies.

Civil L.R. 56-3.

*Here, the Order specified no such trial effect.* Indeed, the Order did not even *mention* Rule 56(g) or Local Rule 56-3, let alone specify that it resolved any issue for purposes of trial. (*See generally* Dkt. No. 84.)

Thus, as this Court has held, "[t]he language by which a court denies summary judgment … does not set out 'the law of the case'" and, as mandated by Local Rule 56-3, the Order's discussion of the merits of Intus's UCL claim is nonbinding because the Order "did not specify that any elements of that claim were deemed established for the purposes of trial." *Giovanetti v. Trs. of California State Univ. (Humboldt State Univ.)*, No. C-04-5514-NJV, 2007 WL 9735004, at *2 (N.D. Cal. Sept. 5, 2007). *See also Aguirre v. California*, No. 16-CV-05564-HSG, 2018

-7-

70549391.v1

WL 1948702, at *3 (N.D. Cal. Apr. 25, 2018) ("It is true that the Court had discretion to enter an order under Rule 56(g) at summary judgment. In this case, however, it simply did not do so, and no reasonable reading of the order could lead to such a conclusion.").  Nor did Intus's summary judgment motion ever even *ask* this Court to issue any findings for trial under Rule 56(g) and Local Rule 56-3.  (*See generally*, Dkt. No. 56.)

Further, it makes sense that this Court did not specify a binding trial ruling under Local Rule 56-3 in its Order, given the context of this case.  As explained in the advisory committee's cautionary comments regarding the 2010 amendments to Rule 56(g):

> The court must take care that this determination does not interfere with a party's ability to accept a fact for purposes of the motion only. A nonmovant, for example, may feel confident that a genuine dispute as to one or a few facts will defeat the motion, and prefer to avoid the cost of detailed response to all facts stated by the movant. This position should be available without running the risk that the fact will be taken as established under subdivision (g) or otherwise found to have been accepted for other purposes.
>
> …. Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.

Here, RTZ was confident that the Cures Act regulatory exceptions would defeat summary judgment, and thus it did not need to respond to every argument raised—i.e., including whether it was an "actor" (particularly given that Intus presented no expert declaration concerning RTZ's actor status to support its partial summary judgment motion).

Moreover, the facts regarding whether RTZ qualifies as an "actor" must be tried in any event, because those same facts also underly multiple claims and counterclaims that were not considered in the summary judgment Order.  As explained above, Intus's claims for intentional interference with contractual relations and intentional interference with prospective economic advantage both depend on whether it can prove its allegations that RTZ is an actor who engaged in information blocking in violation of the Cures Act (*see* Dkt. No. 25, ¶¶37, 45), as does Intus's UCL claim (*id*. at ¶56).  As this Court has recognized, when related facts "must be tried in any event," the better course is to decline to enter a Rule 56(g)/Local Rule 56-3 order.  *Oracle Am.,*

-8-

*Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2021 WL 3504669, at \*12 (N.D. Cal. June 14, 2021). *See also Arista Networks, Inc. v. Cisco Sys. Inc.*, No. 16-CV-00923-BLF, 2018 WL 11230167, at \*8 (N.D. Cal. May 21, 2018) (finding the issues were "better illuminated by the trial of related facts that must be tried in any event" and declining to issue Rule 56(g) order).

### D.  The Liability Phase Should Proceed Before the Damages Phase (If Any)

"It is clear that Rule 42(b) gives courts the authority to separate trials into liability and damage phases." *De Anda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993).  Such bifurcation is particularly appropriate in this action, given the many complex issues the jury must wrestle with.  As aptly explained in another such case:

> The legal issues in this matter are quite complex, requiring a first impression construction of the relevant statute and regulations. It appears that bifurcation will facilitate disposition in an efficient manner, as if no liability is found, preparation of a second stage of monetary relief will be unnecessary. Further, neither party suggests that bifurcation will create prejudice. Rather, bifurcation appears an instrument of economic efficiency in this matter, as it will limit the expenditure of attorney time until liability is settled. Bifurcation of liability and injunctive relief from issues of monetary relief is thus appropriate under Rule 42(b).

*Bautista-Perez v. Holder*, No. C 07-4192 TEH, 2009 WL 2031759, at \*12 (N.D. Cal. July 9, 2009). *See also Munoz v. PHH Mortg. Corp.*, No. 108CV00759MMBBAM, 2022 WL 96586, at \*1 (E.D. Cal. Jan. 10, 2022) ("[G]iven the complexity of both the liability and damages issues, as well as the magnitude of the damages sought, there is a substantial risk of jury confusion and prejudice if both are tried together.").

