NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:  415.398.3600
Facsimile:   415.398.2438

NOSSAMAN LLP
KASIA PENN (SBN 306056)
kpenn@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone:  949.833.7800
Facsimile:   949.833.7878

Attorneys for Defendant and Counter-claimant
RTZ ASSOCIATES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUS CARE, INC., | Case No:     4:24-cv-01132-JST |
| Plaintiff, | Assigned to: Hon. Jon S. Tigar |
| vs. | **DEFENDANT AND COUNTER-CLAIMANT RTZ ASSOCIATES, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY (REFILED PURSUANT TO THE COURT'S ORDERS ON THE ADMINISTRATIVE MOTIONS TO SEAL DKT NOS. 173 AND 189)** |
| RTZ ASSOCIATES, INC.; and DOES 1 through 10, | |
| Defendants, | |
| RTZ ASSOCIATES, INC., | *[Concurrently filed with Declaration of David C. Lee; and [Proposed] Order]* |
| Counter-claimant, | Date:       July 2, 2026 |
| vs. | Time:        2:00 p.m. |
| INTUS CARE, INC., | Courtroom: 6 |
| Counter-defendant. | |

70568355.v3

Case No. 4:24-cv-01132-JST

RTZ ASSOCIATES, INC'S MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY (REFILED PURSUANT TO THE COURT'S ORDERS ON THE ADMINISTRATIVE MOTIONS TO SEAL DKT NOS. 173 AND 189)

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 2, 2026, at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable Jon S. Tigar in Courtroom 6, located at 1301 Clay Street, Oakland, California 94612, Defendant RTZ Associates, Inc. ("RTZ") will and hereby does move to exclude portions of the expert opinions of Shawn Fleury pursuant to Federal Rule of Evidence 702.

Specifically, RTZ moves to exclude those portions of the May 12, 2026 Rebuttal Report of Shawn Fleury that are based upon, rely upon, or derive from the deposition testimony of Plaintiff IntusCare, Inc.'s co-founder and Chief Technology Officer, Alexander Rothberg, on the grounds that such opinions: (a) are not based on sufficient facts or data; (b) are not the product of reliable principles and methods; (c) do not reflect a reliable application of such principles and methods to the facts of the case; and (d) will not assist the trier of fact.

RTZ refiles its Motion pursuant to the Court's Orders regarding the Administrative Motions to Seal, Dkt. Nos. 173 and 189.

This motion is based on the accompanying Memorandum of Points and Authorities, Declaration of David C. Lee and exhibits thereto, [Proposed] Order, all the files and pleadings in this action, and such further oral argument and evidence as may be presented at the hearing on this Motion.

Dated:  July 7, 2026

NOSSAMAN LLP
DAVID C. LEE
KASIA PENN

By: _____
          David C. Lee

Attorneys for Defendant and Counterclaimant
RTZ ASSOCIATES, INC.

- 1 -

RTZ ASSOCIATES, INC'S MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY (REFILED PURSUANT TO THE COURT'S ORDERS ON THE ADMINISTRATIVE MOTIONS TO SEAL DKT NOS. 173 AND 189)

## I.    INTRODUCTION

Defendant RTZ Associates, Inc. ("RTZ") respectfully moves this Court pursuant to Federal Rule of Evidence 702 to exclude those opinions reflected in the May 12, 2026 Rebuttal Report of Shawn Fleury (Declaration of David C. Lee [Lee Decl.], Ex. 1 [Fleury Report]) that are based upon, rely upon, or derive from emails authored by and the deposition testimony of Plaintiff IntusCare, Inc.'s ("Intus") co-founder and Chief Technology Officer Alexander Rothberg. The Fleury Report purports to rebut the expert opinions of RTZ's cybersecurity expert, Traci Creegan, on issues related to SaaS arrangements, system access, and audit logs. (Lee Decl., Ex. 1 [Fleury Rep.] ¶¶ 19–20.) However, significant portions of the Fleury Report rest not on Mr. Fleury's independent technical expertise or analysis, but rather on his uncritical adoption and recharacterization of the self-serving deposition testimony of Mr. Rothberg, a fact witness who is a co-founder and CTO of the plaintiff and has a direct financial interest in the outcome of this litigation. (Lee Decl., Ex. 2 [Excerpts of Deposition of Alexander Rothberg, Feb. 27, 2026 ("Rothberg Dep.")] at 4:5–18.; *Id.*, Ex. 1 [Fleury Rep.] ¶¶ 26–38.) This reliance on interested party testimony as a factual foundation for purported expert opinions fails to satisfy the requirements of Rule 702 and renders the affected portions of the Fleury Report unreliable, unhelpful to the trier of fact, and inadmissible under FRE 702.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 assigns to the trial court a "gatekeeping" obligation to ensure that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The gatekeeping duty extends to all expert testimony, including economic damages analyses. *Kumho Tire*, 526 U.S. at 147.

