Charles E. Weir (SBN 211091)
Andrew M. Beshai (SBN 308030)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, California 90067-2506
Telephone:    310.556.8861
Facsimile:    310.553.2165
cweir@ebglaw.com
abeshai@ebglaw.com

Attorneys for Plaintiff
INTUSCARE INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUSCARE INC., | Case No. 4:24-cv-01132-JST |
| Plaintiff, | *Assigned to Hon. Jon S. Tigar* |
| v. | **PLAINTIFF INTUSCARE INC.'S OPPOSITION TO DEFENDANT AND COUNTER-CLAIMANT RTZ ASSOCIATES, INC.'S MOTION TO BIFURCATE** |
| RTZ ASSOCIATES, INC. and DOES 1 through 10, | |
| Defendants. | Date:        July 31, 2026<br>Time:        2:00 p.m.<br>Courtroom:  6 |
| | Complaint Filed: February 23, 2024<br>Amended Complaint Filed: April 2, 2024<br>Counterclaims Filed: June 20, 2024 |

PLAINTIFF'S OPPOSITION TO DEFENDANT AND COUNTER-CLAIMANT'S MOTION TO BIFURCATE

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION</u>**

Defendant RTZ Associates, Inc.'s ("RTZ") motion to bifurcate the trial should be denied. RTZ seeks to carve up the trial not once, but twice, seeking a two-part liability phase and then a separate damages phase. Worse yet, RTZ's request is based on nothing more than boilerplate claims of convenience applicable in virtually every case. RTZ's motion does not come close to justifying bifurcation, which is a rare procedural occurrence in the Ninth Circuit, where the default is to try the liability phase as one trial and to try liability and damages together.

The bulk of RTZ's motion is based on the purported convenience of trying the "Actor" element of the Cures Act first. To the contrary, bifurcating the trial to try the "Actor" issue first would artificially splice the trial proceedings, undermining judicial economy and creating inefficiencies and inconvenience to the witnesses, parties, the jury and the Court. RTZ is simply wrong that there are any efficiencies to be gained by bifurcation. RTZ's justification—"if the jury determines that RTZ is not an actor, there is nothing remaining to be tried as to Intus's claims"— is a generic justification that applies in virtually all cases and which courts, therefore, routinely reject. There is often one or two elements of a claim that dispose of issues in a case, but that is rarely a reason to chop up the trial. The purported efficiency is also predicated on RTZ prevailing on the issue. If RTZ doesn't prevail, cutting the trial up as RTZ suggests is probably the least efficient way to try the case. As detailed herein, Intus does not believe RTZ will prevail on the Actor issue. Indeed, the "Actor" issue was something that RTZ felt was so weak for them that they did not even try to contest it at the summary judgment phase.

RTZ also vastly oversells the supposed time-saving benefits of bifurcating the "Actor" issue. In order for the jury to properly understand the "Actor" issue, the parties will have to present a significant amount of background and context, including who the parties are, the course of the parties' relationship, how PACECare works, among other issues. In short, much of the case will need to be presented to the jury to resolve the Actor issue. Moreover, contrary to RTZ's claim, resolving the Actor issue does not resolve the case. Intus has other theories that support its claims independent of the Cures Act, and RTZ brought counterclaims. The inefficiency of having to

recall the same exact witnesses who testified on the "Actor" issue for the rest of the case—after artificially cutting off their testimony to have the jury deliberate and render a verdict—undermines RTZ's claim of judicial economy.

Finally, RTZ's request is also an effort to bifurcate damages and liability. This contradicts the default rule in the Ninth Circuit to try liability and damages together. This is especially true where, as here, there will be overlap in the evidence presented as to damages and liability.

The Court should, therefore, deny RTZ's bifurcation motion in its entirety.

## II.    ARGUMENT

### A.    RTZ's Proposed Bifurcation Would Create More Inefficiencies And Undermine Judicial Economy

"Bifurcation [] is the exception rather than the rule of normal trial procedure; Rule 42(b) allows, but does not require, bifurcation to further convenience or avoid prejudice." *Clark v. I.R.S.*, 772 F. Supp. 2d 1265, 1269 (D. Haw. 2009) (citing *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004)); *see also* Fed.R.Civ.P. 42 Advisory Committee's Note (1966 Amendment) ("[S]eparation of issues for trial is not to be routinely ordered[.]").

