NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile:  415.398.2438

NOSSAMAN LLP
KASIA PENN (SBN 306056)
kpenn@nossaman.com
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Telephone: 949.833.7800
Facsimile:  949.833.7878

Attorneys for Defendant and Counter-claimant
RTZ ASSOCIATES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUS CARE, INC.,<br><br>             Plaintiff,<br><br>      vs.<br><br>RTZ ASSOCIATES, INC.; and DOES 1 through 10,<br><br>             Defendants, | Case No:    4:24-cv-01132-JST<br><br>Assigned to: Hon. Jon S. Tigar<br><br>**DEFENDANT AND COUNTER-CLAIMANT RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS CARE INC.'S MOTIONS IN LIMINE**<br><br>Date:       July 31, 2026<br>Time:       2:00 p.m.<br>Courtroom: 6 |
| RTZ ASSOCIATES, INC.,<br><br>             Counter-claimant,<br><br>      vs.<br><br>INTUS CARE, INC.,<br><br>             Counter-defendant. | |

# TABLE OF CONTENTS

I.    RTZ'S OPPOSITION TO INTUS'S MIL NO. 1 ..................................................................7

      A.  Argument ...........................................................................................................7

      B.  Evidence of Capital Raises Is Admissible .........................................................9

      C.  Evidence of Credential-Sharing Practices Is Admissible ...................................10

II.   RTZ'S OPPOSITION TO INTUS'S MIL NO. 2 ..................................................................11

      A.  Legal Standard ...................................................................................................12

      B.  Argument ...........................................................................................................12

III.  RTZ'S OPPOSITION TO INTUS'S MIL NO. 3 ..................................................................17

      A.  Argument ...........................................................................................................17

IV.   RTZ'S OPPOSITION TO INTUS'S MIL NO. 4 ..................................................................19

      A.  Argument ...........................................................................................................19

V.    RTZ'S OPPOSITION TO INTUS'S MIL NO. 5 ..................................................................24

      A.  Argument ...........................................................................................................25

VI.   RTZ'S OPPOSITION TO INTUS'S MIL NO. 6 ..................................................................28

      A.  Factual and Procedural Background ...................................................................28

      B.  Argument ...........................................................................................................28

VII.  RTZ'S OPPOSITION TO INTUS'S MIL NO. 7 ..................................................................33

VIII. RTZ'S OPPOSITION TO INTUS'S MIL NO. 8 ..................................................................36

      A.  Legal Standard ...................................................................................................37

      B.  Argument ...........................................................................................................37

IX.   RTZ'S OPPOSITION TO INTUS'S MIL NO. 9 ..................................................................40

      A.  Relevant Background ..........................................................................................40

      B.  Legal Standard ...................................................................................................41

      C.  Argument ...........................................................................................................41

X.    RTZ'S OPPOSITION TO INTUS'S MIL NO. 10 ................................................................42

- 1 -

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) ...................................................................................................30

*Borchik v. State Farm Mut. Auto Ins. Co.*,
2026 WL 910189 (D. Nev. Jan. 23, 2026).................................................................................10

*Boyd v. City & Cnty. of San Francisco*,
576 F.3d 938 (9th Cir. 2009) ....................................................................................................24

*Burch v. Regents of Univ. of Cal.*,
433 F. Supp. 2d 1110 (E.D. Cal. 2006).....................................................................................41

*Camenisch v. Umpqua Bank*,
763 F. Supp. 3d 871 (N.D. Cal. 2025) ......................................................................................18

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)............................................................................................................ *passim*

*Espinoza v. Sniff*,
2015 WL 12660410 (C.D. Cal. 2015)........................................................................................42

*ExactLogix, Inc. v. JobProgress, LLC*,
508 F. Supp. 3d 254 (N.D. Ill. 2020) ........................................................................................20

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ...............................................................................................29, 30

*Facebook, Inc. v. Power Ventures, Inc.*,
252 F. Supp. 3d 765 (N.D. Cal. 2017) ......................................................................................30

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ..................................................................................................21

*Gray v. Clark*,
654 F.Supp.3d 1062 (E.D. Cal 2023)......................................................................................8, 18

*Hana Fin., Inc. v. Hana Bank*,
735 F.3d 1158 (9th Cir. 2013) .............................................................................................34, 43

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ...................................................................................................21

*Huddleston v. United States*,
485 U.S. 681 (1988).............................................................................................................39, 40

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

*Jackson v. Cnty. of San Bernardino*,
   194 F. Supp. 3d 1004 (C.D. Cal. 2016) ....................................................................34

*Lateral Link Grp., LLC v. Springut*,
   2016 WL 11785212 (C.D. Cal. 2016) ......................................................................20

*Louzon v. Ford Motor Co.*,
   718 F.3d 556 (6th Cir. 2013) ............................................................................10, 26

*Luce v. United States*,
   469 U.S. 38 (1984) ......................................................................................12, 37, 42

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) ................................................................................21

*Multiven, Inc. v. Cisco Systems, Inc.*,
   725 F.Supp.2d 887 (N.D. Cal. 2010) ......................................................................21

*Munoz v. PHH Mortg. Corp.*,
   478 F. Supp. 3d 945 (E.D. Cal. 2020) ....................................................................46

*Old Chief v. United States*,
   519 U.S. 172 (1997) ..........................................................................................15, 24

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ..................................................................................36

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
   131 F.4th 205 (4th Cir. 2025) ................................................................................44

*Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*,
   No. 8:24-cv-00313-PX, 2024 WL 3569493 (D. Md. July 29, 2024) ................44, 45

*Rodriguez v. Google LLC*,
   No. 20-CV-04688-RS, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ..........................30

*Shenon v. New York Life Ins. Co.*,
   2020 WL 1317722 (C.D. Cal. Mar. 16, 2020) ........................................................10

*Smith v. Rack Room Shoes, Inc.*,
   No. 24-CV-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ....................29

*Sperberg v. Goodyear Tire & Rubber Co.*,
   519 F.2d 708 (6th Cir. 1975) ............................................................................10, 26

*Sprint/United Mgmt. Co. v. Mendelsohn*,
   552 U.S. 379 (2008) ................................................................................................14

*U.S. v. Nosal* (*Nosal I*),
   676 F.3d 854 (9th Cir. 2012) ..................................................................................20

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE
70577222.v3

*United States v. Anderson*,
    741 F.3d 938 (9th Cir. 2013) ...................................................................................................37, 39

*United States v. Bowen*,
    857 F.2d 1337 (9th Cir. 1988) ...........................................................................................................10

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) .............................................................................................................22

*United States v. Curtin*,
    489 F.3d 935 (9th Cir. 2007) (en banc) ..............................................................................................9

*United States v. Diaz*,
    876 F.3d 1194 (9th Cir. 2017) .....................................................................................................35, 36

*United States v. Dorsey*,
    677 F.3d 944 (9th Cir. 2012) .......................................................................................................14, 15

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) .....................................................................................................16, 24

*United States v. Hitt*,
    981 F.2d 422 (9th Cir. 1992) .............................................................................................................12

*United States v. Mende*,
    43 F.3d 1298 (9th Cir. 1995) .................................................................................................12, 16, 24

*United States v. Mitchell*,
    172 F.3d 1104 (9th Cir. 1999) ...........................................................................................................10

*United States v. Nosal*,
    930 F.Supp.2d 1051 ...........................................................................................................................21

*United States v. Scott*,
    270 F.3d 30 (1st Cir. 2001)................................................................................................................15

*United States v. Vizcarra-Martinez*,
    66 F.3d 1006 (9th Cir. 1995) .............................................................................................................14

*United States v. Whittemore*,
    776 F.3d 1074 (9th Cir. 2015) .............................................................................................................8

*Van Buren v. United States*,
    593 U.S. 374 (2021)...........................................................................................................................21

*Weller v. Cnty. of Los Angeles*,
    2016 WL 11760239 (C.D. Cal. 2016)...............................................................................................41

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

**Statutes**

18 U.S.C. § 1030.................................................................................................................30, 31

Cal. Penal Code § 502(e)(1)........................................................................................................29

California Business and Professions Code § 17200 ...............................................................40, 42

California Comprehensive Data Access and Fraud Act ........................................................ *passim*

Computer Fraud and Abuse Act ........................................................................................... *passim*

Civil L.R. 7-9 ..............................................................................................................................43

Cures Act ..............................................................................................................................11, 36

HIPAA .........................................................................................................................................23

**Other Authorities**

45 C.F.R. § 171.102 ....................................................................................................................35

45 C.F.R. § 171.301(a)(1)...........................................................................................12, 13, 44, 45

85 Fed. Reg. 25642 .....................................................................................................................35

85 Fed. Reg. 25801 .....................................................................................................................35

CACI No. 203 ..............................................................................................................................27

CACI No. 204 .........................................................................................................................27, 28

CACI No. 2101 ............................................................................................................................31

Fed. R. Evid. Rule 401.......................................................................................................... *passim*

Fed. R. Evid. Rule 402.......................................................................................................... *passim*

Fed. R. Evid. Rule 403.......................................................................................................... *passim*

Fed. R. Evid. Rule 404.............................................................................................................38, 40

Fed. R. Evid. Rule 602...................................................................................................................8

Fed. R. Evid. Rule 702................................................................................................................7, 8

Fed. R. Evid. Rule 703................................................................................................................7, 8

Fed. R. Evid. Rule 801(d)(2)(A)....................................................................................................23

Fed. R. Civ. P. Rule 50................................................................................................................46

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

Fed. R. Civ. P. Rule 72(a) ........................................................................................................................32

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

Defendant RTZ Associates, Inc. ("RTZ") respectfully opposes Plaintiff Intuscare Inc.'s ("Intus") motions in limine as follows:

## I.    RTZ'S OPPOSITION TO INTUS'S MIL NO. 1

Intus's Motion in Limine No. 1 (Dkt. 205) seeks to exclude three categories of evidence regarding: (1) Intus's accelerated market entry; (2) Intus's capital raises; and (3) Intus's industry norm violations, specifically credential-sharing practices. The motion should be denied in its entirety. Intus's motion fundamentally misconstrues the Court's prior rulings. The Court's Order on Motions to Exclude Testimony (Dkt. 203) narrowly excluded RTZ's damages expert Peter Schwechheimer from offering a specific quantification opinion on accelerated development and capital raises—a gatekeeping ruling under Federal Rules of Evidence 702 and 703. That ruling did not, and could not, bar all lay testimony, documentary evidence, and fact-based proof on these subjects. The evidence Intus seeks to exclude is independently admissible under Federal Rules of Evidence 401, 402, and 403, is directly relevant to RTZ's Counterclaim (Dkt. 41), and was already acknowledged as relevant by the Court's discovery order (Dkt. 96).

### A.  Argument

#### 1.  Evidence of Accelerated Market Entry Is Admissible

##### a.  The Evidence Is Relevant Under FRE 401 and 402.

RTZ's Counterclaim specifically alleges that Intus improperly accessed PACECare to accelerate its research and development of CareHub, a competing electronic medical records platform. (Dkt. 41.) Evidence that Intus in fact accelerated its market entry has a direct "tendency to make a fact more or less probable" that is "of consequence in determining" RTZ's claims. Fed. R. Evid. 401. Such evidence is admissible as a matter of course under Rule 402.