This case similarly involves the construction of a complicated regulatory framework, as well as an understanding of very technical Healthcare IT data exchange practices in order to determine how those practices fit (or do not fit) within the pertinent regulatory definitions and restrictions.  If no liability is found, spending the substantial trial time needed to hear testimony from the parties' respective damages experts on Intus's affirmative claims will be unnecessary, and the jury need not be burdened with these further difficult and confusing issues.

Nor would bifurcation of liability and damages prejudice either side, given that in any case the jury logically must decide the liability issues before they consider what damages to

-9-

70549391.v1

award for those claims as to which they determine there is liability (if any). Indeed, bifurcation of these issues would help to *avoid* prejudice, as it would diminish the possibility that the jury's liability determination may be influenced by Intus's assertions of enormous monetary losses.

Finally, bifurcation of liability and damages would promote judicial economy, as the time and expense associated with having the parties' respective damages experts testify at trial will not need to be incurred unless there is a finding of liability as to the claims and/or counterclaims.

**E. The Court May Bifurcate and Try the "Actor" Issue First, and May Also Bifurcate Liability From Damages**

Rule 42(b) of the Federal Rules of Civil Procedure provides that for "convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues…." Accordingly, RTZ seeks to bifurcate the trial of this matter such that the determination of whether RTZ is an "actor" under the Cures Act may be expediently adjudicated, and the liability and damages issues separated.

Here, if the jury determines that RTZ is not an actor, there is nothing remaining to be tried as to Intus's claims, and trial may immediately proceed on RTZ's counterclaims, to be followed by a damages phase. If the jury determines that RTZ is an actor, then no time has been wasted because that preliminary issue had to be tried in any case, and the trial may simply continue with the parties' respective cases in chief as to liability on their respective claims and counterclaims. If liability is found on any claims and/or counterclaims, there would then be a damages phase.

Courts have broad discretion to order separate trials of discrete issues under Federal Rule of Civil Procedure 42(b), as well as expansive authority to try issues or claims separately. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005). In determining whether bifurcation is appropriate, courts consider several factors, most importantly whether bifurcation will result in judicial economy (e.g., where there is a possibility that the first phase may be dispositive of the case) and whether bifurcation would unduly prejudice either party. *MySpace, Inc. v. Graphon Corp.*, 732 F.Supp.2d 915, 917 (N.D. Cal. 2010).

-10-

70549391.v1

Here, there is no prejudice to Intus if the "actor" issue is tried first. It would be the first issue considered by the jury in any event, because it is an essential first predicate of all three of Intus's claims and a necessary part of its case in chief. Thus, the only real issue is whether the bifurcation is likely to save judicial resources—and it will do so, especially if the jury decides that RTZ is not an "actor," which is dispositive of all of Intus's claims.

Nor is there any prejudice to Intus in having the liability phase occur before the damages phase. Again, this is simply the logical progression of the jury's determinations in any event. Moreover, bifurcating liability and damages clearly promotes judicial efficiency because if there is no liability found, there is no need for the Court and jury to waste time on the lengthy testimony of the parties' respective damages experts concerning Intus's claimed losses. It also avoids potential prejudice to either party that may result if the jury hears evidence of Intus's claims of massive monetary losses before it has decided whether RTZ is actually liable for any alleged harm.

Importantly, the proposed phasing will not only promote efficiency, but will also provide further opportunity for the parties to evaluate the relative strength of their cases and engage in further settlement efforts through the progression of the phases. In particular, the resolution of the "actor" issue in a Phase One trial will be an important data point for both sides in determining whether to settle the case without proceeding further.

There is thus a strong probability that the proposed phasing will result in a substantially shorter trial, saving the expense of attorney's fees, expert witness fees, and the Court's scarce trial time.

## III.    CONCLUSION

An initial trial on the "actor" issue will direct the course of all of Intus's claims in this case. That issue must be considered first by the jury in any event; if Intus is unable to prove that RTZ is an "actor" subject to the provisions of the Cures Act, all of its claims are thereby resolved without further trial. If the jury determines that RTZ is an "actor," then the remainder of the facts and issues to be decided will proceed before the same jury. It is completely within the Court's discretion to try the "actor" issue first and to segregate liability and damages, to save the

-11-

Court's and the parties' time and costs.  RTZ respectfully suggests this is the only order of trial which makes sense in this matter, and requests that the Court so order.

Dated:  June 26, 2026

NOSSAMAN LLP
DAVID C. LEE
KASIA PENN

By: _____
David C. Lee

Attorneys for Defendant and Counterclaimant
RTZ ASSOCIATES, INC.

-12-

RTZ ASSOCIATES, INC'S MOTION TO BIFURCATE

70549391.v1