As amended effective December 1, 2023, Rule 702 provides that a witness may offer expert testimony only if the proponent demonstrates to the court, by a preponderance of the evidence, that: (a) the expert's specialized knowledge will help the trier of fact; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of

- 1 -

the case. Fed. R. Evid. 702. The amendment rejected the line of decisions treating reliability as a weight-rather-than-admissibility question; the Advisory Committee made clear that "each of these admissibility requirements" must be "established by a preponderance of the evidence" before expert testimony reaches the jury. Fed. R. Evid. 702 Advisory Committee's Note to 2023 Amendment.

It is not enough for an expert to possess credentials and offer a conclusion. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."). Expert testimony must rest on "more than subjective belief or unsupported speculation." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059–60 (9th Cir. 2008). And an expert who simply assumed critical inputs rather than independently analyzing them is not applying a reliable method. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004).

"[E]xperts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Additionally, "an expert may not rely merely on the self-serving projections of his client." *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, No. 15-CV-02383-RS, 2018 WL 5013580, at *2 (N.D. Cal. Oct. 16, 2018); *see also Woods v. City of Hayward*, No. 19-CV-01350-JCS, 2021 WL 4061657, at *19 (N.D. Cal. Sept. 7, 2021) (citing *Villagomes v. Lab'y Corp. of Am.*, No. 2:08-cv-00387-RLH, 2010 WL 4628085, at *4 (D. Nev. Nov. 8, 2010); an expert witness may not "simply parrot the opinions of non-testifying experts").

III.   **THE FLEURY REPORT IMPROPERLY RELIES UPON ROTHBERG DEPOSITION TESTIMONY**

**A. Fleury's Opinions on System Access Are Tethered to Rothberg's Self-Serving Characterizations**

A central pillar of the Fleury Report concerns Ms. Creegan's opinions about Intus' requests for "read-only access" to PACECare and the security implications of those requests. (Lee

Decl., Ex. 1 [Fleury Rep.] ¶¶ 25–31.) Rather than conducting an independent technical analysis, Mr. Fleury relies heavily on Mr. Rothberg's deposition testimony and the email exhibits introduced during that deposition to recharacterize the nature and intent of Intus' access requests.

Specifically, Mr. Fleury cites "Rothberg Deposition Exhibit 63," a three-party email thread between RTZ, Intus, and Senior Care Partners, as the basis for his opinion that Ms. Creegan misinterprets the nature of Intus' "read-only access" request to RTZ's proprietary PACECare software. (*Id.* ¶¶ 26–31.) Mr. Fleury opines that "the context of the larger email casts doubt on the notion that system-level access was Intus' goal at the time" and that "the read-only access being requested is via API not via UI [(user interface –i.e., the interface a system user views when accessing a software system)]." (*Id.* ¶ 28.) Mr. Fleury's interpretation of this email thread essentially parrots the testimony that Mr. Rothberg himself provided during his February 27, 2026 deposition:

> I think my impression was like "Hey, if you have FHIR, if you have API, if you have SFTP, like, whatever you've got, we want it. But if you" – "if you've got nothing, then we can do what we had been doing, which is, you know, we just need access to a log-in account, and that's it. Like, if you" – "if you don't want to build anything, you don't have anything or what have you, if you just give us, like, this read-only log-in account, then we're good.

(Lee Decl., Ex. 2 [Rothberg Dep.] at 92:10-19.)

Further, at his deposition, Mr. Rothberg claimed that his reference to "read-only access" was merely "a starting-off point" and that his intention was to "consume" client data "via API or otherwise." (*Id.* at 89:23-90:17.) Mr. Fleury's opinion simply adopts this narrative wholesale, and presents it as "expert" analysis.

Critically, the Fleury Report constitutes nothing more than Mr. Fleury's own after-the-fact interpretation of what he believes Mr. Rothberg's emails mean. There is no indication anywhere in the Fleury Report that Mr. Fleury ever spoke with Mr. Rothberg about the intent or meaning behind his email statements. Mr. Fleury does not report having interviewed Mr. Rothberg, does not cite any conversation with Mr. Rothberg, and does not identify any basis for his interpretation of Mr. Rothberg's emails other than his own reading of the text. What Mr. Fleury offers, then, is not expert opinion at all, but rather an interpretation of what an email says

and what its author meant by it, dressed up in an expert report and opinion. This type of testimony requires no specialized knowledge, no technical expertise, and no application of any methodology. It is simply one person reading another person's emails and offering his view of their meaning, which is precisely the type of interpretation that a jury can perform on its own.