RTZ argues that trying the "Actor" issue first saves time because "if the jury determines that RTZ is not an actor, there is nothing remaining to be tried as to Intus's claims." (Mot. at 10:14-15.) As described below, not only is this inaccurate, but such a generic justification has been roundly rejected by numerous district courts. "[A] moving party's mere contention that judicial economy would be promoted by bifurcation, insofar as a second phase of a bifurcated trial would be rendered unnecessary if the moving party prevails at the first phase, is not sufficient to meet that party's burden of showing that bifurcation is appropriate." *Jones v. Nat'l R.R. Passenger Corp.*, No. 15-CV-02726-TSH, 2018 WL 6606247, at *5 (N.D. Cal. Dec. 17, 2018). Again, RTZ advances a generic rationale applicable in almost every case: "[B]ifurcation is likely to save judicial resources" because "if the jury decides that RTZ is not an 'actor,' [it] is dispositive of all of Intus's claims." (Mot. at 11:3-5.) A party fails to "sufficiently demonstrate that bifurcation would conserve resources" where, as here, the party "make[s] general arguments that are applicable in virtually every case." *Canchola v. Allstate Ins. Co.*, No. 8:23-CV-00734-FWS-

3

ADS, 2025 WL 2373271, at *2 (C.D. Cal. July 3, 2025) (collecting cases).

RTZ's basis for efficiency also requires RTZ to prevail. As detailed below, Intus believes that the Actor issue should be decided in its favor. If, as Intus believes the evidence will show, RTZ is an Actor, bifurcation would be incredibly inefficient and likely extend the length of the trial. It would end up artificially chopping up the case, and the parties will have to recall witnesses to continue their testimony. This would be a tremendous inconvenience to not only the witnesses themselves, but the parties, jury and the Court.

Not only is RTZ's argument flawed as a matter of law, RTZ also vastly oversells the purported convenience from bifurcating the "Actor" issue. In order for the jury to properly understand the "Actor" issue, the parties will have to present a significant amount of background and context, including who the parties are, the course of the parties' relationship, how PACECare works, how different entities exchange information with each other through PACECare, RTZ's interactions with PACE programs, and the affiliations or relationships between the entities (e.g., Intus, PACE programs, labs, etc.) that exchange information across PACECare. All of these issues overlap with other elements of the case. While RTZ may want to limit the testimony about the Actor issue to its expert and "one or two fact witnesses who will describe how RTZ operates," that is not going to be the case. (Mot. at 6:23-24.) While "how RTZ operates" is certainly relevant to the analysis, the key to the analysis is the relationship between all the parties that access information on the PACECare system. 45 C.F.R. § 171.102 (defining "Actor" as an entity that "controls . . . an agreement that permits . . . use of any technology or services for access, exchange, or use of electronic  health information . . . [a]mong more than two unaffiliated individuals or entities . . . for a treatment, payment, or health care operations purpose . . . ."); *21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification  Program*, 85 Fed. Reg. 25642, 25801 (May 1, 2020) ("[T]wo parties are affiliated if one has the power to control the other, or if both parties are under the common control or ownership of a common owner."). This includes third parties like laboratory companies, physicians, vendors and other healthcare providers. Thus, contrary to RTZ's claim that Intus will not call witnesses, Intus would expect to call at least four executive level personnel (Robbie Felton, Evan Jackson, Alex Rothberg

4

PLAINTIFF'S OPPOSITION TO DEFENDANT AND COUNTER-CLAIMANT'S MOTION TO BIFURCATE

and Laura Ferrera), RTZ's CEO Michael Zawadski, RTZ's customer service employee Melanie Martinez and at least two representatives from PACE programs that used PACECare.

Despite the significant overlap in necessary background among all the claims and counterclaims, RTZ asks this Court to artificially splice the trial in an inefficient manner. Instead of staying on the stand and completing their testimony, numerous witnesses will have to be recalled again after the "Actor" issue is adjudicated to give additional testimony on the other claims that they could have easily simply completed when they were first called. The inefficiency of having to recall the same exact witnesses who testified on the "Actor" issue—after artificially cutting off their testimony to have the jury deliberate and render a verdict—refutes RTZ's claim of judicial economy.

RTZ does not seem to grasp this inefficiency and inconvenience to the witnesses; rather, RTZ contends that in the event of an "Actor" verdict in Intus's favor, "no time has been wasted . . . and the trial may simply continue with the parties' respective cases in chief" as to the remaining claims. (Mot. at 10:16-18.) There is nothing "simple" about this unnecessary start-and-stop phasing.