The Court has already acknowledged the relevance of this evidence. In its discovery order, the Court found that evidence regarding Intus's alleged improper access to PACECare to accelerate CareHub development—including evidence relevant to RTZ's damages theory—was discoverable precisely because it is relevant to RTZ's claims. (Dkt. 96). That determination predates and is independent of the subsequent gatekeeping ruling on Schwechheimer's expert testimony.

70577222.v3

### 2. The Court's Exclusion of Schwechheimer's Opinion Was a Narrow Expert-Witness Ruling, Not a Blanket Relevance Determination.

Intus conflates two distinct evidentiary principles. The Court's Order (Dkt. 203 at 13:20–15:1) excluded Schwechheimer from opining on accelerated market entry because he failed to quantify that concept into a damages figure—a deficiency under FRE 702/703 specific to expert testimony. That ruling says nothing about the admissibility of underlying facts through lay witnesses and documents. The exclusion of an expert's opinion does not render the underlying factual evidence inadmissible. See *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587-590 (1993) (distinguishing admissibility of expert opinion from admissibility of underlying facts).

### 3. Michael Zawadski Has Personal Knowledge Under FRE 602.

Intus's argument that no RTZ witness can testify about CareHub's development timeline fails. Federal Rule of Evidence 602 requires only that a witness have "personal knowledge of the matter." Michael Zawadski, as RTZ's former CEO and a technology executive with direct involvement in the parties' business relationship, has firsthand knowledge of the parties' relative product development processes and timelines. He is not required to have "seen the CareHub product/code" to testify about what he personally observed regarding Intus's entry into the marketplace and the timeline thereof. See *United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015) (lay witnesses may testify to matters within their personal knowledge and perception).

Further, Intus may cross-examine RTZ's witnesses or present rebuttal evidence, which is the appropriate way to address this issue rather than exclusion.  A motion in limine should not be used to resolve factual disputes or weigh evidence "because that is the province of the jury." *Gray v. Clark*, 654 F.Supp.3d 1062, 1067-1068 (E.D. Cal 2023) (citing *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008) and *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000)).  As that case noted, "[t]he Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose." *Id.* (citing *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).  Whether Intus's development of a competing product was accelerated is a disputed merits question for the jury to decide, and the jury's fact-finding function cannot be preempted by a

70577222.v3

motion in limine.

Moreover, Intus itself opened the door to this testimony. Intus's counsel elicited testimony from Zawadski regarding software development timelines during his deposition. (Lee Decl., Exh. 2 [Zawadski Tr. at 60:23-62:24].) Having explored this topic, Intus cannot now claim prejudice from RTZ's presentation of the same evidence at trial.

### 4. FRE 403 Does Not Require Exclusion.

The probative value of accelerated market entry evidence is substantial: it goes to the heart of RTZ's theory of liability and damages under its Counterclaim. Any potential prejudice is not "unfair" within the meaning of Rule 403 because the evidence directly proves elements of RTZ's claims—namely, that Intus obtained an improper competitive advantage through unauthorized access to PACECare. See *United States v. Curtin,* 489 F.3d 935, 943-945 (9th Cir. 2007) (en banc) (Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case.).

### B. Evidence of Capital Raises Is Admissible

#### 1. The Evidence Is Relevant to Intus's Motive and Conduct Under FRE 401 and 402.

Intus's capital raises are not offered as generic evidence of wealth or ability to pay. Rather, this evidence is directly probative of Intus's motive for aggressively—and improperly—accessing PACECare and installing unauthorized automated scripts ("bots") to accelerate CareHub's development and secure customers. Intus's reliance on private equity financing created pressure to rapidly bring CareHub to market, which explains why Intus acted as it did. This goes to intent, motive, and the merits of RTZ's counterclaims under the California Comprehensive Data Access and Fraud Act ("CDAFA"), Computer Fraud and Abuse Act ("CFAA"), trespass to chattels, and inducement of breach of contract. Fed. R. Evid. 401, 402.

#### 2. The Evidence Exists Independent of Schwechheimer's Report.

This evidence was produced by Intus itself in discovery (Bates Nos. Intus 014789, 014799, 014830) and is supported by deposition testimony from Intus's own witnesses John Robert Felton and Evan Jackson, who discussed Intus's capital raises and their connection to CareHub's rapid development. The admissibility of fact evidence and business records does not

-9-

depend on whether a particular expert adopted that evidence in his report. The fact that Schwechheimer did not quantify the role of capital raises does not render inadmissible the documents Intus produced and the testimony its own witnesses gave.

### 3. Intus's Cited Authority Is Distinguishable.

The authorities Intus cites—*United States v. Mitchell*, 172 F.3d 1104, 1110 (9th Cir. 1999); *Borchik v. State Farm Mut. Auto Ins. Co.*, 2026 WL 910189 (D. Nev. Jan. 23, 2026); *Shenon v. New York Life Ins. Co.*, 2020 WL 1317722 (C.D. Cal. Mar. 16, 2020); *United States v. Bowen*, 857 F.2d 1337 (9th Cir. 1988)—all involved generalized evidence of a party's relative wealth or financial condition that was untethered to any substantive issue in the case. Here, by contrast, the capital-raise evidence is directly probative of Intus's motive and conduct—it explains why Intus engaged in the very acts that form the basis of RTZ's counterclaims. The Rule 403 balancing thus favors admission: the probative value as to motive and intent is high, and any prejudice is not "unfair" because the evidence is tied to contested issues of fact.

### C. Evidence of Credential-Sharing Practices Is Admissible

### 1. Intus's Motion Fails to Identify Specific Evidence for Exclusion.

As a threshold matter, Intus's motion is impermissibly vague. A motion in limine must identify specific evidence to be excluded, not sweep broadly across entire categories. See *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (A motion in limine should not be used to resolve factual disputes or weigh evidence.). Intus's generalized request to exclude all evidence of "alleged industry norm violations" fails to put RTZ on adequate notice of what specific testimony or exhibits are at issue.

### 2. The Court's Order Already Permits Industry-Standards Testimony.

The Court's Order (Dkt. 203) affirmatively permits RTZ's expert Traci Creegan to testify regarding industry standards and whether the parties complied with them, including as relevant to the "manner exception" issue. Intus's motion effectively asks this Court to revisit and narrow a ruling it has already made. That request should be denied.

///

70577222.v3

### 3. The Credential-Sharing Evidence Is Directly Relevant to RTZ's Counterclaims.

The specific credential-sharing evidence at issue is not a "freestanding" industry-custom opinion. It is concrete, fact-based evidence directly tied to the elements of RTZ's CDAFA and CFAA counterclaims, which require proof of Intus's unauthorized access to PACECare. Specifically:

- The PACECare User Agreement expressly restricts and prohibits the sharing of login credentials among users (*See* Lee Decl., Exh. 1);

- RTZ's NDA requirement for PACECare access was intended, in part, for security purposes, as reflected in Zawadski's deposition testimony (Lee Decl., Exh. 2 [Zawadski Tr. at 65:24-67:16].);

- Intus's own witnesses—John Robert Felton and Evan Walters—testified regarding Intus's credential-sharing practices (Lee Decl., Exh. 3 (Felton Dep. at 236:19-237:18), 4 (Walters Dep. at 91:3-25; 92:19-93:22); and

- Intus's own retained expert, Shawn Fleury, acknowledged that such credential-sharing practices are improper. (Lee Decl., Exh. 5 (Fleury Dep. at 120:21-121:14.)

This evidence is relevant under FRE 401 and 402 because it tends to prove that Intus accessed PACECare without authorization—a central element of RTZ's CDAFA and CFAA claims—and because it establishes the security rationale behind RTZ's contractual NDA and credential-restriction requirements, which bears directly on the "manner exception" issue.

## II. RTZ'S OPPOSITION TO INTUS'S MIL NO. 2

Intus asks this Court to surgically excise from the trial record all evidence of Intus's attempt to acquire RTZ. The motion should be denied. The acquisition attempt is not a collateral sideshow—it is an integral chapter in the continuous course of dealings between these parties that this Court has already recognized as material. This Court's Order denying Intus's Motion for Partial Summary Judgment (Dkt. 84) specifically cited Intus's "pivot" to acquisition discussions as part of the negotiation history bearing on whether RTZ satisfied the Manner Exception under the 21st Century Cures Act. (Dkt. 84, 2-3.) And Magistrate Judge Tse's Discovery Order (Dkt. 96) held that Intus's development of its competing CareHub EMR system is relevant—a narrative that cannot be understood without the failed acquisition that precipitated Intus's pivot to building

-11-

70577222.v3

its own platform. Far from being irrelevant or unfairly prejudicial, this evidence is necessary to explain RTZ's conduct, Intus's shifting motivations, and the full context of the parties' dealings. Intus itself concedes the discussions were conducted "in good faith," and Intus's own CEO testified extensively and voluntarily about the acquisition at deposition. The Court should deny the motion in its entirety.

## A. Legal Standard

A motion in limine is "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Luce v. United States*, 469 U.S. 38, 41 (1984). Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. All relevant evidence is admissible unless excluded by a specific rule. Fed. R. Evid. 402. The Court may exclude relevant evidence under Rule 403 only if its probative value is *substantially* outweighed by a danger of unfair prejudice, confusing the issues, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. The Rule 403 balance tips heavily in favor of admissibility, and exclusion is "an extraordinary remedy to be used sparingly." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995); *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) (The district court has "wide latitude" in Rule 403 decisions, but that latitude is not unlimited.)

## B. Argument

### 1. The Acquisition Evidence Is Relevant Under Rules 401 And 402.

#### a. The Acquisition Attempt Provides Essential Context for Intus's Shifting "Ask" and the Reasonableness of RTZ's Response.

Between 2021 and 2023, Intus directed a blizzard of overlapping and evolving demands at RTZ: automated data-extraction requests, proposed "Access Agreements," a "Data Integration and/or Data Extraction Agreement," a formal "Business Case" proposing a partnership, NDA redlines—and ultimately a formal acquisition offer. This shifting parade of asks created genuine ambiguity about what Intus actually sought from RTZ at any given moment.

That ambiguity is directly relevant to RTZ's Manner Exception defense under 45 C.F.R. § 171.301(a)(1). The central question under the Manner Exception is whether RTZ "cannot reach

70577222.v3

agreeable terms with the requestor to fulfill the request in the manner requested." 45 C.F.R. § 171.301(a)(1).This Court held at summary judgment that whether RTZ was "more unwilling than unable to reach a mutually agreeable solution with Intus" is "a disputed question of material fact." (Dkt. 84 at 8:26-28 (quoting *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, No. 8:24-cv-00313-PX, 2024 WL 3569493, at *10 (D. Md. July 29, 2024)). To resolve that question, the jury must understand the full spectrum of Intus's demands—including the acquisition attempt—that confronted RTZ during the relevant period.