As shown by his deposition testimony above, Mr. Rothberg is available to supply whatever meaning and context he wishes at trial as a fact witness. There is no need for Mr. Fleury to serve as an interpretive intermediary between Mr. Rothberg's emails and the jury. Allowing Mr. Fleury to do so would not assist the trier of fact; it would merely give Intus two bites at the same apple by presenting Mr. Rothberg's narrative once through his own testimony and a second time through purported "expert" interpretation.

Mr. Fleury further opines that "a mere request for access to a UI does not immediately raise security concerns; rather, the context in which the request is made must be considered" and that "[a] request from a client's vendor, at the client's behest, with a full explanation of the purpose for the request, does not raise security concerns." (Lee Decl., Ex. 1 [Fleury Rep.] ¶ 29.) These opinions are not grounded in any independent technical analysis of the PACECare system, its architecture, its security protocols, or the specific data at issue. Instead, they depend entirely on Mr. Rothberg's subjective characterization of the events and his assertion that such a request was made at the client's behest. (*See* Lee Decl., Ex. 2 [Rothberg Dep.] at 85:8-25.) Mr. Fleury simply credits Mr. Rothberg's testimony and draws conclusions from it, rather than performing the type of independent analysis that the court's gatekeeping role demands.

### B. Fleury's Opinions on Audit Logs Rely on Rothberg's Characterization of Intus' Data Needs

Evidence establishes that Intus had specific data needs from the PACECare system it claimed were required to provide its services. RTZ contends that Intus improperly accessed RTZ's PACECare system as an unauthorized user and navigated to areas and data beyond its stated data needs – as proven by RTZ's system audit logs. Ms. Creegan (RTZ's expert) has forensically analyzed the audit logs and presented her opinions that Intus' PACECare access exceeded its stated data needs. Mr. Fleury opines at length on the audit log evidence, contending that Ms.

Creegan's opinion that Intus' access exceeded the scope of its stated data need is "incorrect and conflicts with the facts." (Lee Decl., Ex. 1 [Fleury Rep.] ¶ 32.) To support this opinion, Mr. Fleury again relies on Mr. Rothberg's deposition testimony and Exhibit 63 discussed therein.

Exhibit 63—an April 26, 2021 email discussed during Mr. Rothberg's deposition—lists the data requirements that Intus claimed it needed. (*Id.* ¶¶ 33–34; *id.*, Ex. 3 [Exhibit 63 to Rothberg Dep.].) Mr. Fleury notes that the email includes "Medications" under the Patient data category, which he asserts "likely corresponds to the 'redirect.main.meds.new' module," and he emphasizes the significance of the abbreviation "etc." in the requirements, which Mr. Fleury claims "indicates that additional data elements may be necessary." (*Id.*, Ex. 1 [Fleury Rep.] ¶ 34.) This point warrants particular emphasis. ***Mr. Fleury is speculating about what Mr. Rothberg subjectively intended to encompass within the word "etc."***—a single abbreviation in an email authored by the plaintiff's own CTO. Mr. Fleury has no basis for this interpretation. He did not speak with Mr. Rothberg about what "etc." was meant to include. He performed no technical analysis to determine which additional data elements, if any, would have been encompassed by that term. Without any evidentiary foundation, he simply assumes that "etc." broadly expands the scope of Intus' stated data needs to cover whatever modules the audit logs happen to show were accessed. This is not analysis; it is conjecture disguised as a supposed justification for access that the documentary record does not otherwise support.

This so-called "analysis" is not the product of independent technical expertise. Mr. Fleury does not claim to have reviewed the PACECare database schema, the system architecture, or the technical specifications of the modules at issue. He simply reads Mr. Rothberg's email and assumes that it defines the legitimate scope of Intus' access, and concludes with a non-technical interpretation of what he believes "etc." means in an email Mr. Fleury had no involvement in writing. He then opines that the audit log entries do not reflect access exceeding Intus' stated needs without having conducted any independent technical analysis, i.e., such as comparing the audit logs detailing Intus' access to PACECare modules and data to Intus' own generated data maps and native scripts defining its data needs – the type of technical and analytical work performed by Ms. Creegan.

- 5 -

## C. Fleury's Opinion on SaaS Industry Practices Incorporates Rothberg's Testimony as Foundational Fact

Mr. Fleury relies on the Rothberg deposition record and email (Exhibit 63) to support his broader opinion that "RTZ deviated from common industry practices in that it did not follow its client's (and the owner of the data) request to permit Intus' access." (Lee Decl., Ex. 1 [Fleury Rep.] ¶ 31.) Mr. Fleury again cites Rothberg Deposition Exhibit 63 as purportedly establishing that the customer, Senior Care Partners, was "making the request for integration services" and that Intus' involvement was at the client's direction. (*Id.* ¶ 31; *id.*, Ex. 2 [Rothberg Dep.] at 81:2-84:8; *id.*, Ex. 3 [Exhibit 63].)