Moreover, even if RTZ were to win on the Actor issue, it does not dispose of the case. RTZ has counterclaims that are not impacted. Likewise, Intus' UCL and intentional interference claims are based on additional conduct beyond the Cures Act, so those claims will still need to be resolved despite how the "Actor" issue turns out.[1] Bifurcating the "Actor" issue, therefore, will

---

[1] Intus has also alleged in its amended complaint that RTZ engaged in unfair and fraudulent business practices. As part of its fraudulent scheme to harm Intus, RTZ included a contract provision prohibiting PACE programs from sharing with Intus reports of the PACE programs' own data generated by PACECare—while at the same time telling Intus that it could obtain data from PACECare by asking PACE programs to generate reports from the system. RTZ has even gone so far as to threaten PACE programs with suit if they shared data with Intus. This conduct is independently actionable under the UCL and the intentional interference claims regardless of whether Intus proves a Cures Act violation. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009) ("[U]nder the [UCL] 'there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent."); *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (holding that a plaintiff need only prove "defendant's intentional acts designed to induce a breach or disruption" for an intentional interference with contract claim); *BioResource, Inc. v. U.S. PharmaCo Distribution, Ltd.*, No. C10-1053, 2010 WL 3853025, at *3 (N.D. Cal. Sept. 29, 2010) ("[F]raud and misrepresentation can constitute independently wrongful conduct to support a claim for intentional interference with prospective economic advantage.").

PLAINTIFF'S OPPOSITION TO DEFENDANT AND COUNTER-CLAIMANT'S MOTION TO BIFURCATE

only result in a protracted liability phase and inconvenience to the witnesses who will have to deal with shuffling back and forth unnecessarily. Bifurcation should be denied where, as here, it will "lead to significant additional costs, with the potential for two trials leading to an inefficient use of party, jury, and court resources." *Jones*, 2018 WL 6606247 at *5.

RTZ's request would also effectively bifurcate liability from damages—something that courts in the Ninth Circuit rarely do. There is no reason to bifurcate damages and liability here. "In determining whether bifurcation of damages is appropriate, the Court keeps in mind that bifurcation 'is the exception rather than the rule of normal trial procedure' within the Ninth Circuit." *Strategic Partners, Inc. v. FIGS, Inc.*, No. 2:19-CV-02286-JWH-KS, 2022 WL 17348175, at *3 (C.D. Cal. Sept. 26, 2022) (citation omitted). "The 'normal trial procedure' in the Ninth Circuit is to try liability and damages together because 'the evidence usually overlaps substantially.'" *Firetrace USA, LLC v. Jesclard*, No. CV 07-02001-PHX-ROS, 2011 WL 13183014, at *1 (D. Ariz. Feb. 15, 2011). "Where liability and damages evidence may overlap, the proper course is to deny bifurcation," and here RTZ has "failed to establish that evidence of liability and damages will not overlap in any meaningful way." *Jones*, 2018 WL 6606247 at *5. Here, Intus' damages calculation rests partially on evidence of lost sales stemming from RTZ's blocking conduct, meaning that evidence of Intus' interactions with its PACE customers will overlap on both damages and liability issues. Such overlap militates against bifurcation of damages and liability. *See Firetrace USA*, 2011 WL 13183014 at *1 (denying bifurcation motion where "the damages calculation will involve evidence regarding Defendants' sales" in a case involving "claims for tortious interference, unfair competition and breach of fiduciary duty," where "the evidence is intertwined"). In sum, beyond vague allusions to the complexity of the liability phase, RTZ does not justify bifurcation of damages and liability. It does not point to any juror confusion or specific prejudice that could result (there is none). Moreover, the witnesses testifying only to damages are only two additional expert witnesses, which will not consume the "substantial trial time" RTZ claims will be needed. (Mot. at 9:23.)[2]

---

[2] RTZ also fails to explain how "the resolution of the 'actor' issue in a Phase One trial will be an important data point for both sides in determining whether to settle the case." (Mot. at 11:16-18.) Of course, the parties have discussed, and continue to discuss, settlement throughout this

6

**B.**    **RTZ's Argument About the "Strength" of Its "Actor" Case Is Irrelevant to the Bifurcation Analysis and Is Based Primarily on the Improper Legal Opinion of an Expert Whose Testimony on the Topic Has Been Excluded**

RTZ wrongly maintains that there is "strong evidence" that it is not an "Actor." The Court should disregard this argument because the relative strength of the parties' cases is not a factor to be considered in the bifurcation analysis. According to Rule 42(b), the Court may bifurcate "[f]or convenience, to avoid prejudice, or to expedite and economize"—those are the only factors that should inform the analysis. Fed. R. Civ. P. 42(b). Indeed, if bifurcation of an issue could be justified by one side saying they think they are going to win that issue, bifurcation would occur in virtually every case. As detailed above, bifurcation is the exception, not the rule.