RTZ's former CEO, Michael Zawadski, testified at deposition that he questioned whether Intus's latest position was "the final-final and we dig in, or do we wait for more evolution of the ask," and confirmed that "indeed, they eventually then switched to try to buy us." (Lee Decl., Exh. 2 [Zawadski Tr. at 53:13–57:4; 95:22–96:2].) RTZ's expert, Traci Creegan, addresses this shifting-ask context in her report, opining that the overlapping and evolving nature of Intus's demands—including the acquisition offer—is directly relevant to evaluating whether RTZ's responses were reasonable. (Dkt. No. 183-2, Creegan Rep. ¶¶ 81-82].) Excluding the acquisition evidence would leave the jury with a misleading, sanitized version of the parties' dealings and deprive RTZ of critical evidence supporting its defense.

### b. This Court Has Already Recognized the Materiality of the Acquisition Evidence.

This Court's Order Denying Plaintiff's Motion for Partial Summary Judgment (Dkt. 84) specifically recounted and cited to RTZ's allegation that Intus "pivoted and sought to negotiate an acquisition of RTZ" after "refus[ing] to meaningfully negotiate the NDA." (Dkt. 84 at 3:2-5 (quoting Dkt. 62-2 ¶¶ 5–6).) The Court cited to RTZ's counterclaim noting that "[w]hen those negotiations failed, Intus abandoned any and all NDA discussions with RTZ." *Id.* The Court then held that whether RTZ was "unable to reach agreement with Intus—because of Intus's withdrawal from negotiations or otherwise—or whether RTZ was 'more unwilling than unable to reach a mutually agreeable solution with Intus,' is a disputed question of material fact." (Dkt. 84 at 8:25-28.)

///

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

In other words, this Court has already determined that the sequence of NDA negotiations → acquisition pivot → abandonment of negotiations is part of the material factual dispute the jury must resolve. Intus cannot now ask the Court to exclude from the jury the very evidence that this Court found sufficient to defeat summary judgment. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (relevance determinations "depend on the particular circumstances of each case" and the factual context of the dispute).

### c. The Acquisition Evidence Is Relevant to Intus's Development of CareHub.

Magistrate Judge Tse's Discovery Order (Dkt. 96) held that Intus's CareHub EMR system—its competing product—is relevant to damages because "CareHub is one of the fruits of Intus's alleged unauthorized access of PACECare." (Dkt. 96 at 1.) The Court overruled Intus's relevance objections to 19 RFPs (Nos. 66–84) relating to CareHub's "development, functionality, and use." (*Id.*)

The acquisition attempt is integral to the CareHub narrative. Intus's CEO, John Robert Felton, testified at deposition that the decision to file Intus's ONC information-blocking complaint came "sometime between when acquisition discussions fell through and the filing of the complaint." (Lee Decl., Exh. 3 [Felton Tr. at 190:15–23].) Felton further described in detail the acquisition process: Intus submitted a formal Indication of Interest ("IOI"), internally code-named "Project Justice League"; initiated due diligence; obtained board approval; and met in person with RTZ's CEO in California. (Lee Decl., Exh. 3 [Felton Tr. at 176:10–25].) RTZ's rejection of the acquisition offer explains Intus's subsequent pivot to developing its own competing EMR product. Without this evidence, the jury cannot understand *why* Intus abandoned negotiations, filed a regulatory complaint, and commenced development of CareHub.

Evidence that provides necessary context for a party's subsequent conduct and explains its motivation is plainly relevant. *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-1013 (9th Cir. 1995) (evidence admissible to complete the comprehensible story of the crime on trial by proving its immediate context and the full sequence of events); *United States v. Dorsey*, 677 F.3d 944, 951-953 (9th Cir. 2012) (Evidence that is "inextricably intertwined," provides

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

context for other evidence, or helps complete the story presented to the jury is relevant.).

### d. The Acquisition Evidence Is Part of One Continuous Narrative.

The parties' dealings form one continuous, interconnected series of events: NDA negotiations, the Business Case proposal, the acquisition offer, failed negotiations, Intus's ONC complaint, and this litigation. These events are inextricably linked and cannot be artificially severed without presenting a misleading, truncated picture to the jury. *See Old Chief v. United States*, 519 U.S. 172, 187 (1997) (recognizing the legitimate need for evidence in all its particularity to "tell a colorful story with descriptive richness"); *Dorsey*, 677 F.3d at 951-952. Excluding the acquisition attempt would leave a conspicuous gap in the chronology, forcing RTZ to present an incomplete and distorted account of its dealings with Intus.

### 2. The Evidence Should Not Be Excluded Under Rule 403.

Intus's Rule 403 argument fails for multiple reasons. First, the probative value of the acquisition evidence is substantial, as demonstrated above: it bears directly on the Manner Exception, on Intus's motive and subsequent conduct, and on CareHub's development—all central issues at trial.

Second, there is no cognizable unfair prejudice. Intus's own motion concedes that the acquisition discussions were conducted "in good faith." (Dkt. 205 at 7:10-11.) There is nothing inherently prejudicial about evidence of a good-faith business discussion between sophisticated parties. The fact that Intus tried and failed to acquire RTZ does not cast Intus in an unfavorable moral light—it simply places its subsequent conduct (filing a regulatory complaint and building a competing product) in its proper context.

Third, Intus's own motion papers reveal that its real concern is not prejudice but weight. Intus states that "if RTZ were to raise the acquisitions at trial, Intus would need the opportunity to tell its side of the story." (Dkt. 205 at 7:15-17.) This concession demonstrates that the proper mechanism for addressing this evidence is cross-examination and rebuttal—not exclusion. *United States v. Scott*, 270 F.3d 30, 51 (1st Cir. 2001) ("…the availability of a less prejudicial method of proof is only a factor to be weighed in the Rule 403 inquiry and does not control in this case." [citing Fed. R. Evid. 403 Advisory Committee's Note ("The availability of other means of proof

*may also* be an appropriate factor.") (emphasis added); *see generally Old Chief v. United States,* 519 U.S. 172, 180–92, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (discussing the proper analysis of less prejudicial methods of proof)].) *See also United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (The availability of other means of proof may also be an appropriate factor for relevant evidence under Rule 403, rather than exclusion.).

Finally, any concern about a "sideshow" is vastly overstated. The acquisition evidence can be presented concisely and in focused fashion. The basic timeline—Intus proposed an acquisition, RTZ declined, and Intus then pivoted to other strategies—is straightforward and need not consume significant trial time. Any risk of distraction can be managed through focused presentation and, if necessary, a limiting instruction, rather than the "extraordinary remedy" of wholesale exclusion. *Mende*, 43 F.3d at 1302.

**3.  Intus Cannot Claim Prejudice From Evidence It Produced And Its Own CEO Testified About.**

Intus's claim of prejudice is further undermined by the undisputed fact that Intus itself placed the acquisition evidence squarely in this case. The documents relating to Intus's offer to purchase RTZ—including the IOI, the "RTZ Business Case," and related communications (*see, e.g.*, Lee Decl., Exh. 6 [RTZ0000807–808]; Exh. 7 [RTZ0008384])—were produced in the ordinary course of discovery.

Moreover, Intus's own CEO, John Robert Felton, testified extensively and voluntarily about the acquisition offer at his April 8, 2026 deposition. Felton described in detail the timeline, the "Project Justice League" IOI, the due diligence process, the board approval process, and the in-person meetings with RTZ's CEO. (Lee Decl., Exh. 3 [Felton Tr. at 164:20–22; 176:10–25].) Felton further testified—without objection—that the decision to file the ONC complaint came "sometime between when acquisition discussions fell through and the filing of the complaint." (Lee Decl. Exh. 3 [Felton Tr. at 190:15-23].)

A party that voluntarily produces documents on a subject and permits its CEO to testify at length about that subject without objection cannot credibly contend that the same evidence is so unfairly prejudicial or collateral that it must be excluded from trial. Intus's conduct throughout

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

this litigation is inconsistent with the position it now takes in this motion.

### III.    RTZ'S OPPOSITION TO INTUS'S MIL NO. 3

Intus's Motion in Limine No. 3 seeks to exclude all evidence and argument that Intus's access caused system strain or damage to RTZ's PACECare system. Intus's motion should be denied because (1) system strain is directly alleged in RTZ's counterclaim and supported by record evidence, (2) testimony from RTZ's former President Michael Zawadski identifies specific instances of strain, and (3) Intus's challenges go to the weight of the evidence—not its admissibility—and must be resolved by the jury.

#### A.    Argument

##### 1.    System Strain Is Relevant and Properly at Issue.

RTZ's counterclaim expressly alleges that Intus's unauthorized, automated access to PACECare caused system strain. (Dkt. 41 ¶¶ 15, 46–47, 56.) Evidence of system strain is relevant under Federal Rules of Evidence 401 and 402 because it has a direct tendency to make the fact of harm from Intus's conduct more probable, going to the heart of RTZ's counterclaim.

Critically, Intus's own CTO and co-founder, Alex Rothberg, conceded the strain risk in writing. In an April/May 2021 email chain, Rothberg proposed Intus's access approach to RTZ, writing: "*In order to reduce burden on our client's EHR systems (you), and to ensure uptime, our solution stores all of the information in our own databases*" and that Intus would pull data "*at a time that can be configured so as not to load [the system], such as 2am when client traffic is low.*" (Lee Decl., Exh. 8 [Depo. Exh. 63, Bates Intus 001464–001473].) This is a contemporaneous, party-admission-quality concession that Intus's automated access has the inherent potential to burden RTZ's system resources.

##### 2.    Zawadski's Testimony Supports RTZ's Position.

Michael Zawadski, RTZ's former President, testified to specific instances of system strain consistent with Intus's access. He testified that "any user is going to put strain on the system," that running the expanded export report was "a fairly intensive activity," and that during reviews, the report "came up as a big pig in the pipeline." (Lee Decl., Exh. 2 [Zawadski Tr. 142:8–143:15]) He further testified to "some sort of bursts and speed issues" during the period Intus was

70577222.v3

surreptitiously accessing PACECare. (*Id.* at 143:16–144:5.)

Intus mischaracterizes this testimony. While Zawadski acknowledged he could not definitively isolate whether Intus or clients were running the report at a given moment, he affirmatively testified that automated, credential-based access—precisely the method Intus admittedly used—is inherently strain-inducing. The timing of these "bursts and speed issues" correlating with Intus's undisclosed access creates a triable factual dispute, not grounds for exclusion.

### 3.  Intus's Motion Goes to Weight, Not Admissibility.

Intus's central challenge—that Zawadski could not attribute strain exclusively to Intus—attacks the *sufficiency* and persuasiveness of RTZ's evidence, not its admissibility. A motion in limine is not the proper vehicle to resolve such disputes. The Federal Rules of Evidence set an intentionally low bar: evidence is relevant if it has "any tendency to make a fact more or less probable." Fed. R. Evid. 401. Relevant evidence is admissible. Fed. R. Evid. 402. RTZ's system strain evidence plainly satisfies this threshold.