However, this characterization of the email thread as demonstrating client-initiated integration depends entirely on Mr. Rothberg's interpretation of the email. (*Id.*, Ex. 2 [Rothberg Dep.] at 81:2-85:25.) The email thread itself is subject to competing interpretations, and Mr. Rothberg, as a co-founder of Intus with a direct financial stake in the outcome, has every incentive to characterize Intus' actions as client-driven rather than self-initiated. Mr. Fleury's adoption of Mr. Rothberg's characterizations without independent verification transforms his expert report into an advocacy piece that simply amplifies the plaintiff's preferred narrative.

## IV.    THE AFFECTED OPINIONS SHOULD BE EXCLUDED

"[W]hen an expert merely relies on the work and evaluations of others and 'conducted no independent testing' of his own, the expert's testimony is not reliable under Rule 702." *Scientific Applications & Research Associates, Inc. v. Zipline International, Inc.*, No. 22-CV-04480-JSC, 2025 WL 4108875, at \*5-6 (N.D. Cal. Apr. 11, 2025) (citations omitted) (excluding expert opinions due to lack of independent analysis because the conclusions merely "parrots" another's findings). Here, Mr. Fleury's opinions parrot Mr. Rothberg's opinions and interpretations. By relying on Mr. Rothberg's self-serving deposition testimony as a primary factual input, Mr. Fleury's opinions rest not on objectively verifiable data but on the subjective characterizations of an interested party.

Mr. Fleury's qualifications are in cybersecurity risk assessment, incident response, and security program evaluation. (Lee Decl., Ex. 1 [Fleury Rep.] ¶¶ 5–16.) These are legitimate areas

- 6 -

of expertise. However, the portions of his report challenged here do not reflect the application of cybersecurity expertise to independently gathered or verified data. Instead, they reflect Mr. Fleury's apparent reading skills in reviewing deposition testimony and exhibits, blindly crediting the veracity of Intus' co-founder Mr. Rothberg, and drawing conclusions favorable to the plaintiff. This is not expert analysis but rather party advocacy.

A reliable methodology in this context would have required Mr. Fleury to independently analyze the PACECare system architecture, review the database schema, examine the audit logs in their technical context, and assess the access patterns against objective technical benchmarks such as Intus' own data maps and native scripts (which he never did). Ironically, Mr. Fleury critiques that Ms. Creegan "had access to PACECare but makes no mention of doing anything to evaluate its functionality or the various fields in the audit log," noting that the audit logs "all contain the word 'redirect'" and that "[t]here is no way to determine what the mode of access was without reviewing the database schema, which Ms. Creegan does not indicate she did while forming her opinion." (Lee Decl., Ex. 1 [Fleury Rep.] ¶ 37.) Yet, Mr. Fleury himself does not indicate that he reviewed the database schema either.

Consequently, admitting Mr. Fleury's opinions on these subjects would not assist the jury's understanding. *See* Fed. R. Evid. 702(a) (expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue"). Instead, Mr. Fleury's opinions simply parrot the words of a party employee (Mr. Rothberg) who is clearly capable of explaining what his own email communications mean and do not mean. Allowing Mr. Fleury's echoed analysis would improperly bolster Intus' fact testimony by presenting Mr. Rothberg's interpretation of the meaning of these emails as the opinion of an independent expert.

## V.    CONCLUSION

For the foregoing reasons, RTZ respectfully requests that this Court exclude those portions of the rebuttal expert testimony of Shawn Fleury that are based upon, derive from, or rely upon the deposition testimony of Alexander Rothberg. Specifically, RTZ requests exclusion of Mr. Fleury's opinions in paragraphs 25 through 31 of the Fleury Report (concerning system access and the "read-only access" request), paragraphs 32 through 38 (concerning audit logs and the

scope of Intus' stated data needs), and paragraph 31 (concerning SaaS industry practices and client-directed access), to the extent those opinions are premised on Mr. Rothberg's deposition testimony and Exhibit 63 introduced therein. (*See* Lee Decl., Ex. 1 [Fleury Rep.] ¶¶ 25–38.)


Dated:  July 7, 2026                           NOSSAMAN LLP
                                               DAVID C. LEE
                                               KASIA PENN


                                               By:_____
                                                           David C. Lee

                                               Attorneys for Defendant and Counterclaimant
                                               RTZ ASSOCIATES, INC.

RTZ ASSOCIATES, INC'S MOTION TO EXCLUDE EXPERT OPINIONS OF SHAWN FLEURY (REFILED PURSUANT TO THE COURT'S ORDERS ON THE ADMINISTRATIVE MOTIONS TO SEAL DKT NOS. 173 AND 189)