RTZ is also wrong about the strength of its case. RTZ is an "Actor" under the Cures Act because it is an HIN/HIE. The regulations define HIE/HIN as an "entity that determines, controls, or has the discretion to administer any requirement, policy, or agreement that permits, enables, or requires the use of any technology or services for access, exchange, or use of electronic health information: (1) Among more than two unaffiliated individuals or entities . . . that are enabled to exchange with each other; and (2) That is for a treatment, payment, or health care operations purpose . . . ." 45 C.F.R. § 171.102. "[T]wo parties are affiliated if one has the power to control the other, or if both parties are under the common control or ownership of a common owner." *21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program*, 85 Fed. Reg. 25642, 25801 (May 1, 2020). Specifically, to be an HIN/HIE an entity must control "technology or service[] for access, exchange, or use of electronic health information." RTZ controlled PACECare, a technology used for the "access, exchange, or use of electronic health information." RTZ does not, and cannot, dispute that its electronic medical records system, PACECare, is a technology designed to facilitate access to, exchange of, and use of patients' electronic health information. And PACECare facilitated exchange of electronic health information ("EHI") "[a]mong more than two unaffiliated individuals or entities . . . for a

litigation, and they will continue to do so in pretrial meet and confer calls, as required by this Court's civil jury trial standing order. However, it is unclear how fully litigating the "Actor" issue will save time or foster settlement, regardless of which side prevails.

PLAINTIFF'S OPPOSITION TO DEFENDANT AND COUNTER-CLAIMANT'S MOTION TO BIFURCATE

treatment, payment, or health care operations purpose." *Id*. Again, there is no dispute that Intus, the PACE programs, and unaffiliated vendors, laboratories, and other healthcare providers accessed and exchanged patients' EHI data on PACECare. (Creegan Report at ¶¶ 34-38.)[3] Indeed, that is the reason for this lawsuit—after initially having access, Intus was later denied access to the PACE programs' EHI and could not perform its services, which were both crucial for patient treatment as well as the PACE programs' health care operations. Nor is there any question that Intus, vendors and healthcare providers and the various PACE programs are "unaffiliated" because they do not have "power to control [each] other," and are not "under the common control or ownership of a common owner." 85 Fed. Reg. at 25801.

RTZ's primary evidence on the "Actor" element was the improper opinion of its expert, Traci Creegan, who opined that RTZ was not an Actor. The Court recently excluded that testimony. (Dkt. 203 at 4:17-18.) While conceding that PACECare exchanges data among health care providers, vendors and PACE programs (Creegan Report at ¶¶ 34-38), RTZ nonetheless maintained that it is not an "Actor" because PACECare is "a point-to-point interface between two affiliated entities." (Creegan Deposition at 88:22-89:7.)[4] Put differently, RTZ argued that the key distinguishing feature that renders PACECare not an "Actor" is that it is facilitating exchanges between *affiliated* entities. But this argument completely ignores the legal definition of "affiliate": "Two parties are affiliated if one has the power to control the other, or if both parties are under the common control or ownership of a common owner." 85 Fed. Reg. at 25801. RTZ seems to gloss over this definition. Indeed, Creegan opined that "'unaffiliated,' as a word, means that there is no relationship between the parties." (Creegan Deposition at 66:21-22.) When asked point blank whether there is "anything in the regulations that . . . defines how the parties need to be affiliated or not affiliated?" Creegan responded that the regulations "do not specify any more regarding affiliation." (*Id*. at 67:14-15.) As above, this is directly contrary to the regulations. This is the "strong evidence" RTZ hangs its hat on.

///

---

[3] The Creegan report is filed at Dkt. 198-2.
[4] The Creegan deposition is filed at Dkt. 198-4.

8

**III.    CONCLUSION**

For the foregoing reasons and those stated in the Motion, the Court should deny RTZ's Motion to Bifurcate.

Dated: July 10, 2026                              EPSTEIN BECKER & GREEN, P.C.

                                        By:    /s/ Charles E. Weir
                                               Charles E. Weir
                                               Andrew M. Beshai

                                               Attorneys for Plaintiff
                                               INTUSCARE INC.

PLAINTIFF'S OPPOSITION TO DEFENDANT AND COUNTER-CLAIMANT'S MOTION TO BIFURCATE