The Supreme Court has long held that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). "The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose." *Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871, 893 (N.D. Cal. 2025) (citing *Ochoa v. Cnty of Kern*, 628 F. Supp. 3d 1006, 1010 (E.D. Cal 2022)). But a motion in limine should not be used to resolve factual disputes or weigh evidence "because that is the province of the jury." *Gray v. Clark*, 654 F.Supp.3d 1062, 1067-1068 (E.D. Cal 2023) (citing *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008) and *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000)).  As that case noted, "[t]he Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose." *Id.* (citing *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

Intus's real complaint is that Zawadski's testimony is not sufficiently precise to conclusively establish causation. But that is a merits question for trial—not a pretrial evidentiary gatekeeping question. Whether the jury finds Zawadski's testimony persuasive is for the jury alone to determine through its constitutionally reserved fact-finding role. Credibility determinations, the weighing of conflicting testimony, and the assessment of whether imprecise or circumstantial evidence is sufficient to establish a fact are the exclusive province of the jury. Granting this motion would usurp that function and improperly deprive RTZ of the opportunity to present its case.

Intus will have a full opportunity to challenge this evidence through cross-examination and competing testimony at trial. That is where such disputes belong—not in a pretrial motion that seeks to prevent the jury from hearing the evidence at all.

## IV.    RTZ'S OPPOSITION TO INTUS'S MIL NO. 4

Plaintiff Intus Care, Inc. ("Intus") seeks, through its Motion in Limine No. 4, to exclude evidence that Intus's unauthorized receipts and use of login credentials to access RTZ's PACECare system does not constitute a violation of the anti-hacking statutes. The motion should be denied in its entirety.

### A. Argument

#### 1. Login Credential Sharing Evidence Is Admissible

##### a.    This Argument Is Duplicative and Has Been Resolved by the Court.

Intus's request to exclude credential-sharing evidence is duplicative of arguments already raised in its Motion in Limine No. 1 and should be denied for the same reasons articulated in RTZ's opposition to that motion. Furthermore, this Court has already substantially resolved this issue. In its July 8, 2026 Order (Dkt. 203), the Court held that RTZ's expert Traci Creegan "may . . . testify as to industry standards and whether the parties complied with them," specifically referencing Creegan's testimony on "user access and credential management." (*See* Dkt. 203 at 6:5-14, citing Creegan Report ¶¶ 97, 100). The Court explained that such evidence is relevant because the jury must consider, under the Cures Act's "manner exception," whether RTZ made

70577222.v3

"at least some reasonable efforts" to reach an agreement to share information. (*Id.* Dkt. 203 at 6:16-18) (citing *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 233 (4th Cir. 2025)).

### 2. Evidence Of Unauthorized Access Is Admissible

#### a. The Authorization Issue Is an Essential Element of RTZ's Counterclaims.

Intus's motion to preclude RTZ from presenting evidence that Intus's access was "unauthorized" is remarkable in its breadth. RTZ's Answer and Counterclaims (Dkt. 41) allege throughout—including its claims for violation of the California Comprehensive Data Access and Fraud Act (Cal. Penal Code § 502), the Computer Fraud and Abuse Act (18 U.S.C. § 1030), and trespass to chattels—that Intus accessed PACECare "without RTZ's consent or authorization." *See, e.g.*, Dkt. 41 ¶¶ 12–14, 43, 53, 71, 86. Whether Intus's access was authorized is not merely relevant—it is an essential element of RTZ's counterclaims that the jury must decide. Evidence of lack of authorization is therefore plainly admissible under Federal Rules of Evidence 401 and 402.

Intus cites to *U.S. v. Nosal* (*Nosal I*), 676 F.3d 854 (9th Cir. 2012), *ExactLogix, Inc. v. JobProgress, LLC*, 508 F. Supp. 3d 254 (N.D. Ill. 2020), and *Lateral Link Grp., LLC v. Springut*, 2016 WL 11785212 (C.D. Cal. 2016) for the overstated proposition that password or credential sharing is not deemed "unauthorized access" under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, and California's Comprehensive Computer Data Access and Fraud Act (CDAFA), Cal. Penal Code § 502.  Intus's argument misapprehends the law as well as the facts at issue in this case.

Under the CFAA and CDAFA, access using login credentials that <u>were never authorized by the system owner</u> constitutes "without authorization" or "without permission." The controlling principle, established by the Ninth Circuit and confirmed by the Supreme Court, is that authorization flows from the system owner (here RTZ) – not from individual users or credential-holders who share access. A person who uses credentials to access a password-protected system without the system owner's permission acts "without authorization" regardless of whether those

-20-

credentials were stolen, voluntarily shared by an authorized user, or obtained through other means.

The Supreme Court in *Van Buren v. United States*, 593 U.S. 374 (2021), interpreted the CFAA's "exceeds authorized access" clause, adopting a "gates-up-or-down" approach under which liability under both the "without authorization" and "exceeds authorized access" clauses stems from whether one can or cannot access a computer system. The Ninth Circuit applied this framework in *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022), explaining that "it appears that the CFAA's prohibition on accessing a computer 'without authorization' is violated when a person circumvents a computer's generally applicable rules regarding access permissions, such as username and password requirements, to gain access to a computer." (*hiQ Labs*, 31 F.4th at 1180, 1201.) This is particularly true in the context of a "private" system that contain data that is not publicly available. (*Id.* at 1200-1201.) In the context of the CFAA, the "without authorization" concept does not apply to public websites (which PACECare is not). (*Id.* at 1199.) The courts acknowledge, access to a system and the authorization to access that system flows from the system owner. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016) (holding that after a system owner explicitly revokes authorization, user permission alone is insufficient to authorize continued access to the system owner's computers – "Permission from the users alone was not sufficient to constitute authorization after Facebook issued the cease and desist letter."). See also, *United States v. Nosal*, 930 F.Supp.2d 1051, 1061 (N.D. Cal. 2013 ("without authorization" is established under the CFAA even though the assistant willingly provided her access credentials to defendant, because authorization depends on the actions of the system owner, not the consent of users who share credentials); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) ("a person uses a computer 'without authorization' under §§ 1030(a)(2) and (4) when the person has not received permission to use the computer for any purpose…"); *Multiven, Inc. v. Cisco Systems, Inc.*, 725 F.Supp.2d 887, 892 (N.D. Cal. 2010) (where (as here) the credential-sharing violates the system owner's policies, or where the system owner has never authorized the accessing party at all, the access is "without authorization" regardless of whether the credential-holder consented to the sharing.)

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

The CDAFA is even broader in scope.  As the Ninth Circuit has acknowledged, "In contrast to the CFAA, the California statute does not require *unauthorized* access. It merely requires *knowing* access." *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). As observed in that case, "[w]hat makes that access unless is that the person "without permission takes, copies, or makes use of" data on the computer." (*Id.*)

Simply put, Intus's argument launches from defective starting point, i.e., presupposing that it is the customer's "authorization" for Intus to access the system that guards Intus against liability under the CFAA and CDAFA. That in incorrect.  The plain fact is that **<u>RTZ</u>** – as the system owner – never authorized Intus's access to PACECare.

**b.      The Credential-Sharing Evidence Is Independently Admissible Under FRE 401 and 402.**

Even setting aside the above arguments, the credential-sharing evidence satisfies the broad relevance standard of Federal Rules of Evidence 401 and 402. Evidence is relevant if it has "any tendency" to make a fact of consequence more or less probable. Fed. R. Evid. 401. The credential-sharing evidence is relevant to multiple disputed issues, including RTZ's counterclaims for unauthorized computer access and trespass to chattels and RTZ's defense under the Cures Act's manner exception.

**Security Purpose of RTZ's NDA Requirement.** RTZ's requirement that third parties execute a non-disclosure agreement before accessing PACECare was intended, in part, for security purposes. RTZ's Answer and Counterclaims (Dkt. 41, ¶ 7) allege RTZ required a signed NDA to safeguard its proprietary system and prevent unauthorized credential use. RTZ CEO Michael Zawadski's sworn declaration (referenced in Dkt. 84 at 1:16-2:1; Dkt. 62-2) explains that RTZ "never consented to or knew about Intus's use of automated scripts" and "never authorized Intus—or any third party—to develop, deploy or use bots or automated scripts to scrape its system for data." (*Id.,* citing Zawadski Decl. ¶ 11).

**The PACECare Agreement Expressly Prohibits Credential Sharing.** The PACECare Agreement at Section 7.1, expressly prohibits clients from providing "account credentials or other form of access to PACECare" to third parties, specifically naming Intus as one of the

- 22 -

barred competitors. (Lee Decl., Exh. 1.) Intus's own rebuttal expert, Shawn Fleury, confirmed that Section 7.1 is "a prohibition imposed by RTZ against allowing its customers to provision account log-in credentials to third parties." (Lee Decl., Exh. 5 [Fleury Tr. 61:5–12].)

**Intus's Own Witnesses Admitted Credential-Sharing Practices.** Intus's witnesses have testified extensively about credential-sharing practices. Evan Walters (Intus staff engineer/former VP) testified that Intus accessed PACECare "[u]sing a customer's . . . employee's credentials" (Lee Decl., Exh. 4 [Walters Tr. 57:18–58:19]), and that a "credential issuance section" was built into Intus's PopHealth app because customers "are a little bit loose in how they are sharing credentials" (*Id*. at 224:8–225:4.) Robbie Felton (Intus CEO) testified that when personally issued PACECare credentials, he would not access PACECare himself but would simply "give the credentials to our team." (Lee Decl., Exh. 3 [Felton Tr. 236:15–237:2].) And Intus's own expert Fleury acknowledged that shared credential use "definitely is not best practice," "could be a violation" of the HIPAA Security Rule's unique-user-identification requirement, and that "sharing credentials among multiple unnamed users undermines the ability to monitor, attribute, or audit user activity." (Lee Decl., Exh. 5 [Fleury Tr. 121:8–123:14].)

### b.    Intus Has Put Authorization Squarely at Issue Through Its Own Pleadings.

Intus's own operative Amended Complaint (Dkt. 25) affirmatively alleges, in paragraphs 2 and 14, that "[w]ith RTZ's knowledge and consent, Intus obtained the electronic health records data stored on PACECare." The Felton Declaration (Dkt. 56-1, ¶ 13) similarly asserts that Intus obtained the data "with RTZ's knowledge." These are party admissions under Federal Rule of Evidence 801(d)(2)(A) that Intus has placed squarely at issue. Fed. R. Evid. 801(d)(2)(A). RTZ is entitled under FRE 401 and 402 to introduce contrary evidence—including Zawadski's testimony consistent with his declaration stating that RTZ "never consented to or knew about Intus's use of automated scripts" and "never authorized Intus—or any third party—to develop, deploy or use bots or automated scripts to scrape its system for data" (Dkt. 84, citing Dkt. 62-2, ¶ 11)—to rebut and contest these pleaded allegations.

///

### c.   FRE 403 Does Not Warrant Exclusion.

Intus cannot establish unfair prejudice under FRE 403 merely because the evidence is unfavorable to its case. RTZ's evidence of lack of authorization is central—not tangential—to the claims and counterclaims the jury must decide, so any prejudice does not substantially outweigh probative value. *See Old Chief*, 519 U.S. at 180; *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009) ("Proof that evidence was prejudicial to one party is insufficient to establish that the prejudice was unfair, or that the trial court abused its discretion in weighing that prejudice against the evidence's probative value." (quoting *United States v. McDonald,* 576 F.2d 1350, 1356 (9th Cir.1978).). The Ninth Circuit has long held that FRE 403 favors admissibility of relevant evidence and that exclusion is an "extraordinary remedy." *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995). The evidence here is not the type that inflames or confuses a jury—it is straightforward factual evidence regarding whether Intus had permission to access RTZ's system. Any disputes regarding the weight or credibility of this evidence are properly resolved by the jury, not through exclusion.

## V.    RTZ'S OPPOSITION TO INTUS'S MIL NO. 5

Intus's Motion in Limine No. 5 ("Motion" or "MIL 5") asks this Court to issue a blanket order prohibiting RTZ, its counsel, and all witnesses from "arguing or alluding" to any claim that Intus withheld documents or was evasive in discovery. The Motion should be denied.

MIL 5 is deficient for at least four independent reasons. *First*, the Motion rests on an incomplete and one-sided presentation of the record, relying almost exclusively on isolated statements from RTZ's expert's report while ignoring the sworn deposition testimony of Intus's own witness, Evan Walters, who confirmed that Intus's access logs—directly responsive to RTZ's discovery requests—were destroyed when the system that generated them was "torn down and rebuilt." *Second*, the record establishes that Intus destroyed these access logs notwithstanding a preservation obligation that attached no later than September 2022 and a specific Request for Production served in May 2024—months before the destruction occurred. *Third*, CACI Jury Instructions Nos. 203 and 204—both included among RTZ's proposed jury

-24-

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

instructions in this action—expressly authorize the very arguments Intus seeks to preclude. Granting MIL 5 would improperly nullify instructions this Court may give to the jury. *Fourth*, the Motion's requested relief is materially overbroad, conflating discovery history, expert opinion bases, and trial admissibility into a single exclusionary order that is unsupported by law or fact.

### A. Argument

#### 1. Intus's Motion Rests on an Incomplete and One-Sided Record.

Intus's Motion relies almost exclusively on two paragraphs from Peter Schwechheimer's expert report observing a "paucity of information" regarding Intus's business operations and CareHub sales data. From this narrow foundation, Intus asks the Court to prohibit all argument or allusion to document withholding or evasiveness. In its motion, Intus conveniently omits the fact that at the time Schwechheimer's expert report was disclosed, Intus had yet to produce the 5,000 pages of CareHub materials it highlights – those materials were produced only after his report. As such, Schwechheimer's account was accurate and substantiated.

But more to the point, Intus's characterization of a clean discovery record is directly contradicted by its own witness. Evan Walters—Intus's staff software engineer and former Vice President of Data and Infrastructure—testified at his March 16, 2026 deposition that Intus's access logs reflecting its access to RTZ's PACECare system are "no longer available." (Lee Decl., Exh. 4 [Walters Tr. 61:22-62:18].) When asked why, Mr. Walters explained that "the system that orchestrates access had been completely torn down and rebuilt," and that he "knew for a fact that [the access logs] didn't exist." (*Id.* at 66:21-67:5.) Mr. Walters testified this occurred at "the end of—yeah, it must have been the beginning of 2025, end of 2024." (*Id.* at 67:6-10.) He further confirmed that "if we had access logs, we could have gotten the information that you wanted from them, but we didn't have access logs" and that the depository of information "was essentially eliminated when [Intus] moved to the new system." (*Id.* at 72:25-73:16.)

Intus's Motion does not acknowledge, let alone address, Mr. Walters's testimony. This omission is fatal to the Motion's premise. A motion in limine is not a vehicle to resolve or

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

foreclose genuinely disputed factual questions. A motion in limine must identify specific evidence to be excluded, not sweep broadly across entire categories. See *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (A motion in limine should not be used to resolve factual disputes or weigh evidence.).  Where, as here, the evidentiary record is genuinely contested—with Intus's own witness confirming that directly responsive evidence was destroyed—the proper course is to allow the jury to hear the competing evidence and draw its own conclusions.

### 2.    The Record Supports an Argument for Spoliation Notwithstanding a Litigation Hold.

The destruction of the PACECare access logs did not occur in a vacuum. The undisputed timeline establishes that Intus was under an affirmative obligation to preserve these logs long before they were destroyed:

**September 14, 2022:** RTZ's counsel sent a cease-and-desist letter demanding that Intus "preserve all communications and documents (both internal and external) relating to each and every instance of Intus's access to RTZ's PACECare software, including but not limited to, all emails, texts, notes, IMs, chat logs, work files, project files, and shared materials." The letter further stated: "we insist that Intus discontinue any retention/destruction policies or systems that would or could result in the destruction of such evidence. Obviously, Intus's destruction/loss/deletion/alteration of such communications and documents would constitute spoliation of evidence."  (Lee Decl., at Exh. 12 [Depo. Exh. 48].)

- **February 23, 2024:** Intus filed its Complaint, initiating this litigation. (Dkt. 25)
- **May 24, 2024:** RTZ served its Request for Production of Documents, Set One. Request No. 40 specifically sought: "All logs RELATING TO YOUR access of any RTZ systems (including but not limited to PACECare) from January 1, 2018 to the present."
- **End of 2024/Beginning of 2025:** Per Mr. Walters, Intus's system that generated and stored the PACECare access logs was "torn down and rebuilt," and the access logs were lost.

-26-

70577222.v3

Thus, the access logs were destroyed *after* RTZ's September 2022 preservation demand, *after* this litigation was filed, and *after* RTZ served a discovery request that specifically and unambiguously sought those very logs. The destruction occurred notwithstanding each of these independent triggers for Intus's preservation obligation.

Mr. Walters's testimony compounds the concern. When asked whether he had "ever heard of a litigation hold," Mr. Walters answered: "No." (Lee Decl. Exh. 4 [Walters Tr. 67:11-23].) When counsel explained that a litigation hold is "a directive to retain information about matters related to a pending or threatened litigation" and asked whether he had been told about one, Mr. Walters again answered: "No." (*Id.* at 67:11-23).) That Intus apparently failed to communicate a litigation hold to the very engineer responsible for the system that stored the access logs—while that system was being "torn down"—is powerful evidence bearing on whether the destruction was willful or negligent. This is precisely the type of evidence the jury is entitled to weigh.

Whether the destruction was innocent, negligent, or willful is a question of weight and credibility for the jury—not a basis for exclusion in limine. MIL 5 would improperly prevent RTZ from presenting this evidence and arguing its significance.

### 3.    CACI Nos. 203 and 204 Expressly Sanction the Argument Intus Seeks to Preclude.

RTZ's proposed jury instructions in this action include CACI Nos. 203 and 204, which directly authorize the arguments Intus seeks to bar: (1) **CACI No. 203 (Party Having Power to Produce Better Evidence):** *"You may consider the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence"*; and (2) **CACI No. 204 (Willful Suppression of Evidence):** *"You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party."*

These instructions exist precisely to address the situation presented here: a party that had the ability to produce evidence (access logs showing who accessed PACECare, when, and how often) but failed to do so. Under CACI No. 203, the jury may "distrust" the weaker evidence

70577222.v3

Intus has offered in place of the logs. Under CACI No. 204, if the jury finds Intus intentionally concealed or destroyed the access logs, it may infer the logs would have been unfavorable to Intus.

Granting MIL 5 would effectively nullify these jury instructions before the jury instruction conference and before the evidence is presented at trial. A party cannot use a motion in limine to preemptively bar its opponent from making arguments that are expressly contemplated by the applicable pattern jury instructions. The Court should not decide, on a pretrial motion, that RTZ may never comment on the absence of the access logs or the circumstances of their destruction—particularly where the jury may ultimately be instructed that it can draw adverse inferences from that very absence.

## VI.    RTZ'S OPPOSITION TO INTUS'S MIL NO. 6

Intus's Motion in Limine No. 6 seeks to preclude any argument at trial that RTZ is entitled to lost profits stemming from three cancelled contracts. This motion should be denied for a straightforward reason: it asks the Court to preclude a legally cognizable damages theory that this Court has already considered and upheld—twice.

### A.  Factual and Procedural Background

RTZ developed and licenses PACECare, a proprietary electronic medical records ("EMR") software system designed for Programs of All-Inclusive Care for the Elderly ("PACE") facilities. RTZ's counterclaims allege that Intus engaged in a sustained course of unauthorized access to RTZ's PACECare system and extracted proprietary data to study the system's "functionality, operability, layout, interfaces, data presentation and report-generating capabilities" in order to "expedite and refine its own development of a competing EMR system." (Dkt. 41, Countercl. ¶ 45.)

### B.  Argument

#### 1.  RTZ Is Entitled to Recover Lost Profits and Revenues Under Its Counterclaims.

RTZ's counterclaims assert violations of the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; the Computer Fraud and Abuse Act ("CFAA"), 18

-28-

70577222.v3

U.S.C. § 1030; and trespass to chattels—each of which supports recovery of lost profits, lost revenues, and/or disgorgement damages arising from Intus's unauthorized access to PACECare. As RTZ demonstrated in its April 17, 2026 letter brief (Dkt. 112), RTZ is entitled to seek, at minimum: (1) costs from strain and load on RTZ's computer systems and resources expended to investigate, monitor, and address Intus's access activities; (2) the value of proprietary data Intus extracted from PACECare; (3) the value of customers RTZ lost to Intus and CareHub; and (4) disgorgement of profits Intus unjustly earned from CareHub.

### a. The California Computer Data Access and Fraud Act (Cal. Penal Code § 502)

The CDAFA authorizes "compensatory damages" and "other equitable relief" for victims of unauthorized computer access. Cal. Penal Code § 502(e)(1). Intus has repeatedly argued that CDAFA damages are limited to actual harm to a computer system or network—specifically, that the statute's reference to expenditures "reasonably and necessarily incurred … to verify" alteration, damage, or deletion constitutes an exhaustive definition of recoverable damages. This Court has already rejected that interpretation.

As Judge Chhabria held in *Lineberry v. AddShopper, Inc.*, "[t]his narrow interpretation of 'damage or loss' is not supported by the text of CDAFA." No. 23-CV-01996-VC, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025). The verification-expenditure provision "is best read as ensuring one type of damage is cognizable, not limiting damages to that alone." *Id.* A CDAFA claimant "may allege damage or loss from the misappropriation of their data, so long as they articulate that theory of loss in a concrete way." *Id.* Judge Tigar expressly adopted this reasoning holding that Intus's contrary interpretation is not supported by the statute's text. (Dkt. 136, at 3.)

Moreover, disgorgement is expressly contemplated as a remedy under the CDAFA. *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) ("Plaintiffs seek disgorgement under CDAFA, which is a remedy contemplated by the statute."). California law "recognizes a right to **disgorgement of profits** resulting from unjust enrichment," and a disgorgement theory "constitute[s] an injury sufficient to establish standing to bring claims for CDAFA violations." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d

-29-

589, 599–601 (9th Cir. 2020); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2024 WL 38302, at *6 (N.D. Cal. Jan. 3, 2024) (emphasis supplied). Critically, a plaintiff need not have suffered a corresponding loss to pursue disgorgement. *Rodriguez*, 2024 WL 38302, at *6 (quoting *In re Facebook*, 956 F.3d at 599–600). (See Dkt. 136.)

RTZ has articulated its CDAFA damages theory concretely: Intus's unauthorized access enabled it to develop CareHub rapidly and to poach RTZ's customers, resulting in lost customer revenue and unjust profits to Intus. This is precisely the type of "concrete" misappropriation theory that *Lineberry* contemplates.

### b.   The Computer Fraud and Abuse Act (18 U.S.C. § 1030)

The CFAA provides a private right of action for "compensatory damages and injunctive relief or other equitable relief" where the claimant suffers "loss" aggregating at least $5,000 in value during any one-year period. 18 U.S.C. § 1030(g). The statute defines "loss" expansively to include "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and **any revenue lost**, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11) (emphasis supplied).

Courts in this District have recognized the breadth of this definition. In *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 774 (N.D. Cal. 2017), the court applied § 1030(e)(11)'s expansive loss definition to encompass costs flowing from unauthorized access. The Ninth Circuit has likewise recognized that a victim of unauthorized access has a cognizable "stake in the profits garnered" from misappropriation of its proprietary data. *In re Facebook*, 956 F.3d at 600.

Intus previously cited *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019), for the proposition that CFAA losses must relate directly to computer intrusions. But *Andrews* does not foreclose RTZ's theory. RTZ's losses—including the revenue lost as a consequence of Intus's use of that access to develop CareHub and poach RTZ's customers—flow directly from Intus's unauthorized computer intrusions into PACECare. These are precisely the kinds of costs

-30-

70577222.v3

and consequential damages that § 1030(e)(11) is designed to remedy.

### c. Trespass to Chattels (CACI No. 2101)

RTZ's trespass to chattels claim independently supports recovery of lost profits as a measure of damages. Under CACI No. 2101 (Trespass to Chattel—Essential Factual Elements), a plaintiff must prove that the defendant intentionally interfered with the plaintiff's use or possession of personal property, that the plaintiff did not consent, and that the plaintiff was harmed. Cognizable harm under the instruction includes "deprivation of use of the property for a substantial time" or "*other measurable harm*." (Emphasis supplied.)

Intus's unauthorized access to PACECare constitutes an intentional interference with RTZ's possession and use of its proprietary computer system. The harm RTZ suffered is measurable and concrete: Intus's access enabled it to develop a competing product and divert RTZ's customers, causing lost revenues from the three cancelled contracts at issue. Lost profits and lost revenues flowing from the unauthorized interference with RTZ's chattel are a recognized measure of "other measurable harm" under CACI No. 2101. This instruction does not limit damages to physical harm to the chattel itself, but encompasses any measurable economic harm resulting from the trespassory interference—including the loss of business attributable to the defendant's exploitation of its unauthorized access.

### 2. The Court Has Already Considered and Rejected Intus's Arguments—Twice

The argument Intus advances in MIL No. 6—that RTZ cannot recover lost profits on a misappropriation theory—is not new. It is the same argument Intus raised in opposing RTZ's discovery requests, and it has been considered and rejected at both levels of this Court's review.

### a. Magistrate Judge Tse's April 23, 2026 Order (Dkt. 117)

In his April 23, 2026 Discovery Order, Magistrate Judge Tse squarely addressed and rejected Intus's argument. The Court held that "Intus cannot withhold responsive documents based on its contention that RTZ cannot recover damages on a misappropriation theory," finding that "such a theory may be actionable under the CDAFA." (Dkt. 117 at 1, citing *Lineberry*, 2025 WL 551864, at *2.)

///

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE
70577222.v3

The Court expressly acknowledged each of Intus's arguments—that *Lineberry* represents a "minority view that shouldn't be adopted" and that "RTZ flunks the second part of Judge Chhabria's test" because RTZ "hasn't identified its loss in 'a concrete way.'" (*Id.*) The Court was unpersuaded: "Intus may make these arguments at trial, but RTZ gets discovery on its misappropriation theory." (*Id.*) This ruling—that RTZ's misappropriation damages theory is legally cognizable and warrants full discovery and argument at trial—directly forecloses the relief Intus seeks in MIL No. 6.

### b.  Judge Tigar's May 11, 2026 Affirmance (Dkt. 136)

Unsatisfied with Magistrate Judge Tse's ruling, Intus filed a motion for relief under Federal Rule of Civil Procedure 72(a) (Dkt. 124), arguing that the magistrate judge's order was "contrary to law" because it "relies on an incorrect interpretation of available damages under CDAFA." Judge Tigar denied the motion in full. (Dkt. 136.)

Applying the deferential standard of review required under Fed. R. Civ. P. Rule 72(a)— which provides that a magistrate judge's non-dispositive order "must be deferred to unless it is 'clearly erroneous or contrary to law'"—Judge Tigar concluded that Magistrate Judge Tse's interpretation of CDAFA damages was correct. (Dkt. 136 at 2–3, citing *Grimes v. City and County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).) The Court held that the CDAFA's verification-expenditure provision "is best read as ensuring one type of damage is cognizable, not limiting damages to that alone," citing *Lineberry*, 2025 WL 551864, at *2. (Dkt. 136 at 3.)

Judge Tigar further held that RTZ's counterclaim allegations—that Intus exploited unauthorized access to PACECare to "expedite and refine its own development of a competing EMR system" (Dkt. 41, Countercl. ¶¶ 45, 53)—were sufficient to allege harm, finding that "Intus has not persuaded the Court that this is insufficient to allege RTZ's harm." (Dkt. 136 at 3.) He further quoted Mag. Judge Tse's finding that CareHub's "development, functionality, and use are relevant to damages" because CareHub is "one of the fruits of Intus's alleged unauthorized access of PACECare." (*Id.* at 1.)

///

///

-32-

70577222.v3

### 3.   MIL No. 6 Is an Improper Attempt to Relitigate Settled Issues

A motion in limine is a procedural mechanism to address the admissibility of evidence at trial. It is not a vehicle for relitigating substantive legal questions that the Court has already decided. Intus's MIL No. 6 does not identify any evidentiary issue or rule of evidence that would warrant exclusion. It does not argue that RTZ's lost-profits evidence is speculative, lacks foundation, or is otherwise inadmissible under the Federal Rules of Evidence. Rather, it asks the Court to hold—for a third time—that RTZ cannot, as a matter of law, recover lost profits on a misappropriation theory. That is the same legal question this Court has already resolved in RTZ's favor.

Court's prior rulings are precedential. Magistrate Judge Tse found RTZ's misappropriation damages theory legally cognizable and entitled to full discovery. Judge Tigar affirmed, holding that Intus's contrary interpretation of CDAFA damages was wrong as a matter of law. Intus has identified no intervening change in law, no new factual development, and no basis whatsoever for disturbing those determinations. The appropriate forum for Intus to challenge the sufficiency of RTZ's damages evidence at trial is through cross-examination of RTZ's witnesses and argument to the jury on the weight of the evidence—not through a motion in limine that improperly seeks to preclude RTZ from presenting a legally cognizable damages theory that this Court has already twice endorsed.

Indeed, Magistrate Judge Tse expressly contemplated that Intus could challenge RTZ's theory at trial: "Intus may make these arguments at trial…." (Dkt. 117 at 1.) The proper time for Intus to challenge RTZ's damages is at trial through the adversarial process—not by seeking wholesale preclusion of a theory the Court has already found actionable.

## VII.   RTZ'S OPPOSITION TO INTUS'S MIL NO. 7

Intus's Motion in Limine No. 7 seeks an order preventing RTZ from presenting testimony concerning the operational characteristics of health information exchanges ("HIEs"), health information networks ("HINs"), exchange architectures, interoperability frameworks, and related health IT concepts – the factual predicates to determining what is an "Actor."  Intus also improperly seeks to exclude all expert testimony on any issue in which there is a statutory

-33 -

70577222.v3

definition.

Intus attempts to transform the Court's narrow *Daubert* ruling (which excluded only Ms. Creegan's ultimate legal conclusion regarding "Actor" status) into a wholesale prohibition on *any* testimony regarding the factual and technical characteristics underlying that issue, as well as testimony concerning industry practices.  The motion should be denied, as the Court has already denied that relief in its *Daubert* Order.

### A.    Argument
#### 1.    The Motion Improperly Seeks to Relitigate and Expand the Court's *Daubert* Ruling that Expressly Permitted Testimony Regarding Industry Standards.

Intus seeks to expand the Court's *Daubert* ruling far beyond its actual scope. The Court held only that Ms. Creegan may not offer ultimate legal conclusions regarding whether RTZ qualifies as an "Actor" under the Information Blocking regulations. At the same time, the Court expressly held that RTZ may contest the Actor element at trial, and that Ms. Creegan may testify regarding industry standards and whether the parties complied with them.  (Dkt. 203 at 4 - 6.) MIL 7 asks the Court to effectively reverse these holdings by excluding the factual testimony upon which any Actor argument must rest.  A motion in limine is not a vehicle to relitigate, or expand, a *Daubert* ruling the Court has already made, much less to obtain what is effectively a dispositive ruling on a contested element. *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013) (a motion in limine "is not the proper vehicle for seeking a dispositive ruling"); *Jackson v. Cnty. of San Bernardino*, 194 F. Supp. 3d 1004, 1008 (C.D. Cal. 2016) (a motion in limine should not be used to resolve factual disputes.)

#### 2.    Creegan's Challenged Testimony Is Relevant to the Factual Predicates Underlying the Actor Definition.

While the Court's Order excluded Ms. Creegan from opining that RTZ is legally not an Actor, that does not mean that the jury must evaluate those issues in a factual vacuum.  Intus asserts that "Creegan should not be permitted to opine on whether RTZ is or is not an HIE/HIN." (Motion, at 15:8-10.)  However, this Court has already held that Creegan *may* "testify as to industry standards and whether the parties complied with them" because "[s]uch testimony [does] not improperly embrace" the ultimate issues. (Dkt. 203 at 6:5–7 (quoting *Hangarter*, 373

-34-

70577222.v3

F.3d at 1016).)  Here, the regulatory definition of HIN/HIE (45 C.F.R. § 171.102.) is itself built from factual and operational criteria: whether an entity (a) "determines, controls, or has the discretion to administer" a requirement or agreement (b) permitting exchange of EHI (c) "[a]mong more than two unaffiliated" entities "enabled to exchange with each other" (d) for treatment, payment, or healthcare operations.  Each element requires the jury to evaluate *facts*— system architecture, governance, connectivity—that lay jurors cannot assess without expert assistance.  Consistent with the Court's ruling, Creegan may testify regarding those factual and operational characteristics, industry terminology, interoperability concepts, and accepted industry practices. She may also offer factual observations regarding RTZ's operations and whether particular conduct is consistent with industry norms and practices.

Whether PACECare "enables" exchange "among" entities "with each other," or instead hosts discrete, single-client software instances connected, at most, by bilateral interfaces, is a technical question of system architecture that lay jurors cannot answer unaided. Creegan's challenged statements are factual descriptions of how the accused system moves data and how industry HINs/HIEs operate. This is precisely the testimony *Diaz* and *Hangarter* permit: an expert using regulatory terms in their "ordinary, everyday sense" to describe factual conditions and industry standards, without instructing the jury on the legal conclusion. 876 F.3d at 1199; 373 F.3d at 1016. Intus's argument that these descriptions are "untethered" from the statutory definition (Dkt. 205 at 16:1–8) ignores that they directly inform the jury's application of the Court's instructions on the statutory criteria. They are the evidentiary record against which the jury will apply the definition given in the Court's instructions, not a competing legal standard. Moreover, the Court's *Daubert* Order expressly permits such testimony: an expert "may offer opinions that touch on various . . . regulations, as long as [s]he can articulate [her] understanding of what each regulation requires based on [her] experience," stopping short of the ultimate legal conclusion. (Dkt. 203 at 5 (quoting *Snead*, 625 F.Supp.3d at 940).)

Intus's real complaint is semantic. The regulation says "unaffiliated," Creegan says "unrelated participants." 85 Fed. Reg. 25642, 25801 (May 1, 2020). That goes to weight: "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "[I]t is sometimes impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard." *United States v. Diaz*, 876 F.3d 1194, 1198 (9th Cir. 2017) (permitting expert testimony that used phrases that also appeared as elements in federal regulations because those phrases were used in their "ordinary, everyday sense" and assisted the jury.)  If the terms used by an expert witness do not have a specialized meaning in law and do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion.  (*Id.* at 1199.)  Ms. Creegan should be allowed to testify regarding industry practices and factual predicates while employing regulation phrases and terminology because it will assist the jury in understanding the technical aspects of the Cures Act.

Moreover, fairness requires the admission of Creegan's testimony.  The Court held that Intus "is entitled to present [its rebuttal expert Shawn] Fleury's testimony to counter Creegan's testimony regarding industry standards," including Fleury's opinions on "standard industry practice." (Dkt. 203 at 7–8.) Intus cannot claim industry-practice testimony for its own expert while denying the same category of testimony to RTZ.

## VIII.   RTZ'S OPPOSITION TO INTUS'S MIL NO. 8

Intus moves to exclude "any argument about Intus' alleged harm to other EMR systems." But the body of the motion reveals a different objective: Intus actually seeks to exclude evidence of any *access* to other electronic medical record ("EMR") systems— such as, for instance, its access to PACElogic and TruChart EMRs via automated scripts (bots). Such access to systems other than RTZ's PACECare system is not collateral; it is the very conduct pleaded in RTZ's counterclaim. (Dkt. 41 ¶¶ 45–46.)

Intus's assertion that there is "zero evidence" of its access to other EMR systems is demonstrably false. Intus's own CEO, its former VP of Data & Infrastructure, its Chief Revenue Officer, and its own business documents all confirm that Intus developed and deployed automated bots to extract data from PACElogic and TruChart—the same technique Intus used on RTZ's PACECare system. The motion should be denied.

## A.  Legal Standard

A court's authority to rule on motions in limine derives from its inherent power to manage the course of trials. *Luce v. United States*, 469 U.S. 38, 41 (1984). Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is admissible unless otherwise provided. Fed. R. Evid. 402. A court may exclude relevant evidence only if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis." *United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013) (quoting *United States v. Hankey,* 203 F.3d 1160, 1172 (9th Cir.2000).)

## B.  Argument

### 1.  Intus's Motion Mischaracterizes the Evidence It Seeks to Exclude.

The title of MIL No. 8 refers to "harm" to other EMR systems, but the motion's substance targets evidence of Intus's *access* to those systems. RTZ's counterclaim does not merely allege "harm"—it alleges that Intus engaged in unauthorized access of competing EMR systems to obtain competitive intelligence. (Dkt. 41 ¶¶ 45–46.) By reframing the issue as "harm," Intus obscures the actual relevance of the evidence: that Intus deployed automated bots on PACElogic and TruChart, just as it did on PACECare.

### 2.  Intus's "Zero Evidence" Assertion Is Demonstrably False.

Intus contends there is "zero evidence" regarding its access to other EMR systems. The record refutes this claim:

**John Robert Felton (Intus CEO)** testified that Intus deployed an automated script into PACElogic, a system owned by Tabula Rasa Health Care ("TRHC"), to extract data. (Lee Decl., Exh. 3 [Felton Tr. at 36:12–38:10].) Felton further confirmed that Intus had a "data access agreement" with TRHC covering PACElogic and TruChart, permitting "script-based integration"—i.e., bot access. (Lee Decl., Exh. 3 [Felton Tr. at 159:1-25].) He also testified that Intus was "only targeting programs who were on PACElogic, TruChart, and RTZ" for bot-based access, because other systems (Epic, eClinicalWorks, AthenaHealth) had public APIs rendering

-37-
70577222.v3

bots unnecessary. (Lee Decl., Exh. 3[Felton Tr. at 153:8–155:4].)

**Deposition Exhibit 114** (the "Business Case" document Intus provided to RTZ) states: "IntusCare and TRHC have a data access agreement that allows mutual IntusCare and TRHC customers to seamlessly integrate a program's EHR into IntusCare's services and software." (Lee Decl., Exh. 6 [RTZ0000807].)

**Evan Walters (Intus former VP of Data & Infrastructure)** confirmed that Intus developed automated scripts (bots) for PACElogic and TruChart. (Lee Decl., Exh. 5 [Walters Tr. at 75:10–14; 123:10–14].) He also confirmed Intus took screenshots of the PACElogic interface.

**Evan Jackson (Intus Chief Revenue Officer)** testified regarding Intus's deployment of bots in the TruChart EMR system. (Lee Decl., Exh. 9 [Jackson Tr. at 251:12–14].)

This is not "zero evidence." It is direct, sworn testimony from Intus's own officers and contemporaneous business documents.

### 3. The Evidence Is Relevant and Admissible Under Rules 401, 402, and 403, and Rule 404(b) Is Inapposite.

Intus invokes Federal Rule of Evidence 404(b), arguing that evidence of access to other EMRs constitutes improper "propensity" evidence. Fed. R. Evid. 404(b). That argument fundamentally mischaracterizes what RTZ offers this evidence to prove.

RTZ does not offer this evidence to show that Intus has a "character" for accessing EMRs and therefore "acted in conformity therewith" with respect to PACECare. Rather, Intus's bot-based access to PACElogic and TruChart is *direct evidence of the very conduct pleaded in RTZ's counterclaim*—namely, that "Intus . . . has engaged in the unauthorized access of competing EMR systems, including PACECare, to unfairly and improperly obtain competitive intelligence." (Dkt. 41 ¶ 45.) The access to PACElogic and TruChart is not an "other act" offered to prove propensity; it is itself a component of the course of conduct that RTZ has pleaded—that Intus systematically accessed competing EMR systems via bots to accelerate development of its own competing CareHub EMR product.

Because Rule 404(b) applies only when evidence of "other" acts is offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," it has no application here. Fed. R. Evid. 404(b). The access evidence is

-38-

offered under Rules 401 and 402 as direct, relevant proof of RTZ's pleaded claims. Fed. R. Evid. 401; Fed. R. Evid. 402.

Nor does Rule 403 warrant exclusion. Evidence that Intus deployed the same bot technology on multiple competing EMR systems is highly probative of RTZ's counterclaims (trespass to chattels, CFAA, CDAFA, inducing breach of contract) and its damages theory. Any prejudice to Intus is not "unfair"—it is the natural consequence of evidence showing that Intus did precisely what RTZ alleges. *See Anderson*, 741 F.3d at 950.

### 4. Intus Opened the Door to This Evidence.

Intus itself injected the relevance of its access to competing EMR systems into this case. The evidence establishes that Intus – during the midst of negotiating an NDA to access RTZ's PACECare system) pivoted and proposed a "Business Case" to RTZ, i.e., a business proposal whereby RTZ and Intus would jointly offer their respective services as a unified product/service offering to customers). In that Business Case document (Deposition Exhibit 114), Intus *touted* its existing data access agreement with a competitor, Tabula Rasa—covering the PACElogic and TruChart systems—as a selling point to induce RTZ to grant Intus similar access to PACECare. (Lee Decl. Exh. 6 [RTZ0000807].) Having used its access to competing systems as leverage to obtain the very access at issue in this litigation, Intus cannot now seek to preclude RTZ from probing that same subject. A party that introduces or relies upon a subject at issue may not use a motion in limine to bar the opposing party from responding to it.

### 5. RTZ Is Entitled to Introduce Evidence Supporting Its Pleaded Counterclaim Allegations.

Intus's own motion concedes that RTZ specifically pleaded its theory of unauthorized access to competing EMR systems. (Dkt. 41 ¶¶ 45–46.) Having survived the pleading stage, RTZ must be permitted to prove those allegations at trial. Excluding this evidence would effectively strike RTZ's counterclaim allegations without a proper motion or showing.

### 6. Intus's Reliance on *Huddleston v. United States* Is Misplaced.

Intus invokes *Huddleston v. United States*, 485 U.S. 681, 689 (1988), for the proposition that a party may not "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the [opposing party] only by unsubstantiated innuendo." That

70577222.v3

case is inapposite for two reasons.

First, *Huddleston* addresses the standard for admitting "similar acts" evidence under Rule 404(b)—a rule that, as shown above, does not govern here because RTZ does not offer this evidence to prove propensity. *Huddleston,* 485 U.S. at 685-687.

Second, this is not "unsubstantiated innuendo." *Id*. at 689. The evidence comes from Intus's own CEO (Felton), its own officers and engineers (Jackson and Walters), and its own business documents (Lee Decl., Exh. 6 [RTZ0000807].) It is direct, admitted testimony establishing that Intus developed and deployed automated bots on PACElogic and TruChart. There is nothing unsubstantiated about it.

## IX.    RTZ'S OPPOSITION TO INTUS'S MIL NO. 9

Intus's Motion in Limine No. 9 seeks to exclude all evidence and argument concerning Intus's alleged misrepresentation to Community at Home PACE ("Community PACE") that Intus was within the corporate "umbrella" of Tabula Rasa Health Care ("TRHC"). RTZ has alleged that Intus used this tactic as a means to gain unauthorized access to RTZ's PACECare system. This evidence is directly relevant to RTZ's counterclaims for unfair competition under California Business and Professions Code § 17200 and inducing breach of contract, and presents genuine, disputed questions of fact that are properly reserved for the jury. The motion should be denied.

### A.  Relevant Background

RTZ's counterclaims allege that Intus falsely represented to Community PACE—a customer common to both RTZ and Intus—that Intus was within the corporate umbrella of TRHC and therefore entitled to the same PACECare system access rights that RTZ had granted to TRHC under a non-disclosure agreement. *See* Answer and Counterclaims (Dkt. 41 at ¶¶ 33–40.) In fact, Intus was never part of TRHC's corporate umbrella.

This misrepresentation came to light through a February 14, 2024 email from Miranda Carter of Community PACE to Amanda Muniz of RTZ, produced and marked as Deposition Exhibit 2. (*See* Lee Decl., Exh. 10.) In that email, Carter stated: "Okay, I just verified that Intus is actually part of Tabula Rasa a corporate umbrella – they should have the save access and NDA

as Peak and Pharmastar! I thought they were part of the same company, but I don't work with them a ton so needed to verify." (*Id.*)

## B. Legal Standard

Under Federal Rule of Evidence 401, evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is generally admissible. Fed. R. Evid. 402. Evidence may be excluded under Rule 403 only if its probative value is "*substantially outweighed*" by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403 (emphasis added).  A motion in limine also "is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." *Weller v. Cnty. of Los Angeles*, 2016 WL 11760239, *1 (C.D. Cal. 2016) (citations omitted.); *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-1120 (E.D. Cal. 2006).

## C. Argument

### 1. Carter's Testimony Does Not Foreclose RTZ's Theory of Misrepresentation.

Intus argues that the misrepresentation evidence must be excluded because Carter testified at deposition that her belief that Intus was part of TRHC's corporate umbrella came from her executive director, Kelsey Bruno, rather than from a personal conversation with Intus. This argument fails. The source of Carter's *belief* does not resolve the antecedent factual question: whether Intus in fact made the underlying misrepresentation to Community PACE— whether directly or through communications that led to Community PACE's understanding. That is a question of fact for the jury, not for the Court on a pretrial motion.

Critically, Carter herself acknowledged that the representation could only be verified by Intus. When asked, "[Y]ou would agree it would have to be Intus to verify that they're actually part of a corporate umbrella, correct?" Carter answered: "Correct. I feel like they – we should have – it should have been – it should have came from them." (Lee Decl., Exh. 11[Carter Tr. at 45:6-14].) This concession underscores that Carter's testimony about how *she* learned of the representation does not dispose of whether *Intus* made it. The testimony goes to the *weight* of the

70577222.v3

evidence, not its admissibility. *Espinoza v. Sniff*, 2015 WL 12660410, *1-2 (C.D. Cal. 2015) (A motion in limine, however, should not be employed to "seek exclusion of broad and unspecific categories of evidence" or to "resolve factual issues or weigh evidence." (citations omitted).) Moreover, RTZ is clearly entitled to ask Intus's witnesses themselves whether they made this misrepresentation.

### 2.   The Evidence Is Relevant Under FRE 401 and 402.

The misrepresentation evidence satisfies Rule 401's minimal relevance threshold. It has a direct tendency to make more probable RTZ's allegations that Intus engaged in unfair competition and induced breach of contract by falsely claiming an affiliation with Tabula Rasa to gain unauthorized access to RTZ's proprietary PACECare system. Because it bears directly on facts of consequence to RTZ's counterclaims under California Business and Professions Code § 17200 and for inducing breach of contract, the evidence is admissible under Rule 402.

### 3.   Rule 403 Does Not Warrant Exclusion.

Any risk of prejudice does not *substantially* outweigh the evidence's significant probative value. Rule 403's balance tips strongly in favor of admissibility where, as here, the evidence goes to a central element of a party's claims. The jury—not the Court on a motion in limine—is the proper body to weigh Carter's credibility, assess the significance of the source of her belief, and resolve competing inferences about whether Intus made the alleged misrepresentation. *See Luce v. United States*, 469 U.S. 38, 41 (1984) (noting that evidentiary rulings should generally be deferred to trial where context can inform the analysis). Excluding this evidence pretrial would effectively grant Intus summary adjudication of RTZ's counterclaims by judicial fiat, depriving RTZ of the opportunity to present its case to the factfinder.

## X.   RTZ'S OPPOSITION TO INTUS'S MIL NO. 10

Motion in Limine No. 10 is a dispositive motion in evidentiary clothing.  Intus asks the Court to hold, as a matter of law, that the parties' failure to agree on RTZ's proposed NDA can never satisfy the Cures Act's Manner Exception, and on that basis to exclude all "evidence or argument" concerning the failed NDA negotiations.

///

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3

This contradicts the Court's summary judgment ruling that the applicability of the Manner Exception turns on disputed questions of material fact. Further, it would remove from the jury's consideration one of the precise factual disputes this Court has already held must be resolved at trial. Because the evidence Intus seeks to exclude goes directly to those issues, the motion should be denied.

## A.    Argument

### 1.    The Motion Improperly Seeks to Eliminate a Factual Issue the Court Has Already Reserved for the Jury.

The premise of Intus's motion is that disagreements concerning NDAs and related contractual terms are categorically irrelevant to the Manner Exception. That position cannot be reconciled with the Court's summary judgment ruling.

The Court denied summary judgment because factual disputes remained regarding whether RTZ and Intus could reach an agreement and whether RTZ made reasonable efforts to do so. (Dkt. 84 at 8.) The Court subsequently reiterated that the jury must consider whether RTZ made "at least some reasonable efforts" to reach agreement regarding the sharing of information. (Dkt. 203 at 6.) The Court likewise held that Ms. Creegan's testimony that "RTZ offered the standard expanded reports, which are exported as a flat file, in a CSV format, an alternative machine-readable method of accessing EHI as early as July 2021," and her testimony regarding common industry practice in software-as-a-service licensing are admissible. (Dkt. 203 at 6 (quoting Creegan Report ¶¶ 91, 57).) Having already determined that the parties' negotiations present a triable factual issue, the Court should reject Intus's attempt to remove those facts from the jury's consideration through a motion in limine.

"[A] motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly one filed after the deadline for filing dispositive motions." *Hana Fin.*, 735 F.3d at 1162 n.4.) Nor has Intus sought leave for what is, in substance, reconsideration of the summary judgment ruling. Civil L.R. 7-9. The "agreement" the parties failed to reach was, first and foremost, the NDA: the negotiation history Intus's own motion recounts at length. (Dkt. 205 at 19.) Intus now asks the Court to hold that this same negotiation history is categorically irrelevant

to the information blocking exceptions as a matter of law. Granting that request would not "streamline" the trial. Rather, it would resolve the merits of the disputed question the Court reserved for the jury in Intus's favor.

### 2. Evidence Concerning the Partie's Negotiations is Directly Relevant to the Manner Exception.

The Manner Exception expressly provides that an actor must fulfill a request unless the actor is "technically unable to fulfill the request __or__ *cannot reach agreeable terms with the requestor* to fulfill the request in the manner requested." 45 C.F.R. § 171.301(a)(1), (emphasis and italics supplied.)

Initially, Intus's motion incorrectly asserts:

> As this Court recognized in its order on summary judgment, RTZ "does not argue that it is 'technically unable' to fulfill Intus's refusal to sign an NDA. (Motion, at 19:14-17.)

Whether by accident or design, Intus misquotes this Court's Order. (*See* Dkt. 89 at 7:15-17.) More to the point, that quotation (inaccurate or not) offers nothing of substance. A proper reading of that quote reveals the Court's acknowledgement that RTZ did not argue it was technically unable to fulfill Intus's request. Instead, the Court focused on RTZ's argument that it could not "reach agreeable terms" with Intus. (*See* Dkt. 89 at 7:15-17; 8:8-9:1.)

Whether RTZ and Intus could "reach agreeable terms" is embedded in the text of the regulation itself. Evidence regarding negotiations, proposed agreements, confidentiality provisions, security safeguards, access conditions, and the parties' attempts to resolve their differences bears directly on that inquiry.

The Fourth Circuit's decision in *Real Time Medical Systems, Inc. v. PointClickCare Technologies, Inc.*, 131 F.4th 205 (4th Cir. 2025), confirms the relevance of such evidence. The *Real Time* court explained that the applicable inquiry is whether the actor made "at least some reasonable efforts" to reach agreement regarding the requested exchange of information. (*Id.* at 233.) This Court relied on that holding in its *Daubert* Order. (Dkt. 203 at 6.)

The negotiations between the parties are therefore not collateral to the Manner Exception analysis - they are integral to the analysis. Whether RTZ proposed reasonable terms, whether the

-44-

parties exchanged multiple drafts, whether RTZ offered alternative methods of access, whether Intus rejected those proposals, and whether the parties ultimately failed to reach agreement are all facts that bear directly on the question identified in *Real Time* and by this Court. Excluding such evidence would prevent the jury from evaluating the very conduct that *Real Time* makes central to the inquiry.

RTZ does not contend that the mere existence of an NDA establishes the Manner Exception as a matter of law. Nor does RTZ intend to offer expert testimony that the Manner Exception legally applies. Rather, RTZ is entitled to present evidence concerning the parties' negotiations, the proposals exchanged, the efforts undertaken to reach agreement, and the circumstances under which those reasonable efforts ultimately failed. Those facts are relevant to issues the Court has already determined the jury must decide.

### 3. Intus's Reliance on the Licensing Exception Is Misplaced.

Intus's argument that NDA-related evidence belongs, if anywhere, under the Licensing Exception misses the point. RTZ does not contend that the failed NDA negotiations independently establish the Licensing Exception or automatically satisfy the Manner Exception. Rather, the negotiations are relevant because they constitute evidence of the parties' efforts to reach agreement and the circumstances under which those efforts failed, i.e., "cannot reach agreeable terms with the requestor to fulfill the request in the manner requested." 45 C.F.R. § 171.301(a)(1).

The question identified by both *Real Time* and this Court is whether RTZ made "at least some reasonable efforts" to reach agreement. (Dkt. 203 at 6.) Evidence that the parties exchanged proposed NDAs, negotiated confidentiality protections, debated access conditions, proposed alternatives, and ultimately failed to agree, bears directly on that inquiry regardless of whether the Licensing Exception is ultimately implicated. Indeed, the same facts may be relevant to multiple defenses or exceptions. The existence of the Licensing Exception does not render negotiation evidence inadmissible under the Manner Exception, particularly where the Court has already held that the parties' inability to reach agreement presents a triable issue of fact. ///

-45-

**4.      The Negotiation Evidence is Independently Admissible, and Rule 403 Does Not Warrant Exclusion.**

Even if Intus's construction of the Manner Exception were correct (which it is not), the evidence it targets would remain admissible on independent grounds. First, Intus's own information-blocking narrative rests on the NDA demand and RTZ's cease-and-desist letters, as Intus's own motion recounts. (Dkt. 205 at 19.)  Intus cannot present the NDA to the jury as the instrument of unlawful blocking while precluding RTZ from presenting the same negotiations as good-faith efforts to reach terms. Second, the negotiations and related correspondence bear directly on RTZ's counterclaims, including whether Intus's continued access was authorized and Intus's knowledge and conduct after receiving RTZ's September 14, 2022 cease-and-desist letter.

Nor does Rule 403 support exclusion. Exclusion under Rule 403 is "an extraordinary remedy to be used sparingly," (*Munoz v. PHH Mortg. Corp.,* 478 F. Supp. 3d 945, 964 (E.D. Cal. 2020)), and there is nothing unfairly prejudicial about the jury hearing both sides of the parties' own negotiation history. Intus's remaining merits arguments (trade-secret particularity, breadth, and the interplay of §§ 171.301 and 171.303) belong to cross-examination, the jury, and, if warranted, Rule 50, not a pretrial order excising the factual record this Court has held creates the triable issue.

Dated:  July 17, 2026

NOSSAMAN LLP
DAVID C. LEE
KASIA PENN

By: _____
                        David C. Lee

Attorneys for Defendant and Counterclaimant
RTZ ASSOCIATES, INC.

RTZ ASSOCIATES, INC.'S OPPOSITION TO INTUS' MOTIONS IN LIMINE

70577222.v3